IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 05-60008-HO |
| Plaintiff, | **I N D I C T M E N T** |
| v. | <u>Count One</u>:  18 U.S.C. §371 - |
| AL-HARAMAIN ISLAMIC FOUNDATION, INC.; | Conspiracy to Defraud the United States |
| PIROUZ SEDAGHATY, a/k/a Pete Seda, Perouz Seda Ghaty and Abu Yunus; and | <u>Count Two</u>:  26 U.S.C. §7206(1) - |
| | False I.R.S. Return by Tax Exempt Organization |
| SOLIMAN HAMD AL-BUTHE, a/k/a Soliman Al-Buthe; | <u>Count Three</u>:  31 U.S.C. §5316(a)(1)(A) - |
| Defendants. | Failure to File Report of International Transportation of Currency or Monetary Instrument |

## THE GRAND JURY CHARGES:

<u>**Introductory Allegations**</u>

At all times relevant to this indictment:

A)    Defendant PIROUZ SEDAGHATY, also known as Pete Seda, Perouz

Seda Ghaty, and Abu Yunus, was a naturalized United States citizen and resident of

Ashland, Oregon.

Indictment - 1

B)      The Al-Haramain Islamic Foundation, referred to in this indictment as Al-Haramain (Riyadh), was a non-governmental organization headquartered in Riyadh, Saudi Arabia. Al-Haramain (Riyadh) operated in more than fifty countries throughout the world. Its publicly stated purposes were to distribute Islamic aid and Islamic educational material.

      i)      Aqeel Abdul-Aziz Al'Aqeel, also known as Ageel al-Ageel or Aquil al-Aquil, was the General Manager of Al-Haramain (Riyadh).

      ii)      Defendant SOLIMAN HAMD AL-BUTHE, also known as Soliman Al-Buthe, was a citizen of Saudi Arabia and an official with Al-Haramain (Riyadh). AL-BUTHE was also the chairman of the United States Committee for Al-Haramain, responsible for promoting Al-Haramain's (Riyadh) causes in the United States.

      iii)      Al-Haramain (Riyadh) first established a presence in the United States in 1997. In October 1997, Aqeel Abdul-Aziz Al'Aqeel, on behalf of Al-Haramain (Riyadh), designated defendant SOLIMAN AL-BUTHE through a power of attorney as its lawful representative in the United States. Later that month, defendants PIROUZ SEDAGHATY and SOLIMAN AL-BUTHE registered the Al-Haramain Islamic Foundation as an assumed business name with the Oregon Secretary of State. SEDAGHATY was designated as Al-Haramain Islamic Foundation's authorized representative. The Al-Haramain Islamic Foundation listed its principal place of business in the United States as 1257 Siskiyou Blvd. #224, Ashland, Oregon.

iv)     Defendants PIROUZ SEDAGHATY and SOLIMAN AL-BUTHE established a bank account in the name of the Al-Haramain Islamic Foundation at the Bank of America in Ashland, Oregon.  Defendants PIROUZ SEDAGHATY and SOLIMAN AL-BUTHE were the only two individuals authorized to conduct transactions involving that bank account.

v)      In February and March 1999, defendant PIROUZ SEDAGHATY established Al-Haramain as a corporation in the State of Oregon, thus becoming the AL-HARAMAIN ISLAMIC FOUNDATION, INC.  In its corporate application, defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. asserted:

> The corporation is organized as a public benefit corporation exclusively for religious, humanitarian, educational, and charitable purposes as defined in Section 501(C)(3) of the Internal Revenue Code, and ORS 65.036 of the Oregon Revised Code.  The corporation shall not carry on any activities which are not permitted by the Internal Revenue Code for such corporations which are exempt from federal income tax and to which contributions are deductible for federal income tax purposes.  Al Haramain Islamic Foundation, Inc. stands against terrorism, injustice, or subversive activities in any form and shall not support any statement or acts of terrorism.  Al Haramain Islamic Foundation, Inc. believes such conduct is contrary to Islamic principles.

