KARIN J. IMMERGUT, OSB #963143
United States Attorney
District of Oregon
CHRISTOPHER L. CARDANI
Assistant United States Attorney
701 High Street
Eugene, OR 97401
(541) 465-6771
chris.cardani@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 05-60008-01 |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S MEMORANDUM |
| | ) | IN SUPPORT OF PRETRIAL |
| v. | ) | DETENTION |
| | ) | |
| PEROUZ SEDAGHATY, | ) | |
| a/k/a Pete Seda and Abu Yunus, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, through its undersigned counsel, herein submits this memorandum in advance of defendant Sedaghaty's detention hearing, scheduled for Wednesday, August 22, 2007.

Despite defendant's voluntary return to the United States, the government believes that no set of conditions can be imposed upon defendant Sedaghaty that will reasonably assure the safety of the community and his appearance at trial. Support for this position is drawn from this memorandum, exhibits submitted with this memorandum, and from testimony anticipated at the detention hearing.

**Background of the Al-Haramain Islamic Foundation**

Defendant Perouz Sedaghaty, also known as Abu Yunus and Pete Seda, was the President of the Al-Haramain Islamic Foundation, Inc. in Ashland, Oregon, which served as the United States headquarters of its parent organization, the Al-Haramain Islamic Foundation in Riyadh, Saudi Arabia. To distinguish between the two in this memorandum, "AHIF-US" will refer to the United States branch of Al-Haramain, and "AHIF-SA" will refer to the parent organization in Saudi Arabia.

AHIF-SA was one of the most prominent charitable organizations in Saudi Arabia. It had a presence in at least fifty countries, and in U.S. dollars its annual budget ranged between $30-$80 million. AHIF-SA performed many legitimate humanitarian projects throughout the world, including the construction of water projects and hospitals, and the distribution of food to those in need.[1]

AHIF-SA also promoted a version of Islam called Wahhabism. While there are variations of Wahhabi teachings, the clerics and literature promoted by AHIF represent an extreme, intolerant and militant form of Wahhabism. For example, AHIF literature states that Muslims have an affirmative duty to engage in *jihad* (defined as holy fighting in Allah's cause) against those who do not believe in Islam, and that Muslims must

---

[1] Information set forth in this memorandum is derived from a combination of sources including the indictment, the affidavit submitted to Magistrate Judge Cooney in support of the search warrant of the AHIF office in Oregon, and the affidavit submitted to this Court in support of the government's Motion to Dismiss defendant AHIF.
    In addition, the National Commission on Terrorist Attacks Upon the United States (the 9-11 Commission) issued a staff monograph on terrorist financing in 2004. Contained in Chapter 7 of that monograph is a case study on the Al-Haramain Islamic Foundation. See www.9-11commission.gov/staff_statements/index.htm. That Chapter is submitted as exhibit A to this memorandum.

prepare for *jihad* by engaging in military type training.  <u>See</u> exhibit B (excerpt from the Noble Koran); and exhibit C at pp. 1226-27, 1236 (excerpts from Appendix IV of the Noble Koran, entitled *A Call to Jihad, (Holy Fighting in Allah's Cause)*.

On August 7, 1998, there were two simultaneous attacks on the United States Embassies in Kenya and Tanzania, resulting in the deaths of 223 people.  The terrorist organization Al-Qaeda was responsible for the attacks.  Law enforcement and other U.S. government officials later discovered evidence that certain branches of AHIF were involved in financing and supporting acts of terrorism throughout the world, including the embassy bombings.

Pursuant to U.S. law, the President is authorized to designate specific entities and individuals believed to be a threat to the interests of the United States.  An entity or individual so designated is prohibited from receiving the economic benefits of transactions with individuals in the United States, or from utilizing assets in the United States.  The United States Department of Treasury, Office of Foreign Asset Control (OFAC), is responsible for administering U.S. economic sanctions programs.  Organizations and individuals designated under these powers are referred to as Specially Designated Global Terrorists (SDGTs).

In 2002, the United States designated AHIF offices in Bosnia and Somalia as terrorist supporting organizations, freezing their assets and prohibiting transactions with them.  Since then, AHIF offices in Indonesia, Kenya, Tanzania, Pakistan, Afghanistan, Albania, Bangladesh, Ethiopia, the Netherlands, Somalia, Comoros Islands and the United States have also been designated by OFAC as SDGTs.  Many individuals associated with these AHIF offices have likewise been designated, including defendant

Sedaghaty's co-defendant, Soliman Al-Buthe. The listings of the Al-Haramain designations by OFAC may be accessed at http://www.treas.gov./offices/enforcement/ofac/sdn (pages 27-42 of the Specially Designated Nationals List (.pdf file)).

