Thomas H. Nelson, OSB No. 78315 (nelson@thnelson.com)
P.O. Box 1211, 24525 E. Welches Road
Welches, OR  97067
Telephone: 503.622.3123; Fax: 503.622.1438

J. Ashlee Albies, OSB No. 05184 (Ashlee@AlbiesLaw.com)
205 S.E. Spokane Street, Suite 319
Portland, OR  97202
Telephone: 503.963.3751; Fax: 503.238.7501

David D. Cole, DC Bar No. 438355 (Cole@law.georgetown.edu)
c/o Georgetown University Law Center
600 New Jersey Avenue N.W.
Washington, D.C. 20001
Telephone: 202.662.9078

Lynne Bernabei, DC Bar No. 938936 (Bernabei@bernabeipllc.com)
Alan R. Kabat, DC Bar No. 464258 (Kabat@bernabeipllc.com)
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124
Telephone: 202.745.1942; Fax: 202.745.2627

Counsel for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| Al Haramain Islamic Foundation, Inc., and Multicultural Association of Southern Oregon, <br><br>           Plaintiffs, <br><br>      v. <br><br> United States Department of the Treasury, Henry M. Paulson, Jr., Office of Foreign Assets Control, Adam J. Szubin, United States Department of Justice, and Alberto R. Gonzales, <br><br>           Defendants. | Case No. CV '07 1155 AS <br><br> **COMPLAINT** |

Complaint – Page 1

# 16765

## Introduction

1.      Plaintiff Al Haramain Islamic Foundation, Inc. ("AHIF") is an Oregon non-profit charitable organization that seeks to promote greater understanding of the Islamic religion through operating prayer houses, distributing religious publications, and engaging in other charitable activities.  On February 19, 2004, defendants blocked AHIF's assets and announced that defendant Office of Foreign Assets Control ("OFAC"), a division of the Department of Treasury, was investigating AHIF for possible designation as a "specially designated global terrorist" ("SDGT").  Over the next six months, OFAC provided AHIF's counsel with part of the administrative record it was considering, but, over AHIF's objections, refused to provide AHIF with classified information in the administrative record, refused to provide any summary of the classified information, and failed to provide AHIF with any specification of the charges against it to which it might have responded.  Even though they had to speculate as to what OFAC might be concerned about, AHIF's counsel nonetheless provided OFAC with substantial information in AHIF's defense.  On September 9, 2004, OFAC designated AHIF as a "specially designated global terrorist," pursuant to the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.* ("IEEPA"), Executive Order 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001) ("E.O. 13,224"), and 31 C.F.R. Part 594 (regulations implementing E.O. 13,224).  OFAC never offered AHIF any formal statement of reasons for the designation, never specified for what conduct or under what specific provision of the Executive Order it had been designated, and never explained its analysis of the substantial evidence AHIF presented or even of OFAC's own administrative record evidence.  Under the statutory and regulatory scheme relied upon by OFAC, the executive branch could designate individuals or entities without statutory criteria, without a hearing, on the

Complaint – Page 2

basis of classified evidence of political associations, without more. Designation immediately freezes all of the entity's funds and other assets, thus effectively shutting it down and driving it out of business. It is a crime for any U.S. person to engage in any transaction with the designated entity.

2. Despite the fact that OFAC specifically advised AHIF that it could seek administrative reconsideration of its designation, and the regulations provide for such reconsideration, OFAC has never even adjudicated AHIF's two requests for reconsideration, filed in February and September 2005. OFAC has prohibited AHIF from making any use of its blocked assets, including to pay legal expenses associated with defending itself in the designation process and paying its financial obligations as they came due, and has also refused AHIF's requests to meet to discuss permission to distribute its assets to charitable institutions approved by the government in order to honor the religious motivations of those who donated to and volunteered their services for AHIF for religious charitable purposes.

3. Plaintiff AHIF seeks revocation of its designation on the grounds that the designation is not supported by the administrative record, and that the designation and review process violated its First, Fourth, and Fifth Amendment rights, including by failing to provide it with adequate notice of the charges against it or a meaningful opportunity to respond, by relying on classified evidence that AHIF had no opportunity to rebut, by illegally wiretapping privileged attorney-client communications between AHIF director Soliman H. Al-Buthi and AHIF attorneys in Washington, D.C., and then using the information illegally obtained in the wiretaps to designate, and by refusing to permit AHIF to pay for its own legal defense out of its frozen assets. Plaintiff Multicultural Association of Southern Oregon and its members seek to advocate on

Complaint – Page 3

AHIF's behalf and for its benefit in connection with this challenge to its designation, but is barred

from doing so by the threat that it will be designated or prosecuted if it aids AHIF in any way.  It

seeks declaratory and injunctive relief to permit it to engage in First Amendment-protected

activity without fear of prosecution or designation for doing so.

**Parties**

4.      Plaintiff Al Haramain Islamic Foundation, Inc., is an Oregon non-profit

corporation, incorporated on February 11, 1999, with its former headquarters in Ashland,

Oregon, where it conducted its business.

5.      Plaintiff Multicultural Association of Southern Oregon ("MCASO") is an Oregon

public benefit corporation with members, incorporated in 1995 and operating in Medford, OR.  It

is a non-profit 501(c)(3) organization.  It sues on its own behalf and on behalf of its members.

MCASO's objectives include serving as a catalyst in the southern Oregon community to promote

understanding and appreciation between cultures in order to reduce racism, promote and support

multicultural education, and provide forums for problem solving related to intercultural

differences.  MCASO engages in First Amendment speech through its website, www.mcaso.org,

through its online and print newsletter, through Internet radio broadcasts on KSKQ Radio

(www.kskq.org), and through sponsoring or participating in community outreach activities.

MCASO's outreach includes the multicultural Youth Activities program, which provides summer

day and overnight camps for local children, participating in the annual Multicultural Fair in

Medford, and co-sponsoring the local Martin Luther King Day Celebration each January.  Prior to

AHIF's designation, MCASO was a co-sponsor or participant with AHIF in such community

outreach activities, and MCASO and its members would continue to cooperate similarly were it

Complaint – Page 4

not for AHIF's designation. MCASO also serves as the financial sponsor for Dude (Disabled United in Direct Empowerment), a disability advocacy group; the Southern Oregon Asian Cultural Association; Ballet Folklorico, a traditional Mexican folk dance group; and the Long Way Home project in Guatemala.

