```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF OREGON

 3   UNITED STATES OF AMERICA,      )
                                    )
 4              Plaintiff,          ) No. 05-60008-2-HO
                                    )
 5      v.                          ) September 10, 2007
                                    )
 6   PIROUZ SEDAGHATY, et al.,      ) Eugene, Oregon
                                    )
 7              Defendants.         )

 8

 9                 TRANSCRIPT OF PROCEEDINGS

10          BEFORE THE HONORABLE THOMAS M. COFFIN

11       UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

12

13                          -:-

14                 APPEARANCES OF COUNSEL

15   FOR THE PLAINTIFFS:   CHRISTOPHER L. CARDANI
                           United States Attorney's Office
16                         405 E. 8th Avenue
                           Suite 2400
17                         Eugene, OR  97401
                           (541) 465-6771
18                         Chris.cardani@usdoj.gov

19   FOR THE DEFENDANT:    LAWRENCE H. MATASAR
                           Lawrence Matasar, P.C.
20                         621 S.W. Morrison Street
                           Suite 1025
21                         Portland, OR  97205
                           (503) 222-9830
22                         Larry@pdxlaw.com

23

24   COURT REPORTER:       Deborah Wilhelm, CSR, RPR
                           P.O. Box 1504
25                         Eugene, OR  97440
                           (541) 431-4113
```

```
 1                (Monday, September 10, 2007; 3:32 p.m.)
 2                        P R O C E E D I N G S
 3           THE CLERK:  Now is the time set for the matter
 4   of United States of America versus Pirouz Sedaghaty,
 5   Case No. 05-60008, continuation of detention hearing.
 6           THE COURT:  Okay.  I understand you wanted to
 7   go back on the record.
 8           MR. CARDANI:  Yes, Your Honor.  Thank you for
 9   seeing us so quickly.
10           I apologize for extending these matters as much
11   as I have, but there are just, to the government, too
12   many unanswered questions about Mr. Sedaghaty.
13           The passport that we just got, the old,
14   cancelled passport from Iran, I thought I heard today
15   was surrendered because it had been too many -- too many
16   entries into that.
17           MR. MATASAR:  That's not correct, Your Honor.
18   That was the U.S. passport.
19           THE COURT:  All right.
20           MR. CARDANI:  In any event, his passport was
21   good -- his Iranian passport was good until 2009,
22   according to a brief examination by the agent.  And so
23   there is really no explanation on whether -- on why
24   there had to be a second passport with a different
25   picture that does not look like Mr. Seda at all.
```

1         In any event, in --

2         THE COURT: When was the second passport

3   issued? Was it not issued after his indictment?

4         MR. CARDANI: Yes, Your Honor, September of

5   2006. But, Judge --

6         THE COURT: That's what I indicated earlier,

7   that's consistent with him being a fugitive at that

8   time. You know, I -- I mean, the inference I would draw

9   from that was that the different picture, the different

10  date of birth may well have been designed to allow him

11  to travel to a country that had relationships with the

12  United States such that he could be arrested, and avoid

13  arrest. I --

14        MR. CARDANI: I think that --

15        THE COURT: I factored that in.

16        MR. CARDANI: Yes, Your Honor, and with all due

17  respect, I have never appealed an adverse decision in

18  this court in the 15 years I've been here. I've had

19  consultations with my direct supervisor and with the

20  U.S. Attorney. And, respectfully, it's the government's

21  desire to seek a review by Judge Hogan.

22        THE COURT: Okay.

23        MR. CARDANI: So -- and I say that with all due

24  respect to the court.

25        THE COURT: That's fine.

1    MR. CARDANI: I have tremendous respect for the
2 court, but we would like to be heard by Judge Hogan. So
3 I would ask that if the court is going to enter its
4 release order, that it be stayed until Judge Hogan has
5 an opportunity -- I understand he's in town for the next
6 two days and has some dockets tomorrow and Wednesday.
7    THE COURT: Okay.
8    MR. CARDANI: We would ask if we could get some
9 time before --
10    THE COURT: Well, you have time, because the
11 conditions that I intend to release him on include the
12 use of a global positioning system that will allow
13 Pretrial Services to monitor where he is. And we have
14 to -- how long does it take to order that to get here?
15    MS. BROWN: Your Honor, I've been informed that
16 we can put him on a normal electronic monitoring unit
17 and have him on lockdown until Friday when we can get
18 the GPS, if that was something you were wanting to do.
19 Otherwise, it'll be Friday before we can put the GPS
20 unit on him.
21    THE COURT: Okay.
22    MR. CARDANI: It's my understanding Ms. Brown
23 is going to be away for the next --
24    THE COURT: She's gone tomorrow, but it was my
25 intent to -- I think we'll just wait until the GPS

