```
              IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,        )
                                 )
                Plaintiff,       ) No. 05-60008-2-HO
                                 )
  v.                             ) September 10, 2007
                                 )
PIROUZ SEDAGHATY, et al.,        ) Eugene, Oregon
                                 )
                Defendants.      )


                   TRANSCRIPT OF PROCEEDINGS

             BEFORE THE HONORABLE THOMAS M. COFFIN

                UNITED STATES DISTRICT COURT JUDGE



                              -:-

                    APPEARANCES OF COUNSEL

FOR THE PLAINTIFF:      CHRISTOPHER L. CARDANI
                        United States Attorney's Office
                        405 E. 8th Avenue
                        Suite 2400
                        Eugene, OR  97401
                        (541) 465-6771
                        Chris.cardani@usdoj.gov

FOR THE DEFENDANT:      LAWRENCE H. MATASAR
                        Lawrence Matasar, P.C.
                        621 S.W. Morrison Street
                        Suite 1025
                        Portland, OR  97205
                        (503) 222-9830
                        Larry@pdxlaw.com


COURT REPORTER:         Deborah Wilhelm, CSR, RPR
                        P.O. Box 1504
                        Eugene, OR  97440
                        (541) 431-4113
```

43

```
 1                  (Monday, September 10, 2007; 1:42 p.m.)
 2                       P R O C E E D I N G S
 3          THE CLERK:  Now is the time set for the matter
 4   of the United States of America versus Pirouz Sedaghaty,
 5   Case No. 05-60008, continuation of detention hearing.
 6          THE COURT:  All right.  I've been provided with
 7   some further information by Pretrial Services, including
 8   a chronology of where the defendant lived or stayed
 9   during the time period that he was gone.
10          Do you have anything else you wish to point out
11   on behalf of the government, or any further argument you
12   wish to make?
13          MR. CARDANI:  Yes, Your Honor.  We'd like
14   access to that information to assist the court in doing
15   what we can to determine if the information is accurate.
16          We'd also be interested in whether the other
17   information was provided, and that is occupation,
18   sources of money, that Pretrial was asking for, passport
19   information, any other passports.  And we'd like one
20   week to assist the court and Pretrial in determining
21   what we can to determine the veracity of that
22   information.  So that's our request.
23          THE COURT:  All right.  The -- I'll give the
24   information to you.  You can investigate it.  But I'm
25   not going to detain the defendant pending that
```

1  investigation, if the issue here is flight risk. Is
2  that the issue?
3       MR. CARDANI: Judge, I don't want to beat
4  around the bush. At this point, given the court's
5  comments on our dangerousness argument, that is the
6  government's position. We're not giving up on the
7  dangerousness -- we're not backing away from the
8  dangerousness position, but I'm framing my arguments to
9  address the court's concern about flight risk. So to
10 the extent that we run down this information, we're
11 attempting to give Pretrial and the court some ability
12 to determine whether that information is or is not
13 accurate.
14      I'd also like to know whether we can be of some
15 assistance on running down the employment situation, the
16 sources of money. For instance, he told the court
17 through Pretrial that he left the $475,000 from the sale
18 of the house. We know that that is not true. That was
19 false information.
20      Is there any other false information that's
21 been provided to the court or not? That would be the
22 nature of any kind of further follow-up to the court.
23      THE COURT: What conditions of release would
24 you suggest be imposed if I were to release the
25 defendant?

```
 1          MR. CARDANI:  If the court's inclined to
 2  release the defendant, I'd like 24 hours to meet with
 3  Pretrial and run by a list of conditions that we're in
 4  the process of preparing.  And we'll sponsor that to the
 5  court through Pretrial.  We're not quite there yet, but
 6  we'd be looking to do that by tomorrow.
 7          THE COURT:  All right.  I've examined the data
 8  that's been provided so far to the court by Pretrial
 9  Services.  There are some gaps in the data.  There is
10  some inconsistencies in the different passports that the
11  defendant has, including inconsistencies in his date of
12  birth from one of the passports from the other
13  passports, inconsistencies in the spelling of his name.
14  And these inconsistencies surface in passports that were
15  obtained after he was indicted.  And this would be
16  consistent with him being in a fugitive status and
17  seeking to avoid arrest if he entered a country that had
18  the ability to extradite him to the United States.  So
19  all that adds up to factors which would support a
20  concern that he's a flight risk.  And as I said this
21  morning, it's obvious that he could be considered a
22  flight risk because he was gone for the period of time
23  he was gone, and he has the ability, if he goes to Iran,
24  to place himself beyond the reach of the United States.
25          But all of that, in my mind, is countered by
```

his decision to voluntarily return to the United States knowing that he would be arrested when he came back to this country. And all that -- and that decision to come back to the United States mitigates against detaining him as a flight risk.

I don't know why he would come back here to be arrested and face these charges only to leave again before trial. No one has given me any reason to suggest that that's his game plan. It just doesn't make sense to me, that he would do that.

On the issue of danger to the community, I've already addressed that. I'm not going to find he's a danger to the community simply based on the type of religious literature that he distributed into the American penal system, especially where the penal system didn't prohibit that literature from being disseminated in the first place.

