**LAWRENCE MATASAR**
OSB #74209
Email: larry@pdxlaw.com

**KRISTA SHIPSEY**
OSB #94385
Email: krista@pdxlaw.com
Lawrence Matasar, P.C.
621 S.W. Morrison Street, Suite 1025
Portland, OR 97205-3813
Telephone: (503) 222-9830
Fax: (503) 274-8575
Attorney for Pirouz Sedaghaty

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 05-60008 |
| Plaintiff, | DEFENDANT'S MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE |
| vs. | (September 17, 2007) |
| PIROUZ SEDAGHATY, AND SOLIMAN AL-BUTHE, | |
| Defendants. | |

**INTRODUCTION and SUMMARY OF ARGUMENT**

Pirouz Sedaghaty, who left the United States two years before the indictment in this case, has voluntarily returned to the United States to face tax charges. He has strong defenses to the government's allegations. He has no criminal record and no drug or alcohol problems. He is beloved by many in the community, including a rabbi, a minister and a public media personality, all of whom call him a strong force for non-violence and religious peace. He has a wife, two children and two brothers, all of whom are in the state of Oregon.

PAGE 1 – DEF. SEDAGHATY'S MEMO IN SUPPORT OF PRETRIAL RELEASE (9/17/07)

This Court has asked the parties to address certain issues regarding his passports and his life since he left the United States. An analysis of the documents and information provided to US Pretrial Services shows that all of these issues may be resolved in favor of the defendant, and that the defendant is not a flight risk. The defense agrees with United States Magistrate Judge Coffin, who said, "I don't know why he would come back here to be arrested and face these charges only to leave again before trial. No one has given me any reason to suggest that that's his game plan. It just doesn't make sense to me that he would do that." Docket No. 43, Transcript of September 10, 2007 Hearing, p. 5. Moreover, the use of sophisticated GPS Monitoring devices available to US Pretrial Services, will completely assure Mr. Sedaghaty's court appearances. He should be released.[1]

**GENERAL LEGAL PRINCIPLES**

In its first major opinion on pretrial release after the enactment of the Bail Reform Act of 1984, *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) (case cites omitted), the Ninth Circuit initially pointed out important historical principles: (1) "In determining the applicable standard of review, we bear in mind that federal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail;" (2) "Only in rare circumstances should release be denied;" (3) "Doubts regarding the propriety of release should be resolved in favor of the defendant."

---

[1] In addition to this memorandum, with attached exhibits, this Court should consider the following previously provided materials:
    1. Memorandum in Support of Motion [for pretrial release], with exhibits. Docket nos. 31, 32.
    2. Letter dated September 7, 2007 from Lawrence Matasar to US Pretrial Services Officer Lisa Brown. Attached as Exhibit A. This letter has been previously provided to this Court and the government by Ms. Brown.
    3. Letter dated September 10, 2007 from Lawrence Matasar to The Honorable Thomas M. Coffin, US Magistrate Judge. Attached as Exhibit B.

PAGE 2 – DEF. SEDAGHATY'S MEMO IN SUPPORT OF PRETRIAL RELEASE (9/17/07)

These important principles are included in the Bail Reform Act of 1984, particularly 18 U.S.C. § 3142, which allows pretrial detention only if the Court, "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." In the instant case, the charged offenses do not carry presumptions of either flight risk or danger, and the government has so agreed.

This Court has indicated, as did United States Magistrate Coffin, it believes it can fashion appropriate conditions to reasonably assure the safety of the community. It has therefore asked the parties to focus on the issue of defendant's flight risk.

**ARGUMENT**

At the hearing on September 11, 2007, this Court indicated it would recess that hearing for one week to allow the parties to address three specific areas regarding defendant's possible flight risk: defendant's passports; his residences while abroad; and his financial situation. Because each of the Court's questions is resolved in favor of the defendant, he should be released.

    I. Passport Issues

        A. Different dates of birth on Iranian and US Passport.

This Court, Judge Coffin, and the government have expressed concern about different dates of birth and spellings of defendant's name on his US and Iranian passports. Although Judge Coffin ordered the release of the defendant, he was concerned that different dates of birth on the different passports was some evidence that defendant was a flight risk, suggesting that the different dates were "consistent with him being in a fugitive status and seeking to avoid arrest." Docket No. 43, Transcript of September 10, 2007 Hearing p. 4. Of course, Judge Coffin found such

PAGE 3 – DEF. SEDAGHATY'S MEMO IN SUPPORT OF PRETRIAL RELEASE (9/17/07)

evidence substantially outweighed by other factors, primarily defendant's voluntary surrender to authorities. *Supra*.

