LAWRENCE MATASAR, P.C.
ATTORNEYS AT LAW
621 S.W. MORRISON STREET, SUITE 1025
PORTLAND, OREGON 97205-3813

---

TELEPHONE: 503-222-9830
FAX: 503-274-8575

LAWRENCE MATASAR                                                                                               KRISTA SHIPSEY
Email: larry@pdxlaw.com                                                        Email: krista@pdxlaw.com

September 10, 2007

The Honorable Thomas M. Coffin
US Magistrate Judge
United States Courthouse
405 E 8th Avenue
Eugene, OR 97401

       RE:    *United States v. Pirouz Sedaghaty*,
                 US District Court Case No. CR 05-60008

Dear Judge Coffin:

      I am writing to provide additional information for your consideration concerning release issues.

      I. Introduction

      Pirouz Sedaghaty has voluntarily returned to the United States to face tax charges. He has no criminal record and no drug or alcohol problems. He is beloved by many in the community, including a rabbi, a minister and a public media personality, all of whom call him a strong force for non-violence and religious peace. Even the government agreed at the release hearing that the defendant is not a danger to the community of Ashland, Oregon. While the government has falsely attacked the defendant, by alleging dubious links to terrorism, this Court has more than sufficient information to reject the government's irrelevant attacks. He should be released.

      II. Kosovo and Chechnya: simple terrorism; fighting back against atrocities; helping refugees; or, wars of liberation?

      The government's memorandum and expert testimony seek to link the defendant to terrorism in Kosovo and Chechnya. The defendant denies the government's claims, which, in any event, are not relevant to defendant's appearance at trial or to defendant's alleged danger to the community. Moreover, even if such claims had some factual support or relevance, this Court would be able to impose appropriate release conditions.

      While the government describes Muslims involved in the fighting in Kosovo and Chechnya as "radical Islamist fighters" and "terrorists," the government's own written

The Honorable Thomas M. Coffin
September 10, 2007
Page 2

memorandum acknowledges "atrocities committed by the Serbian army against Muslims."

The "terrorist" characterization is important to the government's case because all counts of the indictment are based upon alleged financial machinations by the defendants to fund what the government calls "a violent jihad with the goal of creating an Islamic state in Chechnya." (Indictment, page 7.) However, the alleged financial transactions have at least two innocent explanations, each of which independently rebuts the government's allegations. First, and most importantly, as indicated in defendant's release memorandum and exhibits, particularly the documents translated from Russian, the disputed money went to Chechen refugees, not fighters. Second, many experts believe, including Senator Joseph Biden in a 2007 presidential candidates' debate, that the war in Chechnya is not simple terrorism, but a "war of liberation."[1] Also, as stated in the defendant's trial memorandum, the government's approach is contrary to an asylum decision of a Boston immigration court. *See,* Exhibit G to defendant's release memorandum.

If the government is trying to show this Court that the defendant might flee before trial because the government has specific, iron-clad proof of his criminal intent, it has failed to make such a showing.

III. Allegations of distribution of hateful, violent literature. Role of Saudi Arabia.

At the detention hearing, the government presented and expanded upon an argument first set forth in its written memorandum, p. 12: "Witting facilitation of radical Islamist fighters, and the distribution of hateful, violent literature to prisoners exhorting violence, makes defendant Sedaghaty a danger to the community."

In response, Professor AbuKhalil testified that much of what Mr. Cardani calls "hateful violent literature" is actually a version of the Qur'an, the "Noble Qur'an," which is published and widely distributed by the government of Saudi Arabia. Nearly three years after September 11, 2001, Saudi Crown Prince Abdulla, while acknowledging "extremist concepts" in the kingdom, urged Saudi teachers to "<u>stick to the teachings of the Noble Qur'an</u> and the Sunna (Prophet Muhammad's sayings) warning them against covering up extremist activities in the kingdom." (Source: http://www.islamonline.net/English/News/2004-09/07/article03.shtml (emphasis added). The close ties between the United States, Saudia Arabia and particularly Crown Prince Abdulla have continued even beyond defendant's February, 2005

---

[1] "'Terror is a tactic. Terror is not a philosophy,' Biden said. 'The war in Chechnya is a war of liberation -- it engaged in terrorist activities, but it it is fundamentally different.'" (Source: http://dyn.politico.com/printstory.cfm?uuid=591CD132-3048-5C12-00FD823D095E14D1)

The Honorable Thomas Coffin
September 10, 2007
Page 3


indictment.  *See, e.g.*, "Diplomatic Hand-Holding," *Christian Science Monitor*, April 26, 2005, http://www.csmonitor.com/2005/0426/dailyUpdate.html)

Moreover, as noted at the detention hearing, the distribution of literature to prisoners comes under the protections of the First Amendment.

