KARIN J. IMMERGUT, OSB #963144
United States Attorney
District of Oregon
**CHRISTOPHER L. CARDANI**
Assistant United States Attorney
701 High Street
Eugene, OR 97401
Email: chris.cardani@usdoj.gov
Telephone: (541) 465-6771
**CHARLES F. GORDER, JR.**, OSB #912874
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204
Email: charles.gorder@usdoj.gov
Telephone: (503) 727-1000
      Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CR 05-60008-HO** |
| v. | |
| **PIROUZ SEDAGHATY, et al.,** | **GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR DISCOVERY AND SUPPLEMENT THERETO** |
| Defendants. | |

/////

/////

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      Background of the Al Haramain Foundation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      Criminal Activity of the U.S. Branch of Al-Haramain (Al-Haramain USA)  . . . . . . . . . 6

III.  APPLICABLE DISCOVERY STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      A.    Rule 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      B.    The *Jencks Act* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      C.    Brady Material . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV.   SPECIFIC RESPONSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**                                    <u>Page No.</u>

*United States v. Bagley*, 473 U.S. 667 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Brady v. Maryland*, 373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 10, 18, 19

*Giglio v. United States*, 405 U.S. 150 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Roviaro v. United States*, 353 U.S. 53 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Agurs*, 427 U.S. 97 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Bobadilla-Lopez*, 954 F.2d 519 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Bryan*, 868 F.2d 1032 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*United States v. Claiborne*, 765 F.2d 784 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Gambino*, 818 F. Supp. 541 (E.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Gordon*, 974 F.2d 1110 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Griffin*, 659 F.2d 932 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Hedgcorth*, 873 F.2d 1307 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Hoffman*, 794 F.2d 1429 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Laurins*, 660 F. Supp. 1579 (N.D. Cal. 1987),
    *aff'd*, 857 F.2d 529 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Little*, 753 F.2d 1420 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. McClintock*, 748 F.2d 1278 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. McElroy*, 697 F.2d 459 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Michaels*, 796 F.2d 1112 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**FEDERAL CASES**                                              <u>Page No.</u>

*United States v. Miller*, 874 F.2d 1255 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Mills*, 641 F.2d 785 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Santiago*, 46 F.3d 885 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Scarpa*, 897 F.2d 63 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Taylor*, 802 F.2d 1108 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*United States v. Walk*, 533 F.2d 417 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**FEDERAL STATUTES, LAWS & RULES**

18 U.S.C. § 371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Jencks Act*, 18 U.S.C. § 3500(a) . . . . . . . . . . . . . . . . . . . . . 1, 3, 9, 11, 13, 14, 16, 17, 19, 21, 24

26 U.S.C. § 7206(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

31 U.S.C. § 5316(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Rules of Criminal Procedure 16 . . . . . . . . . . . . . . . 1,9, 11, 13, 14, 19, 20, 21, 24, 25, 27

Federal Rules of Criminal Procedure Rule 16(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Federal Rules of Criminal Procedure Rule 16(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Federal Rules of Criminal Procedure Rule 16(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Federal Rules of Criminal Procedure Rule 16(a)(1)(B)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Federal Rules of Criminal Procedure Rule 16(a)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Federal Rules of Criminal Procedure Rule 16(a)(1)(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 22

Federal Rules of Criminal Procedure Rule 16(a)(1)(E)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Federal Rules of Criminal Procedure Rule 16(a)(1)(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

Federal Rules of Criminal Procedure Rule 16(a)(2) . . . . . . . . . . . . . . . . . . . . . . 14, 21, 23, 25, 26

The United States of America, by Karin J. Immergut, United States Attorney for the

District of Oregon, and Charles F. Gorder, Jr. and Christopher L. Cardani, Assistant United

States Attorneys, respectfully submits this response to defendant Pirouz Sedaghaty's First

Motion for Discovery and Supplement thereto.

## I.  INTRODUCTION

On February 17, 2005, defendants Pirouz Sedaghaty and Soliman Al-Buthe were indicted

by a federal grand jury for conspiracy to defraud the United States, in violation of Title 18,

United States Code, Section 371.  Additionally, defendant Sedaghaty was charged with one

count of filing a false tax return, in violation of Title 26, United States Code, Section 7206(1).

Defendant Soliman Al-Buthe was also indicted for one count of failure to file a report of

international transportation of a monetary instrument, in violation of Title 31, United States

Code, Section 5316(a)(1)(A).

Defendant Sedaghaty fled the United States in approximately February 2003 during the

pendency of the investigation and was out of the country when the indictment was filed.  He

returned to the United States in August 2007 and was promptly arraigned.  The trial in the matter

has been declared complex under the Speedy Trial Act and is presently set for October 8, 2008.

The co-defendant, Soliman Al-Buthe, remains a fugitive and is believed to be in Saudi Arabia.

As the Court can appreciate from the underlying allegations contained in the indictment,

discovery in this matter has been treated somewhat differently by the government than in cases

normally brought before this Court.  Some of the defendant's discovery requests implicate issues

of international terrorism, national security, and the foreign relations of the United States, which

involve the collection of information by our government that is ordinarily classified under

**Page 2 -** **GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR
DISCOVERY AND SUPPLEMENT THERETO**

United States law.  Accordingly, rather than providing "open file discovery," the government has used the discovery rules codified in the Federal Rules of Criminal Procedure, and related case law, to govern discovery in this case.

