Lawrence Matasar, OSB No. 74209
621 SW Morrison Street, Suite #1025
Portland, OR 97205
Tel: (503) 222-9830
Fax: (503) 274-8575
Email: larry@pdxlaw.com

Steven T. Wax, OSB No. 85012
Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR  97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Email: steve_wax@fd.org

      Attorneys for Defendant


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 05-60008-02 HO |
|      Plaintiff, | DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO |
| v. | MODIFY COURT'S MAY 16, 2008, ORDER PROHIBITING |
| PIROUZ SEDAGHATY, | COMMUNICATION WITHIN THE DEFENSE TEAM AND ENTERING A |
|      Defendant. | PRELIMINARY PROTECTIVE ORDER |

## INTRODUCTION

Mr. Sedaghaty respectfully requests a modification of this Court's May 16, 2008 Order to

allow communication among the defense team in order to assure the Sixth Amendment right to

counsel while addressing the government's concerns regarding national security through the

entry of a preliminary protective order.

On May 16, 2008, the Court issued an order, stating in part:

> The court is aware of communications between defense counsel and the court security specialist regarding a sealed document that is in her custody. At this time, no discussion among defense counsel or any members of the defense team regarding the contents of the document is permitted.

The Sixth Amendment's guarantee to the right of the assistance of counsel in a criminal case and the importance of full disclosure between attorney and client militate against such a broad prohibition. The order both prevents and chills communication between the two defense attorneys as well as communication from Mr. Sedaghaty, a criminal defendant, and his defense counsel. In addition, it significantly hinders the ability of the defense to analyze this criminal case and make informed legal decisions. As in many cases involving sensitive materials, legitimate concerns regarding security can be addressed with a protective order.

## STATEMENT OF FACTS

The requested modification is appropriate in the context of the background and history of the secret sealed document that has been the subject of litigation in this District and upon which this Court's order was based.[1] Following the attacks of September 11, 2001, President Bush had the National Security Agency (NSA) launch a warrantless surveillance program, called the

---

[1]    The facts concerning the document and related matters are generally derived from *Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190, 1194-96 (9th Cir. 2007), a case where Al-Haramain Islamic Foundation, defendant Sedaghaty's co-defendant in the instant case, and two of its attorneys brought suit against President Bush and other agencies and officials claiming that they had been subject to warrantless electronic surveillance in violation of the Foreign Intelligence Surveillance Act (FISA), various provisions of the United States Constitution and international law.

Terrorist Surveillance Program (TSP).  The program became national news in late 2005, when the New York Times disclosed its existence.[2]

In August 2004, Al-Haramain was involved in a civil designation proceeding involving the United States Department of the Treasury.  As part of the discovery process, the Department of the Treasury inadvertently provided to Al-Haramain's counsel, "the Sealed Document, which was labeled 'TOP SECRET.'"  *Al-Haramain Islamic Foundation, Inc. v. Bush*, 507 F.3d 1190, 1194-96  (9th Cir. 2007).  According to the Ninth Circuit, "It is no secret that the Sealed Document has something to do with intelligence activities.  Beyond that, we go no further in disclosure."  507 F.3d at 1203.  The opinion further stated, "Al-Haramain's counsel copied and disseminated the materials, including the Sealed Document, to Al-Haramain's directors and co-counsel."  *Id.*

At the time the materials were disseminated, Mr. Sedaghaty was a director of Al-Haramain.  One of his current criminal defense counsel, Lawrence Matasar, received a copy of the document.  Also, according to the Ninth Circuit, the documents were reviewed by the Washington Post.  *Id.*  In October, 2004, "the FBI retrieved all copies of the Sealed Document from Al-Haramain's counsel, though it did not seek out Al-Haramain's directors to obtain their copies."  *Id.*

---

[2]        According to the Ninth Circuit, very soon after a New York Times story by Eric Lichtblau about the secret program, President Bush and then-Attorney General Gonzales disclosed details about the program.  *Al-Haramain v. Bush, supra* at 1192.  Mr. Lichtblau wrote in his recent book, *Bush's Law: The Remaking of American Justice*, p. 160 (2008): "a team of NSA technicians, analysts, and translators working round-the-clock out of cubicles at an open office the size of a small newsroom at Fort Meade had eavesdropped without warrants on the phone calls and e-mails of several thousand people in the United States suspected of ties to terrorists.  An Islamic charity in Oregon had apparently been monitored."

