IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,       )
       Plaintiff,              )
  vs.                             ) No. 05-CR-60008-HO-2
PIROUZ SEDAGHATY,               )
       Defendant.              )
_____ )   **ORIGINAL**

TRANSCRIPT OF PROCEEDINGS

Before the Honorable Michael Hogan

April 29th, 2008

APPEARANCES:

    MR. CHARLES F. GORDER

    MR. CHRISTOPHER L. CARDANI

    Assistant U.S. Attorneys

    Appearing on behalf of Plaintiff


    MR. STEVEN T. WAX

    MR. LAWRENCE H. MATASAR

    Attorneys at Law

    Appearing on behalf of Defendant

# I N D E X

Transcript of Proceedings

April 29th, 2008

|                          | PAGE |
|--------------------------|------|
| Caption                  | 1    |
| Colloquy                 | 3    |
| Reporter's Certificate   | 17   |

C & C COURT REPORTING              541/485-0111

```
 1                    PROCEEDINGS
 2                   April 29th, 2008
 3                    *  *  *  *  *
 4
 5          THE CLERK:  This is the time set for
 6   criminal No. *05-60008-2-HO, United States of
 7   America versus Pirouz Sedaghaty.  Oral argument on
 8   Defendant's first motion No. 53 for discovery and
 9   supplemental motion No. 90 for discovery.  And
10   government's motion No. 93 for a hearing.
11          THE COURT:  We have a substitute
12   reporter today so if you would all identify yourself
13   at least the first time you speak and bring her some
14   cards afterwards, that might be a good idea.
15          MR. CARDANI:  May I proceed, Your
16   Honor.
17          THE COURT:  Yes, please.
18          MR. CARDANI:  Good morning.  Chris
19   Cardani from the U.S. Attorneys' office here in
20   Eugene.  For the government to my left is Charles
21   Gorder, an Assistant United States Attorney from our
22   Portland office.  He's co-counsel in this case.
23          And one of the main reasons he's
24   involved, Judge, is he heads our national security
25   component for the U.S. Attorneys' office in the
```

1  District of Oregon.  He'll be speaking to the Court
2  directly about issues in a moment.
3              If I may, where I see this headed
4  today is we filed a briefing in anticipation of
5  today's hearing, which is not classified but just
6  talks about the Classified Information Procedures
7  Act.  The procedures that we all have to go through
8  to have the Court review information which may
9  become pertinent to the discovery process or not,
10 but the procedures involved.
11             So Mr. Gorder is going to be talking
12 about that, but I think that today's hearing is just
13 merely a -- for the CIPA aspect of it -- is just to
14 set deadlines.  I see this as a scheduling
15 conference.  And under section 2 of CIPA, we filed a
16 motion to have this hearing.  And under the law this
17 hearing is not classified.  It's just talking about
18 a way to get through discovery, the classified
19 aspects of the discovery process.
20             Mr. Gorder is also going to talk about
21 another provision under CIPA, and that's involving
22 defense-oriented classified information.  We need to
23 have a discussion about that.
24             And then on a separate track --
25 somewhat separate track -- we have just the normal

1  nonclassified discovery request. There's been two
2  defense motions filed for discovery. We have now
3  responded and I think that the ball is in Mr. Wax
4  and Mr. Matasar's court to tell the Court whether we
5  need to have any hearings on that, and if the court
6  needs to referee, and if so, come up with a
7  timetable for the nonclassified discovery issues.
8              THE COURT: All right. Have you
9  discussed among yourselves what you propose for a
10 schedule?
11             MR. GORDER: Yes, Your Honor. Charles
12 Gorder, again for the United States. Just to give
13 you the framework for this, the government does not
14 intend to use affirmatively any classified
15 information in the trial of this case and -- but
16 there's been a broad discovery request filed by the
17 defense that implicates potential classified
18 information.
19             So what we're asking for today really
20 is a deadline for the filing in camera with the
21 Court, through the court security officer, any
22 classified response that we would feel necessary to
23 produce in connection with that discovery motion.
24             And the date that we've suggested with
25 the defense and I believe they're amenable to would

1  be June 30th so about 60 days from today.
2  Mr. Cardani and I have discussed that date with our
3  colleagues in Washington, D.C., and we think that's
4  a reasonable deadline to get the material to you.
5           So we would be proposing that the
6  Court order the filings under the Classified
7  Information Procedures Act at this point to be filed
8  with the court security officer on or before June
9  30th.
10          Additionally, Your Honor, there was a
11 potential in this case that the defense may be in
12 possession of classified information.  I'm not sure
13 whether they are or not.  We would suggest that
14 under CIPA they're required to give us advanced
15 notice of an intent to use classified information,
16 and our suggestion with regard to that was to give
17 us that notice by June 2nd.
18          I'm not sure that they are agreeable
19 at this point with that particular date, but that
20 was our request with regard to the scheduling of
21 classified filings.
22          THE COURT:  All right.  Mr. Wax?
23          MR. WAX:  Good morning, Judge.  Thank
24 you.  The June 30th date that the government
25 proposes is one about which we have no objection.

