1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF OREGON

3    UNITED STATES OF AMERICA,          )
                                        )
4                   Plaintiff,          ) No. 05-60008-2-HO
                                        )
5      v.                               ) March 18, 2008
                                        )
6    PIROUZ SEDAGHATY, et al.,          ) Eugene, Oregon
                                        )
7                   Defendants.         )

8

9              TRANSCRIPT OF PROCEEDINGS

10      BEFORE THE HONORABLE THOMAS M. COFFIN

11   UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

12

13                      -:-

14

15

16

17

18

19

20

21

22

23              Deborah Wilhelm, CSR, RPR
                     Court Reporter
24                   P.O. Box 1504
                 Eugene, OR  97440
25                  (541) 431-4113



March 18, 2008

2

```
 1                    APPEARANCES OF COUNSEL

 2

 3   FOR THE PLAINTIFF:    CHRISTOPHER L. CARDANI
                           United States Attorney's Office
 4                         405 E. 8th Avenue, Suite 2400
                           Eugene, OR  97401
 5                         (541) 465-6771
                           chris.cardani@usdoj.gov
 6
                           CHARLES F. GORDER, JR.
 7                         United States Attorney's Office
                           1000 S.W. Third Avenue, Suite 600
 8                         Portland, OR  97204-2902
                           (503) 727-1021
 9

10   FOR THE DEFENDANT:    LAWRENCE H. MATASAR
                           Lawrence Matasar, P.C.
11                         621 S.W. Morrison Street
                           Suite 1025
12                         Portland, OR  97205
                           (503) 222-9830
13                         larry@pdxlaw.com

14                         STEVEN T. WAX
                           Federal Public Defender
15                         101 S.W. Main Street, Suite 1700
                           Portland, OR  97204
16                         (503) 326-2123
                           steve_wax@fd.org
17

18

19

20

21

22

23

24

25
```

1               (Tuesday, March 18, 2008; 1:40 p.m.)

2                    P R O C E E D I N G S

3          THE CLERK:  Now is the time set for the matter

4    of the *United States of America versus Pirouz Sedaghaty*,

5    Case Number 05-60008, time set for status hearing and

6    oral argument on motion number 53 for discovery; motion

7    number 90, supplemental motion for discovery; and motion

8    number 91 to extend the motions deadline.

9          Sir, could I have you pronounce your name for

10   me?  I'm understanding I'm pronouncing it incorrectly.

11         THE DEFENDANT:  Se-doggehy (phonetic).

12         THE CLERK:  Thank you.

13         THE COURT:  I assume the government wants an

14   opportunity to respond to the motion for discovery, and

15   an opportunity to provide discovery voluntarily, and

16   then respond in writing to the remainder.

17         MR. CARDANI:  Essentially, yes, Your Honor.  If

18   I could elaborate a little bit.

19         THE COURT:  Sure.

20         MR. CARDANI:  And with me is Charles Gorder

21   from our Portland office.

22         After the first motion was filed, Judge, we

23   provided a lot of discovery, 1200 pages of discovery.

24   And then there is a room downstairs in the U.S.

25   Attorney's Office that has about 40 boxes of material,

1  search warrant records, grand jury material, bank
2  records and things of the like.

3          The defense has access to that.  They've spent
4  a lot of time reviewing that.  They are continuing to do
5  that as recently as today.  And we'll continue to make
6  that available.

7          The new motion for discovery, we just reviewed
8  it yesterday afternoon, and it's 18 pages long and has a
9  lot of specific requests, is a little bit more
10  problematic.  It asks for a lot more material.  And we
11  do need time to file a response to that.  And there are
12  matters that will be very easy to resolve.  Cleaner
13  copies of something, either we have it or we don't.  We
14  will meet with them and get through as much of this that
15  we can agree on promptly.  And I don't see any problem
16  with that.

17          There are things that we will disagree on.
18  We'll file a response at some point, because we think
19  it's a little bit outside of Rule 16 and other discovery
20  rules.

21          The more problematic part of this new motion is
22  that it requests very specific things from agencies that
23  we're not directly involved with, agencies back in
24  Washington, D.C., and it asks for very specific
25  evidence, which, if it exists, is in a classified

March 18, 2008

 1    nature, either we don't have access to it or it can't

 2    just be bellowed out in court.

 3            We've had consultations, based on the new

 4    motion, this morning with people from the National

 5    Security Division back at main Justice.  And they have

 6    assigned a lawyer to this.  We've had talks, continuous

 7    discussions with NSD, but we sent them this motion, and

 8    asked for some advice on how to respond.

