```
                IN THE UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF OREGON
                         FILED '09 JAN 28 16:25 USDC-ORE
UNITED STATES OF AMERICA,       )
                                )
              Plaintiff,        ) No. 05-60008-2-HO
                                )
  v.                            ) January 6, 2009
                                )
PIROUZ SEDAGHATY, et al.,       ) Eugene, Oregon
                                )
              Defendants.       )


                    TRANSCRIPT OF PROCEEDINGS

             BEFORE THE HONORABLE MICHAEL R. HOGAN

                UNITED STATES DISTRICT COURT JUDGE



                              -:-



                       APPEARANCES OF COUNSEL

FOR THE PLAINTIFF:     CHRISTOPHER L. CARDANI
                       United States Attorney's Office
                       405 E. 8th Avenue, Suite 2400
                       Eugene, OR  97401
                       (541) 465-6771
                       chris.cardani@usdoj.gov


FOR THE DEFENDANT:     STEVEN T. WAX
                       Federal Public Defender
                       101 S.W. Main Street, Suite 1700
                       Portland, OR  97204
                       (503) 326-2123
                       steve_wax@fd.org


COURT REPORTER:        Deborah Wilhelm, CSR, RPR
                       P.O. Box 1504
                       Eugene, OR  97440
                       (541) 431-4113
```



```
 1                (Tuesday, January 6, 2009; 4:19 p.m.)
 2          (The following proceedings were had in chambers.)
 3                    (The defendant is not present.)
 4                         P R O C E E D I N G S
 5          THE COURT:  First, does your client waive his
 6   presence today?
 7          MR. WAX:  My client knows that I am here.  We
 8   discussed it with him.  And he is satisfied with my
 9   presence in his absence.
10          THE COURT:  All right.  Fine.  What I want to
11   talk about is scheduling.  I want you to tell me a
12   couple of things.  Number one, where we are on the
13   discovery.  Number two, I know I've got to go to D.C. to
14   read some paperwork.  And I'm trying to schedule that at
15   a time that fits with other -- another trip I need to
16   make.  Our courthouse has won four national awards for
17   government buildings and I want to go back to the
18   presentation.  And that is the week of -- the middle
19   week of March.  And I want to know whether that's too
20   late for our purposes for me to go to Washington or
21   whether I need to make two trips.
22          I'm -- I may have to make trips for other
23   reasons because of another big settlement effort I'm
24   getting ready to undertake, but I don't know about that
25   yet.
```

1       So does that foul anyone up, me waiting that
2  long?
3       And then what else do we have coming down the
4  pike?
5       I've told my staff on our trial setting so far
6  that they're illusory thus far and don't get uptight
7  about it.
8       If we have a chance now to start looking at a
9  realistic trial date, I'd like to at least start that
10 discussion.
11      So I'd rather do it with you here in person.
12 Since you were coming down, I asked you to hustle in.  I
13 appreciate it.
14      Plus, you know, the local guys here, I'm sure
15 they'll appreciate me taking your attention away from
16 their operation for a second or two.
17      MR. WAX:  Probably so.
18      THE COURT:  Okay.  So if there are other things
19 we ought to talk about, fine.  But, really, what I'm
20 interested in is scheduling and process.  I've got --
21 I've taken -- I'm probably going to be involved in this
22 Sunwest problem.  And it's a two-and-a-half billion
23 dollar problem.  And so I know that I'm going to start
24 having things come fast and furious on that.  I probably
25 have to go to Washington because we have to work with

```
 1   the SEC on it and all this sort of thing.  But,
 2   nevertheless, I'd like to do our best to try to seize on
 3   a date.
 4          If we can't do it now, then a time when we can
 5   get together and choose a trial date, that works, okay?
 6   So that's really what -- I'm all ears.
 7          MR. CARDANI:  Steve and I spoke on the phone
 8   earlier today.  And let me just go first, and correct me
 9   if I'm wrong, but, Judge, we think that we need some
10   balls and strikes called on the CIPA filings to give you
11   realistic feedback on what's a realistic trial date.
12   And that's because if certain things -- if you do
13   certain things on the CIPA filings that allow him
14   access, then we have interlocutory appellate rights to
15   consider under CIPA.  Vice versa there may be something
16   for him to at least consider.
