Steven T. Wax, OSB No. 85012
Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR  97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Email: steve_wax@fd.org

Lawrence Matasar, OSB No. 74209
621 SW Morrison Street, Suite #1025
Portland, OR 97205
Tel: (503) 222-9830
Email: larry@pdxlaw.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 05-60008 |
| Plaintiff, | |
| | MEMORANDUM IN SUPPORT OF MOTIONS TO SUPPRESS EVIDENCE SEIZED PURSUANT TO SEARCH WARRANT AND PURPORTED CONSENTS, AND TO COMPEL GOVERNMENT TO CEASE ALL SEARCHES OF COMPUTERS AND ELECTRONIC MEDIA SEIZED ON FEBRUARY 18, 2004 |
| v. | |
| PIROUZ SEDAGHATY, | |
| Defendant. | |

**TABLE OF CONTENTS**

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I.    FRUITS OF A SEARCH WARRANT BASED ON PRIOR UNLAWFUL
        ACTIVITIES MUST BE SUPPRESSED . . . . . . . . . . . . . . . . . . . . . . . . . 9

    II.    ALL FRUITS OF THE SEARCH MUST BE SUPPRESSED
        BECAUSE, IN EXECUTING THE SEARCH WARRANT,
        THE AGENTS EXCEEDED ITS CAREFULLY TAILORED
        SCOPE AND PROTOCOL FOR PERMANENT SEIZURE OF
        MATERIAL ON COMPUTERS AND ELECTRONIC MEDIA . . . . . . . . . 13

        A.    Suppression Of All The Fruits Of A Search Is Required When
            Agents Seize Material Outside The Scope Of A Carefully Tailored
            Warrant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        B.    Suppression Should Be Ordered Of All Material Because The
            Government Has Continued To Search The Computers Far
            Beyond Any Reasonable Period And It Should Be Ordered To
            Cease And Desist Any Further Searches Of The Computers And
            The Electronic Media Recovered During The Search . . . . . . . . 20

    III.    THE EVIDENCE OBTAINED PURSUANT TO THE SEARCH SHOULD
        BE SUPPRESSED BECAUSE THE WARRANT AFFIDAVIT WHOLLY
        LACKED PROBABLE CAUSE AND WAS INFECTED BY MATERIAL
        MISSTATEMENTS OF FACT AND/OR RECKLESS MATERIAL
        OMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        A.    Under The Fourth Amendment A Warrant May Be Issued Only
            Upon Probable Cause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        B.    Searches Conducted Pursuant To Warrants Are Generally Upheld
            Under The Good Faith Exception To The Exclusionary Rule Unless
            The Warrant Was Wholly Lacking In Probable Cause Or Obtained
            By An Affidavit Riddled by Reckless Or Intentional Material
            Omissions Or Misstatements . . . . . . . . . . . . . . . . . . . . . . . . . 23

        C.    The Search Warrant Was Wholly Lacking in Probable Cause . . 25

D.    The Warrant Issued In This Case Was Infected By Material Misstatements And Omissions Which, When Corrected, Becomes Invalid . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

IV.    THE GOVERNMENT MUST PROVE THAT THE CONSENTS TO SEARCH AND SEIZE WERE VOLUNTARY AND NOT THE PRODUCT OF AN UNLAWFUL WARRANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

A.    The Government Bears The Burden Of Establishing Consent . . 33

B.    Consent To Search Pursuant To An Unlawful Warrant Is Not Valid . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

# TABLE OF AUTHORITIES

## FEDERAL CASES                                        Page

*Arizona v. Gant*,
    129 S. Ct. 1710 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

*Arizona v. Hicks*,
    480 U.S. 321 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Bumper v. North Carolina*,
    391 U.S. 543 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32, 33

*Coolidge v. New Hampshire*,
    403 U.S. 443 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 32

*Florida v. Jimeno*,
    500 U.S. 248 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Florida v. Royer*,
    460 U.S. 491 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

*Franks v. Delaware*,
    438 U.S. 154 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23, 34

*Groh v. Ramirez*,
    540 U.S. 551 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

*Horton v. California*,
    496 U.S. 128 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Illinois v. Gates*,
    462 U.S. 213 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21, 22

*Jane Doe I-V v. Texaco*,
    No. C06-02820 WHA, 2006 WL. 2850035 (N.D. Cal. 2006) . . . . . . . . . . . . .  24

*Katz v. United States*,
    389 U.S. 347 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

*Kyllo v. United States*,
    533 U.S. 27 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

*Larez v. Los Angeles,*
    946 F.2d 630 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Marron v. United States,*
    275 U.S. 192 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Maryland v. Garrison,*
    480 U.S. 79 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mincey v. Arizona,*
    437 U.S. 385 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Murray v. United States,*
    487 U.S. 533 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9,10, 11

*Nathanson v. United States,*
    290 U.S. 41 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In Re: National Security Agency Telecommunication Records Litigation,*
    564 F. Supp. 2d 1109 (N.D. Ca. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

*Ornelas v. United States,*
    517 U.S. 690 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24

*Schneckloth v. Bustamonte,*
    412 U.S. 218 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Sgro v. United States,*
    287 U.S. 206 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Tatum v. United States,*
    321 F.2d 219 (9th Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Abrams,*
    615 F.2d 541 (1st Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Barbuto,*
    No. 2:00CR197K, 2001 WL. 670930 (D. Utah 2001) . . . . . . . . . . . . . . . . . . . . 16

*United States v. Bertrand,*
    926 F.2d 838 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Brown,*
    563 F.3d 410 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*United States v. Campos*,
    221 F.3d 1143 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Carey*,
    172 F.3d 1268 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16

*United States v. Comprehensive Drug Testing, Inc.*,
    513 F.3d 1085 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*United States v. Crozier*,
    777 F.2d 1376 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. DeLeon*,
    979 F.2d 761 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Dozier*,
    844 F.2d 701 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Ewain*,
    88 F.3d 689 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

*United States v. Foster*,
    100 F.3d 846 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

*United States v. Giberson*,
    527 F.3d 882 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*United States v. Hotal*,
    143 F.3d 1223 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Jacobs*,
    986 F.2d 1231 (8th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Leon*,
    468 U.S. 897 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*United States v. Martinez-Garcia*,
    397 F.3d 1205 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Mittelman*,
    999 F.2d 440 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Reid*,
    226 F.3d 1020 (9th Cir. 2000)T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Spilotro*,
    800 F.2d 959 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Stanert*,
    762 F.2d 775 (9th Cir.), amended by 769 F.2d 1410 (9th Cir. 1985) . . . . . . . . 23

*United States v. Tamura*,
    694 F.2d 591 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16, 19

*United States v. Walser*,
    275 F.3d 981 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

*United States v. Weber*,
    923 F.2d 1338 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Whitely v. Warden*,
    401 U.S. 560 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## DOCKETED CASES

*Al Haramain Islamic Foundation, Inc. et al. v. United States Department of Treasury, et al.*, Civil No. 07-1155-KI (D. Or.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## ARTICLE

Raphael Winick, *Searches and Seizures of Computers and Computer Data,* 8 Harv. J.L.
    & Tech. 75, 103-13 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## STATUTES

Title 26, United States Code, Section 7206(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Title 31, United States Code, Section 5324 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Defendant, Pirouz Sedaghaty, by and through his attorneys, Lawrence Matasar and Federal Public Defender Steven T. Wax, hereby moves the Court to suppress all evidence recovered pursuant to the execution of the search warrant for 3800 S. Highway 99, Ashland, Oregon 97520 on or about February 18, 2004, and any evidence derived or discovered as the fruits of those searches and seizures.  The search was unlawful in several distinct respects.  First, suppression is warranted if the search warrant was sought as a result of prior illegal surveillance.  Moreover, Mr. Sedaghaty must have access to the classified document he placed in the secure facility and other classified information in this case in order to effectively litigate this aspect of the motion. Second, the search and seizure of the materials on the computers exceeded the scope of the warrant.  Third, the search warrant was wholly lacking in probable cause.  Fourth the warrant was based on an affidavit that contained misstatements and omissions that, if corrected, would negate any probable cause for issuance of the warrant.  Fifth, the government must prove that any consents to search and/or seize were voluntary and not coerced.

