1              IN THE UNITED STATES DISTRICT COURT

FILED '09 JUN 30 17:05 USDC-ORE

2               FOR THE DISTRICT OF OREGON

3    UNITED STATES OF AMERICA,            )
                                          )
4                    Plaintiff,           ) No. 05-60008-1-HO
                                          )
5       v.                                ) April 18, 2005
                                          )
6    AL-HARAMAIN ISLAMIC                  ) Eugene, Oregon
     FOUNDATION, INC., et al.,            )
7                                         )
                     Defendants.          )
8

9                 TRANSCRIPT OF PROCEEDINGS

10        BEFORE THE HONORABLE THOMAS M. COFFIN

11      UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

12                         -:-

13

14

15                APPEARANCES OF COUNSEL

16   FOR THE PLAINTIFF:     CHRISTOPHER L. CARDANI
                            United States Attorney's Office
17                          405 E. 8th Avenue, Suite 2400
                            Eugene, OR  97401
18                          (541) 465-6771
                            chris.cardani@usdoj.gov
19

20   FOR THE DEFENDANT:     MARC D. BLACKMAN
                            Ransom Blackman LLP
21                          1001 SW Fifth Avenue
                            Suite 1400
22                          Portland, OR  97204
                            (503) 228-0487
23                          marc@ransomblackman.com

24   COURT REPORTER:        Deborah Wilhelm, CSR, RPR
                            P.O. Box 1504
25                          Eugene, OR  97440
                            (541) 431-4113

1           (Monday, April 18, 2005; 1:57 p.m.)

2                    P R O C E E D I N G S

3           THE CLERK:  *United States of America versus*

4   *al-Haramain Islamic Foundation*, Case No. 05-60008, time

5   set for arraignment and oral argument on government's

6   motion to continue the arraignment.

7           THE COURT:  Do we want to do this now or take

8   him first?

9           THE CLERK:  I have a change of plea hearing for

10  him.  I was going to take some of the out-of-custody

11  matters.

12          THE COURT:  Oh, okay.  I have reviewed your

13  memo -- all the memos that were filed.

14          Mr. Blackman, what's the prejudice, if any, to

15  your client, the corporation, in postponing the

16  arraignment?

17          MR. BLACKMAN:  Your Honor, the primary

18  prejudice is that the Foundation has been trying to

19  obtain the release of property that it holds in the

20  United States.  That has been blocked by the Office of

21  Foreign Asset Control.  That is based on this

22  investigation.  And until we can resolve these charges,

23  we are highly prejudiced in that regard.

24          And the Foundation has a general purpose, which

25  is completely frustrated by the existence of this

1   indictment, and is unable to perform those services or

2   otherwise function in the United States because of these

3   charges.  And it is being labeled as a law violator

4   without being given an opportunity to clear its name.

5        The whole point of the speedy trial rights

6   under the Sixth Amendment and the Speedy Trial Act is

7   that if the government is going to call you a defendant,

8   that you are entitled promptly to make the government

9   prove its case, give you an opportunity to demonstrate

10  that that case is unfounded, and move on.  It does not

11  allow the government to, at its convenience, just leave

12  you accused without a time in court until it's

13  convenient for the government to proceed against others.

14       THE COURT:  Is it the indictment that is

15  shutting down the Foundation or is it legislation

16  independent of the indictment that was utilized to shut

17  it down?

18       MR. BLACKMAN:  It's -- there is no chicken and

19  the egg here.  But if this indictment is shown to be

20  unfounded, then the basis on which al-Haramain was

21  designated by OFAC, I think, becomes binding on the

22  government.  And I think they would then have to grant

23  the request to have the designation removed.

24       THE COURT:  Okay.  Mr. Cardani, would you mind

25  addressing that?

1          MR. CARDANI:  First of all, Judge, the blocking

2   process by OFAC is wholly separate, although there is

3   some connection, it's a separate process.  Using powers

4   under federal law, OFAC first blocked and then

5   designated the al-Haramain Foundation as a specially

6   designated global terrorist organization.  There is a

7   record on that back in Washington, D.C.

8          There are administrative procedures to

9   challenge that designation.  And, in fact, it's my

10  understanding that al-Haramain has counsel who is in the

11  process of challenging the OFAC designation.  That's

12  being done currently.  There is a separate process.

13  There are administrative and then judicial remedies

14  attached to that, but it's a separate process.

15         And the designation was not based solely on

16  this indictment.  And I can consult with the agents, but

17  the timing is such that I believe the designation

18  preceded the indictment.  Yeah.  I'm getting

19  confirmation from the agents here.  That the designation

20  of al-Haramain as an SDGT, as we say in our moving

21  papers, is separate from and preceded the indictment.

