FILED '09 JUN 30 17:05 USDC-ORE

```
        IN THE UNITED STATES DISTRICT COURT

              FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,    )
                             )
               Plaintiff,    )  No. 05-60008-2-HO
                             )
  v.                         )  July 15, 2008
                             )
PIROUZ SEDAGHATY, et al.,    )  Eugene, Oregon
                             )
               Defendants.   )


              TRANSCRIPT OF PROCEEDINGS

         BEFORE THE HONORABLE MICHAEL R. HOGAN

              UNITED STATES DISTRICT COURT JUDGE


                           -:-
```

Deborah Wilhelm, CSR, RPR
Court Reporter
P.O. Box 1504
Eugene, OR 97440
(541) 431-4113

```
 1                  APPEARANCES OF COUNSEL
 2

 3    FOR THE PLAINTIFF:    CHRISTOPHER L. CARDANI
                            United States Attorney's Office
 4                          405 E. 8th Avenue, Suite 2400
                            Eugene, OR  97401
 5                          (541) 465-6771
                            chris.cardani@usdoj.gov
 6
      (Via telephone)       CHARLES F. GORDER, JR.
 7                          United States Attorney's Office
                            1000 S.W. Third Avenue, Suite 600
 8                          Portland, OR  97204-2902
                            (503) 727-1021
 9

10    FOR THE DEFENDANT:    LAWRENCE H. MATASAR
                            Lawrence Matasar, P.C.
11                          621 S.W. Morrison Street
                            Suite 1025
12                          Portland, OR  97205
                            (503) 222-9830
13                          larry@pdxlaw.com

14                          STEVEN T. WAX
                            Federal Public Defender
15                          101 S.W. Main Street, Suite 1700
                            Portland, OR  97204
16                          (503) 326-2123
                            steve_wax@fd.org
17

18

19

20

21

22

23

24

25
```

```
 1                    (Tuesday, July 15, 2008; 12:36 p.m.)
 2                    P R O C E E D I N G S
 3            THE CLERK:  U.S.A. versus Pirouz Sedaghaty.
 4   This is the time set for Criminal No. 05-60008-2-HO,
 5   United States of America versus Pirouz Sedaghaty, status
 6   conference to discuss issues in motion No. 105.
 7            MR. CARDANI:  Your Honor, may I approach your
 8   clerk?
 9            THE COURT:  I assume this is about getting
10   Mr. Gorder on the telephone?
11            MR. CARDANI:  Yes, I have a phone number.
12            THE COURT:  And all I want to say about that,
13   we can do it as long as we're not going to have
14   discussion of any substantive discussion of classified
15   material, because as I understand, that's not
16   appropriate to use the telephone for that sort of thing.
17   All right?
18            MR. CARDANI:  Yes.
19            THE COURT:  So I'm going to step out while you
20   are making the call.
21            (Brief pause in the proceedings.)
22            THE COURT:  Thank you.  Do we have Mr. Gorder
23   on the telephone?
24            MR. GORDER:  Yes, Your Honor, this is
25   Mr. Gorder.
```

```
 1          THE COURT:  Now, gentlemen, as I understand,
 2  the law concerning classified documents here that -- and
 3  the rule that I intend to impose in this case is that
 4  unless someone has seen a classified document after the
 5  Section 4 filing and the ruling of the court, there --
 6  and there -- there can be no reference to any memory of
 7  the contents of the sealed document, even well-reasoned
 8  speculation as to the contents, anything and all things
 9  are barred from disclosure.  And we have to go through
10  that procedure before -- and the government, I think,
11  has until September to take a position on that, as I
12  recall the schedule.  And so that's -- after that, then,
13  after that hearing, which, if there is one, will be in
14  camera, then we will -- the court will draft a suitable
15  protective order considering handling that material.
16  But there won't be any reference to it before that
17  hearing takes place and the court's ruling on it.
18          MR. MATASAR:  Your Honor, when you say there
19  will not be any reference to it, do you mean in court
20  and in court proceedings, if that's --
21          THE COURT:  There will be no discussion of it
22  in court proceedings.
23          MR. MATASAR:  That's -- that's agreeable to us.
24  All we want to do is to be able to prepare for the court
25  proceedings, to prepare documents, and as a -- in order
```

```
 1   to do so, we need to discuss it amongst ourselves.
 2           THE COURT:  Can't that wait until the
 3   government -- until we hear from the government?  We're
 4   waiting for some bureaucrats in D.C., and they are going
 5   to get to us when they get to us.  I think we're going
 6   to need to wait for them.
 7           MR. MATASAR:  I talked with --
 8           THE COURT:  Mr. Cardani is in the dark as much
 9   as I am.
10           MR. MATASAR:  I understand that and --
11           MR. CARDANI:  I'm not one of those bureaucrats?
12           THE COURT:  No, you're a local bureaucrat.  You
13   are not a big-time Washington, D.C. bureaucrat.
14           MR. MATASAR:  We just can't see what anybody,
15   bureaucrat, high-powered lawyer, whatever, would have to
16   say about whether defendant and defense counsel can talk
17   about part of the case.  There was no indication in the
18   big case about the document of which there were all
19   sorts of secrets involved, there was never any
20   indication that the lawyers couldn't discuss the
21   contents among themselves in the other cases, whatever,
22   from Oliver North to Scooter Libby --
23           THE COURT:  I want to make this as clear as I
24   can:  You may not discuss it at this time, even among
25   yourselves.
```

