```
            IN THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,      )
                               )
                Plaintiff,     ) No. 05-60008-2-HO
                               )
     v.                        ) September 9, 2008
                               )
PIROUZ SEDAGHATY, et al.,      ) Eugene, Oregon
                               )
                Defendants.    )


          TRANSCRIPT OF TELEPHONE PROCEEDINGS

         BEFORE THE HONORABLE MICHAEL R. HOGAN

            UNITED STATES DISTRICT COURT JUDGE


                        -:-
```

Deborah Wilhelm, CSR, RPR
Court Reporter
P.O. Box 1504
Eugene, OR  97440
(541) 431-4113

```
 1              APPEARANCES OF COUNSEL VIA TELEPHONE
 2
 3    FOR THE PLAINTIFF:    CHRISTOPHER L. CARDANI
                            United States Attorney's Office
 4                          405 E. 8th Avenue, Suite 2400
                            Eugene, OR  97401
 5                          (541) 465-6771
                            chris.cardani@usdoj.gov
 6
                            CHARLES F. GORDER, JR.
 7                          United States Attorney's Office
                            1000 S.W. Third Avenue, Suite 600
 8                          Portland, OR  97204-2902
                            (503) 727-1021
 9
10    FOR THE DEFENDANT:    LAWRENCE H. MATASAR
                            Lawrence Matasar, P.C.
11                          621 S.W. Morrison Street
                            Suite 1025
12                          Portland, OR  97205
                            (503) 222-9830
13                          larry@pdxlaw.com

14                          STEVEN T. WAX
                            Federal Public Defender
15                          101 S.W. Main Street, Suite 1700
                            Portland, OR  97204
16                          (503) 326-2123
                            steve_wax@fd.org
17
18
19
20
21
22
23
24
25
```

```
 1                    (Tuesday, September 9, 2008; 11:34 a.m.)
 2              (The following proceedings were had in chambers.)
 3                       (The defendant is not present.)
 4                           P R O C E E D I N G S
 5              THE CLERK:  This is the time set for Criminal
 6    No. 05-60008-2-HO, U.S.A. versus Pirouz Sedaghaty,
 7    telephone conference regarding the trial setting.
 8              Counsel, if you would please remember to state
 9    your name each time you speak.
10              THE COURT:  Yes.  This is Judge Hogan.  That
11    helps our court reporter, as you know.
12              There are a couple of matters I want to
13    discuss.  One is Mr. Wax and Mr. Matasar's motion to
14    establish a filing procedure.  And I have some
15    information about that.
16              In addition, I want to talk about the trial
17    date, which we have one coming up that we're not going
18    to make, of course, but we need to keep something active
19    on the calendar.
20              And then I'll just tell you that I have been
21    informed that there's some documents or materials that
22    are available for my review in Washington, D.C.  I
23    haven't set my trip yet.  But I will be going back
24    sometime in the fairly near future in that regard.
25              With regard to the trial date, what suggestions
```

1  do you folks have? It seems like everything takes a
2  long time in this case.
3  　　　　　MR. MATASAR: Your Honor, this is Larry
4  Matasar. Let me first ask if you feel that we need to
5  have a date on the calendar or can we just have perhaps
6  another status conference after today? I think we'll
7  know a lot more in maybe 60 days, so I guess that would
8  be my suggestion.
9  　　　　　THE COURT: I'm willing to do that, Larry, but
10 what I don't want to do is somehow inadvertently involve
11 the Speedy Trial Act here. And so I would like to keep
12 some sort of a running order going.
13 　　　　　MR. MATASAR: Okay.
14 　　　　　THE COURT: And I don't have in front of me
15 what the current speedy trial date is. I assume someone
16 has calculated it. But have you folks calculated that?
17 Here is something.
18 　　　　　THE CLERK: October 31st.
19 　　　　　THE COURT: Right now it's October 31st. So
20 what I will do, I'll set the trial for a date in
21 February and extend the speedy trial date to that time,
22 but also have a status report in 60 days from now, so
23 around the first of the year so we can see where we are.
24 　　　　　Then with regard to the request to establish a
25 filing procedure, what I understand may be appropriate

```
 1   is for our court security officer to provide a
 2   sacrificial computer that would have the intended
 3   information placed on it so that it can be reviewed.
 4   And I will tell you that our court security officer is
 5   otherwise engaged for the next three weeks.  So it can't
 6   happen in the 10 days requested in the motion.
 7            Mr. Cardani, do you wish to be heard on that?
 8            MR. CARDANI:  Well, I also want to just talk
 9   about the speedy trial exclusion.
10            THE COURT:  Yes.
11            MR. CARDANI:  Shall I do that now or do that
12   later?
13            THE COURT:  Do that now, if there is a question
14   about it.
15            MR. CARDANI:  Okay.  Judge, our concern is we
16   realize that a trial date of October or even February is
17   unrealistic, but we do want to make sure that the I's
18   are dotted and T's are crossed.  And so that the defense
19   agrees that this is an appropriate exclusion, and that
20   the record reflects that there are grounds such as the
21   fact that we just provided thousands of pages of
22   discovery and motions are being prepared and things like
23   that.  So as long as the record reflects the -- their
24   acquiescence to that and that there are proper grounds,
25   then we have no objection to continue this trial for the
```

