# **<u>EXHIBIT 1</u>**

Anderson Statement

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

In re:  Document 183
       United States v. Pirouz Sedaghaty

I, Colleen Anderson, state that:

1.      I am a Special Agent (S/A) with the Internal Revenue Service - Criminal
Investigation (IRS-CI), assigned to the Medford, Oregon Post-of-Duty.  As a special
agent, I investigate possible violations of the Internal Revenue Code (Title 26 United
States Code), the Money Laundering Control Act (Title 18 United States Code), and the
Bank Secrecy Act (Title 31 United States Code).

2.      I have been a special agent with IRS-CI since December 1995 and have
conducted and assisted in numerous criminal investigations involving violations of
federal tax laws, money laundering laws, and other related offenses where I have
gained experience in locating, tracing, and corroborating financial information pertaining
to the receipt and disposition of funds.

3.      I make this statement, in part, on personal knowledge derived from my
participation in a joint investigation of Pirouz Sedaghaty and, in part upon information
received from other members of the joint investigation, including the Federal Bureau of
Investigation (FBI), and the U.S. Immigration and Customs Enforcement (ICE).

BACKGROUND

4.     On June 19, 2009, attorneys for defendant Pirouz Sedaghaty filed a
"Memorandum in Support of Motions to Suppress Evidence Seized Pursuant to Search
Warrant and Purported Consents, and to Compel Government to Cease All Searches
of Computers and Electronic Media Seized on February 18, 2004".  In the motion, the
defendant, by and through his attorneys, Lawrence Matasar and Federal Public
Defender Steven T. Wax, moves the court to suppress all evidence recovered pursuant
to the execution of the search warrant for 3800 S. Highway 99, Ashland, Oregon on or
about February 18, 2004 and any evidence derived or discovered as the fruits of those
searches and seizures.

5.     I am aware of the allegations set forth by the defendant in the motion and I have
been asked to address the following issues:

    (a) Knowledge of alleged prior illegal surveillance.
    (b) The manner and means in which the search warrant was executed.
    (c) The manner in which the computer evidence was searched.

TERRORIST SURVEILLANCE PROGRAM

6.     First, the defense argues that the search warrant was sought as a result of
alleged prior illegal surveillance.  The defense goes further by asserting that if there
was interagency coordination, then there is a strong likelihood that the criminal
investigation was tainted by the alleged unlawful surveillance being conducted by the
other branches of the United States Government.  The defense also claims that a
document that they request access to provides compelling evidence of government
illegality that would taint the application for the search warrant.

7.     I am aware of the defendant's allegations, however I had no knowledge about this alleged program of purportedly illegal surveillance when I wrote the affidavit and submitted it to Magistrate Judge Cooney.  In fact, other than what has been reported in the media and alleged by the defense, as of this day I have no personal knowledge of this alleged program.  To the best of my knowledge, I have not been made privy to any information from this program and all of the information used in my search warrant affidavit was independent of any alleged illegal surveillance program.

8.     In addition, while some consultation occurred between me and OFAC prior to the execution of the warrant, this was done primarily because OFAC was planning a potential terrorist designation of Al-Haramain USA and wanted to know when we were serving the search warrant.  OFAC provided no information which I used in my affidavit. I did inform OFAC of the date the search warrant would be executed and the nature of the violations appearing in the search warrant affidavit.  OFAC then notified me that it planned to file its blocking notice shortly after the execution of the warrant, which it did.

9.     As for the classified document referred to by the defense in footnote three (3) of their motion to suppress, I have never seen this document and to the best of my knowledge no information derived from this document was used in my affidavit for search warrant.

SEARCH WARRANT

10.     Second, the defense argues that the search and seizure of materials on the computers exceeded the scope of the warrant.  The defense claims "the government rifled through a tremendous amount of information from the computers and computer hard drives that is well beyond the scope of the search warrant."  The defense argues that this information, to include various personal, private, and attorney-client e-mails, photographs, news articles, web pages, and internal organization documents are unrelated to financial matters.

