KENT S. ROBINSON
Acting United States Attorney
District of Oregon
CHRISTOPHER L. CARDANI
Assistant United States Attorney
405 East Eighth Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771
chris.cardani@usdoj.gov
CHARLES F. GORDER, JR., OSB# 912874
Assistant United states Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1117
charles.gorder@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 05-60008-02 |
| | ) | |
| Plaintiff, | ) | RESPONSE TO MOTION FOR |
| | ) | CONTINUANCE AND STATEMENT |
| vs. | ) | REGARDING WITNESSES AND |
| | ) | EXHIBITS |
| PEROUZ SEDAGHATY, | ) | |
| a/k/a Pete Seda and Abu Yunus, | ) | HEARING REQUESTED |
| | ) | |
| Defendant. | ) | |

The United States of America, through its undersigned counsel, herein responds to defendant's "Motion for Continuance and Statement Regarding Witnesses and Exhibits." (CR 202).

In his present motion, defendant Sedaghaty claims he is unprepared for trial and blames perceived discovery transgressions and recalcitrance by the government for his inability to proceed. Since defendant alleges that the government has refused to turn

1 - Government's Response

over information to the defense, a brief review of some of the procedural history in this case is in order. The government's position on the request for a continuance follows that review.

**<u>Background</u>**

In June 2003, the government served a federal grand jury subpoena on the Al-Haramain Islamic Foundation, Inc. in Ashland, Oregon. Al-Haramain and defendant Sedaghaty retained Attorney Matasar.

In February 2004, the government obtained and served a search warrant on the premises of Al-Haramain in Ashland, Oregon, seizing information which included several hard drives from Al-Haramain computers.

The indictment was returned in February 2005, and a warrant for defendant Sedaghaty's arrest was issued. The indictment sets forth in great detail the nature of the charges, focusing on the receipt and disposition of a $150,000 donation received by Al-Haramain in March 2000. Sedaghaty was overseas at the time and refused to return to the United States, although he knew of the warrant. Attorney Matasar continued to represent Sedaghaty throughout this time. The Court knows from a prior hearing that the investigation was largely dormant for a period of time because of defendant Sedaghaty's refusal to return to the United States.

Two and a half years after being indicted, defendant Sedaghaty voluntarily returned to the United States in August 2007, surrendering to the warrant.

The government provided pretrial discovery beginning in December 2007. That process has been extensive and continuous. As reflected in the attached summary prepared by IRS Special Agent Anderson, the government has provided the defense

2 - Government's Response

with nine batches of discovery. Thousands of pages of discovery in paper form have been provided, along with witness interview reports to which defendant is not entitled pretrial. The defense has also had unfettered access to a room at the United States Attorney's Office in Eugene containing the search warrant evidence, records Al-Haramain provided to the government in response to the subpoena, and to bank records pertinent to the case. Working with the defense, the government arranged to have all of the items in the Eugene discovery room scanned into computerized format and provided to the defense. That was done in August 2008.

In May 2008 the defense was provided with copies of the hard drives from the computers seized from Al-Haramain during the 2004 search warrant. Those drives are identical to ones the government has been using to analyze the contents of the computers, and contain large amounts of electronic information.

The Court is aware through litigation in this case that retrieving the contents of the drives has been challenging, largely because most of the contents of the computers had been deleted, and operating systems had been reformatted. This caused forensic experts to have to "resurrect" the contents of the computers, allowing an examination of some of the computer contents by using search terms relevant to the investigation.

Through communications between government lawyers and the defense, it became apparent that the experts retained by the defense to analyze the contents of the computer drives have struggled. While not required to do so, the government arranged for its own computer expert to directly converse with the defense expert. Allowing this type of pretrial access to an expert witness is fairly extraordinary in a criminal case, but was done to facilitate defendant's ability to prepare for his trial.

