1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF OREGON

3   UNITED STATES OF AMERICA,          )
                                       )
4                    Plaintiff,        ) No. 05-60008-2-HO
                                       )
5       v.                             ) September 15, 2009
                                       )
6   PIROUZ SEDAGHATY, et al.,          ) Eugene, Oregon
                                       )
7                    Defendants.       )

8

9              TRANSCRIPT OF PROCEEDINGS

10       BEFORE THE HONORABLE MICHAEL R. HOGAN

11          UNITED STATES DISTRICT COURT JUDGE

12

13                      -:-

14

15

16

17

18

19

20

21

22

23              Deborah Wilhelm, CSR, RPR
                     Court Reporter
24                   P.O. Box 1504
                  Eugene, OR  97440
25                   (541) 431-4113

APPEARANCES OF COUNSEL

FOR THE PLAINTIFF:        CHRISTOPHER L. CARDANI
                          United States Attorney's Office
                          405 E. 8th Avenue, Suite 2400
                          Eugene, OR  97401
                          (541) 465-6771
                          chris.cardani@usdoj.gov

                          CHARLES F. GORDER, JR.
                          United States Attorney's Office
                          1000 S.W. Third Avenue, Suite 600
                          Portland, OR  97204-2902
                          (503) 727-1021

FOR THE DEFENDANT:        LAWRENCE H. MATASAR
                          Lawrence Matasar, P.C.
                          621 S.W. Morrison Street
                          Suite 1025
                          Portland, OR  97205
                          (503) 222-9830
                          larry@pdxlaw.com

                          STEVEN T. WAX
                          Federal Public Defender
                          101 S.W. Main Street, Suite 1700
                          Portland, OR  97204
                          (503) 326-2123
                          steve_wax@fd.org

```
 1                    (Tuesday, September 15, 2009; 11:28 a.m.)
 2                    P R O C E E D I N G S
 3               MR. GORDER:  Charles Gorder for the United
 4    States.  Mr. Cardani, who is going to argue this, is
 5    next door taking a change of plea.  If I could run over
 6    there and see what his estimated time of arrival is.
 7               THE COURT:  Sure.  Please have a seat until he
 8    gets back.  No need to run, actually.  If you walk
 9    briskly, that would be fine.
10               (Brief pause.)
11               THE CLERK:  This is the time set for
12    05-60008-HO, United States of America versus Pirouz
13    Sedaghaty, oral argument on defendant's Motion No. 202
14    to continue trial.
15               THE COURT:  Counsel.
16               MR. WAX:  Good morning.
17               THE COURT:  Good morning.
18               MR. WAX:  Judge, we have set out in the motion
19    a number of reasons why we would not be prepared to go
20    to trial on November 30th.
21               We believe that several matters that are
22    pending before you are related to the continuance
23    request.  We have an ongoing issue about the discovery,
24    particularly the computer-related discovery.  We have
25    the motion to suppress pending.  We believe that the
```

1 | court should continue that hearing in a classified
2 | session for the addition -- taking of additional
3 | evidence.

4 | We believe that the ruling on the motion to
5 | suppress is also relevant to the trial date because one
6 | of the key components of that motion relates to the
7 | admissibility of evidence that was obtained from the
8 | computers.

9 | We have currently on the calendar a hearing set
10 | for October 13th that was intended to address motions in
11 | limine.  We have not yet been able to file a motion in
12 | limine because we do not know at this point with
13 | sufficient specificity what exhibits the government is
14 | intending to offer.  While they provided an exhibit list
15 | in mid-August that --

16 | (Sound system interruption.)

17 | THE COURT:  We're going back to Morse code,
18 | actually.

19 | MR. WAX:  The list came with a -- almost an
20 | inch thick appendix.  And we have been struggling to
21 | determine just which of the items that have been
22 | recovered from the computers the government actually
23 | intends to offer.  However, our current draft motion in
24 | limine is running to roughly 40 pages.  My anticipation
25 | is that we could get up to as much as 80 pages.  But we

1  are just in no position to file until we actually get
2  from the government the specification of the items that
3  they are intending to offer that came from this
4  unallocated space.

5       We have been receiving discovery from the
6  government in batches.  We don't dispute what they have
7  set out in their chronology in terms of the timing and
8  the provision of material.  Unfortunately, for the trial
9  setting, the provision of discovery continues.  And, you
10 know, as one example of material that we received over
11 the last months, in April and in July, the government
12 provided us material that came from the Russian FSB.

