Steven T. Wax, OSB No. 85012
Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Email: steve_wax@fd.org

Lawrence Matasar, OSB No. 74209
621 SW Morrison Street, Suite #1025
Portland, OR 97205
Tel: (503) 222-9830
Email: larry@pdxlaw.com

Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>    v.<br><br>PIROUZ SEDAGHATY,<br><br>                         Defendant. | CR 05-60008<br><br>**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS**<br><br>**CLASSIFIED HEARING REQUESTED** |

Defendant, Pirouz Sedaghaty, through his attorneys, Federal Public Defender Steven T. Wax, and Lawrence Matasar, hereby supplements his request for a classified

hearing in order to pursue his argument that all fruits of the search conducted on February 18, 2004, should be suppressed because the decision to seek the warrant on which the search was based was affected by unlawful surveillance. *See Murray v. United States*, 487 U.S. 533 (1987). He also seeks reconvening of the open session of the hearing based on discovery provided subsequent to the hearing held on July 13, 2009, analysis of hearing testimony, and recent investigation. Such a hearing should also include argument on the decision in the *United States v. Comprehensive Drug Testing,* 579 F.3d 989, 2009 WL 2605378 (9th Cir. August 26, 2009), and issues related to the Russian F.S.B.

This pleading is prompted by several factors.

1.   Subsequent to the July 13, 2009 hearing, Mr. Sedaghaty received a report written by IRS Special Agent Richard Smith regarding the forensic analysis of the computer hard drives seized from his home. That report confirms that substantive unguided reviews were conducted of the hard-drives for at least a five month time period in 2004, as early as March 10 until August 12, 2004. Ex. A. During this period, Colleen Anderson was also analyzing the computer hard-drives and drives were provided to the FBI. Reconvening the hearing, in both open and classified sessions, is required in order to examine David Carroll, Richard Smith, and Colleen Anderson regarding the extent and chronology of the investigation and review of the computer hard drives.

2.   At the suppression hearing held on July 13, 2009, IRS Agent Colleen Anderson was asked about those persons involved in the decision to seek a search warrant for the Al Haramain/Sedaghaty property and when she became involved in the

investigation. Tr. 62-66.[1] Ms. Anderson testified that her involvement in the investigation began in early 2002. This is inconsistent with material provided in discovery.

3.  During the hearing, FBI Agent David Carroll was asked whether he was involved in the investigation of Mr. Sedaghaty or Al Haramain in 2001. The government's objection to that question was sustained. Tr. 91. Mr. Carroll was then asked about his contribution to the list of search terms that was employed in the search of the computer hard drives. Mr. Carroll refused to answer, "based on the fact that it is related to material that can't be discussed in this courtroom at this time." Tr. 93.

Review of discovery subsequent to the suppression hearing and investigation has revealed additional facts that support the need for a classified evidentiary session at which Mr. Sedaghaty will be able to inquire into the investigation activity, legal and illegal, classified and unclassified, that took place prior to the search and led to the decision to seek a search warrant. This includes camera surveillance and the numbers on FBI 302 reports.

I.  **THE REPORT OF RICHARD SMITH , PROVIDED TO MR. SEDAGHATY AFTER THE HEARING ON JULY 13, 2009, REVEALS EXTENSIVE REVIEW OF THE COMPUTERS WITHOUT SEARCH TERMS.**

The report written by Special Agent Richard Smith reveals that extensive substantive review of the hard drives was being conducted by the IRS, including Colleen Anderson, and the FBI in 2004. This review appears to have been conducted, at least in part, without search term parameters or any other limitation. The report recites that on

---

[1]The references to "Tr." are to the transcript of the suppression hearing of July 13, 2009.

March 11, 2004, Richard Smith conducted an initial review of the hard drive Seda 6, "copied evidentiary files to CD, and mailed them to SA Anderson." (Mr. Sedaghaty specifically requests a copy of this CD.) A substantive review of hard drives Seda 4 and Seda 10 were also conducted. He reported that nothing of evidentiary value was found. That statement is evidence of the overbroad and unlawful scope of the search. On March 30, Richard Smith began a recovery procedure (a partition salvage) in order to recover information that had been deleted or erased. Over a five day period, nine of the ten hard drives were salvaged. Ex. A at 2. During this time, on April 1, 2004, Mr. Smith worked with Ms. Anderson in Medford, Oregon on the analysis of the images. On April 6, 2004, Richard Smith continued with an unlimited review of the computer hard drives. This went for a few months and included several visits to the Medford office to work with Ms. Anderson in April and May of 2004.

