Steven T. Wax, OSB No. 85012
Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Email: steve_wax@fd.org

Lawrence Matasar, OSB No. 74209
621 SW Morrison Street, Suite #1025
Portland, OR 97205
Tel: (503) 222-9830
Email: larry@pdxlaw.com

Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>PIROUZ SEDAGHATY,<br><br>　　　　　　　　　　Defendant. | CR 05-60008<br><br>MOTION TO COMPEL THE GOVERNMENT TO UTILIZE THE MUTUAL LEGAL ASSISTANCE TREATY ON BEHALF OF MR. SEDAGHATY AND/OR TO ISSUE LETTERS ROGATORY |

Page 1 -   MOTION TO COMPEL THE GOVERNMENT TO UTILIZE THE MUTUAL LEGAL ASSISTANCE TREATY ON BEHALF OF MR. SEDAGHATY AND/OR TO ISSUE LETTERS ROGATORY

Defendant, Pirouz Sedaghaty, through his attorneys, Federal Public Defender Steven T. Wax, and Lawrence Matasar, hereby moves the Court to order the government to use the Mutual Legal Assistance Treaty (MLAT) process and its resources to assist him in securing necessary witnesses and documents overseas.  Alternatively, Mr. Sedaghaty seeks issuance of the attached Letter Rogatory to the Arab Republic of Egypt.  Exhibit A. The letter rogatory process to obtain the presence of witnesses at the trial in this case.  In the alternative, Mr. Sedaghaty seeks to use the letters rogatory process to take depositions of the witnesses in their home country or elsewhere.  Mr. Sedaghaty also seeks to use the letter rogatory as a formal means of investigation and interviewing potential witnesses in Egypt.

As set out below, the government has utilized its international agreements to obtain evidence in this case.  Mr. Sedaghaty is aware of highly exculpatory information that is central to this case but can only be obtained through the use of international agreements and diplomatic processes.  Mr. Sedaghaty is aware of two distinct vehicles through which he could obtain the necessary evidence.  One involves assistance from the government, the other solely involves the Court's exercise of its authority through the letter rogatory process. Mr. Sedaghaty believes that utilization of the government's MLAT authority would be a far more efficient process and presents the arguments in support of the Court's directing the government's cooperation in point II.  In point III, he sets out support for use of the letter rogatory process.

I.  **FACTUAL BACKGROUND**

Mr. Sedaghaty is named in the first two counts of a three count Indictment. The essence of the charges against him is that he conspired with Soliman Al Buthe to hide the fact Mr. Al Buthe took money from the United States to Saudi Arabia in order to give it to Chechen mujahadeen and falsified his tax return to cover up that transaction. During the pretrial process, the government has advised that two government counsel traveled to the Russian Federation with government law enforcement agents as part of their investigation in this case and obtained documents from Russian Federation officials. The government has also advised that it intends to offer at trial documents obtained from the Russian Federation and present a witness from the Russian Federal Security Bureau. The discovery provided by the government appears to reveal that it used the MLAT (002850 GOV) and Letter Rogatory (002288 GOV) process in order to obtain documents and witnesses from the Russian Federation. Exhibit B.

In addition, the discovery contains an FBI 302 report of an interview conducted with Mr. Mahmoud Talaat Hassan El Fiki (the donor of the money in question) in Egypt. Exhibit C. It is not clear, however, what process was used by the government to obtain the cooperation of the Egyptian government. The interview report makes clear, however, that the Egyptian government was cooperating. Indeed, its agents conducted the interview. The discovery and tentative witness and exhibit lists also contain reference to an Al Haramain Islamic Foundation, Inc. custodian of records and documents produced in Saudi Arabia. With respect to these documents, the discovery does not reveal what process the government has, or intends to use, to obtain these documents and witnesses.

