# *EXHIBIT A*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>PIROUZ SEDAGHATY,<br>Defendant. | CR 05-60008<br><br>REQUEST BY THE UNITED STATES DISTRICT COURT OF OREGON FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY) FROM THE ARAB REPUBLIC OF EGYPT |

TO THE APPROPRIATE AUTHORITIES OF THE ARAB REPUBLIC OF EGYPT (hereinafter "Egypt"):

The United States District Court for the District of Oregon presents its compliments to the judicial authorities in Egypt and has the honor to request the assistance of the appropriate authorities in Egypt in connection with the prosecution of Pirouz Sedaghaty, who is charged in the District Court of Oregon with two offenses, each of which refer to Mr. Sedaghaty's involvement with a donation made by Mahmoud Talat El Fiki, an Egyptian citizen, to an Islamic charity in the United States.

## I. Background

A grand jury sitting in the District of Oregon returned an indictment on February 17,

2005, charging Mr. Sedaghaty with two offenses. Specifically, Mr. Sedaghaty is charged with the following offenses against the United States.

Conspiracy to Defraud the United States Government in violation of Title 18, United States Code, Section 371.

False Return by Tax Exempt Organization in violation of Title 26, United States Code, Section 7206(1) and title 18, United States Code, Section 2.

Each of these are serious offenses under United States law.

The indictment alleges that in February 2000, an individual in Egypt (Mr. El Fiki) donated $150,000 to Al-Haramain as zakat to be sent to Chechnya. These funds were initially wire transferred by Mr. El Fiki to an Al Haramain bank account in Oregon, converted into travelers checks and a cashier's check, and taken out of the United States by Mr. Sedaghaty's co-defendant, Mr. Soliman Al Buthe. The indictment also alleges that Mr. Sedaghaty and Mr. Al Buthe intended that the funds be delivered to the Chechen mujahideen, and that they engaged in a conspiracy to prevent the United States Government from learning of the transaction by failing to fill out paperwork, as required by law, acknowledging the funds were leaving the United States, and by filing a false tax return with the Internal Revenue Service which falsified how the donated funds were distributed by Al Haramain Islamic Foundation, Inc.

On January 31, 2006, Mr. El Fiki was interviewed by the State Security Investigations Service (SSIS) of Egypt. Special Agent David Carroll, Special Agent Colleen Anderson and FBI Cairo ALAT Nael Sabha observed the interview via closed circuit televison. The Special Agents contributed to the questions that were being asked of Mr. El Fiki. A trial in Mr. Sedaghaty's case is expected to be held in the spring of 2010. In

connection with this trial the Court requests that the government of the Arab Republic of Egypt direct (1) Mr. Mahmoud Talat Hassan El Fiki; (2) Mr. Sharif El Fiki, Mr. El Fiki's son; and (3) Mr. Mohammed Salat, Mr. El Fiki's employee, to travel to Eugene, Oregon for the trial in the spring of 2010. . Mr. El Fiki can be located at 4 Ibn Kathir St. - Off Nile St., Suez Canal Tower - 24/1, 12311 Dokki, Giza - Cairo, Egypt. The travel expenses of these witnesses will be paid by the United States government.

In the alternative, the Court requests the government of the Arab Republic of Egypt make Mr. El Fiki, Mr. Sharif El Fiki, and Mr. Mohammed Salat available to be deposed by defense counsel and the government lawyers in this case. The Court requests that the arrangements for these depositions be made directly with Steven T. Wax, whose U.S. phone number is 503-326-2123. Mr. Wax can also be contacted at Steve_Wax@fd.org.

The United States District Court for the District of Oregon assures the judicial authorities of Egypt that the courts of the United states are authorized by statute, 18 U.S.C. § 1781, et seq, to assist foreign tribunals in the execution of similar requests.

## III. TIME CONSTRAINTS

The Court further advises the judicial authorities in Egypt that this request for international judicial assistance should be considered time sensitive and requests the appropriate authorities to promptly consider it.

