**Steven T. Wax, OSB No. 85012**
**Federal Public Defender**
**101 SW Main Street, Suite 1700**
**Portland, OR  97204**
**Tel: (503) 326-2123**
**Fax: (503) 326-5524**
**Email: steve_wax@fd.org**

**Lawrence Matasar, OSB No. 74209**
**621 SW Morrison Street, Suite #1025**
**Portland, OR 97205**
**Tel: (503) 222-9830**
**Email: larry@pdxlaw.com**

**Attorneys for Defendant**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 05-60008 HO** |
| **Plaintiff,** | **MOTION TO COMPEL THE GOVERNMENT TO UTILIZE THE MUTUAL LEGAL ASSISTANCE TREATY ON BEHALF OF MR. SEDAGHATY AND/OR TO ISSUE LETTERS ROGATORY** |
| **v.** | |
| **PIROUZ SEDAGHATY,** | |
| **Defendant.** | |

Defendant, Pirouz Sedaghaty, through his attorneys, Federal Public Defender Steven T. Wax, and Lawrence Matasar, hereby moves the Court to order the government to use the Mutual Legal Assistance Treaty (MLAT) process and its resources to assist him in securing necessary witnesses and documents overseas. Alternatively, Mr. Sedaghaty seeks issuance of the attached Letter Rogatory to the Kingdom of Saudi Arabia to obtain documents and the presence of a witness at the trial in this case. Exhibit A. In the alternative, Mr. Sedaghaty seeks to use the letters rogatory process to take a deposition of a witness in Saudi Arabia. Mr. Sedaghaty also seeks to use the letter rogatory as a formal means of investigation and interviewing the potential witness in the Kingdom of Saudi Arabia.

As set out below, the government has utilized its international agreements to obtain evidence in this case. Mr. Sedaghaty is aware of highly exculpatory information that is central to this case but can only be obtained through the use of international agreements and diplomatic processes. Mr. Sedaghaty is aware of two distinct vehicles through which he could obtain the necessary evidence. One involves assistance from the government, the other solely involves the Court's exercise of its authority through the letter rogatory process. Mr. Sedaghaty believes that utilization of the government's MLAT authority would be a far more efficient process and presents the arguments in support of the Court's directing the government's cooperation in point II. In point III, he sets out support for use of the letter rogatory process.

I.      **FACTUAL BACKGROUND**

Mr. Sedaghaty is named in the first two counts of a three count Indictment.  The essence of the charges against him is that he conspired with Soliman Al Buthe to hide the fact Mr. Al Buthe took money from the United States to Saudi Arabia in order to give it to Chechen mujahadeen and falsified his tax return to cover up that transaction.  During the pretrial process, the government has advised that two government counsel traveled to the Russian Federation with government law enforcement agents as part of their investigation in this case and obtained documents from Russian Federation officials. The government has also advised that it intends to offer at trial documents obtained from the Russian Federation and present a witness from the Russian Federal Security Bureau.   The discovery provided by the government appears to reveal that it used the MLAT (002850 GOV) and Letter Rogatory (002288 GOV) process in order to obtain documents and witnesses from the Russian Federation.  Exhibit B.

In addition, the discovery contains an FBI 302 report of an interview conducted with Mr. Mahmoud Talaat Hassan El Fiki (the donor of the money in question) in Egypt.  Exhibit C. It is not clear, however, what process was used by the government to obtain the cooperation of the Egyptian government.  The interview report makes clear, however, that the Egyptian government was cooperating.  Indeed, its agents conducted the interview. The discovery and tentative witness and exhibit lists also contain reference to an Al Haramain Islamic Foundation, Inc. custodian of records and documents produced in Saudi Arabia.  With respect to these documents, the discovery does not reveal what process the government has, or intends to use, to obtain these documents and witnesses.

From the discovery produced by the government and through his own investigation, Mr. Sedaghaty has learned that there is exculpatory information in Saudi Arabia. The exculpatory information exists in the form of documents that are in the possession of the government of Saudi Arabia. Mr. Sedaghaty has learned that the government of Saudi Arabia is in possession of the original Al Haramain Saudi Arabia records, including receipts showing that Soliman Al Buthe deposited approximately $187,000 into the Al Haramain Saudi Arabia accounts on or about March 12 and 28, 2000. Exhibit D. Additionally, the government of Saudi Arabia is in possession of a summary and an affidavit of Al Haramain Islamic Foundation regarding the monies deposited to Al Haramain by Soliman Al Buthe. While both Mr. Sedaghaty and the government are in possession of copies of these receipts and other documents, Mr. Sedaghaty seeks the following:

1.    Certification of authenticity of the enclosed copies of the following documents (a) Al Haramain Islamic Foundation voucher # 263867; (b)Al Haramain Islamic Foundation voucher # 262740; (c) a summary report from Al Haramain charity Foundation to Soliman Al Buthe regarding the deposits made by Soliman Al Buthe; and (d) an Al Haramain Islamic Foundation affidavit regarding the monies deposited by Soliman Al Buthe.

