KENT S. ROBINSON, OSB #09625
Acting United States Attorney
District of Oregon
**CHRISTOPHER L. CARDANI**
Assistant United States Attorney
405 East 8th Avenue, Suite 2400
Eugene, OR 97401
chris.cardani@usdoj.gov
Telephone:  (541) 465-6771
**CHARLES F. GORDER, JR.**, OSB #91287
charles.gorder@usdoj.gov
**RYAN W. BOUNDS**, OSB #00012
ryan.bounds@usdoj.gov
Assistant United States Attorneys
1000 S.W. Third Ave., Suite 600
Portland, OR  97204
Telephone:  (503) 727-1000
        Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CR 05-60008-02-HO** |
| **v.** | |
| **PIROUZ SEDAGHATY,** | **EXHIBIT C TO DECLARATION OF CHRISTOPHER L. CARDANI** |
| **Defendant.** | |
| **In re AL RAJHI BANK SUBPOENA** | **PART 1:** |
| | **(1)    MOTION TO QUASH** |
| **AL RAJHI BANKING & INVESTMENT CORP,** | **(2)    MEMORANDUM OF POINTS** |
| **Real party in interest** | **(3)    PROPOSED ORDER** |
| | **(4)    CERTIFICATE PER LCvR 7.1** |
| **Respondent.** | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

**Al Rajhi Banking & Investment Corporation,** )
**Al-Aqaria Building 3** )
**Olaya Road, Riyadh** )
**Saudi Arabia** )
 )
                    **Petitioner,** )
 )
            **v.** )
 )
**ERIC H. HOLDER, JR.,** )
**in his official capacity as Attorney General of** )
**the United States,** )
**950 Pennsylvania Avenue, NW, Room B-103** )
**Washington, DC  20530-0001** )
 )
**TIMOTHY F. GEITHNER,** )
**in his official capacity as Secretary of the** )
**Treasury,** ) **Misc. Action No.**
**1500 Pennsylvania Avenue, NW** )
**Washington, DC  20220** )
 )
 ) **MOTION TO QUASH**
**KENT S. ROBINSON,** ) **USA PATRIOT ACT SUBPOENA**
**in his official capacity as Acting United States** )
**Attorney for the District of Oregon,** )
**Portland District Office** )
**1000 SW Third Avenue, Suite 600** )
**Portland, Oregon  97204** )
 )
            **and** )
 )
**COLLEEN ANDERSON, in her official** )
**capacity as Special Agent for the Internal** )
**Revenue Service,** )
**960 Ellendale, Suite A** )
**Medford, Oregon  97504** )
 )
                    **Respondents.** )
_____

Petitioner Al Rajhi Banking and Investment Corporation, by and through undersigned counsel, respectfully moves this Court of an order quashing the administrative subpoena for foreign bank records that the Acting United States Attorney for the District of Oregon, acting as a duly authorized delegate of the Attorney General, issued on the Petitioner, under the purported authority of 31 U.S.C. §5318(k)(3) and enjoining Respondents from taking any action to terminate the Petitioner's correspondent relationships with its U.S. correspondent banks, or to cause those U.S. banks to terminate their correspondent relationships with Petitioner, for the reasons set forth in the accompanying Memorandum of Points and Authorities, and declarations of Timothy J. Coleman and Khalid A. Al-Thebity.

Dated: Jan. 15, 2010

Respectfully submitted,

Timothy J. Coleman (D.C. Bar No. 436415)
DEWEY & LEBOEUF LLP
1101 New York Avenue, NW
Washington, DC 20005-4213
Telephone: (202) 346-8000
Facsimile: (202) 346-8102

ATTORNEYS FOR PETITIONER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AL RAJHI BANKING & INVESTMENT CORPORATION,**<br>**Al-Aqaria Building 3**<br>**Olaya Road, Riyadh**<br>**Saudi Arabia**<br><br>        **Petitioner,**<br><br>    **v.**<br><br>**ERIC H. HOLDER, JR.,**<br>**in his official capacity as Attorney General of**<br>**the United States,**<br>**950 Pennsylvania Avenue, NW, Room B-103**<br>**Washington, DC  20530-0001**<br><br>**TIMOTHY F. GEITHNER,**<br>**in his official capacity as Secretary of the**<br>**Treasury,**<br>**1500 Pennsylvania Avenue, NW**<br>**Washington, DC  20220**<br><br>**KENT S. ROBINSON,**<br>**in his official capacity as Acting United States**<br>**Attorney for the District of Oregon,**<br>**Portland District Office**<br>**1000 SW Third Avenue, Suite 600**<br>**Portland, Oregon  97204**<br><br>    **and**<br><br>**COLLEEN ANDERSON, in her official**<br>**capacity as Special Agent for the Internal**<br>**Revenue Service,**<br>**960 Ellendale, Suite A**<br>**Medford, Oregon  97504**<br><br>        **Respondents.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **Misc. Action No.**<br>)<br>)<br>) **MEMORANDUM OF POINTS AND**<br>) **AUTHORITIES IN SUPPORT OF**<br>) **PETITIONER'S MOTION TO QUASH**<br>) **USA PATRIOT ACT SUBPOENA**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# TABLE OF CONTENTS

Page

Table of Authorities ...................................................................................................... iii

Introduction ...................................................................................................................1

Statement of Facts .........................................................................................................2

       A.      The Criminal Case .........................................................................3

             1.      The Indictment .............................................................3

             2.      Pretrial Proceedings .....................................................5

       B.      The Subpoena .................................................................................6

       C.      The Bank's Discussions with the Department of Justice .........................8

Argument ......................................................................................................................9

Applicable Legal Standards .........................................................................................10

Discussion ....................................................................................................................14

I.      SECTION 5318(k)(3) IS UNCONSTITUTIONAL BECAUSE IT AUTHORIZES THE GOVERNMENT TO ISSUE SELF-ENFORCING ADMINISTRATIVE SUBPOENAS .........................................................................................................14

       A.      The Determination that an Administrative Subpoena is Enforceable is Reserved for the Courts in Order to Ensure Fourth Amendment Protections ...................................................................................14

       B.      Section 5318(k)(3) Impermissibly Authorizes Justice and the Treasury to Enforce Administrative Subpoenas Without a Judicial Determination of Enforceability ...........................................................................16

II.     THE SUBPOENA SHOULD BE QUASHED BECAUSE IT WAS ISSUED FOR AN IMPROPER PURPOSE .....................................................................................17

       A.      The Subpoena Seeks Documents for Which the Attorney General and the Secretary Are Not Authorized to Issue a Subpoena ................................17

       B.      The Subpoena Is an Abuse of the USA PATRIOT Act's Administrative Subpoena Authority to Gather Evidence for the Criminal Trial ..........................18

III.    THE SUBPOENA SHOULD BE QUASHED BECAUSE COMPLIANCE
        WOULD REQUIRE THE BANK TO VIOLATE SAUDI LAW ON SAUDI
        TERRITORY ..................................................................................................................20

Conclusion .............................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Arizona State Board for Charter Schools v. Department of Education*,
 464 F.3d 1003 (9th Cir. 2006) ...............................................................................18

*Al-Haramain Islamic Foundation v. Bush*,
 451 F. Supp.2d 1215 (D. Or. 2006) ..........................................................................6

*Al-Haramain Islamic Foundation v. Bush*,
 507 F.3d 1190 (9th Cir. 2007) ..................................................................................6

*Beverly v. United States*,
 468 F.2d 732 (5th Cir. 1972) ..................................................................................13

*Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.*,
 467 U.S. 837 (1984)..................................................................................................17

*Doe v. Ashcroft*,
 334 F. Supp. 2d 471 (S.D.NY. 2004).......................................................................12

*Doe v. Gonzalez*,
 449 F.3d 415 (2d Cir. 2006).....................................................................................12

