Mr. Kelly R. Beckley
kbeckley@beckley-law.com
Mr. Kevin W. Bons
kbons@beckley-law.com
BECKLEY LAW FIRM, P.C.
1257 High St., Suite #2
P. O. Box 11098
Eugene, OR 97440
Phone: (541) 683-0888
Fax: (541) 683-0889

Timothy J. Coleman
Boaz I. Green
*Pro hac vice pending*
DEWEY & LEBOEUF LLP
1101 New York Avenue, NW
Washington, DC  20005-4213
Telephone: (202) 346-8000
Facsimile:  (202) 346-8102

Attorneys for Respondent

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **CR 05-60008-02-HO** |
| **v.** | ) | |
| | ) | **AL RAJHI BANKING &** |
| **PIROUZ SEDAGHATY** | ) | **INVESTMENT CORP.'S** |
| | ) | **OPPOSITION TO UNITED STATES'** |
| **Defendant** | ) | **MOTION TO COMPEL** |
| | ) | **COMPLIANCE WITH PATRIOT** |
| **In re AL RAJHI BANK SUBPOENA** | ) | **ACT SUBPOENA** |
| | ) | |
| **AL RAJHI BANKING &** | ) | |
| **INVESTMENT CORP,** | ) | |
| **Real party in interest** | ) | |
| **Respondent.** | ) | |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS .............................................................................................2

ARGUMENT .................................................................................................................7

I.     Section 5318(k) Creates An Unconstitutional Self-Enforcing Subpoena...............8

       A.     Section 5318(k) Provides Inadequate Opportunity For Judicial
              Review Of A Subpoena's Enforceability.....................................................8

       B.     Congress's Power to Regulate Foreign Commerce is
              Circumscribed by the Requirements of the Fourth Amendment ...............13

II.    The Government has not Shown that an Administrative Subpoena May be
       Used to Gather Evidence for Trial .......................................................................15

III.   The Scope Of The Demand Exceeds The Limits Of The Authorizing
       Statute ................................................................................................................19

IV.    Even When A Subpoena Is Otherwise Enforceable, Enforcement May Be
       Denied When Compliance Would Force The Recipient To Violate Foreign
       Law .....................................................................................................................21

V.     This Court Should Refrain from Deciding on the Merits of the Motion to
       Compel Until D.C. District Court Decides Whether to Change Venue.................29

CONCLUSION.............................................................................................................35

Opposition to Motion to Compel
Compliance  – Page i

Clients/Al Rajhi Banking &
Investment Corp/ Opposition to
Motion to Compel (08 FEB 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

# TABLE OF AUTHORITIES

## CASES

*In re Air Crash at Taipei, Taiwan on October 21, 2000*,
211 F.R.D. 374 (C.D. Ca. 2002) .................................................................31

*Biotronik, Inc. v. Guidant Sales Corp.*,
No. 09-442, 2009 WL. 1838322 (D. Or. June 22, 2009) .......................34, 35

*Blum v. Yaretsky*,
457 U.S. 991 (1982).................................................................................13

*Buttfield v. Stranahan*,
192 U.S. 470 (1904).................................................................................16

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) ...................................................................34

*City of Seattle*,
387 U.S. 541 (1967).................................................................................11

*Clinton v. Jones*,
520 U.S. 681 (1997).................................................................................34

*Cohen v. Carreon*,
94 F. Supp. 2d 1112 (D. Or. 2000) ..........................................................33

*In re Corrugated Container Antitrust Litigation*,
662 F.2d 875 (D.C. Cir. 1981) ................................................................35

*Doe v. Ashcroft*,
334 F. Supp. 2d 471 (S.D.NY. 2004)........................................................19

*Doe v. Gonzalez*,
449 F.3d 415 (2d Cir. 2006)......................................................................19

*EEOC v. Federal Express, Corp.*,
558 F.3d 842 (9th Cir. 2009) ...................................................................22

*General Tobacco & Grocery Co. v. Fleming*,
125 F.2d 596 (6th Cir. 1942) ...................................................................12

*In re Grand Jury 81-2,*
  550 F. Supp. 24 (W.D. Mich. 1982) ..................................................28, 29

*ICC v. Brimson*,
  154 U.S. 447 (1894)...........................................................................11

*Jackson v. Metropolitan Edison Co.*,
  419 U.S. 345 (1974)...........................................................................14

*Jerry T. O'Brien v. S.E.C.*,
  704 F.2d 1065 (9th Cir. 1983) ...........................................................11

*Leyva v. Certified Grocers of Cal*,
  593 F.2d 857 (9th Cir. 1979) .............................................................34

*Mediterranean Enterprise, Inc. v. Ssangyong Corp.*,
  708 F.2d 1458 (9th Cir. 1983) ...........................................................34

*Monegro v. Rosa*,
  211 F.3d 509 (9th Cir. 2000) .............................................................36

*Resolution Trust Corporation v. Grant Thornton*,
  41 F.3d 1539 (D.D.C. 1994) ........................................................19, 20

*Richmark Corp. v. Timber Falling Consultants*,
  959 F.2d 1468 (9th Cir. 1992) ........................................................ *passim*

*In re Sealed Case*,
  825 F.2d 494 (D.C. Cir. 1987)......................................................25, 26

*Sherar v. Cullen*,
  481 F.2d 945 (9th Cir. 1973) .............................................................12

*Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers*,
  357 U.S. 197 (1958)...........................................................................32

*Tuazon v. R.J. Reynolds Tobacco Co.*,
  433 F.3d 1163 (9th Cir. 2006) ...........................................................35

Opposition to Motion to Compel
Compliance – Page iii

Clients/Al Rajhi Banking &
Investment Corp/ Opposition to
Motion to Compel (08 FEB 10)

**BECKLEY LAW FIRM, P.C.**
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

*United States v. Bailey*,
   228 F.3d 341 (4th Cir. 2000) .................................................................11

*United States v. Daniels*,
   2000 WL. 764951 (D. Kan. May 22, 2000)........................................20

*United States v. Harrington*,
   761 F.2d 1482 (11th Cir. 1985) ..........................................................20

*United States. v. Lazar*,
   2006 WL. 3761803 (W.D. Tenn. Dec. 20, 2006) ..............................20

*United States v. Phibbs*,
   999 F.2d 1053 (6th Cir. 1993) ............................................................19

*United States v. Ramirez-Sanchez*,
   338 F.3d 977 (9th Cir. 2003) ..............................................................24

*United States v. Stein*,
   541 F.3d 130 (2d Cir. 2008).................................................................14

*United States v. Verdugo-Urquidez*,
   494 U.S. 259 (1990).............................................................................17

*U.S. v. Wachte*,
   2006 WL. 764951 (E.D. Mo. Aug. 23, 2006)....................................20

## STATUTES

18 U.S.C. § 2709.......................................................................................19

31 U.S.C. § 5318A..............................................................................5, 9, 14

31 U.S.C. § 5318(i).....................................................................................26

31 U.S.C. § 5318(k) ............................................................................ *passim*

Fed. R. Civ. P. 45......................................................................................35

Opposition to Motion to Compel
Compliance – Page iv

Clients/Al Rajhi Banking &
Investment Corp/ Opposition to
Motion to Compel (08 FEB 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET · P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 · FAX 541-683-0889
www.beckley-law.com

# OTHER AUTHORITIES

Imposition of Special Measures Against Banco Delta Asia, 71 Fed. Reg. 12,732 (March 19, 2007) ................................................................................15

International Convention for Suppression of the Financing of Terrorism, G.A. Res. 109, U.N. GAOR, 54th Sess., Supp. No. 49, U.N. Doc. A/RES/54/109 (Dec. 9, 1999) ......................................................................29

Restatement (third) of Foreign Relations Law fo the United States § 442(1)(c) (1987) ..............................................................................30, 31

United States Department of State, Treaties in Force 2009..................................30

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

Respondent Al Rajhi Banking & Investment Corporation (the "Bank") respectfully submits this memorandum in opposition to the United States's Motion to Compel Compliance with July 17, 2009, Subpoena Issued Pursuant to 31 U.S.C. § 5318(k).

