1  tool.  The court cases that are cited, especially the

2  cases out of the Eastern District of Virginia, are very

3  instructive, they're recent.  Judge Ellis and other

4  judges on that bench have an extensive background in

5  this.  And they've issued opinions that are reported in

6  the Federal Supplement.  And I'm not aware of any case

7  where the judge has ordered the government to use its

8  MLAT authority to get information.  And the courts are

9  very hesitant to do so, recognizing that the terms of

10  the MLATs are negotiated between the governments, do not

11  involve the courts, and it's an executive dialogue.

12      And the language in the MLAT at issue here,

13  Egypt, specifically prohibit it being used as an

14  evidence gathering device for private parties like the

15  defendant here.  The Jefferson and Rosen cases are the

16  ones that are very good in providing the background on

17  that.

18      Now, with respect to what Mr. Wax says about

19  the government does this anyways, we checked into the

20  facts of the Ohio case, which El Hindi, I think, is the

21  case, and he attached a letter where there was some

22  indication that the government was going to use its MLAT

23  authority for the defense.  I don't have chapter and

24  verse, but I talked to the people that were somewhat

25  involved in this back in Washington.

1    The government's office that deals with

2    interfacing between foreign governments and our

3    government and the State Department is under the

4    Department of Justice called Office of International

5    Affairs, OIA.  And they break down to particular

6    regions.  And I spoke with the people that deal with

7    this part of the world.  They are very aware of this.

8    And what they said in that case, El Hindi, is that

9    although this paperwork was executed by the U.S.

10   Attorney's Office and components of the department, no

11   one ever consulted the central authority, OIA, about

12   this.  Once they heard about this, they vetoed it.  They

13   said this is not what is done.  It is outside of

14   protocol and it never happened.

15   If the court wishes a statement or testimony to

16   support that, we would be happy to provide it but it was

17   never done.  And it shouldn't be done here.

18   The other comments I have are with respect to

19   the alternative request and that's for the letters

20   rogatory.  Can I address that now?

21   THE COURT:  Yes.

22   MR. CARDANI:  On the letters rogatory, as I

23   read it, they want the court to issue letters rogatory

24   to Egypt to get the Egyptian courts to help secure the

25   presence of witnesses here.  These are not American

# DECLARATION

I, David P. Warner, pursuant to Title 28, United States Code, Section 1746 (pertaining to declarations under penalty of perjury), hereby declare and say as follows:

1. I am an Associate Director with the Office of International Affairs ("the Office"), Criminal Division, U.S. Department of Justice ("the Department"). I have been employed with the Department since September 1993 and specifically with the Office since January 1997. Since late 2002/early 2003, I have overseen law enforcement cooperation efforts between the United States and, among other countries, the Arab Republic of Egypt ("Egypt").

2. My duties include communicating with and assisting law enforcement officials from around the United States in seeking assistance in criminal matters from Egypt.

3. I have been asked to review and comment on the declaration of Charles M. Boss, particularly with respect to a defendant's efforts in a completely distinct and unrelated trial, *United States v. Mohammad Zaki Amawi, et al.* (NDOH), 06CR719, to obtain witness testimony in other countries, including Egypt.

4. I am aware of the arrangement that Mr. Boss describes in his declaration and which is reflected in the letter appended to the exhibit, dated January 22, 2008. I note that the express terms of the arrangement do not contemplate the use of the U.S.-Egypt Treaty on Mutual Legal Assistance in Criminal Matters, signed in Cairo, Egypt, on May 3, 1998 (U.S.-Egypt MLAT), for the defense.

5. 28 C.F.R. § 0.64-1 designates the Office of International Affairs of the Criminal Division as the central or competent authority under treaties and executive agreements on mutual assistance in criminal matters. *See* Exhibit 1. By Department Directive, the deputy assistant attorneys general of the Criminal Division and the Director and Deputy Directors of the Office of

EXHIBIT B - 1 of 2

International Affairs of the Criminal Division are authorized to sign a request for assistance under the relevant treaty, in that case, the U.S.-Egypt MLAT. *See* Exhibit 2.

