Kelly R. Beckley
kbeckley@beckley-law.com
Kevin W. Bons
kbons@beckley-law.com
BECKLEY LAW FIRM, P.C.
1257 High St., Suite #2
P. O. Box 11098
Eugene, OR 97440
Phone: (541) 683-0888
Fax: (541) 683-0889

Timothy J. Coleman
Boaz I. Green
*Pro hac vice*
DEWEY & LEBOEUF LLP
1101 New York Avenue, NW
Washington, DC  20005-4213
Telephone: (202) 346-8000
Facsimile:  (202) 346-8102

Attorneys for Respondent

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
|  | ) **CR 05-60008-02-HO** |
| **v.** | ) |
|  | ) **AL RAJHI BANKING &** |
| **PIROUZ SEDAGHATY** | ) **INVESTMENT CORP.'S MOTION** |
|  | ) **TO STAY ORDER FOR** |
| **Defendant,** | ) **COMPLIANCE WITH PATRIOT** |
|  | ) **ACT SUBPOENA** |
| **In re AL RAJHI BANK SUBPOENA** | ) |
|  | ) |
| **AL RAJHI BANKING &** | ) |
| **INVESTMENT CORP.,** | ) |
| **Real party in interest,** | ) |
|  | ) |
| **Respondent.** | ) |

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................ ii

Background ...........................................................................................................1

Argument ..............................................................................................................4

1.    The Bank Will Suffer Irreparable Harm If A Stay Is Not Granted.........................5

2.    The Balance Of The Hardships Tips Decidedly Towards The Bank
      Because A Stay Will Not Cause The Government Substantial Hardship...............7

3.    The Bank Has A Substantial Likelihood Of Success On Appeal ..........................8

      a.    There Is A Substantial Likelihood That The Self-Enforcing
            Subpoena Power Granted By Section 5318(k) Will Be Found
            Unconstitutional On Appeal ...................................................................10

      b.    There Is Substantial Likelihood That Use Of An Administrative
            Subpoena To Gather Evidence For Trial Will Be Found Improper
            On Appeal ............................................................................................16

      c.    Because Compliance With The Subpoena Would Require The
            Bank To Violate Saudi Law, The Bank Has A Substantial
            Likelihood Of Prevailing On Appeal.......................................................19

4.    A Stay Serves The Public Interest .....................................................................22

Conclusion ...........................................................................................................24

Motion to Stay Order – Page i

CLIENTS/Al Rajhi Bank/Motion
to Stay Order (05 MAR 10)

**BECKLEY LAW FIRM, P.C.**
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Armster v. U.S. District Court for the Central District of California*,
    806 F.2d 1347 (9th Cir. 1986) ...........................................................................20

*Azurin v. Von Raab*,
    792 F.2d 914 (9th Cir. 1986) .............................................................................21

*Beverly v. United States*,
    468 F.2d 732 (5th Cir. 1972) .............................................................................16

*Boumediene v. Bush*,
    553 U.S. 723, 128 S. Ct. 2229 (2008)............................................................ *passim*

*California Pharmacists Ass'n v. Maxwell-Jolly*,
    563 F.3d 847 (9th Cir. 2009) ...........................................................................4, 6

*Citizens United v. Federal Election Commission*,
    558 U.S. ___, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010).......................................10

*EEOC v. Federal Express, Corp.*,
    558 F.3d 842 (9th Cir. 2009) ..........................................................................8, 16

*Gilder v. PGA Tour, Inc.*,
    936 F.2d 417 (9th Cir. 1991) ..............................................................................4

*Golden Gate Restaurant Ass'n v. San Francisco*,
    512 F.3d 1112 (9th Cir. 2008) .........................................................................4, 8

*ICC v. Gould*,
    629 F.2d 847 (3d Cir. 1980)................................................................................9

*In re Grand Jury Proceedings (Diamante)*,
    814 F.2d 61 (1st Cir. 1987)................................................................................16

*In re Grand Jury Proceedings (Johanson)*,
    632 F.2d 1033 (3d Cir. 1980)............................................................................16

*In re Sealed Case*,
    825 F.2d 494 (D.C. Cir. 1987) ..........................................................................17

CLIENTS/Al Rajhi Bank/Motion
to Stay Order (05 MAR 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

*INS v. Chadha*,
    462 U.S. 919 (1983)..............................................................................................10

*Kwong Hai Chew v. Colding*,
    344 U.S. 590 (1953)..........................................................................................11, 12

*Lee v. Oregon*,
    869 F. Supp. 1491 (D. Or. 1994) .........................................................................5

*Lopez v. Heckler*,
    713 F.2d 1432 (9th Cir. 1983) .............................................................................4

*Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*,
    5 F.3d 1508 (D.C. Cir. 1993) .............................................................................18

*Mead Investments., Inc. v. Garlic Jim's Franchise Corp.*,
    No. 08-922-HU, 2008 U.S. Dist. LEXIS 92443 (D. Or. Nov. 13, 2008) .................4

*MESA Petroleum Co. v. Cities Service Co.*,
    715 F.2d 1425 (10th Cir. 1983) ..........................................................................6

*Morton Salt Co.*,
    338 U.S. 632 (1950)...........................................................................................16

*Murphy v. Ramsey*,
    114 U.S. 15 (1885)............................................................................................13

*Philippines v. Marcos*,
    862 F.2d 1355 (9th Cir. 1988) ......................................................................4, 5, 9

*Planned Parenthood Ass'n of Cincinnati v. Cincinnati*,
    822 F.2d 1390 (6th Cir. 1987) ...........................................................................20

*Resolution Trust Corp. v. Grant Thornton*,
    41 F.3d 1539 (D.C. Cir. 1994) .......................................................................16, 17

