# LAWRENCE MATASAR, P.C.
ATTORNEYS AT LAW
621 S.W. MORRISON STREET, SUITE 1025
PORTLAND, OREGON 97205-3813

TELEPHONE: 503-222-9830
FAX: 503-274-8575

LAWRENCE MATASAR
Email: larry@pdxlaw.com

KRISTA SHIPSEY
Email: krista@pdxlaw.com

January 12, 2010

The Honorable Michael R. Hogan
District Court Judge
Eugene Divisional Office
U.S. Courthouse
405 East 8th Avenue
Eugene, OR 97401

    RE:    *United States v. Pirouz Sedaghaty*
            U.S. District Court Case No. CR 05-60008

Dear Judge Hogan:

    We are writing to request that part of the hearing scheduled for March 15, 2010 be conducted in a sealed courtroom and in the presence of a Court Security Officer because the hearing may raise classified information.

    There are three main reasons for this request. First, apart from the specific reasons given below, the parties and the court have litigated the motion to suppress in open court as if there would also be a separate, classified component in a sealed courtroom in the presence of the Court Security Officer. We respectfully suggest that the government has shown no reason why such an approach should be rejected at this late date.

    Second, in its Motion to Suppress and subsequent documents, the defense sought suppression on grounds that the government's decision to seek a warrant was prompted by illegal government conduct. *See Murray v. United States*, 487 U.S. 533, 542-43 (1988). Because the claimed illegal government conduct involves classified information, a sealed, classified hearing is required for the defense to make its claims under *Murray*.

    As pointed out in the defense motion to suppress, CR 183, the search warrant in the instant case was executed on February 18, 2004. On the very next day, the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) issued an order blocking all funds, accounts and real property of Al Haramain USA pending an

The Honorable Michael R. Hogan
January 12, 2010
Page 2

investigation into the organization's alleged ties to terrorists. *See* CR 138 Ex. B at ¶ 50. In a declaration filed with the asset blocking order, Adam J. Szubin, the Director OFAC, described the designation process and further explained:

> There is interagency coordination throughout the designation process, and that this interagency coordination is a critical party for the designation process. This interagency process helps to ensure that Treasury and State's proposed designations are consistent with the operational and policy interests of other agencies, as well as with the strategic national security and foreign policy goals of the United States.

*Id.* at ¶ 22. In his declaration, Director Szubin specifically described the investigation of Al Haramain USA: "[a]ction with respect to the U.S. branch of AHIF was closely coordinated within the U.S. Government." The 911 Commission Report and a defense expert have also indicated that Al Haramain has been under significant government surveillance. And, the Ninth Circuit has stated:

> In August 2004, during Al-Haramain's civil designation proceeding, the Department of the Treasury [OFAC] produced a number of unclassified materials that were given to Al-Haramain's counsel and two of its directors. Inadvertently included in these materials was the Sealed Document, which was labeled "TOP SECRET."
>
> * * * * *
>
> Al-Haramain alleges that after *The New York Times'* story broke in December 2005, it realized that the Sealed Document was proof that it had been subjected to warrantless surveillance in March and April of 2004. *Al-Haramain v. Bush*, 507 F.3d 1190, 1194-95 (9th Cir, 2007)

If not for this Court's order of May 16, 2008, the defense may be able to provide additional information on this issue.

Significantly, the *Murray* issue was specifically mentioned at the hearing on defendant's motion to suppress held by this Court on July 13, 2009. The Court deferred further questioning until another day.

> MR. WAX: In the declaration that she [IRS Agent Colleen Anderson] filed, she says she did not have awareness of certain aspects related to classified or unlawful classified activities. We pointed out, we believe, that there is an inconsistency, as we see it, between what she says and

The Honorable Michael R. Hogan
January 12, 2010
Page 3

> what was said by Director Szubin in the OFAC civil litigation.
>
> In questioning about that, we just want to, you know, make the court aware that we would anticipate that that could stray into classified areas. So it's not something I think that we would be able to go into in this proceeding today.
>
> THE COURT: No. You can ask her what she knew, but you can't go into classified material today.
>
> MR. WAX: So that's one area in which we think that we will probably need to come back for another proceeding that would be classified.
>
> * * * * *
>
> THE COURT: All right. I am not going to sort of make preliminary remarks about that. In your reply filed late Friday afternoon, you speculated -- well, speculated might be -- have a tone to it. You stated that the decision making appeared to involve a person other than Ms. Anderson. And I don't know what the facts are in that regard, but we will not go into classified material today. July 13, 2009 Tr. 8-10.

The government also accepted the Court's guidance that classified material was not appropriate for the July 13, 2009 hearing:

> MR. CARDANI: All right. The witness has been instructed, Your Honor, that if any question reasonably asks for a response involving classified information to not answer it. It's not that she's trying to be recalcitrant, but for obvious reasons, we can't have classified information shared in this setting right now. July 13, 2009 Tr. 14

Thus, to support its claim for suppression under *Murray*, the defense seeks to introduce evidence at a closed, classified hearing showing that the criminal investigation of Mr. Sedaghaty in Oregon was tainted by unlawful surveillance conducted by the United States Government.

The third main reason the defense requires a sealed courtroom to consider classified information on March 15, 2010 concerns the government's use of certain computer search terms to review seized hard drives, which the defense has asserted was in violation of the constitutional principles articulated in *United States v. Tamura*, 694 F.2d 591 (9th Cir. 1982) and, more recently, in *United States v. Comprehensive Drug Testing, Inc.*, (CDI) No. 05-10067 (9th Cir. August 26, 2009). Based on the Court's

The Honorable Michael R. Hogan
January 12, 2010
Page 4

previous guidance, the parties curtailed the defendant's cross-examination of FBI agent David Carroll on July 13, 2009 and deferred it to another time:

> BY MR. WAX.   Q. The names that you believe you contributed to the search terms, do you recall what they were?
> A. The only one that comes to my mind specifically relates to Timimi.
> Q. Where would that name have come from in terms of your contribution of it to this case?
> A. I can't answer that question based on the fact that it's related to material that can't be discussed in this courtroom at this time.
> MR. CARDANI: Judge, we're into this area now where I don't mind him answering any of this but he's not allowed to because it involves classified information.

In order to fully pursue its claims concerning search terms under *Tamura* and *CDI*, the defense must be able to inquire, in a sealed, classified hearing, about the investigation, both legal and illegal, that led to the choice of certain search terms, both before and after the 2008 searches.

For the above stated reasons, the defense asks this Court to close a portion of the scheduled hearing on March 15, 2010 to deal with classified information.

Yours truly,

LAWRENCE MATASAR

STEPHEN T. WAX
Federal Public Defender

LM/rh
cc:   Steven T. Wax
      Christopher L. Cardani
      Charles F. Gorder, Jr.