DWIGHT C. HOLTON, OSB #09054
United States Attorney
District of Oregon
**CHRISTOPHER L. CARDANI**
Assistant United States Attorney
405 East 8th Avenue, Suite 2400
Eugene, OR 97401
chris.cardani@usdoj.gov
Telephone: (541) 465-6771
**CHARLES F. GORDER, JR.**, OSB #91287
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204
charles.gorder@usdoj.gov
Telephone: (503) 727-1000
      Attorneys for United States of America

#### UNITED STATES DISTRICT COURT
#### DISTRICT OF OREGON
#### EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**PIROUZ SEDAGHATY,**<br><br>**Defendant.** | CR 05-60008-02-HO<br><br>**GOVERNMENT'S RESPONSE TO EXPANDED MOTION TO COMPEL THE GOVERNMENT TO UTILIZE THE MUTUAL LEGAL ASSISTANCE TREATY ON BEHALF OF MR. SEDAGHATY AND/OR TO ISSUE LETTERS ROGATORY AND/OR TO UTILIZE THE PROCEDURES UNDER 18 U.S.C. §§ 3491, et seq.** |

**I.    STATEMENT OF FACTS**

On February 22, 2010, counsel for defendant Sedaghaty filed an "expanded motion" seeking either Letters Rogatory to the Kingdom of Saudi Arabia or the use of the certification procedure set forth in 18 U.S.C. §§ 3491, et seq., to obtain certified copies of 18 attached documents which

counsel alleges are in the possession of the government of the Kingdom of Saudi Arabia. Attached documents Exhibits 1-4 are identical to the documents which were the subject of the defendant's first two motions on this general subject (CR 247, 251). Exhibit 18 is very similar to another document submitted therein (CR 247-3 at 7). Many of the remaining documents, Exhibits 5-17, are documents submitted by Al-Haramain USA to the Office of Foreign Assets Control in connection with Al-Haramain USA's unsuccessful litigation concerning the designation of Al-Haramain USA as a Specially Designated Global Terrorist. According to an attorney who represented the government in that civil matter, those submitted exhibits simply became part of the administrative record in the case, but were not certified by a court or otherwise accepted by the government as authentic and genuine during the course of that litigation.

This third and latest motion regarding documents allegedly in the Kingdom of Saudi Arabia is a rehash of the previous requests that the defendant has made with an expanded set of exhibits. The government hereby incorporates its previous responses to those pleadings (CR 262, 272) and will not further address Exhibits 1-4 or 18. Because the remaining proffered documents are not the type to be admitted into evidence via Letters Rogatory or consular certification, the defendant's expanded motion should be denied.

## II.    ARGUMENT

### A.    Letters Rogatory or a Certification Under 18 U.S.C. §§ 3491, et seq., Are Not Appropriate Vehicles To Admit the Defendant's Exhibits Into Evidence.

The government has previously addressed the propriety of using the Letters Rogatory process to authenticate the genuineness and admissibility of foreign documents generated by Specially Designated Global Terrorists such as Al-Haramain and its leader, Akil Akil, without giving government counsel an opportunity to cross-examine the proffering witness as to the foundation for

**Government's Response to Expanded Motion To Compel                                                        Page 2**

the document. We incorporate by reference those arguments. Defendant now suggests another alternative: certification by a United States consular officer in Saudi Arabia pursuant to 18 U.S.C. §§ 3491, et seq.

Consular certification under 18 U.S.C. §§ 3491, et seq., provides an extremely rare alternative to obtaining foreign evidence pursuant to Mutual Legal Assistance Treaties, when applicable, or Letters Rogatory.[1] Upon commissioning by a court (§ 3492), a United States consular officer may take the testimony of a foreign witness concerning the genuineness and admissibility of a foreign document (§ 3493) and certify the genuineness of the foreign document if he or she is satisfied that the particular document is genuine (§ 3494). The viability of such a procedure depends entirely upon the willingness of foreign witnesses to appear before a U.S. consular official and necessitates the consent of the local foreign government, particularly when the foreign witness is a foreign government official.

