DWIGHT C. HOLTON, OSB #09054
United States Attorney
District of Oregon
**CHRISTOPHER L. CARDANI**
Assistant United States Attorney
405 East 8th Avenue, Suite 2400
Eugene, OR 97401
chris.cardani@usdoj.gov
Telephone: (541) 465-6771
**CHARLES F. GORDER, JR.**, OSB #91287
charles.gorder@usdoj.gov
**RYAN W. BOUNDS**, OSB #00012
ryan.bounds@usdoj.gov
Assistant United States Attorneys
1000 S.W. Third Ave., Suite 600
Portland, OR 97204
Telephone: (503) 727-1000
        Attorneys for United States of America

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | CR 05-60008-02-HO |
| v. | |
| **PIROUZ SEDAGHATY,** | **OPPOSITION OF THE UNITED STATES TO AL RAJHI BANKING & INVESTMENT CORP.'S MOTION TO** |
| **Defendant.** | **STAY ORDER** |
| **In re AL RAJHI BANK SUBPOENA** | |
| **AL RAJHI BANKING & INVESTMENT CORP,** **Real party in interest** | |
| **Respondent.** | |

The United States of America, by and through Dwight C. Holton, United States Attorney for the District of Oregon, by Assistant United States Attorneys Charles F. Gorder, Jr., Christopher L. Cardani and Ryan W. Bounds, files this opposition to the motion of Al Rajhi Banking & Investment Corporation ("the Bank") for a stay of the Court's February 26, 2010, Order partially granting the Motion of the United States To Compel Compliance with the July 17, 2009, Subpoena Issued Pursuant to 31 U.S.C. § 5318(k).

The Bank's motion raises no new arguments in support of its continued resistance to the July 17, 2009, subpoena. Instead, the Bank simply contends that its earlier arguments, though unavailing, are sufficiently meritorious to justify a stay, because the Bank faces "certain, severe, and irreparable harms" in the absence of a stay and the government would not suffer "substantial hardship" if one were granted. (Resp't's Mot. at 5-7.) The Bank misstates the law governing the issuance of stays pending appeal, however, and mischaracterizes the relevant equities. In short, the Bank fails to carry its burden in seeking a stay, the imposition of which would frustrate the very purpose of § 5318(k) and the subpoena at issue. The Court should deny the Bank's motion and, in addition, should order the Bank to comply with the subpoena within ten days.

## I.   The Bank's Burden in Seeking a Stay of the Court's Order

"A party seeking a stay must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of relief, that the balance of equities tip in his favor, *and* that a stay is in the public interest." *Humane Society of United States v. Gutierrez*, 558 F.3d 896, 896 (9th Cir. 2009) (quoting *Winter v. Natural Resources Defense Council, Inc.*, ___ U.S. ___, 129 S. Ct. 365, 374 (2008)) (emphasis added); *see also Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (citing the same factors as "regulating the issuance of a stay").

**Opposition to Bank's Motion for Stay Pending Appeal**                                                       **Page 2**

Although the Bank properly recites this four-prong standard, it then contends that courts in this circuit nevertheless rely on "two interrelated tests that represent 'the outer reaches of a single continuum'" reflecting just two factors: the probability that the appealing party will be irreparably harmed by the enforcement of the lower court's order and the probability that the appealing party will ultimately prevail on appeal.  (Resp't's Mot. at 4.)  The Bank thus asserts that, "'[t]he greater the degree of irreparable harm, the less probability of success on the merits must be shown'" and that the Bank thus need establish only that "serious legal questions are raised" in its appeal.  (Resp't's Mot. at 4 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983); *Mead Inv., Inc. v. Garlic Jim's Franchise Corp.*, No. 08-922-HU, 2008 WL 4911911 (D. Or. Nov. 13, 2008).)  This assertion is flatly incorrect.

The proposition that a party seeking a stay is relieved of its burden of demonstrating a substantial likelihood of success on the merits by establishing a heightened risk of irreparable injury is, after the Supreme Court's decision in *Winter*, no longer the law of this circuit.  The party seeking the stay must demonstrate *both* a likelihood of success on the merits *and* "'that irreparable injury is *likely* in the absence of an injunction.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 129 S. Ct. at 375).  "To the extent that [the Ninth Circuit's] cases have suggested a lesser standard, they are no longer controlling, or even viable."  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

Thus a likelihood of success on the merits is no longer merely one means of justifying a stay of the Court's order but "the threshold for a stay pending appeal," after which the party seeking the stay must still establish that irreparable injury absent a stay is likely, that the preponderance of the

/ / /

**Opposition to Bank's Motion for Stay Pending Appeal**                                                          **Page 3**

equities favors a stay, and that a stay is consistent with the public interest. *Humane Society*, 558 F.3d at 896 (denying stay for failure to establish likelihood of success on merits).

