# EXHIBIT M

Case 6:05-cv-60008-AA Document 211-3 Filed 02/31/10 Page 2 of 4
Case 3:07-cv-00109-VRW Document 99-3 Filed 07/09/09 Page 25 of 53

JS-1729: Testimony of R. Richard Newcomb, Director <BR>Office of Foreign Assets Co... Page 1 of 20



**FROM THE OFFICE OF PUBLIC AFFAIRS**

June 16, 2004
JS-1729

**Testimony of R. Richard Newcomb, Director
Office of Foreign Assets Control
U.S. Department of the Treasury
Before the House Financial Services Subcommittee on Oversight
and Investigations**

Introduction

Madame Chairman, members of the Committee, thank you for the opportunity to testify on the Office of Foreign Assets Control's efforts to combat terrorist support networks which forms an important part of the Treasury Department and our government's national security mission. It's a pleasure to be here, as we discuss Treasury's new office and its role in these areas. Please allow me to begin with an overview of our overall mission and conclude with our strategies for addressing the threat of international terrorism.

**II. OFAC's Core Mission**

The primary mission of the Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury is to administer and enforce economic sanctions against targeted foreign countries, and groups and individuals, including terrorists and terrorist organizations and narcotic traffickers, which pose a threat to the national security, foreign policy or economy of the United States. OFAC acts under general Presidential wartime and national emergency powers, as well as specific legislation, to prohibit transactions and freeze (or "block") assets subject to U.S. jurisdiction. Economic sanctions are intended to deprive the target of the use of its assets and deny the target access to the U.S. financial system and the benefits of trade, transactions and services involving U.S. markets. These same authorities have also been used to protect assets within U.S. jurisdiction of countries subject to foreign occupation and to further important U.S. nonproliferation goals.

OFAC currently administers and enforces 27 economic sanctions programs pursuant to Presidential and Congressional mandates. These programs are a crucial element in preserving and advancing the foreign policy and national security objectives of the United States, and are usually taken in conjunction with diplomatic, law enforcement and occasionally military action.

OFAC's historical mission has been the administration of sanctions against target governments that engage in policies inimical to U.S. foreign policy and security interests, including regional destabilization, severe human rights abuses, and repression of democracy. Recent programs in the Western Balkans, Zimbabwe, Sudan, and other regions reflect that focus. Since 1995, the Executive Branch has increasingly used its statutory blocking powers to target international terrorist groups and narcotics traffickers.

Many "country-based" sanctions programs are part of the U.S. government's response to the threat posed by international terrorism. The Secretary of State has designated seven countries – Cuba, North Korea, Iran, Libya, Iraq, Sudan and Syria – as supporting international terrorism. Three of these countries are subject to comprehensive economic sanctions: Cuba, Iran, and Sudan (1997). Comprehensive sanctions have been imposed in the past against Libya, Iraq, and

066

Case 6:05-cv-60008-AA Document 211-3 Filed 02/31/10 Page 3 of 4
Case 3:07-cv-00109-VRW Document 99-3 Filed 07/03/09 Page 26 of 53

JS-1729: Testimony of R. Richard Newcomb, Director <BR>Office of Foreign Assets ... Page 10 of 20

- Continued Actions against the Cali Cartel. Since 2002, OFAC/IPD has worked jointly with the U.S. Attorney's Office for Middle District of Florida and Operation PANAMA EXPRESS, a multi-agency drug task force based in Tampa, Florida. A two-year investigation by OFAC/IPD officers in conjunction with the PANAMA EXPRESS task force led to the March 2003 SDNT action against two new Cali Cartel leaders, Joaquin Mario Valencia Trujillo and Guillermo Valencia Trujillo, and their financial network of 56 front companies and individuals. Joaquin Mario Valencia Trujillo is indicted in the Middle District of Florida and was recently extradited to the U.S. from Colombia.

In 2003, OFAC/IPD investigations focused on Cali cartel leaders, Miguel and Gilberto Rodriguez Orejuela. In February 2003, OFAC/IPD designated 137 companies and individuals comprising a complex financial network in Colombia and Spain controlled by Miguel and Gilberto Rodriguez Orejuela. This action exposed and isolated a parallel network of Cali cartel front companies established to evade OFAC sanctions. In March 2003, OFAC/IPD officers targeted a Colombian money exchange business and a prominent Colombian stock brokerage firm, which facilitated the Cali cartel network's financial transactions. In October 2003, OFAC/IPD designated 134 new front companies and individuals including a network of pharmaceutical companies extending from Colombia to Costa Rica, Ecuador, Panama, Peru, and Venezuela, with ties to financial companies in the Bahamas, the British Virgin Islands and Spain. These SDNT actions were the result of a three-year investigation by OFAC/IPD officers and the OFAC Attaché – Bogota.