vi)     In documents filed with the Internal Revenue Service, defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. listed the following individuals among its corporate officers:

| | | |
|---|---|---|
| Ageel Al-Ageel (aka Aquil al-Aquil) | - | President |
| Soliman HS Al-Buthe | - | Treasurer |
| Perouz Seda Ghaty | - | Secretary |

Defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. provided the Internal Revenue Service with a website address of www.alharamain.org.

vii)     Defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. was funded by its parent organization Al-Haramain (Riyadh) through its headquarters in Riyadh, Saudi Arabia, which exercised decision-making authority over financial transactions conducted by the United States office, including decisions on how donations received by Al-Haramain (Riyadh) and defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. would be distributed.

C)     Immigration and Customs Enforcement (ICE) and Customs and Border Protection (CBP) are agencies of the U.S. Department of Homeland Security.  At the time of the events relevant to this indictment, ICE and CBP were known as the United States Customs Service, which was an agency of the United States Department of the Treasury.  As part of its lawful functions, ICE and CBP are responsible for collecting information concerning currency and monetary instruments coming into or leaving the United States in amounts greater than $10,000.  At the time of the events relevant to this indictment, the United States Customs Service was responsible for collecting information concerning currency and monetary instruments coming into or leaving the United States in amounts greater than $10,000.

i)     Anyone who transports, mails or ships more than $10,000 in currency or monetary instruments, including travelers checks, into or out of the United States, is required by law to provide the details of that transaction to the United States Government through a Form 4790,

*Report of International Transportation of Currency or Monetary Instruments.*

D)      The Internal Revenue Service is an agency of the United States Department of the Treasury.  As part of its lawful functions, the IRS is responsible for considering applications from organizations seeking to be exempt from taxation.  If tax exempt status is granted to an organization, it must file a Form 990, *Return of Organization Exempt from Income Tax,* with the IRS each year in which its contributions exceed $100,000.  If the IRS determines from a review of a Form 990 that a tax exempt organization is not operating consistently with its tax exempt status, then the IRS may revoke the tax exemption and subject the organization to taxation.

i)      On December 31, 1999, defendant PIROUZ SEDAGHATY and defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. filed an application for tax exempt status, asserting the Al-Haramain Islamic Foundation was a public benefit corporation, organized exclusively for religious, humanitarian, educational and charitable purposes.  The Internal Revenue Service granted defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC.'s application for tax exempt status in December 2000.

E)      As used in this indictment, the term "jihad" means violent jihad, that is, a holy war accomplished through violent physical struggle and armed conflict.

F)      "Mujahideen" are individuals who engage in a violent physical struggle or armed conflict to promote a holy war or violent jihad.

G)      "Zakat" is one of the pillars of Islam, and is the obligatory alms or charity

tax imposed on all practicing Muslims to support the poor and needy. Money obtained through zakat has been diverted by Islamic charitable foundations and non-governmental organizations to fund mujahideen, assisting them in violent jihad.

 H) Chechnya is a North Caucasus province located south of Russia. Chechnya has a long history of a Muslim led guerilla independence resistance against Russian occupation. In approximately 1995, foreign mujahideen moved into Chechnya in an organized effort to aid local Muslim fighters in an attempt to defeat Russian forces. The mujahideen are engaged in a violent jihad, with the goal of creating an Islamic state in Chechnya. The Chechen mujahideen have received funding from Islamic charities and non-governmental organizations.

 I) The website www.alharamain.org was hosted by Al-Haramain (Riyadh). Through this website and other websites referred to in Al-Haramain's (Riyadh) website, Al-Haramain (Riyadh) promoted violent jihad as an obligation of Islam, updated readers concerning the Chechen mujahideen's violent jihad against the Russian army, and advised readers on how to donate money to the Chechen mujahideen.