The reasons publicly provided by the United States for its designations are published in releases from the Department of the Treasury. Exhibit D to this memorandum summarizes the U.S. designations based on informational releases by the Department of the Treasury. These designations demonstrate that AHIF offices throughout the world have provided support to terrorist organizations such as Al-Qaeda.

The United Nations has its own sanctioning mechanism for terrorist organizations. Under Security Council Resolution 1267, the United Nations can designate organizations or individuals as supporters of terrorism and add them to a list of sanctioned entities.

Like the United States, the United Nations has identified AHIF as supporting terrorism. Using its authority under Security Council Resolution 1267, the United Nations has listed AHIF branches in fourteen countries, including branches in the United States, Albania and Bosnia, as "entities associated with" Al-Qaeda, the Taliban, or Usama bin Laden. This listing requires member nations to freeze assets, prevent travel, and ban the sale of munitions to the listed AHIF branches. See www.un.org/sc/committees/1267/consolist.shtml (pages 39-40 of the list in .pdf format contains the U.N.'s Al-Haramain designations).

**The United States Branch of AHIF**

During the detention hearing, the United States will establish that in 1997

defendant Sedaghaty, a native of Iran who became a naturalized U.S. citizen in 1994, established AHIF-US by filing papers with the Oregon Secretary of State, listing himself as its Authorized Representative, and co-defendant Soliman Al-Buthe as a co-registrant.  Two years later, in February 1999, defendant Sedaghaty incorporated AHIF-US as a tax exempt charitable organization.

During the time he was operating AHIF-US, defendant Sedaghaty received funding from AHIF-SA.  Co-defendant Al-Buthe traveled from Saudi Arabia to the United States, bringing money with him on behalf of AHIF-SA.  From examining forms Al-Buthe filed when arriving in the United States, we know that he visited this country at least nine times between 1997 and 2001, and transported $778,845.00 into the United States.  In addition, defendants Sedaghaty and Al-Buthe were co-signors on AHIF-US bank accounts established at the Bank of America in Ashland, Oregon.  AHIF-SA periodically wire transferred funds to these AHIF-US accounts.

Defendant Sedaghaty, personally and through his employees, used AHIF funding and assets to promote its causes, including:

- attempting to convert U.S. prisoners to a militant form of Islam;
- purchasing an Internet Service Provider network to facilitate password protected communications and a website for radical clerics in the Middle East;
- purchasing buildings in the United States; and
- attempting to fund violent Islamist fighters, known as *mujahideen* or

*jihadists*.[2]

**<u>The Prisoner Project</u>**

Daveed Gartenstein-Ross will testify before this Court at the detention hearing. Gartenstein-Ross is a former employee of defendant Sedaghaty, hired by him to further the global interests of AHIF. Gartenstein-Ross will testify that defendant Sedaghaty received funding and took direction from AHIF-SA. One of Gartenstein-Ross' assignments was to distribute Islamic literature received from AHIF-SA into prisons throughout the United States. This included radical material such as *The Call to Jihad (Holy Fighting for Allah's Cause) in the Qur'an*, (exhibit C), and *Islamic Guidelines for Individual and Social Reform* (exhibit E). These writings advised prisoners that violent *jihad* against non-believers is an affirmative obligation for all Muslims until the entire world submits to Islamic rule.[3] Other distributed writings by AHIF-US informed prisoners

---

[2]The indictment defines *mujahideen* and *jihadists* as individuals who engage in physical struggle or armed conflict to promote a holy war.

[3] "Allah . . . commanded the Muslims to fight against all the *Mushrikun* as well as against the people of the Scriptures (Jews and Christians) if they do not embrace Islam, till they pay the Jizyah (a tax levied on the non-Muslims who do not embrace Islam and are under the protection of an Islamic government) with willing submission and feel themselves subdued." <u>A Call to Jihad</u>, (exhibit C. at 1226-27). *Mushrikun* refers to nonbelievers who are not Jews or Christians.