6.     Defendant United States Department of the Treasury is responsible for implementing and administering the Global Terrorism Sanctions regulations, 31 C.F.R. Part 594, and, through its Office of Foreign Assets Control, for designating entities and individuals as Specially Designated Global Terrorists, and enforcing economic sanctions against designated individuals and entities.

7.     Defendant Henry M. Paulson, Jr., is sued in his official capacity as Secretary of the Treasury. He is responsible for designating individuals and entities, in consultation with the Secretary of State, the Attorney General, and the Secretary of Homeland Security, and is responsible for administering and enforcing the Global Terrorism Sanctions regulations, 31 C.F.R. Part 594.

8.     Defendant Office of Foreign Assets Control, a division of the United States Department of the Treasury, is responsible for implementing and administering the Global Terrorism Sanctions regulations, 31 C.F.R. Part 594, for designating entities and individuals as Specially Designated Global Terrorists, and for enforcing economic sanctions against designated individuals and entities.

9.     Defendant Adam J. Szubin is sued in his official capacity as the Director of the Office of Foreign Assets Control. He is responsible for designating individuals and entities, in consultation with the Secretary of Treasury, the Secretary of State, the Attorney General, and the

Secretary of Homeland Security, and is responsible for administering and enforcing the Global

Terrorism Sanctions regulations, 31 C.F.R. Part 594.

10.    Defendant United States Department of Justice is responsible for investigating and

prosecuting criminal violations of federal laws, including IEEPA.

11.    Defendant Alberto R. Gonzales is sued in his official capacity as the Attorney

General of the United States. He is responsible for designating individuals and entities, in

consultation with the Secretary of the Treasury, the Secretary of State, the Secretary of Homeland

Security, and for prosecuting criminal violations of federal laws, including IEEPA.

## Jurisdiction and Venue

12.    This action arises under the U.S. Constitution, IEEPA, 50 U.S.C. §§ 1701-1707,

and the Administrative Procedures Act, 5 U.S.C. § 551 et seq.   This Court has jurisdiction

pursuant to 28 U.S.C. §§ 1331 and 1361.

13.    This Court may grant declaratory relief pursuant to the Declaratory Judgment Act,

28 U.S.C. § 2201 *et seq.,* and Fed. R. Civ. P. Rule 57. This Court may grant injunctive relief

pursuant to Fed. R. Civ. P. Rule 65.

14.    Venue lies in the District of Oregon, the federal judicial district in which plaintiff

AHIF is incorporated and headquartered and where the actions complained of occurred.

## Factual Background: The Statutory and Regulatory Framework

15.    The International Emergency Economic Powers Act authorizes the President to

declare a national emergency with respect to "any unusual and extraordinary threat, which has its

source in whole or in substantial part outside the United States, to the national security, foreign

policy, or economy of the United States." 50 U.S.C. § 1701(a).  When the President has declared

Complaint – Page 6

such an emergency, he "may, under such regulations as he may prescribe, by means of

instructions, licenses, or otherwise . . . block . . . , regulate, . . . nullify, void, prevent or prohibit,

any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or

exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or

transactions involving, any property in which any foreign country or a national thereof has any

interest, or with respect to any property, subject to the jurisdiction of the United States . . . ." 50

U.S.C. § 1702(a)(1)(B).

 16. On September 23, 2001, President George W. Bush issued Executive Order

13,224, 66 Fed. Reg. 49079 ("E.O. 13,224"), declaring a national emergency in connection with

the September 11, 2001 terrorist attacks.  Section 2(a) of the Executive Order states that "any

transaction or dealing by United States persons or within the United States in property or interests

in property blocked pursuant to this order is prohibited, including but not limited to the making or

receiving of any contribution of funds, goods, or services to or for the benefit of those persons

listed in the Annex to this order or determined to be subject to this order."  The Executive Order

initially designated 27 individuals and entities, and also authorized the Secretary of the Treasury

to designate other groups or individuals for engaging in terrorism, for providing material support

to anyone on the designated list - regardless of the purpose of the support - and even for being

"otherwise associated" with an entity or individual on the list.  OFAC has admitted to designating

individuals or groups based solely on a finding that they were "otherwise associated" with other

groups on the list.  On information and belief, OFAC has also relied on the "otherwise associated"

provision in conjunction with other provisions to designate groups or individuals. Because OFAC

issues no formal statement of reasons for any of its designations, AHIF does not know the legal or

Complaint – Page 7

factual basis of its designation.

17.     IEEPA authorizes the Secretary of the Treasury to freeze the assets of an

individual or entity pending investigation, without specifying any standard of suspicion necessary

for such a freeze, and without requiring that the entity be provided with notice or a meaningful

opportunity to contest the freeze. *See* IEPPA § 1702.

18.     There is no definition in IEEPA of the term "Specially Designated Global

Terrorist," the designation used against AHIF.

19.     Regulations implementing E.O. 13,224 were promulgated by the Department of

the Treasury on June 6, 2003. *See* 68 Fed. Reg. 34,196. These regulations, entitled the "Global

Terrorism Sanctions Regulations," are located at 31 C.F.R. Part 594, and follow the model of the

Executive Order with little added detail. Neither IEEPA, the regulations, nor the Executive Order

require the Secretary of the Treasury to provide any statement of reasons for a designation.  Nor

do IEEPA, the regulations, or the Executive Order require that entities or individuals be provided

with notice of the specific provisions under which they have been designated.  Neither IEEPA, the

regulations, nor the Executive Order specify what if any basis for suspicion the Secretary of the

Treasury must have to freeze an entity's or individual's assets pending investigation.

20.     31 C.F.R. § 501.807 sets forth procedures governing removal of names from

OFAC's listing of Specially Designated Global Terrorists and authorizes designated entities or

persons to seek administrative reconsideration with OFAC.  However, these procedures impose

no limits or standards whatsoever on OFAC for its review of a petitioner's request for

administrative reconsideration and create no procedural safeguards for the review process.