1  arrives.  If it can arrive sooner than that, it can
2  arrive sooner, but if not, it's my intent to address
3  your concern about him being a flight risk with a GPS
4  monitoring system.
5          MR. CARDANI:  I was not aware of that.
6          THE COURT:  Okay.  And that, apparently, it
7  doesn't arrive until Friday, so you will have -- you can
8  take your appeal to Judge Hogan.  And he can set it on
9  his calendar sometime between now and Friday.  If it
10 gets here Thursday, then I would suggest -- if you are
11 going to file an appeal, that you do that today or
12 tomorrow.  No way it's going to get here before
13 Wednesday.
14         MR. CARDANI:  Your Honor, just a matter of
15 procedure because I've never done this before, standing
16 right here there is nothing -- I don't know if there is
17 anything to appeal from, because I don't know that there
18 has been a release order.
19         THE COURT:  Well, I'm going to issue the order,
20 I suppose, orally from the bench right now.
21         MR. CARDANI:  Okay.
22         THE COURT:  And then you can just ask Judge
23 Hogan's chambers for a date to hear any appeal from it.
24         MR. CARDANI:  Okay.  And --
25         THE COURT:  Do you have the conditions there?

```
 1                MS. BROWN:  Yes.
 2                MR. CARDANI:  And I can file a formal motion
 3   this afternoon or tomorrow morning.  And we can --
 4                THE COURT:  I think you should plan on maybe
 5   the hearing being no sooner than Wednesday.
 6                MR. CARDANI:  Okay.  So I'll file a formal
 7   motion.  And who should contact Judge Hogan to --
 8                THE COURT:  Well, his deputy clerk, just
 9   notify -- Christy can do that, or we'll let them know
10   that you intend to seek a review of this court's release
11   order.
12                Are you available Wednesday if Judge Hogan is
13   available Wednesday?
14                MR. MATASAR:  I'm sure I can be available, Your
15   Honor.  I'm just looking at my calendar now.  Yes, let
16   me --
17                THE COURT:  Here are the conditions I intend to
18   impose:  The standard conditions that he not commit any
19   offenses; advise the court of any change in telephone
20   number, address, et cetera; appear at all proceedings;
21   report as directed; find and maintain full-time
22   employment, schooling, or a combination; do not change
23   place of residence without approval; travel is limited
24   to the State of Oregon unless prior approval is
25   obtained; surrender any passports.
```

```
 1                Is there fees for the GPS?
 2            MS. BROWN:  There is, Your Honor.
 3            THE COURT:  He's to pay a percentage of any
 4   fees for that GPS or other services.  He's not to
 5   possess or obtain any mail, financial, or identification
 6   documents in any person's name other than his true
 7   identity.  He's not to open any new financial accounts
 8   or lines of credit without prior approval.  No financial
 9   transactions above $5,000 without prior approval.  He
10   can attain one financial account, opened and maintained
11   in his name only.  And then participate in an electronic
12   monitoring and/or GPS monitoring program.
13            Now, do you have any other conditions that you
14   want to suggest?
15            MR. CARDANI:  Perhaps.  I didn't -- I didn't
16   know if I caught all those things, but some of the
17   things that came to my mind was a weapons prohibition.
18   Did I hear that in the court's order or not?
19            THE COURT:  We can add that.
20            MR. CARDANI:  Okay.  And no contact with
21   witnesses.
22            THE COURT:  When you say "weapons," I assume
23   you mean firearms?
24            MR. CARDANI:  Yes, firearms.
25            THE COURT:  No contact with witnesses.  Do
```

```
 1  you -- well, here, you are going to have to help the
 2  court by identifying the witnesses.  Give Pretrial
 3  Services a list.
 4          MR. CARDANI:  Yes, Your Honor.  That would
 5  include Gartenstein-Ross.
 6          THE COURT:  That includes what?
 7          MR. CARDANI:  Daveed Gartenstein-Ross, the
 8  witness who testified for the government.
 9          THE COURT:  All right.
10          MR. CARDANI:  That would certainly include him,
11  but we will get a list to Pretrial Services in due
12  course on others that we'd ask that the defendant have
13  no direct or indirect contact with.
14          THE COURT:  Okay.
15          MR. CARDANI:  Was there a reporting
16  requirement?
17          THE COURT:  Report as directed, yeah.
18          MR. CARDANI:  Okay.  And about the identity
19  information, was there a prohibition against him
20  applying for any additional passports, even in his own
21  name?
22          THE COURT:  Well, that's implicit, but we can
23  add that as -- we have his passport, so, yes, he's not
24  to apply for any additional passports.
25          MS. BROWN:  Your Honor, I send a stop notice,
```

once I receive the passports, that informs them that he is not to -- that if he applies, that he is not to have any new ones.

THE COURT: Okay.

MR. CARDANI: And what about in terms of where he is going to reside, and if he's going to get a job while on release?