And countering the danger to the community argument, we have the testimony of people from the community that I heard at the initial detention hearing and also at least one letter that I received from a rabbi in the community down there who attests to the defendant being a person who promotes peace and goodwill, far from advocating violence. So that weighs heavily upon my decision in that regard as well.

1  So it is my decision to fashion conditions of
2  release for the defendant pending trial.
3  I'll give the government until tomorrow to meet
4  with Pretrial Services to suggest what conditions of
5  release should be imposed.  And I'll consider those.
6  Yes, Mr. Matasar, do you have anything you wish
7  to say at this point?
8  MR. MATASAR:  Yes, Your Honor.  I'm not sure if
9  the court has made a ruling that all the information
10  that Pretrial has should go to the government for
11  verification.
12  It's my understanding that there is generally,
13  not a hard, big, brick wall, but generally Pretrial
14  Services is independent of the government.  It seems to
15  me if the government wants this information to assist
16  the court in dealing with the release situation, that
17  they would be willing to agree that it is not usable at
18  all in their case in chief or in rebuttal.
19  So we'd simply ask the government for that
20  assurance.  Otherwise, I'm concerned that the secrecy or
21  privilege or whatever that the statute would give it,
22  would call it, would be appropriate here, and that all
23  the information shouldn't be given to the government.
24  MR. CARDANI:  May I be heard?
25  THE COURT:  Yes.

1  MR. CARDANI:  I can't, of course, promise
2  something that I don't know about, but the mission here
3  is to prove -- is to determine whether the information
4  Mr. Seda has provided to the court to seek his release
5  is accurate or not.  I don't think it should be limited
6  to this new information on the travel.
7  We'd like to know what information he's
8  provided the court about employment and about the other
9  issues, whether there are any other passports out there
10 that he's used or is capable of using.  The financial
11 information I think is important.  And we'd like some
12 time to run that down to prove to the court or not
13 whether the information that the court is relying upon
14 is accurate or not.
15 I mean, I understand, Judge, he voluntarily
16 surrendered, that -- I understand that that weighs in
17 favor of release, even for a fugitive.  But by that
18 reasoning, any fugitive that surrenders gets released
19 unless proven a danger to the community.  And I don't
20 think that the court should go that far, because if the
21 court is relying on information from the defendant that
22 is false in making that decision, then I don't think the
23 court would necessarily come to the same conclusion.
24 THE COURT:  I'm also taking into consideration
25 the nature of the charges against the defendant --

```
 1              MR. CARDANI:  I understand that.
 2              THE COURT:  -- which is a very significant
 3    factor.  He's not charged with any acts of violence.
 4    He's charged with, essentially, violating the tax law
 5    and money laundering.
 6              MR. CARDANI:  Yes, Your Honor.
 7              THE COURT:  And in terms of any fugitive
 8    turning himself in, being releasable, indeed, that has
 9    been my experience.  When fugitives voluntarily
10    surrender, depending upon the nature of the charges,
11    that cuts heavily in favor of being able to fashion
12    conditions of release, because it speaks volumes about
13    their intent.
14              Sometimes people get tired of running, and they
15    want to come in and face the charges.
16              MR. CARDANI:  Yes, Your Honor.  And that's as
17    it should be.  But sometimes people return and don't
18    like the situation as it evolves into trial.  And people
19    that have the wherewithal to travel in the places that
20    he has, with passports that we didn't even know about at
21    the first detention hearing, with an inability to tell
22    the court basic answers to questions like, what have you
23    been doing to sustain yourself for the last
24    four-and-a-half years?
25              THE COURT:  I'm mindful, Mr. Cardani, that at
```

some point you informed the court that if he accepted money from a certain source or sources, that that could support the filing of additional charges. That's not the function of Pretrial Services to help the government build another case. And if that is -- if that, in part, is what motivates you to want to develop that information, that may be a perfectly appropriate motivation from your standpoint, but that's not the court's concern.

MR. CARDANI: It's not my motivation, Your Honor. I brought that information to your attention last week so that we put this on the table so that we avoided that kind of possibility.

THE COURT: I appreciate that.

MR. CARDANI: All right. So that's not my -- but, yes, it is true, there are potential incrimination aspects of this that, you know, I can only speculate about, but --

THE COURT: I only point that out because that's not the court's concern. What I'm concerned about at this point are those facts or evidence or factors that cause concern about the defendant being a flight risk.

So I will allow the information to be shared with you.