The defense has attached copies of documents showing that Judge Coffin's concern, that multiple birth dates might be related to defendant's fugitive status, was unfounded. Instead, the defendant, like many immigrants to the United States over a period of more than two hundred years, has always had different dates of birth in his home country and in the United States.

In 1994, Mr. Sedaghaty, also known in the United States as Pete Seda, was issued a United States Certificate of Naturalization, Exhibit D, which shows the same spelling of his name and the same date of birth as on his US Passports: Sedaghaty, January 2, 1958. Review of Mr. Seda's cancelled Iranian passport, issued in 1999, well before his fugitive status, shows the same spelling of his name and the same date of birth as on his current Iranian passport which concerned Judge Coffin: Sedaghati, December 21, 1958. Copies of the first two pages of this passport are attached as Exhibit E; the original passport is in the possession of US Pretrial Services pursuant to Docket No. 34. Even earlier, in a 1993 marriage document translated by Iran's Ministry of Justice, the defendant is listed as Sedaghati, "born on DEC.21.1958."[2] Exhibit F.

Thus, the different spellings of defendant's name and different dates of birth on his Iranian passport and US passport long predate this case and are therefore completely unrelated to defendant's fugitive status.

---

[2] The marriage document shows that, even within Iran, there can be different translations from Farsi to English. Defendant's first name is translated as "Pirooz" in the 1993 Iranian document, but "Pirouz" on his 1999 Iranian passport. Such spelling differences are, of course, much more likely on American documents. Eight reasons why immigrants often have different name spellings are given at: http://genealogy.about.com/library/weekly/aa051302a.htm; *see also*, http://www.genealogy.com/00000015.html.

PAGE 4 – DEF. SEDAGHATY'S MEMO IN SUPPORT OF PRETRIAL RELEASE (9/17/07)

B.  Surrender of Iranian Passport

While Assistant United States Attorney Cardani has made various claims about the defendant's Iranian passport, some accurate and some not, the fact is that during US Pretrial Services Officer Brown's August 13, 2007 telephonic interview of defendant, with defense counsel also on the telephone, she did not ask Mr. Seda whether he had any additional passports.  Defendant surrendered on August 15, 2007.  Defense counsel obtained the Iranian passport and then provided it to the government on August 22, 2007, at the first release hearing.[3]

C.  Additional Passports

Defendant has no additional passports.

II.  Residence issues

A.  Addresses of residences in foreign countries

Mr. Seda has given US Pretrial Services Officer Brown detailed information on his residences while abroad.  This Court mentioned in open court on September 11, 2007 that it has been provided with a handwritten list of these addresses; a typed version is attached hereto as Exhibit G.

US Pretrial Services Officer Brown, Judge Coffin and the government have been skeptical of Mr. Seda's failure to provide exact street addresses for his time in Saudi Arabia, Syria and The UAE.  (He has given street addresses for Iran.)  Instead of specific street addresses, as are used in the United States to receive mail, Mr. Seda provided Ms. Brown with descriptions of his residences using local landmarks and directions from

---

[3]    It is also worth noting that the existence of another passport was clear from the very beginning.  On August 13, 2007, even before Mr. Seda's arrest, defense counsel informed Ms. Brown via email that Mr. Seda had been in Saudi Arabia, The UAE, Iran, and Syria.  This email is attached as Exhibit C.  Since his US passport did not have stamps from all these countries, it was always obvious that he had another passport.  This passport was promptly obtained by defense counsel and given to the government.

PAGE 5 – DEF. SEDAGHATY'S MEMO IN SUPPORT OF PRETRIAL RELEASE (9/17/07)

the landmarks. Defense Counsel has informed Ms. Brown and written a letter to Judge Coffin, explaining, "street addresses in most of these countries are not used in the same way as in the United States." Exhibit B. The government's skepticism seems to remain, although it has produced no evidence to support its doubts.