Therefore, this issue, which the government seems to believe is so important to its case, does not support detention.

IV.  Passsport issues resolved

At the detention hearing, the government informed the Court of its suspicions concerning defendant's previous US passport, which was not recovered upon his arrest. I informed the court that Mr. Seda's previous passport had been filled up with stamps, requiring a new application, and that the previous passport had been cancelled.  I expect to present defendant's previous passport, which is filled up with stamps and has been cancelled, to the Court at the September 10, 2007 hearing

V.  The presence of defendant's wife.

The government and US Pretrial Services have expressed the position that the liklihood of defendant appearing in court would be increased if his wife were in the United States.  She has returned and will be present at the September 10, 2007 hearing.

VI.  Verification Issues

In the limited time available, the defense has been able to track down documentary evidence, which has been submitted to US Pretrial Services Officer Lisa Brown, showing that Mr. Sedaghaty was living openly in each of the countries he visited.   He was using his own name, obtaining and using the necessary documents, passports, driver's licenses, etc. in each of these countries, and attempting to make a living through legitimate businesses.

As the Court is aware, Ms. Brown is having some difficulty verifying all of Mr. Seda's activities during his time in Saudi Arabia, The United Arab Emirates, Iran, and Syria.  In part her problems are due to cultural differences because street addresses in most of these countries are not used in the same way as in the United States.  Another significant verification issue is that the relations between the United States and the peoples and governments of these countries are so bad that the defense believes people in these countries will simply not provide information to US law enforcement officials.[2]

The Honorable Thomas M. Coffin
September 10, 2007
Page 4

In any event, the defendant's decision to return voluntarily to the United States, with specific notice to the government beforehand, is far more significant to the Court's release decision.

VII.  Defendant's continued efforts against terrorism, even in the Middle East.

It is ironic that one of the reasons some people in Middle Eastern countries recently visited by Mr. Seda may not be willing to cooperate with the US government concerning verification is that he has taken a public position against violence and terrorism.  Approximately 50,000 copies of his non-violent work, *Islam Is . . .*, were distributed in Saudi Arabia, and approximately 20,000 copies were distributed in The United Arab Emirates, pursuant to a government issued permit.[3]  Mr. Seda spoke out against violence and terrorism on Saudi Arabian television, perhaps causing someone to spray paint on his parking space: "AMERICA IS THE ROOT OF ALL EVIL."  This

---

[2]    Significantly, these verification issues are fatal to the government's dubious claim that Mr. Seda is a "Trojan Horse" sent to the United States by foreign powers to wreak havoc.  Certainly, if Mr. Seda were sent to the US by a foreign intelligence service, he would have been provided with an airtight cover story.

[3]    This is a scanned version of the permit:



The Honorable Thomas Coffin
September 10, 2007
Page 5

incident was viewed as a threat by the authorities, including the American embassy. A defendant who consistently speaks out against terrorism, despite personal risks, should not be viewed as a danger to the community.

  VIII. Conclusion

  Significantly, Mr. Sedaghaty is only facing tax charges. While the charges are felonies, they carry nothing like the potential penalties of many of the drug, fraud, and pornography charges seen by this Court on a daily basis. Moreover, the government's case relies upon flawed geopolitics.

  Most significantly to this court's release decision, the defendant, after openly living abroad, voluntarily returned to the United States. Before his return, his counsel provided the government with the exact time, place and flight number of his arrival. He has no criminal record and no drug or alcohol problems. He has several family members living in Oregon, now also including his wife. He is not a flight risk.

  The defendant has made an almost uniquely strong showing, with documents and character testimony at the release hearing, that he is strong force for peace in the community, not a danger to the community.

  He should be released.

       Yours truly,


       LAWRENCE MATASAR

LM/smw

cc: Chris Cardani
   Pirouz Sedaghaty
   Lisa Brown
   Steven T. Wax