Despite this need for confidentiality, the government has already voluntarily provided the defendant with a large amount of discovery material, much of which goes beyond the strict requirements of *Brady*, Rule 16, and the *Jencks Act*.  To date, this material includes over 1500 pages of law enforcement agency interviews and other case-related reports, the application and affidavit in support of the search warrant executed at defendant Sedaghaty's residence/business, and 13 separate interview reports memorializing various statements the defendant made to the FBI over the years.  We have also produced American Express, bank, and real estate records, Al-Haramain USA's income tax records, accountant working papers, and copies of some documents found on Al-Haramain USA's computers, including pictures glorifying the operation of terrorists in Chechnya.

The government has also made available for counsels' inspection and copying additional material at the United States Attorney's Office in Eugene, Oregon, which includes bank records, Al-Haramain USA's documents obtained by grand jury subpoena, videotapes, prisoner letters, and computer data.  The defense has reviewed this material in a discovery room in the Eugene Courthouse on several occasions, and will continue to be able to do so.  We have also agreed to provide copies of the hard drives and other computer media seized from Al-Haramain USA pursuant to the search warrant.

Despite the extensive discovery provided to date, defendant Sedaghaty has filed an extremely overbroad discovery request and supplemented it on March 17, 2008, with an

**Page 3 -       GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR DISCOVERY AND SUPPLEMENT THERETO**

additional overbroad request.  Together, these requests call for large amounts of internal government reports and documents not normally produced in criminal discovery even in so-called "open-file" cases.  Some of the defendant's requests ask for material which, if it exists at all, would be classified for reasons of national security.  To the extent that defendant's discovery requests involve information requiring a discussion of classified information, such matters will be addressed by the government in a separate pleading filed pursuant to the Classified Information Procedures Act.  ***Thus, this response should be taken only to refer to non-classified materials in the possession of the government.***

Most of the requested material is simply irrelevant to the criminal charges at issue in this case which involve events occurring from 1999 through 2001.  In order to make apparent the immaterial and baseless nature of most of these requests, the government submits below an outline of its case.  In light of the actual allegations in this matter and the fact that the government has gone beyond its legally required obligations, the specific discovery requests should be denied as moot or as calling for material to which the defendant is not entitled.

## II.  STATEMENT OF FACTS

**Background of the Al Haramain Foundation**

The Al-Haramain Islamic Foundation of Riyadh, Saudi Arabia (hereafter "Al-Haramain") was at one time a prominent charitable organization in Saudi Arabia.  It had a presence in at least fifty countries, and in U.S. dollars its annual budget ranged between $30-$80 million.  Al-Haramain apparently performed some legitimate humanitarian projects throughout the world, including construction of water projects and hospitals, and distribution of food to those in need.

**Page 4 -        GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR DISCOVERY AND SUPPLEMENT THERETO**

But Al-Haramain went beyond well-recognized charitable activity.  Al-Haramain also promoted an extreme version of Islam called Wahhabism.  For example, its literature, which was distributed on a large scale within the United States by defendant Sedaghaty, stated that Muslims have an affirmative duty to engage in *jihad* (defined as holy fighting in Allah's cause) against those who do not believe in Islam, and that Muslims must prepare for *jihad* by engaging in military-type training.

On August 7, 1998, there were two simultaneous attacks on the American embassies in Kenya and Tanzania, resulting in the deaths of 223 people.  The terrorist organization Al-Qaeda was responsible for the attacks.  Law enforcement and other U.S. government officials later discovered evidence that certain branches of Al-Haramain were involved in financing and supporting acts of terrorism throughout the world, including the embassy bombings in Africa. Indeed, since the year 2000 when the events in this case occurred, the United States and the United Nations have designated numerous branches of Al-Haramain as entities supporting terrorism and the Kingdom of Saudi Arabia claims to have officially closed down the parent organization in Saudi Arabia.[1]

---

[1]  Pursuant to U.S. law, in 2002, the United States designated Al-Haramain offices in Bosnia and Somalia as terrorist supporting organizations, freezing their assets and prohibiting transactions with them.  Since then, Al-Haramain offices in Indonesia, Kenya, Tanzania, Pakistan, Afghanistan, Albania, Bangladesh, Ethiopia, the Netherlands, Comoros Islands and the United States have also been designated as terrorist supporting organizations.  Many individuals associated with these offices have likewise been designated as terrorists, including fugitive co-defendant Soliman Al-Buthe.

The United Nations has its own sanctioning mechanism for terrorist organizations. Under Security Council Resolution 1267, the United Nations can designate organizations or individuals as supporters of terrorism and add them to a list of sanctioned entities.  Using its authority under Security Council Resolution 1267, the United Nations has listed Al-Haramain
(continued...)

**Page 5 -      GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR DISCOVERY AND SUPPLEMENT THERETO**

**Criminal Activity of the U.S. Branch of Al-Haramain (Al-Haramain USA)**

Defendant Pirouz Sedaghaty, also known as Pete Seda, was the Secretary of the Al-Haramain Islamic Foundation, Inc., in Ashland, Oregon, which served as the United States headquarters of Al-Haramain.  To distinguish between the two, this response refers to the United States branch of Al-Haramain as "Al-Haramain USA" and to the parent organization in Saudi Arabia as simply "Al-Haramain."  Co-defendant Soliman Al-Buthe was the treasurer of Al-Haramain USA.  Two Saudi leaders of Al-Haramain were also involved in Al-Haramain USA.  Sheikh Aqeel Ben Abdulaziz Aqeel, the head of Al-Haramain, was the President of Al-Haramain USA, and both he and Mansour Al Qadi, whose business card was found among the possessions of one of those involved in the 1998 American embassies bombing plot, were directors of Al-Haramain USA.