**ARGUMENT**

I.      **MODIFICATION OF THIS COURT'S ORDER IS CONSISTENT WITH THE
        NEED FOR FULL ATTORNEY CLIENT COMMUNICATION IN A CRIMINAL
        CASE AND THE GOVERNMENT'S LEGITIMATE CONCERNS REGARDING
        NATIONAL SECURITY.**

        The initial order in this case is both broad in its prohibition and intrusive in its effect on

the attorney/client relationship.  Given the purpose and function of the right to counsel in a

criminal case, the order should be modified to allow consultation and disclosure – within

protective limits – to assure Mr. Sedaghaty receives effective assistance of counsel.  The

government's legitimate concerns can be addressed in the context of a protective order calibrated

to the needs in this case.

        A.      **Full Disclosure From Client To Attorney And Consultation Within The
                Defense Team Are Required To Provide The Client With The
                Constitutionally Required Guiding Hand Of Counsel During All Criminal
                Proceedings.**

        The request to modify this Court's order implicates the first two of the three major

underpinnings of the attorney/client privilege:

        First the law is complex and in order for members of the society to comply
        within the management of their affairs and the settlement of their disputes
        they require the assistance of expert lawyers.  Second, lawyers are unable to
        discharge this function without the fullest possible knowledge of the facts of
        the client's situation.

McCormick on Evidence, § 87 (6th Ed. 2006).[3]  These principles have special significance in

criminal cases: "In all criminal prosecutions, the accused shall enjoy the right * * * to have the

Assistance of Counsel for his defence."  U.S. Const. Amend VI.  This right includes unfettered

_____

[3]      The third rationale for the privilege relates to maintaining client secrets, which is not at
issue here.

Page 4  - DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO MODIFY COURT'S MAY 16,
        2008, ORDER PROHIBITING COMMUNICATION WITHIN THE DEFENSE TEAM AND ENTERING
        A PRELIMINARY PROTECTIVE ORDER

access and communication between attorney and the criminally accused.  In *Geders v. United States*, 425 U.S. 80, 88-89 (1976), the Supreme Court reversed a conviction because the trial judge prohibited the defendant from discussing his case with his lawyer during an overnight recess in the trial, stating:

> Our cases recognize that the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance.
>
> "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. . . . (A defendant) is unfamiliar with the rules of evidence. . . .He lacks both the skill and knowledge adequately to prepare his defense, even though he (may) have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him."  *Powell v. Alabama*, 287 U.S. 45, 68-69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170 (1932).

The Ninth Circuit has reinforced the importance of full disclosure between attorney and client in all areas: "While it is the great purpose of law to ascertain the truth, there is the countervailing necessity of insuring the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense."  *Baird v. Koerner*, 279 F.2d 623, 629 (9th Cir. 1960).  The Court noted that the policy of full disclosure is even more fundamental than the attorney-client privilege: "We recognize that the policy of full disclosure is a 'more fundamental one' than the policy of the attorney-client privilege; that the latter is not universally regarded as absolute, and is to be strictly limited to the purposes for which it exists."  279 F.2d at 631-32 (citations omitted).

The American Bar Association recognizes that clients are "encouraged to seek legal assistance and to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter[s]."  Comment to the Model Rule of Professional Conduct 1.6

(Confidentiality of Information).  The comment goes on to state: "The lawyer needs this information to represent the client effectively and, if necessary, to advise the client to refrain from wrongful conduct.  Almost without exception, clients come to lawyers in order to determine their rights and what is, in the complex of laws and regulations, deemed to be legal and correct." *Id.  See United States v. Kwan*, 407 F.3d 1005, 1016 (9th Cir. 2005) (ABA Standards are guides regarding what is competent representation pursuant to the Sixth Amendment guarantee of assistance of counsel).

The policy of full disclosure is a necessary concomitant of the attorney-client privilege, which is "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  Its purpose is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998).  Even in the context of recent Guantánamo litigation, Courts recognize: "[t]he privilege that attaches to communications between counsel and client has long held an exceptional place in the legal system of the United States." *Al Odah v. Bush*, 346 F. Supp. 2d 1, 10 (D.D.C. 2004).

**B.**     **Use of a Protective Order in a Criminal Case Is an Adequate Remedy To Address the Government's Concerns Regarding National Security.**

It is common practice in the context of discovery in federal criminal cases to enter protective orders that will address any concerns that may exist regarding inappropriate disclosures.  Fed. R. Crim. Proc. 16(d).  In this case, the government has legitimate concerns regarding the dissemination of information regarding a sealed document that is in the custody of the Court Security Officer (CSO).   Defense counsel recognizes the need of the government to protect information regarding national security.  However, this need cannot outweigh the

constitutional protections guaranteed to Mr. Sedaghaty through the Sixth Amendment, which

entitle him to be able to communicate freely to his defense counsel. *United States v. Reynolds*,

345 U.S. 12 (1953) ("[S]ince the Government which prosecutes an accused also has the duty to

see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke

its governmental privileges to deprive the accused of anything which might be material to its

own defense.")