1      THE COURT:  June 3 or 30?

2      MR. WAX:  30.

3      THE COURT:  All right.

4      MR. WAX:  We do however see an issue
5  about the form of their proposed filing and whether
6  or not it can be or should be ex parte and in
7  camera.  The government, as we understand it, takes
8  the position that under CIPA they can file that way.
9  Perhaps they take the position that under CIPA that
10 that is the only way in which a filing should be
11 ordered.

12     We do not see the law in the same way.
13 We believe that the Court has the discretion to
14 permit a filing directly to the Court that we would
15 not see, but that the Court also has the discretion
16 to direct that the government file whatever it's
17 going to file or at least portions of what it's
18 going to file with copies served on defense counsel.

19     So I think that it might make sense to
20 set a briefing schedule on that issue.  Perhaps that
21 would be something that we could file with the court
22 on June 30 when they're making their proposed
23 filing.  Perhaps it's something that we should file
24 with the court June 1st or --

25     THE COURT:  Isn't it more likely,

1   Mr. Wax, that even if that -- I don't know whether
2   that discretion exists, that the briefs could inform
3   me about that, but isn't it more likely that the
4   path we'll probably follow is at least initially
5   that information would be filed ex parte and in
6   camera with the court security office so that we
7   don't end up spinning our wheels if there's nothing?
8   I don't want to have to make findings on things that
9   don't exist.
10              MR. WAX:  That's certainly a
11  reasonable way to proceed.  We'd certainly however
12  want to be able to litigate access to whatever it is
13  that they file with the court on June 30.
14              THE COURT:  And you could go ahead and
15  get me briefs on it at that time, but I don't want
16  to stretch it out into two steps.
17              MR. WAX:  All right.  The second issue
18  that Mr. Gorder raises is in part related to the
19  first issue, but in part it is distinct.
20              We have advised Mr. Gorder and
21  Mr. Cardani that we don't believe that we can
22  meaningfully file a notice under CIPA until security
23  classification for Mr. Matasar and myself is
24  resolved.
25              THE COURT:  You don't have -- I would

```
 1   have thought you would have been through that drill
 2   on your work in Cuba.
 3               MR. WAX:  Well, I have a secret
 4   security clearance.  Mr. Matasar does not have a
 5   security clearance.
 6               In terms of what we need, I need to be
 7   upgraded and Mr. Matasar would need to go through
 8   the process.
 9               THE COURT:  Have you been interviewed?
10               MR. WAX:  No.  The issue here goes
11   back to the end of August when Mr. Matasar made the
12   initial request to the government for security
13   clearance and raised the subject with them about
14   whether or not one was needed and requesting that he
15   be given one.
16               As I understand it, it is the United
17   States attorneys here who have the authority, I
18   believe, to initiate the process, to authorize the
19   court security system to start the background checks
20   that are needed, and to date, the US attorneys have
21   taken the position that they will not initiate that
22   process.
23               We need the clearances in order to do
24   the review that is necessary of material that may
25   then become the subject of the notice under CIPA.
```

1   To a certain extent we're in a chicken-and-egg
2   situation.
3              We can't provide the notice in a
4   meaningful way unless we have the security
5   clearances that enable us to do the review that we
6   need to do.  So we see on that issue the ball is
7   back in the government's court, and we need to have
8   that process undertaken, and at least as we
9   understand it today, we need the US attorneys here
10  to give the green light for that to take place.
11             THE COURT:  Well, I'll consult with my
12  mind here in just a moment about that and see.
13             MR. WAX:  So we don't see how we can
14  comply with the June 2nd date.  We don't see how we
15  can comply and give notice until we have the
16  clearances.
17             THE COURT:  Do you wish to be heard on
18  that?
19             MR. GORDER:  Just briefly, Your Honor.
20  It's not the US attorneys actually who make those
21  kinds of decisions, but I'm not going to stand --
22  you know, I would have to consult with people in
23  Washington, D.C.
24             THE COURT:  I assume so.
25             MR. GORDER:  And I have.  And the

1    decision to date is given the fact that, you know,
2    we're not intending on using classified information
3    affirmatively in the case that would require access
4    by defense counsel that there is no need to provide
5    additional security clearances at this point.
6            And I think there ought to be some way
7    -- and perhaps we can discuss this later with the
8    court security officer -- for Mr. Wax to inform us
9    of what he thinks he has.  It seems to me, based on
10   the public record, and there may be a way, I think,
11   frankly, to shortcircuit that because there's got to
12   be some need for access to classified information.
13           It's not just security -- you know,
14   having the security clearance.  You also have to
15   have a need to know, and it may very well be that
16   this particular criminal prosecution is not related
17   in any shape or form to what he's demanding access
18   to, and in that case, there just is no reason to
19   provide security clearances out of the loop.
20           THE COURT:  What other issues are
21   there?  We need a date for nonclassified discovery
22   exchange.  And I'm told that there's a mutual
23   request now, of course.
24           MR. WAX:  The government has provided
25   us a fair amount of material.  We are in the process