 9            And what they have suggested is that this

10    motion, Mr. Wax and Mr. Matasar's motion, vis-a-vis the

11    classified evidence request, must involve a

12    consideration of the Classified Information Procedures

13    Act, also known as CIPA, C-I-P-A.  I have a copy for the

14    court if the court wants to see it.  It's in the code

15    book.  It's not something I've been involved in.  I

16    think Mr. Wax has.

17            But what it involves, Judge, is that it is

18    involved in situations where there is classified

19    evidence that may or may not be involved and how the

20    court is to consider it.  So it's a way to review

21    classified information through the discovery process in

22    a criminal case, and then the court makes calls on

23    whether it should or should not be discovered, and the

24    admissibility and all that.

25            For the court to do that, though, the court

March 18, 2008

1    staff needs to be cleared with security clearances.  And
2    Judge Hogan's staff is in the process of being clear,
3    the court reporter, the court clerk, judicial clerks.  A
4    safe has been delivered, I'm told, to Judge Hogan's
5    chambers.  So that's -- that process is underway to get
6    the staff cleared.
7            I would envision that the comprehensive
8    response to the new motion is going to involve CIPA
9    filings, filings to the court that Judge Hogan is going
10   to have to consider.  And, actually, a great part of the
11   new motion will involve that.  I don't know how much
12   because we -- this is an ongoing process.  We've already
13   traveled back to Washington, D.C. once to meet with some
14   people like that.  It's an ongoing process.  And it's,
15   frankly, quite new to me.  But they will become involved
16   in this with Judge Hogan eventually.
17           And I might add, the defense has come across
18   some material that they gave to our office, and
19   ultimately to Judge -- Judge Hogan was involved in
20   proceedings on this.  The defense claims that they have
21   top secret information that they have.  I don't know
22   what it is.  They haven't shown it to us, but they gave
23   it to --
24           THE COURT:  Top secret from government
25   information?

1           MR. CARDANI:  I don't know.

2           THE COURT:  How did they get it?

3           MR. CARDANI:  I don't know.  That's a question

4    for the defense.  I don't know.  But I do know that I

5    can let Mr. Gorder speak to the events, but information

6    was given to us in a bag that we do not have access to,

7    and it was told to us that it was top secret material,

8    and that we were not to look at it because it may

9    involve attorney-client information.

10          That was eventually given to -- there was a

11   meeting with Judge Hogan and Mr. Wax and Mr. Matasar,

12   Mr. Sedaghaty, I believe.  I wasn't invited into that

13   meeting.  But there was a meeting of some sort.  And

14   that top secret information has been ordered by Judge

15   Hogan to be sent to Washington, D.C.

16          My point is, you -- Mr. Wax can elucidate you

17   on that if the court has any questions.  But my point,

18   Judge, is that Judge Hogan is involved in some of the

19   classified discovery phases of this already.  This will

20   not be an ordinary case by any stretch of the

21   imagination.  And so we are going to need time to

22   respond to Judge Hogan with CIPA filings.

23          THE COURT:  All right.  Anything from the

24   defense side that you wish to share with me?

25          MR. WAX:  Our thought, Judge, is that the best

1  way to proceed would be for the government to go through
2  each of the 70 some odd items that are specified in the
3  two pleadings.  And we're confident that we will be able
4  to come to agreement on a fair number of them.

5       We expect that there will be a few on which the
6  court will need to get involved.  Our sense is that
7  there will be some items that have nothing to do with
8  classified information on which a court ruling will be
9  necessary.

10      In terms of, you know, how the court proceeds,
11  that is between you and Judge Hogan, I mean, we really
12  have nothing to offer on that.  We see that this is a
13  situation in which the court could decide that it would
14  make more sense for Judge Hogan to handle it all, if
15  he's dealing with classified material; or that you could
16  deal with the nonclassified portions and Judge Hogan
17  deal with the classified portions, whatever seems most
18  appropriate to the court.

19      THE COURT:  Well, I think it should be one
20  judge, and -- because that judge then will understand
21  better the relationship between the items that are being
22  sought for discovery, some of which may not be
23  classified, others of which may be classified or are
24  classified.  And so it should be one judge with
25  knowledge of all the information making that

March 18, 2008

9

1    determination.  And since Judge Hogan and his staff are

2    undergoing the process of getting clearance to be able

3    to review this material, then, obviously, it should be

4    Judge Hogan that's going to handle these discovery

5    requests.

6            In the meantime, I can handle other facets of

7    the case such as scheduling, et cetera.  So, obviously,

8    you want additional time before you file any motion.

9            Do you have any estimate as to how much time

10   will be needed to resolve the discovery matters, because

11   they are not going to want to have to file their motions

12   until after they have complete discovery, I would

13   imagine.