17          And also what comes out of that whole ruling
18   will affect other discovery, so -- even on the non-
19   classified side perhaps.  So a fair statement, I think,
20   that we both feel that to get a real realistic trial
21   setting requires some what I call heavy lifting, some
22   reading from you of the materials waiting for you in
23   D.C.
24          THE COURT:  Okay.  I'm waiting for a brief from
25   Steve.  And what then has to happen to tee that up?
```

```
 1              MR. CARDANI:  He's about to do that.
 2              THE COURT:  Not just the brief, but what needs
 3   to happen to tee up the decisions you need to have a
 4   realistic idea of a trial setting?
 5              MR. CARDANI:  The -- there is some material --
 6   a lot of material waiting for your decision.
 7              THE COURT:  I understand that.
 8              MR. CARDANI:  Three or four filings.  His
 9   supplement.  That will give you some direction on what
10   we're looking for for rulings.  So rulings on those
11   filings.  And then you'll have a much better
12   understanding as to where we're coming from.  And I
13   think maybe a status conference sometime after that
14   would be appropriate.
15              Maybe -- and this can be done any way you want.
16   We can -- I think it's been brought to your attention
17   that we can have us or other government representatives
18   meet you in D.C., if you have questions on the materials
19   that we filed.
20              With his, I suppose you could do the same.  But
21   after you're all done with the reading, we're looking
22   for some direction from you as to how you want to handle
23   it.
24              THE COURT:  All right.  Well, let me tell you
25   that in talking to my staff this morning, in fact, I'd
```

1  rather have my court reporter there, too.  She's
2  cleared.  And if I need to get something, I can.  I
3  understand if we make a transcript, it's got to be left
4  back there.  So she'd have to make a transcript at that
5  time.  It works in Deb's schedule all right.  And I am
6  going -- if we're going to have some discussion to the
7  extent I bring lawyers in, and I had some questions
8  about that, and I've asked folks to talk to Erin today
9  to check on, you know, what usually happens there, then
10 I'm going to want to try to do it that week.  I'm
11 probably going to spend the whole week in Washington.
12 And, you know, I can move it forward, but I've got lots
13 of other commitments, too.
14          MR. CARDANI:  Okay.
15          THE COURT:  I'm taking a trial in Montana that
16 all the judges had to disqualify themselves.  I've got
17 stuff, anyway, Court of Appeals has asked me to help,
18 and their scheduling person is good to me, so I'm going
19 to help them in Pasadena.  So there is -- you tell me
20 how much -- I don't want to prejudice anyone by my
21 schedule.  What is your impression if I go back -- what
22 is that Monday?
23          THE CLERK:  March 16th is Monday.
24          THE COURT:  What if I go back on the 15th and
25 allow the first three days to do work on this case back

1  there, does that prejudice either of your clients?
2          MR. CARDANI: No. It's -- from the
3  government's perspective, we'd prefer that you do it
4  sooner than later, but you've got a lot of things on
5  your plate, and we understand that. So we hustled to
6  get those things filed back in September in the hopes
7  that, frankly, that would have been read sometime in the
8  fall. The case is on hold until that's done. So
9  whenever you can get to it, the sooner the better, we
10 can meet you anytime, anywhere, if that's something you
11 want to do.
12         THE COURT: Okay. Your position on this is
13 probably even more important, Steve, so tell me what you
14 have.
15         MR. WAX: The reality of the prejudice, Judge,
16 lies, at this point, primarily in the release issues
17 that we brought to your attention, and we got the ruling
18 on the other day. The computer access and Internet
19 computer access is becoming a hindrance for us in terms
20 of case preparation. It's also a real world hindrance
21 for Mr. Seda in terms of his efforts to run his business
22 and get the business going.
23         I think that the GPS is more a nuisance and an
24 embarrassment, perhaps, than any sort of real world
25 impediment, although it becomes an impediment if he

```
 1  wants to and has permission to fly somewhere.
 2          So, you know, the longer the case drags out,
 3  the more difficult it becomes to deal with some of the
 4  restrictions on the computer access.  And while we've
 5  talked with the pretrial people about their monitoring
 6  software and trying to set up a mechanism, which they
 7  say they have, so that he could be monitored, but not
 8  his wife, we really don't see the need for it, and would
 9  hope that you would reconsider that.