**STATEMENT OF FACTS**

Mr. Sedaghaty was a well known public figure in Southern Oregon in the early 1990's as a result of his ecumenical, interfaith, peace-oriented, and public work as a spokesperson for moderate Islamic views in Southern Oregon.  He was also known to the local governments for his work as an arborist, work that brought him to the attention of the responsible officials in Ashland, Eugene, and other cities in Oregon, who hired

him as a consultant arborist.  For example, the City of Eugene hired Pete Sedaghaty as

an arborist consultant to resolve a dispute between the City of Eugene and a group of

environmentalists regarding problems with diseased trees in the Whitaker

neighborhood.   Pete Sedaghaty was also a founding member of State of Oregon

Urban Forestry Board.  He volunteered and led the effort to plant 10,000 trees in and

around Ashland.  Throughout the 1990's, he was highly visible and often written about

in the media.  *See, e.g.,* CR 31, Exs. A-C.

The legal and publicly disclosed investigation of Mr. Sedaghaty and Al Haramain

USA began on or about September 15, 2001, when Agents David Carroll, Bradford

Petrie, and Joseph Boyer of the Federal Bureau of Investigation visited Mr. Sedaghaty

at the Al Haramain USA location in Ashland, Oregon.  GOV 83-86.[1]  The first known

grand jury subpoena seeking information about Mr. Sedaghaty was served on Jackson

County Title on October 2, 2001.  Other subpoenas were served on Bank of America

and other banks associated with Mr. Sedaghaty or Al Haramain USA and its board in

November and December 2001.  *See, e.g.*, FPDUS 34791 and FPDUS 31080.

After 9/11 and through early 2003, Mr. Sedaghaty visited or had contact with FBI

agents on at least 15 occasions.  *See e.g.,* GOV 83-86; GOV 87-89; GOV 92-93; GOV

107-110; GOV 113; GOV 94-96; GOV 114-15; GOV 118-19; GOV 120-24; GOV 2186;

GOV 125-26; FPDUS 24256; GOV 127-32; GOV 133-36.  Mr. Sedaghaty consistently

---

[1]The references to "GOV" are to the bates stamped numbers in the discovery
provided by the government and "FPDUS" refers to the documents that were provided
to the government pursuant to the grand jury subpoena in this case.

**Page 2 -     MEMORANDUM IN SUPPORT OF MOTIONS TO SUPPRESS EVIDENCE SEIZED
PURSUANT TO SEARCH WARRANT AND PURPORTED CONSENTS, AND TO
COMPEL GOVERNMENT TO CEASE ALL SEARCHES OF COMPUTERS AND
ELECTRONIC MEDIA SEIZED ON FEBRUARY 18, 2004**

communicated that he abhorred violence and that he believed that the attacks of

September 11, 2001, were inconsistent with Muslim teachings.  These views were also

expressed to the public at large through media statements and published words.  *See,*

*e.g.,* CR 31, Exs. D and K; FPDUS 19124.

Both before and after September 11, 2001, Mr. Sedaghaty communicated with

the United States and other governments on several occasions seeking to arrange trips

overseas to deliver humanitarian aid to refugees in a number of countries, including

Chechnia, Afghanistan, Israel/Palestine.  GOV 120; GOV 290; GOV 523; GOV 527-29;

GOV 2187-89; GOV 2190.

In addition to the legal and publicly known contacts with Mr. Sedaghaty, the

United States government was heavily involved in surveillance of the Al Haramain

charity from at least the mid-1990s on.  *See* CR 140.  It has been publicly disclosed that

the United States government was also engaging in unlawful and warrantless

surveillance of Al Haramain USA at least in 2004, and, in all probability, in the years

before.  *See* CR 138, Ex. A; *see, e.g., In Re: National Security Agency*

*Telecommunication Records Litigation*, 564 F. Supp. 2d 1109 (N.D. Ca. 2008); Ex. 8.

On February 13, 2004, Special Agent Colleen Anderson submitted an affidavit in

support of a search warrant for the building at 3800 S Highway 99, Ashland, Oregon.

Ex. 1 and 2.  The primary objective of the warrant was to search for evidence relating to

a tax violation and a currency and monetary instrument violation.  This affidavit alleged

probable cause based on the following summary of facts.

On February 24, 2000, Mr. El Feki, for Zakat, wired $149, 985 to AHIF, Inc's Bank of America account in Ashland, Oregon from an account with the National Bank of Kuwait in London, England.  Ex. 2, ¶19; 29.  Soliman Al-Buthe traveled to the United States on March 7, 2000.  Ex. 2, ¶ 29.  On March 10, 2000, Mr. Al Buthe purchased one hundred thirty (130) $1,000 American Express Travelers checks from Bank of America in Ashland, Oregon.  Ex. 2, ¶ 30.In paragraphs 22-28, the affidavit provides accounts, mostly from newspapers related to the Chechen/Russian wars and feuding Mujahideen.  Ex. 2, ¶ 22-28.

On March 11, 2000, Mr. Sedaghaty purchased a $21,000 Bank of America cashiers check payable to Al-Buthe.  Ex. 2, ¶ 32.  This was intended as a donation to Chechen refugees.  Ex. 2, ¶ 33.  On March 12, 2000, Al-Buthe left the United States and flew to Saudi Arabia.  Ex. 2, ¶ 36.  No CMIRs were found related to this departure.  Ex. 2, ¶ 41.

The American Express Travelers checks were cashed in Saudi Arabia on approximately March 25, 2000.  Ex. 2, ¶ 45.  The affiant was unable to determine when the $21,000 was deposited in Saudi Arabia but it appeared that it was deposited into a personal account of Al-Buthe's.  Ex. 2, ¶ 46.  In May of 2000, Soliman Al-Buthe brought $275,000 dollars in American Express Traveler's checks issued by Al Rajhi Bank in Ryadh, Saudi Arabia into the United States.  Ex. 2, ¶ 16.  These funds were deposited into an AHIF, Inc. Bank of America account in Ashland, Oregon.  Ex. 2, ¶ 16.  Pete Seda purchased a cashier's check in the amount of $318,291.74 from Bank of America

in Ashland, Oregon made payable to First Escrow, Inc.  Ex. 2, ¶ 16.  This cashier's check was used to help purchase the property in Springfield, Missouri.  Ex. 2, ¶ 16.

In June of 2000, AHIF, Inc. purchased property in Springfield, Missouri for $378,291.74.  Ex. 2, ¶ 16.  The accountant believed the purchase price was $461,541.74 and that is what he listed on the tax return.  Ex. 2, ¶ 60.  Accountant Wilcox confirmed that he prepared the tax returns for Al Haramain.  Ex. 2, ¶ 58.  The affidavit then provides conclusory and speculative beliefs on the part of the affiant and Accountant Wilcox as to what was provided to Wilcox and when.  Ex. 2, ¶¶ 59-61.  The affidavit stated that the agent expected to find evidence including records and communications pertaining to the preparation of the IRS Form 990 for the year 2000; records relating to various bank accounts and various bank and financial transactions involving the year 2000; and, records of financial transactions and communications involving cash, traveler's checks, and other monetary instruments conducted between October 1997 and February 2003.  Ex. 2, ¶¶ 47, 69, 71.  The affidavit related that Mr. Sedaghaty turned over several boxes of records pursuant to a subpoena.  Ex. 2, ¶ 68.