22         So I don't think that -- I think the court is

23  correct that the prejudice concerns in delaying this

24  arraignment until there are the live bodies before this

25  court --

1          THE COURT:  What if that day never comes?

2          MR. CARDANI:  Well, I think that's something

3    that we'll have to address down the road.  I think

4    putting it off, you know -- what I would suggest is we

5    set a date certain and have a status conference down the

6    road, because I can represent to the court that there

7    are active measures being taken to apprehend what we

8    believe to be the fugitives.

9          So what I would ask the court to do is to give

10   us some time to do that before going forward with the

11   arraignment on this case.

12         THE COURT:  How much time do you propose?

13         MR. CARDANI:  I would ask that we put it out

14   for six months, and then have a status conference, and

15   we can report to the court, perhaps in camera, on our

16   efforts, success of our efforts, and what have been

17   done, and what we expect to be done in the future.

18         THE COURT:  Mr. Blackman has a point that the

19   corporation proceeds through represented counsel, and

20   not only allowed to do that, it's the only way they can

21   be represented when charged as a defendant.  So what --

22   if in -- are you proposing that we reset the arraignment

23   for six months, or you said something about a status

24   report?

25         MR. CARDANI:  Yeah, I would ask that we

1  postpone today's arraignment for a period of six months.
2  I do agree with the court.  I do agree with Mr. Blackman
3  that a corporation does have the right to proceed
4  through counsel, but I think there is enough in the
5  papers and the attachments that this court has a flavor
6  for the very unique character of this corporation.  It
7  is a shell corporation.  It has no active presence in
8  the United States.  It's been deemed, for lack of a
9  better term, an outlaw, international, it has no
10  existence.  So it's not like an IBM that has a separate
11  function and also has to deal with, you know, the
12  corporation being -- is the corporation being indicted
13  and sending in an attorney to represent it.

14         THE COURT:  Well, I must confess there is a
15  certain irony here is that if it's a shell corporation
16  without any activity and without, in essence, any
17  assets, then what's the interest of the government in
18  pursuing a criminal case against it?  What's the
19  government's objectives?

20         MR. CARDANI:  Well, ideally, it's to bring the
21  two individual fugitive defendants and the corporation
22  before the court.  Because the allegations are that
23  these individuals conspired with the then existing and
24  then operating corporation.  We -- it's a shell now, but
25  it was not a shell at the time of the charges in the

1    indictment.  So it's a legal entity, properly indicted
2    for its acts back in the year 2000.  It became a shell
3    corporation after that.  And so there may be a practical
4    consideration on going forward on a defunct shell
5    corporation, but the government is ready, willing, able,
6    and desires to go forward on the corporation with its
7    principal operatives, its coconspirators, present before
8    the court.
9             MR. BLACKMAN:  Your Honor, first of all, it's
10   not a shell corporation.  Exhibit A to our memorandum in
11   opposition to the government's effort to evade
12   arraignment here, points out that this corporation was
13   in good standing as of March 28th, 2005.  It owns
14   assets.  Those are the assets that are being blocked by
15   the government including --
16            THE COURT:  The house in Ashland --
17            MR. BLACKMAN:  -- real property in Ashland and
18   in --
19            THE COURT:  Missouri.
20            MR. BLACKMAN:  -- Missouri.
21            THE COURT:  What's the combined worth of that
22   property?
23            MR. BLACKMAN:  I think the equity in those
24   properties is in excess of $400,000.
25            THE COURT:  Okay.

1          MR. BLACKMAN:   And the candor with which
2   Mr. Cardani acknowledges that they're trying to use this
3   delay as some kind of leverage over what he calls
4   fugitive individuals, is really putting the cart before
5   the horse, because as the declarations of counsel for
6   those individuals say in their submissions, and I have
7   the original, Mr. Nelson's with me today, Your Honor,
8   they are fugitives only in the sense that the government
9   has not offered them the opportunity to return and face
10  these charges.

11         It has told them, through counsel, that they
12  must either agree to come back and plead guilty to these
13  charges or face more serious charges.

14         Now, that is not only an abuse of the power of
15  the government, but it is not according these people the
16  opportunity to -- I mean, this grand jury was presented
17  with the evidence the government has, it filed the
18  charges it's filed.   That is the case that's pending.
19  That is the case that this corporation is seeking to
20  defend now.   And that is the case that the individual
21  defendants, through counsel, have made clear to the
22  government they are prepared to face promptly.

23         It's only the government's unwillingness to
24  allow them to do that that is causing the reluctance to
25  voluntarily return to the United States.   And as I

1    understand what Mr. Cardani is saying, the government is

2    seeking to take steps to invoke international law to

3    bring them before this court.  And if it does that, it

4    is my understanding that the government would be bound

5    to proceed only on these charges.  Not to try and jack

6    up the ante once they appear, if they, in fact, insist

7    on their rights under the Fifth and Sixth Amendments to

8    defend this case, make the government prove this case,

9    as opposed to either plead guilty to this case or face

10   other charges.