1     MR. WAX:  We understand your ruling, Your
2  Honor, very clearly.  We urge you to reconsider that
3  ruling.  And what we're concerned about is that you are
4  a step further down the road than we are.  We have not
5  made a filing under CIPA.  We have not invoked any of
6  the CIPA process.  What we want to do at this point is
7  to communicate between counsel and between counsel and
8  client so that we can make a determination of whether or
9  not we should be seeking to invoke CIPA.  We need to be
10 able to communicate so that we can advise our client
11 about the options that he may or may not have and may or
12 may not choose to pursue.
13    And we are unaware of any law, any court
14 decision, or any legal basis under which there can be a
15 prohibition on communication between attorney and
16 client.
17    When we initially contacted the court's
18 security officer, it was in order to do what we, as
19 officers of the court, as citizens of this country, and
20 I, with security clearance, with my understanding of the
21 obligations that that might place on me, as
22 distinguished from Mr. Matasar or Mr. Seda, to do in
23 order to have the communication within the defense camp
24 conducted in a way that would be consistent with
25 security obligations.  That was the very limited scope

1  of our contact.
2         And we, as I said, do not see any basis under
3  which we can be prohibited from talking to each other.
4  It may well be that after a filing on September 5, we
5  choose to approach the court with respect to CIPA, and
6  the court will then have to make a determination based
7  on whatever the government files with it, on grounds of
8  relevance or national security, state secret, and a host
9  of other matters.  But at this point we're not there.
10 Which is why we've filed the request to modify the order
11 that the court entered in the very limited way in
12 which -- in which we sought in that request.
13         THE COURT:  I appreciate the straightforward
14 nature of the request you've made.  And I think that's
15 to be commended.  Just give me a moment.
16         (Discussion held off the record.)
17         THE COURT:  Counsel, I wanted to confer with my
18 law clerk over our understanding of the law and also
19 with the court security officer, not about that, but
20 about the availability of facilities.  And I do think --
21 well, Mr. Wax made it clear he understood my ruling.
22 That is my ruling, so I won't have to clear that up
23 anymore.
24         I think that you can talk about hypotheticals
25 with regard to process, but not about any specific

1  document or information.  There can be no reference to
2  content of anything at this point.
3           See, I think -- maybe it was Mr. Matasar that
4  was saying that -- well, you both talked about the order
5  of things, but the first thing that is going to happen
6  in this regard is I'm going to get the filing from the
7  government.  I realize that the discovery in this case
8  is going to proceed like a snail crawling through
9  quicksand.  It's going to take some time.  But that's --
10 there can be no discussion of any document that anyone
11 may have seen with the defendant.  And I don't even have
12 a security clearance for Mr. Matasar yet.  When and if
13 we're to that point, I've asked the court security
14 officer is a place -- if I rule that there's a document
15 available for discussion, that's down the road.  And if
16 so, we can -- there are SCIFs available in Washington,
17 D.C. that I can order to be used for that purpose.  But
18 it will be in a very controlled setting even if we get
19 to that point.  We're just not there yet.  We're ahead
20 of the game.  Well, it's not a game, but we're ahead of
21 the process.
22          MR. MATASAR:  We understand.
23          THE COURT:  Now, is there anything more on
24 that?
25          MR. WAX:  As the court thinks about this --