1  time necessary.
2          THE COURT:  The ground is certainly complexity.
3  But let me ask, Mr. Wax, Mr. Matasar, do you agree to
4  this continuance?
5          MR. MATASAR:  Yes, we do, Your Honor.  I am
6  speaking for Mr. Wax.
7          MR. WAX:  We're smiling at our end.
8          MR. MATASAR:  And I think our client would sign
9  or we can provide an affidavit to the court, if
10 Mr. Cardani wants that.
11         THE COURT:  Yeah, I'd like you to do that.
12         MR. MATASAR:  Sure.
13         MR. CARDANI:  Now, as far as this other motion,
14 I think Mr. Gorder is going to speak for the government,
15 Judge, on this new motion.
16         MR. GORDER:  Yes, Your Honor.  This is Charles
17 Gorder for the government.  I spoke briefly with our
18 security court officer, and perhaps you have, too.  She
19 was at the airport.
20         THE COURT:  I spoke with her in the royal
21 sense.  We did.  My office did.
22         MR. GORDER:  Right.  And she did tell me that,
23 you know, she's otherwise occupied for the next few
24 weeks, although she said -- she wanted to make it clear
25 for the court that if something had to be done, she

```
 1   would, you know, get a substitute to take care of it in
 2   the meantime.
 3           THE COURT:  Right.
 4           MR. GORDER:  But I think what she probably
 5   needs is some information from Mr. Wax and Mr. Matasar
 6   as to who it is that's providing this declaration that
 7   they are talking about, where the person is located,
 8   because that's where she'll need to arrange to, I think,
 9   bring this laptop for the person to do his declaration
10   on, I think is what she's contemplating.
11           MR. WAX:  We were looking at this slightly
12   differently.  We do not believe that anything that we
13   are going to be filing, which will ultimately be a
14   pleading and a declaration, contain anything classified.
15           The only reason that we are raising the issue
16   is that we have been used to the filing procedure in the
17   Guantanamo cases under which we file all pleadings that
18   go to the district court through the court security
19   officer, and the reality is that the overwhelming
20   majority of them -- I think when we filed them from our
21   offices, we send them to the court security officer in
22   Washington.  They do a quick look at it.  They give it
23   to a DOJ lawyer.  And almost always they are just
24   automatically cleared for filing in the public record.
25           When we have something in the Guantanamo cases
```

```
 1  that we believe or know have classified information in
 2  it, we file that from a secure facility on a secure
 3  computer.
 4          So we were contemplating -- because we're
 5  confident that there is nothing -- filing it from the
 6  office, but sending it to -- giving it to the CSO rather
 7  than filing it on the court records so that someone from
 8  the government can look and double check.
 9          THE COURT:  Before I get a response, I'm going
10  to put you folks on hold for a second.
11          (Discussion held off the record.)
12          THE COURT:  All right.  Does the government
13  wish to be heard on that suggestion?
14          MR. GORDER:  Your Honor, I guess what I would
15  recommend here is -- Mr. Wax may very well be right that
16  this will be a very quick process.  I just think he
17  needs to have a direct discussion with the court
18  security officer so she is fully apprised of what he's
19  intending and can work out whatever the logistics are.
20          I know she's out until September 22nd on the
21  road.  And I just suggest that we defer this until she
22  has an opportunity to talk with Mr. Wax --
23          THE COURT:  Actually, what I'm going to do --
24          MR. GORDER:  -- and makes whatever
25  recommendation she has.
```

THE COURT: On this particular round, at least, Mr. Wax, I'm going to take the more conservative approach. I am going to require that any such document be filed on a laptop that the court security officer provides, and so that it can be vetted by Justice, especially in this case where there is at least some allegations that a document was inadvertently released. I want to be careful with that.