3

**Preparation for search warrant:**

11.     As the affiant of the search warrant, I was involved in the extensive preparations that were conducted prior to the execution of the search warrant. The preparations were conducted to ensure the search warrant was executed consistent with IRS guidelines and to ensure the items seized during the warrant fell within the scope of the warrant. The preparations included working with AUSA Christopher Cardani to create a comprehensive search warrant protocol, reviewing the search warrant protocol with the agents/officers who attended the pre-search warrant briefing, and ensuring that the agents/officers attending the search warrant were familiar with the case by having them read the search warrant affidavit and items to be seized during the pre-search warrant briefing.

12.     The search warrant protocol we followed addressed several issues pertaining to the execution of the search warrant and the seizure of evidence. These issues were discussed with the agents/officers who attended the pre-search warrant briefing. The following issues were addressed in the search warrant protocol which had been provided to me previously by AUSA Cardani:

> (a) The affidavit is part of the warrant and will provide direction as to what may be seized. All participating agencies should read "Attachment B," listing the items to be seized and ideally, it is better practice to have agents read the affidavit as well.

> (b) When agents first arrive, a copy of all search warrant documentation, including the affidavit used to obtain the warrant, and the list of items to be seized, should be provided to the occupant. If an attorney calls, or shows up during the warrant, they should be advised to call AUSA Cardani. So long as they do not interfere, the attorney should be permitted on-site to observe. After the execution, a receipt of evidence should be provided to the occupant or left on site.

(c) Our authority to search only covers the residence. No outbuildings or trailers may be searched unless there is consent provided by the occupant. If consent is given, AUSA Cardani should first be consulted. AUSA Cardani will be available during the search on a cell phone.

(d) Colleen Anderson will serve as a seizure screener. Agents should be told that if there are questions as to whether an item falls within the scope of the warrant, they should ask her. If SA Anderson has any questions about whether an item falls within the scope of the warrant, or if items documenting other criminal acts are discovered during the search, AUSA Cardani should be consulted.

(e) If any evidence discovered which is relevant to the warrant, but reflects conversations/communications potentially covered by the attorney/client privilege, AUSA Cardani should be consulted. These items should not be reviewed in detail and will likely be put in a separate envelope to be later reviewed by an AUSA not associated with this case.

**Execution of search warrant:**

13.    As the IRS-CI case agent for the investigation and the affiant to the search warrant, I was also present during the execution of the search warrant. I had with me copies of the warrant, items to be seized, and several copies of my affidavit. When we arrived, the defendant's son, Jonah Sedaghaty and his girlfriend were the only persons present. It appeared that Jonah had been living on the premises for some time. The defendant, Sedaghaty, was not present at the residence. Indeed, it is my belief he was not in the United States from February of 2003 to August of 2007. Once on the premises, I advised Jonah that he was not under arrest and that the agents were executing a federal search warrant at the location. I read the warrant and attachments to Jonah and explained the warrant pertained to tax and CMIR violations. Jonah was also provided a copy of the affidavit for probable cause used to obtain the warrant.

14.    Jonah Sedaghaty was then allowed to enter the residence and sit in the former prayer room.  After asking a few questions pertaining to the violations listed in the warrant, Jonah asked to call his attorney, David Berger.  Jonah said that Attorney Berger was the family attorney and also an attorney for Al-Haramain USA.  Attorney Berger soon came to the residence and joined his client where Jonah gave Attorney Berger the copy of the warrant and affidavit for review.

15.    I was advised by AUSA Cardani that the warrant only allowed us to search the building at 3800 Highway 99 in Ashland.  During the execution of the warrant, we discovered two green storage containers on the property.  I asked Jonah Sedaghaty and Attorney Berger for consent to search these storage containers.  They agreed and Jonah signed the written consent form and then left the location, although Attorney Berger stayed behind.  Exhibit 4 to Defendant's memorandum is a copy of this consent form.

16.    Attorney Berger then informed me that defendant Sedaghaty had asked Aquil Al-Aquil and Mansour Al-Kadi to resign as officers of AHIF, Inc. in early 2003.  In addition, Attorney Berger said that Jonah Sedaghaty was added as a temporary board member of AHIF, Inc. as of six weeks ago in order to have the required three (3) board members.  In the days following the warrant, Attorney Berger provided copies of the resignations of Al-Aquil and Al-Kadi.  Attorney Berger also provided copies of Jonah Sedaghaty's inclusion and subsequent resignation a few days after the execution of the warrant from Al-Haramain's board of directors.  I have attached a copy of these documents to this declaration as exhibit A.