3 - Government's Response

During these conversations, which occurred in February and April of 2009, the government's expert explained in great detail to the defense how he was able to resurrect the deleted information from the Al-Haramain computers. This included details on the type of software he used, and the "sector addresses" in the computers from where much of the deleted information was retrieved. In essence, the expert provided a roadmap for the defense. Through direct access to the government's expert, the defense has thus learned precisely how information was obtained from the seized computers, allowing the defense expert to use the same methodology to retrieve the data from the hard drives provided to the defense in May 2008. It should be noted that, in analyzing the computer hard drives, the government has never physically printed out all of the voluminous amounts of retrievable information; rather, experts and agents have engaged in a far more limited review by using search terms to identify pertinent information. Limited amounts of retrievable data has been printed out in hard copy.

On August 14, 2009 the government provided to the defense a report prepared by the government's computer expert. That report provides the details and sector addresses of every computer exhibit on the government's exhibit list.

The government believes it has exceeded its non-classified discovery obligations. While not an "open file" case, the government has gone to great lengths to provide discovery beyond that required by Rule 16, and other rules of discovery. The defendant has a different view. In his present motion, the defendant argues he needs six more months to prepare for trial and blames the government for this, saying far more material should have been provided to assist the defense. The government strongly objects. While the attached summary helps refute the allegation that the government has failed

4 - Government's Response

to meet its discovery obligations, the government requests an opportunity for a hearing to call a witness and correct the record in case of appellate review.[1]

**Exhibit and Witness Lists**

Complying with this Court's minute order of April 17, 2009 (CR 162), the government timely submitted its witness and exhibit lists. The defense did not. Nor has the defense provided any reciprocal discovery, claiming they have none.

**Defense Request for Continuance**

The government will be prepared to try this case on November 30, 2009, as previously ordered by this Court. In his present motion, defendant goes to great lengths to explain why he will not be similarly prepared.

The Court is aware that defendant Sedaghaty has had the benefit of two of the most capable criminal defense lawyers in this District, along with the vast resources of the Federal Defender's Office. The defense has already utilized multiple investigators, retained and paid for expert witnesses, and consulted several other experts in the areas of accounting, computers and Middle Eastern affairs. They have filed several pretrial motions. Yet, defendant states he needs a six month continuance from the November trial date to engage in additional pretrial work, including many more witness interviews, and more time to review the "41,000 individual pieces of email...." (CR 202 at p. 5).

---

[1] A hearing to address defendant's allegations of discovery violations is especially appropriate given cases like United States v. Chapman, 524 F.3d 1073 (9th Cir. 2008), wherein indictments have been dismissed upon findings of discovery violations by the government.
    The government also objects to defendant's allegations of discovery shortcomings concerning accounting records, "Quickbook" files and some of the records he asserts as having been ordered to provide by the Court. (CR 202 at p. 7). At the requested hearing the government will refute those allegations as well.

5 - Government's Response

The government wishes to proceed to trial, but begrudgingly recognizes that the defense has much work to do that has not been done. A continuance, therefore, may be necessary. If so, the government urges the Court not to grant a six month continuance. Pretrial delay has already harmed the government's ability to try the case. One witness, who would have testified that defendant Sedaghaty told him he wanted to travel to Chechnya and fight with the *mujahideen*, has died.

If the Court determines that a continuance is necessary, the government respectfully asks that the trial be continued for no more than sixty days. This should provide the defense with sufficient time to prepare for trial.[2]

///

///

///

///

///

///

///

///

///

///

///

---

[2] The government's witness and exhibit lists provide no surprises. The lists reflect the discovery and interview reports provided to defendant. While the government reserves the right to amend those lists if the case is continued, the heart of the case-in-chief is identified in those lists filed with the Court.

6 - Government's Response

**Conclusion**

For reasons stated, the government asks this Court to schedule a hearing on defendant's Motion for Continuance. If the Court grants the motion to continue the trial, it should be for no more than sixty days.

**DATED** this 21st day of August, 2009.

        **Respectfully submitted,**

        **KENT S. ROBINSON**
        **Acting United States Attorney**

        */s/ Christopher L. Cardani*
        **By:**
        **CHRISTOPHER L. CARDANI**
        **Assistant United States Attorney**

        */s/ Charles F. Gorder, Jr.*
        **By:**
        **CHARLES F. GORDER, JR.**
        **Assistant United States Attorney**