13      That material, as we see it, from their
14 exhibits, they intend to use, at least in part, in the
15 trial.  And that opened up an entire new and incredibly
16 complex and difficult area of investigation for us.

17      We received additional discovery just last
18 week.  That additional discovery came with the name of a
19 person who reported to be an expert.  We don't know at
20 this point whether the government is intending to call
21 that person as an expert.  They have identified one Evan
22 Kohlmann as a potential expert.  We anticipate that
23 there will be a need for a hearing into the
24 admissibility of his testimony.  If they are intending
25 to call other experts on, let's call them terrorism

1 | aspects of the case, there may well be a need to have
2 | hearings on those people as well.  But we don't know
3 | today whether or not that is going to take place.

4 | We pointed out in our pleadings that it was not
5 | until the 3rd of August that we were able to obtain what
6 | we hope are most of -- nearly all of the e-mails that
7 | have been recovered from unallocated space.

8 | We point out that what we are able to determine
9 | is roughly 41,000, which if printed out, would be
10 | roughly 16 bankers' boxes.  While we are underway in our
11 | review, that is just too much to complete before
12 | November 30th.

13 | And the reality is that while we are doing
14 | investigation, we have been doing investigation
15 | throughout, we cannot meaningfully, and as we see it,
16 | effectively complete our investigation until we can read
17 | all the materials that relates to the witnesses that
18 | we're going to talk to.

19 | In its pleadings, the government has
20 | acknowledged the difficulties that they've encountered
21 | in recovering material from the unallocated space on the
22 | computers.  This is an unfortunate situation, but we see
23 | that it is the reality.  And we requested a continuance
24 | of six months until May so that we can complete the work
25 | and be ready.

1           In its the pleadings, the government said they

2    recognize that there is work to do.  They talked about

3    if you are going to grant a continuance, you know, think

4    about 60 days.  Sixty days, as we see it, just does not

5    do it.  And if the court is thinking in those lines,

6    there is one other issue with respect to a potential

7    60-day continuance that I would address, but don't want

8    to waste the court's time if that's not necessary.

9           THE COURT:  I haven't decided -- I'm going to

10   continue this, but I haven't decided how long it's going

11   to be yet.  I wanted to listen to this today.  So if

12   there is another issue that would be involved with a

13   short continuance, I'd like you to talk about it.

14          MR. WAX:  Sure.  As the court is aware, I have

15   a book published.  It has been published with a German

16   edition.  And the German publisher wanted to set up a

17   tour through Germany this fall.  I told them we couldn't

18   do that because I had the trial set, and they set that

19   for the first two weeks in February.  So if the court is

20   to set it over, in terms of my ability to be present,

21   actively participating, I think that March 15th would be

22   the earliest reasonable date if I'm back on February

23   15th, one month to get where I --

24          THE COURT:  I remember when Jack Wong used to

25   be a model for Meier & Frank's newspaper ads, but I

1    don't remember him asking for a continuance because of
2    that.
3              MR. WAX:  Well, he's --
4              MR. MATASAR:  Mr. Wax is also a model, of
5    course.
6              MR. WAX:  I only raise that --
7              THE COURT:  Mr. Cardani was not around when he
8    was working here.
9              MR. WAX:  Yeah.  So that's where we're at.  And
10   if you need more detail about any of the work that we're
11   doing, we would be happy to provide it in camera.
12             THE COURT:  All right.  Mr. Cardani.
13             MR. CARDANI:  Yes, Judge.  Thank you.  We have
14   three objectives for today's hearing.  The first would
15   be to briefly address some allegations that have come
16   our way that we hadn't done enough in the discovery
17   field.  I'm a little bit sensitive about that,
18   especially if this case has an appellate future, I would
19   like to address that.
20             We'd also like to come out of this with -- I
21   understand now there will be a continuance -- a trial
22   date that we can lock in stone inasmuch as these things
23   can be locked in stone.  And with that, concrete and
24   realistic dates for both sides to be providing
25   materials.

1          And then third, maybe just a review of some

2    outstanding motions that are before the court and

3    anything else that might be coming in from us in

4    response to some of the defense materials that's been

5    filed recently.