On May 6, 2004, Richard Smith set up a forensic platform on an additional computer for evidence reviewing purposes. Following this, "the work on the computers involved *reviewing individually* the tens of thousands of salvaged files. Much of this review was conducted using hexadecimal viewing, which involves paging through thousands of pages of computer language to find fragments of files." Ex. A at 2 (emphasis added). As a result, on July 14, "numerous photos of Chechen war battle scenes were tagged" and mailed to Ms. Anderson. Ex. A at 2. These photos were ultimately burned to a CD for Ms. Anderson. (Mr. Sedaghaty requests a copy of this CD.)

Near the end of July, Richard Anderson went to Medford to set up a computer as an evidence viewing platform at the FBI office and continued to work with Ms. Anderson.

Page 4 -    SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS
            CLASSIFIED HEARING REQUESTED

This was followed by a search of Seda 9 through ILook (an IRS forensic analysis program) and a set up of a computer forensic platform for evidence review in the FBI office in Bend. Ultimately, in August 2004, Ms. Anderson was provided with an evidence platform of Seda 9 in order for her to analyze the drive using ILook.

At the hearing on July 13, 2009, counsel for the defense specifically addressed the issue of when the search terms for the computer analysis were created and whether the prior review was an unguided review. See Ex. B (sealed portion of transcript of July 13, 2009 hearing, filed separately under seal). The importance of using search terms in a computer search has been briefed previously. As counsel stated on July 13, 2009, this information is particularly relevant as to wether the government exceeded the scope of the search of the computer hard drives. Ex. B. At the time, the Court directed Ms. Anderson to turn over any notes she had about the review of the hard drives. Mr. Sedaghaty would need those notes before the hearing is reconvened. Mr. Smith describes prolonged review without reference to search terms. That review was conducted prior to the creation of the search term list in 2008. Ms. Anderson should have notes from at least March 2004 through August 2004 as confirmed in Mr. Smith's report. According to the information provided by Ms. Anderson during her testimony at the suppression hearing on July 13, 2009, she did not create the search terms until 2008 after the forensic analyst in Washington (Jeremy Christianson) processed the information. Tr. 54-55; Ex. C (Jeremy Christianson, Computer Forensics Manager memorandum). Therefore, the analysis that took place in 2004, in which Ms. Anderson was involved appears to have been conducted prior to the creation of the search terms. Further hearing is required in order to question

Mr. Smith and Ms. Anderson about their knowledge regarding the chronology and extent of the computer review and Agent Carroll about the FBI review in 2004.

## II.  COLLEEN ANDERSON'S TESTIMONY ON JULY 13, 2009, IS INCONSISTENT WITH REPORTS PROVIDED IN DISCOVERY

Review of the discovery material revealed that Ms. Anderson's testimony with respect to her involvement in the investigation of this matter at the hearing on July 13, 2009, was inaccurate, and that this investigation was extensive prior to January 1, 2002.

The first known grand jury subpoena seeking information about Mr. Sedaghaty was served on Jackson County Title on October 2, 2001. GOV 387-89. Other subpoenas were served on Bank of America and other banks associated with Mr. Sedaghaty or Al Haramain USA, and its board, which resulted in the return of information in November and December of 2001. FPDUS 34791 (A letter reply to a subpoena from Bank of America to Agent David Carroll referencing # 6560.1). It appears from this letter that the government sought information via subpoena regarding wires, checks, and deposits related to "Pete Seda/Al Haramain Foundation." FPDUS 34791. A small portion of the discovery provided thus far reveals the following:

The discovery includes documents that Colleen Anderson stamped as having received on November 19, 2001. These include financial information regarding wire transfers and bank statements related to Mr. Sedaghaty and Al Haramain USA. FPDUS0034791; FPDUS0034803; FPDUS0034915-20; FPDUS0034937-42; FPDUS0034951-56; FPDUS0034957-62; FPDUS0034991-94; FPDUS0034995-35000; FPDUS0035150-55; FPDUS0035250-55; FPDUS0035299-304; FPDUS0035305-310; FPDUS0035384-89; and FPDUS0035788-93.

On December 18, 2001, AUSA Chris Cardani received a letter from Bank of America in St. Louis, Missouri, enclosing documents requested by a subpoena regarding Al Haramain Islamic Foundation and the Quran Foundation. FPDUS 36984. On December 19, 2001, Colleen Anderson received financial information including bank statements, copies of checks, and copies of travelers checks regarding Al Haramain USA and Mr. Sedaghaty. FPDUS0034794-5; FPDUS0034797-8; FPDUS0034815-18; FPDUS0034835-6; FPDUS0034844-5; FPDUS0034856-7; FPDUS0034865-8; FPDUS0034870-3; FPDUS0034874-7; FPDUS0034882-5; FPDUS0034895-905; FPDUS0034906-9; FPDUS0034911-14; FPDUS0034924-27; FPDUS0034933-6; FPDUS0034947-50; FPDUS0034973-6; FPDUS0034985-8; FPDUS0035001-35029; FPDUS0035080-3; FPDUS0035462-5; FPDUS0035593-4; FPDUS0035631-4; FPDUS0035658-61; FPDUS0035689-92; FPDUS0035741-44; FPDUS0035767-72; FPDUS0035776-81; FPDUS0036511-24; FPDUS0036529-32; FPDUS0036597-600; FPDUS0036609-12; and FPDUS0036625-28.