Page 3 -   MOTION TO COMPEL THE GOVERNMENT TO UTILIZE THE MUTUAL LEGAL ASSISTANCE TREATY ON BEHALF OF MR. SEDAGHATY AND/OR TO ISSUE LETTERS ROGATORY

From the discovery produced by the government and through his own investigation, Mr. Sedaghaty has developed exculpatory information in Egypt. This exculpatory information is in the form of both witnesses and documents. The essence of the information Mr. Sedaghaty has reviewed and seeks to obtain as competent evidence for trial purposes involves testimony that the donation from Mr. El Fiki was intended for humanitarian purposes, he engaged in due diligence before making the donation, the choice to wire the donation to the United States was benign and entirely Mr. El Fiki's, and that he sought and was provided confirmation about receipt and use of his donation. Other witnesses in Egypt have information that Mr. Sedaghaty objected to the activities of certain people who worked at the Al Haramain offices and that the disagreement led to the departure of several of those individuals from Al Haramain. Review of the government's case reveals that much of its evidence with respect to the alleged agreement and alleged willfulness of Mr. Sedaghaty's actions rests on hearsay, inference, assumption, and innuendo. While such evidence should be weak, and we believe is entire lacking in substance, the reality of this case is that the nature of the charges and our client's ethnicity and religion place him at an extreme disadvantage. In these circumstances, it is critical that all of the resources of the Court and the government be made available to Mr. Sedaghaty to produce direct eyewitness testimony and exhibits that directly refute the government's allegations.

The specific individuals and documents of which Mr. Sedaghaty is currently aware and for which he invokes the authority of the Court and seeks its assistance in Egypt are:

1. Mr. Mahmoud Talaat Hassan El Fiki.

Page 4 -   MOTION TO COMPEL THE GOVERNMENT TO UTILIZE THE MUTUAL LEGAL
           ASSISTANCE TREATY ON BEHALF OF MR. SEDAGHATY AND/OR TO ISSUE
           LETTERS ROGATORY

Case 6:05-cr-60008-AA    Document 238-7    Filed 12/02/09    Page 5 of 13

2.  Mr. Sharif El Fiki, Mr. El Fiki's son.

3.  Mr. Mohammed Salat, Mr. El Fiki's employee.

The fact that certain witnesses and exhibits are in foreign countries places Mr. Sedaghaty in an unusual position that, in and of itself, intrudes into his rights under the Fifth and Sixth Amendments to the United States Constitution.  In the normal course, neither the Court nor the government would be entitled to any knowledge of defense investigation efforts.  Because of the difficulty in conducting investigation and procuring evidence overseas, Mr. Sedaghaty must invoke the court process both to continue his investigation and to secure witnesses he currently believes have exculpatory information and to secure exculpatory documents. In an effort to limit the government's intrusion into his work, one of the specific requests made in this pleading is to invoke a procedure that has been used in a number of other courts under which the government participates in the defense investigation through use of attorneys and investigators who are "walled off" from the prosecutors and investigating agents involved in this case.

**II.    THE GOVERNMENT SHOULD BE COMPELLED TO UTILIZE THE MLAT WITH THE ARAB REPUBLIC OF EGYPT IN ORDER TO FACILITATE THE APPEARANCE OF SEVERAL FOREIGN DEFENSE WITNESSES AT MR. SEDAGHATY'S TRIAL.**

**A.    The Government Should Be Ordered To Use The MLAT To Compel Mr. El Fiki, His Son, And Employee To Appear As A Witness In Mr. Sedaghaty's Trial Or, In The Alternative, To Be Deposed In Egypt And To Assist In Locating Mr. Salat**

The MLAT process exists to be utilized by the United States government and other countries to obtain witnesses and evidence to further their investigations in prosecutions in criminal cases.  As a general proposition, the MLAT process is defined as one that is

available to the government but not to defense counsel.  *See* Linda F. Ramirez, *Federal Law Issues In Obtaining Evidence Abroad - Part One*, 31 June Champ. 28, 31, 2007.  When, however, the government utilizes the MLAT, or other diplomatic process, to obtain witnesses and evidence from foreign countries, due process requires that similar process be made available to the defense.  *See* U.S. Const. Amend. VI ("the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor").  If the government is not willing to utilize such process, then the law requires that evidence obtained by the government through such means be excluded.