________________________________
Honorable Michael R. Hogan
United States District Court

# *EXHIBIT B*

UNCLASSIFIED

[handwritten] BB
[handwritten] JE



Office of the Prosecutor General of the Russian Federation

ulitsa Bolshaya Dmitrovka, 15a
Moscow, Russia, GSP-3, 125993

05/26/2009 № 82/1-1261-08
To № 182-22165

United States Department of Justice

To the Director of the Office of International Affairs

Ms. Mary Ellen Warlow

1301 New York Avenue, N.W.
Washington, DC 20005

Dear Ms. Director:

The Office of the Prosecutor General of the Russian Federation affirms its respect for the United States Department of Justice and, in accordance with the Treaty between the Russian Federation and the United States for Mutual Legal Assistance in Criminal Matters, of 06/17/199, is sending materials obtained during the fulfillment of a request for legal assistance related to the investigation of a criminal case concerning officials of the Al Haramain Islamic Foundation.

At the same time we are informing you that, pursuant to information received from the Directorate of the FSB of Russia for the Republic of Ingushetia, in March 2000, personnel from that directorate conducted operational measures related to the Saudi Red Crescent Society (hereinafter "SRCS"), which was a constituent component of the Saudi Joint Relief Committee for Kosovo and Chechnya

As a result, it was determined that officials of the SRCS—Abdulla Al-Harsi (DOB 12/28/1968, subject of the Kingdom of Saudi Arabia, head of the representation of this organization in Ingushetia), Akhmed Feysal Kaid Ali (DOB 01/12/1974, citizen of Yemen, officer of the representation), Al Dzhukhani Abdulla (subject of the Kingdom of Saudi Arabia, manager of the representation's warehouse), Khabbula Mokhammed Talaat (DOB 04/13/1970, citizen of Syria, administrator of the representation)—under cover of providing aid to displaced persons from Chechnya, provided ideological, material, and financial aid to representatives of radical Islam, acting under the banner-cry of secession of the Caucasian republics from Russia and the creation of an independent Islamic state. The above-mentioned individuals undertook attempts to gather information about the [handwritten] 182-22165 Al Haramain Islamic Foundation [end handwriting]

AK № 072955 | Office of the Prosecutor General of the Russian Federation

UNCLASSIFIED

actions of federal agencies in the Northern Caucasus, simultaneously counteracting efforts by the federal center to return displaced persons to their places of residence.

In April 2000, the President of the Republic of Ingushetia, R. Aushev, gave a directive to the Ministry of Internal Affairs of the Ingushetia Republic and to the Directorate of the FSB of Russia for the Republic of Ingushetia to conduct a joint examination of the activities of the SRCS. As a result, it was discovered that the actions of officials of the given organization included violations of Articles 2, 18, and 47 of the Russian Federation Law "On Social Associations" and the Regulations for the Stay of Foreign Citizens on the Territory of Russia. As a result of the aforementioned, the SRCS representation on the territory of Ingushetia was shut down.

In addition, according to information at the disposal of the Directorate of the FSB of Russia for the Republic of Ingushetia, in 2002, on the territory of the Republic of Azerbaijan, law-enforcement officers detained representatives of the Al Haramain Islamic Foundation, subjects of the Kingdom of Saudi Arabia—Al Modikhish Akhmad Aliya, born in 1974, and Al-Dzhadani Taufik, born in 1972—who were suspected of subversive activity. According to the information obtained, the materials seized from them pointed to a connection between Al-Dzhadani Taufik and leaders of illegal, armed units, Khattab, Abu Touba and Arbi Barayev. In June 2002, Azerbaijani authorities made the decision to deport the detainees to the Kingdom of Saudi Arabia.

No documentary information in any format related to the facts of the illegal activities of representatives of the indicated foundation remains at the FSB's disposal. As was reported earlier, operational materials were destroyed according to established procedure as retention dates expired.



Enclosure: 14 pages

Acting Head of the Directorate
of Legal Assistance
of the Chief Directorate of
International Legal Cooperation

[Seal of the Office of the Prosecutor General
of the Russian Federation]
[signature]
S. M. Gribinyuchenko

Executed by Yusifov, N. R., tel. 692-8380

File Number:
Date: 01/26/2009

**Witness Interview Report**

Moscow December 3, 2008

Interview started at 10:30
Interview ended at 13:00

Based on the Letters Rogatory received from the US Department of Justice, Deputy Chief of the 3rd Department of Russian FSB Investigative Division, Lieutenant Colonel of Justice V.V. Romanovskiy conducted an interview of a witness at 1/3 Bolshaya Lubyanka St., Room # 207, Moscow, in accordance with Articles 189 and 190 of Russian Federation Criminal Procedural Code. [The information about the witness is as follows:]