2.    In the alternative to #1 above, an authenticated, certified copy of the original following documents as possessed by the government of Saudi Arabia (a) Al Haramain Islamic Foundation voucher # 263867; (b)Al Haramain Islamic Foundation voucher # 262740; (c) a summary report from Al Haramain charity Foundation to Soliman Al Buthe regarding the deposits made by Soliman Al Buthe; and (d) an Al Haramain Islamic Foundation affidavit regarding the monies deposited by Soliman Al Buthe.

3.    In addition, an authenticated, certified copy of the entries of voucher numbers 263867 and 262740 in the log referenced in the summary report from Al Haramain charity Foundation to Soliman Al Buthe regarding the deposits made by Soliman Al Buthe.

Exhibit D.

Page 4 -    **MOTION TO COMPEL THE GOVERNMENT TO UTILIZE THE MUTUAL LEGAL ASSISTANCE TREATY ON BEHALF OF MR. SEDAGHATY AND/OR TO ISSUE LETTERS ROGATORY**

The indictment against Mr. Sedaghaty includes the allegation that a portion of the donation from Mr. El Fiki that was intended for use by Chechen refugees was instead misdirected to Chechen mujahadeen and another portion was returned to Mr. Al Buthe and converted to his own use. The receipts demonstrating that Mr. Al Buthe deposited the full sum with Al Haramain Saudi Arabia so that it could be transmitted to Chechen refugees is, therefore, highly relevant and exculpatory, directly refuting one of the government's core allegations.

The second aspect of investigation Mr. Sedaghaty seeks to conduct in Saudi Arabia is an interview with Sami 'Abd Al 'Aziz Al-Sanad.  On March 18, 2008, the Court directed the government to provide the defense with a summary document prepared from classified material that states that the government of Saudi Arabia (or American or other intelligence officials) obtained information about and from Sami 'Abd Al 'Aziz Al-Sanad, believing that he was responsible for providing money to Chechen mujahadeen but instead learned that he provided money to and for Chechen refugees.  Exhibit E.  This information was provided to the defense because it is highly exculpatory and directly contradicts the core of the government's case.  Mr. Sedaghaty seeks to interview and obtain a detailed statement from Mr. Al-Sanad.  In these circumstances, it is critical that all of the resources of the Court and the government be made available to Mr. Sedaghaty to produce direct eyewitness testimony and exhibits that directly refute the government's allegations.

II.    **THE GOVERNMENT SHOULD BE COMPELLED TO UTILIZE THE MLAT WITH THE KINGDOM OF SAUDI  ARABIA IN ORDER TO FACILITATE THE INTRODUCTION OF SEVERAL DOCUMENTS AND ONE WITNESS AT MR. SEDAGHATY'S TRIAL.**

A.    **The Government Should Be Ordered To Use The MLAT To Obtain Certified Copies Of The Receipts Provided By Al Haramain USA To Soliman Al Buthe For The Money Deposited By Mr. Al Buthe With Al Haramain In March 2000 And An Interview Of Sami 'Abd Al 'Aziz Al-Sanad**

The MLAT process exists to be utilized by the United States government and other countries to obtain witnesses and evidence to further their investigations in prosecutions in criminal cases.  As a general proposition, the MLAT process is defined as one that is available to the government but not to defense counsel.  *See* Linda F. Ramirez, *Federal Law Issues In Obtaining Evidence Abroad - Part One*, 31 June Champ. 28, 31, 2007. When, however, the government utilizes the MLAT, or other diplomatic process, to obtain witnesses and evidence from foreign countries, due process requires that similar process be made available to the defense.  *See* U.S. Const. Amend. VI ("the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor").  If the government is not willing to utilize such process, then the law requires that evidence obtained by the government through such means be excluded.

While there is no law directly on point regarding the government's use of the MLAT or other diplomatic process to procure witnesses and evidence, when it refuses to assist the defense in the same manner, direct and analogous authority from the Ninth Circuit compels the Court to either order the government's participation as requested by the defense or exclude all evidence it has obtained overseas through similar process.  The

seminal case on this issue in the Ninth Circuit arose from this district, *United States v. Westerdahl*, 945 F.2d 1083, 1086-87 (9th Cir. 1991).  In that case, the government had granted immunity to a witness but refused a defense request to exercise its authority to grant immunity to a defense witness.  The Ninth Circuit held that to permit the government to utilize its executive power in this manner would distort the fact-finding process and reversed Mr. Westerdahl's conviction.  Upon remand, the district court was directed to consider one of two options, "if the district court determines that prosecutorial misconduct prevented defense witness Goldsberry from giving relevant testimony, the court shall either order a judgment of acquittal or grant any government request for use immunity for Goldsberry."  945 F.2d at 1088.