*Federal Land Bank of St. Paul v. Bismarck Lumber Co.*,
 314 U.S. 95 (1941)....................................................................................................18

*Franz v. United States*,
 591 F. Supp. 374 (D.D.C. 1984) .............................................................................10

*FTC v. Ken Roberts Co.*,
 276 F.3d 583 (D.C. Cir. 2001) ....................................................................10, 12, 17

*General Finance Corp. v. FTC*,
 700 F.2d 366 (7th Cir. 1983) ..................................................................................12

*ICC v. Brimson*,
 154 U.S. 447 (1894)............................................................................................15, 17

*ICC v. Gould*,
 629 F.2d 847 (3d Cir. 1980).....................................................................................15

*In re Grand Jury Proceedings (Diamante)*,
 814 F.2d 61 (1st Cir. 1987).......................................................................................13

*In re Grand Jury Proceedings (Johanson)*,
    632 F.2d 1033 (3d Cir. 1980)................................................................13

*In re Grand Jury Proceedings (Schofield)*,
    486 F.2d 85 (3d Cir. 1973)..................................................................19

*In re Grand Jury Subpoena*,
    218 F. Supp. 2d 544 (S.D.N.Y. 2002)...........................................21, 22

*In re National Security Agency Telecommunications Records Litigation*,
    564 F. Supp. 2d 1109 (N.D. Ca. 2008) ..................................................6

* *In re Sealed Case*,
    825 F.2d 494 (D.C. Cir. 1987)......................................................14, 21, 24

*Oklahoma Press Publishing Co.*,
    327 U.S. 186 (1946)............................................................................14

* *Resolution Trust Corp. v. Grant Thornton*,
    41 F.3d 1539 (D.C. Cir. 1994) ....................................................13, 18, 19

*See v. City of Seattle*,
    387 U.S. 541 (1967)............................................................................15

*United States v. Badger*,
    983 F.2d 1443 (7th Cir. 1993) ............................................................13

*United States v. Bailey*,
    228 F.3d 341 (4th Cir. 2000) ..............................................................14

*United States v. DeGrosa*,
    405 F.2d 926 (3d Cir. 1969)................................................................14

*United States v. Holy Land Foundation for Relief and Development*,
    No. 03-CR-240-P (N.D. Tex. May 29, 2007) ......................................13

*United States v. Jenkins*,
    904 F.2d 549 (10th Cir. 1990) ............................................................13

* *United States v. Morton Salt, Co.*,
    338 U.S. 632 (1950)..............................................................10, 12, 13, 15

*United States v. Moss*,
    756 F.2d 329 (4th Cir. 1985) ..............................................................13

*United States v. Phibbs*,
    999 F.2d 1053 (6th Cir. 1993) ............................................................13

*United States v. Sellaro*,
  514 F.2d 114 (8th Cir. 1973) ....................................................................13

*United States v. Star*,
  470 F.2d 1214 (9th Cir. 1972) ..................................................................13

*United States v. Sturm, Ruger & Co.*,
  84 F.3d 1 (1st Cir. 1996)...........................................................................14

*United States v. Vanwort*,
  887 F.2d 375 (2d Cir. 1989)......................................................................13

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952)..................................................................................15

## FEDERAL STATUTES

15 U.S.C. § 49.................................................................................................14

18 U.S.C. § 2709.............................................................................................12

18 U.S.C. § 3511(a)-(c)...................................................................................12

26 U.S.C. § 7402(b).........................................................................................14

28 U.S.C. § 1391(e) ..........................................................................................9

31 U.S.C. § 5316...............................................................................................4

31 U.S.C. § 5318(k) ............................................................................... *passim*

31 U.S.C. § 5318A.............................................................................................9

31 U.S.C. § 5318A(e)(1)(B) ...........................................................................11

USA PATRIOT Act of 2001,
  Pub. L. No. 107-56, 115 Stat. 272 ..............................................................1

USA PATRIOT Improvement and Reauthorization Act of 2005,
  Pub. L. No. 109-177, § 115, 120 Stat. 192 ...............................................12

## RULES

Federal Rules of Evidence 901 ......................................................................20

Federal Rules of Evidence 902 ......................................................................20

**OTHER AUTHORITIES**

DARA KHAMBATA, THE PRACTICE OF MULTINATIONAL BANKING: MACRO-POLICY ISSUES
AND KEY INTERNATIONAL CONCEPTS 24-25 (Quorum Books 1996) (1986) ..........................12

## Introduction

Al Rajhi Banking and Investment Corporation (the "Bank") respectfully submits this motion to quash an administrative subpoena that calls for the production of foreign bank records located in Saudi Arabia (the "Subpoena"). The statute authorizing the Attorney General to issue this so-called "Patriot Act subpoena," 31 U.S.C. § 5318(k)(3), purports to grant the executive branch the power to compel a foreign bank to produce documents located outside the United States without a court order. The statute thus creates a self-enforcing subpoena power that permits the government to punish noncompliance by depriving the respondent of valuable correspondent relationships with U.S. banks, without any prior judicial authorization. This unprecedented grant of administrative subpoena power is inconsistent with fundamental principles of due process, as articulated in the D.C. Circuit's jurisprudence on the constitutional limits of administrative subpoenas.

In this case, the Attorney General has exceeded even the expanded and controversial powers that Congress purported to grant in the USA PATRIOT Act of 2001, Pub. L. No. 107-56, 115 Stat. 272. The text of the statute limits the information that may be sought in a Patriot Act subpoena to records *related to a foreign bank's correspondent accounts* with U.S. banks. 31 U.S.C. § 5318(k)(3)(A)(i) (emphasis added). The Subpoena at issue, however, is not so limited. Rather, it seeks documents that are located in Saudi Arabia and that relate to a Saudi customer's account with the Bank – which have no apparent relationship to any correspondent account. The government does not assert that there is any relationship between those records and any of the Bank's U.S. correspondent accounts. Indeed, the Subpoena does not identify any such account, or even mention any correspondent account. Thus, the Subpoena is invalid because it was not issued for any purpose authorized by the statute.

Further, the Subpoena was issued for the improper purpose of obtaining authenticated bank records for use as evidence at trial.  The Attorney General's delegate, the Acting United States Attorney for the District of Oregon, issued the Subpoena to obtain evidence for use in a criminal trial in that district.  The Subpoena was issued more than four years after the indictment was returned, after extensive pretrial proceedings, and four months before the date set for trial. There is no basis for any claim by the government that the Subpoena seeks evidence for any continuing investigation of other wrongdoing.  Thus, it was improper for the government to issue an administrative subpoena to obtain evidence for use at trial, just as it would be improper to issue a grand jury subpoena for that purpose.

Finally, in the circumstances of this case, the Court should quash the Subpoena because compliance would violate Saudi law and subject the Bank to serious penalties in its home country.  Although the Bank has made good faith efforts to comply with the Subpoena, it has been instructed expressly by its regulating authority, the Saudi Arabian Monetary Agency ("SAMA"), that it is not permitted to provide the U.S. Government with the documents sought by the Subpoena.  In these circumstances, the Bank respectfully submits that the Court should quash the Subpoena, pursuant to D.C. Circuit precedent.

## Statement of Facts

Al Rajhi Bank is one of the largest banks in Saudi Arabia.  The Bank has its principal place of business in Riyadh, and maintains a network of branches throughout Saudi Arabia.  The Bank's stock is traded on the Saudi stock market.  A substantial portion of the Bank's stock is owned by the Al Rajhi family.  (Declaration of Khalid A. Al-Thebity, sworn to Oct. 21, 2009, ¶ 2 ("Al-Thebity Decl.").)