## PRELIMINARY STATEMENT

The government has not met its burden to show that an administrative subpoena issued by the Acting United States Attorney for the District of Oregon, under the purported authority of 31 U.S.C. § 5318(k) (the "Subpoena") can be enforced. Section 5318(k), a provision of the USA PATRIOT Act, grants the government unprecedented powers to demand the production of foreign bank records, based on minimal contact with the United States, and at the pain of severe sanctions that can be imposed without prior judicial review. This so-called Patriot Act subpoena was issued on a financial institution that has had no prior involvement in a related criminal trial that has been pending for almost five years. The Subpoena has put the Bank in the untenable position of having to choose between violating the laws of its own country, at the risk of imprisonment and fines, and the permanent loss of its U.S. correspondent accounts that are essential to its business.

The Subpoena is deeply flawed and is unenforceable. As an initial matter, the Subpoena was issued under the purported authority of a statute that gives the executive branch the power to issue self-enforcing subpoenas in violation of the Fourth Amendment. Second, the Subpoena was issued in order to collect evidence for use in a

pending criminal trial, which is an improper purpose for an administrative subpoena, which, like a grand jury subpoena is an *investigative* tool. Third, Section 5318(k) does not authorize the government to demand the types of documents sought in the Subpoena. Finally, under established precedent, this Court can decline enforcement of the Subpoena because complying with the it would force the Bank to violate the laws of Saudi Arabia, exposing it and its employees to criminal prosecutions and fines.

## STATEMENT OF FACTS

On January 19, 2010, the Bank filed a motion to quash the Subpoena, in the United States District Court for the District of Columbia ("Motion to Quash") (the Bank's Motion to Quash and supporting declarations were attached as Exhibit C to the Declaration of Christopher L. Cardani sworn onto February 1, 2010 ("Cardani Decl.").) The Bank incorporates its Motion to Quash herein by reference. Nearly two weeks after the Bank filed its motion, the government filed its own Motion to Compel with this Court ("Gov. Motion"). The government's motion reads as a response to the Bank's motion to quash. Because the Bank's motion to quash established the reasons why the Subpoena should be quashed, this Opposition is drafted as a reply to the government's brief.

The Bank filed the Motion to Quash after five months of attempts to work with the government to resolve the issue without resorting to litigation. As shown by the timeline described below, the Bank agreed to the government's numerous unilateral extensions of time and operated under the threat of the Subpoena and sanctions under Section 5318(k), without seeking judicial intervention. It was not until the government

Opposition to Motion to Compel
Compliance – Page 2

Clients/Al Rajhi Banking &
Investment Corp/ Opposition to
Motion to Compel (08 FEB 10)

**BECKLEY LAW FIRM, P.C.**
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

threatened to use 31 U.S.C. § 5318A, a different Patriot Act provision, to pressure the Bank into turning over the requested documents in violation of Saudi law, that the Bank was compelled to seek judicial protection.

On August 18, 2009, the Bank's counsel spoke with the government and requested a 30-day adjournment of the return date for the Subpoena to provide additional time to determine whether the Bank would comply with or contest the Subpoena. The government agreed to the adjournment. During the course of the Bank's discussions with the government, the government made it clear that, if the Bank did not comply with the Subpoena by the return date, the government would take action against the Bank by ordering the closure of its U.S. correspondent accounts. At no point during these conversations did the government mention the possibility that it would move to compel compliance with the Subpoena before it ordered the closure of these correspondent accounts. (Declaration of Timothy J. Coleman, sworn to February 8, 2010 ("Coleman Decl. II"), ¶ 2.) Accordingly, the Bank faced two separate and imminent threats of irreparable harm pursuant to §§ 5318(k) & 5318A, which ultimately compelled the Bank to initiate the proceeding in the D.C. District Court to ensure that the government's actions would be subject to prior judicial review.

Then, on September 22, 2009, the Bank's counsel advised the government that the Bank was awaiting guidance from the Bank's primary regulator, the Saudi Arabian Monetary Authority ("SAMA"), concerning the Subpoena, and requested a further 30-day adjournment of the return date. The government agreed to the adjournment. This

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

was the second and final adjournment requested by the Bank.  (Declaration of Timothy J. Coleman, sworn to January 15, 2010 ("Coleman Decl. I"), ¶¶ 11-12.)

On September 23, 2009, the Bank's counsel received a copy of a letter to the Bank from SAMA informing the Bank that it was prohibited from complying with the Subpoena and would risk criminal prosecution in Saudi Arabia, resulting in imprisonment and/or fines, if it complied.  The letter informed the Bank that the proper form for the United States to request the documents was through a letter rogatory and that SAMA would not allow the Bank to comply with a request made through an administrative subpoena.  SAMA instructed the Bank to inform the United States authorities of SAMA's position.  On September 24, 2009, the Bank's counsel forwarded that letter to the government, together with a letter from the Bank to SAMA dated September 1, 2009. (Coleman Decl. I ¶ 13.)

Also on September 24, 2009, almost three months before the Bank finally moved to quash the Subpoena, the Bank's counsel spoke with the government, and advised it that, in light of SAMA's instructions to the Bank, it was likely that the Bank would move to quash the Subpoena, and that it would likely do so in federal court in Washington, D.C.  (Coleman Decl. II ¶ 3.)  In that conversation, the government stated that it had attempted to obtain the documents called for by the Subpoena through a request to the government of Saudi Arabia.  The government did not tell the Bank's counsel the nature of that request.  The Bank's counsel suggested to the government that, in light of

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

SAMA's view that the documents should be requested by means of a letter rogatory, the government should consider submitting such a letter.  (Coleman Decl. I ¶ 13.)

On October 23, 2009, the Bank's counsel had a further conversation with the government, during which the government stated that it was granting a further adjournment of the Subpoena's return date.  This adjournment had not been requested by the Bank.  The Bank's counsel in fact told the government that the Bank was not requesting any further adjournment, and that the Bank might move to quash the Subpoena despite the extension.  On October 26, 2009, the Bank's counsel received an email from the government stating that the return date was adjourned to November 30, 2009. (Coleman Decl. I ¶ 14.)

On November 9, 2009, the Bank's counsel spoke with the government, including an attorney in the Department of Justice's Office of International Affairs in Washington, D.C. ("OIA").  During that call, the government represented that it had not submitted a letter rogatory seeking the documents at issue, but had made a request to the Saudi government to produce those documents pursuant to the International Convention for the Suppression of the Financing of Terrorism.  The Bank's counsel offered to assist the government by making inquiries in Saudi Arabia regarding the treaty request.  To that end, the Bank's counsel also requested that the government provide him with documentation, such as diplomatic cable traffic, of the treaty request the government had made previously.  The Bank's counsel also reiterated its previous suggestion that the government should consider seeking the documents through a letter rogatory, as required

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

by Saudi domestic law, and offered to assist the government by working with the Bank to process such a request expeditiously. (Coleman Decl. I ¶ 15.)