6. In the *Amawi* case, walled-off counsel contacted me with the aim of making a treaty request to Egypt. Once I understood the proposed arrangement, neither I nor others in the Office authorized the invocation of the treaty for the exclusive benefit of the defendants. I instructed walled-off counsel to seek assistance through a letter rogatory. I did alert the U.S. Department of Justice Attaché in Cairo, Egypt, about the matter and encouraged the Attaché to coordinate with others at the U.S. Embassy for the immediate delivery of what I understood would be an informal defense request for assistance. I do not know whether the informal request was actually delivered to the appropriate authorities in Egypt.

7. Because only the Office of International Affairs is authorized to make a request for assistance under the relevant treaty and inasmuch as neither I nor others here authorized the invocation of the treaty for the exclusive benefit of the defendants in the case Mr. Boss references, any request prepared and presented by walled-off counsel could only constitute an informal defense request. It was not an MLAT request.

I declare under penalty of perjury that the foregoing is true and correct to my personal knowledge, information, and belief.

Executed on February 23, 2010.

David P. Warner

**28 CFR § 0.64–1 Central or Competent Authority under treaties and executive agreements on mutual assistance in criminal matters.**
The Assistant Attorney General, Criminal Division, in consultation with the Assistant Attorney General for National Security in matters related to the National Security Division's activities, shall have the authority and perform the functions of the ''Central Authority'' or ''Competent Authority'' (or like designation) under treaties and executive agreements between the United States of America and other countries on mutual assistance in criminal matters that designate the Attorney General or the Department of Justice as such authority. The Assistant Attorney General, Criminal Division, is authorized to re-delegate this authority to the Deputy Assistant Attorneys General, Criminal Division, and to the Director and Deputy Directors of the Office of International Affairs, Criminal Division. [Order No. 2865–2007, 72 FR 10065, Mar. 7, 2007]

Exhibit 1 of EXHIBIT B

**Title 28: Judicial Administration**
PART 0—ORGANIZATION OF THE DEPARTMENT OF JUSTICE
Subpart K—Criminal Division

**Appendix to Subpart K of Part 0**

Criminal Division

[Directive No. 73]

Redelegation of Authority to Deputy Assistant Attorneys General and Director of the Office of International Affairs Respecting Transfer of Offenders to and From Foreign Countries

By virtue of the authority vested in me by §0.64 –2 of title 28 of the Code of Federal Regulations, the authority delegated to me by that section to exercise all of the power and authority vested in the Attorney General under Section 4102 of title 18, U.S. Code, which has not been delegated to the Director of the Bureau of Prisons, including specifically the authority to find the transfer of offenders to or from a foreign country under a treaty as referred to in Public Law 95–44 appropriate or inappropriate, is hereby redelegated to each of the Deputy Assistant Attorneys General and the Director of the Office of International Affairs of the Criminal Division.

[Directive No. 81A]

Redelegation of Authority to Deputy Assistant Attorneys General and Director and Deputy Directors of the Office of International Affairs Regarding Authority To Act as Central Authority or Competent Authority Under Treaties and Executive Agreements on Mutual Assistance in Criminal Matters

By virtue of the authority vested in me by §0.64–1 of title 28 of the Code of Federal Regulations, the Authority delegated to me by that section to exercise all of the power and authority vested in the Attorney General under treaties and executive agreements on mutual assistance in criminal matters is hereby redelegated to each of the Deputy Assistant Attorneys General, to the Director of the Office of International Affairs and to each of the Deputy Directors of the Office of International Affairs, Criminal Division.

[Directive No. 81B]

Redelegation of Authority to Deputy Assistant Attorneys General and Director and Deputy Directors of the Office of International Affairs Respecting Temporary Transfers, in Custody, of Certain Prisoner-Witnesses from a Foreign Country to the United States .

By virtue of the authority vested in me by 28 CFR 0.64–4, the authority delegated to me by that section to exercise all of the power and authority vested in the Attorney General under section 3508 of title 18, United States Code, which has not been delegated to the Director, United States Marshals Service under 28 CFR 0.111a, is hereby redelegated to each of the Deputy Assistant Attorneys General, and to the Director and each of the Deputy Directors of the Office International Affairs, Criminal Division.

[44 FR 18661, Mar. 29, 1979, as amended at 45 FR 6541, Jan. 29, 1980; 48 FR 54595, Dec. 6, 1983; 59 FR 42161, Aug. 17, 1994; 59 FR 46550, Sept. 9, 1994]

Exhibit 2 of EXHIBIT B