*Richmark Corp. v. Timber Falling Consultants*,
    959 F.2d 1468 (9th Cir. 1992) .......................................................................18, 20

*United States v. Badger*,
    983 F.2d 1443 (7th Cir. 1993) ...........................................................................16

*United States v. Bailey*,
    228 F.3d 341 (4th Cir. 2000) ..............................................................................9

CLIENTS/Al Rajhi Bank/Motion
to Stay Order (05 MAR 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET · P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 · FAX 541-683-0889
www.beckley-law.com

*United States v. Jenkins*,
   904 F.2d 549 (10th Cir. 1990) ........................................................................16

*United States v. Moss*,
   756 F.2d 329 (4th Cir. 1985) ........................................................................16

*United States v. Phibbs*,
   999 F.2d 1053 (6th Cir. 1993) ......................................................................16

*United States v. Sellaro*,
   514 F.2d 114 (8th Cir. 1973) ........................................................................16

*United States v. Star*,
   470 F.2d 1214 (9th Cir. 1972) ......................................................................16

*United States v. Vanwort*,
   887 F.2d 375 (2d Cir. 1989) ..........................................................................16

*United States v. Verdugo-Urquidez*,
   494 U.S. 259 (1990) ..........................................................................10, 11, 12

**FEDERAL STATUTES**

31 U.S.C. § 5318(k) .................................................................................. *passim*

31 U.S.C. § 5318A ...............................................................................2, 12, 13

**REGULATIONS**

Determination Pursuant to Section 1(b) of Executive Order 13224, 68 Fed. Reg.
   9733 (Feb. 28, 2003) ....................................................................................19

Imposition of Special Measures Against Banco Delta Asia, 72 Fed. Reg. 12,730,
   12,732 (Mar. 19, 2007) ................................................................................21

**OTHER AUTHORITIES**

Michael Wines, *Putin Again Rejects U.S. Calls for Support of a War, Fearing
   Effect on the Mideast*, N.Y. Times, Feb. 28, 2003 ....................................19

Restatement (Third) of Foreign Relations Law of the United States § 442(1)(c)
   (1987) ............................................................................................................18

*United States v. Holy Land Foundation for Relief and Development*,
    No. 03-CR-240-P (N.D. Tex. May 29, 2007) ........................................................................15

CLIENTS/Al Rajhi Bank/Motion
to Stay Order (05 MAR 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

Respondent, Al Rajhi Banking & Investment Corporation (the "Bank") respectfully submits this motion for a stay pending appeal of this Court's Order compelling compliance with a USA PATRIOT Act subpoena for foreign bank records (the "Subpoena").  The Bank will suffer severe and irreparable harm if a stay is not granted.  If the Bank complies with the Subpoena, it will have violated Saudi law and the explicit instructions of its regulators, and is likely to face criminal prosecution in Saudi Arabia.  If it does not comply with the Subpoena, it risks permanent closure of its valuable correspondent account relationships with U.S. banks.  A stay will not cause undue hardship to the government or Defendant Sedaghaty.  A stay will not foreclose the government's ability to obtain the subpoenaed documents.  At most, a stay will cause a brief adjournment of criminal trial, which has already been pending for almost five years.  Because the balance of hardship tips decidedly towards the Bank, it need only show that it has raised serious questions of law and that it has a fair chance of succeeding on the merits.  However, as described more fully below, the Bank has a substantial likelihood of success on the merits.  Finally, because this case raises serious and novel questions of constitutional law and the proper scope of administrative subpoena power, the public interest favors a full hearing on appeal.  A stay will therefore be in the public interest, because if it is not granted, the appeal will likely be mooted.

## Background

On July 17, 2009, the Acting U.S. Attorney for the District of Oregon, acting as the authorized delegate of the Attorney General, issued an administrative subpoena for

foreign bank records on the Bank.  After receiving the Subpoena, the Bank requested permission to comply from its regulator, the Saudi Arabian Monetary Authority ("SAMA").  (Declaration of Khalid Al-Thebity, sworn to October 21, 2009 ("Al-Thebity Decl."), Exs. E, F.)  SAMA notified the Bank that it was not permitted to comply with the Subpoena, and that compliance would be a criminal violation of various provisions of Saudi Law, potentially leading to fines and imprisonment of individuals involved.  (Al-Thebity Decl., Ex. G.)  SAMA also informed the Bank that the proper method for the United States to request these documents is through a letter rogatory.  *Id.*  In addition, and as detailed more fully in the Bank's Opposition to the government's Motion to Compel, the Bank spent the five months since receiving the Subpoena attempting to work with the U.S. Government to find alternative means to resolve the issue without resorting to litigation or violating the laws of its home country.  However, the Bank ultimately was forced to seek judicial intervention after the government threatened the Bank with action under 31 U.S.C. § 5318A, a separate provision of the USA PATRIOT Act.

The Bank filed an action to quash the subpoena in the United States District Court for the District of Columbia ("the D.C. Court") on January 19, 2010.  On February 1, 2010, the government filed a separate motion to compel compliance with the Subpoena in this Court.  At the government's request, on February 9, 2010, the D.C. Court entered an order staying the proceedings until this Court decided on the government's motion to compel.  A hearing on the government's motion to compel was held in the Oregon Court on February 16, 2010, and was attended by the government and the Bank's counsel.  This

Motion to Stay Order – Page 2

CLIENTS/Al Rajhi Bank/Motion to Stay Order (05 MAR 10)

**BECKLEY LAW FIRM, P.C.**
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

Court entered an order granting the government's motion to compel compliance with the Subpoena on February 26, 2010 (the "Order").  On March 2, 2010, the D.C. Court dismissed the Bank's motion as moot.  The Bank filed its notice of appeal on March 1, 2010.