The defendant here has made no attempt whatsoever to demonstrate any likelihood of such cooperation in Saudi Arabia. Indeed, one wonders how he expects a consular officer to get the King of Saudi Arabia to affirm the genuineness of the information contained in Exhibit 9.[2] As the Court is aware from the collateral litigation concerning the government's subpoena to Al-Rahji bank, the United States sent to the Kingdom a formal request grounded in a United Nations convention for the production of bank records as evidence a year and a half ago and has yet to receive a positive

---

[1] Indeed, there is only one example of the successful use of consular certification which resulted in a reported case. *See United States v. Hay,* 376 F. Supp. 264 (D. Colo. 1974), *affd.,* 527 F.2d 990 (10th Cir. 1975).

[2] The current King was the Crown Prince on the date of this document. King Fahd died in 2005.

**Government's Response to Expanded Motion To Compel** **Page 3**

response. It is incumbent upon the defendant to provide the Court with any information he has about his arrangements in Saudi Arabia to provide the witnesses and evidence to a consular officer that would lead one to conclude that his suggested procedure might be any more successful. Absent such a showing, the motion should be denied.

Regular procedures exist whereby consular officers may authenticate public documents containing official seals and signatures. 22 C.F.R. § 92.36 describes the limited type of authentication of documents consular officers may undertake:

> An authentication is a certification of the genuineness of the official character, i.e., signature and seal, or position of a foreign official. It is an act done with the intention of causing a document which has been executed or issued in one jurisdiction to be recognized in another jurisdiction. Documents which may require authentication include legal instruments notarized by foreign notaries or other officials, and copies of public records, such as birth, death, and marriage certificates, issued by foreign record keepers.

With the possible exception of proffered Exhibit 17, none of the documents submitted by defendant are the kind of public records contemplated by this regulation. Rather, these exhibits are purportedly correspondence and other internal documents of various entities, including the government of the Kingdom of Saudi Arabia, which contain numerous otherwise inadmissable hearsay statements.

In authenticating foreign documents, a consular officer must further compare a foreign official's seal and signature on a document with known specimens available to him and only authenticate those records where he is satisfied that he has identified the signature and seal and verified the authority of the foreign official to perform the particular act described in the document. 22 C.F.R. § 92.37. The defendant has offered nothing to suggest that a U.S. consular officer would be able to do that with most of these documents, particularly those signed or generated by Specially Designated Global Terrorists such as Akil Akil.

**Government's Response to Expanded Motion To Compel**                                      **Page 4**

Consular officers are not trained in the rules of evidence and are not experts in documents forensics. This may explain why this procedure is so little used as an alternative to MLATs and Letters Rogatory to collect evidence in the modern era. In its guidance to consular officers on the authentication of documents contained in the Foreign Affairs Manual (FAM), the Department of State has not outlined procedures for certifying evidence pursuant to commissions. The section of the manual that deals with authentications, 7 FAM 873(g), also cautions consular officers about the scope of their ability to authenticate foreign documents:

> In a certificate of authentication, a consular officer should not make statements that are not within the officer's power or knowledge. For example, you are not expected to be familiar with the provisions of foreign law, except in a general sense, and are cautioned not to certify that a document has been executed or certified in accordance with foreign law or to certify that a document is valid in a foreign country.

Further, a consular officer is not to authenticate copies of signatures and seals on documents. Rather, the official is only to authenticate original signatures and seals. 22 C.F.R. § 92.41(d). Aside from asserting that he believes the original of these documents are in the possession of the government of the Kingdom of Saudi Arabia, the defendant has made no showing that the originals currently exist or are reasonably available to an American consular officer.

Finally, 22 C.F.R. § 92.55(c) which governs how a consular official may take a deposition, provides in part as follows:

> In countries where the right to take depositions is not secured by treaty, notarizing officers may take depositions only if the laws or authorities of the national government will permit them to do so.

There is no such treaty with the Kingdom of Saudi Arabia, and so the ability of a consular official to depose a witness in the Kingdom is dependent upon the consent of the local government, just as is the case with the Letters Rogatory.