## II.     The Bank Fails To Establish a Likelihood of Success on the Merits.

The Bank has failed even to cross "the threshold for a stay pending appeal" in this case because it has not demonstrated a meaningful likelihood of success on the merits—nor can it do so. To carry its burden, the Bank merely recites the same arguments that this Court considered and rejected in its February 26, 2010, Order, and those arguments are no more persuasive now than they were when the Court rejected them the first time. As discussed below, those arguments will, if anything, be even less compelling on appeal.

The Bank continues to press its constitutional challenge to 31 U.S.C. § 5318(k) as its primary basis for relief and one that has a "substantial likelihood" of prevailing on appeal. (Resp't's Mot. at 10-15.) This contention cannot withstand the mildest scrutiny. Not only does the challenge rest on the Fourth Amendment, which the Ninth Circuit has already held "does not apply to a search of [foreign persons] in foreign territory," *United States v. Aikins*, 946 F.2d 608, 613 (9th Cir. 1990); *accord United States v. Verdugo-Urquidez*, 494 U.S. 259, 275 (1990), but the purported violation of the Fourth Amendment that the statute allegedly contemplates has never occurred. The Bank protests once again that "pre-enforcement judicial review of a so-called Patriot Act subpoena, although not provided by the statute, is constitutionally required" pursuant to the Fourth Amendment (Resp't's Mot. at 13), but such insistent repetition will not change the fact that "pre-enforcement judicial review" of the subpoena is precisely what the government sought in its motion to compel

/ / /

/ / /

and what this Court has just afforded.[1]  Indeed, this Court discharged precisely the function sought by the Bank when it narrowed the scope of the subpoena.  (Feb. 26, 2010, Order at 15.)  The Bank therefore purports to have a "substantial likelihood" of succeeding on the merits of a claim that is not only legally dubious—the Bank has cited no case in which the Fourth Amendment was held to control an overseas search or seizure of foreign persons or their effects—but also patently irrelevant to this case.  There is simply no support for the Bank's optimism in law or common sense.[2]

The Bank similarly lacks any basis for its contention that it has a "substantial likelihood" of prevailing on its claim that the subpoena at issue exceeds the scope of the Attorney General's authority under 31 U.S.C. § 5318(k) insofar as it seeks evidence post-indictment for admission at trial.  (Resp't's Mot. at 16-19.)  The Bank has never cited a case in which an administrative subpoena issued by the Attorney General or his subordinates under *any* statute has been invalidated because the subpoena either sought evidence after the filing of an indictment or with an expectation of admitting the subpoenaed evidence at trial.  Nor has the Bank distinguished in any meaningful way the decisions of two other circuits and three other district courts affirming the validity of

---

[1] The Bank focuses at length on rebutting what it describes as this Court's "determination that the Bank enjoys no constitutional protections" (Resp't's Mot. at 18), but of course this Court made no such determination.  The Court held instead that the Bank lacks any constitutionally protected interest in "foreign, remotely maintained correspondent relationships."  (Feb. 26, 2010, Order at 9-10.)

[2] The Bank's rebranding of its challenge as a "separation of powers" claim (Resp't's Mot. at 16 (citing footnote 8 of its Motion To Quash in the District Court for the District of Columbia)) does not alter this analysis.  However styled, the allegedly exclusive judicial authority that the Bank seeks to vindicate is predicated on the courts' role in enforcing the Fourth Amendment's requirement for a warrant or a demonstration of reasonableness before a neutral magistrate.  *See, e.g.*, *United States v. Bailey*, 228 F.3d 341, 348-49 (4th Cir. 2000); *see also* Resp't's Opp'n (CR 261) at 8-13.  The Bank cites no freestanding constitutional basis for such authority where the Fourth Amendment does not apply.

**Opposition to Bank's Motion for Stay Pending Appeal**                                                            **Page 5**