These actions under the SDNT and Kingpin Act programs reflect the increasing cooperation, coordination and integration among the U.S. counter-narcotics agencies in the battle against international narcotics trafficking and narco-terrorism. On March 3, 2004, the U.S. Attorney for the Southern District of New York issued a joint statement with the DEA New York field office and the OFAC Director announcing the indictment of two of Colombia's most important drug kingpins, Gilberto Rodriguez Orejuela and Miguel Angel Rodriguez Orejuela, leaders of the notorious Cali Cartel, under Operation DYNASTY, a joint investigation involving the U.S. Attorney's Office for the Southern District of New York, DEA, OFAC, and Colombian authorities. Both Cali cartel leaders were designated under EO 12978 as Colombian cartel leaders in October 1995. The indictment charges the Rodriguez Orejuela brothers with money laundering conspiracy based largely upon the predicate offense of violating the IEEPA as a result of the drug kingpins' efforts to defeat OFAC's designations of many of their companies as SDNTs.

**OFAC's Counter-Terrorism Program**

Foundations of Terrorist Financing and Support

The threat of terrorist support networks and financing is real, and it has been OFAC's mission to help identify and disrupt those networks.

There is much we know about how radical terrorist networks were established and still thrive. OFAC's research has disclosed the overall framework of the support structures that underpin the most prominent Islamic extremist movements throughout the world. "Deep pocket" donors in the Middle East provide money either to terrorist groups directly, or indirectly through trusted intermediaries and non-governmental organizations (NGOs), including charities. These NGOs can, in turn, use the money to provide funding and logistical services directly to terrorist groups, including transportation, cover employment, and travel documentation. They also provide support indirectly by using the funds for public works projects -- wells, social centers, and clinics -- to reach disaffected populations susceptible to radicalizing influences. These projects also often include extremist religious schools, which serve as fertile recruiting grounds for new members of terrorist groups.

067

The terrorist networks are well-entrenched and self-sustaining, though vulnerable to

U.S., allied and international efforts. Looking forward, please allow me to explain how we have arrived at this view and present the strategy, being implemented in coordination with other components of the Treasury Department and other Federal agencies including the Departments of Defense, State, Justice, Homeland Security, the FBI, IRS Criminal Investigation, the intelligence community and other agencies, to choke off the key nodes in the transnational terrorist support infrastructure.

Research and Evidentiary Preparation

The primary mission of officers within OFAC's Foreign Terrorist Programs Division is to compile the administrative record or "evidentiary" material that serves as the factual basis underlying a decision by OFAC to designate a specific person pursuant to EO 13224 or other counter-terrorism sanctions authorities that triggers a blocking of assets and a prohibition on US persons from dealing with the designated party. OFAC officers conduct "all-source" research that exploits a variety of classified and unclassified information sources in order to determine how the activities or relationships of a specific target meet the criteria of the EO. As the implementing and administrating agency for EO 13224 and other related programs, OFAC coordinates and works with other US agencies to identify, investigate and develop potential targets for designation or other appropriate USG actions. Officers use their considerable expertise to evaluate available information in the critical process of constructing a legally sufficient evidentiary record.

More broadly, OFAC officers compile research on multiple targets to build a comprehensive schematic of the structure of particular terrorist network. They then employ a "key nodes" methodology to identify these high value targets within them that serve critical functions. OFAC believes that by eliminating these key nodes or high value targets the network would be disabled because without them the network would not receive sustaining services such as recruitment; training; logistical, material, financial, or technological support; and leadership. OFAC selects specific targets to recommend for designation based on the potential to cripple or otherwise dramatically impair the operations of the overall network by economically isolating these nodes. Economic sanctions are most effective against key nodes such as donors; financiers (fundraisers, financial institutions, and other commercial enterprises); leaders; charities; and facilitators such as logisticians. OFAC already has targeted key nodes in terrorist networks in several areas of the world including groups in Southeast Asia and various parts of Africa. OFAC is currently engaged in new research on groups in the Middle East, including Iraq, and the Caucasus.

A completed OFAC evidentiary record on a particular target is submitted first for legal review, then to the Executive Office of Terrorist Finance and Financial Crimes, where OFAC officers work with that office to prepare the package for the Policy Coordinating Committee (PCC). The PCC determines whether the USG should designate a particular entity or should pursue alternative legal or diplomatic strategies in order to achieve U.S. interests. As part of the PCC process, OFAC's designation proposal will usually be vetted by the consultative parties specified by the EO.

In addition to the evidentiary package, OFAC and other Treasury officers work with the interagency community to draft an unclassified Statement of the Case (SOC) which serves as the factual basis for the public announcement of a designation. The State Department uses it to pre-consult with countries which are directly impacted by a proposed US action and to urge them to designate at the same time as the USG. Upon a USG determination to designate, the SOC is used to notify host countries and the UN of an impending US action. It is also used to propose the inclusion of the target on the consolidated list of the UN 1267 Sanctions Committee of those individuals or entities associated with al Qaida or the Taliban.

UN and Bilaterally Proposed Designations

Whenever an individual or entity is proposed for inclusion on the UN 1267 consolidated list by another country through the UN or is proposed to the USG bilaterally, OFAC, and when appropriate the Department of State, is responsible for preparing the administrative record. In order to designate a target proposed to the UN by a Member State or by another government bilaterally to the USG, OFAC (or

068