### Count One

The introductory allegations are incorporated as if fully set forth herein.

### Conspiracy to Defraud the United States Government

From late 1999, through October 2001, in the District of Oregon and elsewhere, the

- AL-HARAMAIN ISLAMIC FOUNDATION, INC., an Oregon Corporation;
- PIROUZ SEDAGHATY, a/k/a Pete Seda, Perouz Seda Ghaty, and Abu Yunus; and

• SOLIMAN HAMD AL-BUTHE, a/k/a Soliman Al-Buthe;

defendants herein, did unlawfully, willfully, and knowingly conspire, combine,

confederate, and agree together and with each other and with other individuals and

organizations both known and unknown to the grand jury to defraud the United States

for the purpose of impeding, impairing, obstructing, and defeating the lawful functions of

the U.S. Immigration and Customs Enforcement and Customs and Border Protection of

the Department of Homeland Security, formerly the United States Customs Service of

the Department of Treasury, in the collection of information concerning the

transportation of currency and monetary instruments leaving the United States, and the

Internal Revenue Service of the Treasury Department, in the collection of information

concerning financial transactions of tax exempt organizations, through deceit, craft,

trickery and dishonest means.

## I. Object of the Conspiracy

In February 2000, an individual in Egypt donated $150,000 to Al-Haramain

(Riyadh) as zakat to be sent to Chechnya. The funds were initially wire transferred by

the donor to an Al-Haramain bank account in Oregon, converted into travelers checks

and a cashier's check, and covertly taken out of the United States by defendant

SOLIMAN AL-BUTHE. Intending that the funds be delivered to the Chechen

mujahideen, defendants PIROUZ SEDAGHATY, SOLIMAN AL-BUTHE, the AL-

HARAMAIN ISLAMIC FOUNDATION, INC., and others, engaged in a conspiracy to

prevent the United States Government from learning of the transaction by failing to fill

out paperwork, as required by law, acknowledging the funds were leaving the United

States, and by filing a false tax return with the Internal Revenue Service which falsified

Indictment - 7

how the donated funds were distributed by defendant AL-HARAMAIN ISLAMIC
FOUNDATION, INC.

## II.  Manner and Means by Which the Conspiracy was Carried Out

The manner and means by which the conspiracy was sought to be accomplished
included:

A)     In 1999 and 2000, Al-Haramain (Riyadh) published reports and articles in

support of the mujahideen in Chechnya on its website, www.alharamain.org.  These

reports were published in English and Arabic.  One report, entitled "The Latest News

About the Jihaad in Chechnya," provided details of specific battles between Russian

forces and the mujahideen in Chechnya.  The website also published prayers calling for

the destruction of the Russian army and for aid for "our Mujaahideen brothers in

Chechnya."  The website also contained a link to www.qoqaz.com.  Through this link,

details were available on how to fund the Chechen mujahideen.

B)     In February 2000, Al-Haramain (Riyadh) issued an online newsletter

reading in part:

> Jihad is a religious obligation in Islaam.  Its aim is to fight oppression and
> injustice and to remove obstacles which prevent the spread of Islam.  This
> is accomplish[ed] either by weakening or destroying the disbelieving
> prevalent political parties so that Muslims can prevent anyone from
> persecuting their brother Muslims wherever they may be.

C)     In February 2000, Al-Haramain (Riyadh) was contacted by an individual in

Egypt seeking to donate $150,000 "as Zakat in order to participate in your nobel

support to our muslim brothers in Chychnia...."  To make the donation, the Egyptian

donor initially sent the funds to defendant AL-HARAMAIN ISLAMIC FOUNDATION,

INC. in the United States.

Indictment - 8

D)     On or about February 24, 2000, the Egyptian donor wire transferred

$149,985 from an account he controlled at the National Bank of Kuwait in London,

England, to an account at the Bank of America in Ashland, Oregon, in the name of the

Al-Haramain Islamic Foundation. All funds in the Al-Haramain account at the Bank of

America were controlled by defendants PIROUZ SEDAGHATY and SOLIMAN AL-

BUTHE.