"Allah made the fighting (Jihad) obligatory for the Muslims and gave importance to the subject matter of Jihad in all the Surah (Chapters of the Qur'an) ...." <u>A Call to Jihad</u>, (exhibit C at p. 1227).

"Fighting, even though by its nature is disliked by the human soul because of the liability, of being killed, or being taken as a captive, or being injured, ... Allah had made ready an immensely good reward that cannot be imagined by a human soul." <u>Id</u>. at 1227.

"To get ready (for Jihad) includes various kinds of preparations and weapons

that to meet their obligation of *jihad*, one should either fight or support fighters with money,[4] and featured anti-Semitic remarks calling for the killing of Jews.[5]

This written material, sent by AHIF-SA to AHIF-US in Oregon, was distributed by AHIF-US to more than 1,000 prisoners throughout the United States.

As reflected in exhibit F, some prisoners responded to AHIF-US in writing, offering assistance for the *mujahideen*:

> Dear Al-Haramain Foundation:
>
> My name is Umar Khalid Al-Mujahid. I am sending this ten dollars ($10.00). I would like it to be used towards helping the mujahideen in Chechnya that are being persecuted by the coalition of the kuffar, whether it be providing some food, medical help, to the families of the martyrs or weapons.... I would have sent more but am currently in prison and my finances are very short. I hope that this will be able to help at least one mujaheed or a family of one.

This letter was found at AHIF-US during the February 2004 search warrant.

---

[tanks, missles, artillery, aeroplanes (air force), ships (navy), etc., and the training of the soldiers in these weapons] are all included under (the meaning) of the word 'force (i.e. land-force, navy and air-force).'" Id. at 1236.

[4]"[J]ihad is obligatory on every Muslim in two ways: by spending one's wealth or offering oneself for fighting in the cause of Allah." Islamic Guidelines for Individual and Social Reform, (exhibit E at 130).

"The *Jihad* against the disbelievers, communists and the aggressors from Jewish-Christian nations can be either by spending on *Jihad* or by participating in it in person." Id. at 133.

[5]Included under the heading "Act upon these *Ahadith*" is the following:

"The Last Hour will not appear unless the Muslims fight the Jews and kill them." (Exhibit E at 167).

Included under the heading "Jihad and Bravery" is the following:

"Teach your children the love of justice and revenge from the unjust like the Jews and the tyrants." (Exhibit E at 108).

**Defendant Sedaghaty's Personal Support for the Mujahideen**

Witnesses will establish that defendant Sedaghaty supports violent actions by the *mujahideen*. While in the United States, defendant Sedaghaty showed others videos of combat activities of *mujahideen* fighters in Chechnya, and attempted to raise funds for them. Videos seized during the February 2004 search warrant on the AHIF-US offices in Ashland, Oregon depict *mujahideen* committing acts of violence against Russian soldiers in Chechnya.

Likewise, items found on defendant Sedaghaty's computer at AHIF-US include graphic photographs of dead *mujahideen*, dead Russian soldiers, passports of dead Russian soldiers, and a map depicting the location of *mujahideen* military engagements. (Exhibit G).

Some of the individuals depicted in the seized photographs are *mujahideen* commanders like Shamil Basayev, who took credit for a 2004 terrorist attack on a childrens' school in Beslan, Russia, resulting in the deaths of 334 civilians, including 186 children. (Exhibit H). The identities of the individuals depicted in some of these photographs will be better identified by a witness at the detention hearing.

An AHIF employee in Saudi Arabia established an e-mail group to distribute messages glorifying the Chechyan *mujahideen*. Defendant Sedaghaty received numerous distributions from this e-mail group, copies of which were found in his AHIF computer in Ashland, Oregon. Exhibit I contains several such e-mail messages.[6]

---

[6]An example of these e-mails reads:

"A fierce battle broke out in the Yermluvka region. By the Grace of Allah, the Mujahideen were slaughtering the enemy battalion. When the time came for the

AHIF newsletters praised the efforts of the *mujahideen* and called for their aid. One such newsletter, "*The Latest News About the Jihad in Chechnya*," documented the day to day activities of the *mujahideen* in Chechnya. Similar to the material distributed by defendant Sedaghaty in U.S. prisons, AHIF-SA promoted violent *jihad* as a religious obligation. An Al-Haramain newsletter, printed in English and dated February 2000, contained a section entitled "*Jihad*," which stated in part:

> Thus Jihaad is a religious obligation in Islaam. Its aim is to fight oppression and injustice and to remove obstacles which prevent the spread of Islaam. This is accomplished either by weakening or destroying the disbelieving prevalent political powers so that Muslims can prevent anyone from persecuting their brother Muslims wherever they may be. (Exhibit J).