21.     31 C.F.R. § 594.204 states that transactions involving property of blocked persons

Complaint – Page 8

described under section 594.201 are prohibited, "including but not limited to the making or receiving of any contribution of funds, goods, or services to or for the benefit of persons whose property or interests in property are blocked pursuant to § 594.201(a)."

22.    31 C.F.R. § 594.406 states that the "prohibitions on transactions or dealings involving blocked property contained in sections 594.201 and 594.204 apply to services performed in the United States or by U.S. persons, wherever located," and states that "U.S. persons may not . . . provide legal, transportation, public relations, educational, or other services to a person whose property or interests in property are blocked." 31 C.F.R. § 594.409 expressly bars humanitarian aid to blocked parties: "no charitable contribution or donation of funds, goods, services, or technology, including those to relieve human suffering, such as food, clothing, or medicine, may be made to or for the benefit of" a person whose property is blocked.

23.    Section 206 of IEEPA states that a "civil penalty not to exceed $10,000 may be imposed on any person who violates, or attempts to violate, any license, order, or regulation issued under" IEEPA, 50 U.S.C. § 1705(a), and that "[w]hoever willfully violates, or willfully attempts to violate, any license, order, or regulation issued under [IEEPA] shall, upon conviction, be fined not more than $50,000 or, if a natural person, may be imprisoned for not more than ten years, or both; and any officer, director, or agent of any corporation who knowingly participates in such violation may be punished by a like fine, imprisonment, or both," *id.* § 1705(b); *see also* 31 C.F.R. § 594.701.

## AHIF's Status and Incorporation

24.    On February 11, 1999, AHIF was incorporated as a nonprofit public benefit corporation under Oregon law. AHIF's restated articles of incorporation specify that "Al-

Haramain Islamic Foundation, Inc., stands against terrorism, injustice, or subversive activities in any form, and shall oppose any statement or acts of terrorism. Al Haramain Islamic Foundation, Inc., believes such conduct is contrary to Islamic principles." AHIF has never been a subsidiary of any other corporation or other entity. AHIF was certified by the Internal Revenue Service as a 501(c)(3) tax exempt organization on December 7, 2000.

25.    AHIF was headquartered in Ashland, Oregon. AHIF distributed and published books and pamphlets on Islamic issues, including the Koran, owned and operated a prayer house in Ashland, and was (and is) a partial owner of a prayer house in Springfield, Missouri. AHIF also distributed publications authored and/or donated by the Al-Haramain Foundation (Saudi Arabia) ("AHF-SA"), a separate legal entity based in Riyadh, Saudi Arabia. AHF-SA donated some funds to support AHIF's charitable operations. AHIF duly reported those contributions on its financial statements and federal tax returns.

26.    On March 11, 2002, the United States designated Al Haramain - Somalia and Al Haramain - Bosnia as "Specially Designated Global Terrorists." Neither AHIF nor AHF-SA was designated at that time. Then-Secretary of the Treasury Paul O'Neill stated that AHF-SA was not being designated because it "is dedicated to promoting Islamic teachings." On January 22, 2004, the United States designated Al Haramain - Indonesia, Al Haramain - Kenya, Al Haramain - Tanzania, and Al Haramain - Pakistan. AHIF never worked with or supported any of these designated entities. As noted above, AHIF did receive donations from AHF-SA, but OFAC never designated AHF-SA.

27.    On February 18, 2004, OFAC announced that "all assets and real property" of AHIF "are blocked pending investigation pursuant to Section 106 of the USA PATRIOT Act of

Complaint – Page 10

2001, Pub. L. No. 107-56 (October 26, 2001)." Beyond issuing a generic press release, OFAC

provided no statement of reasons, no evidence, and no findings in support of this blocking order.

That same day federal agents conducted a search of the Ashland headquarters of AHIF, and

removed all of AHIF's records, some computers, and a number of boxes of publications and

documents.

28.    On March 10, 2004, the law firm of Bernabei & Katz PLLC, applied to OFAC for

a license, pursuant to 31 C.F.R. § 501.801, to represent AHIF with respect to the blocking of its

assets and other governmental investigations. OFAC granted the license on July 16, 2004. In a

letter dated May 18, 2004, Director Newcomb had stated that AHIF's blocked assets could be

used to reimburse AHIF's counsel for "legal representation involving the blocking action taken by

OFAC." However, the license as issued contradicted that representation by requiring that all

payments to the licensee "must not originate from a source within the United States or within the

possession or control of a U.S. person, including its overseas branches, and must not be made

from a blocked account or from other blocked property." By letter dated August 20, 2004,

Director Newcomb reiterated that AHIF's counsel could only be paid through so-called "fresh,"

non-blocked, foreign funds, and not from any U.S. funds or any of AHIF's own funds. OFAC has

in the past allowed the use of blocked funds to pay attorneys fees in similar cases, and this refusal

prevents AHIF from effectively defending itself and its due process rights in course of designation

proceedings.   AHIF has had difficulty paying counsel, because it cannot use its own funds, cannot

raise funds in the United States, and must seek compensation outside the country.

29.    On April 23, 2004, Richard Newcomb, then-Director of OFAC, submitted to

AHIF's counsel 154 pages of "unclassified information" that OFAC said it was relying upon in

"considering designating the Al Haramain Foundation branch office in Oregon as a Specially

Designated Global Terrorist pursuant to Executive Order 13,224 and the International Emergency

Economic Powers Act, 50 U.S.C. § 1701 *et seq.*" OFAC also stated that it was relying on

"classified documents that are not authorized for public disclosure." OFAC did not disclose those

documents to AHIF's counsel under a protective order nor did it give AHIF's counsel an

unclassified summary of the classified documents; indeed, OFAC gave no idea whatsoever of

what the documents contained. The documents actually disclosed to counsel as the unclassified

administrative record contained no evidence of any links to terrorism or terrorist groups. In a

letter accompanying the unclassified information, Director Newcomb informed AHIF that it had

21 days to submit information for OFAC's consideration "prior to making the designation

determination." OFAC did not provide AHIF any specification of the charges against it, or even

identify the provisions of the Executive Order OFAC was considering as a basis for designating

AHIF. As a result, AHIF had no notice of the basis for OFAC's consideration, and had to

respond as best it could in the absence of any meaningful notice.