THE COURT: Well, I have a condition that he maintain gainful, full-time employment or schooling or a combination.

Do you have a residence in mind?

MS. BROWN: Defense counsel has provided me with several names. Also, an individual, I believe, Paul is in the courtroom right now that have said that he will open his home to Mr. Seda.

MR. MATASAR: That's not the long-term. The long-term plan is for him to get gainful employment and get an apartment, but we have very -- various people for short-term --

THE COURT: Residence to be approved by Pretrial Services.

MR. CARDANI: That's all I have.

THE COURT: Okay.

MR. MATASAR: So, Your Honor, as I understand it, you are issuing this order, which barring anything

1  else occurring, will simply go into effect. However,
2  there is no staying of the order or anything of that
3  nature. There is simply going to be an appeal?
4       THE COURT: There is no need to stay it at this
5  time.
6       MR. MATASAR: Right.
7       THE COURT: To make it clear, so that the
8  record is clear in case anybody wants to order a
9  transcript of this or any other proceedings that I've
10 conducted in this case, I specifically find that there
11 is no evidence before me that would justify a finding
12 that the defendant is a danger to the community.
13      There is no presumption from the charges that
14 he's charged with that he's a danger. And I'm not
15 persuaded by the evidence that the government has
16 presented that he constitutes a danger to the community.
17 And, in fact, there has been several instances in which
18 the government has stated on the record that they didn't
19 believe he was a physical danger to the community. Am I
20 correct in that?
21      MR. CARDANI: Yes, Your Honor.
22      THE COURT: All right. And as I've said, there
23 is -- statements have been presented on his behalf by
24 members of the community that he promotes peace, that he
25 works for peace among the different faith groups in the

1  community, that he does not advocate violence, and
2  they've never known him to do that.
3          I reject any inference that he's a danger to
4  the community simply because he's distributed religious
5  literature that's been described in proceedings before
6  me, that I don't need to go over again, you all know
7  what it is.
8          And that leaves us with the flight risk issue.
9  And there is evidence from which an inference can be
10 drawn that the defendant presents a risk of flight,
11 specifically that he was a fugitive for a number of
12 years, he does have contacts and ties with foreign
13 countries.  He is an Iranian citizen.  There are entries
14 on one of his passports that -- not entries.  I should
15 say his identification on one of his passports appears
16 to be misleading.  The date of birth is inconsistent
17 from a date of birth on the other passports.  The name
18 is spelled differently.  That passport was issued to him
19 after he became a fugitive on the indictment.  And that
20 is consistent with him living as a fugitive.
21         I would not hesitate to detain the defendant
22 pending trial if he were before the court not on his own
23 volition, but if he had been arrested in another country
24 and extradited and brought back here.  And if those were
25 the circumstances, I would certainly be satisfied that

```
 1  he was a flight risk, and that I could not fashion any
 2  conditions of release that would guarantee his
 3  appearance.  But those are not the circumstances under
 4  which he appears before the court.
 5           He voluntarily surrendered knowing he would be
 6  arrested and taken into custody and brought before the
 7  court.  He returned to this country of his own volition.
 8  And, thus, I am persuaded that he does intend to appear
 9  to face these charges and to appear for trial.
10           It makes no sense to me that he would come back
11  here, and for whatever reason, leave again before trial.
12  Rather, I get the picture of a person who is tired of
13  running, or for whatever reason, decided to come back to
14  this country, where he's also a citizen, and face these
15  charges.
16           If the government is concerned that he might
17  change his mind after he's -- goes to trial, if he's
18  convicted at that trial, then the government can ask the
19  district court to revisit the situation at that time,
20  and the district court will have authority to do that.
21           In the meantime, I'm persuaded he will appear
22  for trial.  And since flight risk is really the only
23  consideration left at this juncture, I believe he can be
24  released on conditions, including the GPS monitoring
25  program.
```

1    So I am signing the order of release.  It will
2  not be -- he will not be released until the GPS system
3  arrives, which I'm told will be no earlier than Thursday
4  or Friday.
5    In the meantime, you can ask Judge Hogan for a
6  hearing.
7    MS. BROWN:  That's correct, Your Honor.
8    THE COURT:  I'll sign the order of release now.
9    MR. CARDANI:  Thank you, Judge Coffin.
10   THE COURT:  You are welcome.
11   (The proceedings were concluded at 3:46 p.m.)

CERTIFICATE

I, Deborah Wilhelm, Certified Shorthand Reporter for the State of Oregon, do hereby certify that I was present at and reported in machine shorthand the oral proceedings had in the above-entitled matter. I hereby certify that the foregoing is a true and correct transcript, to the best of my skill and ability, dated this 10th day of September, 2007.

Deborah Wilhelm, RPR
Certified Shorthand Reporter
Certificate No. 00-0363