1          I agree that if we don't have all the
2    passports, then that would send off alarms, and, you
3    know, to the court, if that type of -- if you have
4    information that there are more passports out there,
5    certainly I would be interested in that, because it's my
6    understanding that we now have the passports.
7          MR. CARDANI:  Have we -- Judge, could I ask
8    that the court ask Mr. Matasar directly, are there any
9    other passports that Mr. Seda has available to him?
10   Because we don't know the answer to that.
11         MR. MATASAR:  There are no more passports, Your
12   Honor.
13         Let me also give you the citation of the
14   statute that I neglected in the separation between
15   Pretrial Services and the courts, 18 United States Code
16   Section 3153.
17         THE COURT:  Not Pretrial Services and the
18   court.  You mean Pretrial --
19         MR. MATASAR:  Pretrial Services and the
20   government, law enforcement agents, I'm sorry, yes.
21         No other passports, though.
22         THE COURT:  Now, if you have information to the
23   contrary, yes, I would be very interested in that.
24         MR. CARDANI:  Okay.  And we'll look into that.
25         THE COURT:  Because I'm assuming that Mr. Seda

1  has now surrendered all of his passports.
2          MR. CARDANI:  And those are three of them, the
3  two U.S. and the Iranian.
4          MR. MATASAR:  Two U.S. -- well, there are two
5  valid passports, a U.S. passport and an Iranian
6  passport.  We have surrendered those.  There are also
7  two cancelled passports.  A cancelled formally U.S.
8  passport, a cancelled Iranian passport.  We've also
9  given them to Pretrial Services.  Thank you.
10         MR. CARDANI:  And can we have those and attempt
11 to run down the information from them to assist the
12 court?
13         THE COURT:  We'll give you copies of those.
14         MR. CARDANI:  Okay.  All right.  And so just to
15 be clear, we are going to get access to some information
16 from the court, but the court is looking to release
17 Mr. Seda tomorrow, and I'll be allowed to meet with
18 Ms. Brown and provide our recommendations?
19         THE COURT:  Absolutely.
20         MR. CARDANI:  Okay.  And will we set this back
21 on for a calendar tomorrow or is this going to be done
22 by minute order?
23         THE COURT:  I intend to do it by minute order
24 unless you file a motion to put it back on the calendar.
25         MR. MATASAR:  And I'd just like to -- given

```
 1  that the court has ruled that the government will get
 2  this information, I would just like to get it in the
 3  exact same form.  However it is given to the government,
 4  I'd like a copy of all those documents.
 5          THE COURT:  Certainly.
 6          MR. CARDANI:  Judge may I have moment?
 7          THE COURT:  Yes.
 8          (Discussion held off the record between the
 9  prosecutor and agents.)
10          MR. CARDANI:  Thank you, Judge.
11          THE COURT:  Do we need to talk about a trial
12  date?
13          MR. MATASAR:  Yes, Your Honor.  I talked to
14  Mr. Wax about this, and we would ask that it be
15  designated a complex case in the sense that we would
16  like a further than normal date for trial, longer than
17  normal date for motions, but not a year.  Maybe six
18  months for trial, and 45 days for motion, that sort of
19  thing.  Or do we do that directly with Judge Hogan?  I'm
20  not sure --
21          THE COURT:  No, I'll do it.
22          Do you have any objection to this being
23  designated a complex case?
24          MR. CARDANI:  No, Your Honor.
25          THE COURT:  All right.  Then I will find it is
```

```
 1  a complex case.  I will exclude 180 days.  Why don't we
 2  put a jury trial date six months out there, six or
 3  seven months.
 4          THE CLERK:  Counsel, trial in April of '08,
 5  April 16th.
 6          MR. CARDANI:  That's fine.
 7          THE COURT:  What's the expected length of
 8  trial?
 9          MR. CARDANI:  Just a few days.
10          THE COURT:  All right.  So set it for a week
11  trial.
12          I mean, do you agree with that assessment or do
13  you know?
14          MR. MATASAR:  Yes.  No.  Certainly, certainly.
15          THE COURT:  We'll set it for a week trial.
16          THE CLERK:  April 16, 2008, 9:00 a.m., trial
17  before Judge Hogan.  Counsel, would --
18          MR. MATASAR:  That's a Wednesday?
19          THE CLERK:  That's correct.  Would you like a
20  status hearing two weeks in advance or --
21          THE COURT:  How about a month in advance --
22  actually, make it two months in advance --
23          MR. MATASAR:  Yes, I agree with that.
24          THE COURT:  -- to see if there are any problems
25  that need to be addressed at that time.
```

```
 1                THE CLERK:  Status hearing set February 18,
 2   2008, 1:30 p.m. before Judge Coffin.
 3                MR. CARDANI:  Can we get a motions date?
 4                THE COURT:  Well, you wanted 45 days to file
 5   motions; is that what you said?
 6                MR. MATASAR:  Yes.
 7                THE COURT:  All right.  File your motions
 8   within 45 days of today's date --
 9                MR. MATASAR:  Thank you.
10                THE COURT:  -- and then they'll be set in due
11   course.
12                MR. CARDANI:  Thank you, Your Honor.
13                THE COURT:  You bet.  Thank you.
14                (The proceedings were concluded at 2:00 p.m.)
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                        CERTIFICATE
 2        I, Deborah Wilhelm, Certified Shorthand Reporter
 3   for the State of Oregon, do hereby certify that I was
 4   present at and reported in machine shorthand the oral
 5   proceedings had in the above-entitled matter.  I hereby
 6   certify that the foregoing is a true and correct
 7   transcript, to the best of my skill and ability, dated
 8   this 14th day of September, 2007.
 9
10
11
12                            _____
13                            Deborah Wilhelm, RPR
                              Certified Shorthand Reporter
14                            Certificate No. 00-0363
```