However, two attached documents solidly confirm the defense approach. Exhibit H, "News from the UAE," is a September, 2006 news story, which begins, "Door to door delivery of postal mail in the emirate may not be a distant dream for Dubai residents." More significantly, this story confirms that UAE residents simply do not know their addresses, and instead use the exact same landmark based approach used by the defendant with Ms. Brown in the instant case: "'We want residents to know their addresses, as we want them to shift from the landmark based address system to the proper address system,' said Bader Al Siri, Director of the Traffic Department at the Roads and Transport Authority (RTA)."

Similarly, a February, 2006 story on the Saudi Postal system, Exhibit I, http://www.pmcomm.com/saudiarabia1/saudipost.htm , begins: "Postal services are undergoing a revolution with the introduction of a state-of-the-art delivery system that allows Saudis to post and receive mail without leaving home." The story explains landmark addressing in the same way used by the defendant: "In Saudi Arabia, just like many countries, the concept of zip codes does not exist. Also, in the past, we used what we called 'relative addressing'. It is a very old technique, which consists in picking up a landmark and start describing the way to your house from that landmark." Exhibit I.

### B. Residence Verification

Like the landmark addressing issue described above, there have been other communication problems between the defense and US Pretrial Services, perhaps

PAGE 6 – DEF. SEDAGHATY'S MEMO IN SUPPORT OF PRETRIAL RELEASE (9/17/07)

causing an incorrect perception that the defendant has not been forthcoming. While much of the communication between the defense and Pretrial Services has been informal and therefore unavailable for scrutiny by the Court, an analysis of the issue can be made by Ms. Brown's response to a critical question by Judge Coffin in open court during the September 10, 2007 hearing. Docket No. 41, Transcript of September 10, 2007, p 13:

> THE COURT: What exactly is pretrial lacking in terms of information about Mr. Seda's whereabouts during the time he was out of this country?
>
> MS. BROWN: Your Honor, we have bits and pieces of information. You know, I have talked with Mr. Seda and his attorney on two occasions. Each time we talk, it fills in one or two more pieces. After we met in chambers on Tuesday, we had agreed that Questions 3, 4, 5, and 10, maybe even 7 would have been answered. The responses that I got from Mr. Matasar late Thursday evening, early Friday morning, were two additional addresses in Iran, <u>and he did send me some documentation, which I provided you a copy with, a shoe receipt, a driver's license with no picture, a couple other documents that were -- no time frames listed at all whatsoever.</u> (emphasis added)

However, an analysis of this documentation, which is attached hereto as Exhibit A, shows Ms. Brown's statement to Judge Coffin, "no time frames listed at all whatsoever," is incorrect. The documents were provided by defense counsel specifically to "very his location at the times he has previously provided," Exhibit A, and they do so:

• The document described by Ms. Brown as a "shoe receipt" comes from a store in Damascus, Syria, p. 2 of Exhibit A, and contains the date "12/04/07," which,

PAGE 7 – DEF. SEDAGHATY'S MEMO IN SUPPORT OF PRETRIAL RELEASE (9/17/07)

outside the United States, means April 12, 2007. Thus, this document verifies defendant's time frame for when he was in Syria.[4]

- The certified translation of defendant's Iranian Driver's license, p. 3 of Exhibit A, shows that it was issued in June, 2005 and translated in September, 2006. Both of these dates verify defendant's time frame for when he was in Iran.

- The rental quote for business equipment in Dubai, United Arab Emirates, p. 6 of Exhibit A, is dated 14th October, 2004, which also verifies defendant's time frame.

- Finally, the document granting defendant legal permission from the religious affairs department of the government of Dubai to distribute and use his explicitly non-violent, anti-terrorism book, *Islam Is . . .*, is dated Jan. 2004, which verifies defendant's time frame. See Exhibit J, Affidavit of Middle East Expert As`ad AbuKhalil. (The attached Exhibit J is an electronic version of the affidavit, which has been approved by Professor AbuKhalil. A hard copy signed version will be provided to the Court for the record.)

In addition to this documentary verification, Mr. Seda's wife has verified to Ms. Brown his locations in The UAE and Syria, and the defense has provided an email address to Ms. Brown for Mr. Seda's ex-wife, who can verify his locations in Iran.

Therefore, the defendant has met this Court's concerns and has provided this Court with documentation and witnesses to verify his locations over the past four and one-half years. The defendant is not a flight risk and he should be released.