Al-Haramain USA was incorporated in Oregon in February 1999.  In December 1999, defendant Sedaghaty retained a CPA in Medford, Oregon, to assist him in handling Al-Haramain USA's financial record keeping and to prepare its tax returns.  In their initial conversations (which occurred substantially before September 2001), defendant Sedaghaty told the CPA that he (Sedaghaty) thought that Al-Haramain USA and Sedaghaty would be scrutinized by the government.  Sedaghaty said his phones had been tapped for over ten years because the U.S. government thought all Muslims were bin Laden followers.

---

[1] (...continued)
branches in fourteen countries, including the branch in the United States as "entities associated with" Al-Qaeda, the Taliban, or Usama bin Laden.  This listing requires member nations to freeze assets, prevent travel, and ban the sale of munitions to the listed branches.

During the time he was operating Al-Haramain USA, defendant Sedaghaty received funding from the parent Al-Haramain organization.  Co-defendant Al-Buthe frequently traveled from Saudi Arabia to the United States bringing money with him on behalf of Al-Haramain. From examining forms Al-Buthe filed when arriving in the United States, we know that he visited this country at least nine times between 1997 and 2001, and transported $778,845.00 into the United States.  In addition, defendants Sedaghaty and Al-Buthe were co-signors on Al-Haramain USA bank accounts established at the Bank of America in Ashland, Oregon.  Al-Haramain periodically wire transferred funds to these Al-Haramain USA accounts.

In February 2000, an Egyptian donor identified as Mahmoud Talaat Hasan El Fiki, who was seeking to "support our Muslim brothers" in Chechnya, wire transferred U.S. $150,000.00 from a bank account in London to a Bank of America account held by Al-Haramain USA in Ashland.  On March 7, 2000, defendant Soliman Al-Buthe arrived in the United States from Riyadh, Saudi Arabia.  On March 9, 2000, Al-Buthe flew to Ashland to retrieve the funds. Defendants Sedaghaty and Al-Buthe went to the Bank of America and obtained 130 American Express Travelers checks in $1,000.00 denominations and a $21,000.00 cashier's check made out to Al-Buthe.  On March 12, 2000, Al-Buthe departed the United States, carrying the travelers checks.  When he left, Al-Buthe did not file a Currency and Monetary Instrument Report (CMIR), acknowledging he was leaving the country with more than $10,000.00 in currency as required by law.  The travelers checks and the cashier's check were later cashed at a bank in Saudi Arabia.  In October 2001, defendant Sedaghaty filed Al-Haramain USA's tax return for the year 2000 which covered up this transaction by falsely reporting that these funds were used to purchase a prayer house in Missouri, or returned to their original donor.

**Page 7 -       GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR DISCOVERY AND SUPPLEMENT THERETO**

Evidence obtained in this investigation shows that Al-Haramain USA, Sedaghaty and Al-Buthe intended on using this money to support the rebels (often referred to as the "*mujahideen*" or the "*brothers*") fighting the Russian government in Chechnya.  In February 2004, a search warrant was executed at defendant Sedaghaty's residence, where Al-Haramain USA's office was located, along with a prayer room.  Files located on computers found in the offices of Al-Haramain USA contained material glorifying terrorists operating in Chechnya, including graphic photographs of dead *mujahideen*, dead Russian soldiers, passports of dead Russian soldiers, and a map depicting the location of *mujahideen* military engagements.  Some of the individuals depicted in the seized photographs are *mujahideen* commanders like Shamil Basayev, who took credit for a 2004 terrorist attack on a children's school in Beslan, Russia, resulting in the deaths of 334 civilians, including 186 children.

An Al-Haramain employee in Saudi Arabia established an e-mail group to distribute messages glorifying the Chechnyan *mujahideen*.  Defendant Sedaghaty received numerous distributions from this e-mail group, copies of which were found on his computer in Ashland.[2] Videos seized during the execution of the search warrant depict *mujahideen* committing acts of violence against Russian soldiers in Chechnya.  Likewise, Al-Haramain newsletters praised the efforts of the *mujahideen* and called for their aid.  One such newsletter, "*The Latest News About*

---

[2] An example of these e-mails reads:

> A fierce battle broke out in the Yermluvka region.  By the Grace of
> Allah, the Mujahideen were slaughtering the enemy battalion.
> When the time came for the Mujahideen to return to their bases,
> the enemy managed to surround three of the Mujahideen.  At
> which point, their brothers came to their help, destroyed the siege,
> and returned to fighting again.

**Page 8 -**        **GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR DISCOVERY AND SUPPLEMENT THERETO**

*the Jihad in Chechnya*," documented the day-to-day activities of the *mujahideen* in Chechnya.

Al-Haramain promoted violent *jihad* as a religious obligation.  An Al-Haramain newsletter,

printed in English and dated February 2000, contained a section titled "*Jihad*," which stated in

part:

> Thus Jihaad is a religious obligation in Islaam.  Its aim is to fight
> oppression and injustice and to remove obstacles which prevent
> the spread of Islaam.  This is accomplished either by weakening or
> destroying the disbelieving prevalent political powers so that
> Muslims can prevent anyone from persecuting their brother
> Muslims wherever they may be.