The proposed preliminary protective order would ensure necessary communication

between defense counsel and among the defense team while addressing the government's

legitimate national security concerns.

     **C.**    **Full Disclosure And Communication Is Necessary In Order For The Defense
Team To Provide Informed Advice And To Make Strategic Legal Decisions
In This Case**

The modification of the order and preliminary protective order are necessary for the

defense to make pretrial decisions consistent with the right to effective assistance of counsel.

The defendant has the option to eventually file a notice under section 5 of CIPA, which provides:

> If a defendant reasonable expects to disclose or to cause the disclosure of
> classified information in any manner in connection with any trial or pretrial
> proceeding involving the criminal prosecution of such defendant, the
> defendant shall, within the time specified by the court or, where no time is
> specified, within thirty days prior to trial, notify the attorney for the United
> States and the court in writing. Such notice shall include a brief description of
> the classified information.

Before Mr. Sedaghaty makes the significant decision whether to invoke CIPA, the policy

of full disclosure and the guarantees of the Sixth Amendment make it necessary for him to

discuss all relevant facts and legal issues with his lawyers.  It is also necessary for the members

of the team to discuss the relevant facts and legal issues among themselves, and, if the defendant

decides to file a CIPA notice, it is necessary for defense counsel to actually prepare the notice

and supporting documents.  Defendant's motion provides a secure manner for the defense to accomplish these tasks.

In the even more restrictive military law context, the United States Court of Appeals for the Armed Forces reversed a military trial judge's order prohibiting discussion between a defendant and his counsel.  In *United States v. Schmidt*, 60 M.J. 1 (2004), the court held that communication was necessary to make a preliminary evaluation of evidence, which was already in the possession of the defense, to determine what evidence it would disclose as part of the defense.  The preliminary evaluation by the defendant in *Schmidt* is very similar to the preliminary evaluation by the defense in the present case, which must decide whether to file a notice under section 5 of CIPA regarding potential evidence that may already be in its possession.  As in *Schmidt*, an overbroad prohibition on communication and consultation would violate the right to counsel:

> The lower court erred in failing to recognize that M.R.E. 505(h)(1) applies only when the defense seeks classified information from the Government or when the defense has determined that it reasonably expects to disclose classified information in the course of a proceeding.[4]  The rule does not come into play when the defense is making a preliminary evaluation of the evidence it already possesses to determine what evidence, if any, it may seek to disclose as part of the defense.
>
>             * * * *
>
> The rule does not require an accused, without benefit of his own counsel, to engage in adversarial litigation with opposing counsel as a precondition to discussing with defense counsel potentially relevant information which the accused already has personal knowledge of based on his prior authorized access as part of his military duties.

*Schmidt*, 60 M.J. at 2.

---

4       Section 5 of CIPA provides, in pertinent part: "If a defendant reasonable expects to disclose or to cause the disclosure of classified information in any manner in connection with any trial or pretrial proceeding involving the criminal prosecution of such defendant, the defendant shall * * *.  *Supra.*

Page 8  - DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO MODIFY COURT'S MAY 16, 2008, ORDER PROHIBITING COMMUNICATION WITHIN THE DEFENSE TEAM AND ENTERING A PRELIMINARY PROTECTIVE ORDER

In the instant case, the requested modification is a reasonable and necessary accommodation to the transcendent interest in counsel's effective representation of the criminally accused.

### CONCLUSION

For the above stated reasons, defendant's Motion for Modification of this Court's May 16, 2008, Order and Preliminary Protective Order should be granted.

Respectfully submitted this 16th day of June, 2008.

  /s/ Lawrence Matasar
LAWRENCE MATASAR, OSB No. 74209
Telephone: (503) 222-9830
Fax:  (503) 274-8575
Email:  larry@pdxlaw.com

  /s/ Steven T. Wax
Steven T. Wax, OSB No. 85012
Federal Public Defender
Telephone:  (503) 326-2123
Fax: (503) 326-5524
Email: steve_wax@fd.org

Attorneys for Defendant Pirouz Sedaghaty

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Defendant's Memorandum in Support of

Motion to Modify Court's May 16, 2008 Order Prohibiting Communication Within the Defense

Team and Entering a Preliminary Protective Order on Assistant United States Attorney, Chris

Cardani on June 16, 2008, via electronic case filing.


/s/ Lawrence Matasar
LAWRENCE MATASAR, P.C., OSB No. 74209
Telephone:  (503) 222-9830
Fax:  (503) 274-8575
Email:  larry@pdxlaw.com


  /s/ Steven T. Wax
Steven T. Wax, OSB No. 85012
Federal Public Defender
Telephone:  (503) 326-2123
Fax: (503) 326-5524
Email: steve_wax@fd.org

Attorneys for Pirouz Sedaghaty