1  of obtaining another and perhaps larger volume of
2  material from electronic media.
3           We have in the discovery room in this
4  courthouse a number of hard drives and disks and
5  other things of that nature. We've now worked out a
6  process for those to be copied. I am not sure
7  whether we've provided the hard drives.
8           MR. MATASAR: Yes.
9           MR. WAX: We have provided the hard
10 drives now. I know we just got them in the office
11 recently. So there's going to be some time before
12 that material is copied. Until we have reviewed
13 what the government is providing on the electronic
14 media, we don't think that it makes sense for us to
15 file a reply to the response that the government
16 filed on Friday.
17          So we would suggest to the Court that
18 perhaps also on June 30, it might make sense for us
19 to file a reply to their response which could also
20 be a document that identifies those issues on which
21 we would need a ruling from the court.
22          It may be that a fair amount of what
23 we're looking for is contained on the electronic
24 media that we're going to be getting.
25          THE COURT: That's fine with me. But

```
 1    for the nonsecured material.
 2                MR. WAX:  No.  This is all nonsecure.
 3                THE COURT:  Yes.  And for that
 4    material, I don't want to have a lot of pleadings
 5    filed.  I just want to know if there's some issues
 6    left, we get a letter from each of you and what's
 7    left and we'll get together and take a few minutes
 8    to take care of that.
 9                MR. WAX:  If we could have June 30 for
10    providing that to the court.
11                THE COURT:  Is that --
12                MR. CARDANI:  That's satisfactory with
13    us, Your Honor.
14                MR. WAX:  Thank you.
15                THE COURT:  Okay.  What other issues
16    should we talk about today?
17                MR. GORDER:  As far as we're
18    concerned, Your Honor, that's it.
19                THE COURT:  All right.  We're going to
20    take -- Anything further, Mr. Wax?
21                MR. WAX:  No.  Thank you.
22                THE COURT:  Okay.  We're going to take
23    a short break.
24                (A recess was taken.)
25                THE COURT:  Counsel, I just left the
```

1   dates back out here, but I think we're in agreement

2   on the dates for filings and production.

3              With regard to the request of Mr. Wax

4   and Mr. Matasar, I've consulted with the court

5   security officer.  I'm informed, Mr. Wax, that your

6   classification is easily upgradable, if I determine

7   that it's necessary for that to happen.

8              And with regard to Mr. Matasar,

9   Mr. Matasar, you may contact the court security

10  officers here, of course.  You may start the

11  paperwork for security clearance.

12             Now, I realize that the justice

13  department has something to say about that, but I am

14  going to have the paperwork started so that if I

15  decide that you need that clearance, that we're --

16  at least we don't have to have an extra delay.

17             I foresee, frankly, from what I'm

18  learning in this matter, that we will have some

19  delays along the way.  And we'll be as efficient as

20  we can, but some of this is outside of our hands,

21  too.  All right.  Anything further then?

22             MR. GORDER:  Not for the government,

23  Your Honor.  Thank you.

24             MR. WAX:  If we could have one moment,

25  please, Judge.

```
 1                    THE COURT:  Yeah.
 2              (A discussion was had
 3               off the record.)
 4              MR. WAX:  Judge, with respect to the
 5   security clearance issue, I think there are two
 6   distinct sets of issues that you might need to look
 7   at in determining whether security clearances are
 8   necessary.
 9              One, I believe, would relate to what
10   the government intends to provide to the Court on
11   June 30.  Separate and apart from that would be
12   issues that relate to material that is in the
13   possession of the defense.
14              With respect to that latter set of
15   material, I'm wondering whether I should be making
16   an ex parte in camera presentation to you of what it
17   is we believe we're dealing with and why we believe
18   that the security clearances should be issued on
19   that aspect irrespective of anything related to what
20   the government provides.
21              THE COURT:  If I think it's necessary.
22   Mr. Wax, I'm still learning about the relationship
23   of these statutes.
24              And I have the clearance that I need
25   in this case, I'm informed, and I'll confirm that,
```

```
 1   but I don't expect to rule on anything that I
 2   haven't seen.  And so we'll -- that's really all I
 3   can say about that.  All right?
 4                Anything more then?  All right.  Thank
 5   you.
 6                (The proceedings were concluded.)
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Reporter's Certificate

```
 1  State of Oregon    )
                       )
 2  County of Lane     )

 3

 4       I, Deborah M. Bonds, CSR, a Certified
 5  Shorthand Reporter for the State of Oregon,
 6  certify that the witness was duly sworn and the
 7  transcript is a true record of the testimony
 8  given by the witness; that at said time and
 9  place I reported in stenotype all testimony and
10  other oral proceedings had in the foregoing
11  matter; that the foregoing transcript consisting
12  of  16  pages contains a full, true, and correct
13  transcript of said proceedings so reported by me
14  to the best of my ability on said date.
15       If any of the parties or the witness
16  requested review of the transcript at the time
17  of the proceedings, such correction pages are
18  attached.
19       IN WITNESS WHEREOF, I have set my hand and
20  CSR seal this 1st day of July    2008, in the
21  City of Eugene, County of Lane, State of Oregon.
22
23  _____
24  Deborah M. Bonds, CSR-RPR
25  CSR No. 01-0374
```