14           MR. CARDANI:  Judge, if you could bear with me,

15   this, again, is new to me.  What I'm told is that the

16   procedure is that we have to file a formal motion.  We

17   would have done it, but this new motion --

18           THE COURT:  A formal motion?

19           MR. CARDANI:  Under this CIPA -- under Section

20   2 of CIPA.

21           THE COURT:  Okay.

22           MR. CARDANI:  We are going to file a motion

23   with the court, whether it's you or Judge Hogan, and ask

24   for a scheduling conference.  And so at that point, I

25   presume it would be Judge Hogan, we will at that point

1    be coming up to that status conference, that scheduling
2    hearing, we'll talk to the lawyers back at the agencies,
3    NSD, who will be assisting us in filing these responses,
4    and asking them exactly -- a timetable, how much time
5    that we can plan on asking for to file a response.

6         So I think that -- I would suggest that we be
7    able to file that CIPA motion and ask for a scheduling
8    conference with Judge Hogan.  I understand he's not here
9    today.  But we could do that very soon, and then set a
10   scheduling conference -- a scheduling deadline on our
11   response to the discovery motions.  That's having to do
12   with the classified information.

13        On the other things, as I said, we're perfectly
14   happy to continue to meet with the lawyers and their
15   investigators and iron out anything that we can, but
16   there will be things that we're not going to be able to
17   agree on.  They've requested access to letters that an
18   investigator sent to someone and things like that that
19   we believe are, you know, clearly under Rule 16 not
20   discovery, because they involve internal memoranda of
21   the agencies.  There will be things like that that we'll
22   need some refereeing on.  And we -- we can do that.  I
23   agree, though, that it may be wiser to have one judge
24   rule on this, because there may be a lot of spillover on
25   some of these things.

March 18, 2008

11

```
 1              THE COURT:  I would imagine so.  Well, I think
 2    the relief I can grant today is to strike the March 18th
 3    deadline for filing pretrial motions.
 4              MR. MATASAR:  Thank you, Your Honor.
 5              THE COURT:  So I'll grant that motion.  And so
 6    you are suggesting we let Judge Hogan set a new date for
 7    filing pretrial motions?
 8              MR. CARDANI:  Yes, Your Honor.
 9              MR. MATASAR:  Your Honor, we agree with that,
10    but the one thing I would ask is it seems to me that the
11    government should be able to respond to our motion
12    paragraph by paragraph if you include in that some one
13    sentence thing that will say, this will be dealt with by
14    the CIPA process, that will be good enough.  We don't
15    expect them to give us a long, detailed response to
16    those.  But if they could respond to the whole motion,
17    that will give us a real roadmap or a way to deal with
18    the status conference we're going to have with Judge
19    Hogan.  Otherwise, we'll just be there without a point-
20    by-point aspect of what the disagreement is or agreement
21    is.  So, again, we would request that they simply
22    respond to the motion with the understanding that they
23    may not be able to go very deeply into the classified
24    requests.
25              THE COURT:  And to do that at some point prior
```

March 18, 2008

 1    to the pretrial conference?

 2              MR. MATASAR:  Yes, maybe you can say within

 3    30 days they should do that, that sort of thing.

 4              MR. CARDANI:  Judge, there are parts of that

 5    that we could easily do that to, provide better copies

 6    of these things, and things like that, that are

 7    clearly -- won't involve any consideration of classified

 8    material.

 9              But there are a number of these things which

10    may involve some -- one paragraph may involve some

11    things that are very easy, but also may involve stuff

12    that we don't even know about that I don't want to be

13    bound in writing to say, here you go, here is our

14    response without being able to confer with the lawyers

15    at NSD to find out if there is any other responsive

16    information.

17              MR. MATASAR:  That would be fine, Your Honor.

18    They can simply say that.  It will still give us a way

19    to move forward.

20              THE COURT:  Okay.  Will that work for you?

21              MR. CARDANI:  I think so.

22              THE COURT:  Okay.  Do that within 30 days.

23              MR. CARDANI:  Excuse me, may I?

24              THE COURT:  Sure.

25              (Discussion held off the record between

1    Mr. Gorder and Mr. Cardani.)

2              MR. CARDANI:  Yes, if we could have 30 days to

3    file a response, that would suffice.  And if we could

4    also ask the indulgence of the court to set a hearing

5    with Judge Hogan.  Do we have access to his calendar

6    for -- we'll file that motion by the end of this week

7    under CIPA.

8              THE COURT:  Okay.

9              MR. CARDANI:  We would ask for --

10             THE COURT:  Pretrial conference hearing?  I

11   think under Section 2 that's what it calls for.

12             MR. CARDANI:  Yes, Your Honor.

13             THE COURT:  How much time do you estimate this

14   hearing will take?  Do you --

15             MR. CARDANI:  From the government's standpoint,

16   I don't think it would take very long, because I think

17   it will just be a matter of telling Judge Hogan what

18   we've been told from NSD in terms of how much time they

19   think they need to file or assist us in filing a formal

20   response.  So I think it would be fairly routine.