10          Any other prejudice, it -- you know, there is
11  the prejudice that it tends having something hang over
12  him for a long time.
13          When Chris and I were talking this afternoon,
14  we were thinking that if you are going in March, and
15  depending on the result of the visit and whether or not
16  either side would be thinking of an interlocutory
17  appeal, trial date may be at the end of October, I think
18  becomes realistic, but --
19          MR. CARDANI:  2009?
20          MR. WAX:  2009, yes.  Yes, this year.  At least
21  in terms of the ballpark to be thinking about.
22          The one other issue that we look at as a
23  potential interlocutory issue is the question of our
24  communication with our client that is currently not
25  permitted.  And hopefully that will be cleared up by a
```

```
 1   trip to Washington.  Depending on which way you come
 2   down on that, that's also another potential
 3   interlocutory issue.
 4           In terms of regular nonclassified discovery,
 5   when we were in court whenever it was, a month or so
 6   ago, I think we identified a couple of issues on which
 7   we just can't get together, and on which we need a
 8   ruling.
 9           One has to do with whatever computer forensic
10   work the government has done on the hard drives and the
11   other media that they seized, which we still want,
12   believe we should get, and would help speed up the
13   nonclassified preparation of the case, and potentially
14   save the government a fair amount of money.
15           So I'm trying to remember what other issues we
16   identified at that time.
17           THE COURT:  Those things we talked about at the
18   hearing?
19           MR. WAX:  Yeah.  But I think that rulings on
20   those could help us in moving forward on the
21   nonclassified aspects of the case.
22           THE COURT:  All right. One other question I
23   have for you is if I just -- if I upset my schedule and
24   find a way to do it, and decide to go earlier because of
25   some of these considerations and others, what are your
```

```
 1   schedules like?  What --
 2           MR. CARDANI:  Flexible, very flexible.
 3           THE COURT:  What availability questions do you
 4   have?
 5           MR. CARDANI:  For me and for Charles Gorder,
 6   we're at your beck and call.  So whatever you think you
 7   may need from us, but some of the other materials may --
 8   if you have questions about them --
 9           THE COURT:  Are you going to take a full
10   caseload in your new responsibilities?
11           MR. CARDANI:  No.  I'm shedding my cases.  But
12   this one here is staying right here.
13           THE COURT:  Okay.
14           MR. CARDANI:  But, Judge, some of the other
15   filings were done by other lawyers, and they are back
16   East, and so I have to check with them, but I assume
17   they are even more available because they are there.
18           One -- another thing in terms of scheduling, we
19   expect that the defense is going to consider filing
20   motions to suppress on the nonclassified side.  We did a
21   search warrant internationally; maybe a motion to
22   dismiss the indictment; just a garden variety.  I think
23   it would help, to the extent that you think you could do
24   those based on the discovery to date and they don't
25   involve classified stuff, maybe we could get a schedule
```

```
 1    going on that in the hopes of preserving a trial date.
 2         MR. WAX:  Chris, when Larry and I were talking
 3    this afternoon, our sense was that the motions that
 4    we're likely to file are going to be primarily trial
 5    type motions.  I mean, you may have a motion in limine,
 6    and we've talked about some disagreements about
 7    evidence.  Motions to dismiss that we've talked about
 8    relates to some of the classified issues.  A motion to
 9    suppress what, you know, took place in the non-
10    classified search warrant is, I think, pretty, you know,
11    straightforward, and I wouldn't see that slowing things
12    down.
13         So our thought on that would be that it would
14    make more sense until the review of the classified
15    material in Washington is concluded, and we could then
16    hopefully set a motion schedule that would cover
17    anything that relates to classified and unclassified
18    material, and then a second phase that would be trial
19    type of evidentiary motions.
20         I do think, Judge, that it would be good in
21    this case to try to get rulings on any evidentiary
22    pieces relatively far in advance of the trial, so that
23    if we end up with, let's say, an October 20th trial
24    setting, if we could have rulings on evidentiary trial
25    type motions, you know, at the end of August or
```

1  something so that we'd each have two months, give or
2  take, for the final trial prep where we know what the
3  landscape is and that --
4          MR. CARDANI:  Some potentially significant
5  motions in limine.  We're going to be fighting over
6  terrorism-related evidence, and you're going to want to
7  hear about that in advance of trial yourself.