The warrant was quite specific in detailing both the premises the agents were authorized to search and the material they were authorized to seize.  The warrant authorized seizure of the specified records as they related to a list of individuals and organizations that included Mr. Sedaghaty and Al Haramain USA.  Ex 2, Attachment B.  The search warrant authorized a search of a one story residential building located at

3800 S. Highway 99 in Ashland, Oregon (Ex. 2, Attachment A). The items subject to

seizure were described as:

> Evidence Relating to the Tax Violation
>
> Evidence concerning the subscription to a false Form 990 Tax Return, in violation of Title 26, United States Code, Section 7206(1), as described in the attached affidavit, for the year 2000, limited to the following:
>
> Records and communications, including electronic records and communications, involving the individuals or entities above, pertaining to the preparation of an IRS Form 990 for the year 2000;
>
> Records relating to the bank accounts, bank transactions, bank records, safe deposit records, asset purchases or sales, other financial transactions, and donor and donee lists, involving the year 2000 which relate to the individuals or entities above; and
>
> Records relating to credit card accounts, records and transactions involving the year 2000, which relate to the individuals or entities above.
>
> Evidence Relating to the CMIR Violation
>
> Evidence relating to the failure to file a currency and monetary instrument reporting form, in violation of Title 31, United States Code, Section 5324, as described in the attached affidavit, limited to the following:
>
> Records of financial transactions, and communications, including electronic records of financial transactions and communications, which involve cash, traveler's checks, cashier's or money orders conducted between October 1997 and February 2003 and pertain to the Individual or entities listed above.

Ex. 1, Attachment B.  Attachment B also clarified under a section titled "Computers" that

the term records meant records modified or stored in any form and described the

procedure that would be used in assessing the computer equipment and storage

devices to determine whether the devices could be searched on-site, or copied, or

seized.  The computer equipment and storage devices would then be examined for data that would fall within the "items to be seized" description as described in Attachment B to the Search Warrant.

The search warrant was executed on February 18, 2004.  Returns were prepared describing the items seized.  Ex. 3.

The execution of the warrant was accomplished by between twelve and fifteen armed law enforcement officers from a number of agencies.  The agents used extensive force on their arrival.  During the execution of the warrant, one of Mr. Sedaghaty's lawyers arrived at the residence.

During the search, the agents apparently realized that certain items were beyond the scope of the warrant.  As a result, they sought consent to expand the search to two green trailers that were on the property, but separate from the residence listed on the search warrant, from Jonah Sedaghaty, Mr. Sedaghaty's son, who happened to be at the premises.  The green trailers were not specifically included in the language of the search warrant as described above.  Ultimately, he signed the consent form for the agents to search the trailers.  Ex. 4.  The inventory list for the searching of the trailers is attached as Exhibit 5.

After several hours of searching, the agents again realized the limited scope of the warrant and approached Jonah about the seizure of many items from the residence. These items included video tapes and tape records, photographs, a computerized "to-do" list, correspondence (including prisoner letters), spreadsheets, and literature.

Again, Jonah signed the consent form.  Ex. 6.  The inventory list for the items seized by

consent within the residence is attached as Exhibit 7.

**ARGUMENT**

**I.    FRUITS OF A SEARCH WARRANT BASED ON PRIOR UNLAWFUL
        ACTIVITIES MUST BE SUPPRESSED**

In *Murray v. United States*, 487 U.S. 533, 543 (1988), Justice Scalia addressed

the Fourth Amendment's exclusionary rule in the context of an illegal search that was

followed by a search with a warrant.   In remanding the case, the Court held that illegal

activity could taint a subsequent search with a warrant in two ways: if the affidavit used

to obtain the warrant incorporated fruits of the illegal search or if the decision to seek

the warrant was based on the unlawful action:

> The ultimate question, therefore, is whether the search pursuant to
> warrant was in fact a genuinely independent source of the information and
> tangible evidence at issue here.  This would not have been the case *if the
> agents' decision to seek the warrant was prompted by what they had seen
> during the initial entry*, or if information obtained during that entry was
> presented to the Magistrate and affected his decision to issue the warrant.

*Murray,* 487 U.S. at 542 (emphasis added).  This principle appears to apply to the

search in this case.

The public record reveals that Al Haramain and the codefendant were subjected

to illegal surveillance.  *See In re: National Security Agency Telecommunications

Records Litigation*, 564 F.Supp. 2d 1109 (N.D. Ca. 2008).[2]  The public record also

_____

[2]The pleadings filed in this case, Docket No. 06-1791-VRW, are repleat with
information regarding the illegal surveillance of Al Haramain USA.

reveals that in addition to the criminal investigation in Oregon, the government was involved in an extensive investigation of Al Haramain through the Office of Foreign Asset Control in the Department of Treasury (OFAC).  *See Al Haramain Islamic Foundation, Inc. et al. v. United States Department of Treasury, et al.,* Civil No. 07-1155-KI (D. Or.).  The record reveals that that investigation involves substantial classified information.   The two investigations were apparently coordinated.   CR 138, Ex. B at ¶¶ 22 and 48.

The search warrant was executed on February 18, 2004.  On the very next day, OFAC  issued an order blocking all funds, accounts and real property of Al Haramain USA pending an investigation into the organization's alleged ties to terrorists.  *See* CR 138 Ex. B at ¶ 50.   (Declaration of Adam J. Szubin, Director of the U.S. Department of the Treasury's Office of Foreign Assets Control).  In Director Szubin's declaration, he describes the designation process and further explains:

> There is interagency coordination throughout the designation process, and that this interagency coordination is a critical party fo the designation process.  This interagency process helps to ensure that Treasury and State's proposed designations are consistent with the operational and policy interests of other agencies, as well as with the strategic national security and foreign policy goals of the United States.

*Id.* at ¶ 22.  When Director Szubin described the investigation of Al Haramain USA, he stated that "[a]ction with respect to the U.S. branch of AHIF was closely coordinated within the U.S. Government to ensure that separate law enforcement and designation efforts would not interfere with one another."  *Id.* at ¶ 48.

There is, therefore, a strong likelihood that the criminal investigation of Mr. Sedaghaty and Al Haramain USA in Oregon was tainted by the unlawful surveillance being conducted by other branches of the  United States Government.  If the decision to seek the warrant in the criminal investigation or earlier decisions to pursue the criminal investigation were prompted by the illegal investigation, suppression is warranted.

Given the acknowledged coordination between the agencies and the nearly simultaneous execution of the warrant by one United States agency with the freezing of assets by another United States agency, the likelihood that *Murray* applies is strong.  It is, therefore, critical that Mr. Sedaghaty review and discuss the classified information he provided to the court security officer.[3]

Mr. Sedaghaty claims, that the document, given its description in the public record, provides compelling evidence of government illegality that would taint in its entirety the application for the search warrant at issue in this case.  In order to effectively pursue his motion to suppress, he needs access to the document and the ability to analyze and discuss its contents within the defense team.  He hereby renews his motion for reconsideration of the court's discussion order.  *See* CR 103; 105; 135.