11          The point is it was the grand jury that decided

12   to indict al-Haramain Islamic Foundation.  It was the

13   government that chose to present criminal charges

14   against the Foundation.  If they thought it was nothing

15   more than a shell corporation, that would have made no

16   sense.  If they thought it was just an alterego of the

17   individuals, that would have made no sense.

18          You can't, as the government, in my opinion,

19   charge someone and then deny them their prompt right to

20   confront those charges, and put the government to its

21   proof, and let them just hang out there as an indicted

22   entity.

23          THE COURT:  All right.

24          MR. CARDANI:  Judge, could I just clarify?  I'm

25   sorry to interrupt.  I would like to clarify the record

1   in one regard on this talk in the affidavits involving

2   the government's statements about indicting someone if

3   they don't plead guilty.  I just want to clarify the

4   record that there have been substantial conversations

5   with lawyers for what I call the fugitives al-Buthe and

6   Sedaghaty, the individual defendants.  And there has

7   been dialogue along the line of "come back to the United

8   States, plead guilty to a limited set of charges, and we

9   will not seek additional charges."

10          And as the court well knows, that kind of

11   dialogue is a regular occurrence in the criminal

12   negotiation world.

13          There is an indictment pending now which has a

14   limited set of charges, I would call them regulatory

15   charges, a tax offense and a failure to file a form with

16   the government.  There are more serious charges out

17   there that this case may implicate.  And there have been

18   representations to the attorneys that amongst the

19   government's alternatives here if something is not

20   worked out is the possibility of seeking a superseding

21   indictment.  That has been said, but there have been no

22   unequivocal statements that there is a superseding

23   indictment out there that the government is in the

24   process of seeking.

25          THE COURT:  I understood Mr. Blackman's

1  comments, at least as far as making -- being a factor in

2  what I decide to do, to be that if you were to succeed

3  in obtaining the extradition of the individual

4  defendants under the international treaties, extradition

5  treaties that we have, you would not be able to, once

6  you got him here, increase the severity of the charges.

7  It would be limited to the offenses that they were

8  extradited on.  And so that's -- you know, I think

9  that's a relevant factor.  I don't know what you intend

10 to do between now and the time -- you want me to set

11 over the arraignment on the corporation in terms of

12 efforts to get the defendants back here, the individual

13 defendants.  But if it's seeking their return by way of

14 the extradition process, I think he's right, that you

15 are limited by what they are charged with now.

16       So I gather what his pitch to you is, is why

17 don't you let them just voluntarily come over here on

18 the charges they have now, and go to trial?

19       What I will do, however, is this:  I will set

20 this over for arraignment of the --

21       MR. BLACKMAN:  al-Haramain.

22       THE COURT:  -- al-Haramain Islamic Foundation

23 Incorporated for four months.  Do we have an arraignment

24 date?

25       THE CLERK:  August 8, 2005, 1:30 p.m. before

 1   Judge Coffin.

 2        MR. BLACKMAN:   And we do reserve our right to

 3   move to dismiss for denial of a speedy trial.  I do not

 4   believe there is any basis under the Speedy Trial Act or

 5   the Sixth Amendment to deny a prompt arraignment as

 6   guaranteed by -- I think it's Rule 5.  It may be rule --

 7   I think it's Rule 5 of the Federal Rules of Criminal

 8   Procedure.  And I think that the Speedy Trial Act

 9   specifically sets deadlines absent excludable delay for

10   the arraignment process.  And I will also say that I

11   believe that there is no basis in what the government

12   has presented to find excludable delay here.

13        This is not a situation where there is a basis

14   on the fact that another defendant has taken action to

15   defer the case that would warrant any finding of

16   excludable delay.  So I do intend at the time of that

17   indictment to move to dismiss with prejudice.

18        THE COURT:   Very well.  You may reserve all

19   those rights in that regard.

20        MR. BLACKMAN:   Thank you.  And I would, at this

21   time, provide the court with the original declaration of

22   Mr. Nelson.

23        THE COURT:   Okay.

24        (The proceedings were concluded at 2:13 p.m.)

25

CERTIFICATE

I, Deborah Wilhelm, Certified Shorthand Reporter
for the State of Oregon, do hereby certify that I was
present at and reported in machine shorthand the oral
proceedings had in the above-entitled matter.  I hereby
certify that the foregoing is a true and correct
transcript, to the best of my skill and ability, dated
this 30th day of June, 2009.

Deborah Wilhelm, RPR
Certified Shorthand Reporter
Certificate No. 00-0363