1  MR. MATASAR: Excuse me, Your Honor may not be
2  aware, Mr. Gorder indicated, while you were in chambers,
3  that he was having trouble hearing us. So we are,
4  therefore, speaking directly into the microphone rather
5  than standing up.
6  THE COURT: That's fine.
7  MR. WAX: Thank you.
8  THE COURT: That's a good idea. We don't want
9  Mr. Gorder to be left out.
10 MR. GORDER: Thank you, Your Honor.
11 MR. WAX: As the court thinks about this
12 further --
13 THE COURT: He's a mid-level bureaucrat.
14 MR. WAX: -- your reference to the law and not
15 being able to refer to memory in pleadings, raises a
16 concern for me about the court's view of the opinion
17 from the Ninth Circuit in the -- see if we can call it
18 the al-Haramain document case. I don't recall the --
19 THE COURT: And that's the opinion I'm
20 referring to. There is no question about it.
21 MR. WAX: Okay. And here is my concern or
22 several concerns about that: First, that was a civil
23 case.
24 THE COURT: Yes.
25 MR. WAX: And the issues in the civil case are

1  materially distinct from what we're dealing with in a
2  criminal case.
3          Second, the court's discussion of any potential
4  use of the document that was at issue in that case for
5  civil plaintiff purposes is also materially distinct
6  from any potential use of a document in a criminal case
7  by a defendant.
8          The next point that I just want to put out
9  there for the court's consideration and as you think
10 about this is that in this case we're dealing with, as
11 we defense counsel perceive it, two very distinct types
12 of classified material.  One is the material that we
13 have requested from the government in a discovery
14 process, which will be the subject of their September
15 filing.  And with respect to that material, any analysis
16 that the court would do would, in all probability, be
17 under CIPA.  The government has invoked CIPA with
18 respect to that material.  What is being addressed in
19 the motion that the court has ruled upon and that will
20 then be coming up in the future as well, is distinct.
21 It is material that we are not seeking from the
22 government.  And at this stage, it's not even seeking
23 access to material that was placed in the SCIF by the
24 defense.
25         At this point we're talking not about reading

anything or seeing anything.  And I think that the best analogies to what we're dealing with here are the cases that are discussed and the situations that are discussed in a number of articles that have been written by people who used to work for DOJ, and are now -- one in private practice, one actually is still working in DOJ, the difference between insider and outsider information, if you will, what we're talking about and what I think the court needs to keep separate is the insider situation. That's our focus here.  This is a situation that would be analogous to prosecution of someone like Oliver North.  A person who has had access to classified material and wants to discuss that material with his lawyer.  Wen Ho Lee, prosecution of Wen Ho Lee, a person who had access to material independent of anything that he might seek from the government, and if he wants to use what he's had access to, he needs to invoke CIPA.

THE COURT:  And you understand that I'm including that in the prohibition here?