And so what I would ask you to do is contact Erin and set up this -- whenever she can do it, and she's been awfully helpful, to take the computer to the person so that that can be prepared, and then it can be vetted before we get involved in some court proceeding over it.

Anything further on that?

MR. WAX: Yes, please. Oh, boy. We have been working on the pleading that we intend to file. We've been working on it from our office as well as the person with whom we're dealing, working on it through his office. So we did that because we were, you know, of the view that we weren't dealing with anything classified. So to take the laptop at this point to the expert is, perhaps to a certain extent, too late in terms of, you know, preventing anything from being on a computer in this office. So I'm not sure if that would

```
 1   cause you to, you know, want to rethink how we should
 2   proceed, and whether or not she should provide a laptop,
 3   you know, to us.
 4           THE COURT:  Yeah.  It does not.  We've been
 5   awfully careful with these procedures here.  And I --
 6   that's the kind of expectation I'm going to have for
 7   this case also.  And if -- at least this first time
 8   around, this is -- I know that you've been involved in
 9   the Guantanamo Bay cases to some extent.  Some of these
10   issues are first time around for me and I don't want to
11   inadvertently step over a line here.  So I'm going to --
12   I understand what you are saying.  And I just want --
13   I'm trying to set a standard of care here, Mr. Wax.  And
14   that's what I expect to happen here.
15           Now, let me ask this, that I didn't
16   specifically ask it earlier, is the defendant's
17   appearance here waived today or do we need to do this
18   again?
19           MR. WAX:  Yes.
20           THE COURT:  Okay.  Thank you.
21           MR. WAX:  I've got one more question, please,
22   about the security filing issue.
23           THE COURT:  Surely.
24           MR. WAX:  Our goal was to get a -- this
25   declaration to you before you began your review of
```

1   whatever it is that the government has filed, and to
2   provide whatever guidance we can provide in terms of
3   what you are looking at, what you are looking for, or
4   perhaps what we believe you should be looking at and
5   looking for.  So I'm a little bit concerned about the
6   three-week delay if that is going to mean that you would
7   be undertaking whatever review you are going to
8   undertake before we can get to you what we hope will
9   guide that process.
10          THE COURT:  No, we'll go ahead and -- I'll
11  wait.
12          MR. WAX:  Okay.
13          THE COURT:  I'll wait.
14          MR. WAX:  Thank you.
15          THE COURT:  Anything further then, counsel?
16          MR. WAX:  Well, in discussing with Erin any
17  potential, you know, future classified filings, or, you
18  know, documents or issues, we hope that something can be
19  set up so that there can be a facility here in Oregon to
20  deal with this stuff so that we don't all have to be
21  running back and forth across the country.
22          THE COURT:  Yeah, I agree.  But on the other
23  hand, there are certain facilities available and certain
24  levels of documents.  And I don't -- I need to know what
25  we're dealing with first.  I will -- I do want to be

```
 1  careful with this.  And Erin is very strong on this
 2  also.  She's not making legal rulings here.  That's up
 3  to me.
 4          I will sometimes consult with Erin and ask what
 5  have other patterns been, what have other practices been
 6  in trying to decide what to do, but if there is a
 7  request, you don't have to file formal pleadings, if the
 8  two sides want to talk to me about a process, then let's
 9  just go ahead and get on the phone, and hash it out, and
10  not waste the time of processing pleadings and that sort
11  of thing.  All right?
12          MR. WAX:  Thank you.
13          THE COURT:  Anything further?  Thank you very
14  much.  Have a great afternoon, gentlemen.
15          (The proceedings were concluded at 11:49 a.m.)
16
17
18
19
20
21
22
23
24
25
```

CERTIFICATE

I, Deborah Wilhelm, Certified Shorthand Reporter for the State of Oregon, do hereby certify that I was present at and reported in machine shorthand the oral proceedings had in the above-entitled matter. I hereby certify that the foregoing is a true and correct transcript, to the best of my skill and ability, dated this 30th day of June, 2009.

Deborah Wilhelm, RPR
Certified Shorthand Reporter
Certificate No. 00-0363