17.    In the residence and the green storage containers we found items that we felt were pertinent to the investigation. In addition, agents presented me with evidence they thought might be seizable. This included video tapes depicting mujahideen battlefield scenes from the house, boxes of correspondence with prison inmates, miscellaneous correspondence, photographs, noble Korans, samples of literature, and other types of documents. I was unsure whether these items fell within the scope of the warrant. I consulted with AUSA Cardani by phone. Based on our discussion and my reliance on the affidavit, I denied the agent's request to seize some of the material. Later, I asked Jonah Sedaghaty in the presence of his attorney to consider giving us permission to take these items. At no time during my discussions with Jonah Sedaghaty and Attorney Berger did I or any other agent have their guns drawn. Jonah Sedaghaty agreed to give us consent and signed a second consent form allowing us to legally take these items, see exhibit 6 to Defendant's memorandum. A written inventory of all of the items we took that day by both seizure and consent were listed on inventory sheets.

18.    Prior to exiting the location, Mr. Berger was provided a second copy of the warrant and affidavit, along with two copies of the inventory list of items seized pursuant to the warrant. In addition, Mr. Berger was provided two copies of the two inventory lists of items taken pursuant to the consent form signed by Jonah Sedaghaty. Mr. Berger reviewed the boxes of evidence taken pursuant to the consent form, along with the inventory lists before the evidence was taken from the residence.

19.    During the execution of the search warrant, we seized nine computers and several computer related items. An IRS computer specialist later imaged (copied) all nine of these computers. I later returned these computers to Attorney Berger within sixty (60) days after the warrant was executed. We retained the computer related items for analysis.

**Review of seized materials:**

20.    IRS-CI computer specialists began examining the imaged computers shortly after the seizure of the computers.  The recovery of some of the data from the imaged computers proved to be time consuming.  IRS-CI computer specialists determined that data files from the Al-Haramain computers had been deleted through user activity, reinstallation of the operating system, or reformatting the hard drive.

21.    After the computer specialists were able to access the data in a retrievable format, we established a list of search terms that were relevant to my investigation.  I primarily used these terms and variations of these terms in searching the computers. While reviewing the computers I was mindful of the affidavit and focused my search to those items I believed to be reasonably related to the affidavit and the elements of the crime specified in the affidavit.   For example, there were numerous search terms relevant to the affidavit used to search the computer data, including but not limited to the following words:

> (a) Al Haramain
> (b) Pete Seda aka Pirouz Sedaghaty aka Abu Yunus aka AU
> (c) Soliman Al-buthe aka Brother Soliman
> (d) E-mail addresses associated with Mr. Sedaghaty
>     and Mr. Al-Buthe
> (e) Chechnya; Chechnia; Chechen; Sheeshaan; and Mujahideen
> (f) Refugees

22.    The computer related items such as CDs and floppy disks were primarily reviewed by me and an IRS-CI computer specialist.  During the review of those items, a floppy disk was found that appeared to have child pornography pictures on it.  AUSA Cardani was notified of the possible contents of the floppy disk.  A search warrant was then applied for by FBI Special Agent Timothy Suttles and subsequently granted.

23.    As the affiant of the search warrant, I am familiar with both the affidavit of probable cause and the items to be seized, Attachment B.  The evidence sought through the execution of the search warrant, or the scope of the warrant, is described in detail in the items to be seized.  The items sought, in part, include evidence concerning the subscription to a false Form 990 tax return, in violation of Title 26, United States Code, Section 7206(1), as described in the attached affidavit, for the year 2000, limited to the following:

> Records and communications, including electronic records and communications, involving the individuals or entities above, pertaining to the preparation of an IRS Form 990 for the year 2000.

24.    The affidavit of probable cause contained numerous pieces of evidence that showed the potential reason or motive the defendant had for filing the false 2000 Form 990 on behalf of Al Haramain Islamic Foundation.  This evidence was provided in the affidavit of probable cause to show that there was probable cause to believe the defendant "willfully" filed the false 2000 Form 990.  As defined in Title 26, Section 7206(1), willfulness is an element of the violation of filing a false tax return.

25.    My review of computer records within the general time period of the specified $150,000 transaction and subsequent filing of the false Form 990 provided numerous relevant documents, which I believe shows the defendant's willfulness in filing the false 2000 Form 990.  The relevant documents showing the defendant's willfulness found on the computers seized during the warrant do include personal and private e-mails, photographs, news articles, web pages, and internal organization documents.