6          May I just address the discovery?

7          THE COURT:  You may.

8          MR. CARDANI:  Judge, in item -- in document

9    number 208, we filed a response to the motion to

10   continue the trial.  And I reviewed some of the

11   chronology in the motion of what we've done of

12   discovery, and we appended a two-page list of some of

13   the highlights of the discovery.  And if I could just

14   perhaps make an offer of proof, and Special Agent

15   Anderson is here to answer the questions that the court

16   might have to elaborate on this.  We've provided

17   discovery in a very timely and systematic way.  We've

18   done it -- we're up to batch ten --

19         MS. ANDERSON:  Yes.

20         MR. CARDANI:  -- now.  And each time we turn

21   over additional discovery, it's an ongoing process so

22   when we -- the overwhelming majority of discovery has

23   been provided and been provided long ago that would

24   allow the defense, in my view, timely opportunity to

25   prepare.  But it's an ongoing process.  And whenever we

1  come up with something more, we turn it over.  And
2  that's up to batch ten now.

3        In addition, in May of 2008, so well over a
4  year ago, we provided them copies of the hard drives
5  that is generating a lot of this discussion.  These are
6  identical copies of the hard drives that we have been
7  using.  We seized the computers pursuant to the warrant.
8  We mirrored -- we made copies of those from mirrored
9  drives.  We returned the computers and those drives to
10  the owners, al-Haramain.  And then it is from those
11  drives that we made copies and provided those copies to
12  the defense.

13        We are working from the same set of material
14  that they have and have been doing so since May of 2008.
15  Now, they have had problems getting into the guts of the
16  computer.  And we've had long discussions between
17  counsel that this is challenging work because some of
18  this material has been deleted, the operating systems
19  have been altered.  We've used experts to get into the
20  guts of this.  And we suggested that they really needed
21  to hunker down and do the same.

22        It was clear to us in discussions with counsel
23  that their expert was not getting the job done.  And so
24  we went to the length -- and I don't think anything
25  comes close in our discovery requirements to requiring

1  this, but we hooked them up with our discovery -- I mean
2  our computer expert on the phone so that the two
3  computer people were talking the same language to each
4  other.

5         There have been communications in June,
6  February, and April of 2009 where they were talking
7  about how it is -- what they needed to do to see the
8  same materials that we were seeing within the computers.

9         We also provided a forensic report now prepared
10  by this expert that they have which identifies all of
11  the places in these hard drives that each of our
12  exhibits come from, that we seek to offer that have --
13  that are generated from these computers.  They have a
14  roadmap.  They know exactly what sector addresses, how
15  to get to the parts of the computer to find the
16  materials that we have.

17         Now, yes, there are a lot of e-mails on there.
18  They mention 41,000.  We never printed out everything
19  inside the computers because that would go beyond, one
20  might argue, the scope of the search.  If we did that,
21  we'd probably be accused of rummaging and doing things
22  that are inappropriate under the Fourth Amendment.

23         And that gets us back to the suppression
24  hearing that we heard a little bit about this.  What we
25  did was once we developed an ability to review some of

1   these e-mails, search terms were created, the court

2   heard about that at the suppression hearing, and those

3   were used to limit the screening of the e-mails to make

4   sure we weren't seeing attorney stuff and irrelevant

5   stuff.

6           If we had done what the defense is requesting,

7   printing out everything, then we may be setting -- may

8   be seeing a different set of allegations coming our way

9   that by doing what they are asking we exceeded the

10  Fourth Amendment.

11          What we did is we gave them the same materials

12  that we're using and a compete understanding of how we

13  were using -- what we were doing to access that

14  material.  It's been -- it's unfortunate that it's been

15  so long in them finally getting to the point where they

16  are able to do a meaningful review.  And that's why I

17  use the word begrudgingly in our response to the motion

18  to continue that if they haven't done that work, then

19  perhaps more time is in order.  But we have given them

20  the materials.  We have been working with them.  Anytime

21  they have any problems, our expert has been consulted.

22  Special Agent Anderson is on the phone regularly with

23  the defense investigators to iron out any problems.

24          We feel we've gone way beyond what is necessary

25  to help them get ready to go on this thing.

1        Now, they are not there yet.  So we understand
2   that more time may be necessary.  But when we're talking
3   about -- in the motions they talk about needing to
4   interview people overseas.  These are two very good
5   lawyers.  But this indictment has been pending for a
6   long time.  And Mr. Sedaghaty returned to the country in
7   August of 2007.