On that same day, the government received other financial information regarding Al Haramain USA and Pete Sedaghaty. FPDUS0036815-6; FPDUS0036817-22; FPDUS0036985-37008; FPDUS0037010-21; FPDUS0037053-61; FPDUS0037398-401; FPDUS0037402-5; FPDUS0037407-10; FPDUS0037414-5; FPDUS0037962-94; FPDUS0037995-6; FPDUS0037997-8; FPDUS0037999-800; FPDUS0038001-2; FPDUS0038003-4; and FPDUS0038005-14.

The comparison of the discovery dates with Ms. Anderson's testimony reveals a significant discrepancy directly related to these matters that requires clarification through further testimony.

### III. FBI 302 REPORTS IN DISCOVERY SHOW A LINK TO THE INVESTIGATION OF THE EVENTS OF SEPTEMBER 11, 2001 AND MR. SEDAGHATY'S NEWLY DISCOVERED EVIDENCE OF SURVEILLANCE

With respect to discovery and investigation, Mr. Sedaghaty has previously presented the Court with compelling evidence supporting his claim that he and Al Haramain USA were the subject of extensive lawful and unlawful, classified and unclassified, surveillance activity for many years prior to the obtaining of the search warrant in February 2004. That evidence will not be repeated in this pleading.

Subsequent to the hearing on July 13, Mr. Sedaghaty confirmed that he was subjected to video surveillance at the Al Haramain building. During the week of October 5, 2009, Federal Defender Investigator Joe Lee confirmed previous reports of the surveillance with the assistance of an expert who reviewed a portion of a wire that had led to a camera that was located across the street from the Al Haramain building. The expert confirmed that the wire that was remaining on the site appeared to have been there for some time because of the weathering, and that it was a wire that would support video closed circuit transmissions. *See* Ex. D.[2]

---

[2] The existence of this surveillance has never been confirmed by the government, nor its results provided to Mr. Sedaghaty notwithstanding his requests for such information in his discovery motions. Mr. Sedaghaty hereby renews those requests. If the government has tapes or logs of surveillance activity of the Al Haramain and/or Sedaghaty property, it is exculpatory and material to the defense and should now be provided.

Page 8 -    SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS
            CLASSIFIED HEARING REQUESTED

Prompted by confirmation of the video camera, Mr. Sedaghaty undertook review of the discovery to determine when, and how extensively, he was subjected to investigation in 2001. That review revealed several things. First, it revealed that the legal and publicly disclosed investigation of Mr. Sedaghaty and Al Haramain USA began on or about September 15, 2001, when Agents David Carroll, Bradford Petrie, and Joseph Boyer of the Federal Bureau of Investigation visited Mr. Sedaghaty at the Al Haramain USA location in Ashland, Oregon. GOV 83-86 (identified by 9/11 investigation case number 265D-NY-280350).[3] Of particular significance is the fact that the FBI 302 investigation reports of this early investigation were conducted under the FBI case number for its investigation of the attacks of September 11, 2001.[4]

The scope of the legitimate investigation of Mr. Sedaghaty and Al Haramain immediately after 2001 (see II above and prior pleading) lends further support to Mr. Sedaghaty's previous assertions, including the statement of his expert, Col. Lang, that he was subjected to unlawful surveillance as well. The scope of the investigation, and the references to the investigation of the events of September 11, 2001, in Mr. Sedaghaty's case provide further support to his claim that any decision to authorize a search warrant in 2004 would have been made by agents of the government in responsible positions in

---

[3]The references to "GOV" are to the bates stamped numbers in the discovery provided by the government and "FPDUS: refers to the documents that were provided to the government pursuant to the grand jury subpoena in this case.

[4]Available research provides that reference number 265D-NY-280350 refers to the government's investigation of 9/11. *See* http://www.9-11commission.gov/report/911Report_Notes.htm.

Page 9 -   SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS
           CLASSIFIED HEARING REQUESTED

Washington, D.C., and not solely by field agents in Medford, Oregon, or their immediate supervisors.

**CONCLUSION**

Mr. Sedaghaty requests reconvening of the hearing on the motion so suppress to address the issues discussed herein and renews his previous requests for discovery of classified information regarding lawful and unlawful surveillance, and the reconvening of the hearing on the motion to suppress in classified session so that he can pursue his claims based on *Murray v. United States*.

RESPECTFULLY SUBMITTED this 15th day of October, 2009

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Lawrence Matasar
Lawrence Matasar