While there is no law directly on point regarding the government's use of the MLAT or other diplomatic process to procure witnesses and evidence, when it refuses to assist the defense in the same manner, direct and analogous authority from the Ninth Circuit compels the Court to either order the government's participation as requested by the defense or exclude all evidence it has obtained overseas through similar process.  The seminal case on this issue in the Ninth Circuit arose from this district, *United States v. Westerdahl*, 945 F.2d 1083, 1086-87 (9th Cir. 1991).  In that case, the government had granted immunity to a witness but refused a defense request to exercise its authority to grant immunity to a defense witness.  The Ninth Circuit held that to permit the government to utilize its executive power in this manner would distort the fact-finding process and reversed Mr. Westerdahl's conviction.  Upon remand, the district court was directed to consider one of two options, "if the district court determines that prosecutorial misconduct prevented defense witness Goldsberry from giving relevant testimony, the court shall either

Page 6 -   MOTION TO COMPEL THE GOVERNMENT TO UTILIZE THE MUTUAL LEGAL
           ASSISTANCE TREATY ON BEHALF OF MR. SEDAGHATY AND/OR TO ISSUE
           LETTERS ROGATORY

order a judgment of acquittal or grant any government request for use immunity for Goldsberry." 945 F.2d at 1088.

A series of Ninth Circuit cases have upheld the principle fully articulated in *Westerdahl,* most recently in *United States v. Straub*, 538 F.3d 1147, 1156-65 (9th Cir. 2008). There, the court reiterated that the government's refusal to grant immunity to a defense witness denies the defendant a fair trial when (1) the witness's testimony would have been relevant, and (2) either (a) the prosecution intentionally caused the defense witness to invoke the Fifth Amendment right against self-incrimination with the purposes of distorting the fact-finding process; or (b) the prosecution granted immunity to a government witness in order to obtain that witness's testimony, but denied immunity to a defense witness whose testimony would have directly contradicted that of the government's witness, with the effect of so distorting the fact-finding process that the defendant was denied his due process right to a fundamentally fair trial. *Straub*, 538 F.3d at 1162. *See also, Westerdahl*, 945 F.2d at 1087 (recognizing that the second prong is met when an non-immunitized defense witness's testimony would conflict with the government's immunitized witness because without the defense witness the fact-finding is distorted).

In both the immunity and diplomatic contexts, the Executive branch of the government is generally perceived as exercising exclusive authority and full discretion. *Straub*, 538 F.3d at 1156 (quoting *United States v. Alessio*, 528 F.2d 1079, 1081-82 (9th Cir. 1976). The principles articulated in *Westerdahl* and *Straub* are equally applicable in the diplomatic context as they are in the immunity context. The fundamental due process

Page 7 -   MOTION TO COMPEL THE GOVERNMENT TO UTILIZE THE MUTUAL LEGAL
            ASSISTANCE TREATY ON BEHALF OF MR. SEDAGHATY AND/OR TO ISSUE
            LETTERS ROGATORY

and counsel rights are the same in both settings. As a result, what is normally purely a government prerogative, is cabined by the requirements of the Fifth and Sixth Amendments.

The facts available to this Court establish that the *Westerdahl* and *Straub* criteria are met. The evidence Mr. Sedaghaty seeks to obtain is indisputably relevant – it goes directly to the core aspects of the indictment. The evidence is directly contradictory of the government's evidence. Mr. El Fiki, his son and employee will establish that there is nothing sinister about his donation, the manner in which the donation was made, and the routing of the donation. This contradicts the evidence the government has indicated it will seek to introduce from the Russian Federation exhibits and witnesses.

To permit the government to use its authority to produce information from abroad, but fail to require it to utilize the MLAT to allow the defense to produce witness and evidence that conflicts or contradicts the government's case, would distort the fact-finding process and deny Mr. Sedaghaty his due process right to a fair trial.