1. Last, first, patronymic name: IGNATCHENKO, Sergey Nikolayevich

2. Date of birth: September 02, 1961

3. Place of birth: Moscow

4. Place of residency and registration: 2 Bolshaya Lubyanka, apt.# 326, Moscow;
phone:

5. Citizenship: Russian Federation

6. Education: college degree

7. Marital Status: married

8. Employer or Educational Institution: Russian Federal Security Service [FSB] employee
phone:

9. Military service status: draft eligible

10. Previous convictions: none

11. Passport or other identification document: identity attested

12. Other information about the witness: none.

Witness [Illegible signature]
(signature)

[Illegible signature]

Prior to the interview I was explained my rights and responsibilities as a witness according to Russian Federation Criminal Procedural Code, Article 56, part 4:

File Number:
Date: 01/26/2009

*1) Refuse to testify against myself, my spouse or other close relatives whose circle is delineated by Russian Federation Criminal Procedural Code, Article 5, part 4. Upon my agreement to testify I was informed that everything I say can be used as evidence in a criminal case even if I renounce my testimony later on;*

*2) Testify in my native language or in a language that I speak fluently;*

*3) Use an interpreter at no charge;*

*4) Reject an interpreter participating in an interview;*

*5) File petitions and/or complaints about actions taken by an interviewer, investigator, prosecutor, court, or lack thereof;*

*6) Have an attorney present at an interview, in conformity with Russian Federation Criminal Procedural Code, Article 189, part 5;*

*7) Ask for security measures specified in Russian Federation Criminal Procedural Code, Article 11, part 3 to be applied;*

*I have been advised that perjury (according to Russian Federation Criminal Code, Article 307) or refusal to testify (according to Russian Federation Criminal Code, Article 308) may result in criminal sanctions against me.*

Witness [Illegible signature]
(signature)

I can report the following information pertaining to the criminal case:

In the late 1990s - early 2000s I worked as a Russian Federal Security Service [FSB] operative and investigated activities of various charitable foundations within the Russian Federation, including the international Islamic charitable organization Al-Haramain (Islamic Foundation of Two Holy Shrines, ***Al-Haramein*** [sic] ***Islamic Foundation***). During my investigation I learned that this organization was founded back in the early 1980s to support mujahidins who fought against USSR military forces in Afghanistan. Later, the foundation supported extremist Islamic movements around the world. It still provides financial aid to such movements and has representation (nearly 70 offices) in Albania, Macedonia, Croatia, Kosovo, Pakistan, Bangladesh, Kenya, Somalia, Georgia, Azerbaijan and other countries. In the late 1990s - early 2000s this organization was actively conducting illegal activities in Russia - in the Chechen, Ingush and Dagestan Republics.

At that time Sheikh 'Aqil bin 'Abd-al-'Aziz al-'Aqil was the director general of Al-Haramain; the head office was located in Riyadh, Kingdom of Saudi Arabia.

According to the data we obtained in 1997, Al-Haramain actively provided financial support to Dagestani, Chechen and Ingush religious extremist groups, followers of Wahhabi ideology. These groups were aiming to overthrow the existing constitutional system in those republics, secede from Russia and create a so-called Islamic state in the North Caucasus region of the Russian Federation.

[Illegible signature]

We found out that large sums of money in the form of foreign currency were received by

# *EXHIBIT C*

FD-302 (Rev. 10-6-95)



**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription 02/14/2005

(U) On 1/31/05, Mahmoud Talaat Hasan El Fiki, date of birth, 5/9/32, was interviewed at the Nasr City, Egypt offices by SSIS Major Muhammad. El Fiki was interviewed at a remote location in the facility and was observed from a conference room via closed circuit television. Internal Revenue Service-Criminal Investigations(IRS-CI) SA Colleen Anderson and FBI Cairo ALAT Nael Sabha were also present in the conference room observing the interview, as was SSIS Major Ahmed Maher who acted as translator during the interview. El Fiki was previously interviewed by the SSIS pursuant to receiving questions via EC from Portland FBI. On 1/30/05, a meeting was held at SSIS' downtown offices to discuss the specific questions that would be posed to El Fiki by SSIS investigators.