A series of Ninth Circuit cases have upheld the principle fully articulated in *Westerdahl,* most recently in *United States v. Straub*, 538 F.3d 1147, 1156-65 (9th Cir. 2008).  There, the court reiterated that the government's refusal to grant immunity to a defense witness denies the defendant a fair trial when (1) the witness's testimony would have been relevant, and (2) either (a) the prosecution intentionally caused the defense witness to invoke the Fifth Amendment right against self-incrimination with the purposes of distorting the fact-finding process; or (b) the prosecution granted immunity to a government witness in order to obtain that witness's testimony, but denied immunity to a defense witness whose testimony would have directly contradicted that of the government's witness, with the effect of so distorting the fact-finding process that the defendant was denied his due process right to a fundamentally fair trial.  *Straub*, 538 F.3d at 1162.  *See also, Westerdahl*, 945 F.2d at 1087 (recognizing that the second prong is

Page 7 -    **MOTION TO COMPEL THE GOVERNMENT TO UTILIZE THE MUTUAL LEGAL ASSISTANCE TREATY ON BEHALF OF MR. SEDAGHATY AND/OR TO ISSUE LETTERS ROGATORY**

met when an non-immunitized defense witness's testimony would conflict with the government's immunitized witness because without the defense witness the fact-finding is distorted).

In both the immunity and diplomatic contexts, the Executive branch of the government is generally perceived as exercising exclusive authority and full discretion. *Straub*, 538 F.3d at 1156 (quoting *United States v. Alessio*, 528 F.2d 1079, 1081-82 (9th Cir. 1976). The principles articulated in *Westerdahl* and *Straub* are equally applicable in the diplomatic context as they are in the immunity context. The fundamental due process and counsel rights are the same in both settings. As a result, what is normally purely a government prerogative, is cabined by the requirements of the Fifth and Sixth Amendments.

The facts available to this Court establish that the *Westerdahl* and *Straub* criteria are met. The evidence Mr. Sedaghaty seeks to obtain is indisputably relevant – it goes directly to the core aspects of the indictment. The evidence is directly contradictory of the government's evidence.

To permit the government to use its authority to produce information from abroad, but fail to require it to utilize the MLAT to allow the defense to produce witness and evidence that conflicts or contradicts the government's case, would distort the fact-finding process and deny Mr. Sedaghaty his due process right to a fair trial.

**B.    The Court Should Order Use Of The MLAT By "Walled Off" Government Counsel And Investigators.**

The Court may order the government to utilize the MLAT in a variety of ways. One

method of accomplishing the securing of exhibits would be for an attorney and investigator within the United States government to act on Mr. Sedaghaty's behalf in a manner in which he is "walled off" from the attorneys and investigators directly involved in this prosecution. Such a procedure has been used in a number of cases. Attached as Exhibit F are an order and letter describing the use of "walled off" counsel in *United States v. El Hindi*.

The walled off procedure is straightforward. First, an attorney within the United States government would act on behalf of Mr. Sedaghaty and would be "walled-off" from the government attorneys prosecuting Mr. Sedaghaty. This walled-off attorney would use the MLAT to obtain the receipts and obtain the interview with the witness sought for Mr. Sedaghaty's trial as a defense witness, or to appear for a deposition.

## III.    LETTERS ROGATORY

### A.    Letter Rogatory For In-Court Testimony

The letters rogatory process is available to tribunals in the United States as a method for obtaining evidence in foreign countries or as a means of requesting the assistance of foreign authorities in investigating a case pending in this country. *See* 28 U.S.C. § 1781(a)(2) ("The Department of State has power, directly, or through suitable channels . . . (2) to receive a letter rogatory issued, or request made, by a tribunal in the United States, to transmit it to the foreign or international tribunal . . . and to receive and return it after execution."). Letters rogatory may be issued by United States District Courts on behalf of defendants in criminal cases in order to secure in court testimony. *See* 28 U.S.C. § 1781(a)(2). *See also, United States v. Korogodsky,* 4 F.Supp.2d 262 (S.D.N.Y. 1998) (district courts can issue letters rogatory on behalf of defendants in criminal cases);

*United States v. Staples,* 256 F.2d 290, 292 (9th Cir. 1958) (stating that "[t]his Court, like all courts of the United States, has inherent power to issue Letters Rogatory"); *United States v. Reagan,* 453 F.2d 165, 172 (6th Cir. 1971) (stating that 28 U.S.C. § 1781 impliedly recognizes "the power of federal courts to transmit letters rogatory to foreign tribunals"); *United States v. Steele,* 685 F.2d 793, 809 (3d Cir. 1982) (stating that a federal district court in a criminal case has the power to issue requests for international judicial assistance or letters rogatory by virtue of Rule 28(b) of the Federal Rules of Civil Procedure, which is made applicable to criminal cases through Rule 15 of the Federal Rules of Criminal Procedure).