The Bank's international operations are limited.  In 2006, the Bank began operating in Malaysia.  It now maintains a small number of branches in that country.  The Bank does not have

any branches or offices in the United States.  The Bank maintains correspondent accounts with several U.S. banks.[1]  (Al-Thebity Decl. ¶¶ 3-4.)  As required by federal law, the Bank has authorized an agent to accept service of certain legal process, including the Subpoena at issue on this motion.[2]

### A.    The Criminal Case

This matter arises out of a criminal case pending in the District of Oregon.  The Bank has not been accused of any wrongdoing in connection with the case, and there has been no suggestion whatsoever that the Bank has engaged in any improper activity with respect to the case.  Rather, the government has sought to compel the Bank to provide authenticated copies of Saudi bank records for use as evidence in the trial of a defendant in that case.

### 1.    The Indictment

On February 17, 2005, a grand jury in the District of Oregon returned an indictment in a case entitled *United States v. Al-Haramain Islamic Foundation, Inc., Pirouz Sedaghaty, & Soliman Hamd Al-Buthe*, No. 6:05-CR-60008-HO.  The indictment charged all three defendants with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; Al-Haramain Islamic Foundation, Inc. ("Al-Haramain") and Sedaghaty were charged with filing a false tax return for a tax exempt organization, in violation of 26 U.S.C. § 7206(1); and Al-Buthe was

---

[1] The Bank has four correspondent accounts at U.S. banks.  The accounts are held at JPMorgan Chase Bank, N.A., Wachovia Bank, N.A., Standard Chartered Bank, New York, and a correspondent account used by the Bank's international brokerage, at Deutsche Bank.  (Al-Thebity Decl. ¶ 4.)

[2] Pursuant to the USA PATRIOT Act, 31 U.S.C. § 5318(k)(3)(b), a foreign bank that maintains a correspondent account in the United States must appoint an agent for service of process.  According to the Act, the agent must accept requests for records related to the correspondent account.  U.S. banks at which a foreign bank maintains correspondent accounts must keep records identifying the name and address of the foreign bank's agent for service of process.  The Bank's agent for service of process is a partner in the New York office of King & Spalding LLP, a U.S. law firm based in Atlanta.  (Declaration of Timothy J. Coleman, sworn to January 15, 2010, Ex. A ("Coleman Decl.").)

charged with failure to file a report of international transportation of currency or monetary instruments, in violation of 31 U.S.C. §§ 5316(a)(1)(A) and 5322, and 31 U.S.C. §§ 103.11 and 103.23.  (*See* Coleman Decl., Ex. B.)

The indictment alleges that an uncharged individual donated $150,000 to Al-Haramain to support the Muslim resistance in the breakaway Russian republic of Chechnya.  The funds were wired to an Al-Haramain bank account at a Bank of America branch in Oregon in February 2000.  Al-Buthe allegedly emailed Sedaghaty to verify that the funds had been received.  On or about March 7, 2000, Al-Buthe allegedly flew from Saudi Arabia to Oregon and entered the United States on a business visa.  On or about March 10, 2000, Sedaghaty and Al-Buthe allegedly purchased one hundred and thirty (130) $1,000 American Express Travelers Checks and a $21,000 Bank of America cashier's check with money derived from the funds provided by the donor.  Al-Haramain's copy of the cashier's check bore the handwritten notation, "Donation for Chichania Refugees."  Sedaghaty and Al-Buthe signed two documents stating that Al-Buthe received the donations for the Chechen refugees, that Al-Buthe relieved Sedaghaty of responsibility for these funds, and that he would deposit the funds at Al-Haramain's head office for the benefit of Chechen refugees.  (*See* Coleman Decl., Ex. B.)

The indictment alleges that Al-Buthe departed the United States for Saudi Arabia on or about March 12, 2000.  He allegedly carried the checks he and Sedaghaty had purchased without filing a Form 4790 (now known as FinCEN Form 105), *Report of International Transportation of Currency of Monetary Instruments*, as required by 31 U.S.C. § 5316.  Al-Buthe allegedly cashed the Traveler's Checks at the Bank on or before March 25, 2000, and allegedly deposited the cashier's check into his account at the Bank "sometime after March 12, 2000."  (*See*

Coleman Decl., Ex. B.)  As described more fully below, the Subpoena requests records concerning the deposit of these funds in Al-Buthe's personal account at the Bank.

### 2.   Pretrial Proceedings

At the time the indictment was returned, according to a United States Attorney's Office press release, both Sedaghaty and Al-Buthe were outside of the United States.  Less than six months later, on August 4, 2005, the government filed a motion to dismiss the charges against Al-Haramain.  In its press release, the U.S. Attorney explained that the government filed the motion to dismiss because the "two individual defendants who operated the charity have not been apprehended and the government does not want to proceed to trial piecemeal."  According to the press release, Al-Buthe had not been in the United States since 2001, and Sedaghaty left the United States in February 2003.  The case against Al-Haramain was dismissed on September 12, 2005, and the government filed a redacted indictment, with references to the foundation as "defendant" removed.  (*See* Coleman Decl., Exs. C, D.)

On August 15, 2007, Sedaghaty arrived in Portland, Oregon on a flight from Frankfurt, Germany.  He was arrested at the airport and taken into custody.  On November 30, 2007, he released on bail of $150,000.  On April 20, 2009, trial was set for November 30, 2009.  On August 7, 2009, Sedaghaty moved to continue the trial date.  A hearing on the motion was held on September 15, 2009.  In a December 8, 2009 scheduling order, the court set March 17, 2010 as the last day to exchange exhibits and file exhibit lists, and set a trial date of June 7, 2010.  (*See* Coleman Decl., Exs. C, E.)

On June 19, 2009, Sedaghaty filed a motion to suppress certain evidence seized pursuant to a search warrant and to compel the government to cease all searches of computers and electronic media seized pursuant to the warrant, which was executed on February 18, 2004.  Sedaghaty argued that the government's evidence should be suppressed as fruit of the poisonous

tree because the search warrant was based on information obtained through illegal, warrantless surveillance of Al-Haramain.[3]  Sedaghaty further argued that the evidence should be suppressed because the search exceeded the scope of the warrant, the warrant lacked probable cause, and the consent to the search and seizure given by Sedaghaty's son was not voluntary.  A hearing on the motions was held on July 13, 2009.  The court has not yet ruled on the motions.  The government's principal witness at the hearing was Special Agent Colleen Anderson of the Internal Revenue Service, who was also the affiant on the search warrant application.  (*See* Coleman Decl., Exs. C, F.)

**B.    The Subpoena**

Four days after the suppression hearing, on July 17, 2009, the Acting United States Attorney for the District of Oregon, acting as the authorized delegate of the Attorney General, issued an administrative subpoena for foreign bank records on the Bank.  The Subpoena was issued under the authority of 31 U.S.C. § 5318(k)(3).  A copy of the Subpoena is attached as Exhibit G to the Declaration of Timothy J. Coleman.  The Subpoena calls for the production of "authenticated copies of certified bank records" for Al-Buthe's personal account at the Bank.  Among the items requested were records relating to the central transactions alleged in the

---

[3] The surveillance of Al-Haramain is also the subject of litigation in *In re National Security Agency Telecommunications Records Litigation*, 564 F. Supp. 2d 1109 (N.D. Ca. 2008).  Al-Haramain and additional individuals sued the government, alleging, among other things, that the government engaged in "electronic surveillance to monitor conversations between and among plaintiffs as targeted persons without obtaining prior court authorization" (*id.* at 1111 (internal citation omitted)) and subsequently used that information, in violation of the Foreign Intelligence Surveillance Act, 50 U.S.C. §§ 1801-1871 ("FISA").  The district court denied the government's motion to dismiss, but granted its motion to prevent the plaintiffs from accessing a mistakenly disclosed sealed document on state secrets grounds.  *Al-Haramain Islamic Found. v. Bush*, 451 F. Supp.2d 1215 (D. Or. 2006).  The court of appeals affirmed the ruling that the state secrets privilege protected the document.  *Al-Haramain Islamic Found. v. Bush*, 507 F.3d 1190 (9th Cir. 2007).  On remand to determine whether "FISA preempts the state secrets privilege," the district court dismissed the case, with leave to amend.  *564 F. Supp. 2d* at 1111.

indictment – the March 2000 cashing of 130 $1,000 American Express Traveler's Checks and the deposit of the $21,000 Bank of America cashier's check.