On November 23, 2009, the Bank's counsel received an email from the government, stating that OIA was working with the United States Department of State to determine whether the information he requested could be provided, and that he was therefore extending the subpoena return date to December 30, 2009. Once again, this extension of time was not requested by the Bank. (Coleman Decl. I ¶ 16.)

On December 23, 2009, the government informed the Bank's counsel that it would not provide the information the Bank had requested. The government stated that it was considering various options in connection with the Subpoena. The government stated that some of those options would adversely affect the Bank, and specifically cited a provision of the USA PATRIOT Act, 31 U.S.C. § 5318A. That section of the Act enables the government to brand a financial institution as a terrorist financing organization and take crippling actions against the institution without prior judicial authorization or review. The government also informed the Bank's counsel that it was extending the subpoena return date to January 29, 2010. Once again, this extension had not been requested by the Bank. (Coleman Decl. I ¶ 17.)

Finally, on January 15, 2009, the Bank's counsel spoke with the government and stated that if the government initiated a proceeding under § 5318A, the Bank would be irreparably harmed. The Bank's counsel requested that the government agree to provide the Bank with advance notice of any such proceeding. The government did not agree to

Opposition to Motion to Compel
Compliance – Page 6

Clients/Al Rajhi Banking &
Investment Corp/ Opposition to
Motion to Compel (08 FEB 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098 EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

that request.  The Bank's counsel informed the government that the Bank was concerned over the government's threat to retaliate against the Bank by invoking § 5318A and that the Bank was therefore considering filing a motion to quash the Subpoena and that it would likely not be able to give the government prior notice of the filing.  (Coleman Decl. I ¶ 18.)  The Bank again confirmed that, if it moved to quash the Subpoena, it would do so in Washington, D.C.  (Coleman Decl. II ¶ 3.)

## ARGUMENT

The government's motion should be denied and the Subpoena should be quashed for the following reasons:  (1) the statute under which the Subpoena was issued is unconstitutional because it gives executive agencies the power to issue self-enforcing administrative subpoenas; (2) the Subpoena was issued for the improper purpose of conducting post-indictment discovery in aid of a criminal case; (3) the Subpoena seeks production of documents that are not of the type that may be subpoenaed under the authorizing statute; and (4) compliance would compel the Bank to violate the laws of a foreign sovereign on that sovereign's own territory.

The government filed its Motion to Compel almost two weeks after the Bank filed its Motion to Quash in the United States District Court for the District of Columbia ("D.C. District Court").  The government also filed an opposition to the Bank's Motion to Quash with the D.C. District Court, asking that court dismiss or transfer the motion to this Court.  The D.C. District Court has not yet ruled on this request.  Until the status of the Bank's first-filed motion is resolved, there is a risk of two inconsistent decisions on

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

the merits. This Court should therefore delay making a decision on the merits until the D.C. District Court rules on the government's request to dismiss or transfer venue.

## I. Section 5318(k) Creates An Unconstitutional Self-Enforcing Subpoena

### A. Section 5318(k) Provides Inadequate Opportunity For Judicial Review Of A Subpoena's Enforceability

Section 5318(k)'s grant of enforcement power to executive authorities is fundamentally inconsistent with the principle that government agencies cannot, "under our system of government, and consistently with due process of law, be invested with authority to compel obedience to [their] orders." *ICC v. Brimson*, 154 U.S. 447, 485 (1894) (holding that the question of whether a subpoenaed party is bound to comply with the subpoena "is one that cannot be committed to a subordinate administrative or executive tribunal for final determination."); *See also See v. City of Seattle*, 387 U.S. 541, 544-45 (1967) (holding that an administrative subpoena "may not be made and enforced by [an] inspector in the field"); *See also Jerry T. O'Brien v. S.E.C.*, 704 F.2d 1065, 1067 n.4 (9th Cir. 1983) ("The possibility of excesses in the conduct of agency investigations may explain why agency subpoenas are not self-executing but require judicial enforcement when a recipient of a subpoena does not voluntarily comply."). Long-standing authority demonstrates that, not only must administrative subpoenas be enforced through the courts, but that the very justification for administrative subpoena legislation rests upon the reservation of ultimate enforcement authority to the courts. *See, e.g.*, *United States v. Bailey*, 228 F.3d 341, 348 (4th Cir. 2000) ("As judicial process is afforded before any intrusion occurs, the proposed intrusion is regulated by, and its

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

justification derives from, that process."). Although the scope of a court's review in the discharge of its duty to ensure the reasonableness of administrative subpoenas is narrow, courts "should not become a mere rubber stamp for the approval" of actions by administrative agencies. *General Tobacco & Grocery Co. v. Fleming*, 125 F.2d 596, 599 (6th Cir. 1942). *See also Sherar v. Cullen*, 481 F.2d 945, 946 (9th Cir. 1973) (disagreeing with the District Court's assessments of courts' role in reviewing administrative subpoenas as, "probably limited as you can get," and asserting that government's interest in ensuring reasonable proceedings by its agencies is protected by giving the courts "full power to determine if the administrative summons should be enforced").

Courts in this Circuit have held that the government acts unconstitutionally when it puts the target of a search in the "untenable position" of choosing to submit to a subpoena it believes to be unreasonable or, upon refusal to submit, to suffer a penalty at the hands of the executive authority that issued the subpoena. *See, e.g., Sherar v. Cullen*, 481 F.2d at 947 (holding that when an IRS agent was forced to either respond to the IRS's request for documents or face dismissal from employment, this was "clearly a penalty that infringed upon the constitutional right to be free from unreasonable searches and seizure"). Further, this Circuit has maintained that the constitutional error is not cured by the fact that the target of the investigation could bring a motion to quash the subpoena in court, but that the target must be given the right "simply to refuse to disclose and to have the District Court rule upon the matter in enforcement proceedings." *Id.*

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

Section 5318(k)'s plain language allows the Department of Justice and the Department of Treasury ("Treasury") to order domestic banks to close a foreign bank's correspondent accounts, as a sanction for noncompliance with an administrative subpoena, without first obtaining judicial review of the subpoena's enforceability. The government argues that this constitutional deficiency is cured, because it is not entitled under the statute "to take any *direct* action against the foreign bank whatsoever." (Gov. Motion at 12.) (emphasis added). However, under Section 5318(k), the government has the power to order the domestic bank at which the foreign bank maintains a correspondent account to close the account. Moreover, the government's authority to threaten a domestic bank with $10,000 in fines per day unless it terminates its correspondent relationship with a foreign bank cannot fairly be characterized as anything other than a concrete power to punish the foreign bank without judicial process.