On March 3, 2010, the Bank wrote to the government to inform it that it is the Bank's position that the government is barred from taking action to close the correspondent accounts under the terms of Section 5318(k).  The Bank believes that a stay is not required because the plain language of 31 U.S.C. § 5318(k) precludes the government from moving to close the Bank's correspondent accounts while a challenge to the enforceability of the Subpoena is still pending.  In its response to the Bank's motion to quash in the D.C. Court, the government argued that the Bank's request for injunctive relief was improper because the government was foreclosed from taking action under Section 5318(k) while the proceedings to determine the Subpoena's enforceability were still pending.  The government stated: "[b]ecause Al Rajhi has initiated proceedings to contest the subpoena, the Department is barred by 31 U.S.C. § 5318(k)(3)(i) from causing the U.S. financial institutions to terminate the correspondent relationship with Al Rajhi.  Thus until those proceedings play out, its hardship, if any, would be 'abstract or remote.'"  (United States' Memorandum in Opposition to Motion by the Al Rajhi Banking & Investment Corporation to Quash Administrative Subpoena, at 10.)  Additionally, this Court's Order only provides the government the permission to seek to use the sanctions provided under Section 5318(k), but does not provide an independent

Motion to Stay Order – Page 3

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

source of power to sanction the Bank.  (Order at 19.) ("the United States' motion to compel compliance . . .  is granted to the extent that the government may seek to impose the sanctions authorized under section 5318(k).")

However, the government informed the Bank that it does not believe it is legally barred from taking action to close the correspondent accounts while the appeal is pending.  The government also informed the Bank that it could not guaranty that it would give the Bank advance notice concerning any enforcement actions contemplated by it. Finally, the government stated that it would oppose a stay.  The Bank has submitted this motion to protect its vital interests and ensure that the important issues raised by this case are fully heard on appeal.

## Argument

There are four factors to be weighed in granting a stay pending appeal: (1) the likelihood of success on the merits; (2) irreparable injury to the party seeking a stay; (3) the balance of hardship; and (4) the public interest.  *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 849-50 (9th Cir. 2009).   In the Ninth Circuit, courts use two interrelated tests that represent "the outer reaches of a single continuum."  *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983) (internal quotations omitted).  The moving party must show either that it has a probability of success on the merits and that there is a possibility that it will suffer irreparable harm, or that "serious legal questions are raised and that the balance of hardships tips sharply in its favor."  *Id*.  "[T]he greater the degree of irreparable harm, the less probability of success on the merits must be shown."  *Mead*

*Invs., Inc. v. Garlic Jim's Franchise Corp.*, No. 08-922-HU, 2008 U.S. Dist. LEXIS 92443, at *5 (D. Or. Nov. 13, 2008).  If the balance of hardships tips decidedly towards the moving part, then that party "need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991). *See also Golden Gate Rest. Ass'n v. San Francisco*, 512 F.3d 1112, 1119 (9th Cir. 2008) ("[I]f the balance of hardships tips sharply in favor of the party seeking the stay, a relatively low standard of likelihood of success on the merits is sufficient.") (internal quotations and alteration omitted).

"Serious [legal] questions" are "substantial, difficult and doubtful, as to make them a fair ground for litigation." *Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (internal quotations omitted).  "Serious questions need not promise a certainly of success, nor even present a probability of success, but must involve a '*fair chance* of success on the merits.'" *Id.* (emphasis added).  However, "[n]o chance of success *at all* will not suffice." *Lee v. Oregon*, 869 F. Supp. 1491, 1496 (D. Or. 1994) (emphasis added).

### 1.    The Bank Will Suffer Irreparable Harm If A Stay Is Not Granted

If a stay is not granted, the Bank will face two untenable options, each leading to certain, severe and irreparable harm.  If the Bank complies with the Subpoena, it will be subject to criminal prosecution in its home country of Saudi Arabia, potentially leading to fines and imprisonment of its officers or employees.  If the Bank does not comply with the Subpoena, it will face the closure of its correspondent accounts at U.S. banks, leading

to permanent, non-compensable loss of important and valuable business relationships. Additionally, both criminal prosecution in its home country and U.S. Government action against its correspondent accounts – essentially branding the bank as a supporter of terrorism – would cause severe and irreparable reputational harm.

In response to the Bank's request for permission to comply with the Subpoena, SAMA notified the Bank that it was not permitted to do so, and that compliance would be a criminal violation of various provisions of Saudi law, potentially leading to fines and imprisonment of the individuals involved. (Al-Thebity Decl., Ex. G.) The Bank reasonably believes that SAMA would impose severe sanctions if it complied with the Subpoena and that such criminal prosecution would have a devastating effect on the Bank's operations. (Declaration of Ahmed Al-Kholaifi sworn to February 7, 2010, ¶ 2 ("Al-Kholaifi Decl.").) The government does not seriously dispute the existence of that threat. As a matter of law, the threat of criminal prosecution constitutes substantial hardship. *See MESA Petroleum Co. v. Cities Serv. Co.*, 715 F.2d 1425, 1432-33 (10th Cir. 1983) ("[T]he Supreme Court implicitly has recognized that potential prosecution . . . is the sort of threatened harm that warrants injunctive relief . . .").