**Government's Response to Expanded Motion To Compel**                                                  **Page 5**

The only reported case involving the use of § 3491, *United States v. Hay,* 376 F. Supp. 264, 268-270, describes the long and tortuous negotiations with Switzerland that had to occur in that case just to secure the ability to take a simple deposition to authenticate bank records. There is nothing here to suggest that a similarly long process, with no guarantee of success, would not be necessary in this matter, particularly in light of the complexity and sensitivity of the various documents at issue here and the failure of the Kingdom to respond to the previous request of the United States for bank records to be used as evidence in the case.

In summary, and as more specifically described below, the consular certification process is not designed to admit into evidence the types of documents which the defendant has proffered in this motion.

**B.      The Specific Exhibits Are Not Admissible Without Cross-Examination of a Proffering Witness.**

As in his previous motions regarding evidence in Saudi Arabia, the defendant's latest request concerning Exhibits 5-17 seeks certification of documents containing inadmissible hearsay, untrustworthy records, or documents which are otherwise irrelevant. For the reasons previously stated, these documents should not be the subject of a Letters Rogatory request or of consular certification. The exhibits break down into three distinct categories: (1) documents purportedly generated by Al-Haramain; (2) documents purportedly generated by an organization called the Saudi Joint Relief Committee for the Aid of the People of Kosovo ("SJRC"), of which Al-Haramain was a member; and (3) documents presumably generated by officials of the Kingdom of Saudi Arabia.

/ / /

/ / /

/ / /

More specifically, our objection to these exhibits are as follows:

### 1.     Alleged Al-Haramain Documents

Exhibit 10 and a part of Exhibit 15 contain documents allegedly generated by Al-Haramain – an organization which has been designated as a Specially Designated Global Terrorist by the Office of Foreign Assets Control[3] and was shut down by the Kingdom of Saudi Arabia in 2004.

Exhibit 10 purports to be a letter addressed to Akil Akil, who was the leader of Al-Haramain and the President of Al-Haramain USA, and also a co-conspirator in this case. Akil has also been designated by the Office of Foreign Assets Control as a Specially Designated Global Terrorist. He has also been listed as an individual "associated with Al-Qaida" by the United Nations' "Al-Qaida and Taliban Sanctions Committee," set up pursuant to U.N. Resolution 1267.[4] Exhibit 10 was purportedly signed by one Salih Mohammad al-Duhayshi and contains hearsay statements about relief provided to Chechen refugees not in the Russian Federation but in the Republic of Georgia in 1999 and suggesting that future relief would be provided inside Chechnya. We object to any procedure "certifying" such a record without giving us the opportunity to cross-examine Mr. al-Duhayshi or other appropriate witness.

Similarly, part of Exhibit 15 contains a letter purportedly signed by Akil Akil on January 4, 2000, more than two months before the charged transaction in this case, stating that money had been provided by Al-Haramain to the Chechnya Committee bank account at Al-Rahji bank. Even

---

[3] The current OFAC list of Specially Designated Nationals is found at: http://www.ustreas.gov/offices/enforcement/ofac/sdn/t11sdn.pdf

[4] The current list of entities and individuals associated with Al-Qaida and the Taliban pursuant to U.N. Resolution 1267 can be found at: http://www.un.org/sc/committees/1267/consolist.shtml

**Government's Response to Expanded Motion To Compel**                                                                **Page 7**

assuming such a document is relevant, the lack of trustworthiness of such a document is apparent and we object to any certification procedure without cross-examination of a person with knowledge.

**2.     Documents Purportedly From the Saudi Joint Relief Committee for the Aid of the People of Kosovo ("SJRC")**

Exhibits 7 and 12-14 are purportedly documents of the SJRC, which appears to be a consortium of Saudi Arabian government entities and alleged Saudi charities, including Al-Haramain, which was formed to aid Albanian refugees in Kosovo. The defendant in his motion fails to establish the relevance of the operations of the SJRC to his defense. This is particularly so in light of the fact that Al-Haramain's regional operations in Albania and Bosnia were also specifically listed by the U.N. Al-Qaida and Taliban Sanctions Committee as "entities associated with Al-Qaida" and the fact that Al-Haramain's Albanian office was also designated as a Specially Designated Global Terrorist by the U.S. Office of Foreign Assets Control.