subpoenas issued in those circumstances. *See United States v. Phibbs*, 999 F.2d 1053, 1077 (6th Cir. 1993) ("However, unlike the grand jury system, [the DEA's administrative subpoena authority] may also be used to discover evidence *related to the charges in the original indictment*." (emphasis added)); *United States v. Harrington*, 761 F.2d 1482, 1485 (11th Cir. 1985) (affirming administrative subpoenas issued to third parties by the DEA "between the indictment and the trial in this case"); *United States v. Lazar*, 2006 WL 3761803, at *8-*9 (W.D. Tenn. Dec. 20, 2006) (unpublished) (upholding the Justice Department's use of administrative subpoenas for healthcare fraud investigations under 18 U.S.C. § 3486 "to obtain evidence related to charges in a pending indictment"); *United States v. Wachter*, 2006 WL 2460790, at *6-*7 (E.D. Mo. Aug. 23, 2006) (unpublished) (affirming issuance of healthcare subpoenas under § 3486 post-indictment); *United States v. Daniels*, 2000 WL 764951, at *4-*5 (D. Kan. May 22, 2000) (unpublished) (same). The Bank's claim is therefore highly dubious as a general matter and indefensible with respect to § 5318(k), which Congress passed with the explicit purpose of expanding the government's authority *beyond* those "outmoded and inadequate statutory provisions that make investigations, *prosecutions*, and forfeitures more difficult, particularly in cases in which money laundering involves foreign persons, foreign banks, or foreign countries." USA PATRIOT Act of 2001, Pub. L. 107-56, § 302(a)(8), 115 Stat. 272, 297 (Oct. 26, 2001) (emphasis added). The Bank's contention that it has a "substantial likelihood" of success on this claim—premised as it is on inapposite analogies to subpoenas issued by the IRS and grand juries[3]—is simply unfounded.

---

[3] With respect to the force of the latter analogy, the Bank's insistence that the government itself views subpoenas issued pursuant to § 5318(k) as "equivalent" to subpoenas issued by a grand jury is mystifying, as is the Bank's reliance for that proposition on a passage in which the government offered the self-evident and contrary observation that "[a] Patriot Act subpoena is not a grand jury subpoena." (Resp't's Mot. at 17.)

**Opposition to Bank's Motion for Stay Pending Appeal**                                               **Page 6**

The Bank's prospects for success on appeal are no better with respect to its final argument, which it rests on the unremarkable observation that "[c]ourts are hesitant to order a party to take action in a foreign country [that] would violate the laws of that country." (Resp't's Mot. at 19.) As the Bank emphasizes elsewhere, a subpoena under § 5318(k) rests on an order not from a court but from the Executive Branch. (Resp't's Mot. at 20 (protesting "the Executive Branch enforcement activity at issue here").) That courts are unsurprisingly "hesitant" to order actions with potentially negative implications for the international relations of the United States is thus of no particular significance, for the Executive Branch occupies a substantially different position with respect to foreign affairs. *See First Nat. City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 767 (1972) (plurality opinion) (noting that the President has "the lead role . . . in foreign policy"); *American Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003) (holding that Article II of the Constitution reposes with the President the "'vast share of responsibility for the conduct of our foreign relations'" (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610-611 (1952) (Frankfurter, J., concurring)). The only question addressed by this Court in its February 26, 2010, Order and thus at issue on appeal is whether the Executive Branch may, under § 5318(k), order the production of the records at issue and lawfully enforce any such order as contemplated by the statute. This Court correctly ruled that it could. (Feb. 26, 2010, Order at 19 ("[T]he government may seek to impose the sanctions authorized under section 5318(k) unless the Al Rajhi Bank complies with the subpoena as limited [by the Court]").) The Bank cites no authority suggesting a "substantial likelihood" of success in convincing the court of appeals otherwise.[4]

---

[4] Section 442 of the Restatement (Third) of the Foreign Relations Law of the United States obviously does not limit the Executive Branch's authority under 31 U.S.C. § 5318(k), and, in any event, the factors enumerated in the Restatement support a judicial order compelling disclosure as

**Opposition to Bank's Motion for Stay Pending Appeal**                                                  **Page 7**

**III.     Neither the Balance of Equities nor the Public Interest Supports a Stay.**

Even if the Bank could establish a likelihood of success on the merits, the balance of the equities and the public interest militate strongly against a stay of the Court's February 26, 2010, Order.

The Bank contends that the government will not suffer "any substantial hardship" as a result of a stay (Resp't's Mot. at 7), but the Bank offers the wrong answer to the wrong question. The Bank must demonstrate that the balance of "equities"—not "hardships"—supports a stay, *see Humane Society*, 558 F.3d at 896, and the equities are in the government's favor—not the Bank's. The Bank acknowledges that the government seeks the records at issue for a trial that is to begin in three months. (Resp't's Mot. at 7.) There is no dispute that the government has made sustained efforts—diplomatic and otherwise—to obtain those records for eighteen months. The Bank concedes that the government has already afforded the Bank numerous reprieves from the enforcement of the subpoena, which was issued to the bank nearly eight months ago. (Resp't's Mot. at 7.) Further, the Bank admits that it concluded it would not comply with the subpoena before October 23, 2009, but took no action to challenge the subpoena's validity until nearly three months later, when the Bank filed a motion to quash in the District Court for the District of Columbia. (Resp't's Mot. at 7-8.) Finally, although the Bank emphasizes its intention to seek expedited review of the Court's February 26, 2010, Order so as to minimize "any undue delay" (Resp't's Mot. at 8), the Bank has prepared a 24-page substantive motion for a stay of this Court's order but has not yet

/ / /

---

discussed in the government's reply in support of its underlying motion. (Reply of the U.S. (CR 266) at 8-10.)