E)     In an electronic message sent from Riyadh, Saudi Arabia, to defendant

PIROUZ SEDAGHATY in Oregon, defendant SOLIMAN AL-BUTHE asked defendant

PIROUZ SEDAGHATY to verify whether the funds had been received in Al-Haramain's

bank account in the United States.

F)     Sometime after February 24, 2000, the General Manager of Al-Haramain

(Riyadh), Aqeel Abdul-Aziz Al-'Aqeel, signed a letter thanking the Egyptian donor for his

$150,000 donation and stating:

> We appreciate your trust in Al-Haramain Islamic Foundation and assure you of
> our commitment to continue every possible effort to help ending the Chechnyan
> crisis.

G)     On or about March 7, 2000, defendant SOLIMAN AL-BUTHE flew from

Riyadh, Saudi Arabia to Oregon.  AL-BUTHE entered the United States pursuant to a

business visa and listed his intended destination as 1257 Siskiyou Blvd. #212, Ashland,

Oregon.

H)     On or about March 10, 2000, defendants PIROUZ SEDAGHATY and

SOLIMAN AL-BUTHE went to the Bank of America in Ashland, Oregon to obtain a

portion of the donated funds.  Defendants SOLIMAN AL-BUTHE and PIROUZ

SEDAGHATY purchased one hundred thirty (130) $1,000 American Express Travelers

Indictment - 9

Checks. The bank charged $1,300 in fees for the travelers checks. Defendant

SOLIMAN AL-BUTHE signed and used check #9456, in the amount of $131,300,

written off of the Al-Haramain account at the Bank of America, to pay the bank for these

American Express Travelers Checks. The money used to purchase these checks was

derived from the Egyptian donor.

       I)      On or about March 11, 2000, defendant PIROUZ SEDAGHATY returned

to the Bank of America in Ashland, Oregon. He requested that a cashier's check, in the

amount of $21,000, be issued to defendant SOLIMAN AL-BUTHE. The funds used to

purchase this cashier's check were derived from the Egyptian donor. Someone later

wrote a notation at the bottom of Al-Haramain Islamic Foundation, Inc.'s copy of the

cashier's check, which stated: "Donation for Chichania Refugees."

       J)      On or about March 11, 2000, defendants SOLIMAN AL-BUTHE and

PIROUZ SEDAGHATY signed an agreement which reads in part:

> This is an agreement bet (sic) Soliman and Abu Yunus. This agreement states,
> that Abu Yunus is turning all monies and responsibilities that were collected for
> the Brothers and Sisters in Chechnya over to Brother Soliman. Soliman states
> that he has received monies in the amount of $186,644.70 and he also fully
> relieves Abu Yunus of all responsibilities to the money.

A handwritten notation at the bottom of this agreement states: "I deposit the amanet

[gift] in Alharamain head office for Chechenya refugees." On or about March 11, 2000,

defendants SOLIMAN AL-BUTHE and PIROUZ SEDAGHATY signed another

agreement which was identical to the first agreement, except that defendants

represented that defendant SOLIMAN AL-BUTHE had received $188,465.00 from

defendant PIROUZ SEDAGHATY, rather than $186,644.70.

       K)      On or about March 12, 2000, defendant SOLIMAN AL-BUTHE departed

Indictment - 10

the United States from JFK International Airport in New York for Riyadh, Saudi Arabia

with the funds donated by the Egyptian.  As part of the conspiracy, defendant

SOLIMAN AL-BUTHE intentionally failed to file a Form 4790, *Report of International*

*Transportation of Currency or Monetary Instruments*, as required by law, with the United

States Customs Service, acknowledging that he was leaving the United States with

travelers checks exceeding $10,000.