**<u>Sedaghaty's Attempt to Fundraise and Distribute Funds to the *Mujahideen*</u>**

Evidence at the detention hearing will establish that in April 1999 defendant Sedaghaty stood up after Friday prayers, and announced to the attendees he was outraged by events in Kosovo involving atrocities committed by the Serbian army against Muslims. He further stated that he knew of freelance *mujahideen* who wanted to travel to Kosovo to fight against the Serbs. Defendant Sedaghaty solicited contributions to help them in doing so.

In April 1999, defendant Sedaghaty wire transferred $2,000 to the AHIF office in Tirane, Albania. (Exhibit K). Testimony will establish that the AHIF office in Tirane, Albania was the closest AHIF office to *mujahideen* fighting in Kosovo. As noted above, the AHIF branch in Albania was designated by both the United States and the United

---

Mujahideen to return to their bases, the enemy managed to surround three of the Mujahideen. At which point, their brothers came to their help, destroyed the siege, and returned to fighting again." <u>Id</u>. at p. 1.

Nations in 2004 for its support of terrorist activities in Albania and in Europe. (Exhibit D at 1-2).

The charges in the indictment before this Court chronicle defendant Sedaghaty and Al-Buthe's attempt to launder $150,000 intended to support the *mujahideen* in Chechnya. Exhibits to this memorandum, along with the indictment, affidavits and anticipated testimony establish that defendant Sedaghaty, on behalf of AHIF-US, received $150,000 donated by an Egyptian individual, who sent the funds from a London bank account to an AHIF-US bank account In Ashland, Oregon "in order to participate in your nobel support to our muslim brothers in Chychnia." (Exhibit L).

Just after the funds were wire transferred to the AHIF-US account, defendant Al-Buthe flew from Saudi Arabia to Oregon. Sedaghaty and Al-Buthe then went into the bank and withdrew the funds in the form of 130 $1,000 American Express travelers checks and a $21,000 cashier's check, costing AHIF a transaction fee of $1,300.00. (Exhibits M & N). Defendant Al-Buthe quickly returned to Saudi Arabia with the funds, failing to report to U.S. Custom agents that he was transporting more than $10,000 out of the country, in violation of U.S. law. Defendant Sedaghaty is charged in Count Three with further covering up this transaction by falsely reporting to the Internal Revenue Service that these funds were used to purchase a prayer house in Missouri, or returned to their original donor.

**Defendant Sedaghaty and AHIF's Use of the Internet and AHIF Computers to Promote Communications**

In 2000-2001, defendants Sedaghaty and Al-Buthe purchased and operated an Internet Service Provider (ISP) in Ashland, Oregon on behalf of AHIF. This ISP was

used to host websites known as *islamtoday.com and islamtoday.net*, and were designed to allow radical Wahhabi clerics to broadcast messages to followers throughout the world. These websites were controlled by a well-known cleric in Saudi Arabia named Sheikh Salman al-Oadah (also known as al-Awdah) who has issued religious *fatwas* advocating violence against the United States and reportedly wrote pamphlets for *Al-Qaeda*. Published reports state that Osama bin Laden has declared al-Oadah to be "my ideal personality; a savior who is the first person to demand the withdrawal of U.S. troops from Saudi."[7]

The ISP was also used to facilitate e-mails between *islamtoday* site administrators employed by AHIF-SA and site users.

An e-mail purportedly sent by "the Office of Sheikh Ussamah Bin Laden" in Qandahar, Afghanistan was discovered on an e-mail server for *islamtoday*. At the time the e-mail was sent, this server was physically located in a building in Ashland, Oregon controlled in part by AHIF-US. The e-mail, attached as exhibit O, was written in Arabic, and the English translation is as follows:

subject: Prayer is the weapon

In the name of Allah, the All Merciful, the All Compassionate. God's peace, mercy and blessings be upon you. My dear brothers, this is the office of Sheikh Ussamah Bin Laden in Qandahar. He sends you a message of gratitude and appreciation and asks you not to forget to pray during this blessed night and on Friday!!!!! He (God) is near. The infidels (Kafers) and the hypocrites have collaborated against us. It's a sad situation, when an Islamic nation faces death and the world watches. We are profoundly committed to jihad. I ask you to continue in prayer. God blesses the pious.