   30.  On May 3, 2004, counsel for AHIF requested a thirty-day extension of time, from

May 14, 2004, to June 14, 2004, to submit materials in response to Director Newcomb's April

23, 2004 letter. OFAC did not respond to this request until after the date for response, May 14,

2004, had passed.

   31.  On May 14, 2004, counsel for AHIF submitted an initial response, in which they

noted that the unclassified documents disclosed by OFAC contained no evidence linking AHIF to

terrorism  In addition, AHIF objected to the absence of legal standards governing OFAC's

designation decisions, and to OFAC's reliance on classified documents, particularly where, as

Complaint – Page 12

here, the unclassified documents provided no evidence that would warrant designation. OFAC never provided a substantive response to the arguments and assertions made in this letter, or indeed to any of AHIF's subsequent submissions.

32.     AHIF's May 14, 2004 submission also objected to OFAC's reliance on unreliable and irrelevant hearsay evidence. For example, OFAC's administrative record included a number of news articles about events occurring in 1998 concerning an entity in Albania that called itself "Al Haramain," but lacked any information connecting that entity with AHIF. The corporation did not even exist in 1998, and never had any dealings with the Albanian entity.

33.     Without notice of the charges against it, or even of the provisions of the Executive Order OFAC was considering, and without access to the classified evidence, AHIF was forced to speculate as to the basis of OFAC's concern, by relying on the unclassified record, press accounts, and reports of a pending investigation in Oregon. It speculated that the government might be concerned about two of its activities: its distribution of Korans to persons, including but not limited to persons incarcerated in American prisons, and its participation in a humanitarian fundraising project for refugees in Chechnya.

34.     OFAC appeared to consider inflammatory some language in an appendix to the Korans that AHIF distributed. AHIF maintained that all of the language in the Korans and all appendices was constitutionally protected speech, as it was not intended to or likely to incite imminent lawless conduct. *Brandenburg v. Ohio*, 395 U.S. 444 (1969). Indeed, there was no evidence that the Korans or their appendices had contributed in any way to violent activities of any sort. Moreover, the Korans in question, including the appendices, were translated and published by organizations other than AHIF.

Complaint – Page 13

35.    AHIF also established that its participation in the Chechnya project did not involve any designated entities, was officially approved by the Saudi Arabian and Russian governments, was undertaken exclusively for humanitarian purposes, and had nothing to do with terrorist or violent activities.  In 2000, AHIF transferred approximately $180,000 to AHF-SA for Chechen humanitarian relief activities.  AHIF submitted to OFAC a series of documents accounting for all the funds and establishing that AHIF's work was part of a Saudi Arabian government project that was approved at the highest governmental levels.  The project that AHIF assisted was formally approved in 1999 by a Memorandum of Understanding between the Saudi Joint Relief Committee for Kosovo and Chechnya ("SJRC"), a Saudi Arabian governmental entity, and the Russian government in Chechnya.  The Memorandum permitted the SJRC to provide humanitarian aid to refugees in the region with funds provided by AHIF and other Muslim charities.  The SJRC has never been designated as a terrorist entity.  OFAC's unclassified administrative record contained no evidence of any misuse of those funds after the funds left the control of AHIF officers Pirouz Sedaghaty and Soliman Al-Buthi.

36.    In its May 14, 2004, response, AHIF submitted the following documents:  (1) a memorandum from Crown Prince Abdullah bin Abdulaziz Al-Saud (now King Abdullah), dated November 9, 1999, which reported on favorable discussions with the Russian Ambassador, and ordered the SJRC to provide humanitarian aid to the Chechen refugees; (2) a memorandum from the SJRC, through Prince Turki bin Fahd bin Jilawi Al-Saud, dated November 30, 1999, which requested that AHF-SA collect donations for Kosovo and Chechnya, and set forth guidelines for raising and accounting for the donations; (3) a Memorandum of Understanding, between the Russian Ministry of Civil Defense Affairs and the SJRC, dated December 8, 1999, which allowed

the SJRC to provide humanitarian aid in Northern Chechnya with the cooperation of the Russian Ministry; (4) a document, dated January 1, 2000, recording the meeting of the SJRC Chechnya Committee and setting forth its approved action plan for relief in Chechnya; and (5) receipts issued by AHF-SA to AHIF for funds transferred by AHIF to AHF-SA for these relief efforts. These receipts confirm that the funds were in fact turned over to AHF-SA and spent on humanitarian relief for the Chechen refugees.

37.     By letter dated May 18, 2004, but mailed on May 20, 2004 (six days after the due date that AHIF had sought to extend had passed), OFAC Director Newcomb informed AHIF that its time to respond to OFAC's notice of intent to designate AHIF as an SDGT had been extended for only two weeks, until May 28, 2004.

38.     On May 27, 2004, AHIF provided OFAC with authenticated translations of three Arabic-language documents that had been submitted with its May 14, 2004, letter.

39.     On May 28, 2004, AHIF further supplemented its response. AHIF reiterated its legal objections to OFAC's designation process, and provided several acknowledgment letters from the public and college libraries that had received AHIF's publications.

40.     On July 23, 2004, Director Newcomb mailed AHIF's counsel "additional unclassified material" that OFAC was considering in determining whether to designate AHIF, and gave AHIF only seven days to provide a response. The unclassified material consisted of 44 newspaper articles and Internet commentaries. Only one of the 44 articles was about AHIF itself, and did not present any evidence of terrorist activities. Slightly more than half (26) of these articles related to activities of entities other than AHIF in Chechnya. Twelve articles related to activities of other charities in other countries. Two related to the indictment and trial of Sami Al-

Hussayen, a Saudi Arabian student in Idaho charged with providing material support to terrorists

groups by posting links on a website; however, Mr. Al-Hussayen had been acquitted on all

terrorism charges on June 10, 2004, well before the date of Director Newcomb's letter  Three

articles related to AHF-SA and charities other than AHIF.   As before, OFAC provided no notice

of the charges or provisions these materials purportedly related to, nor any explanation as to how

any of this material was relevant to its designation consideration.  AHIF was again forced to

respond without knowing with what OFAC was effectively charging it.