---

[4] The defense first provided his time frame in counsel's August 13, 2007 email to Pretrial Services, sent two days before his surrender. Exhibit C

PAGE 8 – DEF. SEDAGHATY'S MEMO IN SUPPORT OF PRETRIAL RELEASE (9/17/07)

III. Employment Information

    A. Financial Information

The defense has provided US Pretrial Services with an explanation of his business activities while he was away from the United States, including business cards and documents, showing he was openly living and working abroad. Such information is sufficient to rebut the government's flight risk suggestion. Moreover, because of geopolitical factors, there is little possibility that any additional information from the defendant would result in useful information for the Court.

Throughout these pretrial proceedings, the government has pressed for more and more detailed information than is typically provided to the government in the pretrial release setting in tax cases, including personal contacts, bank records, travel expenses and tax records. The government is unwilling to rule out using such information against the defendant in the instant case. Additionally, the government has indicated to Judge Coffin its belief that it could use information obtained from US Pretrial Services to support the filing of additional financial and regulatory charges against the defendant. This approach was flatly rejected by Judge Coffin as contrary to the function of the Pretrial Services. Docket No. 43, Transcript of September 10, 2007, pp 8-9:

> THE COURT: I'm mindful, Mr. Cardani, that at some point you informed the court that if he accepted money from a certain source or sources, that that could support the filing of additional charges. That's not the function of Pretrial Services to help the government build another case.

The defense agrees with Judge Coffin.

As indicated above, the defendant has provided documents and people to verify his location while he was away from the United States. Unlike almost all other cases in

PAGE 9 – DEF. SEDAGHATY'S MEMO IN SUPPORT OF PRETRIAL RELEASE (9/17/07)

this District, and over the objection of the defendant, government law enforcement agents have been provided with information obtained by US Pretrial Services in the course of performing pretrial services functions. Perhaps in an effort to reduce the possibility of misuse of US Pretrial Services information by the actual law enforcement case agents involved in the investigation of the defendant for the past four years, the government had indicated to Judge Coffin that it would use foreign bureaus of the FBI and legal attaché offices overseas to investigate defendant's foreign locations and financial dealings. Yet, whoever investigates the defendant, there is a serious flaw in the government's approach – the United States simply will not be able to obtain accurate information from people in these countries. Defense expert, Professor As`ad AbuKhalil, who testified in the August 22, 2007 hearing before Judge Coffin, explains in an attached affidavit that the general public opinion in the Middle Eastern countries visited by the defendant is so negative toward United States interests, especially toward United States law enforcement, that people in these countries will not provide truthful and reliable information. Exhibit J. Given the uselessness of the verification information requested by the government regarding pretrial release, and given defendant's Fifth Amendment rights and the Pretrial Services secrecy rules contained in 18 U.S.C. § 3153, if defendant were compelled to provide even more financial information to obtain his release, it would amount to a requirement that defendant give up one constitutional right to obtain another, in violation of the rule of *Simmons v. United States*, 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968).

**GPS MONITORING**

A release condition such as that imposed by Judge Coffin that would allow US Pretrial Services to use active GPS Monitoring will give additional assurance that

defendant will appear in court as required.  The sophisticated nature of the GPS monitoring devices available to US Pretrial Services, including real-time monitoring capabilities and the ability to immediately generate alert messages to a US Pretrial Services Officer if the defendant is anywhere he is not supposed to be, are described in Exhibits K, L, and M.

**COURT INTERVIEW OF DEFENDANT and SPOUSE**

At the previous hearing, defense counsel suggested that in order to make sure all the Court's questions are answered, the Court might wish to take part in interviews of the defendant and his wife, with US Pretrial Services Officer Brown.  Defense counsel renews this suggestion.

**CONCLUSION**

For the above stated reasons, defendant should be released.

DATED this 17th day of September, 2007.

                                Respectfully submitted,

                                <u>/s/ Lawrence Matasar</u>
                                Lawrence Matasar
                                621 SW Morrison Street Suite 1025
                                Portland, OR 97205
                                Telephone: (503) 222-9830
                                Fax:  (503) 274-8575
                                Email:  larry@pdxlaw.com
                                Attorneys for Defendant Pirouz Sedaghaty