Proof that the defendant attempted to help move the $150,000.00 received from the Egyptian El

Fiki to Chechnya will be central to the trial in this case.

### III.  APPLICABLE DISCOVERY STANDARDS

Discovery in criminal cases is controlled generally by Rule 16 of the Federal Rules of

Criminal Procedure.[3]  Pretrial discovery is governed by Rule 16, the *Jencks Act* (18 U.S.C.

§ 3500), and *Brady v. Maryland*, 373 U.S. 83 (1963), along with cases decided thereunder.  The

government has provided, and will continue to provide, the defendants with pretrial discovery in

accordance with those discovery standards.  Indeed, much of the material provided to date goes

beyond what is called for by these rules.  But consistent with its requirements to protect matters

of national security, the government must rely on the strict requirements of the criminal

discovery rules when necessary.  Certainly the defendant cannot contend that the numerous

instances in which the government has voluntarily exceeded its discovery obligations somehow

creates a right to an *order* that the government do so.

---

[3]  Unless otherwise noted, any reference to a "Rule" herein refers to the Federal Rules of
Criminal Procedure.

**Page 9 -        GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR
                  DISCOVERY AND SUPPLEMENT THERETO**

The defendant premises his extensive and overbroad discovery requests on the unsupported allegation that "shortly after September 11, 2001, the government began a massive investigation of all Muslims living in the United States."  Supplement to First Motion for Discovery, p.8.  Extrapolating from this ridiculous proposition, the defendant then surmises that "it is highly likely" that the government conducted numerous interviews of people who reported "the peaceable character" of the defendant and his "philanthropic work" and that all of these reports are exculpatory material required to be produced in discovery.  This, of course, is simply rank speculation.

Counsel then compounds this mistake by asserting that, because an element of the offenses charged herein is wilfulness, "virtually all of the material in the possession of the government is exculpatory."  Supplement to First Motion for Discovery, p.2.  In effect, he suggests that if there was ever a moment in time when the defendant was not in the process of committing a crime, such information is exculpatory under *Brady*.  Because that assertion rests on an unwarranted view of human nature – that criminals must do evil every waking moment of the day – it is not the law.  Indeed, the government is not alleging that the defendant never did anything one would recognize as "peaceful."  Rather, in the conspirators' view of "charity" there was no distinction between genuine humanitarian relief and assistance to the rebels in Chechnya.

In *United States v. Scarpa*, 897 F.2d 63 (2d Cir. 1990), the defendant mobster was convicted of various RICO, extortion, and narcotics offenses.  The defendant and his "crew" were known to spend a lot of time at the "Wimpy Boys Club," but the evidence indicated that the topic of drugs was never mentioned there.  It turned out that for four months local law

**Page 10 -      GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR DISCOVERY AND SUPPLEMENT THERETO**

enforcement had conducted electronic surveillance at the club.  The defendant requested access

to the surveillance tapes:

> arguing that the absence of incriminating statements during the
> period in which he allegedly led the Crew was relevant to establish
> the absence of the activity alleged.  The district court refused to
> order disclosure of the tapes, agreeing with the government that
> they contained conversations which were "either wholly innocuous
> or involve[d] criminality that has nothing to do with the crimes
> charged in this case."

897 F.2d at 67.  The Second Circuit affirmed the refusal to turn the evidence over to the

defendant, holding that:

> [a] defendant may not seek to establish his innocence, however,
> through proof of the absence of criminal acts on specific
> occasions. . . .  The absence of drug conversations is consistent
> with testimony by the cooperating witnesses that drugs were never
> discussed inside the Club.  Thus, the district court appropriately
> refused to order disclosure of the tapes.  *See United States v.*
> *McElroy,* 697 F.2d 459, 464 (2d Cir. 1982) ("Rule 16 thus does not
> cover oral statements unrelated to the crime charged or completely
> separate from the Government's trial evidence.").

897 F.2d at 70 (citations omitted).  *See also United States v. McClintock,* 748 F.2d 1278, 1287

(9th Cir. 1984) (tape recording of witness showing business not always engaged in a fraudulent

practice not exculpatory); *United States v. Gambino,* 818 F. Supp. 541, 552 (E.D.N.Y. 1993) (the

very irrelevance of statements does not make them relevant; evidence of surveillance showing

noncriminal activities not discoverable unless defendant charged with ceaseless criminal

conduct).

     In *United States v. Hedgcorth,* 873 F.2d 1307 (9th Cir. 1989), the defendant was charged

with involvement in the firebombing of two cars and the attempted firebombing of a house.  He

attempted to introduce evidence to show that he was a "'thoughtful,' 'peaceable mercenary' who

**Page 11 -    GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR**
**DISCOVERY AND SUPPLEMENT THERETO**

was betrayed by the random acts of reckless colleagues." *Id.* at 1313. The district court

excluded evidence that the defendant was an operator of a respectable mercenary school and a

participant in high level intelligence work for the government. The Ninth Circuit held that such

evidence was inadmissible character evidence:

> [t]he trial court properly held such evidence inadmissible to the
> extent it was offered to show that [the defendant] was a "patriotic,"
> "pro-government" individual unlikely to engage in acts of
> terrorism.