21             MR. WAX:  I agree with that, Judge.  And I

22   think this initial conference will be somewhat similar

23   to this proceeding with the government saying, we need

24   some time to figure out what we're going to say.

25             THE COURT:  Okay.  So about an hour, Christy.

March 18, 2008

14

```
 1              THE CLERK:  Hearing before Judge Hogan April
 2   22nd, 2008, 10:00 a.m.
 3              MR. CARDANI:  Judge, could we talk about
 4   alternative dates that may be around?  Mr. Gorder has a
 5   conflict in Portland.
 6              THE CLERK:  Counsel, the next date I have
 7   following that -- you are wanting this after your 30-day
 8   response period, correct?
 9              MR. WAX:  Yes, we think that makes sense.
10              THE CLERK:  April 29th.
11              THE REPORTER:  Is it going to involve CIPA
12   matters?
13              MR. MATASAR:  Probably just vaguely.
14              THE REPORTER:  I'm gone and I'm the only
15   reporter getting clearance.
16              THE CLERK:  After that is May 6th.  Are you
17   back then?
18              THE REPORTER:  No.
19              THE COURT:  Well, why don't we do it April 22nd
20   and allow Mr. Gorder to participate by phone.  Will that
21   work for you --
22              MR. GORDER:  Your Honor, my problem -- and I
23   know in the large scale of things may not be that big a
24   problem, I'm scheduled to meet with a group of Jordanian
25   judges who are visiting the United States on a State
```

March 18, 2008

1    Department tour that morning from 9:00 to noon.

2              THE COURT:  What if we did it in the afternoon?

3              MR. GORDON:  The afternoon will work fine.

4              THE CLERK:  Judge Hogan would prefer that Judge

5    Hogan's staff set something if they set it in the

6    afternoon.

7              THE COURT:  What?

8              THE CLERK:  If we're going to do an afternoon

9    setting, I'd prefer that we just refer the setting to

10   Judge Hogan's staff.  He doesn't set anything after

11   noon.

12             THE COURT:  How about the 23rd?

13             MR. WAX:  I cannot be here on the 23rd.  I'm

14   sorry.

15             THE COURT:  Okay.

16             (Discussion held off the record.)

17             MR. CARDANI:  I don't think there will be any

18   CIPA matters.

19             THE COURT:  Okay.  Then the 29th.

20             THE CLERK:  Let me just give you a time.  10:45

21   on April 29th.

22             MR. CARDANI:  Judge, a couple of other matters.

23   As I recall, this matter has been previously deemed

24   complex for Speedy Trial Act purposes, so we don't need

25   to worry about excluding time.

March 18, 2008

```
 1              THE COURT:  Yes.  That's right.  What's the
 2    trial date?
 3              THE CLERK:  October 8th.
 4              THE COURT:  So I excluded all time up to and
 5    including October 8th as a complex case.  So when you
 6    have your pretrial conference with Judge Hogan, if you
 7    feel that trial date needs to be adjusted, you can do
 8    that at that time.
 9              MR. CARDANI:  One other matter, it's just come
10    to our attention recently that Mr. Seda has personally
11    had some interaction with a potential witness for the
12    government, and we would like to, at some point, move to
13    amend pretrial release conditions, although that, too,
14    seems to be before Judge Hogan.  I don't know whether we
15    discuss that with you or Judge Hogan, but we would like
16    to file a motion to amend the conditions to prevent him
17    from have any access to an identified list that we'll
18    provide to the court as part of the release.
19              THE COURT:  No, I can hear that part of it.
20    Have you notified Mr. Matasar and Mr. Wax of the list?
21              MR. CARDANI:  No.  We just found out about it
22    within the last couple of hours.  What we can do is put
23    together a list, run it by counsel, and see if it's
24    appropriate for them, and, if so, just present it as an
25    unopposed motion.
```

March 18, 2008

17

```
1              THE COURT:  All right.  And if it's opposed, I

2    can have a hearing on it.

3              MR. CARDANI:  Very good.

4              THE COURT:  Okay.  Does that conclude

5    everything?

6              MR. CARDANI:  Yes, Your Honor.

7              (The proceedings were concluded at 1:58 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

CERTIFICATE

I, Deborah Wilhelm, Certified Shorthand Reporter for the State of Oregon, do hereby certify that I was present at and reported in machine shorthand the oral proceedings had in the above-entitled matter. I hereby certify that the foregoing is a true and correct transcript, to the best of my skill and ability, dated this 18th day of July, 2008.

Deborah Wilhelm, RPR
Certified Shorthand Reporter
Certificate No. 00-0363