8          THE COURT:  No.  When I go to Washington, do
9  you plan to have Oregon lawyers there from your office
10 and your office?
11         MR. WAX:  We would not unless you want us to.
12 My -- I'm -- I mean, I don't know what your plans are.
13 We've asked to participate in the process.  And at this
14 time, our participation is in the ex parte filing, which
15 you should have hopefully by January 15th, maybe even
16 January 20th, but we'll have that to you for sure this
17 month.
18         If you need us to be present and you think that
19 we should be, then either Larry or I will make sure that
20 we're available to be there the week that you are there.
21         THE COURT:  Why don't we do it this way:  I'm a
22 little chagrined that I can't get this done in February,
23 but it's just very difficult.  I'd like you to be
24 available -- and the Monday is the 16th?
25         THE CLERK:  16th.

```
 1              THE COURT:  That if you got a call from me at
 2   the end of the day on the 16th, that someone could get
 3   on an airplane on the 17th, and come back, and we could
 4   take care of whatever we need to on the 18th.
 5              MR. CARDANI:  Okay.
 6              THE COURT:  Or the 19th.  The 19th, I'm going
 7   to be busy part of the time because I'm going to enjoy
 8   the party for our courthouse, but not necessarily all
 9   day, so.
10              MR. CARDANI:  My understanding of what they're
11   about to file is, in essence, this is how we may defend
12   the case, these are the issues that are important to us,
13   and be on the lookout for them as you review the
14   materials so that you can have a meaningful ruling.
15   Fair enough?
16              MR. WAX:  Yes.
17              THE COURT:  I'd like to have that, because
18   there are some potential documents that my staff have
19   been cleared to look at and some that they can't.
20              MR. CARDANI:  Yes.
21              THE COURT:  So I think I need to be prepared
22   before I go.
23              MR. CARDANI:  So I think with that, it'll be
24   teed up.  And offering to be there and answer questions
25   is going to depend a lot on whether you have questions
```

```
 1   coming out of that.  It can be done then.  Or it can
 2   wait until you come back -- and I have to talk to the
 3   court security officer, but I think we can do that here
 4   in the district.
 5              THE COURT:  Yeah, we possibly could, but the
 6   concern I have is that it's my understanding for some
 7   potential materials -- and I don't know, I have some
 8   descriptions, but for some potential materials that it's
 9   very limited -- information I can bring home with me is
10   very limited.  And so I will want to -- if I have a
11   question -- get it answered while it's fresh.
12              MR. CARDANI:  On that, on the really good stuff
13   that I haven't read and I haven't been cleared to see,
14   don't know if I ever will be, that's somebody back
15   East's responsibility -- it's a lawyer back East that
16   will be on a filing, and they are the ones that we can
17   also make -- maybe make available for a call, and they
18   can -- for them, it'll probably be a quick drive.
19              THE COURT:  All right.  That would be fine,
20   too.
21              Now, one other thing, just to make sure there
22   is no issue on this, I don't have to do this, but one of
23   my friends in Washington that I've threatened to -- he
24   keeps asking me to spend a couple of days at his house,
25   they've got a huge house, that he and his wife have.
```

```
 1   And it's Bob Bennett.  And as you know, he defends
 2   criminal cases.  So if you've got any issue with that, I
 3   want to put everything on the record.
 4           MR. CARDANI:  I have no issue whatsoever with
 5   that.  Although, I hope you'd consider consulting with
 6   his brother as well while you are there.
 7           THE COURT:  I haven't met his brother.  Well,
 8   I'll tell you some things off the record about that.
 9           All right.  Anything more that you fellas have
10   then?
11           MR. CARDANI:  Yeah, I think we're good.
12           THE COURT:  Okay.  Thanks very much.
13           (The proceedings were concluded at 4:38 p.m.)
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                        CERTIFICATE
 2        I, Deborah Wilhelm, Certified Shorthand Reporter
 3   for the State of Oregon, do hereby certify that I was
 4   present at and reported in machine shorthand the oral
 5   proceedings had in the above-entitled matter.  I hereby
 6   certify that the foregoing is a true and correct
 7   transcript, to the best of my skill and ability, dated
 8   this 28th day of January, 2009.
```

Deborah Wilhelm, RPR
Certified Shorthand Reporter
Certificate No. 00-0363