_____

[3]On or about January 24, 2008, Mr. Sedaghaty provided the court security officer for safekeeping a document he had reason to believe was classified top secret.  Since then, he has had no access to that document.  Moreover, by order of the Court dated May 16, 2008 (CR 103), he and his attorneys have been prevented from discussing the document.

**Page 10 -    MEMORANDUM IN SUPPORT OF MOTIONS TO SUPPRESS EVIDENCE SEIZED PURSUANT TO SEARCH WARRANT AND PURPORTED CONSENTS, AND TO COMPEL GOVERNMENT TO CEASE ALL SEARCHES OF COMPUTERS AND ELECTRONIC MEDIA SEIZED ON FEBRUARY 18, 2004**

In addition, *Murray* and this motion cast the Court's previous rulings on classified discovery in a different light.  In pleadings filed on March 17, 2008 (CR 90), October 10, 2008 (CR 138), October 29, 2008 (CR 140), January 28, 2009 (CR 154), April 17, 2009 (CR 164), and May 7, 2009 (CR 172 and CR 174), Mr. Sedaghaty provided the Court compelling evidence of his belief that he, Al Haramain USA, and Al Haramain Saudi Arabia have been subjected to extensive surveillance since at least the mid-1990s.  His submissions have demonstrated that the government should be in possession of extensive evidence gathered through a variety of surveillance means, both legal and illegal.

The government has previously asserted that evidence outside the time frame of the indictment is not discoverable.  *See, e.g.,* CR 100.  To the extent that argument may have influenced the Court's decisions on the discovery motions to date, they have no bearing on the discovery of exculpatory information required on the motion to suppress.  The affidavit in support of the search warrant describes facts starting in the late 1990s and continuing into 2004.  Evidence gathered in any of those years that refutes the assertions contained in the affidavit is relevant to the questions of material misstatements and omissions raised in this motion.

Mr. Sedaghaty cannot effectively proceed with this aspect of the motion to suppress absent disclosure of the government's surveillance of his activities and those of Al Haramain USA, legal and illegal. Mr. Sedaghaty hereby renews his discovery motions so that he can meaningfully pursue this aspect of his motion to suppress.

II.    **ALL FRUITS OF THE SEARCH MUST BE SUPPRESSED BECAUSE, IN EXECUTING THE SEARCH WARRANT, THE AGENTS EXCEEDED ITS CAREFULLY TAILORED SCOPE AND PROTOCOL FOR PERMANENT SEIZURE OF MATERIAL ON COMPUTERS AND ELECTRONIC MEDIA**

A.    **Suppression Of All The Fruits Of A Search Is Required When Agents Seize Material Outside The Scope Of A Carefully Tailored Warrant**

A warrant must particularly describe the place to be searched and the items to be seized.  *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986) (search warrant must allege with reasonable particularity the types of items that may be seized).  The particularity requirement of the Fourth Amendment prevents "general, exploratory rummaging in a person's belongings" and insures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is probable cause.  *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

> The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another.  As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

*Marron v. United States,* 275 U.S. 192, 196 (1927).  The Supreme Court has emphatically required that the objects of a search be specified:

> The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one "particularly describing the place to be searched and the persons or things to be seized."  The manifest purpose of this particularity requirement was to prevent general searches.  By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.  Thus, the scope of a lawful search is "defined by the object of

the search and the places in which there is probable cause to believe that it may be found."

*Maryland v. Garrison,* 480 U.S. 79, 84 (1987) (citations omitted).

"If the scope of the search exceeds that permitted by the terms of a validly issued warrant . . . the subsequent seizure is unconstitutional without more." *Horton v. California,* 496 U.S. 128, 140 (1990).  A properly limited warrant may not be used as a pretext for a general search, or for a search outside the scope of the warrant.  *United States v. Ewain,* 88 F.3d 689, 693 (9th Cir. 1996).  When a search is conducted in "flagrant disregard" of the terms of a warrant, suppression of all evidence seized under the warrant is the proper remedy.  *United States v. Foster,* 100 F.3d 846, 849-50 (10th Cir. 1996) ("[w]hen law enforcement officers grossly exceed the scope of a search warrant in seizing property, the particularity requirement is undermined and a valid warrant is transformed into a general warrant thereby requiring suppression of *all evidence seized* under that warrant.") (emphasis in original) (citations omitted); *United States v. Mittelman,* 999 F.2d 440, 444 (1993) ("where there is a 'flagrant disregard' for the terms of the warrant, the district court may suppress all of the evidence, including evidence that was not tainted by the violation"); *see also United States v. Crozier,* 777 F.2d 1376, 1381 (9th Cir. 1985) (holding that if agents have not flagrantly disregarded warrant, only items seized that "fall outside the scope of the warrant need be suppressed").

The unique nature of a search and seizure of computers has been noted in a number of contexts, most often, the recognition of the huge amounts of information kept

Page 13 -    **MEMORANDUM IN SUPPORT OF MOTIONS TO SUPPRESS EVIDENCE SEIZED PURSUANT TO SEARCH WARRANT AND PURPORTED CONSENTS, AND TO COMPEL GOVERNMENT TO CEASE ALL SEARCHES OF COMPUTERS AND ELECTRONIC MEDIA SEIZED ON FEBRUARY 18, 2004**

in computers and the need for law enforcement to recognize the particularity

requirement in removing information from these storage spaces.  *United States v.*

*Walser,* 275 F.3d 981, 986 (10th Cir. 2001); *United States v. Campos,* 221 F.3d 1143,

1148 (10th Cir. 2000) ("storage capacity of computers may require law enforcement

officers to take a special approach"); *United States v. Carey,* 172 F.3d 1268, 1275 (10th

Cir. 1999) (same).  Under these circumstances, judges and scholars have articulated

an approach developed in the Ninth Circuit in *United States v. Tamura,* 694 F.2d 591

(9th Cir. 1982), for the execution of a search warrant involving files that are

"intermingled."  *See Campos,* 221 F.3d at 1148; Carey, 172 F.3d at 1275 ("courts can

acknowledge computers often contain 'intermingled documents'"); Raphael Winick,

*Searches and Seizures of Computers and Computer Data,* 8 Harv. J.L. & Tech. 75,

103-13 (1994) ("The rule controlling searches of intermingled documents originated by

the Ninth Circuit in *Tamura* . . . should be applied to computer storage media.").

In *Tamura,* the Ninth Circuit considered whether the seizure of a large quantity of

paper files, some of which were contained in the warrant and some of which were not,

was an impermissible execution of the search warrant.  694 F.2d at 594-97. The court

explained:

> It is highly doubtful whether the wholesale seizure by the Government of
> documents not mentioned in the warrant comported with the requirements
> of the fourth amendment.  As a general rule, in searches made pursuant
> to warrants only the specifically enumerated items may be seized.  It is
> true that all items in a set of files may be inspected during a search,
> provided that sufficiently specific guidelines for identifying the documents
> sought are provided in the search warrant and are followed by the officers
> conducting the search.  However, the wholesale *seizure* for later detailed

examination of records not described in a warrant is significantly more intrusive, and has been characterized as "the kind of investigatory dragnet that the fourth amendment was designed to prevent." *United States v. Abrams*, 615 F.2d 541, 543 (1st Cir. 1980). We cannot sanction the procedure followed by the Government in this case.

*Tamura,* 694 F.2d at 595 (emphasis in original) (internal citations omitted). The court continued:

In the comparatively rare instances where documents are so intermingled that they cannot feasibly be sorted on site, we suggest that the Government and law enforcement officials can generally avoid violating fourth amendment rights by sealing and holding the documents pending approval by a magistrate of a further search. . . .