MR. WAX:  I do understand.  But what I am urging the court to do in terms of its analysis of these classified issues is to distinguish between the outsider material, what the government -- what we're seeking from the government, and the insider material, and then to further distinguish between any potential use of the

```
 1  insider material as contrasted with discussion of it,
 2  and that's where, you know, in terms of what --
 3           THE COURT:  I'm willing to include that in the
 4  analysis, but we're going to stick with my timetable for
 5  it.
 6           MR. MATASAR:  Let me say one more thing, Your
 7  Honor.  And, again, I understand your ruling, and I just
 8  am saying this because I think -- I just want to make
 9  clear our -- my view of the document case in the Ninth
10  Circuit.  What the holding was in that case was
11  essentially that the lawyers could not use their memory
12  of the document to establish standing to bring a civil
13  lawsuit.  That was really what they were told they could
14  not do.  However, we're not at that point.
15           We are simply in an earlier point.  And, again,
16  there was no discussion in that case, in the trial court
17  or anywhere else, that the lawyers couldn't talk --
18  couldn't use their memory of the document to determine
19  whether to bring the lawsuit, to determine how to file
20  the papers, to determine all their legal strategy.  So
21  we're at that early stage.  We're not saying we want to
22  be able to use our memories of the document in court
23  papers today or next week to have you do something.  We
24  just want to use what we know to figure out what legal
25  strategy we are going to use in the case.
```

```
 1            THE COURT:  Yeah.  You are going to have time
 2  to prepare your case.  And, you know, this -- if I
 3  thought that the defendant's rights were being
 4  compromised by this schedule to -- in weighing that
 5  against any national security interest, I would
 6  certainly include that in the discussion.
 7            MR. MATASAR:  Sure.
 8            THE COURT:  I don't see that right now,
 9  frankly.  We're here in July.  On September 4th, we're
10  going to have this filing.  We're going to proceed with
11  due haste, except haste is the wrong term to use.
12            I was informed when the case came in, it's --
13  this wasn't legal advice again, but our wonderful court
14  security officer said you'll be sick of this case before
15  it's over and it will take some time.
16            MR. MATASAR:  I read an article that said a
17  case involving these sorts of issues takes at least ten
18  times the length and ten times the amount of work, even
19  more importantly, for the lawyers than any other case.
20            MR. WAX:  Judge, could we trouble you for an
21  entirely different issue for a moment while we're here?
22            THE COURT:  Yes.
23            MR. WAX:  And that has to do with the release
24  conditions.
25            THE COURT:  And I will tell you that
```

1   Mr. McFarland sent me e-mail. I've been so busy, I was
2   here late yesterday on a different settlement, in court
3   all morning, I haven't read it yet. As soon as I read
4   it, I'm going to respond back to him. I hoped I'd get a
5   few minutes in between this morning, I've got it here,
6   but I frankly haven't. If you want to talk about it,
7   you can, but I'm going to take his advice more or less.
8   He refers to Mr. Cardani. I see his name underlined
9   here. But I don't even know what position he's taking.
10  I think, probably, Mr. Cardani is deferring to me, which
11  is what he's pretty much done as we've gone along in
12  this case, but I'll see when I look at that. I doubt
13  there are many surprises for me.
14          MR. WAX: Thank you, Judge.
15          THE COURT: And with regard to release
16  conditions, Mr. Sedaghaty, what you can do is earn more
17  relaxed conditions. A misstep will set the process back
18  a long, long way, not just a half step, but a whole long
19  way, all right? I just want you to know that.
20          MR. WAX: Thank you.
21          THE COURT: Thank you very much.
22          MR. CARDANI: Judge, if I could just add one
23  thing.
24          THE COURT: Yes.
25          MR. CARDANI: The classified discovery is going

1  very slowly and we'll get through that process.  But I
2  just do want to point out that there is a whole bunch of
3  material that is directly related to the case that is
4  nonclassified and that is going very smoothly.  So there
5  has been a lot of interaction.  We're making progress.
6  Things are happening.
7          THE COURT:  I would expect that.  There are
8  great lawyers here.  And I would expect that to happen.
9  Thank you.
10         (The proceedings were concluded at 1:07 p.m.)

# CERTIFICATE

I, Deborah Wilhelm, Certified Shorthand Reporter for the State of Oregon, do hereby certify that I was present at and reported in machine shorthand the oral proceedings had in the above-entitled matter. I hereby certify that the foregoing is a true and correct transcript, to the best of my skill and ability, dated this 30th day of June, 2009.

[Seal: CERTIFIED SHORTHAND REPORTER, Oregon, CSR 00-0363, DEBORAH WILHELM]

*Deborah Wilhelm* (signature)

Deborah Wilhelm, RPR
Certified Shorthand Reporter
Certificate No. 00-0363