26.     The documents showing the defendant's willfulness in filing the false 2000 Form 990 were found after a lengthy review of the imaged computers seized during the warrant. These documents include various pictures of Mujahideen both alive and "martyred", e-mail correspondence between the defendant Pirouz Sedaghaty and co-defendant Soliman Al-Buthe regarding an interview with Mujahideen Commander Ibn-Ul-Khattab which discussed financial support for the Mujahideen, and numerous e-group correspondence e-mails about the current Mujahideen battles and interviews with the Mujahideen commanders in Chechnya.

27.     Search protocol pertaining to potential attorney client privileged information was also followed during my review of computer records. To assist in my review, I created a listing of all known attorneys, at that time, for the defendant Mr. Sedaghaty, the co-defendant Mr. Al-Buthe, and the Al-Haramain Islamic Foundation. The list was used as a reference tool to flag any documents or e-mails that might be considered potential attorney client privileged information, prior to reviewing such documents in detail. If a document was located which might fall into this category, I called AUSA Cardani for instructions on how to handle such document. These documents were then to be forwarded to a "taint" attorney for review.

28.     I am aware of the defendant's complaint as to the amount of time it has taken me to review the computer evidence. The investigation was very active up to the point of the indictment in February 2005. However, after the indictment defendant Sedaghaty and defendant Al-Buthe were overseas in countries we could not extradite them from. Therefore the investigation became somewhat dormant until defendant Sedaghaty surrendered himself in August of 2007. After defendant Sedaghaty surrendered, the review of seized evidence intensified including the review of the computer images. This review of seized evidence continues to produce evidence needed for trial.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2009.

Colleen Anderson
Special Agent, IRS-CI



## CORPORATE RESOLUTION

WHEREAS, Article VI, Section 1 of the Restated Articles of Incorporation of Al Haramain Islamic Foundation, Inc. provides that the Board of Directors shall consist of not less than three nor more than five persons; and

WHEREAS, the Restated Articles of Incorporation of Al Haramain Islamic Foundation, Inc. provide that it shall be a nonprofit public benefit corporation, under Chapter 65 of the Oregon Revised Statutes; and

WHEREAS, Section 65.307(1) of the Oregon Revised Statutes requires that a public benefit corporation must have at least three directors, and

WHEREAS, two of the former directors, Aqeel Al-Aqeel and Mansour Al-Kadi recently resigned from the Board of Directors of Al Haramain Islamic Foundation, Inc., leaving as directors only Soliman H.S. Al Buthe and Perouz Seda Ghaty; and

WHEREAS, Section 65.354(1)(b) of the Oregon Revised Statutes provides that the remaining directors of a corporation may fill a vacancy on the Board of Directors; and

WHEREAS, Soliman H.S. Al Buthe is a resident of Riyadh, Kingdom of Saudi Arabia, and Perouz Seda Ghaty is a resident of Ashland, Oregon, U.S.A.

NOW, THEREFORE, it is hereby resolved by Soliman H.S. Al-Buthe and Perouz Seda Ghaty, as the only remaining directors of Al Haramain Islamic Foundation, Inc., that:

1. Jonah Smith-Sedaghaty, a resident of Ashland, Oregon, U.S.A., is elected as a director of Al Haramain Islamic Foundation, Inc.

2. The current mailing address of Al Haramain Islamic Foundation, Inc. is 1257 Siskiyou Boulevard #312, Ashland, OR 97520

3. Each of the directors of Al Haramain Islamic Foundation, Inc. consents to using the mailing address of Al Haramain Islamic Foundation, Inc. as his mailing address for all purposes relevant to his duties and responsibilities as a director of Al Haramain Islamic Foundation, Inc.

DATED this 28th day of January, 2004

_____        _____
Soliman H.S. Al-Buthe                   Perouz Seda Ghaty

ACCEPTED: _____        _____
          Jonah Smith-Sedaghaty          Date    1-29-03

## RESIGNATION

I hereby tender my resignation, effective immediately, from the Board of Directors of Al Haramain Islamic Foundation, Inc., an Oregon non-profit corporation.

Jonah Smith-Sedaghaty

Date: 2-20-04