8        Anyone associated with this case knows that
9   this involves $150,000 donated by a man named Mahmoud
10  El-Fiki from Cairo, Egypt.  It seems to me that a good
11  place to start defending this case would be interviewing
12  him.  And if I hear correctly, that has not been done.
13  And if this is one of the foreign interviews that they
14  are talking about, it's time to move on and get this
15  ready to be tried.

16       So there seems like there needs to be some core
17  things done by the defense to get to the real issues in
18  the case that are defined in the indictment, and to -- I
19  think the court has made enough rulings on the
20  irrelevance of other government programs and some of the
21  classified materials.  I think it's time now to really
22  focus on let's get ready for the trial.

23       So we're not objecting to a postponement.  We
24  would ask that it be a limited amount of time.  We said
25  60 days.  The court may disagree.  We would just ask

1   that we come out of this hearing with a clear

2   understanding that we are going to trial rather than

3   facing additional delays down the road.

4        Now, we're prepared to -- we were in full-blown

5   trial mode.  We've prepared witness lists, exhibit

6   lists.  We worked very hard, and we were getting ready

7   for trial.  And it all came to a grinding halt when we

8   filed our documents, because nothing was filed in

9   response.  And then we got hit with this request for a

10  six-month continuance.  So all of the deadlines that the

11  court set now seem to be, well, nonexistent.

12       So now the pressure to prepare for trial is

13  relieved, we can prepare -- we will prepare a disc with

14  all of our exhibits so that they can file a motion in

15  limine.  We're doing that now.  That process will take

16  another few weeks, but we'll be ready to go.  But if

17  this case is set out for six months, I think it's unfair

18  for the government to be required to turn over all of

19  its exhibits when we've got nothing from them, not one

20  shred of reciprocal discovery.  I think it's unfair to

21  require us to play all that out six months before trial.

22       So what we're looking for is a realistic trial

23  date, and then deadlines, benchmarks that come before

24  that, triggering responsibilities, mutually enforceable,

25  on things like exhibit lists, witness lists, copies of

1    exhibits, motions in limine, and the such.

2         The final issue is outstanding motions.  The

3    motion to suppress, the evidence is pending.  Two

4    supplemental motions were filed by the defense

5    concerning the sharing of information with the Russian

6    authorities and the impact, if any, on the Ninth

7    Circuit's CDT opinion.

8         We are in the process of preparing supplemental

9    responses to those filings.  And we can have those to

10   the court depending, again, on what our trial date is

11   looking like.  I think we can have those ready to go, I

12   think, within two weeks.

13        Also pending is the motion for a bill of

14   particulars, which we oppose.  I think that's ready for

15   a ruling.  And there is the CIPA notices filed by the

16   defense that we responded to that I think are ripe for

17   ruling.  And incumbent or included in that is this

18   continuing request by the defense to have the court

19   reconsider its ruling preventing them from talking about

20   some of the classified evidence.

21        So I think that those are all the matters

22   pending before the court.  And we just ask that a

23   realistic trial date be set, and that we do our best to

24   get there.

25        THE COURT:  Thank you.  Mr. Wax or Mr. Matasar.

1          MR. MATASAR:  I just want to respond to a few
2    things, Your Honor.  First of all, I think Mr. Cardani
3    has indicated that -- all of the things we are doing or
4    trying to get the material, we're calling them up.  Our
5    investigators are calling them up.  We're doing the best
6    we can.  We hired the best expert we could to get the
7    materials.  We may not have all the tools they have, but
8    we're doing everything that could be done.

9          As far as his statement that we haven't given
10   them any documents, I do want to remind him and the
11   court that we essentially gave them every single piece
12   of paper we had in this case.  It was before the
13   indictment.  It's not really discovery, but they
14   subpoenaed documents, and then they searched, so they
15   really took everything we had.  So it's a little bit
16   one-sided to say we haven't given them everything.  We
17   really have given them everything.

18         Third, as far as the international -- as far as
19   the investigation, one, we don't want to investigate
20   before we know enough facts to ask questions.  Second,
21   the complexities of an international investigation from
22   the defense side as compared to the government side is
23   like night and day.  It's like -- it's like hundreds of
24   years of night and day difference.  They can interview
25   Mr. El-Fiki by calling the Egyptian Secret Police, the

1    SSIS.  And they -- it looks like from what we've seen --

2    can schedule the interview.  It is completely different

3    for us.  We have trouble finding people.  We have

4    trouble getting them to talk to us.