### B. The Court Should Order Use Of The MLAT By "Walled Off" Government Counsel And Investigators

The Court may order the government to utilize the MLAT in a variety of ways. Given the Sixth Amendment and confidentiality concerns, the most effective way to accomplish the securing of investigation, testimony, and exhibits would be for an attorney and investigator within the United States government to act on Mr. Sedaghaty's behalf in a manner in which he is "walled off" from the attorneys and investigators directly involved in this prosecution. Such a procedure has been used in a number of cases. Attached as

Page 8 -   MOTION TO COMPEL THE GOVERNMENT TO UTILIZE THE MUTUAL LEGAL ASSISTANCE TREATY ON BEHALF OF MR. SEDAGHATY AND/OR TO ISSUE LETTERS ROGATORY

Exhibit D are an order and letter describing the use of "walled off" counsel in *United Sates v. El Hindi*.

The walled off procedure is straightforward. First, an attorney within the United States government would act on behalf of Mr. Sedaghaty and would be "walled-off" from the government attorneys prosecuting Mr. Sedaghaty. This walled-off attorney would use the MLAT to compel each witness to appear for Mr. Sedaghaty's trial as a defense witness, or to appear for a deposition

### III. LETTERS ROGATORY

#### A. Letter Rogatory For In-Court Testimony

The letters rogatory process is available to tribunals in the United States as a method for obtaining evidence in foreign countries or as a means of requesting the assistance of foreign authorities in investigating a case pending in this country. *See* 28 U.S.C. § 1781(a)(2) ("The Department of State has power, directly, or through suitable channels . . . (2) to receive a letter rogatory issued, or request made, by a tribunal in the United States, to transmit it to the foreign or international tribunal . . . and to receive and return it after execution."). Letters rogatory may be issued by United States District Courts on behalf of defendants in criminal cases in order to secure in court testimony. *See* 28 U.S.C. § 1781(a)(2). *See also, United States v. Korogodsky,* 4 F.Supp.2d 262 (S.D.N.Y. 1998) (district courts can issue letters rogatory on behalf of defendants in criminal cases); *United States v. Staples,* 256 F.2d 290, 292 (9th Cir. 1958) (stating that "[t]his Court, like all courts of the United States, has inherent power to issue Letters Rogatory"); *United States v. Reagan,* 453 F.2d 165, 172 (6th Cir. 1971) (stating that 28 U.S.C. § 1781

Page 9 -    MOTION TO COMPEL THE GOVERNMENT TO UTILIZE THE MUTUAL LEGAL ASSISTANCE TREATY ON BEHALF OF MR. SEDAGHATY AND/OR TO ISSUE LETTERS ROGATORY

impliedly recognizes "the power of federal courts to transmit letters rogatory to foreign tribunals"); *United States v. Steele,* 685 F.2d 793, 809 (3d Cir. 1982) (stating that a federal district court in a criminal case has the power to issue requests for international judicial assistance or letters rogatory by virtue of Rule 28(b) of the Federal Rules of Civil Procedure, which is made applicable to criminal cases through Rule 15 of the Federal Rules of Criminal Procedure).

Here, Mr. Sedaghaty seeks to use the letters rogatory process as he would a Rule 17 subpoena to secure the presence of witnesses at his trial and to obtain the assistance of the Egyptian authorities in investigation of this case in much the same way that the government obtains such assistance through MLAT requests.

Here, it is without dispute that the testimony of Mr. El Fiki, his son, and employee are relevant. It is the donation made by Mr. El Fiki in February 2000, that is directly at issue in both counts of the Indictment against Mr. Sedaghaty. The facts surrounding Mr. El Fiki's donation and the involvement of his son and employee are directly related to the facts alleged in the Indictment. *See* Ex. C. Therefore, in the interests of justice, this Court may and should issue the Letters Rogatory on behalf of Mr. Sedaghaty.