(U) During the aforementioned meeting, the SSIS advised they conducted extensive investigation into El Fiki's finances. They advised El Fiki has donated upwards of approximately 35 million Egyptian Pounds(converted to U.S. dollars using conversion rate of 5.87 Egyptian pounds to the dollar, is equivalent to approximately $5.9 million), during his lifetime to various charitable causes throughout Egypt. He has been primarily involved in the construction of, and the purchase of equipment for hospitals in Egypt. He prefers to use his money to build facilities or to purchase specific equipment as opposed to donating cash.

(U) El Fiki has no interest in seeking publicity for his philanthropy and deflects inquiries about his charitable works. He has never had a hospital named after him. He typically directs hospital administrators in charge of naming their facilities to use the names of honored deceased individuals to name the buildings. Earlier in his life El Fiki donated approximately 10% of his income to Zakat. Investigation conducted by SSIS revealed that later in life El Fiki donates approximately 80% of his income to charity.

(U) El Fiki is an engineer who received a Ph.D in Engineering from Sofia University in Sofia, Bulgaria. El Fiki owns and operates the Cairo Construction Company(CCC). CCC was, and continues to be a prominent builder of hospitals in Egypt. The company has been involved numerous large building projects throughout Egypt.

Investigation on 1/31/05 at Nasr City, Egypt

File # 315N-PD-45427 Date dictated 2/9/05

by SA David A. Carroll

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

315N-PD-45427

Continuation of FD-302 of Mahmoud Talaat El Fiki, On 1/31/05, Page 3

(U) El Fiki advised he chose to send his donation to the Bank of America account provided in AHF's response because the bank was more well known and he had more confidence in the United States banking system than the banks in Saudi Arabia. El Fiki contacted the Bank of Kuwait in London, England and directed them to wire transfer $150,000 to the aforementioned AHF account at the BOA in Ashland, Oregon. In directing the Bank of Kuwait to wire the money, El Fiki requested, and received a receipt, indicating the cost of the transaction was $40.00. SSIS also presented this receipt for review by writer and SA Anderson.

(U) El Fiki advised the donation was for Zakat to support widows and orphans. After making the donation, a month passed and El Fiki had not received an acknowledgment from AHF indicating the foundation received the money. El Fiki was unaware that $21,000 of the $150,000 he donated to AHF ended up in Soliman Albuthe's personal bank account. El Fiki did not know Albuthe and had never heard of him. This disturbed El Fiki and he therefore sent another email requesting acknowledgment of the donation. In response to El Fiki's inquiry about the delay in AHF's acknowledging his donation, the foundation sent him an email directing him to contact Salat. El Fiki was told Salat had the receipt for the donation.

(U) El Fiki advised he never had any telephonic contact with anyone at AHF, nor has ever spoken with anyone employed by the foundation. AHF did not return any of the money to him and questioned the interrogator as to why would they return money to him. El Fiki had no idea how his donation was actually spent. He advised he had no method or means to determine how the money was specifically spent. El Fiki was unaware if the money was spent on Chechnyan mujahedin. He reiterated that he would have no way of knowing how the money was actually spent.

(U) SSIS personnel indicated El Fiki provided the following time line of events regarding his contact with AHF.

January 11, 2000 - El Fiki's first contact with AHF via email through their website.

Approximately within a week's time of 1/11/00, AHF responded providing the two choices of bank accounts available to receive donations.

FD-302a (Rev. 10-6-95)

315N-PD-45427

Continuation of FD-302 of Mahmoud Talaat El Fiki, On 1/31/05, Page 5

remains in contact with Hatout and described meeting him once a year in Kuwait.

(U) El Fiki donated money to an Islamic Center in Cairo that is run by Dr. Abdul Gafar(phonetic). El Fiki recalled an Egyptian student named Mohammad Turki that solicited him for donations for a mosque in the United States. Turki called in approximately mid-2001 after the events of 9/11/01. Turki's father worked with El Fiki in Kuwait. El Fiki had doubts about what the money would be used for and declined to donate. He has never heard from Turki since that time.