Here, Mr. Sedaghaty seeks to use the letters rogatory process as he would a Rule 17 subpoena to secure the presence of a witness and documents at his trial and to obtain the assistance of the Saudi Arabian authorities in investigation of this case in much the same way that the government obtains such assistance through MLAT requests.

Here, it is without dispute that the documents and the testimony of Mr. Al-Sanad are relevant. Both refute the core of the government's case that Mr. Sedaghaty improperly used the donation from Mr. El Fiki. Therefore, in the interests of justice, this Court may and should issue the Letters Rogatory on behalf of Mr. Sedaghaty.

## B.    Letters Rogatory For Depositions

An alternative route exists to secure the testimony described above. Rather than seeking his appearance in the United States, the Court could order that the witness be deposed in Saudi Arabia rather than appear at trial. Fed. R. Crim. P. 15(e) through Fed.

R. Civ. P. 28(b), authorizes the Court to issue letters rogatory to a foreign citizen to be deposed.

The rule authorizes depositions in order to preserve testimony for trial for reasons of exceptional circumstances and in the interest of justice.  Fed.R.Crim.P. 15(a)(1).  Under Fed.R.Crim.P. 15(e), depositions must be taken in the same manner as a deposition in a civil action.  For civil actions, Fed.R.Civ.P. 28(b)(1) sets forth how depositions may be taken in a foreign country: (A) under an applicable treaty or convention; (B) under a letter of request; (C) on notice, before a person authorized to administer oaths either by federal law or by the law in the place of examination; (D) before a person commissioned by the Court to administer any necessary oath and take testimony.

While the district courts are given broad discretion, they are directed to inquire into the materiality of the testimony sought and the unavailability at trial of the witnesses sought to be deposed.  Two district court cases are particularly helpful. *United States v. Trout,* 633 F.Supp. 150 (N.D. Ca. 1985), and *United States v. Jefferson,* 594 F.Supp. 2d 655 (E. D. Va 2009).   Both contain thorough discussions of the circumstances under which depositions should be ordered of foreign witnesses.

First, the Court should consider the materiality of the testimony sought. *Jefferson*, 594 F. Supp. 2d at 668.  Second, the Court should consider whether the witness would be unavailable for trial.  These issues are not, however, conclusive.  As the Ninth Circuit has stated, they are more conclusive of the admissibility of a deposition, than the propriety of ordering that one be taken.  *United States v. Omene*, 143 F. 3d 1167, 1170 (9th Cir. 1998). As stated on the question of unavailability for trial testimony in *United States v. Gianis,*

2008 WL 750587, *2 ( March 18, 2008), the fact that a person is beyond the subpoena power of the court supports granting a deposition even if the person might eventually decide to appear voluntarily.  The Court may also consider such factors as any danger to government officials in the taking of a deposition.  *See United States v. Olafson*, 213 F.3d 435, 442 (9th Cir. 2000).

In determining potential unavailability, a proponent of a deposition need not obtain an affidavit from the witness.  *Jefferson*, 594 F. Supp. at 665-66.  Unavailability can be established from other circumstances.

Exceptional circumstances exist requiring that Mr. Al-Sanad be deposed.  As stated above, there should be no question but the testimony sought is highly exculpatory on the central issue in the case.  There are no alternative witnesses.  Because the witness is in the Kingdom of Saudi Arabia and not a United States citizen, he cannot be subpoenaed to appear at Mr. Sedaghaty's trial.  *Gianis*, *2.  Mr. Al-Sanad has shown that he will comply with Saudi Arabian authorities by his participation in the interview disclosed in the material provided in discovery.  Mr. Sedaghaty is not able to locate or communicate with Mr. Al-Sanad without the assistance of the government and the Court.  Therefore, Mr. Sedaghaty relies on this Court to issue an order permitting Mr. Sedaghaty to depose Mr. Al-Sanad in the Kingdom of Saudi Arabia.

**CONCLUSION**

For all of the reasons set forth herein, the Court should order the government to use the MLAT process and its resources to assist him in securing necessary witnesses and documents overseas.  In the alternative, the Court should order the use of Letter Rogatory

to obtain documents and the testimony of Mr. Al-Sanad.  Two alternative orders are included with this pleading.

Respectfully submitted this 15th day of January, 2010.


/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender


/s/ Lawrence Matasar
Lawrence Matasar