As mentioned above, the Subpoena was issued four days after the suppression hearing, and almost three months after the November 30, 2009 trial date was set. The Subpoena focuses on documents pertaining to Al-Buthe's deposit of the traveler's checks and cashier's check mentioned in the indictment. The Subpoena does not seek any information about any correspondent account. Indeed, the term "correspondent account" is not used anywhere in the Subpoena. The only bank mentioned in the Subpoena other than Al Rajhi Bank is Bank of America, at which the Bank does *not* maintain a correspondent account. The Bank has not received any other requests for the information sought by the Subpoena.

The Subpoena required that the bank records be provided to Special Agent Anderson in Medford, Oregon, by August 28, 2009. On August 28, 2009, at the request of the Bank, the Assistant United States Attorney handling the criminal case agreed to adjourn the return date of the Subpoena. The current return date of the Subpoena is January 29, 2010. (Coleman Decl. ¶ 17.)

Based on concerns that compliance with the Subpoena would violate Saudi law, the Bank requested guidance from its regulator, SAMA. On September 1, 2009, the Bank submitted a written request to SAMA for permission to comply with the Subpoena. (Al-Thebity Decl., Exs. E, F.) Later that month, the Bank received a response from SAMA, which confirmed that the Bank was required to obtain SAMA's permission before complying with the Subpoena. SAMA's letter stated that it would be a criminal offense for the Bank to disclose the requested information without prior Saudi government approval. SAMA advised the Bank that it would not permit it to comply with the request because the request had not been submitted through the

appropriate diplomatic channels.  The letter stated that "[t]he proper method of delivering any request for documents would be through the service of letters rogatory in the manner usual in international relations."  Finally, the letter instructed the Bank to "inform the United States authorities" that it could not comply with the Subpoena.  (Al-Thebity Decl., Ex. G.)  After receiving SAMA's letter, the Bank's counsel forwarded a copy of it to the United States Attorney's office.  (Coleman Decl. ¶ 13.)

> C.    **The Bank's Discussions with the Department of Justice**

The Bank, though its U.S. counsel, has had numerous conversations with the Department of Justice ("Justice"), in an attempt to resolve the issue of the Subpoena without resorting to litigation.  During this period, Justice repeatedly extended the return date of the Subpoena, in some occasions on the Bank's request.  On December 23, 2009, Justice extended the return date to January 29, 2010. (Coleman Decl. ¶¶ 11-18.)

On September 24, 2009, the Bank provided Justice with copies of its letter to SAMA requesting permission to comply with the Subpoena and SAMA's letter prohibiting the Bank from complying.  During a telephone call between the Bank and Justice held that day, Justice informed the Bank that the government had taken unspecified diplomatic steps to attempt to obtain the documents requested in the Subpoena.  On November 9, 2009, the Bank, Assistant United States Attorneys for the District of Oregon and an attorney from Justice's Office of International Affairs, met by telephone to discuss the Subpoena and the government's previous diplomatic efforts to obtain the documents.  The Bank was informed that these efforts included a treaty request under the International Convention for the Suppression of the Financing of Terrorism, but did not include a letter rogatory.  The Bank suggested that, if Justice provided additional details regarding its diplomatic efforts to obtain the records, the Bank would to work

with Saudi authorities in an effort to obtain permission to comply with the Subpoena.  (Coleman Decl. ¶¶ 13-15.)

On December 23, 2009, Justice informed the Bank that it had decided not to provide the Bank with additional information regarding its efforts to obtain the records demanded in the Subpoena.  Justice informed the Bank that the government was weighing various options regarding the Subpoena.  Justice noted that some of the options under consideration could adversely affect the Bank, and cited another USA PATRIOT Act provision, 31 U.S.C. § 5318A. (Coleman Decl. ¶ 17.)  Section 5318A is a provision that allows the Secretary of the Treasury to designate a foreign financial institution as being of primary money laundering concern.  Once the designation is made, the Secretary can require domestic financial institutions to take one or more of five special measures outlined in the statute.  The fifth measure, which is of most concern to the Bank, prohibits or restricts domestic financial institution's ability to maintain correspondent accounts with the designated foreign financial institution.  This measure is imposed only through formal rule making.  Based on Justice's threat, the Bank has concluded that is has no choice but to file this action to challenge the enforceability of the Subpoena.

## **Argument**

This Court has subject matter jurisdiction because 31 U.S.C. § 5318(k)(3)(C)(i) provides that the Bank may "initiate proceedings in a United States court contesting" the Subpoena."[4] Thus, the Bank may bring an action in any federal district court.

Venue lies in this district because two of the Respondents reside in this district and under 28 U.S.C. § 1391(e), "[a] civil action in which a defendant is an officer or employee of the

---

[4] The Bank was forced to bring this action challenging the Subpoena because Section 5318(k) authorizes the Attorney General and the Secretary of the Treasury to cause the termination of its correspondent banking relationships in the United States.  The Bank does not waive any defense available to it based on lack of personal jurisdiction with respect to any claims that may be made against it in the United States.

United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which . . . a defendant in the action resides."  *See Franz v. United States*, 591 F. Supp. 374, 377 (D.D.C. 1984) (holding that the Attorney General resides in Washington, D.C. and venue in D.C. was appropriate under 28 U.S.C. § 1391(e)(1) because "[t]he residence of an official defendant is determined on the basis of the official residence of the federal officer or agency.").

The Subpoena should be quashed for the following reasons:  (1) the statute under which the Subpoena was issued is unconstitutional, because it gives the Department of the Treasury ("Treasury") and Justice, collectively the "Departments," the power to issue self-enforcing administrative subpoenas; (2) the Subpoena seeks production of documents that are of not the type that may be subpoenaed under the authorizing statute; (3) the Subpoena was issued for the improper purpose of conducting post-indictment discovery in aid of a criminal case; and (4) compliance would compel the Bank, a foreign person, to violate the laws of a foreign sovereign on that sovereign's own territory.

## Applicable Legal Standards

An administrative subpoena is a mechanism by which administrative agencies can carry out their law enforcement and investigative functions.  *See United States v. Morton Salt, Co.*, 338 U.S. 632, 642 (1950).  Generally, administrative subpoenas can have a broader scope than judicial subpoenas.  However, they can only be *enforced* by the courts.  *Id*. at 643 ("The decree is always what the court makes it; the court's jurisdiction to review is and remains exclusive, its judgment final.").  The D.C. Circuit has held that "while the courts' role in subpoena enforcement may be a 'strictly limited' one, it is neither minor nor ministerial."  *FTC v. Ken Roberts Co.*, 276 F.3d 583, 587 (D.C. Cir. 2001).

10

Section 5318(k)(3)(A)(i) authorizes the Attorney General or the Secretary of the Treasury to issue an administrative subpoena or summons to:

> [A]ny foreign bank that maintains a correspondent account in the United States and request records related to such correspondent account, including records maintained outside of the United States relating to the deposit of funds into the foreign bank.