The government becomes responsible and answerable for the acts of a private entity when its "has exercised coercive power or has provided such significant encouragement, either over or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). When this has occurred, the action of the private entity "may be fairly treated as that of the State itself," and the government must answer to the constitutionality of the private conduct it has compelled. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974). For example, in *United States v. Stein*, the court held that an accounting firm's imposition of conditions on the payment of employees' legal fees in connection with criminal prosecution at the behest of

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

the Justice Department violated the employees' Sixth Amendment right to counsel. 541 F.3d 130 (2d Cir. 2008). This precedent makes clear that executive authorities may not force a domestic bank, at the threat of significant financial peril, to become a tool for punishing the foreign bank for noncompliance under Section 5318(k), and thereby escape the constitutional mandate of judicial enforcement of administrative subpoenas. Ultimately, it is clear that the purpose of the mechanism with which the government threatens the domestic bank is to create an *in terrorem* incentive for the foreign bank to comply, not the domestic bank.

The certain consequence of the government's threats against a domestic bank if it fails to close a foreign bank's correspondent account will be the swift closure of correspondent account. The government suggests, without explanation, that domestic banks have "incentive and opportunity" to challenge the administrative subpoena. This is not the case. A domestic bank has every incentive to terminate its correspondent relationship with a foreign bank immediately upon receipt of written demand from the Secretary of the Treasury ("Secretary") or Attorney General. Section 5318(k) specifically encourages the cooperation of the domestic bank in penalizing the foreign correspondent account holder by reassuring the domestic bank that it "shall not be liable to any person in any court or arbitration proceeding" for carrying out the termination of the account. 31 U.S.C. § 5318(k)(C)(ii). The domestic bank therefore faces no consequences for complying with the government's demands. Conversely, challenging the government under Section 5318(k) would bring multiple burdens, including litigation

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

expenses and the reputational harm likely to result from siding with a foreign bank allegedly utilized by criminal defendants to finance terrorism. Additionally, the government's argument that domestic banks have an incentive to challenge an order to close the Bank's correspondent accounts is belied by the fact that domestic banks have terminated the correspondent accounts of foreign banks found to be of primary money laundering concern under 31 U.S.C. § 5318A, without waiting for the government to act through formal rulemaking. *See, e.g.*, Imposition of Special Measures Against Banco Delta Asia, 71 Fed. Reg. 12,732 (March 19, 2007) ("According to statements made by Banco Delta Asia, many of its foreign correspondent relationships in North America, Europe, and Asia were terminated after our finding of primary money laundering concern, and the bank no longer maintains a foreign correspondent account in the United States.").

In the unlikely event that a domestic bank did challenge the imposition of fines under Section 5318(k), such a challenge would not reach the question of the Subpoena's enforceability. The domestic bank, who is neither the recipient of the Patriot Act subpoena nor the bearer of any privacy interest in the requested documents, would in all likelihood lack standing to challenge the subpoena's enforceability. The Secretary and Attorney General's ability to order the closure of the correspondent accounts at the pain of daily fines is automatically triggered by a foreign bank's failure to either comply with a subpoena or challenge it. However, under the statute, this ability is not dependent on the subpoena's enforceability. Enforceability would therefore not be a ground on which

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

the domestic bank could challenge the order to close the correspondent accounts. As a consequence, the domestic bank's (highly unlikely) legal challenge to an order to close the correspondent accounts would not trigger judicial review of the subpoena itself. The remote potential for a legal challenge brought by the domestic bank does not cure the constitutional flaw of Section 5318(k).

      B.    <u>Congress's Power To Regulate Foreign Commerce Is Circumscribed By The Requirements Of The Fourth Amendment</u>

The Government provides the following quote from *Buttfield v. Stranahan*, 192 U.S. 470, 493 (1904): "'The power to regulate commerce with foreign nations is expressly conferred upon Congress, and, being an enumerated power, is complete in itself. . . .'" Unfortunately, the government excludes the highly relevant remainder of the quoted sentence, which provides that the foreign commerce power, "acknowledge[es] no limitation *other than those prescribed in the Constitution*." *Id.* (emphasis added). Congress may therefore not empower the executive branch to issue self-enforcing subpoenas, thereby circumventing the long-standing limits placed on government searches under the Fourth Amendment.

The government cites the limited holding in *United States v. Verdugo-Urquidez*, 494 U.S. 259, 274-75 (1990) for the proposition that Fourth Amendment protections do not apply to Patriot Act subpoenas because, the government claims, they merely involve searches of "foreign persons on foreign soil." (Gov. Motion at 15.) This argument fails for several reasons. First, the government's very assertion of entitlement to access the foreign bank's records under Section 5318(k) rests on the Bank's presence in the United

Opposition to Motion to Compel
Compliance – Page 13

Clients/Al Rajhi Banking &
Investment Corp/ Opposition to
Motion to Compel (08 FEB 10)

**BECKLEY LAW FIRM, P.C.**
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

States in the form of its domestic correspondent relationships.  The government cannot sustain the assertion that the Bank has subjected itself to U.S. jurisdiction by electing to do business in the United States through its correspondent accounts, and then deny any domestic ties to the government's search for records specifically "relating to" the Bank's U.S. correspondent accounts.  Additionally, the Court's refusal to extend Fourth Amendment requirements to extraterritorial searches of foreign citizens' property by U.S. officials in *Verdugo-Urquidez* is irrelevant in light of the government activity at issue here: the Subpoena was issued in the United States, while the collection of the records would occur in Saudi Arabia, the Subpoena demands that the Bank produce them to the government in the United States, and the government's enforcement measures target the Bank's correspondent accounts at U.S. banks.  Thus, due to the largely domestic nature of the government conduct contemplated by Section 5318(k), the government may not sidestep demands of the Fourth Amendment when it issues Patriot Act subpoenas.  Lastly, the search on Mexican soil that took place in *Verdugo-Urquidez* was in coordination with Mexican law enforcement, with prior approval from Mexican authorities.  In contrast, the government has not obtained SAMA's consent to obtain the documents requested by means of an administrative subpoena.

The Government offers only one case in support of its assertion that "[t]he Supreme Court has . . . repeatedly held that Congress may authorize the Executive Branch to enforce laws restricting foreign commerce by administrative action alone." (Gov. Motion at 15.)  However, this assertion is overly broad.  The Court has, on rare

Opposition to Motion to Compel
Compliance – Page 14

Clients/Al Rajhi Banking &
Investment Corp/ Opposition to
Motion to Compel (08 FEB 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

occasions, allowed for small fines to be exacted by agency officials for active violation of established government regulations. These instances are clearly distinguishable from the type of behavior at issue here. In the case cited by the government, it was Congress that had set the standard to be complied with, and compliance involved no government intrusion that would trigger the Fourth Amendment's protections. Here, in contrast, executive agencies are granted the power to issue a subpoena to a foreign bank, at their discretion, as well as the power to punish the bank for noncompliance, without first seeking judicial review. As previously demonstrated, and as over one hundred years of jurisprudence makes clear, in the context of administrative subpoenas, the power to issue and enforce the subpoena may not be commingled in one authority. The Government cannot point to a single instance, other than Section 5318(k), where such a tremendous concentration of power has been created by Congress, and the courts have specifically denied Congress's ability to do so under the Constitution.[1]

## II.      The Government Has Not Shown That An Administrative Subpoena May Be Used To Gather Evidence For Trial

The government argues that Section 5318(k) grants it the authority to issue an administrative subpoena to gather evidence for trial. In support of this argument, they cite five cases, three of which are unpublished, and all from other circuits. These cases

---

[1] The constitutionality of National Security Letters ("NSLs") issued under the authority of another USA PATRIOT Act provision, 18 U.S.C. § 2709, was challenged because the statute did not provide for judicial review of the NSLs. *Doe v. Ashcroft*, 334 F. Supp. 2d 471 (S.D.NY. 2004). However, the statute was amended to provide for judicial review of NSLs and plaintiffs dropped their Fourth Amendment claims and the constitutionality of the prior version of the statute was not considered on appeal. *See Doe v. Gonzalez*, 449 F.3d 415 (2d Cir. 2006).