The Order permits the government to take action under Section 5318(k) to close the Bank's correspondent accounts if the Bank does not comply with the Subpoena. Closure of these correspondent accounts would cause severe and irreparable harm to the Bank's ongoing business activities and its reputation. (Al-Kholaifi Decl. ¶ 3.) The Bank would have no recourse for recovering the damage caused by the closure of the accounts,

CLIENTS/Al Rajhi Bank/Motion to Stay Order (05 MAR 10)

**BECKLEY LAW FIRM, P.C.**
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

even if the order compelling compliance is overturned on appeal. The USA PATRIOT Act, 31 U.S.C. § 5318(k)(3)(C)(ii), shields domestic banks that close foreign banks' correspondent accounts when ordered to do so by the government from any liability for such action, providing that such banks "shall not be liable to any person in any court or arbitration proceeding for terminating a correspondent relationship in accordance with this section." The Bank would also not be able to recover damages from the U.S. Government for actions taken pursuant to the Order. When there is no adequate remedy at law for economic harm, such harm is deemed irreparable for the purposes of deciding a motion for a stay pending appeal. *See Cal. Pharmacists Ass'n*, 563 F.3d at 852 (holding that because the Eleventh Amendment foreclosed a remedy for the economic harm that would befall plaintiffs if a preliminary injunction was not granted, such harm was deemed irreparable).

> ### 2.      The Balance Of The Hardships Tips Decidedly Towards The Bank Because A Stay Will Not Cause The Government Substantial Hardship

The government seeks the subpoenaed documents for introduction in a criminal trial set to begin three months from now, on June 7, 2010. Although the government issued the Subpoena on July 17, 2009, three days after a hearing on Defendant Sedaghaty's motion to suppress the government's evidence, the government has repeatedly delayed the resolution of the Bank's objections. The government extended the return date of the subpoena on multiple occasions. The government unilaterally made all extensions after October 23, 2009, after the Bank informed the government that it was not

requesting any additional extension, and that it would not be able to comply with the Subpoena.   (Declaration of Timothy J. Coleman sworn to January 15, 2010, ¶ 14 ("Coleman Decl.").)  A stay pending appeal may cause some additional delay, but unless the Subpoena is held unenforceable on appeal, a stay will not prevent the government from obtaining the documents before the trial commences.

In order to avoid any undue delay, the Bank filed a notice of appeal immediately on March 1, 2010, the first business day following the entry of the Order.  The Bank intends to request an expedited appeal.  Therefore, the appeal is likely to be resolved before the June 7, 2010 trial date.  If the appeal is not resolved by then, an adjournment of the trial date would not cause substantial hardship to the parties.  Defendant Sedaghaty has been released on bail and would not be prejudiced by a brief adjournment.  Nor would a brief adjournment cause the government prejudice in this five-year-old case.

### 3.        The Bank Has A Substantial Likelihood Of Success On Appeal

An order enforcing an administrative subpoena is reviewed *de novo*.   *EEOC v. Fed. Express, Corp.*, 558 F.3d 842, 846 (9th Cir. 2009).   This standard of review increases the likelihood of the Bank's success on appeal; and this factor is taken into account in granting a stay pending appeal.  *Golden Gate Rest. Ass'n.*, 512 F.3d at 1116 (holding that when the standard of review is *de novo* the court is "mindful of that standard of review in determining the likelihood that [appellants] will succeed on the merits").

///

Motion to Stay Order – Page 8

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

The likelihood of the Bank's success on the merits is increased because there are three independent grounds on which the Bank can prevail on appeal.  First, Section 5318(k) grants executive agencies the power to issue self-enforcing administrative subpoenas, in a stark departure from established constitutional limits on administrative subpoena power.  Second, without any statutory authority, the government is seeking to use the Subpoena, which is an investigative tool, to gather evidence for trial and not to further an investigation.  Third, even if the Order's findings regarding these threshold issues are upheld, the Bank can still prevail on appeal because enforcing the Subpoena would cause the Bank to violate the laws of its home country and its regulator's express instructions.  The Bank has a substantial likelihood of success on each of these questions, and prevailing on any one of them would be a sufficient basis for reversal.

As shown above, the Bank will suffer severe and irreparable harm if the Order is not stayed pending appeal.  The government will not suffer substantial hardship if a stay is granted.  Therefore, the balance of hardship tips decidedly towards the Bank.  Thus, the Bank need not show a substantial likelihood of success on the merits, and need only show that it has raised "important legal questions" and that there is a "fair chance of success on the merits."  *Philippines*, 862 F.2d at 1362.  As this Court has noted, the Bank has raised "novel issues" and its constitutional argument "is significant on [an] issue of first impression."  (Order at 5, 7.)  Here, the Bank's showing far exceeds the minimal requirement of "a fair chance of success on the merits."  *Philippines*, 862 F.2d at 1362.

///

Motion to Stay Order – Page 9

a.      There Is A Substantial Likelihood That The Self-Enforcing Subpoena Power Granted By Section 5318(k) Will Be Found Unconstitutional On Appeal

The constitutional validity of administrative subpoena legislation rests on the reservation of enforcement authority to the judiciary, rather than to the executive branch. *See United States v. Bailey*, 228 F.3d 341, 348 (4th Cir. 2000) ("As judicial process is afforded before any intrusion occurs, the proposed intrusion is regulated by, and its justification derives from, that process.").  The burden is on the Executive Branch to demonstrate the reasonableness of an administrative subpoena to the satisfaction of a federal court, rather than making that determination itself.  *See ICC v. Gould*, 629 F.2d 847, 855 (3d Cir. 1980) (setting forth standards of reasonableness the Interstate Commerce Commission must satisfy for enforcement of administrative subpoenas).

The Court recognized that the USA PATRIOT Act provision at issue implicates that judicial review requirement, stating that it was "concerned with the lack of an explicit procedure in the statute, via judicial oversight, initiated by the agency seeking enforcement through termination of correspondent accounts."  (Order at 7.)  That concern is fundamentally a question of the separation of powers, just as the availability of judicial review of the legality of detention implicates such concerns.  *See Boumediene v. Bush*, 553 U.S. 723, 128 S. Ct. 2229, 2246-47 (2008).[1]

Despite its expression of concern, the Court declined to address the merits of the Bank's constitutional challenge, finding that the Bank was not entitled to raise it in this

---

[1] Although the Bank argued that the provision at issue raises separation of powers questions, (Memorandum of Points and Authorities in Support of Petitioner's Motion to Quash USA PATRIOT Act Subpoena, filed January 19, 2010, at 15 n. 8) the Court did not address that issue in its Order.