Exhibit 7 appears to be SJRC by-laws, and Exhibits 12-14 appear to be purported reports of the SJRC's Chechnya Committee which are either undated or dated before the transaction at issue in this case, and again with the participation of Akil Akil. The government objects to any procedure "certifying" the legitimacy of such "reports" without the ability to cross-examine someone with knowledge of the matter.

**3.     Documents of Officials of the Kingdom of Saudi Arabia**

Exhibits 5-6, 8-9, 11, and 15-17 are documents purportedly authored by one public official or another of the Kingdom of Saudi Arabia. In general, they are not foreign public records concerning data compilations such as birth or marriage records or certifications of the absence of data. Rather, most are internal correspondence or memoranda purportedly from one public official or another. Most have minimal or no relevance to this case. There is nothing to indicate that

**Government's Response to Expanded Motion To Compel                                             Page 8**

defendant Sedaghaty ever had access to any of these documents during 1999-2001 when the events underlying this case took place.

For example, Exhibit 5 is a "telegram" from the President of the Council of Ministers to various members of the Saudi Royal Family and other government officials and dated 3/2/1420 (May 19, 1999) concerning recommendations for relief efforts for Albanian refugees in Kosovo which could include participation by Al-Haramain. Exhibit 8 similarly is a memorandum from the President of the Council of Ministers to the Finance Ministry ordering the payment of 5 million Saudi Riyals to support "Kosovan Albanians" studying in Saudi Arabia and abroad. Exhibit 9 purports to be an order from the King of the Kingdom of Saudi Arabia establishing a regulatory body called the "Saudi National Committee for Aid and Charitable Work Abroad" which does not even mention Al-Haramain, and is dated 6/1/1425 (February 27, 2004), four months before the Kingdom shut down Al-Haramain. What any of these documents have to do with this case is left unsaid.

Exhibits 6 and 11 appear to be different translations of the same document, and a third version is one of the documents contained in Exhibit 15: a telegram from the Deputy Prime Minster to the Minister of the Interior dated November 11, 1999, generally discussing the possibility of providing relief to Chechen refugees located in Ingushetia and Dagestan (regions of the Russian Federation neighboring Chechnya) with the approval of the Russian government and contains a conclusory statement that "relief agencies have started to provide relief aid" (Exhibit 6). This "telegram," however, is not a business record, and it does not provide any detail about where the money went or how it got there, and it does not provide any proof of final destination. It is inadmissible hearsay.

**Government's Response to Expanded Motion To Compel**                                          **Page 9**

Exhibit 15 also contains a "telegram" from the Minister of "Islamic Affairs to Akil Akil, the head of Al-Haramain, dated June 2003 which appears to be cracking down on the operations of Al-Haramain. How this appears to be helpful to the defense is not apparent, but coming three plus years after the fact in this case its relevance is questionable.

Similarly, Exhibits 16 and 17, documents which confirm the existence and continued operation of Al-Haramain in early 2004, a few months before the organization was shut down by the Saudi government, are not probative of any contested fact in this case.

### III.  CONCLUSION

For the reasons previously set forth, the defendant's motion for the issuance of Letters Rogatory or to have the United States Consulate certify Exhibits 1-18 should be denied.

Dated this 11th day of March 2010.

                        DWIGHT C. HOLTON
                        United States Attorney


                        /s/ *Charles F. Gorder, Jr.*
                        CHARLES F. GORDER, JR.
                        Assistant United States Attorney


                        /s/ *Christopher L. Cardani*
                        CHRISTOPHER L. CARDANI
                        Assistant United States Attorney

                        **OF COUNSEL:**

                        Dan E. Stigall
                        Trial Attorney
                        U.S. Department of Justice
                        Office of International Affairs