**Opposition to Bank's Motion for Stay Pending Appeal**                                                **Page 8**

managed to file the (presumably straightforward) motion to expedite its appeal.[5] The balance of the equities must, therefore, reflect the weight of the government's diligent and reasonable efforts to get the records through voluntary production over a period of eighteen months relative to the Bank's having knowingly confronted the prospect of the subpoena's enforcement for more than four months before challenging its validity in court. The equities thus clearly weigh in the government's favor. The Bank did not seek judicial review of the subpoena until shortly before the scheduled trial date and now, despite the government's increasingly urgent need for the records, the Bank seeks extraordinary protection from the resulting order. The Bank should not be permitted to drag out the enforcement of the subpoena beyond the trial with respect to which the subpoena was issued.

The public interest also runs sharply against a stay. The public plainly has a strong interest in law enforcement and in the implementation of a statute that was passed by overwhelming majorities of both houses of Congress and held by this Court to be fully consistent with the Constitution of the United States. In contrast, there is no public interest whatsoever in vindicating the Kingdom of Saudi Arabia's bank secrecy laws. Congress expressly found as much in enacting the statute at issue and ratifying the International Convention for the Suppression of the Financing of Terrorism. *See* USA PATRIOT Act of 2001, 107-56, § 302(a)(5), 115 Stat. at 296 (Oct. 26, 2001) (finding that "transactions involving . . . offshore jurisdictions [offering "facilities designed to provide anonymity"] make it difficult for law enforcement officials and regulators to follow the trail of money earned by criminals . . . and global terrorist organizations"); *id.* at § 302(b)(4) (announcing purpose of "provid[ing] a clear national mandate for subjecting to special scrutiny those foreign jurisdictions . . . that pose particular, identifiable opportunities for criminal abuse"); International

---

[5] In light of the Bank's delay in filing that motion, the United States intends to file one itself.

**Opposition to Bank's Motion for Stay Pending Appeal**                                                              **Page 9**

Convention for Suppression of the Financing of Terrorism, G.A. Res. 109, Art. XII, § 2, U.N. GAOR, 54th Sess., U.N. Doc. A/RES/54/109 (Dec. 9, 1999) (barring parties from "refus[ing] a request for mutual legal assistance on the ground of bank secrecy").

Although the Bank makes much of the "public interest" in resolving "important questions regarding the constitutionality" of this statute (Resp't's Mot. at 22), no constitutional questions identified by the Bank actually relate to this case. With respect to the public's asserted interest in the proper scope of subpoenas issued under § 5318(k)—an issue of statutory interpretation affecting only a subset of offshore banks—it is relatively slight indeed, particularly when weighed against the public's interest in law enforcement and the prevention of money laundering. Moreover, the court of appeals, in the unlikely event that it were to agree with the Bank that this question is one of surpassing public interest, might well decline to hold that the question had been mooted by developments during the pendency of the appeal on the theory that the question can be expected to arise again. *Cf. Armster v. U.S. District Court for the Cent. Dist. of Cal.*, 806 F.2d 1347, 1360 (9th Cir. 1986) (emphasizing the "flexible nature of the Art. III mootness doctrine" and noting that the court "has long held that there is a strong public interest in [its] resolving important precedential issues, a public interest that militates against a finding of mootness in cases presenting such issues").

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Opposition to Bank's Motion for Stay Pending Appeal**

## IV.     Conclusion

For the foregoing reasons, the United States respectfully asks that this Court deny the Bank's Motion To Stay and order the Bank to produce within ten days the records identified in the subpoena as limited by this Court's February 26, 2010, Order.[6]

Dated: March 11, 2010

Portland, Oregon

                                        Respectfully submitted,

                                        DWIGHT C. HOLTON
                                        United States Attorney

                                        *s/ Charles F. Gorder, Jr.*
                                        CHARLES F. GORDER, JR.
                                        CHRISTOPHER L. CARDANI
                                        RYAN W. BOUNDS
                                        Assistant United States Attorneys

---

[6] The Bank emphasizes the extent of its "substantial and affirmative connections to the United States," including the facts that it "voluntarily chose to . . . appoint an agent for service of process" in the United States, "has been doing business here for more than a decade, and has ongoing relationships with numerous U.S. entities." (Resp't's Mot. at 13.) The Bank is therefore properly subject to the jurisdiction of the United States and subject to this Court's discovery orders. *See Carbo v. United States*, 277 F.2d 433, 436 (9th Cir. 1960); Fed. R. Crim. P. 17(e).