      L)    On or before March 25, 2000, defendant SOLIMAN AL-BUTHE cashed

the one hundred thirty (130) $1,000 American Express Travelers Checks at Al Rajhi

Banking and Investment in Saudi Arabia.

      M)    Sometime after March 12, 2000, defendant SOLIMAN AL-BUTHE

deposited the $21,000 cashiers check he obtained from the Bank of America in Oregon

into an account he had at Al Rajhi Banking and Investment in Saudi Arabia.

      N)    In June 2000, defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC.

purchased a building in Springfield, Missouri for approximately $375,000.  A large

portion of the funds used by defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC.

to purchase this building came from a Bank of America account in Oregon controlled by

defendants SOLIMAN AL-BUTHE and PIROUZ SEDAGHATY, on behalf of defendant

AL-HARAMAIN ISLAMIC FOUNDATION, INC.

      O)    In or about September 2001, defendant PIROUZ SEDAGHATY provided

a financial summary to his accountant detailing the funds used by defendant AL-

HARAMAIN ISLAMIC FOUNDATION, INC. to purchase the building in Springfield,

Missouri.  This accounting was false in that it represented that check #9456, referred to

in paragraph H of the Manner and Means section of this indictment above, dated March

10, 2000, in the amount of $131,300, was part of the funds used by defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. to purchase the Missouri building.  In fact, these funds had been transported out of the United States by defendant SOLIMAN AL-BUTHE in March 2000.  The accounting was additionally false in that defendant PIROUZ SEDAGHATY represented to the accountant that the $21,000 cashier's check to defendant SOLIMAN AL-BUTHE, referred to in paragraph I of the Manner and Means section of this indictment above, were funds which had been returned to the original donor.

P)      In September and October 2001, an accountant in Medford, Oregon, relying on information provided to him by defendant PIROUZ SEDAGHATY, prepared a 2000 Form 990, *Return of Organization Exempt from Income Tax*.  This return was false in that it represented that check #9456, dated March 10, 2000, in the amount of $131,300, was used by defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. as part of the funds to purchase a building in Springfield, Missouri.  The return was additionally false in that it represented that the $21,000 cashier's check to defendant SOLIMAN AL-BUTHE were funds which had been returned to an Al-Haramain (Riyadh) donor.

Q)      On or about October 16, 2001, defendant PIROUZ SEDAGHATY signed a 2000 Form 990, *Return of Organization Exempt from Income Tax*, on behalf of defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC., which he knew to be false.

R)      In October 2001, defendant PIROUZ SEDAGHATY caused a 2000 Form 990, *Return of Organization Exempt from Income Tax*, which he knew to be false, to be

filed with the Internal Revenue Service on behalf of defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC.

### III.  Overt Acts of the Conspiracy

In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts were committed in the District of Oregon and elsewhere:

A)      In February 1999, defendant PIROUZ SEDAGHATY filed an application to incorporate the Al-Haramain Islamic Foundation in Oregon.  He listed a mail service business located at 1257 Siskiyou Blvd. in Ashland, Oregon as the corporation's principal place of business.

B)      In late 1999 and early 2000, Al-Haramain (Riyadh) published articles captioned "The Latest News About the Jihaad in Chechnya" on its website, www.alharamain.org, which provided details concerning the mujahideen's progress in fighting the Russian army.  The website also contained a prayer for the Chechen mujahideen which calls for aid for the "Mujaahideen brothers in Chechnya."  The website also contained a link to www.qoqaz.com.  Through this link, details were available on how to fund the Chechen mujahideen.

C)      On or about February 24, 2000, a donor to Al-Haramain (Riyadh) wire transferred $149,985 from a bank account in London, England to a Bank of America account in the name of defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. in Ashland, Oregon.

D)      On or about March 7, 2000, defendant SOLIMAN AL-BUTHE flew from Riyadh, Saudi Arabia to Oregon.  AL-BUTHE entered the United States pursuant to a

business visa and listed his intended destination as 1257 Siskiyou Blvd., Ashland, Oregon.