---

[7]See Peter Bergen, *The Osama bin Laden I Know* 149 (2006) (quoting Pakistani journalist Hamid Mir).

>Your brothers, the Mujahideens (Ussamah Bin Laden Brigade).
>
>Visit our site at www.laden.s5.com/ladenindex.htm

Although it is unknown who authored this message, it was dated October 10, 2001, which is three days after the United States began bombing Afghanistan after the terrorist attacks of 9-11.  Testimony at the detention hearing will provide more context to this troubling e-mail.

The images and writings reviewed above, when considered in conjunction with the actions of defendant Sedaghaty, show that he not only ideologically agrees with the efforts of the *mujahideen,* but has supported them with funding and other types of logistical support from within the United States.  Witting facilitation of radical Islamist fighters, and the distribution of hateful, violent literature to prisoners exhorting violence, makes defendant Sedaghaty a danger to the community.

**Flight Risk**

Defendant Sedaghaty departed the United States shortly after he was interviewed by the FBI in February 2003 and, so far as the government is aware, he did not return to the United States until four and a half years later, on August 15, 2007.  While away from the United States, he retained a criminal defense attorney in Oregon to represent him during the criminal investigation.  This attorney met with criminal investigators and the prosecutor both prior to and after defendant Sedaghaty was indicted.

Events significant to the timeline of defendant's absence from this country include:

February 2003    -    Sedaghaty interviewed by the FBI and departs shortly

| | | |
|---|---|---|
| | | thereafter |
| February 2004 | - | Law enforcement execute search warrant at AHIF-US building in Ashland, Oregon |
| February 2004 | - | OFAC issued a preliminary designation of AHIF-US as an SDGT (public notice provided) |
| June 2004 | - | The Kingdom of Saudi Arabia dissolved AHIF-SA. |
| September 2004 | - | OFAC and the UN issue a formal designation of AHIF-US and defendant Al-Buthe as terrorist supporters |
| February 2005 | - | AHIF-US and defendants Sedaghaty and Al-Buthe indicted by a federal grand jury in Eugene, Oregon.  This Court issues arrest warrants. |
| August 15, 2007 | - | Defendant Sedaghaty is arrested at the Portland, Oregon International Airport after voluntarily returning to the United States. |

Defendant Sedaghaty's criminal defense attorney met with defendant Sedaghaty outside the United States while he was a fugitive.[8]  Defendant Sedaghaty has known that he was indicted and the subject of an arrest warrant for at least two and a half years.[9]

---

[8]To be clear, Sedaghaty was not a fugitive when he left the United States in 2003; he became a fugitive by operation of law when he was indicted in 2005, and the arrest warrant was issued, which defendant Sedaghaty had knowledge of while abroad.

[9]Exhibit P is an Associated Press article appearing on February 20, 2005, and states in part: "Lynne Bernabei, the Washington, D.C. lawyer representing Seda, Al-Buthe and Al-Haramain's Ashland chapter in the terrorist designation case, told the (Medford) Mail-Tribune that Seda is familiar with the charges against him and will return

Co-defendant Soliman Al-Buthe is a citizen and resident of the Kingdom of Saudi Arabia. He remains a fugitive in this case. He too retained a criminal defense attorney during the investigation. That lawyer, Thomas Nelson, flew to Frankfurt, Germany to accompany *defendant Sedaghaty* back to the United States on August 15, 2007 and claimed to the media that he was *Sedaghaty's* lawyer.

An examination of defendant Sedaghaty's U.S. passport indicates that after leaving the United States in February 2003, he has traveled to Saudi Arabia, the United Arab Emirates, Oman, the Netherlands, and Germany.[10] Through counsel, defendant Sedaghaty has informed Pretrial Services that he has been living in Iran, Syria, Saudi Arabia and the United Arab Emirates while away from the United States. The United States has no extradition treaties with these countries. It should be noted that there do not appear to be any passport stamps in defendant Sedaghaty's seized passport indicating travel to Syria or Iran. This may indicate that defendant Sedaghaty has other passports.

While it is true that defendant Sedaghaty returned to the United States on his own volition, it is also true that he has been outside the United States for four and a half years, two and a half of which he was a fugitive from this Court.