    41.    AHIF's counsel did not receive the mailed supplemental administrative record

from OFAC until July 26, 2004, and therefore had only four days to file a response.  Many of the

documents were in foreign languages without translations.   Accordingly, AHIF requested an

extension from July 30, 2004 to August 13, 2004.  OFAC granted an extension only to August 4,

2004.

    42.    On August 4, 2004, AHIF submitted a preliminary response to OFAC's

supplemental disclosure, but also noted that it needed additional time to translate documents in

foreign languages and to consult with the clients, translators, and experts, some in foreign

countries.  AHIF objected to OFAC's consideration of the many documents that did not refer to

AHIF, and also objected that the newspaper articles were unreliable hearsay.  AHIF argued that

many of the documents related to the activities of AHF-SA, over which AHIF had no control, or

of overseas Al Haramain entities, with which AHIF had no business whatsoever.  AHIF

responded to the few articles in OFAC's supplemental administrative record that actually

mentioned AHIF.  Several of these referred to AHIF in the context of writing about Sami

Al-Hussayen, the Saudi Arabian student acquitted of all terrorism support charges by a federal

jury in Idaho. Mr. Al-Hussayen has never been designated as a terrorist. These articles made no assertion regarding any illegal, much less terrorist, activities of AHIF. Other articles mentioned AHIF only in passing. One article, which did not even mention AHIF, was an opinion piece written by investigators for plaintiffs who were suing AHIF and numerous other entities in a civil action in New York. Another article simply reported unproven allegations made by the plaintiffs in that civil action. In that litigation plaintiffs have presented no evidence that AHIF was engaged in terrorist activities or supported any designated entities.

43.     AHIF's August 4, 2004 submission also noted that it was in the process of translating two Russian-language documents referenced in its earlier submissions (including a bilingual Arabic-Russian document), and provided OFAC with another Russian document, a certificate of the Russian Federation's Ministry of Justice, dated October 30, 2000, which confirmed that the Saudi Arabian Red Crescent was registered with the Russian government to operate within the Russian Federation. This document contradicted several newspaper articles in OFAC's supplemental disclosure that alleged that the Saudi Arabian Red Crescent and AHF-SA's operations in Chechnya were illegal or supported terrorist activities.

44.     At 3:00 p.m. on Friday, August 20, 2004, Director Newcomb provided AHIF's counsel with yet another supplementation of the administrative record, this one numbering some 70 pages. OFAC stated that AHIF would only have until 9:00 a.m. on Monday, August 23, 2004, to submit any response. That same day, AHIF's counsel objected that responding over the weekend was impossible and that both attorneys who were representing AHIF would be out of town the following week and would be unable to review the documents or discuss them with the clients. AHIF requested an extension to September 13, 2004 to provide its response.

Complaint – Page 17

45.      Among the materials received on August 20, 2004, from OFAC was a document stamped "top secret."  The document related to intercepted, legally privileged communications between an AHIF director, Soliman H. Al-Buthi, and several AHIF attorneys in Washington, D.C. A copy of this document has been filed under seal with the U.S. District Court for the District of Oregon in a challenge brought by plaintiff AHIF and others to the National Security Agency's warrantless wiretapping program.  [CV-06-274-KI]  Pursuant to an order of the Judicial Panel on Multi-District Litigation, that case has since been assigned to Judge Vaughn Walker of the U.S. District Court for the Northern District of California [CV-07-109-VRW].

46.      On August 24, 2004, OFAC denied AHIF's request for an extension of time. OFAC Director Newcomb noted:  "If OFAC ultimately determines to designate al Haramain as an SDGT, al Haramain will have the right to seek an administrative reconsideration of its designation and may submit additional material at that time."

47.      On August 31, 2004, AHIF supplemented its prior responses to OFAC by submitting the supplemental report of the 9/11 National Commission on Terror Attacks Upon the United States ("Supplemental Report"), which discussed the investigation of AHIF.  AHIF noted that nowhere in the report was there any allegation that AHIF was involved in terrorist activities or the funding or support of terrorist activities or designated entities or persons.

48.      Also on August 31, 2004, AHIF provided OFAC with authenticated translations of two Russian language documents that AHIF had previously provided to OFAC on May 14, 2004 and August 4, 2004, relating to the Russian-Saudi Arabian humanitarian relief projects in Chechnya.  The first document was the Memorandum of Understanding between the SJRC and the Ministry of the Russian Federation for Civil Defense, dated December 8, 1999 referenced in

Complaint – Page 18

paragraph 35, which allowed the SJRC to operate in Chechnya in cooperation with the Russian Ministry. The second document was the Certificate of the Russian Federation's Ministry of Justice, referenced in paragraph 43, which allowed the Saudi Arabian Red Crescent to operate within the territory of the Russian Federation, dated October 30, 2000.

49.    On September 7, 2004, AHIF provided OFAC with the Declaration of Vladimir Matusevitch, a Russian dissident and former head of the Russian Broadcasting Service for Radio Liberty (a U.S. government-funded entity). Dr. Matusevitch cited several articles in Moscow newspapers that reported on meetings between the SJRC and the Russian Ministry for Civil Defense that led to the Russian government allowing the SJRC to provide humanitarian aid in Chechnya. Dr. Matusevitch discussed several other articles in the Russian press that acknowledged the Saudi Arabian government's positive charitable efforts in Chechnya. AHIF presented Dr. Matusevitch's affidavit, and the attached articles, as further evidence that the funds provided by AHIF to the SJRC (through AHF-SA) were used for humanitarian projects and authorized by the Russian government.