*Id.* The court also held that the district court properly excluded evidence of the defendant's

writings offered to show his "peaceful mercenary philosophy," noting that it had "no bearing on

his state of mind during offenses committed years later." *Id.*

In evaluating the defendant's requests, the court should also note that much of what the

defendant assumes exists in some government file would be by his own admission self-serving

hearsay which would not be admissible at trial. Indeed, statements made by someone who

thought his phone had been tapped for ten years *before* 9/11, and who postulates that every

Muslim was under government investigation *after* 9/11, would be inadmissible to prove his

"peaceful nature." *See, e.g., United States v. Miller*, 874 F.2d 1255, 1265-66 (9th Cir. 1989)

(proper to exclude exculpatory wiretapped phone conversation as self-serving by defendant who

believed his phone was tapped).

Here, the defendant is charged with a discrete course of conduct in the years 2000 and

2001 in which he conspired to defraud the United States by covering up the export and use of so-

called "charitable" funds overseas which the evidence will show was intended to be distributed

to the "brothers," *i.e.*, the rebels, in Chechnya. Whether he may have talked about "peace" or

**Page 12 -    GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR
             DISCOVERY AND SUPPLEMENT THERETO**

engaged in a particular "good work" at some other discrete time, particularly after September 11, 2001, or in some other place besides Chechnya, is simply not relevant to the charges against him.

Before turning to the defendant's numerous specific requests, this memorandum will set forth the legal standards for discovery in criminal cases.

A.    **Rule 16**

Rule 16 provides for disclosure of five types of information:  the defendant's own statements; the defendant's prior criminal record; documents and tangible things which are within the government's possession, custody, or control, and which are material to the preparation of the defense, are intended for use as evidence in the government's case-in-chief, or were obtained from or belong to the defendant; results or reports of physical or mental examinations or scientific tests or experiments; and a summary of the qualifications and opinions of expert witnesses who will testify at trial.  The government is complying and will continue to comply with the requirements of Rule 16.

Most relevant to the overly broad discovery requests made here, however, Rule 16(a)(2) also provides as follows:

> Except as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.  Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

Furthermore, Rule 16 applies only to statements, documents, and materials to which federal prosecutors have knowledge and access, that is, generally the files of the Department of Justice and of the investigative agency and any other law enforcement agencies closely

**Page 13 -    GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR DISCOVERY AND SUPPLEMENT THERETO**

connected to the investigation (here the IRS and FBI).  *United States v. Santiago*, 46 F.3d 885, 893-94 (9th Cir. 1995); *United States v. Bryan*, 868 F.2d 1032 (9th Cir. 1989).  To the extent that there is a good faith reason to believe that any other government agency, other than the IRS and FBI, could have potentially discoverable or exculpatory information relevant to this case we, of course, would make appropriate inquiries.

But no prosecution, including this one, requires that a defendant be allowed access to all government files.  Thus, for example, the defendant's demand for "all information in the possession of the United States government," defined as any entity of the United States "within or without the Departments of Justice and Treasury, wherever located" literally applies to *every employee* of *every agency* of the United States, whether closely connected to this case or not (see Supplement to First Motion for Discovery, p.13, request 57, n.1).  These requests thus far surpass the scope of information to which any defendant is entitled.

Further, "[t]o obtain discovery under Rule [16(a)(1)(E)],[4] a defendant must make a prima facie showing of materiality."  *United States v. Cadet*, 727 F.2d 1453, 1468 (9th Cir. 1984).  A "general description of the materials sought or a conclusory argument as to their materiality is insufficient to satisfy the requirements of Rule 16(a)(1)(C)."  *Cadet*, 727 F.2d at 1468.  Similarly, a request for "all 'relevant' evidence" will be "inadequate to meet the requirements" of the rule.  *Id.*  Nor can a request for "all of the files" of the investigative agency be granted absent a showing of materiality.  *United States v. Gordon*, 974 F.2d 1110, 1116-17 (9th Cir. 1992).

---

[4]    Then-Rule 16(a)(1)(C).

**Page 14 -    GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR DISCOVERY AND SUPPLEMENT THERETO**

Rule 16(a)(1)(A) governs pretrial discovery of the defendant's own statements. It requires disclosure of "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial."

A defendant's oral statements "need only be disclosed if made in response to interrogation by persons known to be government agents." *United States v. Hoffman*, 794 F.2d 1429, 1432 (9th Cir. 1986). By providing the defendant with 13 reports concerning his contacts with the FBI, the government has more than complied with this provision. The defendant is not entitled to a pretrial discovery *order* requiring the production of any oral statements he may have made to persons other than government agents, since "'the Jencks Act prohibits the pre-trial disclosure of the [government] witness' statements, even when such statements contain quotations allegedly attributed to the defendant. . . .'" *Hoffman*, 794 F.2d at 1433, quoting *United States v. Walk*, 533 F.2d 417, 420 (9th Cir. 1975).

Besides a defendant's statements in response to interrogation, Rule 16(a)(1)(B) further requires the government to

> disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:
>
> (i) any *relevant written or recorded statement* by the defendant if:
> - the statement is within the government's possession, custody, or control; and
>
> - the attorney for the government knows – or through due diligence could know – that the statement exists . . .