*Tamura,* 694 F.2d at 595-96.[4]

Following *Tamura*, it is permissible for agents to temporarily seize a computer for later in-depth analysis for material within the scope of a warrant. Search warrants must also include a reasonable search protocol. Agents acting pursuant to such a warrant must comply with the protocol and, if they want to seize evidence outside the scope of the warrant, seek an additional warrant.

As articulated in *Carey,* application of the Ninth Circuit rule to the computer context requires officers to seek a second warrant from a magistrate advised of new information:

Where officers come across relevant documents so intermingled with irrelevant documents that they cannot feasibly be sorted at the site, the officers may seal or hold the documents pending approval by a magistrate

---

[4]On the facts of the case, the court refused to reverse the conviction because none of the items impermissibly taken was used against the defendant. 694 F.2d at 597.

of the conditions and limitations on a further search through the documents . . . The magistrate should then require officers to specify in a warrant which type of files are sought.

172 F.3d at 1275.  The *Carey* court noted that the detective "knew he was expanding the scope of his search when he sought to open the JPG files" and this put the detective "in the same position as the officers had been when they first wanted to search the contents of the computers for drug related evidence."  *Id.*  They were aware they had to obtain a search warrant and did so." *Id.* at 1273.  *See also Walser,* 275 F.3d at 986 ("when officers come across relevant computer files intermingled with irrelevant computer files, they 'may seal or hold' the computer pending 'approval by a magistrate of the conditions and limitations on a further search' of the computer.") (quoting *Carey, 172* F.3d at 1275); *United States v. Barbuto,* No. 2:00CR197K, 2001 WL 670930, at 5 (D. Utah 2001) (agents discovering intermingled documents on a computer should have returned to the magistrate for further instructions or a more specific warrant).

    The discussion in *United States v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085 (9th Cir. 2008), reinforces this analysis.  The court there approved the *Tamura* analysis and seizure of intermingled computer files for later review off site of records in the Balco steroid baseball scandal.  513 F.3d at 1112.  Of particular relevance here are two aspects of the analysis.  First, the review that later occurred was consistent with the protocol described in the warrant.  *Id*. at 1110.  Second is the statement that the court need not reach the government's argument that the "plain view" exception to the warrant requirement justified its actions "because the evidence fell within the scope of

the warrant." *Id.* at 1112 on 48.  Any effort to apply the plain view doctrine would, moreover, run afoul of *Arizona v. Hicks*, 480 U.S. 321, 324-25 (1987) in which the court held that looking at the bottom of a turntable in plain view constituted a search that rendered seizure of the turntable unlawful.

The importance of the scope of the original warrant and compliance with the search protocol following *Comprehensive Drug Testing* is underscored in *United States v. Giberson*, 527 F.3d 882 (9th Cir. 2008).  There the court upheld the use of child pornography that was outside the scope of an initial warrant for identification theft evidence because the officers obtained a subsequent warrant when their search revealed the existence of the pornography on the computer.

The search warrant under which the agents were acting here limited the scope of the search for evidence relating to a false Form 990 Tax Return for the year 2000 and evidence relating to the failure to file a currency and monetary instrument form which included various negotiable instruments between October 1997 and February 2003. The authorizing language allowed the government to seize documents and records that pertained "to the preparation of an IRS Form 990 for the year 2000" and "[r]ecords of financial transactions, and communications, including electronic records of financial transactions and communications, which involve cash, traveler's checks, cashier's checks or money orders conducted between October 1998 and February 2003." Ex. 1, Attachment B.  The warrant did not authorize a general rummaging through e-mail

accounts or miscellaneous saved files although this type of evidence would be found on computers located at the residence.

The warrant also included a protocol for review of computers that permitted temporary seizure for review in a laboratory.  Of prime importance to this motion, the protocol for review of computers contained an express limitation on what could be permanently seized.

> The computer equipment and strange devices will be reviewed by appropriately trained personnel in order to extract and seize any data that falls within the list of items to the seized set forth herein."

Ex. 1, Attachment B.  The inventory sheet attached to the search warrant confirms that several computers and computer hard drives were seized.  According to the discovery provided in this case, the government seized and rifled through a tremendous amount of information from the computers and computer hard drives that is well beyond the scope of the search warrant.  This information includes various e-mails and other documents that do not contain any reference to anything financial, including personal and private e-mails, attorney-client e-mails,  photographs, news articles, web pages, and internal organization documents unrelated to financial matters, material  that involved current events, history, private family communications, and vacation plans. None of this material is within the scope of the material listed in the warrant as seizable in relation to the tax return of 2000 or anything regarding currency or monetary instruments.

Nor is any of the material contraband.  Even if it had been contraband, at the time of the review of the computers and hard drives for evidence as limited by the warrant the government was required to seek a second search warrant for the material that was beyond the scope of the first warrant in order to "seize" and use it in a criminal prosecution. *See e.g. Giberson,* 527 F.3d at 890.

The government engaged in an impermissible general search and expanded the scope of their search in a manner not authorized by the warrant.  The government exceeded the scope of the warrant by seizing materials from the computers and hard drives that was not covered by the search warrant. Nothing was included in the warrant to authorize seizure of e-mails, web pages, photographs news-articles, and internal organizational documents.  Indeed, even though the affidavit discussed non-financial matters, the warrant specifically limited permanent seizure to the financial type evidence listed in Ex. 1, Attachment B.

Instead of complying with the limitations of the search warrant, the government engaged in an indiscriminate taking of miscellaneous and innocuous materials that were entirely unrelated to the a year 2000 tax return and records or communications of financial transactions from 1997 to 2003.  Such fishing expeditions have been roundly denounced by the courts.  *See e.g., Foster,* 100 F.3d at 850; *Tamura,* 694 F.2d at 597. *See also Ewain*, 88 F.3d at 693 (incriminating nature must be immediately apparent).

Return and suppression of all documents is required because the execution of the warrant was manifestly overbroad.  At a minimum, the material seized outside the scope of the warrant must be suppressed.

> **B.    Suppression Should Be Ordered Of All Material Because The Government Has Continued To Search The Computers Far Beyond Any Reasonable Period And It Should Be Ordered To Cease And Desist Any Further Searches Of The Computers And The Electronic Media Recovered During The Search**

"The touchstone of the Fourth Amendment is reasonableness."  *Florida v. Jimeno*, 500 U.S. 248, 250 (1991).  Historically, the authority to search and seize pursuant to a warrant has very strict time limits.  *See, e.g., Sgro v. United States*, 287 U.S. 206, 210 (1932) (warrant not executed within ten day became void).

As stated above, the search and seizure of materials taken from the computers and the computer hard drives has far exceeded the permissible scope of the warrant issued in this case and those materials should be suppressed.  Mr. Sedaghaty understands that the government continues to conduct searches of the computers and computer hard drives that specifically target information unrelated to the tax return of 2000 or any financial transactions between 1997 and 2003 – as limited by the search warrant.  In addition to the requirement for suppression of any material seized outside the scope of the warrant, suppression is required because the continuing search for five years exceeds any reasonable period authorized by a warrant issued under the Fourth Amendment.  Moreover, the warrant authorized retention of the computers for only sixty

days.  This limitation should preclude the general rummaging of the computers that has continued.