5         The idea that it's a simple matter to interview

6    people, even the ones that we know, it's just very

7    difficult.

8         So -- and, finally, this -- the one thing --

9    I'm not sure if the court is prepared to give us a list

10   of all the things that Mr. Cardani has asked for.  As

11   far as all the dates today, we could talk about that if

12   the court wishes today or not, or do that in a phone

13   call some other time.

14        One thing that we would -- maybe the court

15   could give us guidance on, we admittedly filed similar

16   motions several times, and this motion concerning the

17   May 16th, '08, order that the court issued, and I don't

18   want to go into the details of it.  We felt we had to

19   file this motion for a protective order, we were kind of

20   reading the tea leaves, and we looked at all the court's

21   other orders, and we thought, well, if we file a CIPA

22   notice, then we should file this, and maybe that was

23   what the court was wanting.

24        If that's not the case, if the court is not

25   really inclined to change its ruling on that, on the May

1    16, 2008, order, we'd ask the court just to tell us now

2    so we can see if there is some other way that we could

3    get some sort of relief.  Because we think we can -- we

4    should be able to talk about this.  And if the court is

5    going to continue its order, we think you might just

6    want to tell us that now and then we can --

7            THE COURT:  I'm going to put it in writing so

8    that you really get it this time.

9            MR. MATASAR:  Well, we think we understand

10   after hearing the same ruling a few times, but if it

11   takes writing from the court, that's fine.  Okay.

12           THE COURT:  Anything further?  Are there --

13   other than Mr. Wax's German book tour, are there

14   schedules that -- promises that have been made to

15   spouses, et cetera?

16           MR. MATASAR:  Mine is not until the end of

17   June, but I'm June --

18           THE COURT:  It will be before then.

19           MR. MATASAR:  The end of it, we need the end of

20   it before June 25th.

21           MR. CARDANI:  We're not aware of any conflicts.

22           THE COURT:  Even Judge Solomon, in my first

23   year of practice, I heard someone say, well, Judge, I'd

24   like a continuance.  Why?  I promised my wife I'd take

25   her to Hawaii.  He said, that's good enough.  Even Judge

1    Solomon said that.

2             Okay.  I will -- two things.  I'm going to do a

3    little written order in response to this, if you have

4    nothing more on these issues.

5             The other thing is that I do want to have an ex

6    parte hearing with the defense this afternoon.  And if

7    you have a preference as to time, that's fine.  I'm

8    going to do -- I've got a habeas case I'm going to do an

9    evidentiary hearing in.  I've got, I think, three other

10   reasons I have to take breaks during that today, so

11   it's -- but if you have a preference, I'd like to hear

12   it.  If not --

13            MR. MATASAR:  The sooner you can fit us in, the

14   better, whenever that is.

15            THE COURT:  All right.  We're -- I'm going to

16   at least have some preliminary matters in this habeas

17   matter.  Where can I get ahold of you?

18            MR. MATASAR:  We can give our cell phone

19   numbers, Your Honor.  We're just going to be either at

20   the Federal Defender's or getting a sandwich, that's

21   all.  We'll be right around the area.  I'll write the

22   numbers.

23            THE COURT:  Okay.  Thank you.

24            MR. CARDANI:  Judge, that would be on a sealed

25   record, that meeting?

```
1              THE COURT:  Excuse me?
2              MR. CARDANI:  That meeting will be on the
3    record?
4              THE COURT:  It will be on the record.
5              Anything further?
6              MR. CARDANI:  No, Your Honor.
7              THE COURT:  Thank you very much.
8              (The proceedings were concluded at 11:53 a.m.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
1                          CERTIFICATE

2           I, Deborah Wilhelm, Certified Shorthand Reporter

3     for the State of Oregon, do hereby certify that I was

4     present at and reported in machine shorthand the oral

5     proceedings had in the above-entitled matter.  I hereby

6     certify that the foregoing is a true and correct

7     transcript, to the best of my skill and ability, dated

8     this 6th day of October, 2009.

9
```



```
10

11

12                                    Deborah Wilhelm
13                                    Deborah Wilhelm, RPR
                                      Certified Shorthand Reporter
                                      Certificate No. 00-0363
14

15

16

17

18

19

20

21

22

23

24

25
```