### B.     Letters Rogatory For Depositions

An alternative route exists to secure the testimony described above. Rather than seeking their appearance in the United States, the Court could order that the witnesses be deposed in Egypt rather than appear at trial. Fed. R. Crim. P. 15(e) through Fed. R. Civ. P. 28(b), authorizes the Court to issue letters rogatory to a foreign citizen to be deposed.

The rule authorizes depositions in order to preserve testimony for trial for reasons of exceptional circumstances and in the interest of justice. Fed.R.Crim.P. 15(a)(1). Under Fed.R.Crim.P. 15(e), depositions must be taken in the same manner as a deposition in a civil action. For civil actions, Fed.R.Civ.P. 28(b)(1) sets forth how depositions may be taken in a foreign country: (A) under an applicable treaty or convention; (B) under a letter of request; (C) on notice, before a person authorized to administer oaths either by federal law or by the law in the place of examination; (D) before a person commissioned by the Court to administer any necessary oath and take testimony.

While the district courts are given broad discretion, they are directed to inquire into the materiality of the testimony sought and the unavailability at trial of the witnesses sought to be deposed. Two district court cases are particularly helpful. *United States v. Trout,* 633 F.Supp. 150 (N.D. Ca. 1985), and *United States v. Jefferson,* 594 F.Supp. 2d 655 (E. D. Va 2009). Both contain thorough discussions of the circumstances under which depositions should be ordered of foreign witnesses.

First, the Court should consider the materiality of the testimony sought. *Jefferson*, 594 F. Supp. 2d at 668. Second, the Court should consider whether the witness would be unavailable for trial. These issues are not, however, conclusive. As the Ninth Circuit has stated, they are more conclusive of the admissibility of a deposition, than the propriety of ordering that one be taken. *United States v. Omene*, 143 F. 3d 1167, 1170 (9th Cir. 1998). As stated on the question of unavailability for trial testimony in *United States v. Gianis,* 2008 WL 750587, *2 ( March 18, 2008), the fact that a person is beyond the subpoena power of the court supports granting a deposition even if the person might eventually

Page 11 -   MOTION TO COMPEL THE GOVERNMENT TO UTILIZE THE MUTUAL LEGAL ASSISTANCE TREATY ON BEHALF OF MR. SEDAGHATY AND/OR TO ISSUE LETTERS ROGATORY

decide to appear voluntarily. The Court may also consider such factors as any danger to government officials in the taking of a deposition. *See United States v. Olafson*, 213 F.3d 435, 442 (9th Cir. 2000).

In determining potential unavailability, a proponent of a deposition need not obtain an affidavit from the witness. *Jefferson*, 594 F. Supp, at 665-66. Unavailability can be established from other circumstances.

Exceptional circumstances exist requiring that Mr. El Fiki be deposed. As stated above, there should be no question but the testimony sought is highly exculpatory on the central issue in the case. There are no alternative witnesses. Because the witnesses are living in Egypt and not United States citizens, they cannot be subpoenaed to appear at Mr. Sedaghaty's trial. *Gianis*, *2. Mr. El Fiki has shown that he will comply with Egyptian authorities by his participation in the interview recorded in the FBI 302. Mr El Fiki has not, however, been willing to cooperate with Mr. Sedaghaty's investigators in their approach without the assitance of Egyptian authorities. Nor was his son. Mr. Sedaghaty was not able to locate Mr. Salat. Therefore, Mr. Sedaghaty relies on this Court to issue an order permitting Mr. Sedaghaty to depose the El Fikis and Mr. Salat in Egypt or in England if they are willing to travel there.

**CONCLUSION**

For all of the reasons set forth herein, the Court should order the government to use the MLAT process and its resources to assist him in securing necessary witnesses and documents overseas. In the alternative, the Court should order the use of Letter Rogatory

to obtain the testimony of the El Fikis and Mr. Salat. Two alternative orders are included with this pleading.

Respectfully submitted this 3rd day of December, 2009.

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender


/s/ Lawrence Matasar
Lawrence Matasar