# *EXHIBIT D*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | Case No. 3:06-CR-00719 |
| | ) | |
| Plaintiff, | ) | Hon. James G. Carr |
| | ) | |
| v. | ) | **EX PARTE APPLICATION FOR ISSUANCE** |
| | ) | **OF SUBPOENAS FOR FOREIGN WITNESSES** |
| Marwan Othman El Hindi, | ) | |
| | ) | Stephen D. Hartman (0074794) |
| Defendant. | ) | KERGER & ASSOCIATES |
| | ) | 33 S. Michigan St., Ste. 100 |
| | ) | Toledo, OH 43604 |
| | ) | Phone: (419)255-5990 |
| | ) | Fax: (419)255-5997 |
| | ) | stevehartman@kergerkerger.com |
| | ) | |
| | ) | Charles M. Boss (0011436) |
| | ) | BOSS & VITOU CO., L.P.A. |
| | ) | 111 W. Dudley Street |
| | ) | Maumee, OH 43537 |
| | ) | Phone: (419) 893-5555 |
| | ) | Fax: (419) 893-2797 |
| | ) | cboss@bossvitou.com |
| | ) | |
| | ) | A. Alek El-Kamhawy (0071845) |
| | ) | RASLAN, EL-KAMHAWY & PLA, LLC |
| | ) | 1700 East 13th St, Suite 3FE |
| | ) | Cleveland, Ohio 44114 |
| | ) | Phone: (216) 928-1500 |
| | ) | Fax: (216) 928-1501 |
| | ) | alek@replaw.net |
| | ) | |
| | ) | Counsel for Marwan Othman El Hindi |
| | ) | |
| | ) | |

Now comes Defendant Marwan Othman El Hindi ["El Hindi"], by and through counsel and Pursuant to Rule 17 of the Federal Rules of Criminal Procedure, and respectfully requests that the Court order that subpoenas be issued for the witnesses named below. El Hindi further requests that the Court instruct the United States Marshalls to bear the witness fees and expenses and cooperate with "walled off counsel" in order to serve the foreign witness subpoenas for which service by counsel and their representatives is not practical.

Rule 17 of the Federal Rules of Criminal Procedure states that upon a defendant's ex parte application, the Court "must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense." See Crim. R. 17(b). The Court is well aware that Defendant El Hindi is indigent, filed an Affidavit of Indigence at the outset of the case, is represented by counsel pursuant to appointment under the Criminal Justice Act, and has been incarcerated awaiting trial for nearly two years. There is no doubt that he is unable to pay the witness fee and mileage costs of any subpoena.

The defense for Marwan El-Hindi has investigated evidence and developed witnesses and evidence outside of the continental United States. Subsequent to the Court granting the defense request for two-way video conference trial testimony of these witnesses, the parties have reached a compromise which will ensure the presentation of the defense evidence while satisfying the government's concern regarding the sufficiency of two-way video conference testimony in a criminal case. The parties have agreed that "Walled Off Counsel" from the Department of Justice will assist the defense in securing the live attendance of these witnesses at trial. A letter outlining this agreement is attached hereto as Exhibit A. "Walled Off

Counsel" will assist the various witnesses in securing appropriate immigration visas, transportation, and lodging. Furthermore, "Walled Off Counsel' will utilize the Mutual Legal Assistance Treaties (MLAT) between the United States various countries, if necessary, in order to secure the attendance of these witnesses. The identity of the witnesses will not be disclosed to the prosecution trial team until after the government rests its case in chief.

The expenses of producing these witnesses will be borne by the Department of Justice if this Court finds that El Hindi is unable to pay the costs of producing his witnesses. This finding has previously been made and is here sought in order to secure the attendance of these foreign witnesses. Attached as Exhibit B is an email confirmation of the financial arrangements from Joseph Lazar, Associate General Counsel, United States Marshal Service.

Testimony of each of the witnesses listed below in Exhibit C is necessary for an adequate defense, although for different reasons. The witnesses are expected to establish certain facts for the defense that will show that El Hindi's actions throughout the course of this investigation were, in fact, in furtherance of his various business enterprises and his religious beliefs rather than part of a criminal conspiracy. These witnesses may also establish facts to demonstrate manipulation and entrapment by the government's confidential informant. Specifically, El Hindi states that witnesses are necessary for the following non-exclusive list of reasons:

- All of the witness will establish El Hindi's involvement in various legitimate business activities.
- Each of these witnesses will help establish a pattern of manipulative entrapment by the government's cooperating witness.