Any bank that maintains a correspondent account in the United States for a foreign bank ("Covered Financial Institution") must maintain records identifying the name and address of a person in the United States authorized to accept "service of legal process for records regarding the correspondent account." Section 5318(k)(3)(B)(i). Covered Financial Institutions must terminate correspondent account relationships with a foreign bank within 10 days after receiving notice from the Attorney General or the Secretary of the Treasury that the foreign bank received a subpoena or summons under this statute and has not either complied or initiated court proceedings challenging the subpoena. The Attorney General and the Secretary of the Treasury must consult with each other before giving Covered Financial Institutions such a notice. If after 10 days the Covered Financial Institution has not closed the correspondent account, it is liable for a civil penalty of up to $10,000 a day until it does so.

A correspondent account is "an account established to receive deposits from, make payments on behalf of a foreign financial institution, or handle other financial transactions related to such institution," 31 U.S.C. § 5318A(e)(1)(B). For foreign banks that do not have a physical presence in the United States, such as a branch or representative office, correspondent banking has customarily served as an efficient and flexible way to maintain certain operations in the United States and offer their clients access to U.S. banking facilities.[5]

---

[5] "For many banks, correspondent banking is the best alternative to today's banking environment, despite its lower spreads and profitability. They see it as a relatively cheap, easy and flexible way to enter and operate in foreign markets . . . indeed it may be the only type of

The power of agencies to issue administrative subpoenas has been upheld against constitutional challenge because the subpeonas are not self-enforcing and can only be enforced by a court.[6]  It is well-settled that a district court can quash an administrative subpoena.  While administrative agency subpoena power is broad, it is nonetheless constrained by the relevant authorizing statute.  An administrative subpoena is enforceable only if "the inquiry is *within the authority of the agency*, the demand is not too indefinite and the information sought is reasonably relevant."  *Morton Salt Co.*, 338 U.S. at 652 (emphasis added).  Therefore, "there is no doubt that a court asked to enforce a subpoena will refuse to do so if the subpoena exceeds an express statutory limitation on the agency's investigative powers."  *Ken Roberts Co.*, 276 F.3d at 586 (quoting *Gen. Fin. Corp. v. FTC*, 700 F.2d 366, 369 (7th Cir. 1983)).

Among the improper purposes on which an administrative subpoena may be quashed is the use of such a subpoena to gather evidence for trial.  The D.C. Circuit has treated

---

involvement of foreign banks many governments will permit in their countries."  DARA KHAMBATA, THE PRACTICE OF MULTINATIONAL BANKING: MACRO-POLICY ISSUES AND KEY INTERNATIONAL CONCEPTS 24-25 (Quorum Books 1996) (1986).

[6] The constitutionality of National Security Letters ("NSLs") issued under the authority of another USA PATRIOT Act provision, 18 U.S.C. § 2709, was challenged in *Doe v. Ashcroft*, 334 F. Supp. 2d 471 (S.D.NY 2004).  The original wording of the statute, which was found to violate the Fourth Amendment, failed to provide (1) any provision for the government to seek judicial enforcement of NSLs, (2) any provision authorizing an NSL recipient to challenge an NSL, or (3) any provision elaborating upon the penalties for non-compliance with an NSL.  However, by the time the Second Circuit reviewed the district court's determinations, the statute had been amended to permit a recipient to petition a district court, to mandate that the Attorney General invoke the aid of a district court in the case of noncompliance, to explicitly provide for judicial enforcement of NSLs, and to specify the punishment for noncompliance as contempt of court.  *See* USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, § 115, 120 Stat. 192 (codified as amended at 18 U.S.C. § 3511(a)-(c)).  The plaintiffs dropped their Fourth Amendment claims subsequent to those amendments and the constitutionality of the prior version of the statute was not considered by the Second Circuit.  *See Doe v. Gonzalez*, 449 F.3d 415 (2d Cir. 2006).  Notably, the amended statute specifically provides that the *sole* route by which the Attorney General may seek to compel compliance with an NSL is an enforcement proceeding in a district court, and that the *sole* penalty for noncompliance will be contempt of court.  Thus, unlike Section 5318(k)(3), Section 2709, as amended, does not authorize the issuance of self-enforcing demands for information.

administrative subpoenas as analogous to grand jury subpoenas in this regard.  It is black letter law that the government may not use a grand jury subpoena to collect evidence for a criminal trial once an indictment has been returned.  *Resolution Trust Corp. v. Grant Thornton*, 41 F.3d 1539, 1546 (D.C. Cir. 1994) (citing *United States v. Phibbs*, 999 F.2d 1053, 1077 (6th Cir. 1993); *United States v. Badger*, 983 F.2d 1443, 1458 (7th Cir. 1993); *United States v. Jenkins*, 904 F.2d 549, 559 (10th Cir. 1990); *United States v. Vanwort*, 887 F.2d 375, 387 (2d Cir. 1989); *In re Grand Jury Proceedings (Diamante)*, 814 F.2d 61, 70 (1st Cir. 1987); *United States v. Moss*, 756 F.2d 329, 332 (4th Cir. 1985); *In re Grand Jury Proceedings (Johanson)*, 632 F.2d 1033, 1041 (3d Cir. 1980); *United States v. Sellaro*, 514 F.2d 114, 122 (8th Cir. 1973); *United States v. Star*, 470 F.2d 1214, 1217 (9th Cir. 1972); *Beverly v. United States*, 468 F.2d 732, 743 (5th Cir. 1972)).  The same rule applies to administrative subpoenas, because "an administrative agency's subpoena power is analogous to that of a grand jury."  *Resolution Trust Corp. v. Grant Thornton*, 41 F.3d at 1546; *see also Morton Salt Co.*, 338 U.S. at 642-43 (stating that an administrative subpoena is distinguishable from a judicial subpoena and is "more analogous to the Grand Jury").[7]

The D.C. Circuit has also held that a court may quash a subpoena if it would require the respondent to violate foreign law.  Thus, the court has stated that "it causes us considerable discomfort to think that a court of law should order a violation of law, particularly on the

---

[7] The government appears to view so-called Patriot Act Subpoenas as the functional equivalent of grand jury subpoenas.  In the government's trial brief filed in *United States v. Holy Land Foundation for Relief and Development*, No. 03-CR-240-P (N.D. Tex. May 29, 2007) the government stated: "A Bank of Nova Scotia grand jury subpoena is issued to a foreign bank that has a branch in the United States. . . . A Patriot Act Subpoena [a subpoena issued under Section 5318(k)] is not a grand jury subpoena but is an administrative subpoena authorized by the Attorney General or the Secretary of the Treasury.  It is designed to be used in situations where the foreign bank does not have a branch in the United States but instead has a correspondent account."  (Coleman Decl., Ex. H at 41 n.2.)

territory of the sovereign whose law is in question."  *In re Sealed Case*, 825 F.2d 494, 498 (D.C. Cir. 1987) (declining to enforce subpoena).

**Discussion**

**I.     SECTION 5318(k)(3) IS UNCONSTITUTIONAL BECAUSE IT AUTHORIZES THE GOVERNMENT TO ISSUE SELF-ENFORCING ADMINISTRATIVE SUBPOENAS**

**A.     The Determination that an Administrative Subpoena is Enforceable is Reserved for the Courts in Order to Ensure Fourth Amendment Protections**

In every instance other than Section 5318(k)(3), in cases where Congress has given a government agency the power to issue subpoenas, the agency has not been granted the power to enforce its own subpoenas.  *See, e.g.*, Federal Trade Commission Act, 15 U.S.C. § 49; Internal Revenue Service Act, 26 U.S.C. § 7402(b).  Rather, the issuing agency must bring an enforcement proceeding in a district court if the recipient does not comply.  This limitation on an agency's subpoena power is grounded in the Fourth Amendment's guarantee against "unreasonable searches and seizures."