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

provide no support for the government's position. The principal case cited by the government, *United States v. Phibbs*, 999 F.2d 1053 (6th Cir. 1993), does not address the question of an administrative subpoena's enforceability. Rather, it relates to a criminal defendant's appeal of his conviction, on the basis of, *inter alia*, the government's use of an administrative subpoena to gather evidence that it later used at trial. *Id.* at 1060. The subpoena's recipients had not challenged the subpoena, and the court held that the defendant did not have standing to challenge the subpoena. *Id.* at 1078. The court's pronouncements regarding the scope of administrative subpoenas are therefore dicta. Additionally, this case was actually cited by *Resolution Trust Corp. v. Grant Thornton* to support its holding that administrative subpoenas *cannot* be used to gather evidence for trial. 41 F.3d 1539, 1547 (D.D.C. 1994).

*United States. v. Lazar*, No. 04-20017, 2006 WL 3761803 (W.D. Tenn. Dec. 20, 2006) is the only case cited by the government that states that *Phibbs* establishes a rule that the government may use an administrative subpoena to gather evidence for trial. However, Lazar proceeds to note that "[t]he Court is cognizant of the fact that *Phibbs* indicates a *shift* in the judiciary's construction of the executive's criminal investigative capabilities. However, *Phibbs* is the law of this Circuit, and there is no sufficiently principled basis upon which to distinguish it from this case." *Id.* at *9 (emphasis added). This is hardly support for a "shift in construction" in other circuits that have not explicitly applied *Phibbs*.

Clients/Al Rajhi Banking &
Investment Corp/ Opposition to
Motion to Compel (08 FEB 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

The other cases cited by the government do not strengthen its argument. *United States. v. Harrington* specifically discusses "ongoing" and "continuing" *investigations* after an indictment was returned. 761 F.2d 1482, 1485 (11th Cir. 1985) (emphasis added). *United States v. Wachter* simply refers back to *Phibbs* and *Lazar* for the proposition that an administrative subpoena can be used "to continue investigating pending charges." 2006 WL 2460790, at *6 (E.D. Mo. Aug. 23, 2006). In *United States v. Daniels*, the court held that the defendant did not have standing to challenge the subpoena and did not even discuss whether an administrative subpoena can be used to gather evidence for trial. 2000 WL 764951, at *5 (D. Kan. May 22, 2000).

The government's attempts to minimize the import of *Grant Thornton* are also unavailing. The government argues that *Grant Thornton*'s holdings are limited to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). (Gov. Motion at 20.) However, *Grant Thornton* contains strong language regarding the use of administrative subpoenas in general as tools for collecting evidence for trial. *Grant Thornton* refers to the notion that a statute would enable an agency to use an administrative subpoena to collect evidence for trial as a grant of "unprecedented power." 41 F.3d at 1546. The case further describes the prospect of an agency using its subpoena power to aid ongoing litigation as "utterly foreign to the law defining the traditional scope of investigative authority." *Id*. at 1547.

The government also argues that *Grant Thornton* stands for the proposition that an agency can use administrative subpoenas to gather evidence for trial if Congress

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

confers such power. (Gov. Motion at 20.) Even if that is a correct reading of the case, the government only provides references to legislative history to suggest that Congress granted it such authority in this case. In fact, there is nothing in the language of Section 5318(k) that extends the subpoena power beyond the "traditional scope of investigative authority" that would differentiate it from FIRREA.

The only case in which the Ninth Circuit has ruled that an administrative subpoena may be used after a case has been filed was in the unique context of investigations by the Equal Employment Opportunity Commission ("EEOC"), which strengthens the conclusion that the use of the administrative subpoena power to collect evidence for trial in this case is improper. In *EEOC v. Federal Express, Corp.*, 558 F.3d 842 (9th Cir. 2009), the court upheld the enforcement of an administrative subpoena served by the EEOC after it had given the charging party a right-to-sue notice and that party instituted a civil suit. Federal Express had challenged the subpoena, arguing that, among other things, the EEOC did not retain the authority to continue to investigate after a suit had been filed. *Federal Express*, 558 F.3d at 848. The court held that the EEOC retained jurisdiction because of the unique, multi-step process established by Title VII and relevant regulations. *Id*. at 848-49. Under this process, "even though the EEOC normally terminates the processing of the charge when it issues the right-to-sue notice, it can, *under limited circumstances*, continue to investigate the allegations in the charge, which includes the authority to subpoena information relevant to that charge." *Id*. at 850 (emphasis added). The court held that, under the circumstances of that case, it was

Opposition to Motion to Compel
Compliance – Page 18

Clients/Al Rajhi Banking &
Investment Corp/ Opposition to
Motion to Compel (08 FEB 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

appropriate for the EEOC to continue its investigation, because the charge involved "a possible policy or pattern of discrimination" affecting other individuals in addition to the one who was granted a right to sue. *Id*. The fact that the EEOC's right to issue administrative subpoenas after suit was filed was predicated on the need for ongoing investigation and a unique enforcement mechanism provided by the operating statute and, leads to the conclusion that, absent such unique statutory provisions, administrative subpoenas are not to be used to gather evidence once trial has commenced. Because this is precisely the purpose of the Subpoena here, the Subpoena must be quashed.

The government does not assert that it seeks the documents requested in the Subpoena to investigate additional wrongdoing not already included in the indictment. Nor can the government credibly assert that there is an ongoing investigation of a case where indictments were returned almost five years ago. Because an administrative subpoena may not be used to collect evidence for trial, the government's motion to compel should be denied.

## III.    The Scope Of The Demand Exceeds The Limits Of The Authorizing Statute

While the government cites to the Department of Justice's general authority "to investigate suspected acts of fraud and terrorism-related money laundering" (Gov. Motion at 7), it invoked the power of a specific statute, giving it the power to request a specific set of documents – those relating to the Bank's correspondent accounts – when issuing the Subpoena. However, the documents the government requested are for records of an account held by an individual in Saudi Arabia. As support for the argument that

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

these records somehow "relate" to the Bank's correspondent accounts, the government cites to two of the Bank's transactions through its correspondent accounts. But the government did not request records of these transactions. The records the government did request are records for Mr. Al-Buthe's personal account. Taken as a whole, if the documents requested are related to the correspondent accounts it is because they are records of an account at Al Rajhi Bank, and Al Rajhi Bank also has correspondent accounts with U.S. banks.

Section 5318(k)'s plain language demands that there be some nexus between the records and the correspondent accounts. While the government has not articulated what this nexus is, the position it appears to take stretches the phrase "relating to" beyond any reasonable meaning. If all of Mr. Al-Buthe's personal account documents can be subpoenaed as being "related to" the Bank's U.S. correspondent accounts, Section 5318(k) would essentially allow the government access to all of a foreign bank's records simply because it has a correspondent account in the United States. This would render the phrase "related to such correspondent account" meaningless. "As a rule, statutory language should not be read in such a way as to render words or phrases as mere surplusage." *United States v. Ramirez-Sanchez*, 338 F.3d 977, 979 (9th Cir. 2003).