Motion to Stay Order – Page 10

CLIENTS/Al Rajhi Bank/Motion to Stay Order (05 MAR 10)

case.   The Bank respectfully submits that the Court's ruling is inconsistent with Supreme

Court precedent on the rights of aliens to raise constitutional issues in the federal courts.

The Supreme Court recently reaffirmed that "foreign nationals who have the privilege of

litigating in our courts can seek to enforce separation-of-powers principles."

*Boumediene*, 128 S. Ct. at 2246 (citing *INS v. Chadha*, 462 U.S. 919, 958-59 (1983)).

Here, the statute at issue expressly grants subpoena respondents such as the Bank the

privilege of litigating in the federal courts, by providing for a proceeding to contest a

USA PATRIOT Act subpoena.   31 U.S.C. § 5318(k)(3)(C)(i)(II).[2]   Accordingly, the Bank

was entitled to raise its constitutional challenge in this proceeding.

The Court relied heavily on *United States v. Verdugo-Urquidez*, 494 U.S. 259

(1990)) (*See* Order at 8-9.)   In that case, the Supreme Court held that the Fourth

Amendment did not apply to a Mexican drug lord who was arrested in Mexico and

transported involuntarily to the United States, and who moved to suppress evidence

obtained in a warrantless search of his residences that occurred solely in Mexico.

*Verdugo-Urquidez*, 494 U.S. at 274.   Notably, the Court did not decide in that case "that

persons in the position of the respondent have no constitutional protection."   *Id.* at 278

(Kennedy, *J.*, concurring).   The Court also relied on *Kwong Hai Chew v. Colding*, 344

U.S. 590 (1953), which involved an alien who was seeking entry into the United States

for the first time.

///

---

[2] The fact that the Bank is a corporate entity rather than a natural person does not affect its right to raise such issues. *Cf. Citizens United v. Federal Election Comm'n*, 558 U.S. ___, 130 S. Ct. 876, 175 L. Ed. 2d 753, 783-785 (2010) (upholding corporate constitutional rights in the context of political speech).

Motion to Stay Order – Page 11

CLIENTS/Al Rajhi Bank/Motion
to Stay Order (05 MAR 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

Neither *Verdugo-Urquidez* nor any other authority requires the result the Court reached in this case.  The Court's determination that the Bank enjoys no constitutional protections because it does not have a branch office or other physical presence in the United States (Order at 9) does not withstand scrutiny.  As the Supreme Court stated in *Verdugo-Urquidez*, "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country."  494 U.S. at 271.  Moreover, as the Court reaffirmed more recently, "questions of extraterritoriality turn on objective factors and practical concerns, not formalism." *Boumediene*, 128 S. Ct. at 2258.

The Court's analysis was, with respect, formalistic.  The Court adopted a bright-line rule that a foreign entity that does not have a U.S. branch has no constitutional protections.  Similarly, the Court found that property owned by an alien (here, the U.S. correspondent accounts owned by the Bank) is not entitled to constitutional protections, based on a formalistic analysis of the instrument of punishment created by the statute (the forced termination of the accounts) rather than the government action that instrument is designed to enable (the constructive search of the Bank's records located in its home country).  The Supreme Court's extraterritoriality jurisprudence does not turn on such talismanic issues as the existence *vel non* of an office in the United States, or on the nature of an alien's property rights.  Rather, courts must determine the extraterritorial application of the Constitution with reference to objective facts and practical considerations.  *See Boumediene*, 128 S. Ct. at 2253-58 (summarizing development of

practical approach to extraterritoriality); *Verdugo-Urquidez*, 494 U.S. at 275-78 (Kennedy, *J.*, concurring) (same).

The objective – and undisputed – facts of this case, and the practical considerations that flow from them, show that pre-enforcement judicial review of a so-called Patriot Act subpoena, although not provided by the statute, is constitutionally required.  In contrast to *Verdugo-Urquidez*, the search at issue would not occur solely outside the United States.  Although the records may be located in Saudi Arabia, the Subpoena demands that the Bank produce them to the government *in the United States*, specifically, in the District of Oregon.  In *Verdugo-Urquidez*, the Court found that it would be impractical to apply the Warrant Requirement of the Fourth Amendment to a search in Mexico, where a warrant would be a "dead letter."  494 U.S. at 274.  No such practical concerns are present here.  Pre-enforcement judicial review would not be impractical, or even materially inconvenient, for the government.  Indeed, it would be no different from the routine procedure required in the case of other administrative subpoenas.  Moreover, the Bank has far more substantial and affirmative connections to the United States than the individuals involved in *Verdugo-Urquidez* or *Kwong Hai Chew*.  It has been doing business here for more than a decade, and has ongoing relationships with numerous U.S. entities.  After the USA PATRIOT Act was enacted, it voluntarily chose to continue those relationships and to appoint an agent for service of

Motion to Stay Order – Page 13

CLIENTS/Al Rajhi Bank/Motion to Stay Order (05 MAR 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

process, as required by the Act.[3]   Based on those objective factors, requiring pre-enforcement judicial review would be consistent with the Supreme Court's longstanding approach to questions of extraterritoriality.