E)     On or about March 10, 2000, defendants PIROUZ SEDAGHATY and SOLIMAN AL-BUTHE purchased one hundred thirty (130) $1,000 American Express Travelers Checks at the Bank of America in Ashland, Oregon.

F)     On or about March 11, 2000, defendant PIROUZ SEDAGHATY purchased a $21,000 cashier's check, payable to defendant SOLIMAN AL-BUTHE, from the Bank of America in Ashland, Oregon.

G)     On or about March 12, 2000, defendant SOLIMAN AL-BUTHE departed the United States on Saudi Air flight #38 from New York to Riyadh, Saudi Arabia.

H)     In June 2000, defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. purchased a building in Springfield, Missouri, paid for in large part with funds provided by Al-Haramain (Riyadh).

I)     In or about September 2001, defendant PIROUZ SEDAGHATY gave his accountant a financial summary of the funds used by defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC. to purchase a building in Springfield, Missouri.

J)     In October 2001, defendant PIROUZ SEDAGHATY signed a Form 990, *Return of Organization Exempt from Income Tax,* on behalf of defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC.

In violation of Title 18, United States Code, Section 371.

///

Indictment - 14

## Count Two

### False Return by Tax Exempt Organization

The Introductory Allegations, and the Manner and Means in Count One, are incorporated as if fully set forth herein.

On or about October 16, 2001, in the District of Oregon and elsewhere, defendant AL-HARAMAIN ISLAMIC FOUNDATION, INC., an Oregon corporation, and defendant PIROUZ SEDAGHATY, a resident of Ashland, Oregon, did willfully make and subscribe a Form 990, *Return of Organization Exempt from Income Tax*, for the calendar year 2000, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said Form 990 defendants then and there well knew and believed was not true and correct as to every material matter in that:

> Line 1 understated "Contributions, gifts, grants, and similar amounts received;"
>
> Line 22 understated "Grants and allocations;" and
>
> Line 57a overstated "Lands, buildings, and equipment: basis."

In violation of Title 26, United States Code, Section 7206(1) and Title 18, United States Code, Section 2.

## Count Three

### Failure to File Report of International Transportation of

### Currency or Monetary Instruments

The Introductory Allegations, and Manner and Means in Count One, are incorporated as if fully set forth herein.

On or about March 12, 2000, in the District of Oregon and elsewhere, defendant

SOLIMAN AL-BUTHE, did knowingly transport, mail, and ship, monetary instruments of

more than $10,000 from a place within the United States to a place outside the United

States, that is, he knowingly transported, mailed or shipped $130,000 in travelers

checks from Oregon to New York to Saudi Arabia, and, in so doing, did unlawfully,

knowingly and willfully fail to file a report of that transportation, as required by Title 31,

United States Code, Section 5316(a)(1)(A), and Title 31, Code of Federal Regulations,

Section 103.23, with the United States Customs Service.

In violation of Title 18, United States Code, Sections 5316(a)(1)(A) and 5322, and Title 31, Code of Federal Regulations, Sections 103.11 and 103.23

## Forfeiture Allegation

Upon conviction of the violation alleged in Counts One or Three, defendant shall

forfeit all property involved in or traceable to such violation, including but not limited to

$130,000.

Pursuant to Title 18, United States Code, Section 982(a)(1)(A).

If any of the above-described forfeitable property, as a result of any act or

omission of the defendant:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without

difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by

18 U.S.C. § 982(b),  to seek forfeiture of any other property of said defendant up to the

value of the forfeitable property described above.

A True Bill:

/s/ Grand Jury Foreperson

Grand Jury Foreperson

KARIN J. IMMERGUT
UNITED STATES ATTORNEY

By:

Christopher L. Cardani
Assistant United States Attorney

Indictment - 17