The countries in which defendant Sedaghaty has been living and traveling,

---

to the U.S. 'soon'."

[10]The passport defendant Sedaghaty had in his possession when he was arrested was issued by the U.S. Consulate in Dubai, United Arab Emirates on January 21, 2004, prior to the indictment and arrest warrant. The travel documented above thus only reflects defendant's known international travels after January 2004. It is not known whether defendant, who is a dual citizen of Iran and the United States, has other passports, potentially including an Iranian passport.

especially Iran and Syria, are countries where it is extremely difficult for U.S. authorities to confirm important details of defendant Sedaghaty's activities abroad during the last four and a half years, such as where he has been living, what organizations or people he has been working for, and whether he may have access to funds in bank accounts or from associates.

**Community and Family Ties**

While prior to his departure from the United States in February 2003, defendant Sedaghaty maintained extensive ties to the Southern Oregon community, those ties should be viewed as considerably weakened given his intentional absence from that community and the United States for four and a half years. In addition, defendant Sedaghaty has had several wives in the past, and some at the same time. When he departed the United States in 2003, defendant Sedaghaty reportedly had two wives who appear to have also left the country that same year. U.S. Immigration checks indicate that neither of these two women have returned to the United States. Their whereabouts are unknown.

The point to be made is that, while he voluntarily returned to the United States, should he be released and reconsider his willingness to remain and litigate the charges, defendant Sedaghaty may well have a passport to travel on, family members to provide him safe harbor, and access to countries like Syria and Iran, where the United States will be unable to apprehend him.

**Access to Weapons**

During the February 2004 search warrant of AHIF-US, agents discovered a locked gunsafe. Inside the gunsafe were several weapons, including:

- four .9 mm semi-automatic Glock pistols;

- one .44 caliber Magnum revolver;

- one .9 mm semi-automatic Ruger pistol;

- one .12 gauge shotgun;

- two .22 caliber rifles;

- one .22 caliber semi-automatic Baretta pistol; and

- ammunition clips and ammunition.

These items were not seized because the weapons were lawfully registered to defendant Sedaghaty, who at the time had a concealed weapons permit. These weapons are now believed to be in the possession of one of the defendant's sons.

**The Charges**

Defendant Sedaghaty is presently charged with conspiracy to defraud the United States and tax fraud. If convicted, he faces up to eight years in prison. If the United States is able to prove to the sentencing court that defendant committed these offenses to promote an act of terrorism, application of the United States Sentencing Guidelines will result in a suggested sentencing range exceeding the statutory maximum sentence.[11]

**Unanswered Questions**

The dearth of information about defendant's travels, work, finances, and family connections, and his proven nefarious activities, are all important for this Court to

---

[11] Sentencing Guideline 3A1.4 states that if the offense in question "involved, or was intended to promote, a federal crime of terrorism," the offense level is elevated to 32.

consider in making an informed decision on whether defendant Sedaghaty is a viable candidate for pretrial release. Given defendant's actions in supporting a radical Islamist organization as its U.S. branch president for several years, as well as his affirmative support for the *mujahideen*, fair questions include:

- Has he traveled to other countries and, if so, why?
- Is he still in contact with individuals or organizations devoted to committing violent acts of *jihad*?
- Has he obtained passports issued by other countries?
- Will he continue his attempt to propagate violent forms of Islam by providing logistical, ideological or financial support? How can this be effectively monitored by Pretrial Services?
- Does he have access to funds from individuals or organizations devoted to these causes?
- Is his return to the United States solely to litigate the current case, or are there more sinister and dangerous motivations?

## Conclusion

Defendant Sedaghaty, who has been a fugitive for two and a half years, headed the United States headquarters of a supposed "charity" which supported terrorist enterprises throughout the world, and fostered a militant Islamic ideology in U.S. prisons. His detention is justified not just by his words, but by his actions, which evince a willingness to advance radical Islamic causes.

There are many ways that having an individual like defendant Sedaghaty in the United States can benefit international terrorist networks. There are no conditions

which this Court could impose upon him which will reasonably assure the safety of the community and his appearance at trial. The United States respectfully urges this Court to order that defendant Sedaghaty be detained pending trial.

DATED this 21st day of August, 2007.

                                        KARIN J. IMMERGUT
                                      United States Attorney

                                        /s/ Christopher L. Cardani
                                        CHRISTOPHER L. CARDANI
                                        Assistant United States Attorney