50.    On September 16, 2004, OFAC Director Newcomb informed AHIF's counsel that OFAC had designated AHIF as an SDGT on September 9, pursuant to Executive Order 13,224 (2001). OFAC provided no statement of reasons, enumerated no charges, specified no provision of E.O. 13,224 that AHIF had allegedly transgressed, and offered no explanation of any of the evidence AHIF had submitted, or of OFAC's own administrative record materials. In short, OFAC provided no discussion whatsoever of the evidence in the record, either that submitted by AHIF or collected by OFAC. A press release issued simultaneously made reference to AHIF's Chechen aid, and quoted Stuart Levey, Department of Treasury Undersecretary for Terrorism and

Complaint – Page 19

Financial Intelligence, as stating, without reference to anything in the record, "The investigation shows direct links between the U.S. branch [AHIF] and Usama bin Laden." There was no mention of any such link, direct or otherwise, in any of the unclassified material OFAC had provided to AHIF's counsel.

51.    Material contained in the top-secret log of illegally intercepted telephonic communications OFAC inadvertently released on August 20 suggests a basis for Mr. Levey's "direct links" assertion. On information and belief, Mr. Levey's press release assertion was based on a misunderstanding of the privileged and illegally intercepted attorney-client conversations between Mr. Al-Buthi and his attorneys.

52.    As a result of the designation, all assets of AHIF, including all real and personal property, and all funds and accounts, are blocked, and all transactions involving property in which AHIF has an interest are prohibited without specific authorization from OFAC. AHIF was also required to submit, within ten business days, an inventory of all blocked AHIF property. In effect, the designation drove AHIF out of business.

53.    On September 9, 2004, OFAC also designated AHIF Director Soliman Al-Buthi as an SDGT. No statement of reasons was provided for Mr. Al-Buthi's designation, nor did OFAC specify under which provision of E.O. 13,224, if any, Mr. Al-Buthi had been designated. Mr. Al-Buthi's attorney, Thomas Nelson, then obtained a license from OFAC to represent Mr. Al-Buthi.

54.    On September 30, 2004, AHIF submitted an inventory of the personal property located on or in the real property owned by AHIF in Ashland, Oregon. On November 8, 2004, AHIF supplemented its inventory to indicate those items that belonged to AHIF as opposed to those that belonged to other individuals.

Complaint – Page 20

55.     On October 7, 2004, two FBI agents visited the law office of Lynne Bernabei, one of the attorneys for plaintiff AHIF, and informed her that the document discussed in paragraph 45 had been inadvertently released, and requested its return.  Ms. Bernabei returned the copies of the document in her possession.  She also prepared and hand-delivered a letter to the FBI explaining the circumstances involving her distribution of the document.

56.     On October 13, 2004, an FBI agent told Ms. Bernabei that she could inform her co-counsel that the FBI would be visiting them to retrieve their copies of the document that OFAC said had been inadvertently disclosed.

57.     Upon information and belief, the United States government made no effort to retrieve any copies of the classified document(s) that had been sent to recipients located outside the United States.

58.     On February 14, 2005, AHIF wrote to OFAC pursuant to 31 C.F.R. § 501.807, to supplement the administrative record, and to request reconsideration of OFAC's September 9, 2004 designation of AHIF.  AHIF's submission included materials that it had previously submitted after OFAC's arbitrary deadline of August 24, 2004, including AHIF's two letters dated August 31, 2004, and attachments thereto; and AHIF's letter dated September 7, 2004, and attached Declaration of Vladimir Matusevitch.  AHIF also provided additional evidence relating to AHIF's participation in the Chechen relief efforts, including documentation showing that AHIF's transfer of funds to AHF-SA was documented and properly executed by the relevant financial institutions at each step of the process.

59.     AHIF's request for reconsideration also pointed out that an insufficient basis existed for the designation of AHIF, since the unclassified administrative record consisted mostly

of hearsay evidence and information about AHF-SA and other overseas entities, with little if any reliable or inculpatory information about AHIF itself with respect to the criteria set forth in E.O. 13,224. None of the evidence showed that AHIF intentionally provided assistance to any entity with knowledge that the recipient was designated, or that the recipient engaged in terrorist activities or support of terrorism, nor did any evidence show any act or intent on AHIF's part to support terrorist activity of any kind.

60.    OFAC never responded to or ruled upon AHIF's requests to supplement the record or for administrative reconsideration, even though it had previously informed AHIF that it had the right to obtain an administrative review of its designation by submitting additional information and requesting reconsideration.

61.    On February 17, 2005, the U.S. Attorney for the District of Oregon filed an indictment of AHIF and two of its officers, Soliman Al-Buthi and Pirouz Sedaghaty (also known as Pete Seda), No. CR 05-60008-HO, charging them with regulatory offenses, but no terrorism offenses. AHIF was charged with filing a false tax return for the year 2000, and with conspiracy to defraud the United States based on the transactions underlying the aforementioned Chechen humanitarian efforts. The government sought forfeiture of property involved in or traceable to the alleged violations, *i.e.*, $130,000. However, on August 4, 2005, the U.S. Attorney moved to dismiss the indictment of AHIF. The U.S. District Court for the District of Oregon granted the government's request, so that AHIF is no longer a defendant in any criminal proceeding. The United States government filed a redacted indictment that removed any reference to AHIF as a defendant.

62.    On May 20, 2005, attorney Thomas Nelson wrote to OFAC to make several

Complaint – Page 22

requests regarding the property of AHIF. Mr. Nelson, based on his belief that AHIF's property in Ashland was deteriorating due to lack of maintenance and security, requested that OFAC (1) allow the personal property stored on AHIF's premises but belonging to other individuals to be removed or otherwise protected; (2) allow the religious publications belonging to AHIF to be distributed at no cost to appropriate recipients; (3) expedite the sale of AHIF's real property; and (4) release the proceeds of the sale of AHIF's real property for the legal defense of AHIF and Mr. Al-Buthi. OFAC allowed the personal property to be removed, but otherwise did not provide a substantive response to this request. In February 2006, AHIF filed suit in the U.S. District Court for the District of Oregon to challenge the refusal to release the religious publications. In July 2006, in response to litigation, OFAC agreed that the religious publications could be released to Mr. Nelson and distributed.