**Page 15 -    GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR DISCOVERY AND SUPPLEMENT THERETO**

(Emphasis added).  Thus, any recorded or written statements of a defendant are discoverable only if they are relevant.  The defendant speculates that he was the subject of electronic surveillance post-September 11.  Left unsaid is how any such statement obtained years after the March 2000 financial transaction at issue would be relevant to the charges in this case.

     **B.**    **The *Jencks Act***

The *Jencks Act* provides that no statement or report of any "Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection <u>until such witness has testified on direct examination in the trial of the case</u>."  18 U.S.C. § 3500(a) (emphasis added).  Thus, unless exculpatory, statements of witnesses and potential witnesses are generally "unavailable until such witnesses have testified at trial." *United States v. Taylor*, 802 F.2d 1108, 1118 (9th Cir. 1986).  Statements of prospective government witnesses who do not testify at trial are not discoverable at all under the *Jencks Act*. *Cadet*, 727 F.2d at 1469; *United States v. Mills*, 641 F.2d 785 (9th Cir. 1981).

The *Jencks Act* narrowly defines "statement" as –

     (1) a written statement made by said witness and signed or otherwise adopted or approved by him;

     (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

     (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e).  Thus, investigative reports of law enforcement agencies often will not constitute *Jencks Act* material, even if the reports contain summaries of prospective witnesses' statements.  Unless the summaries were shown to and were adopted or approved by the

**Page 16 -**    **GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR DISCOVERY AND SUPPLEMENT THERETO**

witnesses, or unless the reports are substantially verbatim transcriptions of the witness'

statements, they are not *Jencks Act* material and are not discoverable.

Despite these limitations, the government has gratuitously provided the defendant with

reports of interviews of some of our prospective witnesses such as the Medford CPA.  This is

beyond that which the government is technically required to produce, even after a witness has

testified at trial, under a strict interpretation of the *Jencks Act*.  *United States v. Claiborne*, 765

F.2d 784, 801 (9th Cir. 1985) (FBI summaries of witness interviews are not normally *Jencks Act*

material).  *See also United States v. Bobadilla-Lopez*, 954 F.2d 519, 522 (9th Cir. 1992) (to be

discoverable under the *Jencks Act*, statements must "reflect the witness' own words" and must

"also be in the nature of a complete recital that eliminates the possibility of portions being

selected out of context").  To prevent delay in the trial, the government will disclose its *Jencks*

*Act* material prior to trial at a mutually agreeable future date to be determined, so long as the

defendant reciprocates.

    **C.**    ***Brady* Material**

Under *Brady v. Maryland*, the government must disclose to the defendant exculpatory

evidence which is "material either to guilt or to punishment. . . ."  *Brady*, 373 U.S. 83, 87 (1963).

However, *Brady* does not create "a constitutional duty to disclose every bit of information that

might affect the jury's decision; [the government] need only disclose information favorable to

the defense that meets the appropriate standard of materiality."  *United States v. Little*, 753 F.2d

1420, 1440-41 (9th Cir. 1984).  *See also United States v. Agurs*, 427 U.S. 97, 106 (1976) ("there

is, of course, no duty to provide defense counsel with unlimited discovery of everything known

by the prosecutor").

**Page 17 -**    **GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR
DISCOVERY AND SUPPLEMENT THERETO**

The mere possibility that an item of information might help the defense or might affect the outcome of the trial "does not establish 'materiality' in the constitutional sense." *Agurs*, 427 U.S. at 109-110.  Rather, evidence is material only if  "its suppression undermines confidence in the outcome of the trial," *United States v. Bagley*, 473 U.S. 667, 678 (1985), or if the information "is of sufficient significance to result in the denial of the defendant's right to a fair trial." *Agurs*, 427 U.S. at 108; *Bagley*, 473 U.S. at 675.

Evidence affecting the credibility of key government witnesses falls within the *Brady* doctrine.  *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).  While such evidence includes "criminal records of government witnesses, favors and deals given to government witnesses, and grants of immunity given to government witnesses," the government "need not disclose this material prior to the direct examination of the relevant witness."  *United States v. Laurins*, 660 F. Supp. 1579, 1584 (N.D. Cal. 1987), *aff'd*, 857 F.2d 529 (9th Cir. 1988).

Exculpatory information in formal investigative reports is discoverable *Brady* material. Rough notes are discoverable under *Brady* if the prosecutor perceives, or the defendant can raise, a "colorable claim that the rough notes contain evidence favorable to the defendant and material to his claim of innocence or to the applicable punishment" which had not been included in any formal report provided to the defendant.  *Taylor*, 802 F.2d at 1118 n.5 (citing *United States v. Griffin*, 659 F.2d 932, 939 (9th Cir. 1981).  "'[M]ere speculation about materials in the government's files [does not require] the district court . . . under *Brady* to make the materials available for [defendant's] inspection.'"  *United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986) (citation omitted).

**Page 18 -    GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR DISCOVERY AND SUPPLEMENT THERETO**

Keeping these three sources of discovery in criminal cases in mind, the government responds to the defendant's specific requests as follows, generally in the numerical order contained in pages 2-6 of his First Motion for Discovery, filed October 22, 2007, and in all of his Supplemental Request, filed on March 17, 2008.  To the extent possible, where the defendant makes the same general request in more than one paragraph of the requests, the government has consolidated its response.