The issue of ongoing searches raised yet another issue with respect to classified information.  Mr. Sedaghaty believes that the first searches of the computers were conducted by individuals other than those involved in this criminal case and using tools other than those that have been described to the defense.  These searches may have exceeded the scope of the warrant in ways even more broadly than currently understood.  Mr. Sedaghaty has previously requested the forensic reports that describe the computer examinations in order to effectively litigate this aspect of the motion.  Disclosure of those reports as well as any reports describing earlier searches is essential.

The egregious nature of the prolonged intrusion requires suppression of all evidence seized.  At the very least, all evidence seized after the sixty day period should be suppressed.  In addition, the government should be prevented from any further searches for items that are outside the scope of the warrant.  A motion regarding this issue was filed simultaneously with this memorandum.

III.    **THE EVIDENCE OBTAINED PURSUANT TO THE SEARCH SHOULD BE SUPPRESSED BECAUSE THE WARRANT AFFIDAVIT WHOLLY LACKED PROBABLE CAUSE AND WAS INFECTED BY MATERIAL MISSTATEMENTS OF FACT AND/OR RECKLESS MATERIAL OMISSIONS**

   A.    **Under The Fourth Amendment A Warrant May Be Issued Only Upon Probable Cause**

The Fourth Amendment authorizes the issuance of search warrants only upon a showing of probable cause.  Probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found."  *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

For the magistrate to be able to perform his constitutionally-mandated function properly, the affidavit presented must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant.  *Whitely v. Warden*, 401 U.S. 560, 564 (1971); *Nathanson v. United States*, 290 U.S. 41, 47 (1933) (same).   The question is whether, in viewing the totality of the circumstances, the judicial officer who issued the warrant had a substantial basis for finding a fair probability that contraband or other evidence of a crime would be found in the place searched.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The warrant must also describe the things to be seized with sufficient particularity and be "no broader than the probable cause on which it is based."  *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1991).  A court reviewing the issuance of a warrant is "limited to the information and circumstances contained within the four corners of the underlying affidavit."  *United States v. Bertrand*, 926 F.2d 838, 841 (9th Cir. 1991) (citation omitted).  From whatever source, however, the information presented must be sufficient to allow the issuing magistrate to determine probable cause independently; the magistrate's action "cannot be a mere ratification of the bare conclusions of others."  *Gates*, 462 U.S. at 239.

**B.      Searches Conducted Pursuant To Warrants Are Generally Upheld Under The Good Faith Exception To The Exclusionary Rule Unless The Warrant Was Wholly Lacking In Probable Cause Or Obtained By An Affidavit Riddled by Reckless Or Intentional Material Omissions Or Misstatements**

In *United States v. Leon,* 468 U.S. 897 (1984), the court announced the "good faith" exception to the exclusionary rule.  Under *Leon,* officers executing a search based on a warrant are presumed to act in good faith unless the showing of probable cause in the affidavit offered in support of a warrant is so weak that reliance on it is objectively unreasonable.  *Leon,* 468 U.S. at 926.

Evidence obtained pursuant to a search warrant later found invalid can only be admitted if the officers executing the warrant acted in good faith and in reasonable reliance on the warrant.  *Leon*, 468 U.S. at 913.  *Leon* articulated two exceptions to the good faith rule applicable here.  First, an officer cannot in good faith rely on a warrant supported by an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Id.* at 923 (citations omitted).

Second, the good faith exception does not apply if the issuing magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."  *United States v. Leon*, 468 U.S. at 923.  When law enforcement officers have intentionally, or with reckless disregard for the truth, omitted or misrepresented material information which negates a finding of probable cause, then "the search warrant must be voided and the fruits of the

search excluded to the same extent as if probable cause was lacking." *Franks*, 438 U.S. at 156; *United States v. Dozier*, 844 F.2d 701, 705 (9th Cir. 1988).

A defendant is entitled to an evidentiary hearing to challenge the validity of a search warrant if he makes a substantial preliminary showing that the affidavit contains intentionally or recklessly-made false statements and, when the affidavit is purged of its falsities, would not be sufficient to support a finding of probable cause. *Franks v. Delaware,* 438 U.S. 154, 171-72 (1978).  Similarly, a defendant is entitled to an evidentiary hearing to challenge the validity of a search warrant if the search warrant is marred by deliberate or reckless omissions of fact which undermine a facial showing of probable cause.  *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir.), amended by 769 F.2d 1410 (9th Cir. 1985).  *See also United States v. Martinez-Garcia*, 397 F.3d 1205, 1214 (9th Cir. 2005) (both false statements and omissions may serve as the basis for a *Franks* hearing).

Clear proof of deliberate or reckless misrepresentations or omissions is not required.  *Stanert,* 762 F.2d at 781.  All the defendant must do is make a substantial preliminary showing that the affiant intentionally or recklessly misrepresented facts or "omitted facts required to prevent technically true statements in the affidavit from being misleading."  *Id.  See also United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) (finding an omission to be reckless when "[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know").  When a search warrant affidavit contains material omissions, as well as false statements, the court should

**Page 25 -**     **MEMORANDUM IN SUPPORT OF MOTIONS TO SUPPRESS EVIDENCE SEIZED PURSUANT TO SEARCH WARRANT AND PURPORTED CONSENTS, AND TO COMPEL GOVERNMENT TO CEASE ALL SEARCHES OF COMPUTERS AND ELECTRONIC MEDIA SEIZED ON FEBRUARY 18, 2004**

25

delete the false or misleading statements and insert the omitted truths and then
examine the "reformed" affidavit to see whether it still establishes probable cause.
*United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992).

      **C.**    **The Search Warrant Was Wholly Lacking in Probable Cause**

      The affidavit describes a mistake on the tax return.  In order to elevate that
mistake to criminal conduct that could support issuance of a warrant, the government
was required to establish probable cause to believe that this mistake was made by Mr.
Sedaghaty or one of the other principals of Al Haramain USA, rather than Accountant
Wilcox.  In addition, the government was required to show probable cause that the
mistake was not benign, but one made with a criminal purpose. *Ornelas*, 517 U.S. at
696. The purpose offered by the affiant in the warrant was the desire to fund Chechen
mujahideen.  However, the core of what was offered is set out in paragraphs 22-28 of
the search warrant affidavit.  Those paragraphs fail to provide probable cause of a
criminal purpose.  The only alleged direct link between Al Haramain USA and funding
Chechen mujahideen is derived from newspaper accounts (paragraphs 23, 24, 26, 27).
We have found no cases in which a court has upheld a warrant on newspaper
accounts.  Indeed, newspaper accounts are notoriously unreliable. *See Jane Doe I-V v.
Texaco*, No. C06-02820 WHA, 2006 WL 2850035 *3 (N.D. Cal. 2006).  *Cf. Larez v. Los
Angeles*, 946 F.2d 630, 642-43 (9th Cir. 1991).

      **D.**    **The Warrant Issued In This Case Was Infected By Material
Misstatements And Omissions Which, When Corrected, Becomes
Invalid**

The affidavit submitted in support of the search warrant is replete with material misstatements and omissions.  The affidavit, taken in its entirety, skewed the information and created an overall false impression regarding the relationship of Al Haramain Saudi Arabia and Al Haramain USA, the significance of the role that Accountant Wilcox played as the accountant of Al Haramain USA, the extent of the surveillance and investigation of Al Haramain USA, and the history of the Chechen/Russian conflict. The misstatements and omissions include: 1. the unlawful and warrantless surveillance; 2. The investigation commenced in 2001; 3. The publicly available information about Mr. Sedaghaty from the 1990s forward; 4. Mr. Sedaghaty's contacts with the government from 2001-2003; 5. Mr. Sedaghaty's communications with the government regarding refugees from 2001-2003; 6. Mr. Sedaghaty's relationship with Accountant Wilcox; and 7. Information provided to the government by Accountant Wilcox.  The remainder of this section details the material misstatements and omissions and why an affidavit that had not been riddled with such statements would not have provided probable cause.