- These witnesses will also refute the allegations El Hindi expects the government to make in its case in chief.

For those reasons and others, El Hindi respectfully requests that the Court order subpoenas for those five listed in Exhibit C.

Once the Court grants the instant Motion, counsel for El Hindi will complete and return the subpoena forms to the Clerk for issuance and service.

Respectfully submitted,

By /s/ Charles M. Boss
CHARLES M. BOSS (0011436)
Counsel for Defendant El Hindi

Charles M. Boss (0011436)
BOSS & VITOU, CO., L.P.A.
111 W. Dudley
Maumee, OH 43537
Telephone: (419) 893-5555
Fax (419) 893-2797

Stephen D. Hartman (0074794)
KERGER & ASSOCIATES
33 S. Michigan St., Suite 100
Toledo, Ohio 43604
Telephone: (419) 255-5990
Fax: (419) 255-5997

A. Alek El-Kamhawy (0071845)
RASLAN, EL-KAMHAWY & PLA, LLC
1700 East 13th St, Suite 3FE
Cleveland, Ohio 44114
Phone: (216) 928-1500
Fax: (216) 928-1501

Counsel for Marwan Othman El Hindi

Motion granted.
So Ordered.

S/ James G. Carr
Chief Judge

DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES ATTORNEY
NORTHERN DISTRICT OF OHIO
UNITED STATES COURT HOUSE
801 WEST SUPERIOR AVENUE, SUITE 400
CLEVELAND, OHIO 44113-1852




*GREGORY A. WHITE*
*UNITED STATES ATTORNEY*

FAX NO: **(216) 685-2378** TELEPHONE: **(216) 622-3600**

FACSIMILE OUTGOING TRANSMISSION COVER SHEET

TO: **Charles M. Boss, Esq.** FAX NO: **419-893-2797**

ORGANIZATION: **Boss & Vitou Co., L.P.A.**

DATE: **1/22/2008** PHONE: **419-893-5555**

FROM: **Linda Williams for AUSA Thomas E. Getz**

PHONE: **216-622-3840**

NUMBER OF PAGES: **2** (EXCLUDING FAX TRANSMISSION COVER SHEET)

COMMENTS: **Attached is letter regarding "walled-off" counsel which was promised by AUSA Getz.**

**SENSITIVE U.S. ATTORNEY FACSIMILE COMMUNICATION**

The information contained in this facsimile message, and any and all accompanying documents, constitutes sensitive information. This information is the property of the U.S. Attorney's Office. If you are not the intended recipient of this information, any disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you received this message in error, please notify us immediately at the above number to make arrangements for its return to us.

Note: If you do not receive the total number of pages indicated, please call the sending individual listed above.



U.S. Department of Justice

*United States Attorney*
*Northern District of Ohio*

*United States Court House*
*801 West Superior Avenue, Suite 400*
*Cleveland, Ohio 44113-1852*

January 22, 2008

Stephen D. Hartman, Esq.
Charles M. Boss, Esq.
Alek H. El-Kamhawy, Esq.
c/o Kerger & Associates
33 South Michigan Street, Suite 100
Toledo, Ohio 43604

Re: United States v. Mohammad Zaki Amawi, et al. (N.D. Ohio), 06CR719

Counsel:

Pursuant to our recent discussions, the government agrees to provide an attorney to serve as "walled-off" counsel in the above-captioned case. The government will also appoint appropriate "walled-off" federal agents to assist "walled-off" counsel. Counsel will be appointed under the authority of the Counterterrorism Section, National Security Division, United States Department of Justice.

Based upon the defense's representations, we understand that there are approximately seven (7) witnesses that the defense currently seeks to present via video testimony at trial. In order to present these witnesses "live" in court, the defense has suggested that the government provide counsel to help these witnesses gain entry into the United States. To accomplish this, the government's "walled-off" counsel will need to work with defense attorneys, the Federal Bureau of Investigation (FBI), and the Department of Homeland Security (DHS) (including, but not limited to, U.S. Immigration, Customs Enforcement (ICE)) to attempt to facilitate temporary entry of these seven (identified) defense witnesses into the United States. The defense must provide biographical information to, and cooperate fully and as needed with, "walled-off" counsel so that counsel may properly assess the viability of securing these witnesses during trial. If the "walled-off" counsel obtains information relating to a defense witness that would preclude their admission into the country, the "walled-off" counsel could raise this issue with the court and the defense outside the presence of government counsel. Notwithstanding any of the foregoing, the government is under no obligation to facilitate entry of individuals who pose a threat to the United States.