Administrative subpoenas are "constructive searches" that are subject to judicial review *after* they are served, as opposed to "actual searches," which are subject to judicial scrutiny prior to government action.  *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 3 (1st Cir. 1996) (noting that the subject of an administrative subpoena has the ability to challenge the subpoena before yielding information, and may raise Fourth Amendment claims in the process).  Judicial review is required *before* a party may be forced to comply or punished for noncompliance.  *United States v. DeGrosa*, 405 F.2d 926, 929 (3d Cir. 1969) (citing *Okla. Press Publishing Co.*, 327 U.S. 186, 216-17 (1946)).  The constitutional validity of administrative subpoena legislation rests on the reservation of enforcement authority to the judiciary, rather than to the executive branch. *See United States v. Bailey*, 228 F.3d 341, 348 (4th Cir. 2000) ("As judicial process is afforded

14

before any intrusion occurs, the proposed intrusion is regulated by, and its justification derives from, that process.").

The courts have held that it is the government's burden to satisfy a court that the search or seizure it seeks is reasonable. *See ICC v. Gould*, 629 F.2d 847, 855 (3d Cir. 1980) (setting forth standard of reasonableness ICC must satisfy for enforcement of administrative subpoenas). The burden requires the issuing agency to demonstrate to the court's satisfaction that its "inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *Morton Salt Co.*, 338 U.S. at 652.

Section 5318(k)(3) impermissibly allows the government to circumvent judicial review of the enforceability of a subpoena and decide the issue itself. In *ICC v. Brimson*, 154 U.S. 447, 485 (1894), the Supreme Court emphasized that the question of whether a subpoenaed party is bound to comply with the subpoena "is one that cannot be committed to a subordinate administrative or executive tribunal for final determination." *See also See v. City of Seattle*, 387 U.S. 541, 544-45 (1967) (holding that an administrative subpoena "may not be made and enforced by [an] inspector in the field"); *Brimson*, 154 U.S. at 487 ("[t]he performance of [a] duty which, according to the contention of the government, rests upon the defendants, cannot be directly enforced except by judicial process."). Thus, the federal courts have made it clear that Congress may not empower an administrative agency to enforce a subpoena by penalizing the respondent for non-compliance absent a judicial determination that the subpoena is enforceable.[8]

---

[8] Allowing administrative agencies the power to enforce their own subpoenas may also pose separation of powers issue. Providing the agency this power may cause the "accretion of dangerous power" by one segment of the government, an issue that the separation of powers doctrine is meant to protect against. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 594 (1952) (Frankfurter, J., concurring).

**B.    Section 5318(k)(3) Impermissibly Authorizes Justice and the Treasury to Enforce Administrative Subpoenas Without a Judicial Determination of Enforceability**

The subpoena that Section 5318(k)(3) authorizes is plainly self-enforcing:  if a foreign bank fails either to comply with or to contest the subpoena, Section 5318(k)(3) empowers Justice and the Treasury to command the U.S. bank where the foreign bank has its correspondent account to close that account or face a substantial daily fine.  Thus, the statute establishes a process that is fundamentally inconsistent with the constitutional requirement that a *judicial* determination of a subpoena's reasonableness be made prior to the imposition of any penalty for noncompliance.

Additionally, the penalty that Section 5318(k) gives the Departments the power to impose – the termination of a foreign bank's correspondent accounts in the United States – is punitive rather than coercive.  Once inflicted, the penalty does not incentivize compliance with the subpoena, and there is no provision for the penalty to be lifted if the respondent complies.  In sharp contrast, penalties imposed by courts for noncompliance with their enforcement orders, such as daily fines, are removed once the respondent complies with the court's order.[9]

The power of agencies to issue subpoenas is broad; this power may not be augmented by forcing parties with good-faith motivations for not complying with administrative subpoenas to shoulder the substantial burden of bringing a court action challenging the subpoena.  The statute's grant of enforcement authority is thus fundamentally inconsistent with the principle that government agencies cannot, "under our system of government, and consistently with due

_____

[9] Even if this Court denies this motion to quash, sanctions could only result from a subsequent refusal to abide by the Court's order, and the only appropriate sanctions would be those that arise from orders of contempt.  Thus, this Court should enjoin Respondents from taking any action to cause the termination of the Bank's correspondent banking relationships in the United States.

process of law, be invested with authority to compel obedience to [their] orders by a judgment of fine or imprisonment." *Brimson*, 154 U.S. at 485.  The statute is therefore unconstitutional.

## II.    THE SUBPOENA SHOULD BE QUASHED BECAUSE IT WAS ISSUED FOR AN IMPROPER PURPOSE

### A.    The Subpoena Seeks Documents for Which the Attorney General and the Secretary Are Not Authorized to Issue a Subpoena

The records sought by the Subpoena are account records for a personal bank account, held by a Saudi national, at a Saudi bank, in Saudi Arabia.  The Subpoena makes absolutely no reference to any of the Bank's correspondent accounts.  There is nothing in the subpoena on which the court could base a finding that the requested records relate, in any way, to the Bank's correspondent accounts.  Thus, the records are not of the type that can be subpoenaed under Section 5318(k)(3).  Because "there is a patent lack of jurisdiction in an agency to regulate or to investigate" and subpoena these documents, the Subpoena must be quashed.  *Ken Roberts Co.*, 276 F.3d at 587 (internal quotations and citation omitted).

Where the plain meaning of a statute is clear, an agency acting under the authority of that statute, and a court reviewing that agency's actions, "must give effect to the unambiguously expressed intent of Congress."  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).  The statutory language in Section 5318(k)(3) is clear and unambiguous. Section 5318(k)(3) provides Justice and the Treasury the authority to subpoena or summon a limited class of records.

Under this statute, the government may only issue a subpoena to a foreign bank that has a correspondent account in the United States and demand "*records related to such correspondent account*, including records maintained outside the United States relating to the deposit of funds into the foreign bank."  31 U.S.C. § 5318(k)(3)(A)(i) (emphasis added).  The phrase "including" "is not one of all-embracing definition, but connotes simply an illustrative application of the

general principle." *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100

(1941); *see also Ariz. State Bd. for Charter Schs. v. Dep't of Educ.*, 464 F.3d 1003, 1007 (9th

Cir. 2006) ("In both legal and common usage, the word 'including' is ordinarily defined as a

term of illustration, signifying that what follows is an example of the preceding principle.").

Under this plain meaning, the statutory phrase "*including* records maintained outside the United

States relating to the deposit of funds into the foreign bank" simply illustrates that correspondent

account-related documents can be summoned or subpoenaed whether they are in the United

States or abroad.  However, the phrase does not expand the scope of the subpoena power to

records maintained abroad that *are not* related to correspondent accounts.

Reading "including" as illustrative provides a "rational, common-sense result" and

therefore "an alteration of meaning is not only unnecessary, but also extrajudicial."  *Ariz. State

Bd. for Charter Schs.*, 464 F.3d at 1008.  In *Arizona State Board for Charter Schools*, the court

held that the term "including" in a statute that read "a nonprofit institutional day or residential

school, including a public . . . charter school" (*id.* at 1005) was illustrative and that therefore "the

statute indicates that the definition includes the subset of charter schools that complies with the

preceding nonprofit principle, while excluding the subset that violates the nonprofit

requirement."  *Id.* at 1008.  Similarly, the "records maintained outside the United States relating

to the deposit of funds into the foreign bank" that comply with the preceding requirement of

relation to a correspondent account may be subpoenaed, but those that do not, may not.