The government also argues that the fact that it narrowed its request to documents from a three month period makes them more relevant. (Gov. Motion at 18.) The timeframe certainly makes these documents more relevant to the facts that the government is trying to prove at trial. However, there is no reason that personal account

Opposition to Motion to Compel
Compliance – Page 20

Clients/Al Rajhi Banking &
Investment Corp/ Opposition to
Motion to Compel (08 FEB 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

documents dating from February 2000 to April 2000 are any more related to the Bank's U.S. correspondent accounts than documents dating from May 2000 to July 2000.

### IV. Even When A Subpoena Is Otherwise Enforceable, Enforcement May Be Denied When Compliance Would Force The Recipient To Violate Foreign Law

For the reasons set forth in the Bank's Motion to Quash, the government's Motion to Compel should be denied on the basis of *In re Sealed Case*, 825 F.2d 494 (D.C. Cir. 1987). The government's attempts to minimize the import of *In re Sealed Case* are unavailing. *In re Sealed Case* clearly stands for the proposition that an administrative subpoena may be quashed if compliance would require a foreign national, such as the Bank, to violate the laws of a foreign sovereign, such as Saudi Arabia, on that sovereign's own soil. *In re Sealed Case* also reinforces the principle that courts should not take a decision to order such a violation of foreign law lightly. 825 F.2d at 498 ("[I]t causes us considerable discomfort to think that a court of law should order a violation of law, particularly on the territory of the sovereign whose law is in question.").

Similarly, the government's attempts to distinguish the Bank in this case from the bank in *In re Sealed Case* are unconvincing. The government points out that the bank in *In re Sealed Case* was an entity owned by a sovereign government, but not the government whose laws compliance with the subpoena would violate, and the Bank is privately owned. (Gov. Motion at 26.) This is a distinction without a difference; the banks in both cases are owned by entities that are not the government of the country whose laws would be violated by complying with the subpoenas. In all other relevant

**BECKLEY LAW FIRM, P.C.**
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

respects, the banks are in the same position. Like the Bank here, the bank *in In re Sealed Case* was a third party that was not the focus of the criminal investigation and was not accused of any wrongdoing. 825 F.2d at 498. The government is mistaken in arguing that the Bank does not face sanctions that are as onerous as the ones faced by the bank in *In re Sealed Case*. In that case, the bank faced a fine of $50,000 per day until it complied with the court order enforcing the subpoena. *Id.* at 496. Here, the Bank faces the permanent loss of correspondent accounts that are essential to its business. (Declaration of Al-Kholaifi Ahmed Saleh sworn to February 7, 2010 ("Al-Kholaifi Decl.), ¶ 3.) The permanence of this loss makes the sanctions far more onerous, as they are not terminated by compliance in the way sanctions stemming from a finding of contempt are.[2]

The government correctly states that courts must balance the various interests and hardships when deciding whether or not to order production of documents when such production would violate the laws of a foreign country. Under the RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 442(1)(c) (1987), the court must balance:

> [1] the importance to the investigation or litigation of the documents or other information requested; [2] the degree of specificity of the request; [3] whether the information originated in the United States; [4] the availability of

---

[2] It is highly unlikely that, even if permitted by law, the Bank would be able to reestablish correspondent accounts in the United States if the Attorney General and the Secretary of the Treasury ordered the closure of its existing correspondent accounts. The ability of U.S. banks to open correspondent accounts for foreign banks is highly regulated. *See e.g.*, 31 U.S.C. § 5318(i). Additionally, as discussed above, U.S. banks have shown a tendency to close *sua sponte* correspondent accounts of foreign banks found to be of primary money laundering concern.

Opposition to Motion to Compel
Compliance – Page 22

Clients/Al Rajhi Banking &
Investment Corp/ Opposition to
Motion to Compel (08 FEB 10)

**BECKLEY LAW FIRM, P.C.**
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

> alternative means of securing the information; and [5] the
> extent to which noncompliance with the request would
> undermine important interests of the United States, or
> compliance with the request would undermine important
> interests of the state where the information is located.

This standard was adopted in this Circuit by *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992). The government cannot show that the balance favors enforcing the Subpoena.

The first consideration clearly favors the Bank. Here, the government has already completed its criminal investigation, has returned an indictment, and is simply seeking pieces of evidence "to establish in defendant Sedaghaty's trial the actual disposition" of the funds allegedly exported by Al Buthe. (Gov. Motion at 5.) Moreover, the government already *has* evidence of the actual disposition of the funds. (Declaration of Colleen Anderson sworn onto January 28, 2010 ¶¶ 5-6.) Obtaining these documents is therefore not crucial for the government to be able to make its case. "Where the outcome of litigation does not stand or fall on the present discovery order, or where the evidence sought is cumulative of existing evidence, courts have generally been unwilling to override foreign secrecy laws." *Richmark*, 959 F.2d at 1475 (internal quotations omitted).

The Bank does not claim that the task of collecting the documents would be overly burdensome, and therefore the second consideration does not necessarily favor the Bank.

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

The third consideration clearly favors the Bank because the government requested records located in Saudi Arabia, of a Saudi national's personal bank account in Saudi Arabia, regarding transactions that occurred in Saudi Arabia. "The fact that all the information to be disclosed (and the people who will be deposed or who will produce the documents) are located in a foreign country weighs against disclosure, since those people and documents are subject to the law of that country in the ordinary course of business." *Richmark*, 959 F.2d at 1475.

The fourth consideration also favors the Bank, because there are alternative means for obtaining the documents, namely a letter rogatory, and these means, in this case, are "substantially equivalent." *Richmark*, 959 F.2d at 1475. The Saudi government has not taken the position that the records cannot be provided under any circumstance, rather, SAMA stated that a letter rogatory is the form in which the request should be made.

In *In re Grand Jury 81-2*, 550 F. Supp. 24, 29 (W.D. Mich. 1982), the court held that in that case, a letter rogatory was not a substantially equivalent method of obtaining the documents. However, this case differs from *In re Grand Jury 81-2* in important respects. In this case, the Bank's regulator has clearly stated that a letter rogatory is the required form of request. In *In re Grand Jury 81-2*, it was the German *bank* that had suggested the possibility of a letter rogatory as an alternative to a grand jury subpoena. 550 F. Supp. at 26. The court also expressed doubts regarding the clarity with which the German authorities had expressed a clear prohibition on the bank's ability to comply with the subpoena. The Court was also unconvinced that German law actually prohibited

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

compliance with the subpoena and posited that the German authorities may reconsider their opinion regarding whether compliance was allowed. *Id.* at 27-28. Here, SAMA, the Bank's regulator, expressed a clear directive that the Bank may not comply with the demand for documents as presented, but that SAMA would consider a request submitted by letter rogatory. There is therefore a viable alternative to the Subpoena.