The Court also relied on the broad power of Congress to regulate foreign trade. Yet "[e]ven when the United States acts outside its borders, its powers are not 'absolute and unlimited' but are subject 'to such restrictions as are expressed in the Constitution.'" *Boumediene*, 128 S. Ct. at 2259 (quoting *Murphy v. Ramsey*, 114 U.S. 15, 44 (1885)). The government action on which the Court focused – the termination of the Bank's U.S. correspondent accounts – would occur on U.S. territory.   Thus, unlike many extraterritoriality cases, in which the government action at issue is solely outside the United States, the Executive Branch enforcement activity at issue here is both extraterritorial (the constructive search of records located on Saudi soil) and domestic (the termination of the correspondent accounts).   Accordingly, the objective facts and

---

[3] The Court's finding that the Bank has no constitutionally protected interest in its correspondent banking relationships is further undercut by the elaborate procedural safeguards contained in the USA PATRIOT Act itself.  31 U.S.C. § 5318A grants the Secretary of the Treasury (the "Secretary") the power to deny or restrict a foreign bank's right to maintain correspondent accounts in the United States, but that that power is carefully restricted.  First, the Secretary must consult with the Secretary of State and the Attorney General before making a finding that a foreign bank is of primary money laundering concern.   31 U.S.C. § 5318A(c)(1).  The statute also requires the Secretary to take certain considerations into account before making such a finding. 31 U.S.C. § 5318A(c)(2)(B).  After making such a finding, the Secretary can only deny or restrict a foreign bank's right to maintain its correspondent accounts through formal rulemaking. 31 U.S.C. § 5318A(a)(2).  Before initiating such rulemaking, the Secretary must consult with the Chairman of the Board of Governors of the Federal Reserve System, any other appropriate banking agency, the Secretary of State, the Securities and Exchange Commission, the Commodity Futures Trading Commission, the National Credit Union Administration Board, and any other agency and interested party that the Secretary, in his sole discretion, finds appropriate.  31 U.S.C. § 5318A(a)(4).  The statute also provides a list of considerations that the Secretary must take into account before taking further action.  *Id.*  These extensive requirements are inconsistent with the proposition that foreign banks have no protected interest in their correspondent accounts with U.S. banks, and that the government can therefore arbitrarily close or restrict such accounts without judicial authorization.

Motion to Stay Order – Page 14

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET · P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 · FAX 541-683-0889
www.beckley-law.com

practical considerations weigh more heavily in favor of requiring Executive Branch compliance with the Constitution.

The Court also based its ruling on the conclusory finding that "the constitutional protections argued by the Al Rajhi Bank would certainly disrupt the ability of the government to combat financing of international terrorism outside of the borders of this country." (Order at 9.) Here again, the Court's analysis does not take account of objective facts and practical considerations. The consequence of the Bank's constitutional argument is merely that the government must seek a judicial order before punishing a respondent for failure to comply with an administrative subpoena. Where, as here, the Bank has appointed an agent for service of process in the United States, the government can seek judicial review without the burden and expense usually attendant on litigating with a foreign entity. The limited inconvenience of pre-enforcement judicial review of a subpoena pales in comparison to, for example, the extensive burden of processing dozens of habeas corpus petitions by enemy combatants detained at Guantanamo Bay—which the Supreme Court has held does not undermine the Executive Branch's ability to combat terrorism. *See Boumediene*, 128 S. Ct. at 2276-77. As the Supreme Court observed in that case, despite the continuing threat of terrorism, "[t]he laws and Constitution are designed to survive, and remain in force, in extraordinary times." *Id*. at 2277.

///

///

Motion to Stay Order – Page 15

CLIENTS/Al Rajhi Bank/Motion to Stay Order (05 MAR 10)

b.    There Is Substantial Likelihood That Use Of An Administrative Subpoena To Gather Evidence For Trial Will Be Found Improper On Appeal

It is undisputed that the government issued the Subpoena for the purpose of gathering evidence for a pending criminal trial.  The government has not suggested that the documents were subpoenaed for the purpose of an ongoing investigation.   The government has not even claimed that there *is* any ongoing investigation, nor could it reasonably make such an argument, in light of the tightly focused scope of the subpoena and the fact that this case has been pending for almost five years.  The Court's order, which narrowed the scope of the Subpoena to cover only documents directly relevant to the issues at trial further highlights that point.  The Subpoena's sole purpose is therefore *prosecutorial* rather than *investigatory*.

The Court cited evidence of congressional intention to extend existing powers to "investigate and disrupt transnational money laundering networks" in enacting Section 5318(k) and the related provisions in the USA PATRIOT Act.  (Order at 6.)  The statute did indeed expressly expand existing investigatory power by extending the extraterritorial reach of investigations involving foreign banks.  Until the enactment of the statute, U.S. authorities only had the power to coerce production of foreign bank records by U.S. banks and foreign banks with branches in the United States through the use of so-called Bank of Nova Scotia subpoenas.   The government itself views Section 5318(k) subpoenas as the functional equivalent of grand jury subpoenas.  In the government's trial

brief filed in *United States v. Holy Land Foundation for Relief & Development*, No. 03-CR-240-P (N.D. Tex. May 29, 2007) the government stated:

> A Bank of Nova Scotia grand jury subpoena is issued to a foreign bank that has a branch in the United States. . . . A Patriot Act Subpoena [a subpoena issued under Section 5318(k)] is not a grand jury subpoena but is an administrative subpoena authorized by the Attorney General or the Secretary of the Treasury.  It is designed to be used in situations where the foreign bank does not have a branch in the United States but instead has a correspondent account.

(Coleman Decl., Ex. H at 41 n. 2.)    While the statute explicitly expands the extraterritorial reach of the government's investigatory power, there is nothing in the statute that explicitly expands such *investigatory* power to include gathering evidence for trial.    Reading such radically expanded power into the statute is not necessary to effectuate its stated purposes.    The Bank therefore submits that its plain-language interpretation of the statute therefore has a strong likelihood of prevailing on appeal.