63.     On September 21, 2005, AHIF submitted its second request to supplement the administrative record, and to request a final agency decision on its still pending initial request for administrative reconsideration. It submitted pleadings filed on January 17, 2005 by the SJRC with the U.S. District Court for the Southern District of New York in *In re* Terrorist Attacks on Sept. 11, 2001, Docket No. MDL-1570 (RCC) (S.D.N.Y.). Those materials corroborated AHIF's account of the Chechen relief effort in its earlier submissions. They included a declaration of Dr. Al Swailem, then head of the Saudi Arabian Red Crescent, stating that the Chechen relief project that AHIF supported was an officially approved government project. AHIF further noted that because AHF-SA itself has never been designated by the United States, it was unclear how AHIF, which did no more than forward funds to AHF-SA for humanitarian purposes in Chechnya, could be designated as an SDGT based on those actions.

Complaint – Page 23

64.     On August 30, 2006, attorney Thomas Nelson wrote to OFAC Director Szubin requesting, among other things, a meeting to discuss the release of impounded AHIF funds to undesignated entities in order to accomplish the purpose of the donors of such funds.  OFAC failed to agree to such a meeting and since that time has taken no steps to discuss or to release the funds.  Moreover, as of the date of this complaint, OFAC has not responded to any of AHIF's requests to supplement the record or for administrative reconsideration.

65.     MCASO and its members consider AHIF to have been an important organization in the community, with which it worked to promote diversity.  They would like to continue to work with AHIF in its former activities, which were legal and included promoting understanding about Muslims in the broader southern Oregon community.  They would also like to speak out in the public community in support of AHIF's designation challenge and to volunteer their time to work on AHIF's behalf and for its benefit, by speaking to the press, holding demonstrations, and contacting the government. They are deterred from doing so, however, by the fact that such conduct could render them vulnerable to being designated under E.O. 13,224 or prosecuted for violating IEEPA and E.O. 13,224.  They also believe it is their First Amendment right to work with AHIF to promote understanding of different cultures, including Muslims, in the broader southern Oregon community, but are prohibited from doing so for fear of legal consequences under the laws and regulations challenged here.

**COUNT I     THE DESIGNATION OF AHIF WAS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND WAS ARBITRARY AND CAPRICIOUS.**

66.     Plaintiffs incorporate as though fully restated herein each of the allegations stated in paragraphs 1 through 65 above.

67.    Defendants' designation of AHIF was unsupported by substantial evidence, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, in violation of the Administrative Procedure Act, 5 U.S.C. § 701, et seq., IEEPA, 50 U.S.C. § 1701(a), and E.O. 13,224, because OFAC's administrative record contained no evidence that AHIF engaged in terrorist activity or knowingly provided material support to terrorism or to any designated entity or individual.

### COUNT II    THE BLOCKING OF AHIF'S ASSETS AND ITS DESIGNATION VIOLATED ITS FIFTH AMENDMENT RIGHT TO DUE PROCESS.

68.    Plaintiff hereby incorporates as though restated each of the allegations in paragraphs 1 through 65 above.

69.    Defendants violated AHIF's Fifth Amendment due process rights by, inter alia, failing to provide AHIF with adequate notice of the charges against it, by affording it inadequate time to respond to the administrative record, by failing to provide any statement of reasons for OFAC's decision, by failing to explain its assessment of AHIF's submitted evidence or its own administrative record materials, by relying on classified evidence that afforded AHIF no meaningful opportunity to respond, and by failing to rule on its motions for reconsideration,

### COUNT III    OFAC'S REFUSAL TO ALLOW AHIF OR AHIF'S OFFICERS TO USE AHIF'S ASSETS FOR THEIR LEGAL DEFENSE VIOLATES DUE PROCESS AND IS ARBITRARY AND CAPRICIOUS.

70.    Plaintiff incorporates as though fully restated herein each of the allegations stated in paragraphs 1 through 65 above.

71.    OFAC's refusal to allow AHIF and its officers to use their frozen assets for their defense in connection with OFAC's designation violates AHIF's Fifth Amendment due process

Complaint – Page 25

rights and is arbitrary, capricious, and otherwise not in accordance with the law under the

Administrative Procedures Act, 5 U.S.C. § 551, et seq.

### COUNT IV    THE DESIGNATION OF AHIF WAS BASED ON INTERFERENCE WITH PRIVILEGED ATTORNEY-CLIENT COMMUNICATIONS, AND THEREFORE VIOLATES DUE PROCESS.

72.    Plaintiff hereby incorporates as though restated each of the allegations in

paragraphs 1 through 65, above.

73.    The classified document disclosed to AHIF's counsel reflected illegal interference

in a privileged attorney-client communication, and to the extent that the designation was based on

that interference, it violates the Fifth Amendment guarantee of due process.

### COUNT V    THE DESIGNATION OF AHIF VIOLATED ITS FIRST AMENDMENT RIGHTS TO FREEDOM OF SPEECH AND FREEDOM OF ASSOCIATION BECAUSE THE DESIGNATION WAS IMPERMISSIBLY BASED ON AHIF'S ADVOCACY AND ASSOCIATIONS.

74.    Plaintiff incorporates as though fully restated herein each of the allegations stated

in paragraphs 1 through 65 above.

75.    On information and belief, Defendants' designation of AHIF as an SDGT was

based on AHIF's protected First Amendment activities and to that extent violated its First

Amendment rights of free speech and free association.

### COUNT VI    THE DESIGNATION OF AHIF VIOLATED ITS FIRST AND FIFTH AMENDMENT RIGHTS BECAUSE THE CRITERIA FOR DESIGNATION SET FORTH IN EXECUTIVE ORDER 13,224 ARE UNCONSTITUTIONALLY VAGUE AND OVERBROAD.

76.    Plaintiff incorporates as though fully restated herein each of the allegations stated

in paragraphs 1 through 65 above.

77.    At the time AHIF was designated, Executive Order 13,224, allowed the

Complaint – Page 26

designation of groups based on findings that they were "otherwise associated" with other designated entities, or had provided material support or services to designated entities, without regard to the character or intent of the association or support. These terms are unconstitutionally vague and overbroad on their face and as applied to AHIF, and therefore violate its First and Fifth Amendment rights.