## IV.  SPECIFIC RESPONSES

1, 2, 68.  <u>Statements of Defendant</u>. The government has provided copies of 13 reports of FBI interviews of or contacts with defendant Sedaghaty.  Statements made to any possible informants, if any, are not statements made to a person "the defendant knew was a government agent" and are therefore not discoverable under Rule 16. The defendant did not make any statements following his August 2007 arrest and defense counsel has a copy of the arrest report.  Bate Stamp Numbers 23-24.

3.  <u>Search Warrant Material.</u>  The government has previously provided the search warrant, supporting affidavit, and inventories for the search executed in this case. We will provide the reports concerning the execution of the search and an additional consent to search form obtained during execution of the search warrant.

4.  <u>Criminal Record</u>.  The government will provide the defendant's prior criminal record.

5.  <u>Copies of E-Mails</u>.  The government will provide copies of any e-mails it intends to introduce in its case-in-chief or are material to preparing the defense under Rule 16(a)(1)(E)(i) or (ii).  Counsel is also specifically referred to the copies of

**Page 19 -** **GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR DISCOVERY AND SUPPLEMENT THERETO**

the imaged hard drives of the computers seized in connection with the execution

of the search warrant which are being provided to counsel for other e-mails

obtained from the defendant.

6.      Written Correspondence.  To the extent this request calls for written

correspondence from third parties subpoenaed during the course of the

investigation, Rule 16 does not provide for discovery of such documents.

7.      Informant Information.  Information concerning any informants is not

discoverable unless such a person is called to testify at trial.  *Roviaro v. United

States*, 353 U.S. 53 (1957).

8.      Contacts with any Government.  This information is not discoverable under Rule

16(a)(2).

9.      To the extent that this calls for interview reports of various persons, the defendant

is not entitled to this information under Rule 16.  To the extent it calls for

statements of the defendant, see answer to number 1 above.

10, 11, 70, 74. Classified Information.  Any information which might exist concerning

these issues would be classified and will be addressed pursuant to a separate

response.

12.      Information Concerning Beginning of Investigation.  This information is not

discoverable under Rule 16(a)(2).

13, 16, 21, 23, 51.  Witness Interviews.  Reports of all interviews of persons the

government intends to call to testify at trial will be handled pursuant to the *Jencks*

*Act* and will be turned over at a date to be determined in the future when the

**Page 20 -      GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR
DISCOVERY AND SUPPLEMENT THERETO**

parties exchange their witness statements.  To the extent that this calls for interview reports of various other persons, the defendant is not entitled to this information under Rule 16.

14-15.  <u>Property Records</u>.  Title records have been previously provided (Bates Stamp Nos. 385-434).  We will provide additional title records involving real estate transactions of the defendant Sedaghaty.  If any video surveillance records of the property exist, they are not relevant to the charges in this case.

17.  <u>Bank Records</u>.  Any bank records obtained pursuant to subpoena over which defendant Sedaghaty had signature authority have been or will be provided.

18, 71.  <u>CMIRs</u>.  These documents have been provided.

19.  <u>Expert Witness Reports</u>.  Expert witness reports will be provided as required under Rule 16(a)(1)(F) and (G).

20.  <u>ICE documents</u>.  These documents have been provided.  Bate Stamp Numbers 240-276.

22.  <u>CPA Information</u>.  To the extent that this request calls for more than the 5 CPA interview reports and approximately 750 pages of accountant work papers already voluntarily provided, there is no authority for this request.

24.  <u>Character Evidence</u>.  As discussed above, with the exception of defendant Sedaghaty's intent regarding activity in Chechnya in the years 1999-2000, this information is not relevant and hence not discoverable.

25, 27, 52-23.  <u>Common Carrier Records</u>.  Since these records (telephone company and ISP records) do not appear to be material to the defense, since the government

**Page 21 -**    **GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR DISCOVERY AND SUPPLEMENT THERETO**

does not intend to introduce these records in its case-in-chief, and since they were not seized from the defendant, they are not discoverable under Rule 16(a)(1)(E).

26.  <u>Bookkeeping Records</u>.  This information has been provided in the discovery to date and/or is available in the discovery room.

28, 47.  <u>Surveillance Reports</u>.  Since the government does not intend to introduce evidence of any surveillance of the defendant, any surveillance reports which might exist are not discoverable under Rule 16(a)(2).

31, 68.  <u>Interview Reports</u>.  Government counsel are aware of their duties to the Court and defense counsel regarding exculpatory evidence and will continue to disclose that material which is genuinely exculpatory.  As discussed above, the simple absence of apparent crime or a "peaceful act" unrelated to Chechnya in 2000 is not exculpatory.  The defendant is not entitled to all of the files of the government concerning him under Rule 16(a)(2).

32.  <u>Poor Copies of Discovery</u>.  Sometimes, the legibility of material the government obtains from third parties is not ideal.  We believe that the documents identified by the defense in this request reflect the quality of the documents in our possession.  Should the defense want to examine the government's "original" of these documents, that can be arranged upon reasonable notice.

33-34.  <u>Bank Records</u>.  These documents are among those available for inspection and copying in the discovery room in the Eugene Courthouse .

35.  <u>Wilcox Material</u>.  All material received from Wilcox has been provided.

**Page 22 -    GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR DISCOVERY AND SUPPLEMENT THERETO**

36.    <u>Arrest Reports</u>.  The defendant has the report prepared concerning his arrest, which was prepared by the IRS.

37.    <u>Kurt Charlton Report</u>.  The defendant has this report (see Bates Stamp Numbers 19-21).