The material omissions and misstatements in the affidavit are summarized as follows:

- Paragraphs 11 & 16  - The government provided the court with a general description of how funds were brought into the United States in order to purchase two different pieces of property, including the fact that Soliman Al-Buthe brought the money into the country via travelers checks.  The government failed to inform the court that

travelers checks are used in the normal course of business.  By omitting this piece of information, the affiant led the court to believe that there is significance in the use of travelers checks, when really, there is no significance at all.   Had the court been aware that the use of travelers checks by a foreigner in various foreign financial transactions is not  significant, that would have negated any probable cause surrounding the use of travelers checks as asserted in Paragraphs 30, 31, 45, and 47.

●  Paragraph 18 - The affiant provided an inaccurate and truncated version of the government's use of the grand jury in its investigation of Al Haramain USA.  First, the affiant continued to allow the court to presume that AHIF and Al Haramain USA are one and the same organization, which they are not.  Second, the affiant explained to the court that in June 2003 a grand jury subpoena was served on AHIF.  However, she omitted the fact that the government received grand jury subpoenas in 2001, targeting Pete Seda, as well as Al Haramain USA.  It is without dispute that the investigation of Pete Seda and Al Haramain USA began many years prior to the June 2003 subpoena.  However, this information was left out of the affidavit.  Had the court been aware of the extent of the government's investigation, it would have been cautioned by how little inculpatory information the government provided at the time the affidavit was presented to the magistrate judge.

●  Paragraphs 22 - 24 - The government provided a one-sided view of the history and evolution of the Chechen/Russian conflict focusing on the purported threat of the Chechen mujahideen to Russia in the 1990s.  The affiant relied on a non-governmental

international terrorism consultant.  She failed to inform the court who this person is or what their qualifications are to provide such information.  The affiant also reported that a news article stated that AHIF (Riyadh), had provided support to the Chechens.  The government failed to include in the affidavit the fact that the United States was also supporting the Chechens during this time.  In fact, the Chechen mujahideen, prior to September 11, 2001, were not seen as engaging in violent terrorism, but were viewed as freedom fighters in a war of liberation.  As recently as 2007, now Vice-President Joseph Biden stated that the war in Chechnya is a war of liberation. http://www.politico.com/ news/stories/0507/3850.html.  The affiant failed to inform the court of the humanitarian crisis that existed in Chechnya during this time.  Even Senator John McCain criticized the Clinton administration for its support of Russia in the war against Chechnya.  *See* Eric Schmitt, *McCain Urges Ending Aid To Russia In Wake Of Chechen Policy*, N.Y. Times, Dec. 2, 1999; available at: www.nytimes.com/1999/12/02/us/mccain-urges-ending-aid-to-russia-in-wake-of-chechen-policy.html.   This one-sided, unsubstantiated view of the Chechen crisis, coupled with an inaccurate shared description of Al Haramain, Riyadh and Al Haramain USA, when corrected and more fully explained negated probable cause in this instance.

● Paragraph 47  - Affiant Anderson asserted that "since it appears that SEDA and ALBUTHE have attempted to conceal the movement of funds to Chechnya, as more fully described below, there may be other similar transactions conducted which we have not yet detected."  This supposition is completely  unsupported  and should

have been stricken from the affidavit.  Without this groundless assertion, any  probable

cause asserted by the government is eliminated and would not have been found by the

magistrate.

●  Paragraph 55 - Affiant Anderson reported what Accountant Wilcox recalled of

his initial meetings with Mr. Sedaghaty, and that Mr. Sedaghaty specifically told him that

he needed the books to be right and clean.  This paragraph, or any other paragraph,

failed to mention that Accountant Wilcox also told the government that he (Wilcox)

never thought that Mr. Sedaghaty was intentionally dishonest in his record keeping. *See*

GOV 11-12.  Because Mr. Sedaghaty's financial honesty is one of the primary issues in

this case, it is particularly important that Mr. Sedaghaty's own accountant, and one of

the government's key witnesses throughout its investigation, believed in Mr.

Sedaghaty's honesty as to his financial records.  This information, had it been known by

the court, would have undermined the core of the affiant's assertions and suppositions

peppered throughout the affidavit.  The court would have been unable to find probable

cause to allow a search of the residence.

●  Paragraph 60 - Affiant Anderson reported that Accountant Wilcox received the

Quickbooks Springfield building schedule that he used to prepare the organizations

2000 Form 990 for the Internal Revenue Service from Mr. Sedaghaty.  Affiant Anderson

failed to explain that Accountant Wilcox was more than a mere tax preparer for Al

Haramain USA.  He provided more expansive services to Al Haramain USA, which

were addressed in an engagement letter between himself and Al Haramain USA.  *See*

Page 30 -     **MEMORANDUM IN SUPPORT OF MOTIONS TO SUPPRESS EVIDENCE SEIZED
              PURSUANT TO SEARCH WARRANT AND PURPORTED CONSENTS, AND TO
              COMPEL GOVERNMENT TO CEASE ALL SEARCHES OF COMPUTERS AND
              ELECTRONIC MEDIA SEIZED ON FEBRUARY 18, 2004**

GOV 466.  Affiant Anderson failed to credit Accountant Wilcox with his past experience as an agent for the IRS.  Affiant Anderson also omitted how Accountant Wilcox received information regarding the Springfield house, whether it was verbal or written. Had the court been aware that Wilcox failed to perform basic duties of an accountant when preparing the tax return, and also that he had had experience in the past as an IRS agent, the court would have been less likely to believe the government's assertion of the questionable nature of the accounting of the purchase of the Springfield property. With this information, the government's assertions do not give rise to probable cause.

● Paragraph 66 - The government asserts that there did not appear to be any business or religious activities at 3800 S. Highway 99 and that Mr. Sedaghaty's son, Jonah, appeared to be living there.  The affiant failed to inform the court of how she was able to confirm that.  If there was surveillance of the property, the court should have been informed of the method and manner of such surveillance.  Had that been discussed, the court would then have known that with the vast surveillance being conducted at the time, the lack of inculpatory information would negate the probable cause asserted by the government.

● Paragraph 70 -71 - In order to explain to the court that evidence of the nature described in the affidavit would be present at 3800 S. Highway 99, the affiant described a meeting between Mr. Sedaghaty and FBI Special Agent Dave Carroll on September 15, 2001.  This meeting included a tour of the upper floor of 3800 S. Highway 99. Special Agent Carroll was shown a room above a garage which contained a computer

and several boxes of pamphlets and other materials.  First, this information was stale and should have been stricken from the affidavit.  Second, the affiant failed to inform the court that Mr. Sedaghaty voluntarily met with Agent Carroll on several occasions including September 15, 2001.  It was during the meeting on the 15th, that Mr. Sedaghaty discussed with Agent Carroll the amount of money that Al Haramain, Riyadh provided to purchase the Springfield property.  This was just a short time before Mr. Sedaghaty signed the tax return that involved the purchase of the Springfield property that is at issue in this case.  Had the court been more fully informed of Mr. Sedaghaty's transparency and cooperation with the FBI, the probable cause to justify a search of a residence would have been negated.