The prosecution team will be provided with all information obtained via "walled-off" counsel at the conclusion of the government's case-in-chief so that it may properly prepare for the defense's

case. Once the government and the defense agree that each witness has completed their trial testimony in this case, that witness must return immediately to their country of origin unless they are otherwise entitled to remain in the United States.

CTS "walled-off" counsel will have no contact with the prosecution team regarding this case, and he/she will not divulge any information gathered during this effort to the prosecution team until the end of the government's case-in-chief. If acceptable, CTS will appoint counsel and the appropriate agents. Please contact us at your earliest convenience.

Sincerely,

Jerome J. Teresinski
Trial Attorney
Counterterrorism Section
(202) 514-7146

Thomas E. Getz
Assistant United States Attorney
(216) 622-3840

David I. Miller
Trial Attorney
Counterterrorism Section
(202) 353-2440

Justin E. Herdman
Assistant United States Attorney
(216) 622-3965

Gregg N. Sofer
Assistant United States Attorney
(512) 916-5858

## Chuck Boss

**From:** Lazar, Joe (USMS) [Joe.Lazar@usdoj.gov]

**Sent:** Wednesday, February 06, 2008 11:39 AM

**To:** Chuck Boss

**Subject:** Witness fees

Rule 17 of the Federal Rules of Criminal Procedure allows a federal judge, when he/she finds that a defendant is unable to pay for the costs of producing his/her witnesses, to shift that cost to the Department of Justice. If that is the case, the witnesses expenses would be borne by the DOJ, though the Fees and Expenses of Witnesses Appropriation, X0311 Account. The USMS administers the account and makes the payments upon certification by the court/attorney. Unusual fact witness expenses would have to be approved by the DOJ, Justice Management Division, Procurement Staff.

Joe Lazar

Associate General Counsel

U.S. Marshals Service

202-307-9060

**WITNESSES FOR WALLED OFF COUNSEL**

1. **Dr. Hisham Yehia El Sayed Azzam** — **Cairo Police Veterinarian**
   6 Osman Abazah St. of El Haram St.
   Guizah Egypt
   PH: 011 202 3867820 (Home)
   011 201 060 63471 (Cell)
   Work Address:
   Police Academy, 5th District
   Elzahraa City, Ring Road
   Cairo, Egypt
   PH: 011 202 24109117-24092553 (Work)

2. **Mustaffa Bassem** — **Cairo Police Superior of Azzam**
   Police Academy, 5th District
   Elzahraa City, Ring Road
   Cairo Egypt
   PH: 011 201 232 92368
   0111 202 24109117-24092553 (Work)

3. **Dr. Yasser El-Baroudy** — **Egyptian Businessman**
   Environment and Development House
   29 El-flah St-Mohandeseen-Giza-Egypt
   Personal: yenviro1958@yahoo.com
   environmenthouse@yahoo.com
   011 202 302 1257 (office)
   011 012 311 9997 (cell)

4. **Dr. Yousef El Hindi** — **Brother of Marwan El Hindi**
   Budapest, Hungary (Legal resident)
   011 367 0533 0634
   +36-70-533-0634 (Cell)
   + 1-775-317-9694 (Fax)

5. **Mohammed Othman El Hindi** — **Brother of Marwan El Hindi**

Sharjah-Bohaira (home)
Cormich Street
Abdul A2i2 Majed Tower
Bin Sina Pharmacy Tower
Flat 2208
Dubai
United Arab Emirates
PH: 00971-50-6595080 (mobile)
00971-6-5567440 (home)
Fax: elhindi@emirates.net.ae

Etisalat, P.O. Box 4499 (work)
Ajman, United Arab Emirates
T: (+971) 6 6744220
F: (+971) 6 6748000
M: (+971) 50 6595080 (Dubai)