### B.    The Subpoena Is an Abuse of the USA PATRIOT Act's Administrative Subpoena Authority to Gather Evidence for the Criminal Trial

An administrative subpoena may not be used to gather evidence for trial.  In *Grant

Thornton*, the Resolution Trust Corporation (the "RTC") issued administrative subpoenas for

Grant Thornton's financial and insurance information, in its investigation relating to two separate

failed savings associations. *Grant Thornton,* 41 F.3d at 1546. The purpose of the subpoenas was to determine whether it was cost-effective to pursue litigation against the company. The RTC sought an order enforcing the subpoenas four days after it filed suit against Grant Thornton, alleging misconduct relating to one of the saving association's losses. The district court entered an order enforcing the subpoenas, and Grant Thornton appealed. The D.C. Circuit reversed the order enforcing the subpoena that was part of the investigation that culminated in the filed lawsuit. In reversing the enforcement order, the court stated that the RTC's power to subpoena financial records for the purpose of determining the cost effectiveness of pursuing litigation ceased once it filed suit. The court held that, after litigation commences, an agency's subpoena power only survives where it "seeks to uncover *additional wrongdoing*." *Id*. at 1547. The court further stated that the investigative power that the RTC was asserting, that is, "a power that effectively would allow the RTC to use subpoenas in aid of ongoing litigation . . . is *utterly foreign to the law defining the traditional scope of investigative authority*." *Id*. (emphasis added). *See also In re Grand Jury Proceedings (Schofield)*, 486 F.2d 85, 91 (3d Cir. 1973) ("If the court concludes that an administrative subpoena has been issued for the purposes of developing a criminal case it will decline enforcement.").

Similarly, in this case, it is obvious that the government seeks to use its administrative subpoena power to collect evidence for trial. The Subpoena was issued four days after the hearing on Sedaghaty's motion to suppress the government's evidence against him. As described above, Sedaghaty argued that the government's evidence should be suppressed because it was obtained as a result of illegal surveillance, and was therefore fruit of the poisonous tree. Based on the timing of the Subpoena, it is reasonable to infer that the government is seeking untainted copies of key evidence. Additionally, the Subpoena specifies

that the records must be "authenticated."  The fact that the Subpoena requires production of "authenticated copies of certified bank records" supports the conclusion that the government seeks the documents for use as evidence at trial.  *See* Fed. R. Evid. 901, 902.

The specifications in the Subpoena are carefully tailored to obtain evidence to prove facts alleged in the indictment.  The indictment alleges that Al-Buthe did not file a Form 4790, *Report of International Transportation of Currency of Monetary Instruments*, when he exported one hundred and thirty (130) $1,000 American Express Travelers Checks and a $21,000 Bank of America Cashier's check.  The indictment further alleges that Al-Buthe cashed and deposited these checks at the Bank, on or about March 2000.  (Coleman Decl., Ex. B at 11.)  The Subpoena requests records relating to these precise transactions.

It is hard to conceive how the documents requested in the Subpoena could be related to any wrongdoing not already the subject of the related criminal proceedings.  The indictment was returned almost five years ago.  With the exception of one revision, removing references to the Al-Haramain Foundation as a defendant, no changes were made to the indictment since it was returned.  There is no basis to believe that there are additional allegations that the government is developing at this late stage.  There is no other apparent law enforcement purpose for the Subpoena.

As shown above, collecting evidence for trial is an improper purpose for an administrative subpoena.  Because this is precisely what this Subpoena seeks to do, the Subpoena must be quashed.

## III.    THE SUBPOENA SHOULD BE QUASHED BECAUSE COMPLIANCE WOULD REQUIRE THE BANK TO VIOLATE SAUDI LAW ON SAUDI TERRITORY

The D.C. Circuit has held that an administrative subpoena may be quashed if compliance would require violating a foreign sovereign's law on that sovereign's territory.  In *In re Sealed*

*Case*, the court vacated the district court's order holding a foreign bank in contempt for violating an order compelling compliance with a grand jury subpoena for customer banking records created in "Country Y."  825 F.2d at 495.  The bank argued that the laws of Country Y made it a criminal offense to provide the requested information, and that the district court therefore erred in entering the contempt order.  In reversing the contempt order, the court held that, while it would not decide "the general issue of whether a court may ever order action in violation of foreign laws," it was inappropriate to do so under the circumstances of the case.  *Id*. at 495, 497-98.

Central to the court's holding was the fact that the contempt order represented "an attempt by an American court to compel a foreign person to violate the laws of a different foreign sovereign on that sovereign's own territory."  *Id*. at 498.  The court also noted that the bank was a third party, was not accused of any wrongdoing, and was not a focus of the criminal investigation.  *Id.*  An additional factor noted by the court was the fact that the district court had specifically found that the bank had acted in good faith throughout the proceedings.  *Id.*

There are cases in other circuits where courts have enforced grand jury subpoenas even though compliance would violate foreign law.  For example, in *In re Grand Jury Subpoena*, 218 F. Supp. 2d 544 (S.D.N.Y. 2002), the district court ordered a merchant bank headquartered in New York City to produce documents maintained abroad, even though production of those documents would violate the laws of the country in which they were maintained.  However, *In re Grand Jury Subpoena* can be distinguished from *In re Sealed Case* in several ways.  The recipient of the subpoena in *In re Grand Jury Subpoena* was the target of the criminal investigation.  218 F. Supp. 2d at 547.  Additionally, because the bank was based in New York and had foreign offices, the court found that the hardship it might suffer as a result of compliance

21

was mitigated, because "to some extent businesses that serve two sovereigns assume the risk of conflicting legal imperatives." *Id*. at 563 (internal citations omitted). The court also found that the bank did not act in good faith and had "courted legal impediments" to compliance. *Id*. The bank's president and principal owner "sought advice from the Ministry of Justice intended to elicit support for resisting anticipated subpoenas from the grand jury" and in letters to the Ministry of Justice "suggest[ed] bases for non-compliance." *Id*. at 563-64. Additionally, the foreign sovereign's interest in enforcing its laws was diminished because the investigation involved Foreign Corrupt Practices Act allegations and a "foreign government that is alleged to be a recipient of bribes from an American corporation cannot be permitted to bring a grand jury investigation to a halt . . . by declaring the American corporation's files off limits." *Id*. at 564.

Various provisions of Saudi law prohibit the Bank from providing the information requested in the Subpoena. Article 19 of the Banking Control Law of the Kingdom of Saudi Arabia (the "BCL") provides that "any person who comes into possession of information during the performance of his duties in the implementation of this Law, is not allowed to disclose such information or make use of it in any manner." (Al-Thebity Decl., Ex. D.) SAMA Circular Number 16323/BC/319, dated September 7, 1985 (Al-Thebity Decl., Ex. A), instructs Saudi banks that they must "comply with the common rule of not disclosing any information except through SAMA and to reject any request for information." SAMA Circular Number 100/BC/63, dated 24/3/1413 H (Al-Thebity Decl., Ex. B), instructs banks to advise a "government agency that asks for information about client balances and banking activities to address its request to the Ministry of Finance and National Economy or to SAMA." Section 2.6.3 ("International Cooperation") of the Rules Governing Anti-Money Laundering & Combating Terrorist Financing (Second Update, December 2008) (Al-Thebity Decl., Ex. C), promulgated by the

Banking Inspection Department of SAMA, provides that: "any sharing of information with a foreign party whether with another bank (affiliation, branch, correspondent) or a foreign governmental authority should not be done without the prior approval of and in coordination with SAMA."  Article 23(2) of the BCL stipulates that "[a]ny person who contravenes the provisions of Article 19 shall be liable to imprisonment for a term not exceeding two years and to a fine not exceeding [Saudi Riyals] 20,000 or to either of these penalties."  (Al-Thebity Decl., Ex. D.)

In light of these provisions, and in a good faith attempt to comply with the Subpoena, the Bank contacted SAMA by letter dated September 1, 2009, requesting guidance on "whether it may comply with the Subpoena."  (Al-Thebity Decl., Exs. E, F.)  The letter, which was phrased neutrally, requested instructions regarding responding to the Subpoena, and did not in any way invite an order to refuse compliance.