The government's arguments regarding requests under the International Convention for Suppression of the Financing of Terrorism, G.A. Res. 109, U.N. GAOR, 54th Sess., Supp. No. 49, U.N. Doc. A/RES/54/109 (Dec. 9, 1999), are irrelevant for two reasons. First, the treaty is inapplicable because Section 1 of Article 12 of the treaty provides that the contracting parties provide assistance "in connection with criminal investigations or criminal [] proceedings" of offenses covered by the treaty, and the defendants here were not charged with the offense of financing terrorism.[3] Second, even if the treaty were applicable, the government fails to note that under Section 5 of Article 12, mutual legal assistance is provided only "in conformity with any treaties or other arrangements on mutual legal assistance or information exchange that may exist between them. In the absence of such treaties or arrangements, States Parties shall afford one another assistance in accordance with their domestic law." Saudi domestic law governs the form in which Saudi Arabia provides assistance because there are no mutual legal assistance or comparable treaties between the United States and Saudi Arabia. *See*

---

[3] The government states that the defendants in this case were "suspected" of conduct covered by the Convention (Gov. Motion at 26, n. 10.) However, any suspicions of such conduct were apparently insufficient for inclusion as counts in the Indictment.

**BECKLEY LAW FIRM, P.C.**
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

United States Department of State Treaties in Force (2009), at 237-39. Saudi law requires approval and coordination with SAMA before banking information can be shared with foreign governments. Rules Governing Anti-Money Laundering & Combating Terrorist Financing (Second Update, December 2008), Section 2.6.3. *See also* SAMA Circular Number 16323/BC/319, dated September 7, 1985 (instructing Saudi banks that they must "comply with the common rule of not disclosing any information except through SAMA and to reject any request for information"); SAMA Circular Number 100/BC/63, dated 24/3/1413 H (instructing banks to advise a "government agency that asks for information about client balances and banking activities to address its request to the Ministry of Finance and National Economy or to SAMA"). SAMA, interpreting Saudi law, has made it clear in its letter to the Bank that a letter rogatory is the proper form of request for the subpoenaed documents.

The fifth consideration also favors the Bank. While the government has an interest in being able to obtain the records requested, the government overstates the case that quashing the Subpoena would entirely frustrate the purpose behind the enactment of Section 5318(k). The government has not pointed to any Saudi bank secrecy laws that would entirely foreclose production of the documents demanded in the Subpoena. The laws that prohibit the Bank from complying with the Subpoena govern ordinary domestic accounts, not "offshore banking and related facilities designed to provide anonymity." (Gov. Motion at 27.) They protect a reasonable level of confidentiality of bank records, and are not iron-clad bank secrecy laws.

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098 EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

Saudi Arabia clearly has a strong interest in regulating domestic bank accounts and Saudi banks' dissemination of account records to foreign regulators. These interests are evidenced by the fact that SAMA, in its letter to the Bank, has made its interests clear and has cited to relevant provisions protecting these interests. *See In re Air Crash at Taipei*, 211 F.R.D. 374, 379 (C.D. Ca. 2002) (holding that a general letter written on behalf of Singapore's Attorney General, that did not mention the specific document requests, did not suffice to establish the interest of the foreign government). Additionally, Saudi Arabia's interests are embodied in a number of regulations and directives, as mentioned above, some of which were disseminated over twenty years ago. This strengthens the Bank's claim that Saudi Arabia has a strong and well-articulated interest. *See* RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 442 cmt. c (1987) (noting that a factor in determining the strength of a foreign state's interest is "indications of the foreign state's concern for confidentiality prior to the controversy in connection with which the information is sought"); *See also Richmark*, 959 F.2d at 1476 (finding that the fifth factor did not favor the petitioner because, among other things, the People's Republic of China had not expressed an interest in the secrecy of the information demanded in the case before the controversy arose).

The hardship that would be imposed on the Bank if it complied with the Subpoena is severe and is a factor in determining whether to enforce the Subpoena. *See Richmark*, 959 F.2d at 1477. Compliance, as made clear by SAMA's letter to the Bank, would be a criminal act potentially leading to imprisonment and fines. The Bank believes that

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

criminal prosecution for complying with the Subpoena in violation of SAMA's clear directives is likely. (Declaration Al-Kholaifi Decl., ¶ 2.) "It is hardly debatable that fear of criminal prosecution constitutes a weighty excuse for nonproduction, and this excuse is not weakened because the laws preventing compliance are those of a foreign sovereign." *Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 211 (1958). Additionally, this factor is strengthened because the hardship the Bank is facing is in no way self-imposed. *See Richmark*, 959 F.2d at 1477 (holding that the hardship faced by the foreign company did not militate against production of the documents because the discovery dispute arose as a result of that company's refusal to post a supersedeas bond or letter of credit).

Finally, "[i]f a discovery order is likely to be unenforceable, and therefore to have no practical effect, that factor counsels against requiring compliance with the order." *Richmark*, 959 F.2d at 1478. Here, enforcing the Subpoena does not ensure that the government will received the documents. If the Bank finds itself in the untenable position of having to choose between losing its correspondent accounts or facing criminal prosecution in its home country, it may well conclude that it has no choice but to sacrifice the correspondent accounts. In such a case, the government will no longer be able to use Section 5318(k) (to the extent that it is a proper tool in this case) to try to obtain the documents. If this occurs, the government's only recourse would be to request the documents through a letter rogatory. Thus, enforcing the Subpoena may not do anything

Opposition to Motion to Compel
Compliance  – Page 28

Clients/Al Rajhi Banking &
Investment Corp/ Opposition to
Motion to Compel (08 FEB 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

to improve the government's chances of obtaining the documents it seeks, and quashing the Subpoena does not necessarily decrease these chances.

## V.    This Court Should Refrain From Deciding On The Merits Of The Motion To Compel Until D.C. District Court Decides Whether To Change Venue

In light of the existence of parallel subpoena enforcement proceedings at opposite ends of the country addressing the same legal issues – a conflict created solely by the government's decision to bring a motion before this Court *two weeks after* the Bank filed its Motion to Quash before the D.C. District Court – there is a potential for inconsistent judgments in two separate jurisdictions. To avoid such an outcome, and in recognition of the substantial deference afforded the first-to-file petitioner in choosing an appropriate forum, the Bank respectfully requests that this Court delay a decision on the merits of this discrete subpoena enforcement proceeding until the status of the originally-filed, parallel enforcement proceeding in the D.C. District Court is resolved.

This Court has broad equitable discretion to await the resolution of the parallel action. "A federal district court 'possesses the inherent power to control its own docket and calendar.'" *Cohen v. Carreon*, 94 F. Supp. 2d 1112, 1115 (D. Or. 2000) (quoting *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983)); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). Two of the primary considerations in deciding to delay a decision are the risks of inconsistent judgments and the inherent inefficiency of having two parallel proceedings pending in separate courts. *See Leyva v. Certified Grocers of Cal*, 593 F.2d 857, 863-64

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

(9th Cir. 1979) (finding that a district court can stay a proceeding to recognize efficiencies "pending resolution of independent proceedings which bear upon the case," regardless of whether the other proceedings are "judicial, administrative, or arbitral in character"). In deciding whether to wait before deciding on the merits, this Court should weigh (1) the possible damage that may result to the government from granting the stay; (2) the hardship or inequity that would result to the Bank from being required to litigate this dispute before this Court; and (3) the orderly course of justice measured in terms of the simplification or complication of issues, proof, and questions of law that could be expected from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

The Bank does not dispute that this Court would provide an adequate venue to resolve the dispute between the government and the Bank regarding the enforceability of the Subpoena. However, the fact remains that the Bank's decision to bring the first action before the D.C. District Court, which is also an appropriate venue, should be given considerable deference. *Biotronik, Inc. v. Guidant Sales Corp.*, No. 09-442, 2009 WL 1838322, *2 (D. Or. June 22, 2009) ("The first-to-file rule provides that when similar cases have been filed in different federal district courts, it is within the court's discretion to dismiss the second filed action when it involves the same parties and issues.") (citing *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982)); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1177 (9th Cir. 2006) ("As an initial hurdle, the plaintiff's choice of forum is entitled to deference.").