It is black letter law that the government may not use a grand jury subpoena to collect evidence for a criminal trial once an indictment has been returned.  *Resolution Trust Corp. v. Grant Thornton*, 41 F.3d 1539, 1546 (D.C. Cir. 1994) (citing *United States v. Phibbs*, 999 F.2d 1053, 1077 (6th Cir. 1993); *United States v. Badger*, 983 F.2d 1443, 1458 (7th Cir. 1993); *United States v. Jenkins*, 904 F.2d 549, 559 (10th Cir. 1990); *United States v. Vanwort*, 887 F.2d 375, 387 (2d Cir. 1989); *In re Grand Jury Proceedings (Diamante)*, 814 F.2d 61, 70 (1st Cir. 1987); *United States v. Moss*, 756 F.2d 329, 332 (4th Cir. 1985); *In re Grand Jury Proceedings (Johanson)*, 632 F.2d 1033,

1041 (3d Cir. 1980); *United States v. Sellaro*, 514 F.2d 114, 122 (8th Cir. 1973); *United States v. Star*, 470 F.2d 1214, 1217 (9th Cir. 1972); *Beverly v. United States*, 468 F.2d 732, 743 (5th Cir. 1972)).  The same rule applies to administrative subpoenas, because "an administrative agency's subpoena power is analogous to that of a grand jury." *Grant Thornton*, 41 F.3d at 1546; *see also Morton Salt Co.*, 338 U.S. 632, 642-43 (1950) (stating that an administrative subpoena is distinguishable from a judicial subpoena and is "more analogous to the Grand Jury").

        The Order held that the Department of Justice could use its Section 5318(k) subpoena power as a trial discovery tool.  However, the cases cited as support for this proposition are all cases where administrative agencies were granted the right to continue to use their subpoena power to aid ongoing *investigations* and not for the sole purpose of gathering evidence for trial.  *See Fed. Express*, 558 F.3d at 850 ("even though the EEOC normally terminates the processing of the charge when it issues the right-to-sue notice, it can, under limited circumstances, continue to *investigate* the allegations in the charge, which includes the authority to subpoena information relevant to that charge.") (emphasis added); *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1516-18 (D.C. Cir. 1993) (holding that the Resolution Trust Corporation's authority to *investigate* did not cease once a civil suit was filed, and that the order of investigation included investigatory goals that exceeded the scope of the specific filed case).  Moreover, the language from *Grant Thornton* highlighted in the order also discusses the need for "viable investigative purposes" for ongoing subpoena power.

(Order at 12.)   As *Grant Thornton* makes clear, the use of the investigatory tool of administrative subpoenas "in aid of ongoing litigation . . . is utterly foreign to the law defining the traditional scope of investigative authority."   *Grant Thornton*, 41 F.3d at 1547.   Because this is precisely the purpose for which the government has issued the Subpoena, and because there is no support for the proposition that the government can use administrative subpoenas solely as a discovery tool where there is no ongoing investigation, the Bank respectfully submits that it has a strong likelihood of success on the merits on this issue.

       c.      <u>Because Compliance With The Subpoena Would Require The</u>
               <u>Bank To Violate Saudi Law, The Bank Has A Substantial</u>
               <u>Likelihood Of Prevailing On Appeal</u>

Courts are hesitant to order a party to take action in a foreign country where such action would violate the laws of that country.  *In re Sealed Case*, 825 F.2d 494, 498 (D.C. Cir. 1987) ("[I]t causes us considerable discomfort to think that a court of law should order a violation of law, particularly on the territory of the sovereign whose law is in question.").  Such action is ordered only if the balance of the relevant factors favors such an order.  The factors are:

> [1] the importance to the investigation or litigation of the documents or other information requested; [2] the degree of specificity of the request; [3] whether the information originated in the United States; [4] the availability of alternative means of securing the information; and [5] the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

CLIENTS/Al Rajhi Bank/Motion
to Stay Order (05 MAR 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

Restatement (Third) of Foreign Relations Law of the United States § 442(1)(c) (1987).

Additionally, in the Ninth Circuit, courts will weigh the hardship faced by the foreign

party and the likelihood of compliance with an order. *Richmark Corp. v. Timber Falling*

*Consultants*, 959 F.2d 1468, 1477-78 (9th Cir. 1992). The balance of these factors favors

the Bank and it therefore has a substantial likelihood of prevailing on this issue.

This Court did not address the first element of the Restatement test, which clearly

favors the Bank. The government has already completed its criminal investigation, has

returned an indictment, and is simply seeking pieces of evidence "to establish in

defendant Sedaghaty's trial the actual disposition" of the funds allegedly exported by Al

Buthe. (Gov't Mot. at 5.) Moreover, the government already *has* evidence of the actual

disposition of the funds. (Declaration of Colleen Anderson sworn onto January 28, 2010,

¶¶ 5-6.) Obtaining these documents is therefore not crucial for the government to meet

its burden of proof. "Where the outcome of litigation does not stand or fall on the present

discovery order, or where the evidence sought is cumulative of existing evidence, courts

have generally been unwilling to override foreign secrecy laws." *Richmark*, 959 F.2d at

1475 (internal quotations omitted).

SAMA instructed the Bank to inform the U.S. authorities that a letter rogatory is

the proper form for requesting the subpoenaed records. (Al-Thebity Decl. Ex. G.) The

Bank so informed the government on September 23, 2009. (Coleman Decl. ¶ 13.)

However, the government never tried to obtain the records through a letter rogatory.

Despite the ready availability of an alternative method for requesting the documents, and

Motion to Stay Order – Page 20

CLIENTS/Al Rajhi Bank/Motion
to Stay Order (05 MAR 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

one that was provided by the Saudi authorities, this Court held that there was no other means of obtaining the documents.  (Order at 18.)