**COUNT VII    THE DESIGNATION OF AHIF VIOLATES AHIF'S FIRST AND FIFTH AMENDMENT RIGHTS BY PUNISHING AHIF FOR ITS ASSOCIATIONS AND CONDUCT WITHOUT PROOF THAT AHIF SOUGHT TO FURTHER THE UNLAWFUL ENDS OF ANY DESIGNATED ENTITY.**

78.    Plaintiffs incorporate as though fully restated herein each of the allegations stated in paragraphs 1 through 65 above.

79.    Defendants' designation of AHIF violates the First and Fifth Amendments to the Constitution insofar as it penalizes AHIF for allegedly associating with or providing support to other designated organizations without any showing that AHIF intended to further any unlawful ends, or even knew that its support or association would further unlawful ends, and therefore violates AHIF's First and Fifth Amendment rights.

**COUNT VIII   THE FREEZING OF AHIF'S ASSETS AND SEIZURE OF ITS RECORDS AND PROPERTY WITHOUT PROBABLE CAUSE OR A WARRANT VIOLATED THE FOURTH AMENDMENT.**

80.    Plaintiffs hereby incorporate as though restated each of the allegations in paragraphs 1 through 65 above.

81.    The freezing of AHIF's assets, and the seizure of its records and assets, constituted an unreasonable search and seizure without probable cause, in violation of the Fourth Amendment of the United States Constitution.

**COUNT IX    IEEPA, EXECUTIVE ORDER 13,224 AND THE IMPLEMENTING REGULATIONS VIOLATE MCASO'S FIRST AND FIFTH AMENDMENT RIGHTS BY PROHIBITING IT AND ITS MEMBERS FROM ENGAGING IN ADVOCACY AND OTHER NONVIOLENT ACTIVITY WITH AHIF AND ENGGING IN ACTIVITIES ON BEHALF OF AND FOR THE BENEFIT OF AHIF IN CONNECTION WITH ITS CHALLENGE TO THE DESIGNATION.**

82.    Plaintiffs incorporate as though fully restated herein each of the allegations stated in paragraphs 1 through 65 above.

83.    Plaintiff MCASO and its members are prohibited from working with AHIF to promote diversity and multiculturalism in their southern Oregon community and advocating on behalf of or otherwise assisting AHIF in its challenge to its designation, in violation of their First and Fifth Amendment rights.

**COUNT X    IEEPA, EXECUTIVE ORDER 13,224 AND THE IMPLEMENTING REGULATIONS VIOLATE MCASO'S FIRST AND FIFTH AMENDMENT RIGHTS BECAUSE THEY ARE UNCONSTITUTIONALLY VAGUE AND OVERBROAD.**

84.    Plaintiffs incorporate as though fully restated herein each of the allegations stated in paragraphs 1 through 65 above.

85.    The provisions of IEEPA, E.O. 13,224, and the implementing regulations impose vague and overbroad restrictions on the ability of MCASO and its members to work with AHIF in its legal activities to promote a better understanding of the Muslim community in southern Oregon and to advocate for and provide support to AHIF in connection with its designation challenge, and violate the First and Fifth Amendments to the U.S. Constitution. .

## REQUESTED RELIEF

**NOW WHEREFORE,** Plaintiffs pray this court for the following relief:

Complaint – Page 28

1.      Vacate the designation of AHIF as a Specially Designated Global Terrorist;

2.      A declaratory judgment that the Executive Order provision authorizing the designation of individuals and entities based on being "otherwise associated" with a designated entity is unconstitutional under the First and Fifth Amendments to the U.S. Constitution;

3.      A declaratory judgment that the prohibition on the provision of "services" to proscribed groups is unconstitutionally vague and overbroad under the First Amendment to the U.S. Constitution;

4.      A declaratory judgment that the regulatory scheme created by IEEPA, Executive Order 13,224, and its implementing regulations are unconstitutional under the First and Fifth Amendments to the U.S. Constitution because they permit them to designate "Specially Designated Global Terrorists" without any meaningful statutory limitation on this power, and thereby chill First Amendment protected activity, fail to give Plaintiffs adequate notice, and afford Defendants unfettered discretion;

5.      A declaratory judgment that the regulatory scheme created by IEEPA, Executive Order 13,224, and its implementing regulations are unconstitutional under the First and Fifth Amendments to the U.S. Constitution insofar as they penalize the making or receiving of any contribution of funds, goods, or services for the benefit of a Specially Designated Global Terrorist organization without requiring knowledge that the organization is designated and a showing of specific intent to further such organization's unlawful activities;

6.      An injunction against Defendants prohibiting them from penalizing Plaintiffs under Section 206(b) of IEEPA for making or receiving any contribution of "services" for the benefit of the lawful activities of AHIF under E.O. 13,224, on the ground that it is unconstitutionally vague

and overbroad under the First Amendment to the U.S. Constitution;

      7.     An injunction against Defendants prohibiting them from penalizing Plaintiffs under Section 206(b) of IEEPA for making or receiving any contribution of funds, goods, or services for the benefit of AHIF under E.O. 13,224 absent knowledge that the organization is designated and specific intent to further such organization's unlawful terrorist activities;

      8.     An injunction against Defendants requiring them to release AHIF funds for the legal defense of itself and its officers, or in the alternative, requiring OFAC to respond to AHIF's request for the release of its funds for such purposes;

      9.     An injunction against Defendants requiring them to release impounded AHIF funds and property to non-designated entities in order that the charitable purposes of the donors be accomplished;

      10.     An award to Plaintiffs of their costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq.*, and

      11.     Any other relief as the Court may deem just and proper.

DATED:  August 6, 2007

*[signature]*

Thomas H. Nelson, OSB No. 78315
J. Ashlee Albies, OSB No. 05184
David D. Cole, DC Bar No. 438355
Lynne Bernabei, DC Bar No. 938936
Alan R. Kabat, DC Bar No. 464258
Attorneys for Plaintiffs

Complaint – Page 30