38-39.  <u>Agent Anderson's Correspondence</u>.  These letters are not discoverable under Rule 16.

40.    <u>Records of International Shipments</u>.  The government has provided relevant and material documents covered by this request – see Bates Stamp Numbers 240-276.

41.    The check listed in this request is available for inspection in the Eugene discovery room.  We do not have a copy of the advertisement.

42.    <u>Records of Communication</u>.  Other than what is on the computer hard drives seized from the defendant pursuant to search warrant, the government will provide only that information covered by Rule 16(a)(1)(B)(i), that is, relevant written or recorded statements of the defendant only.  To the extent that this request asks for anything else, it should be denied.

43-44, 59-60.  Information about <u>Gartenstein-Ross</u>.  The government has already provided nine reports of interview involving Daveed Gartenstein-Ross, a fact witness in this case.  Any further relevant material concerning him will be provided at an appropriate later time as required under the *Jencks Act*.

45.    <u>Computer Forensic Reports</u>.  The government will provide the forensic report of any expert to be called to testify at trial under Rule 16(a)(1)(F) and (G).  The forensic examination of the computers seized from Al-Haramain is still ongoing.

**Page 23 -      GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR DISCOVERY AND SUPPLEMENT THERETO**

46.    <u>bin Laden E-Mail Material</u>.  The Usama bin Laden e-mail was introduced at the

detention hearing solely for the limited purpose of establishing the defendant's

dangerousness and risk of flight.  Since the government does not presently intend

to introduce it at the trial of this matter, information concerning its origin is not

relevant and hence not discoverable under Rule 16.

48.    These items are images from the Al Haramain USA computer hard drives which

the defendant will receive.

49.    These additional items are copies of grand jury subpoenas and are not

discoverable.

50.    Attachment 2 is contained in the accountant work papers already provided.

54.    <u>Encrypted Computer File</u>.  The decrypted computer file, which appears to contain

pornography, is not relevant to this case.

55.    <u>Mail Material</u>.  Other than items seized during the execution of the search warrant,

the contents of mail delivered to the defendant were not obtained by the

government.  To the extent this request asks for any additional information, that

information is not relevant and hence not discoverable.

56.    <u>Summer Rife Computer</u>.  This computer was returned to Summer Rife.  The

government's analysis of the contents is still on-going.

57.    <u>SJRC Material</u>.  The government has recently provided the defendant with a copy

of letters from attorney Lynne Bernabei which cover this topic.  Any internal

government documents on this subject, if they exist, are not discoverable.

**Page 24 -    GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR
DISCOVERY AND SUPPLEMENT THERETO**

58.    <u>Canadian Interviews</u>.  This information is not relevant or discoverable under Rule 16(a)(2).

61.    <u>Rife, Zahedi Interviews</u>.  The government will provide a report of the service of a grand jury subpoena upon Al-Haramain USA on June 23, 2003, which involved contact with Zahedi and Rife.

62.    <u>Contacts with U.S. Government</u>.  Records concerning contacts between the defendant and the United States satisfying this request exist on the images of the Al-Haramain USA computer hard drives to be provided to the defendant.  If there are any further such communications between the defendant and the U.S. government in the possession of the FBI or IRS, the government will provide them but will not provide any internal reports concerning such communications under Rule 16(a)(2).

63.    <u>Shipment Records</u>.  Documents concerning shipments aside from the currency reflected in the CMIRs contained in the discovery already provided are irrelevant.

64.    <u>Sedaghaty Report of Suspicious Activity</u>.  The information concerning credit card fraud provided by Sedaghaty at this time was disseminated to law enforcement in another part of the country and to our knowledge resulted in a dead end investigation and no arrests.  Reports on this matter are not relevant to the criminal charges in this case.

65.    <u>Tom Nelson Letter</u>.  We have recently provided a copy of the information provided by Tom Nelson in a letter to AUSA Cardani dated January 26, 2005.

**Page 25 -    GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR DISCOVERY AND SUPPLEMENT THERETO**

66.    <u>Matthews Report</u>.  There are no reports of any interrogation by FBI Special Agent

Charles Mathews of defendant Sedaghaty which would be discoverable under Rule

16.

67.    <u>David Berger Reports</u>.  We have recently provided copies of any reports of contact

with attorney David Berger in his capacity as an attorney for Al Haramain USA,

including the report of the execution of the search warrant during which

Mr. Berger was present.

70.    See answer to Number 10.  There were no other Article III search warrants issued

in this investigation.

72.    <u>Pretrial Services Information</u>.  This request is irrelevant.

73.    <u>Lane County Jail Phone Calls</u>.  No recorded calls are in our possession.

/////

/////

**Page 26 -    GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR
DISCOVERY AND SUPPLEMENT THERETO**

## V.  CONCLUSION

For the reasons given above, the requests for discovery filed October 22, 2007, and

March 17, 2008, should be denied as moot or as calling for material to which the defendant is not

entitled.

Dated this 25th day of April 2008.

KARIN J. IMMERGUT
United States Attorney

*s/ Charles F. Gorder, Jr.*
CHARLES F. GORDER, JR.
Assistant United States Attorney


*s/ Christopher L. Cardani*
CHRISTOPHER L. CARDANI
Assistant United States Attorney

**Page 27 -    GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION FOR
DISCOVERY AND SUPPLEMENT THERETO**