The search warrant affidavit also omitted the following:

● Mr. Sedaghaty, throughout his lifetime, has endeavored to help those in need; in his own community, in various parts of the United States, and internationally.  These include numerous contacts with the United States government, as well as governments of other countries, in an effort to deliver humanitarian aid to refugees in places like Chechnia, Afghanistan, and Israel/Palestine.  Many of these efforts have been documented and known by the government, yet information regarding Mr. Sedaghaty's efforts was kept from the court when it was reviewing the affidavit.  *See, e.g.,* GOV 120; GOV 290; GOV 523; GOV 527-29; GOV 2187-89; GOV 2190.  This information is directly related to and contradictory to what the government asserted in its affidavit.

This information, had it been known by the court, would have negated the finding of probable cause.

• Mr. Sedaghaty requested that FBI Agent Dave Carroll obtain an e-mail account so that he (Sedaghaty) would be able to communicate with Agent Carroll while he was overseas. Agent Carroll, in an e-mail to Mr. Sedaghaty confirmed that he had done so. FPDUS 0024256.

The omissions and misstatements described herein, had they been known by the issuing court, would have prevented the court from finding probable cause. Unfortunately, this information is incomplete because the government has not provided the defense with the information available to it that was collected through the surveillance of Al Haramain and its officers. It is expected that the information collected during that time would include information regarding Mr. Sedaghaty that would have further negated any probable cause asserted in the search warrant affidavit.

Upon review of the affidavit, with the omissions included and the mis-statements corrected, the affidavit would have shown that Al Haramain USA was not the same as Al Haramain, Saudi Arabia, and that the person in charge of the local organization, Mr. Sedaghaty, had, throughout his life, sought out peaceful methods to provide help to those in need. The magistrate judge would have been aware that Mr. Sedaghaty was cooperative with the Federal Bureau of Investigation, particularly after 9/11, and that he abhorred terrorist activities. The affidavit would have provided the magistrate judge with a more thorough recitation of the Chechen crisis and the desire to help the

refugees in that area would not have been portrayed as a questionable desire on the part of Mr. Sedaghaty, Al Haramain USA and Al Haramain Saudi.

The affidavit would also have alerted the magistrate judge to the fact that although an extensive investigation of Al Haramain USA had been going on, at that time, for at least two and a half years, involving multiple agencies of the United States government and lawful and unlawful surveillance, only a very few details surrounding a donation and an out of state real estate purchase had attracted the government's attention.

The magistrate judge would have known that Accountant Wilcox was intimately involved in the bookkeeping of Al Haramain USA and was just as likely to have created the errors alleged in the affidavit as anyone associated with Al Haramain USA.  This information would not have provided probable cause for a search of 3800 S. Highway 99 and any evidence recovered pursuant to the search warrant, or by consent, as discussed below, should be suppressed.

## IV.    THE GOVERNMENT MUST PROVE THAT THE CONSENTS TO SEARCH AND SEIZE WERE VOLUNTARY AND NOT THE PRODUCT OF AN UNLAWFUL WARRANT

### A.    The Government Bears The Burden Of Establishing Consent

The right of a citizen to be free in his own home from unreasonable government intrusion stands at the very core of the Fourth Amendment.  *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (citing *Kyllo v. United States*, 533 U.S. 27, 31 (2001)).  Generally, the Supreme Court disapproves of searches and seizures not authorized by a judge,

holding them to be per se unreasonable under the Fourth Amendment.  This general

rule is subject only to a few specific and well-established exceptions.  *Arizona v. Gant*,

129 S.Ct. 1710, 1716 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967));

*Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (same).

      Some of the evidence obtained by the court was clearly outside the scope of the

search warrant.  To the extent it seeks to justify use of that evidence based on consent,

it bears the burden of establishing that consent was voluntarily given.  The burden to

justify a search without a warrant is on the government.  *Coolidge v. New Hampshire*,

403 U.S. 443, 455 (1971).  If the government seeks to justify a search based on

consent, it bears the burden of proof.  *Bumper v. North Carolina*, 391 U.S. 543, 548

(1968).  *See also United States v. Brown*, 563 F.3d 410, 415 (9th Cir. 2009) ("The

government bears the burden of proving that consent was voluntary.") (citing *United

States v. Patayan Soriano*, 361 F.3d 494, 501 (9th Cir. 2004).

      There is no per se rule regarding voluntariness of consent.  Rather, voluntariness

is determined on a case by case basis by considering the totality of circumstances.

*Schneckloth v. Bustamonte*, 412 U.S. 218, 248-249 (1973).  The government bears the

burden of proving that the consent to search was obtained and that it was freely and

voluntarily given.  *Florida v. Royer*, 460 U.S. 491, 497 (1983); *United States v. Reid*,

226 F.3d 1020, 1025 (9th Cir. 2000) ("The existence of consent to a search is not lightly

to be inferred and the government always bears the burden of proof to establish the

existence of effective consent.") (quoting *United States v. Shaibu*, 920 F.2d 1423, 1426

(9th Cir. 1990).  If an accused merely acquiesces to the demands of law enforcement, the government's burden is not satisfied.  *Bumper*, 391 U.S. at 548-49; *Shaibu*, 920 F.2d at 1426 (mere non-resistence to search not consent); *United States v. Chan-Jimenez,* 125 F.3d 1324, 1328 (9th Cir. 1997) ("A person's obedience to a show of authority is by itself insufficient to establish voluntary consent.").

The existence of coercion negates voluntariness of consent.  For consent to be valid, the facts must establish that there was no duress or coercion either express or implied.  *Tatum v. United States*, 321 F.2d 219, 220 (9th Cir. 1963); *Reid*, 226 F.3d at 1026 (same).  Even implied coercion will overcome a putative showing of consent. *Bumper*, 391 U.S. at 548-549.

**B.    Consent To Search Pursuant To An Unlawful Warrant Is Not Valid**

Any evidence recovered pursuant to consent based on an invalid warrant was executed must be suppressed.  The consent is tainted and invalid under the Fourth Amendment.  *See United States v. Hotal*, 143 F.3d 1223, 1228 (9th Cir. 1998) ("Because we conclude that the initial entry was impermissible and that the evidence seized pursuant to the warrant must be suppressed, *all* of the other evidence seized must also be suppressed.  Consent to search that is given after an illegal entry is tainted and invalid under the Fourth Amendment.")(emphasis in original).  Thus, if the Court determines that the search warrant was invalid pursuant to *Franks*, Jonah Sedaghaty could not have voluntarily consented because he simply acquiesced to a claim of lawful authority.

Page 36 -      **MEMORANDUM IN SUPPORT OF MOTIONS TO SUPPRESS EVIDENCE SEIZED PURSUANT TO SEARCH WARRANT AND PURPORTED CONSENTS, AND TO COMPEL GOVERNMENT TO CEASE ALL SEARCHES OF COMPUTERS AND ELECTRONIC MEDIA SEIZED ON FEBRUARY 18, 2004**

**CONCLUSION**

Based on the foregoing, it is respectfully requested that the Court suppress all

evidence seized from 3800 S. Highway 99, Ashland, Oregon, on February 18, 2004, or

in the alternative, order a hearing.

Respectfully submitted June 19, 2009.


/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Lawrence Matasar
Lawrence Matasar

Page 37 -    MEMORANDUM IN SUPPORT OF MOTIONS TO SUPPRESS EVIDENCE SEIZED
PURSUANT TO SEARCH WARRANT AND PURPORTED CONSENTS, AND TO
COMPEL GOVERNMENT TO CEASE ALL SEARCHES OF COMPUTERS AND
ELECTRONIC MEDIA SEIZED ON FEBRUARY 18, 2004

37