In response, SAMA, referring to the Bank's "request[] [for SAMA's] approval to release some banking documents relating to [the Bank's] customer, Mr. Soliman Al-Buthe," notified the Bank, in no uncertain terms, that it was prohibited from providing the requested documents. SAMA's letter refers the Bank to Article 19 of the BCL, which prohibits use or disclosure of information obtained during the course of performing bank-related duties.  The letter also refers the Bank to "a number of regulations relating to confidential bank and customer related information" that require Saudi banks to seek permission from the relevant Saudi authorities before they disclose such information.  The letter informs the Bank that failure to abide by the relevant legal provisions is "a crime punishable by imprisonment and/or fine."  Finally, the letter informs the Bank that SAMA cannot consider the Subpoena as submitted.  Rather, the request must be sent through the "proper official channels" of service of letters rogatory before SAMA

can be "in a position to consider" it.  The letter instructs the Bank to inform the U.S. authorities

that "SAMA cannot consider this information request in its current form."  The Bank informed

the government of SAMA's response, and provided it with a copy on September 24, 2009.  (Al-

Thebity Decl., Ex. G.)

    The unique circumstances of this case, like the facts in *In re Sealed Case*, compel the

conclusion that the Bank should not be required to comply with the Subpoena.  Here too, the

Bank is a third party and is not the subject of the trial for which the records were subpoenaed.

The Bank is a foreign bank that would be forced to violate the laws of its home country.  The

documents are located in Saudi Arabia.  The Subpoena seeks to compel the Bank to collect these

documents and export them to government officials in the United States.  The Bank's actions

would all take place in Saudi Arabia and would be in violation of Saudi law.  Additionally, the

Bank attempted in good faith to comply with the Subpoena by requesting permission from its

regulators to do so.  Because of these similarities, the holding of *In re Sealed Case* should apply

and the Subpoena should be quashed, because it would force the Bank to violate foreign law "on

the territory of the sovereign whose law is in question."  *In re Sealed Case*, 825 F.2d at 498.

<u>Conclusion</u>

    For the foregoing reasons, the Subpoena should be quashed, 31 U.S.C. § 5318(k) should

be held unconstitutional, and Respondents should be enjoined from taking any action, including

under 31 U.S.C. §5318A, to terminate the Bank's correspondent relationships with its U.S.

correspondent banks, or to cause those U.S. banks to terminate their correspondent relationships

with the Bank.

Washington D.C.                              Respectfully submitted,
January 15, 2010



Of Counsel:                                  _____
     Boaz I. Green (D.C. Bar No. 977520)     Timothy J. Coleman (D.C. Bar No. 436415)
                                             DEWEY & LEBOEUF LLP
                                             1101 New York Avenue, NW
                                             Washington, DC  20005-4213
                                             Telephone: (202) 346-8000
                                             Facsimile:  (202) 346-8102

                                             *Attorneys for Petitioner*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Al-RAJHI BANKING & INVESTMENT CORPORATION,**<br>**Al-Aqaria Building 3**<br>**Olaya Road, Riyadh**<br>**Saudi Arabia** | )<br>)<br>)<br>)<br>) |
| **Petitioner,** | )<br>) |
| **v.** | )<br>) |
| **ERIC H. HOLDER, JR.,**<br>**in his official capacity as Attorney General of**<br>**the United States,**<br>**950 Pennsylvania Avenue, NW, Room B-103**<br>**Washington, DC 20530-0001** | )<br>)<br>)<br>)<br>) |
| **TIMOTHY F. GEITHNER,**<br>**in his official capacity as Secretary of the**<br>**Treasury,**<br>**1500 Pennsylvania Avenue, NW**<br>**Washington, DC 20220** | )<br>)<br>)<br>)<br>) |
| **KENT S. ROBINSON,**<br>**in his official capacity as Acting United**<br>**States Attorney for the District of Oregon,**<br>**1000 SW Third Avenue, Suite 600**<br>**Portland, Oregon 97204** | )<br>)<br>)<br>)<br>) |
| **and** | ) |
| **COLLEEN ANDERSON,**<br>**in her official capacity as Special Agent for**<br>**the Internal Revenue Service,**<br>**960 Ellendale, Suite A**<br>**Medford, Oregon 97504** | )<br>)<br>)<br>)<br>) |
| **Respondents.** | )<br>) |

Misc. Action No.

**[PROPOSED] ORDER GRANTING
MOTION TO QUASH USA PATRIOT
ACT SUBPOENA**

**THIS MATTER** having come before the Court on Petitioner Al Rajhi Banking & Investment Corporation's Motion to Quash USA PATRIOT Act Subpoena, the Court having considered the Memorandum of Points and Authorities and other supporting papers filed in this matter, and for good cause shown, it is hereby

**ORDERED** that Petitioner's Motion is **GRANTED**. Accordingly, the Administrative Subpoena served on Petitioner by Respondents on July 17, 2009 is hereby quashed. Respondents are further enjoined from taking any action to terminate the Bank's correspondent relationships with its U.S. correspondent banks, or to cause those U.S. banks to terminate their correspondent relationships with the Bank.

Dated:                    , 2010

_____

**The Honorable**

**United States District Judge**

The following are entitled to be notified of the entry of this order:

The Honorable Eric H. Holder, Jr.
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW, Room B-103
Washington, DC  20530-0001

Timothy F. Geithner
Secretary
Department of the Treasury
1500 Pennsylvania Avenue, NW
Washington, DC  20220

Kent S. Robinson
Acting United States Attorney
for the District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204

Colleen Anderson
Special Agent
Internal Revenue Service
960 Ellendale, Suite A
Medford, Oregon  97504

Timothy J. Coleman
Dewey & LeBoeuf LLP
1101 New York Avenue, NW
Washington, DC 20005-4213
Attorneys for Petitioner

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Al-RAJHI BANKING & INVESTMENT CORPORATION,**<br>**Al-Aqaria Building 3**<br>**Olaya Road, Riyadh**<br>**Saudi Arabia**<br><br>                    **Petitioner,**<br><br>        **v.**<br><br>**ERIC H. HOLDER, JR.,**<br>**in his official capacity as Attorney General of the United States,**<br>**950 Pennsylvania Avenue, NW, Room B-103**<br>**Washington, DC  20530-0001**<br><br>**TIMOTHY F. GEITHNER,**<br>**in his official capacity as Secretary of the Treasury,**<br>**1500 Pennsylvania Avenue, NW**<br>**Washington, DC  20220**<br><br>**KENT S. ROBINSON,**<br>**in his official capacity as Acting United States Attorney for the District of Oregon,**<br>**1000 SW Third Avenue, Suite 600**<br>**Portland, Oregon  97204**<br><br>**and**<br><br>**COLLEEN ANDERSON,**<br>**in her official capacity as Special Agent for the Internal Revenue Service,**<br>**960 Ellendale, Suite A**<br>**Medford, Oregon  97504**<br><br>                    **Respondents.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>**Misc. Action No.**<br><br><br>**<u>CERTIFICATE REQUIRED BY LCvR 7.1</u>** |

I, the undersigned, counsel of record for Al Rajhi Bank, certify that, to the best of my knowledge and belief, there are no parent companies, subsidiaries, or affiliates of Al Rajhi Bank which have any outstanding securities in the hands of the public.

These representations are made in order that judges of this court may determine the need for recusal.

Dated:  Jan. 15, 2010                    Respectfully submitted,

                                         Timothy J. Coleman (D.C. Bar No. 436415)
                                         Dewey & LeBoeuf LLP
                                         1101 New York Avenue, NW
                                         Washington, DC  20005-4213
                                         Telephone: (202) 346-8000
                                         Facsimile: (202) 346-8102

                                         ATTORNEYS FOR PETITIONER