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

Although not absolute, the plaintiff's choice of forum is typically not disturbed absent a showing of bad faith, forum shopping, or similar considerations. As demonstrated below and explained in greater detail in the Bank's opposition to the government's motion, filed today in the D.C. District Court,[4] none of these factors is present here and there are myriad reasons why Washington, D.C. is an appropriate forum to adjudicate this discrete subpoena enforcement proceeding. Therefore, the government should not be rewarded for exploiting a conflict that was entirely of its own making in violation of the strong presumption in this and other circuits against disturbing the plaintiff or petitioner's initial forum choice. Moreover, "a plaintiff need not select the optimal forum for his claim, but only a forum that is not so oppressive and vexatious to the defendant 'as to be out of proportion to plaintiff's convenience.'" *Tuazon*, 433 F.3d at 1180 (quoting *Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000). As such, even where an adequate alternative forum exists, a plaintiff's original forum choice should not be disturbed absent private and public factors weighing strongly in favor of the alternative forum.

The government submits that the Bank, as a non-party to the main criminal proceeding, should be forced to litigate this discrete dispute in this Court rather than the Bank's chosen venue, which it argues is not an appropriate forum. That argument is meritless. First, the underlying statute from which the Subpoena purportedly derives, Section 5318(k), does not delineate a specific venue for the initiation of the related

---

[4] The Bank's opposition is attached as Exhibit A to the Colman Decl. II, and incorporated here by reference.

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

subpoena enforcement proceedings, and certainly does not provide that such proceedings must be held where the investigation or primary criminal action is taking place. Moreover, there are compelling reasons why the Bank decided to commence an action in the D.C. District Court rather than across the country in this Court.

First, as explained in greater detail in the Bank's reply memorandum filed in the D.C. District Court, non-parties contesting subpoenas are customarily afforded considerable protection from being forced to litigate subpoena-related disputes in inconvenient locations. Thus, the fact that the Bank's counsel is located in Washington, D.C. and its effort and expense was less burdensome in commencing an action in the D.C. District Court is an eminently reasonable justification for selecting that venue. Furthermore, the government's argument that it would face a greater burden by being forced to litigate in the D.C. District Court rather than this Court constitutes considerable overreaching in light of the relative resources, physical presence, and attorney admissions rights enjoyed by counsel for the government.[5] In fact, the Bank – as a non-party – previously had not litigated any issues before this Court and had not retained local counsel or entered an appearance before being forced to do so to oppose the government's duplicative filing.

///

///

---

[5] Contrary to the government's protestations, the Bank's counsel, Dewey & LeBoeuf LLP, has no Oregon offices and no attorneys with an active license to practice in this State.

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

Second, all critical decisions surrounding the issuance of the Subpoena were made in Washington, D.C.  Specifically, Section 5318(k) gives the Attorney General and the Secretary the authority to issue summonses and subpoenas to foreign banks, and to order domestic banks to close correspondent accounts if the foreign banks neither comply with nor challenge the subpoenas.  Importantly, this latter authority to close correspondent accounts does not appear to have been delegated, as the provision specifically requires that the Attorney General and Secretary consult with one another before issuing such orders.  In addition, although the authority to issue the Subpoena in the first instance may have been properly delegated to the United States Attorney for the District of Oregon, the exercise of this delegated right requires pre-approval by the Criminal Division at main justice in Washington and the Department of Justice's internal policy manuals confirm the fact that approval first must be obtained from OIA and the Department of Justice's Asset Forfeiture and Money Laundering Section ("AFMLS").  (Coleman Decl. Ex. B.)

Third, the decision by the Secretary to exercise the authority granted to him under the USA PATRIOT Act, 31 U.S.C. § 5318A, in connection with which the Bank seeks injunctive relief, would need to be made in Washington, D.C. and implemented by the Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN"), which is also located in Washington, D.C.

///

///

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

Finally, as confirmed by counsel for the Bank's call with OIA, and explained in greater detail in the Bank's Motion to Quash and accompanying declarations, the decision not to issue a letter rogatory to the Kingdom of Saudi Arabia was made in Washington, D.C.

The Bank recognizes that the government and this Court have an interest in resolving this dispute promptly so as not to delay the criminal trial. The Bank is also cognizant that this Court is familiar with the facts and issues of the criminal case, but notes that the enforceability of the Subpoena raises only legal questions that are entirely distinct from those of the criminal case. The Bank also has an interest in resolving this dispute in a timely manner and, in furtherance of this interest, the Bank informed the government in *September 2009* that it could not comply with the Subpoena. The Bank respectfully submits that any efficiency associated with resolving the matter in this Court does not outweigh the other factors favoring delaying a decision on the merits here.

Accordingly, given the considerable nexus to the D.C. District Court resulting from the government's decision to issue the Subpoena to the Bank and its associated enforcement powers under the USA PATRIOT Act, venue is appropriate, and the government cannot overcome its burden of demonstrating that the Bank's decision to file first in the D.C. District Court constitutes bad faith, forum shopping, or is overly burdensome to its counsel. For this and other reasons, (1) the government would not be damaged by delaying this discrete proceeding and allowing the D.C. District Court to rule on the Bank's earlier motion to quash; (2) the Bank would be faced with significantly

Opposition to Motion to Compel
Compliance – Page 34

Clients/Al Rajhi Banking &
Investment Corp/ Opposition to
Motion to Compel (08 FEB 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

greater hardship by being forced to litigate its rights before this Court outside of its chosen forum; and (3) the interests of justice are served by not complicating these criminal proceedings with this discrete legal dispute that will require no witnesses or evidence and little factual analysis.  Therefore, the Bank respectfully requests that this Court delay making a decision on the merits of this discrete subpoena enforcement proceeding until the status of the originally-filed, parallel enforcement proceeding in the D.C. District Court is resolved.

## CONCLUSION

For the reasons stated above, the government's Motion to Compel should be denied.

Dated: February 8, 2010                               Respectfully submitted,


BECKLEY LAW FIRM, P.C.:                    DEWEY & LEBOEUF LLP


By:   /s/ Kelly R. Beckley_____          By:  /s/ Timothy J. Coleman_____
Mr. Kelly R. Beckley                                Timothy J. Coleman
kbeckley@beckley-law.com                     Boaz I. Green
Mr. Kevin W. Bons                                  *Pro hac vice pending*
kbons@beckley-law.com                         1101 New York Avenue, NW
1257 High St., Suite #2                           Washington, DC  20005-4213
P. O. Box 11098                                      Telephone: (202) 346-8000
Eugene, OR 97440                                  Facsimile:  (202) 346-8102
Phone: (541) 683-0888
Fax: (541) 683-0889

ATTORNEYS FOR RESPONDENT          ATTORNEYS FOR RESPONDENT

Opposition to Motion to Compel
Compliance  – Page 35

Clients/Al Rajhi Banking &
Investment Corp/ Opposition to
Motion to Compel (08 FEB 10)

**BECKLEY LAW FIRM, P.C.**
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com