In its analysis of the fifth Restatement element, this Court suggests that the International Treaty for the Suppression of the Financing of Terrorism compels production of the subpoenaed records.  However, this if far from self-evident.  As an initial matter, while the background facts in the Indictment contain references to alleged financing of terrorism, no charges of terrorism-financing offenses have been brought in this case.  It is perfectly reasonable for Saudi Arabia to conclude that the treaty is not implicated by a criminal case that is not an actual prosecution for offenses enumerated in the treaty.  Additionally, the Indictment covers activity that occurred in 2000, well before incidents such as Chechen separatists' seizure of a Moscow theater in October of 2002, or the Beslan school siege in September of 2004.  At the time the alleged activities took place, they would likely not have been considered acts of financing terrorism by either Saudi Arabia or the United States.  In fact, the Unites States appears to have designated Chechen separatist groups as terrorists for the first time only in *2003*.[4]

This Court did not address the third element of the Restatement test.  It also did not address the question of the hardship that would be faced by the Bank if forced to comply.  Nor did this Court address the question of whether an order enforcing the

---

[4] *See* Determination Pursuant to Section 1(b) of Executive Order 13224, 68 Fed. Reg. 9733 (Feb. 28, 2003); *see also* Michael Wines, *Putin Again Rejects U.S. Calls for Support of a War, Fearing Effect on the Mideast*, N.Y. Times, Feb. 28, 2003, at A9 (describing this designation of three Chechen militant groups as terrorist organizations as "the clearest evidence to date of the United States' growing agreement with Russia that the Chechen conflict . . . is not a purely internal rebellion, but is stoked by foreign-financed terrorists").

Motion to Stay Order – Page 21

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

Subpoena would likely result in production of the documents.  All these elements favor the Bank.  The Bank respectfully suggests that, because the Order does not address all elements of the Restatement and *Richmark* tests, and because the Order relies heavily on a Saudi interest that is not implicated by this case, the Bank has a strong likelihood of success on the merits on this issue.

4.        **A Stay Serves The Public Interest**

As noted in the Order, this case raises significant questions regarding an issue of first impression.   (Order at 7.)   The case raises important questions regarding the constitutionality of a provision of the USA PATRIOT Act.   It also raises questions regarding the proper scope of the use of administrative subpoenas.   As noted by the government at oral argument, the outcome of this case is of significant interest.   (Oral Argument Tr. at 31)  The public has a strong interest in a full review on appeal in cases involving such important legal questions.  *See Planned Parenthood Ass'n of Cincinnati v. Cincinnati*, 822 F.2d 1390, 1400 (6th Cir. 1987) (holding that the public interest is served by a preliminary injunction prohibiting enforcement of an ordinance against parties challenging its constitutionality because the public has an interest in "the prevention of enforcement of ordinances which may be unconstitutional"); *Armster v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 806 F.2d 1347, 1360 (9th Cir. 1986) ("[O]ur Circuit has long held that there is a strong public interest in the court's resolving important precedential issues, a public interest that militates against a finding of mootness in cases presenting such issues."); *Azurin v. Von Raab*, 792 F.2d 914, 915 (9th Cir. 1986) ("The issues presented

on appeal are substantial and of public importance.  There is a clear public interest in their proper resolution.").

If a stay is not granted, it is likely that the Bank's appeal will be mooted.  If the Bank complies with the Subpoena and violates Saudi law, it will have no incentive to press the appeal as the outcome on appeal will have no impact on the risk of criminal prosecution in Saudi Arabia.  If the Bank does not comply with the Subpoena and its correspondent accounts are closed, the Bank will no longer have any presence in the United States.  The Bank would likely not benefit even if it did prevail on appeal after its correspondent accounts are closed, because it is unlikely that U.S. banks will agree to reestablish correspondent accounts with the Bank given the onerous restriction on establishing correspondent accounts and U.S. banks' reluctance to maintain correspondent accounts for banks branded as supporters of terrorism or facilitators of money laundering.  *See, e.g.*, Imposition of Special Measures Against Banco Delta Asia, 72 Fed. Reg. 12,730, 12,732 (Mar. 19, 2007) ("According to statements made by Banco Delta Asia, many of its foreign correspondent relationships in North America, Europe, and Asia were terminated after the publication of our finding of primary money laundering concern, and the bank no longer maintains a foreign correspondent account in the United States.").  Therefore, once the Bank's correspondent accounts are closed, the Bank will have no incentive to bear the considerable cost of pressing an appeal that is unlikely to provide any benefit.  Because the public has a strong interest in appellate

Motion to Stay Order – Page 23

CLIENTS/Al Rajhi Bank/Motion
to Stay Order (05 MAR 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com

review of the issues raised in this case, and because effective review may be thwarted if a stay is denied, this final factor weighs in favor of granting a stay.

## Conclusion

For the reasons stated above, the Order should be stayed pending the outcome of the Bank's appeal.

Dated this 5th day of March 2010                    Respectfully submitted,


\s\ Kelly R. Beckley
Kelly R. Beckley
kbeckley@beckley-law.com
Kevin W. Bons
kbons@beckley-law.com
BECKLEY LAW FIRM, P.C.
1257 High St., Suite #2
P. O. Box 11098
Eugene, OR 97440
Phone: (541) 683-0888
Fax: (541) 683-0889

Timothy J. Coleman
Boaz I. Green
*Pro hac vice*
DEWEY & LEBOEUF LLP
1101 New York Avenue, NW
Washington, DC  20005-4213
Telephone: (202) 346-8000
Facsimile:  (202) 346-8102

ATTORNEYS FOR PETITIONER

Motion to Stay Order – Page 24                    CLIENTS/Al Rajhi Bank/Motion
                                                  to Stay Order (05 MAR 10)

BECKLEY LAW FIRM, P.C.
ATTORNEYS AT LAW
1257 HIGH STREET - P.O. BOX 11098  EUGENE, OR 97440-3298
541-683-0888 - FAX 541-683-0889
www.beckley-law.com