**Steven T. Wax, OSB No. 85012**
**Federal Public Defender**
**101 SW Main Street, Suite 1700**
**Portland, OR  97204**
**Tel: (503) 326-2123**
**Fax: (503) 326-5524**
**Email: steve_wax@fd.org**

**Lawrence Matasar, OSB No. 74209**
**621 SW Morrison Street, Suite #1025**
**Portland, OR 97205**
**Tel: (503) 222-9830**
**Email: larry@pdxlaw.com**

**Attorneys for Defendant**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 05-60008 HO** |
| **Plaintiff,** | **MOTION IN LIMINE** |
| **v.** | |
| **PIROUZ SEDAGHATY,** | |
| **Defendant.** | |

# TABLE OF CONTENTS

**PAGE**

I.    MOTIONS IN LIMINE ARE FAVORED WHEN PARTIES ARE ABLE TO IDENTIFY EVIDENTIARY ISSUES IN ADVANCE OF TRIAL. . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    In Limine Rulings Are Generally Favored. . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    The Court May Rule On The Scope Of Cross-Examination Of A Defendant Pre-Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    STATEMENT OF APPLICABLE LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Federal Rules of Evidence 401, 402, 403, And 404. . . . . . . . . . . . . . . . 3

        1.    F.R.E. 401 and 402. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        2.    F.R.E. 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        3.    F.R.E. 404. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        4.    Reading Material, Videos, E-mail List-Serves. . . . . . . . . . . . . . . 6

        5.    Guilt By Association. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.    HEARSAY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        1.    Basic Definition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        2.    Admission by a Party Opponent. . . . . . . . . . . . . . . . . . . . . . . . . 10

        3.    Statement Of A Co-Conspirator. . . . . . . . . . . . . . . . . . . . . . . . . 11

        4.    Hearsay Exceptions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    C.    Experts/Lay Witness Testimony - Rules 701-702. . . . . . . . . . . . . . . . 18

    D.    Attorney Client Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

III.    SPECIFIC OBJECTIONS TO MARKED GOVERNMENT EXHIBITS. . . . . . . . 20

IV.    MR. SEDAGHATY'S MARITAL PRACTICES. . . . . . . . . . . . . . . . . . . . . . . . . 38

i

V.    FLIGHT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  38

# TABLE OF AUTHORITIES

**PAGE**

*Blount v. Conn. Gen. Life Ins. Co*
    CB 01-1341-BR, 2002 WL 31974405 (D. Or. July 2, 2002). . . . . . . . . . . . . . .  17

*Bourjaily v. United States*,
    483 U.S. 171 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Duran v. City of Maywood*,
    221 F.3d 1127 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*In re Grand Jury Investigation*,
    974 F.2d 1068 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*Guam v. Shymanovitz*,
    157 F.3d 1154 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Hendricks v. Calderon*,
    70 F.3d 1032 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*Hiram Ricker & Sons v. Students Intern. Meditation Social*,
    501 F.2d 550 (1st Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Huddleston v. United States*,
    485 U.S. 681 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Keogh v. Commissioner of Internal Revenue*,
    713 F.2d 496 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Latman v. Burdette*,
    366 F.3d 774 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Luce v. United States*,
    469 U.S. 38 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*McKinney v. Rees*,
    993 F.2d 1378 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Metropolitan-Goldwyn-Mayer Studios, Inc. v. Grokster, LTD, et al.*,
    454 F. Supp. 2d 966 (C.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Millenkamp v. Davisco Foods Intern., Inc.*,
    562 F.3d 971 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Morrisette v. United States*,
    342 U.S. 246 (1951). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Moses v. Payne*,
    555 F.3d 742 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Old Chief v. United States*,
    519 U.S. 172 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sana v. Haw. Cruises,  Ltd.*,
    181 F.3d 1041 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Seattle First National Bank v. Randall*,
    532 F.2d 1291 (9th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Terrovona v. Kincheloe*,
    852 F.2d 424 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*U-Haul Intern., Inc. v. Lumbermans Mutual Casualty Co.*,
    576 F.3d 1040 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

*United States v. Abascal*,
    564 F.2d 821 (9th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Artega*,
    117 F.3d 388 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Bailey*,
    *607 F.2d 237 (9th cir. 1979)*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Bailey*,
    607 F.2d 237, 245 (9th cir. 1979. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Bergeson*,
    425 F.3d 1221 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Bishop*,
    291 F.3d 1100 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Bradley*,
      5 F.3d 1317 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Browne*,
      829 F.2d 760 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Chen*,
      99 F.3d 1495 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Cook*,
      608 F.2d 1175 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. DeSalvo*,
      41 F.3d 505 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Dibble*,
      429 F.2d 598 (9th Cir. 1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States  v. Ellis*,
      147 F.3d 1131 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Figueroa-Lopez*,
      125 F.3d 1241 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,
         19

*United States v. Freeman*,
      498 F.3d 893 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,
         19

*United States v. Garcia*,
      151 F.3d 1243 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Giese*,
      597 F.2d 1170 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Gil*,
      58 F.3d 1414 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Hedgcorth*,
      873 F.2d 1307 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Hitt*,
      981 F.2d 422 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Hodges*,
    770 F.2d 1475 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*United States v. Howell*,
    231 F.3d 615 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*United States v. Johnson*,
    297 F.3d 845 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Larson*,
    460 F.3d 1200 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Mouzin*,
    785 F.2d 682 (9th Cir.), *cert. denied*, 479 U.S. 985 (1986). . . . . . . . . . . . . . . . 12

*United States v. Parks*,
    285 F.3d 1133 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*United States v. Pheaster*,
    544 F.2d 353 (9th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Ray*,
    930 F.2d 1368 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Robel*,
    389 U.S. 258 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*United States v. Ruehle*,
    583 F.3d 600 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Sayetsitty*,
    107 F.3d 1405 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Silverman*,
    861 F.2d 571 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Yarbrough*,
    852 F.2d 1522 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wheeler v. Sims*,
    951 F.2d 796 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wisconsin v. Mitchell*,
    508 U.S. 476 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Upjohn v. United States*
    449 U.S. 383 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

## FEDERAL STATUTES

Fed. R. Evid. 104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Fed. R. Evid. 401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 7, 8, 23, 24, 26, 27,
                                                                                    29, 30, 33, 37, 38, 39

Fed.R. Evid. 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 4, 6, 7, 19, 23, 24, 27,
                                                                                    29, 30, 33, 37, 38, 39

Fed. R. Evid. 404. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 6

Fed. R. Evid. 501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Fed. R. Evid. 602. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Fed. R. Evid. 701. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Fed. R. Evid. 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Fed. R. Evid. 801. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 10, 11, 12, 29, 31

Fed. R. Evid. 802. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26, 29, 32, 26

Fed. R. Evid. 803. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13, 14, 15, 16,
                                                                                    17, 26, 31, 34, 35

Fed. R. Evid. 902. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Defendant Pirouz Sedaghaty, through his attorneys, Steven T. Wax and Lawrence Matasar, moves this Court *in limine* for a pretrial ruling on the following evidentiary matters.

Mr. Sedaghaty is charged with conspiracy to defraud the United States by impeding the functions of the Internal Revenue Service and United States Customs by filing a false tax return and because his co-defendant, Soliman Al Buthe, failed to report the fact that he was transferring more than $10,000 in cash out of the United States. While Mr. Sedaghaty will contest the alleged falsity of several aspects of the tax return, he will not contest that it contains a mistake or that Mr. Al Buthe failed to file a monetary report. The focus of the trial will likely be on who is responsible for the mistake on the tax return and whether Mr. Sedaghaty acted with the requisite mens rea to render him liable on Counts 1 and 2. The government's proof with respect to the errors on the tax return and reporting are likely to be relatively straightforward. The tax returns, QuickBooks files, and Mr. Wilcox's other working papers will be in evidence and he will testify.

The government's case with respect to the intent, willfulness, and knowledge aspects of the case is, however, an entirely different matter. It is entirely circumstantial. The exhibits the government has marked and witnesses it has listed reveal that the overwhelming majority of the government's case is based on hearsay, guilt by association, and innuendo. In this pleading, Mr. Sedaghaty articulates the general legal principles that should be employed to preclude the government from introducing many of the exhibits it has marked and much of the testimony it will seek to elicit from a number of its witnesses.

**Page 1**         **MOTION IN LIMINE**

The case Mr. Sedaghaty has put together is based on his understanding of the manner in which the government intends to proceed.  Mr. Sedaghaty anticipates that the government will be moving against a number of his exhibits.  We anticipate that in our response to that pleading, we will point out a gross asymmetry in the manner in which the government is seeking to have the Court view the exhibits it has marked and those marked by Mr. Sedaghaty.

## I.    MOTIONS IN LIMINE ARE FAVORED WHEN PARTIES ARE ABLE TO IDENTIFY EVIDENTIARY ISSUES IN ADVANCE OF TRIAL

### A.    In Limine Rulings Are Generally Favored

While recognizing that situations may arise during trial in which an evidentiary ruling is necessary, *United States v. Browne*, 829 F.2d 760 (9th Cir. 1987), the law is clear that advance rulings are often not only possible, but favored.  *See Hendricks v. Calderon*, 70 F.3d 1032, 1041 (9th Cir. 1995); *United States v. Cook*, 608 F.2d 1175, 1186 (9th Cir. 1979) ("[A]dvance planning helps both parties and the court.") (overruled on other grounds); Fed. R. Crim. P. 12(b)(2) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the general issue.)

### B.    The Court May Rule On The Scope Of Cross-Examination Of A Defendant Pre-Trial

Mr. Sedaghaty recognizes that in *Luce v. United States,* 469 U.S. 38, 41-42 (1984), the Supreme Court held that it is not error for the Court to refuse to rule in advance on a defendant's request to limit the scope of the government's cross-examination.  The Ninth Circuit law remains intact, however, that advance ruling

is preferable.  When the government has highly inflammatory material with which it can attempt to cross-examine a defendant, it is fundamentally unfair to require him to testify without knowing the scope of cross-examination that would be permitted.  *See, e.g., Hendricks v. Calderon*, 70 F.3d at 1041 ("[K]nowing the scope of cross-examination from the start would have been an important factor in deciding what defense to prepare and eliminated the devastating element of surprise in the judge's ruling.").

## II.    STATEMENT OF APPLICABLE LAW

### A.    Federal Rules of Evidence 401, 402, 403, And 404

#### 1.    F.R.E. 401 and 402.

"Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable . . . ."  Fed. R. Evid. 401.  Relevancy "exists only as relation between an item of evidence and a matter properly provable in a case."  *Huddleston v. United States*, 485 U.S. 681, 689 (1988).

Federal Rule of Evidence 402 provides that evidence which is not relevant is not admissible.  Thus, "all evidence . . . must meet the test of relevancy as described in Rule 401, or the evidence is inadmissable under Rule 402."  *Guam v. Shymanovitz*, 157 F.3d 1154, 1159 n.7 (9th Cir. 1998) (overruled on other grounds).  Many of the government's exhibits are not relevant because there is no link to Mr. Sedaghaty or because they involve acts of others over whom Mr. Sedaghaty had no control.

#### 2.    F.R.E. 403.

Even when the Court considers evidence relevant, Rule 403 provides that it "may

be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or delay, waste of time, or needless presentation of cumulative evidence." *See Moses v. Payne*, 555 F.3d 742, 758 (9th Cir. 2009). District courts have broad discretion to admit or exclude evidence under Rule 403. *United States v. Ellis*, 147 F.3d 1131, 1135 (9th Cir. 1998). Yet, while the Court has wide latitude under Rule 403, "this latitude is not unlimited. Where the evidence is of very slight (if any) probative value, it is an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *United States v. Hitt,* 981 F.2d 422, 424 (9th Cir. 1992). Accordingly, "Rule 403 has been interpreted as a final check on the admission of extrinsic acts evidence, which may only be received if 'on balance, its probative value is not substantially outweighed by the danger of unfair prejudice to the defendant.'" *United States v. DeSalvo*, 41 F.3d 505, 510 (9th Cir. 1994) (quoting *United States v. Hodges*, 770 F.2d 1475, 1479 (9th Cir. 1985).

"Unfair prejudice" in the context of balancing evidence means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R. Evid. 403 Adv. Comm. Notes. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). The Court's exclusion of such evidence will protect against the "danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man

deserving of punishment." *United States v. Parks*, 285 F.3d 1133, 1141 (9th Cir. 2002) (internal quotations omitted).

Many of the government's exhibits contain material that is highly inflammatory, of minimal relevance, if any, and is unduly prejudicial.

### 3.    F.R.E. 404.

Federal Rule of Evidence 404(b) prohibits use of evidence of other crimes, wrongs, or acts to prove that a defendant has "bad character" and is, therefore, more likely to have committed the charged crime.  The Ninth Circuit has consistently recognized that "the rule against the use of character evidence . . . is rooted in fundamental fairness and due process concerns."  *McKinney v. Rees*, 993 F.2d 1378, 1385 (9th Cir. 1993) (internal quotations and citations omitted).  Thus, "[e]xtrinsic acts evidence is not looked upon with favor."  *United States v. Bradley,* 5 F.3d 1317, 1320 (9th Cir. 1993).  However, such evidence may be admissible in limited circumstances under Rule 404(b) to establish motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

If the government intends to use evidence of other crimes or bad acts for any reason at trial, the government must provide "reasonable notice in advance of trial." Fed. R. Evid. 404(b).  Thus, if the government fails to provide reasonable notice to the defense, the court must exclude the evidence.  The government has provided notice regarding the two transactions it intends to offer under F.R.E. 404(b): 1) use of the allegation that Mr. Sedaghaty transferred $2,000 from his business account to a bank in Tirane, Albania, in 1999, and 2) the allegation that he paid an employee approximately $2,060 in 1999 in a manner that would avoid paying payroll taxes on that amount.

These are discussed in detail below.

Before evidence of other extrinsic acts may be admitted for one or more of the purposes approved by Rule 404(b), the following prerequisites must be met: (1) sufficient evidence must exist that the defendant committed the other crimes, (2) the prior criminal conduct must not be too remote in time from the commission of the crime charged, (3) the prior criminal conduct must, if offered to prove intent, be similar to the offense charged, and (4) the prior criminal conduct must be offered to prove a material issue in the case, *i.e.,* an element of the charged offense. *United States v. Howell*, 231 F.3d 615, 628 (9th Cir. 2000). Each of these four prongs must be satisfied by relevant and reliable evidence. If one of the prongs is not met, the evidence is inadmissible under Rule 404(b). *Id*. When evidence under Fed. R. Evid. 404(b) would necessitate a substantial trial within a trial, its use is disfavored. *See Duran v. City of Maywood*, 221 F.3d 1127, 1132-1133 (9th Cir. 2000) (evidence properly excluded under Fed. R. Evid. 403, because its admission would require "a full-blown trial within a trial," in which marginal value of evidence would be substantially outweighed by confusion of issues, misleading jury, or undue delay).

### 4. Reading Material, Videos, E-mail List-Serves.

Many of the exhibits marked by the government are e-mails sent from list-serves, screen shots of websites, other reading material, and videos. The government's proffer of these exhibits raises questions under rules 401 through 404. The exhibits also implicate First Amendment rights.

With respect to many of the e-mails, the government has no evidence that Mr. Sedaghaty read or viewed them. The evidence at trial will be that many individuals

lived and worked in the same places as Mr. Sedaghaty and used and had access to the same computers that he did.  There are, therefore, substantial questions about relevancy and any direct link to Mr. Sedaghaty.  Second, a number of the documents contain highly inflammatory and prejudicial content, creating unfair prejudice that would outweigh any probative value.  With respect to relevance, many of the exhibits have no relation to the acts charged in the indictment.

The First Amendment protects an individual's right to read anything he or she wishes to read.  Mr. Sedaghaty recognizes that "[t]he First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent."  *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993).  Its use, however, must be carefully limited.  *Compare United States v. Giese*, 597 F.2d 1170, 1202 (dissent) (9th Cir. 1979) ("neither the use of the [reading material] to prove the substantive elements of the offenses with which Giese was charged nor the use of the [reading material] for impeachment was permissible under the First Amendment."), with *Giese*, 597 F.2d at 1185 (the Ninth Circuit did not "establish[] a general rule that the government may use a person's reading habits, literary tastes, or political views as evidence against him in a criminal prosecution.  In many cases such evidence would be clearly inadmissible).  *See, e.g.*, *United States v. McCrea*, 583 F.2d 1083 (9th Cir. 1978) (admission of books with titles that had a tendency to prejudice the defendant was improper under Rule 403).  Thus, while reading material can be admissible under Rule 404(b) if it makes a defendant's criminal intent "more probable or less probable than it would be without the evidence," *United States v. Curtin*, 489 F.3d 935, 948, 959 (9th Cir, 2007) (*en banc*), the Court must be cautious in allowing in such evidence.

Here, much of the government's evidence of Mr. Sedaghaty's computer use, reading habits, or list-serves should be excluded as irrelevant under Rules 401 and 402, unduly prejudicial under Rule 403, or an impermissible use of character evidence under Rule 404. The issues with respect to the contents found on the computers highlight the problem of guilt by association in this case. The jury must determine Mr. Sedaghaty's intent, not that of other people with whom he associated, nor that of people who sent e-mails.

As the Court considers the admissibility of the exhibits from the computers, the book, appendix, and videos, it is critical to bear in mind the context that existed before September 11, 2001. Much of the evidence the government seeks to introduce involves statements about the war in Chechnya. In the relevant time period, that war was seen by the world, including the United States government, as a war of aggression by Russia against Chechnya. The world recognized then the Russians were engaged in brutal oppression of a predominantly Muslim state. Russian efforts to limit the world's awareness of the atrocities it was perpetrating made it difficult for people outside of Chechnya to gather news of and understand what was taking place. Evidence in support of this context is included within the exhibits the defendant has marked. The context renders many of the government's exhibits inadmissible.

### 5.    *Guilt By Association*.

Many of the exhibits the government has marked involve activities of the Al Haramain organization in Saudi Arabia. Many involve actions by the organization generally without any specification of the actions of any individual. Other exhibits, including many of the list-serve e-mails, are offered with the intent of asking the jury to

draw an inference that a person who sends an e-mail advocates the content of the e-mail, and then asking the jury to draw the further inference upon inference that a person who reads the e-mail does as well.  The same theme is sounded in the report prepared by the government's purported terrorism expert, Evan Kohlmann.  Much of the evidence, therefore, requires careful analysis under Rule 401 for relevance, 403 for prejudice, and 404.

The law is clear that guilt must be individual.  *See United States v. Bailey, 607 F.2d 237, 245 (9th cir. 1979) (citing Kotteakos v. United States, 328 U.S. 750, 772 (1946) (*"Guilt remains individual and personal,  . . . even in conspiracy prosecutions, and a conviction must rest upon individual guilt beyond a reasonable doubt, not mass guilt.").  The law is also clear that the government must establish that a defendant acted with the requisite mens rea.  *See Morrisette v. United States*, 342 U.S. 246, 274 (1951).  The law in this nation historically condemns efforts to prove guilt by association.  *See United States v. Garcia*, 151 F.3d 1243, 1246 (9th Cir. 1998) ("There can be no conviction for guilt by association.").   Indeed, one of the fundamental premises of this nation since its founding has been the right of free association guaranteed in the first amendment.  *See United States v. Robe*l, 389 U.S. 258, 264-65 (1967) ("guilt by association alone," even in the name of national defense, violates the First Amendment.).

### B.    HEARSAY.

Many of the exhibits marked by the government implicate the rules against use of hearsay and the various exceptions to the rule.

### 1.    *Basic Definition*.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  A "statement" is either an "oral or written assertion" or "nonverbal conduct of a person, if it is intended by the person as an assertion."  Fed. R. Evid. 801(a).  Although "assertion" is nowhere defined, the Advisory Committee Notes give significant guidance:

> The key to the definition is that nothing is an assertion unless intended to be one.
>
> It can scarcely be doubted that an assertion made in words is intended by the declarant to be an assertion. Hence verbal assertions readily fall into the category of "statement." Whether nonverbal conduct should be regarded as a statement for purposes of defining hearsay requires further consideration. Some nonverbal conduct, such as the act of pointing to identify a suspect in a lineup, is clearly the equivalent of words, assertive in nature, and to be regarded as a statement.

Fed. R. Evid. 801(a), Advisory Comm. Note.

In addition to meeting the definition of "statement," a piece of evidence must also be offered "to prove the truth of the matter asserted" in that statement before it qualifies as hearsay.  Fed. R. Evid. 801(c).  "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."  Fed. R. Evid. 801(c), Advisory Committee's Note.  *See United States v. Abascal*, 564 F.2d 821, 830 (9th Cir. 1977) (holding the telephone

conversations of a co-conspirator were not hearsay because the truth of any assertions made in the conversations were immaterial to the case).  A statement that would otherwise be inadmissible hearsay may be admitted for purposes other than demonstrating the truth of the statement.  For example, statements offered to show the effect on the hearer, to show circumstantial evidence of state of mind, statements that function as legally operative conduct, and statements introduced for impeachment purposes are not hearsay.  *United States v. Artega*, 117 F.3d 388, 397 (9th Cir. 1997).

### 2.    *Admission by a Party Opponent.*

Rule 801(d)(2) states a statement is not hearsay when: [t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the court and in furtherance of the conspiracy.

The government intends to introduce many of the "list-serve" e-mails that were sent to Mr. Sedaghaty's e-mail address, but that he did not respond to or forward, as admissions of a party opponent.  This is not a proper application of Rule 801(d)(2). While there are certain circumstances in which e-mails have been admitted as statements of a party opponent, those cases have involved e-mails that were sent by employees or agents of the party being prosecuted.  *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, LTD, et al.*, 454 F.Supp.2d 966, 973-74 (C.D. Cal. 2006) (e-

**Page 11        MOTION IN LIMINE**

mails sent by corporate officers or employees within the scope of their employment were admissible against the corporation under Rule 801(d)(2)(D).).  This "rule 'requires that the proffering party lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's employment.'"  *Metro-Goldwyn-Mayer Studios, Inc.*, 454 F.Supp.2d at 973 (*quoting Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir. 1986)).

### 3.    Statement Of A Co-Conspirator.

Rule 801(d)(2)(E) states, in relevant part: "A statement is not hearsay if - [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.  The contents of the statement shall be considered but are not alone sufficient to establish the . . . existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered."

The existence of a conspiracy and a person's involvement in it are preliminary questions of fact that, under Rule 104, must be resolved by the court.  *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  The existence of the conspiracy must be established by a preponderance of the evidence.  *Bourjaily*, 483 U.S. at 175.  "The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration."  *Bourjaily*, 483 U.S. at 175.

In order for a co-conspirator's statement to be admitted pursuant to Rule 801(d)(2)(E), it is "essential that there be evidence regarding who made the statement,

because '[i]n order to corroborate or refute [whether the declarant and the defendant were co-conspirators], the litigants must know the identity of the declarant.'" *United States v. Gil*, 58 F.3d 1414, 1420 (9th Cir. 1995), quoting, *United States v. Mouzin*, 785 F.2d 682, 692-93 (9th Cir.), *cert. denied*, 479 U.S. 985 (1986).

Statements of a co-conspirator are admissible only "where the prosecution shows by a preponderance of the evidence that (1) the conspiracy existed when the statement was made; (2) the defendant had knowledge of, and participated in, the conspiracy; and (3) the statement was made in the furtherance of the conspiracy." *United States v. Larson*, 460 F.3d 1200, 1211 (9th Cir. 2006) (internal quotations omitted).  "Mere conversations between co-conspirators, or merely narrative declarations among them, are not made in furtherance of a conspiracy."  *United States v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir. 1988) (internal quotations omitted).

### 4.    *Hearsay Exceptions.*

A number of exceptions to the hearsay rules are relevant to the admissibility of some of the government's and Mr. Sedaghaty's exhibits.

#### a.    *Then existing mental, emotional, or physical condition.*

Rule 803(3) provides for admissibility of "a statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed."  Fed. R. Evid. 803(3).  The rule is a "firmly rooted hearsay exception" that the Ninth Circuit has interpreted to contain limiting factors such as relevance, contemporaneousness, and the exclusion of statements of belief.  *Terrovona v. Kincheloe*, 852 F.2d 424, 427 (9th Cir. 1988).

State of mind must be relevant to the case. "Hearsay evidence is admissible if it bears on the state of mind of the declarant and if state of mind is an issue in the case." *United States v. Pheaster*, 544 F.2d 353, 376 (9th Cir. 1976); *see also United States v. Bishop*, 291 F.3d 1100, 1112 (9th Cir. 2002) (defendant's wife should have been allowed to testify about tax advice the accountant gave her and her husband because, even though her own state of mind was not at issue, her testimony would have been circumstantial evidence of her husband's state of mind which was at issue in the case).

The remoteness of statements should be considered as relevant to reliability. *See United States v. Hedgcorth*, 873 F.2d 1307, 1313 (9th Cir. 1989) (defendant's prior writings offered to show his peaceful philosophy were inadmissible because the writings have no bearing on his state of mind during offenses committed years later).

Rule 803(3) is commonly used to admit evidence of intent. "[I]f the performance of a particular act by an individual is an issue in a case, hearsay can be admitted to show the individual's intention (state of mind) to perform the act." *Terrovona*, 852 F.2d at 427. *See United States v. Sayetsitty*, 107 F.3d 1405, 1415 (9th Cir. 1997) (defendant's statement that he was in a land dispute with decedent was not hearsay, and even if it was it would be admissible to establish intent under 803(3)); *United States v. Silverman*, 861 F.2d 571, 579 n.1 (9th Cir. 1988) (a co-conspirator's statement that she was going to call her brother was admissible to prove her intent).

### b.    Business records.

Evid. Rule 803(6) states:

**Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information

transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.  The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Business records must meet the criteria of Rule 803(6) in order to qualify for an exception to the prohibition on hearsay evidence.   *U-Haul Intern., Inc. v. Lumbermans Mut. Cas. Co.*, 576 F.3d 1040, 1043 (9th Cir. 2009), *quoting* Fed. R. Evid. 803(6).  In order to be admissible under Rule 803(6), "a document must have been made at or near the time of the events it records or describes, by or from information transmitted by a person with knowledge of those events, kept in the course of a regularly conducted business activity, and part of a business's regular practice." *Millenkamp v. Davisco Foods Intern., Inc.*, 562 F.3d 971, 980 (9th Cir. 2009) (internal quotations omitted). The "proponent of evidence has the burden of proof and must lay" the foundation for admissibility. *Sana v. Haw. Cruises, Ltd.*, 181 F.3d 1041, 1045-1046 (9th Cir. 1999), *citing Oki Am., Inc. v. Microtech Intern., Inc.*, 872 F.2d 312, 314 (9th Cir. 1989). In addition, even if the above requirements are met, a document is not admissible under the hearsay exception if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness."  Fed .R. Evid. 803(6).

In order to establish the proper foundation for the admission of a business record, an appropriate foundation witness must be used.  The witness must have first-hand knowledge of the method by which the business in question prepares, stores and

maintains its records.  Weisenberger's Federal Evidence 2010 Courtroom Manual, Ch. 803 at pg. 316.

> The foundation witness testifies that the record in question was prepared by an employee of the business in question who had a duty to report the information.  The foundation witness further testifies that the person preparing the record or contributing information to the record had personal knowledge of the facts or events reported, and that the report was prepared at or near the time of the event that is recorded.

Weisenberger's Federal Evidence 2010 Courtroom Manual, Ch. 803 at pg. 316.

The term "business" as used in the rule is broadly defined to include "business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit." Fed. R. Evid. 803(6). *See also Keogh v. Comm'r of Internal Revenue*, 713 F.2d 496, 499-500 (9th Cir. 1983) (holding that a personal diary qualified as a business record because it was kept for business purposes, and the entries were timely and regular).

Not all items at a business fall within the exception rule.  For example, sales orders and bank records that come from a bank's first-hand observation of account transactions are generally admissible.  *United States v. Johnson*, 297 F.3d 845, 863-64 (9th Cir. 2002).  However, a bank's procedural manual is not a business record under Rule 803(6) because it was not made contemporaneously with the transaction and was not made as a record of an act, transaction, or occurrence. *Seattle First Nat'l Bank v. Randall*, 532 F.2d 1291, 1296 (9th Cir. 1976).

What qualifies as "at or near the time of the events" varies based on the circumstances of each case.  Entries must be made contemporaneously with the event or a reasonable time thereafter.  *Compare Hiram Ricker & Sons v. Students Intern.*

*Meditation Soc.*, 501 F.2d 550, 554 (1st Cir. 1974) (entries of maintenance records made from memory after a week had passed did not meet the requirement) *and Wheeler v. Sims*, 951 F.2d 796, 804 (7th Cir. 1992) (statements of prison employees made eleven days after the event were admissible).

Business records may be admitted through a "custodian or *other qualified witness.*"  *U-Haul Intern., Inc. v. Lumbermans Mut.*, 576 F.3d at 1043 (*quoting* Fed. R. Evid. 803(6)) (emphasis added).   The term "other qualified witness" as used above is broadly interpreted.  *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990). However, the qualified witness must be able to "provide specific testimony or specific certification that the account records constituted records of regularly conducted activity, as defined by the rule."  *Latman v. Burdette*, 366 F.3d 774, 787 (9th Cir. 2004).  In *Latman*, the attorney for the trustee in a bankruptcy proceeding was not a qualified witness with respect to the bank records sought to be introduced because the attorney "had no regular connection to the . . . bank and no knowledge of the account except that gained by hearsay."  *Id.*  His lack of personal knowledge of the company's regular business activities prevented him from serving as a qualified witness for purposes of Rule 803(6).

Furthermore, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602; *see also United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970) ("The foundation is laid for receiving a document in evidence by the testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document. . . .")

The Court has been apprised of an issue with respect to Mr. Sedaghaty's counsel, Larry Matasar, and authentication of Al-Haramain's business records. "Under most circumstances, an attorney has no personal knowledge of and is not competent to testify to the authenticity of documents generated before the litigation began or merely produced by his client. In other words, an attorney cannot acquire personal knowledge based on hearsay from his client." *Blount v. Conn. Gen. Life Ins. Co.*, No. CB 01-1341-BR, 2002 WL 31974405, at *3 (D. Or. July 2, 2002).

If called as a witness to authenticate items as business records, Mr. Matasar would need to testify regarding the regular business practices of Al-Haramain Islamic Foundation (AHIF) including its procedures for making and keeping business records as well as whether the document in question was made at or near the time the information was transmitted. Mr. Matasar has no knowledge of these practices beyond what he learned through hearsay in the representation of AHIF during the civil subpoena process. Furthermore, Mr. Matasar lacks the personal knowledge required by Rule 602 because the documents in question were created before he represented either AHIF or Mr. Sedaghaty. Therefore, Mr. Matasar is not a qualified witness with respect to these documents or AHIF's business practices.

## C.    Experts/Lay Witness Testimony - Rules 701-702.

Federal Rule of Evidence 702 states that if "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question." *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1244 (9th Cir. 1997) (internal quotations omitted). Rule 702 charges district courts with a gatekeeping role which "entails a preliminary

assessment of whether the reasoning or methodology underlying the testimony is . . .

valid and of whether that reasoning or methodology properly can be applied to the facts

in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993).

In addition, a distinction must be made between expert testimony and lay

testimony. According to Federal Rule of Evidence 701:

> If the witness is not testifying as an expert, the witness' testimony in the
> form of opinions or inferences is limited to those opinions or inferences
> which are (a) rationally based on the perception of the witness, (b) helpful
> to a clear understanding of the witness' testimony or the determination of
> a fact in issue, and (c) not based on scientific, technical, or other
> specialized knowledge within the scope of Rule 702.

All three of the above criteria must be met.

The Ninth Circuit has expressed a number of concerns that arise when expert

and lay witness testimony are co-mingled.  *See United States v. Freeman*, 498 F.3d

893, 903 (9th Cir. 2007).  Indeed, Rule 701 was amended in 2000 with the addition of

subsection (c), above, to "eliminate the risk that the reliability requirements set forth in

Rule 702 will be evaded through the simple expedient of proffering an expert in lay

witness clothing." Fed. R. Evid. 701 advisory committee's note.  Among the Court's

concerns were: 1) a witness who gives both lay and expert testimony receives

unmerited credibility for the lay portion of his testimony; 2) "[T]here is an increased

danger that the expert testimony will stray from applying reliable methodology and

convey to the jury the witness's sweeping conclusions about [defendants'] activities;" 3)

The risk of juror confusion about the dual roles may run afoul of Rule 403; 4) The

blurred distinction between expert and lay testimony may allow the witness "to rely upon

and convey inadmissible hearsay evidence." *Freeman*, 498 F.3d at 903-04.

The testimony of Mr. Gartenstein-Ross may implicate the expert/fact witness issues.  The government has stated its intent to call Gartenstein-Ross only as a fact witness.  "The mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702."  *Figueroa-Lopez*, 125 F.3d at 1246.  Allowing Mr. Gartenstein-Ross to base portions of his testimony on any alleged specialized knowledge would subvert the requirements of Fed. Rule of Criminal Procedure 16(a)(1)(E) which "requires the government to disclose to the defendant a written summary of expert testimony the government intends to use."  *Id.*

### D.    Attorney Client Privilege.

Several of the government's exhibits implicate the attorney/client privilege.  The Supreme Court and Ninth Circuit have both forcefully articulated the importance of a strong attorney-client privilege:

> The attorney-client privilege is essential to preservation of liberty against a powerful government. People need lawyers to guide them through thickets of complex government requirements, and, to get useful advice, they have to be able to talk to their lawyers candidly without fear that what they say to their own lawyers will be transmitted to the government.

*United States v. Chen*, 99 F.3d 1495, 1499 (9th Cir. 1996), *citing United States v. Zolin*, 491 U.S. 554 (1989).  *See also* Fed. R. Evid. 501 ("The privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.").  The Supreme Court also underscored the importance of the privilege in *Upjohn Co. v. United States*, "assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure."  449 U.S. 383, 389 (1981).  Because of the potentially dire consequences breaching the privilege could have on our adversary

justice system, "all reasonable attempts should be made to obtain information from

alternative sources."  *United States v. Bergeson*, 425 F.3d 1221, 1223 n.3 (9th Cir.

2005), *quoting* United States Attorney Manual §§ 9-13.410(B).

The party who asserts "the attorney-client privilege has the burden of

establishing the relationship and the privileged nature of the communication."  *United*

*States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009).  The Ninth Circuit uses an eight-

part test to determine whether the information is privileged:

> (1) Where legal advice of any kind is sought (2) from a professional legal
> adviser in his capacity as such, (3) the communications relating to that
> purpose, (4) made in confidence (5) by the client, (6) are at his instance
> permanently protected (7) from disclosure by himself or by the legal
> adviser, (8) unless the protection be waived.

*Ruehle*, 583 F.3d at 607, quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071

n.2 (9th Cir. 1992).

## III.    SPECIFIC OBJECTIONS TO MARKED GOVERNMENT EXHIBITS

**IRS-1 2000 Form 990 signed by Pete Seda for Al-Haramain Islamic**

**Foundation**

NO OBJECTION.

**IRS-2 1999 Form 990, Return of Organization Exempt From Income Tax**

The defense intends to use the 1999 Form 990 in cross-examination of the

accountant, Mr. Wilcox, to demonstrate his incompetence.  We see, however, no

legitimate basis for the government's use of the return.  Any effort by the government to

utilize the return to argue about the transaction identified in BOA 9 and 10 would run

afoul of F.R.E. 404(b).  *See* Discussion of BOA 9 and 10.

Mr. Sedaghaty will not raise any objection requiring a formal records custodian.

**IRS-3 1023 Application for tax exempt status dated 12/31/99 for Al-Haramain Islamic Foundation, Inc.**

NO OBJECTION.

**IRS-4 IRS determination letter dated 12/7/2000 granting temporary charitable status**

NO OBJECTION.

**JPM-1 Batch deposit ticket dated 3/25/00**

Mr. Sedaghaty is not articulating an objection pending receipt of additional information from the government.  It is possible, however, that an objection on relevance will be raised.

**AMX-1 American Express Traveler's Checks - 130 original checks signed by Soliman Al-But'he**

NO OBJECTION.

**AMX-2 American Express trust receipt**

NO OBJECTION.

**AMX-3 Translation of American Express Traveler's Checks**

Mr. Sedaghaty will not be raising any objections requiring production of a document custodian.  We are awaiting word from our translator to determine if there are any objections to the Arabic translation.

**FE-1 First Escrow settlement statement dated 6/23/2000 for purchase of 2151 E. Division, Springfield, MO**

NO OBJECTION.

**BOA-1 Signature card for Al-Haramain's Bank of America account number 28803-11561**

NO OBJECTION.

**BOA-2 January 1999 through January 2000 bank statements, Al-Haramain account number 28803-1151**

NO OBJECTION.

**BOA-3 Two-page February 2000 bank statement, Al-Haramain account number 28803-11561**

NO OBJECTION.

**BOA-4 Two-page March 2000 bank statement, Al-Haramain account number 28803-11561**

NO OBJECTION.

**BOA-5 April 2000 through October 2001 bank statements, Al-Haramain account number 28803-11561**

NO OBJECTION.

**BOA-6 Check number 9264, dated 1/25/98, for $2,060, account number 28803-11561**

This exhibit is a check made out to Daveed Gartenstein-Ross.  The government has stated that it intends to offer it as evidence of a prior bad act under F.R.E. 404(b). The check purports to be a payment of wages to Mr. Gartenstein-Ross disguised as a computer purchase. This transaction involving a payment to an employee has no bearing on Mr. Sedaghaty's state of mind with respect to the alleged covering up of a transfer of money to Chechen mujahadeen.  It is, moreover, common for small businesses to pay people "under the table."  This exhibit is irrelevant and inadmissible pursuant to Rules 401 and 402.  Even if relevant, any probative value is outweighed by

unfair prejudice and confusion of the issues and it should be excluded under Rule 403.

**BOA-7 Check number 9456, dated 3/10/00, for $131,300, account number 28803-11561**

NO OBJECTION.

**BOA-8 Bank of America check number 9624 dated 3/11/00 for $21,000 issued to Bank of America, Al-Haramain account number 28803-11561**

NO OBJECTION.

**BOA-9 Bank of America cashier's check number 1001040568 dated 3/11/00 for $21,000 issued to Soliman Al-But'he**

NO OBJECTION.

**BOA-9a Translation of $21,000 Bank of America cashier's check**

Mr. Sedaghaty objects to the inclusion of the hearsay statement "to our account" that is translated on the back of the check.  This is an ambiguous phrase, hearsay, and the author is unknown.

**BOA-10 Al-Haramain check # 9733 dated 6/23/00 for $318,291.74, account number 28803-11561**

NO OBJECTION.

**BOA-11 Wire transfer dated 9/19/00, for $4,000, Account number 28803-11561**

Mr. Sedaghaty has no general objection.  The handwritten portion and footer should be redacted as irrelevant and confusing.

**BOA-12 May and June 2000 statements, Al-Haramain account number 3473386549 and BOA-13 Deposit of traveler's checks on May 18, 2000 totaling $275,000**

This bank account was opened in another state by Mr. Al Buthe.  It is irrelevant

to the charges and inadmissible pursuant to Rules 401 and 402.  Even if relevant, any probative value is substantially outweighed by confusion of the issues and it is inadmissible pursuant to Rule 403.

**BOA-14 Signature card for Bank of America account number 28804-07035 in the name of The Arborist; BOA-15 April 1999 statement, Bank of America account number 28804-07035, and; BOA-16 Bank of America wire transfer dated 4/15/99 from The Arborist to Al-Haramain Islamic Foundation in Tirane, Albania**

The government states that they are offering BOA-14 to BOA-16 pursuant to F.R.E. 404(b).  It is the government's theory that Mr. Sedaghaty was attempting to send money to mujahadeen in Albania or Bosnia.  The transfer of money to Albania in 1999 is irrelevant.  Mr. Sedaghaty denies any purpose to find any fighters.  Mr. Sedaghaty often engaged in charitable activity.  Charitable work was the reason for Al Haramain Ashland business included charitable contributions.  Allowing this evidence would expand the trial and require a trial within a trial on a collateral matter.  It is irrelevant and inadmissible pursuant to Rules 401 and 402.  Even if relevant, any probative value is substantially outweighed by unfair prejudice and confusion of the issues.  It is inadmissible pursuant to Rule 403.

**ICE-CBP-1 Form I-94 admission/departure number 35584030208 showing entry of Soliman Al-But'he on March 7, 2000 and exit on March 12, 2000**

NO OBJECTION.

**ICE-FinCEN-1 Results of CMIR query and ICE-FinCEN-2a - 2i and 3, other CMIR reports**

Mr. Sedaghaty does not raise any chain of evidence or custodial objection to these exhibits.  He objects to all, however, on grounds of relevance.  The government

indicates that it is offering these exhibits as proof of Mr. Al Buthe's knowledge of the CMIR reporting requirement.  In the absence of any evidence that Mr. Sedaghaty was aware of that requirement, these exhibits have no bearing on the issues in the case. The indictment requires proof of Mr. Sedaghaty's knowledge, not just to the jury leading it to believe Mr. Al Buthe's knowledge can be imputed to Mr. Sedaghaty when it cannot. Mr. Al Buthe's reports are likely to be confusing.

### RDK-1 Letter dated 8/9/00 to Pete Seda with attached closing documents

Mr. Sedaghaty objects to this exhibit because it is protected pursuant to the attorney client privilege.

### RDK-2 R.D. Kanan file

Mr. Sedaghaty objects to this exhibit because it is protected pursuant to the attorney client privilege.  In addition, many of the documents contained in this file contain inadmissible hearsay in the form of notes regarding conversations with various parties.  No exception permits their use.

### AHIF-1 Copy of Bank of America cashier's check number 1001040568 for $21,000

Mr. Sedaghaty has no objection as long as the government stipulates that the handwriting "Donation for Chechonia refugees" is Soliman Al Buthe's.

### AHIF-2 Agreement between Soliman and Abu Yunus concerning $186,644.70 and AHIF-3 Agreement between Soliman and Abu Yunus concerning $188,465.00

Mr. Sedaghaty objects to these exhibits because they are inadmissible hearsay pursuant to Rule 802.  While the government may argue that this is considered a business record, it is not a memorandum, report, or record kept in the regular course of

business.  In any event, they may not be received without proper authentication.

### AHIF-4 Springfield prayer house schedule of donors and payments

Mr. Sedaghaty objects to this exhibit because it is inadmissible hearsay pursuant to Rule 802.  It is not a memorandum, report, or record kept in the regular course of business pursuant to Rule 803(6).  In order for it to be admissible, the government would need to establish who prepared it, when, why, and meet the other requirements of the business records exception.

### AHIF-5 Springfield building agreement of sale and purchase

Mr. Sedaghaty objects to this exhibit because it is an unidentified and incomplete agreement of sale and purchase.  Therefore, it is irrelevant and inadmissible pursuant to Rules 401 and 402.  It is not a memorandum, report, or record kept in the regular course of business pursuant to Rule 803(6).

### AHIF-6 Springfield Settlement Statement [escrow stmt] and AHIF-7 Springfield Warranty Deed by Corporation

Mr. Sedaghaty objects to these exhibits as they re cumulative to FE-1.  They are not a memorandum, report, or record kept in the regular course of business pursuant to Rule 803(6).

### AHIF-8 El-Feki e-mail dated February 2000 and AHIF-9 Letter dated 2/21/00 from Aqeel to Al-Fiki

Mr. Sedaghaty raises no objection to these e-mails based on our understanding that the government will not object to e-mails it has tendered regarding Mr. El Fiki's donation.

### AHIF-10 Explanation by Pete Sedaghaty for Al-Haramain expenses and AHIF-11 Correspondence pertaining to Al-Haramain books and records

See objection to AHIF-4.

**AHIF-12 Al-Haramain monthly summary reports for February and March 2000**

Mr. Sedaghaty objects on the ground the government cannot satisfy the business record exception requirements.

**SW-1 Two video tapes pertaining to Chechen mujahadeen battles with Russian forces.**

Mr. Sedaghaty objects on the grounds that the government cannot provide any foundation for these videos.  There is no indication that these videos belonged to or were viewed by Mr. Sedaghaty as compared to any number of other employees and former residents of Al Haramain.  In addition, the video tapes appear to have been made around 1994 or 1995 and pertain to the first Chechen war, activity that is far too remote in time to be relevant to charges in this case.  Even if these videos did belong to Mr. Sedaghaty, they are irrelevant and inadmissible under Rule 401 and 402.  If these videos are relevant, their content is inflammatory and the probative value is substantially outweighed by unfair prejudice and they should not be admitted pursuant to Rule 403.

In considering the admissibility of these videos, it is important for the Court to know that they were seized along with approximately 400 other videos.  This video collection was  comprised, in large part, of tapes of television shows on the History Channel, the Discovery Channel, and various news programs.  It also included a number of commercial videos.  The subject matter of the videos ran the gamut from the

conflict in Chechnya to history generally, war themes in history, and other entirely unrelated matters of general interest. To permit the government to introduce two old videos out of this entire collection would be unfair, misleading, and unduly prejudicial.

**SW-2 Photo of Daveed Gartenstein-Ross**

NO OBJECTION.

**SW-3 Photo of Daveed Gartenstein-Ross inside mosque**

NO OBJECTION.

**SW-4 Photo of Abdul Qaadir**

NO OBJECTION.

**SW-5 E-mail with attachment from Abdul-Qaadir dated 1/04/2000 at 1:00 a.m.**

See objections under SW-7. This exhibit is also cumulative of SW-6.

**SW-6 E-mail with attachment from Soliman Al-But'he to Ashland dated 1/04/00 at 2:32 p.m.**

NO OBJECTION.

**SW-7 E-mail with attachment to undisclosed recipient dated 1/5/2000 at 02:22 a.m.**

Many of the exhibits in the SW category, and many of the exhibits proffered by Mr. Sedaghaty, are e-mails recovered from the computers that were seized on the Al Haramain premises on February 18, 2004. Many of the government's exhibits are hearsay, there is no evidence that Mr. Sedaghaty received them as opposed to anyone else in the organization. Many were sent out to a list-serve. Some were sent out by a generic address. Many contain inflammatory statements so that the specter of unfair

prejudice outweighs any potential relevance.  Anticipating the government's objection to many of his e-mail exhibits, Mr. Sedaghaty raises a blanket objection to the government's e-mail exhibits.

Mr. Sedaghaty objects as this is hearsay.  It is not admissible under Rule 802. The attachment is written by an unidentified declarant.

That this e-mail was found on an Al Haramain USA computer, does not render it an admission by a party opponent.  It does not qualify under Rule 801(2)(A)(B)(C)(D) or (E).  It is not a statement by Mr. Sedaghaty, it is not a statement that he has manifested an adoption or belief in its truth, it is not a statement by a person authorized by Mr. Sedaghaty to make a statement concerning the subject, nor is it a statement by an agent of Mr. Sedaghaty's concerning a matter within the scope of any employment, made during the existence of the relationship.  Nor is this exhibit admissible as any type of business record.

This email is also irrelevant and inadmissible under Rules 401 and 402. Mr. Sedaghaty has a protected First Amendment right to read any information available, including material related to his religion and current events.  The fact that he reads about any particular subject does not make the reading material relevant to these charges.

Even if relevant, it is inadmissible because its probative value is substantially outweighed by unfair prejudice pursuant to Rule 403.  The content of many of the e-mails is inflammatory.  Use of e-mails of this nature invites speculation and a finding of guilt based solely on association.

**SW-8 E-mail from AQ to undisclosed-recipient with attached photos dated**

**1/14/00 at 9:56 p.m.**

See objections under SW-7.

**SW-9 E-mail with attachment from Sunnah dated 1/16/00 4:50 a.m.**

See objections under SW-7.

**SW-10 E-mail from Abdul Qaadir dated 1/20/00 at 07:58 p.m.**

See objections under SW-7.

**SW-11 E-mail from Pete Seda to Al-But'he dated 1/22/00 at 3:00 p.m.**

In the absence of a witness to testify to the context and intent, this statement is inadmissible.  This is not a business record.

**SW-12 E-mail from Abdul-Qaadir dated 1/24/00 at 3:04 a.m.**

See objections under SW-7.

**SW-13 E-mail to Sheeshaan group dated 1/24/00 at 10:35 p.m.**

See objections under SW-7.

**SW-14 E-mail to Sheeshaan group dated 1/24/00 at 10:48 p.m.**

See objections under SW-7.

**SW-15 E-mail with attachment from Bilal to P dated 2/5/00 at 7:08 a.m.**

Mr. Sedaghaty objects to this exhibit because it is inadmissible hearsay.  An e-mail from Bilal which includes an attachment in the form of a letter by an unknown author, is a statement offered for the truth of the matter asserted.

The exhibit is also objectionable because it is irrelevant and inadmissible pursuant to Rule 401 and 402.  There is nothing within the subject matter of the e-mail or the letter attached to the e-mail that relates to the underlying charges in this case.

The letter involves the potential hosting of a website and concerns the author has about the taking of photographs as being against Islam.  Even if relevant, the probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues and should be excluded pursuant to Rule 403.

**SW-16 E-mail to Sheeshaan group dated 2/05/00 at 09:37 p.m.**

See objection to SW-7.  This e-mail, which includes very troubling photographs, was sent to an e-mail list-serve of which Mr. Sedaghaty is a recipient.

**SW-17 E-mail from Qoqaz website to ptichka dated 2/06/00 at 1:06 p.m.**

See objection to SW-7.  This e-mail is a communication between Radmila Balobina and a website regarding her translation work.

**SW-18 E-mail from P to Azzam.com dated 2/12/00 at 3:47 p.m.**

This e-mail is only part of an exchange.  As such, it is inadmissible without the context.

**SW-19 Azzam.com Jihad in Chechnya site February 17, 2000**

See objections under SW-7.

**SW-20 E-mail from the Arborist to Azzam dated 2/17/00 at 1:07 a.m.**

This e-mail is only part of a communication.  It is inadmissible without the entire context.

**SW-21 E-mail from Alshoumar to P dated 2/19/00 at 01:10 a.m.**

Mr. Sedaghaty objects to this e-mail because it is inadmissible hearsay.  It is not a business record within Rule 803(6).

That this e-mail was found on an Al Haramain USA computer, does not render it

an admission by a party opponent.  It does not qualify under Rule 801(2)(A)(B)(C)(D) or

(E).  It is not a statement by Mr. Sedaghaty, it is not a statement that he has manifested

an adoption or belief in its truth, it is not a statement by a person authorized by Mr.

Sedaghaty to make a statement concerning the subject, nor is it a statement by an

agent of Mr. Sedaghaty's concerning a matter within the scope of any employment,

made during the existence of the relationship.  It is inadmissible without a witness to lay

the proper foundation.

**SW-22 E-mail from P to Alharamain dated 2/21/00 at 03:54**

Mr. Sedaghaty objects to this exhibit because it includes inadmissible hearsay

pursuant to Rule 802.  The exhibit does not fall within the business record exception.

**SW-23 E-mail from Al-But'he to Pete dated 2/23/00 at 3:23 p.m.**

See objection to SW-7.

**SW-24 E-mail from the Arborist to Ferhad dated 2/25/00 12:42 a.m.**

This e-mail is inadmissible without context.  It is not an admission by a party

opponent.

**SW-25 E-mail from Alshoumar to Ashland dated 2/25/00 10:59 p.m.**

See objection to SW-7.

**SW-26 E-mail to Sheeshaan group dated 2/25/00 at 11:45 p.m.**

See objections under SW-7.

**SW-27 E-mail to Sheeshaan group dated 2/29/00 at 08:01 a.m.**

See objections under SW-7.

**SW-28 E-mail to Sheeshaan group dated 3/6/2000 at 05:53 a.m.**

See objections under SW-7.

**SW-29 E-mail from the Arborist dated 3/8/00 at 1:31 p.m.**

This e-mail is part of a communication chain and inadmissible without context.

**SW-30 E-mail to Sheeshaan group dated 3/8/00 at 23:22:09**

See objections under SW-7.

**SW-31 E-mail to Sheeshaan group dated 3/22/00 at 10:23 p.m.**

See objections under SW-7.

**SW-32 E-mail with attachment from P to Alshoumar dated 4/12/00 10:38 p.m.**

See objections SW-21.

**SW-33 E-mail to Sheeshaan group dated 5/28/00 at 09:31 p.m.**

See objections under SW-7.

**SW-34 E-mail from Al-But'he to P dated 6/20/2000 at 2:41 a.m.**

Mr. Sedaghaty objects to this exhibit because a portion of the exhibit is communication between an attorney and a client and, therefore, is inadmissible under the attorney-client privilege.

**SW-35 E-mail with attachment from P to Alshoumar dated 8/4/00 at 12:18 a.m.**

See objection to SW-21.

**SW-36 E-mail from P to Sheeshaan dated 9/18/00 at 12:45 a.m.**

Mr. Sedaghaty objects to this exhibit because it is inadmissible and irrelevant under Rules 401 and 402.  Even if relevant, any probative value is outweighed by unfair

prejudice and confusion of the issues and should be excluded pursuant to Rule 403.

**SW-37 E-mail to Sheeshaan group dated 9/20/00 at 12:51 a.m.**

See objections under SW-7.

**SW-38 E-mail from P to Al-but'he dated 10/18/00 at 3:47 p.m.**

NO OBJECTION.

**SW-39 E-mail from P to Alshouas dated 10/18/00 at 6:49 p.m.**

NO OBJECTION.

**SW-40 E-mail to Sheeshaan group dated 11/17/00 at 04:57 a.m.**

See objections under SW-7.

**SW-41 E-mail with attached quickbooks file from P to Shoumar dated 6/12/01 at 12:04 p.m.**

See objection to SW-21. In addition, the inclusion of an "audit trail" report as part of the exhibit is confusing and inaccurate. While a QuickBooks file may have been attached to the e-mail, the government's manipulation of the file to produce an audit trail is inaccurately attributed to the e-mail author, Mr. Sedaghaty.

**SW-42 E-mail to Sheeshaan group dated 9/4/01 at 7:14 a.m.**

See objections under SW-7.

**SW-43 E-mail with attachments from Shoumar to Abo Yunus dated 9/29/01 at 3:28 a.m.**

See objection to SW-21. In addition, the e-mail is not a business record because it addresses a unique problem as compared to a memorandum made in the normal course of business. As to the attachment to the e-mail that is being transferred from Saudi Arabia to the United States, it cannot be considered a business record as

contemplated under Rule 803(6).

**SW-44 Photo of foreign fighters in Chechnya and SW-45 - SW-51**

See objections under SW-7.  In addition, there is no evidence Mr. Sedaghaty

viewed the images.

**SW-52 Word document regarding question 6, interview with Khattab**

See objections under SW-11.

**SW-53 Undated report to Brother Abdul Aziz**

See objection to SW-21.  It is unknown who wrote this document, whether it is

made in the normal course of business or where.  It is not an admissible business

record.

**SW-54 Azzam.com Jihad in Chechnya Russian language site**

See objection under SW-44-51.

**SW-55 Azzam.com Jihad in Chechnya site requesting Russian translators
and SW-56-61**

See objections under SW-7 and SW-44-51.

**SW-62 E-mail from Shoumar to Abo Yunus dated April 2, 2001 at 2:41 a.m.**

See objection to SW-21.  In addition, it is not a business record under Rule

803(6) because this is not a record that would be made in the normal course of

business.

**SW-63 E-mail with attached QuickBooks files from Tom to P dated 1/7/2002
at 1:51 p.m.**

Mr. Sedaghaty objects to the inclusion of the "audit trail" report as part of the

exhibit is confusing an inaccurate.  While a quickbooks file may have been attached to

the e-mail, the government's manipulation of the file to produce an audit trail is inaccurately attributed to the e-mail author, Mr. Sedaghaty.

**SW-64 Floor plan for 3800 S. Highway 99, Ashland, OR**

NO OBJECTION.

**SW-65 E-mail to Sheeshaan group dated 2/15/00 at 9:22 p.m.**

See objections under SW-7.

**SW-66 Photograph of Al-Haramain Islamic Foundation building at 3800 S. Highway 99, Ashland, Oregon**

NO OBJECTION.

**JC-1 Memorandum For Colleen Anderson, Special Agent dated August 4, 2009; JC-2 Appendix A - computer Evidence Trial Exhibits - Documents; and, JC-3 Computer Evidence Trial Exhibits -E-mail**

The government has indicated that it will not be introducing this as evidence in this trial.  Therefore, the defense has no objection at this time.  The defense reserves the right to object to the admission of this exhibit if the government attempts to introduce this at trial.

**EK-1 Al Haramain website article titled "The Latest News About The Jihaad In Chechnya" and EK 2-7**

Mr. Sedaghaty objects to these exhibits as inadmissible hearsay pursuant to Rule 802.  There is no applicable exception that would allow these statements to be introduced.  They appeared on a website of Al Haramain Saudi Arabia.  In the absence of evidence that Mr. Sedaghaty had any control over the content of this site, they cannot be attributed to him.  Nor is there proof that Mr. Sedaghaty actually read of the exhibits.  *See also* objections under SW-7.

**TW-1 Al Haramain Islamic Foundation Transaction Detail by Account for reimbursed expenses, dated 9/19/01**

NO OBJECTION.

**TW-2 Al Haramain Islamic Foundation Transactions by Account for Springfield Building, dated 9/24/01**

NO OBJECTION.

**TW-3 Al Haramain Islamic Foundation Transaction Detail by Account for Contributions Income Unrestricted, dated 10/2/01**

NO OBJECTION.

**TW-4 Copy of check for $21,000.00**

NO OBJECTION.

**TW-5 Copy of check for $131,300.00**

NO OBJECTION.

**FSB-1 Letter from Y.V. Brazhnikov dated 9/03/2008; FSB-1a Translation of Letter from Y.V. Brazhnikov dated 9/03/2008; FSB-2 Interview report of Sergey Ignatchenko dated 12/03/2008; FSB-2a Translation of Interview report of Sergey Ignatchenko dated 12/03/2008**

The government has indicated that it will not be introducing this as evidence in this trial. Therefore, the defense has no objection at this time. The defense reserves the right to object to the admission of this exhibit if the government attempts to introduce this at trial.

**FSB-3 Documents seized by Russian authorities at Kavkaz Institute and FSB 3a and 3b**

The defense objects to this exhibit because there does not appear to be any foundation for this material.

The defense objects to this exhibit because it is inadmissable and irrelevant

pursuant to Rules 401 and 402.  There is nothing in the entire packet of material that

has any bearing on the charges pending against Mr. Sedaghaty, nor is Mr. Sedaghaty

mentioned at all in the materials.  The only reference to Al Haramain is from 1996, at

time completely unrelated to the time in question here.  It appears as if many of the

documents are from a time period around 2003 and 2004.  This is completely outside

the time frame at issue in the indictment in this case, nor is the material in any way

related to Mr. Sedaghaty.  If found to be relevant, the probative value is greatly

outweighed by the prejudice and the confusion that this material would create in this

trial as contemplated by Rule 403.

### DGR-1  Appendix IV, "The Call to Jihad", pages 1223-1244 and DGR-2, Book Excerpt

Mr. Sedaghaty objects to these exhibits because they are irrelevant and

inadmissible pursuant to Rules 401 and 402.  Even if relevant, they are inadmissible

because any probative value is outweighed by unfair prejudice and confusion of the

issues under Rule 403.

### OCC-1 Assumed Business Name - New Registration document

NO OBJECTION.

### OCC-2 Articles of Incorporation of Al Haramain Islamic Foundation, Inc. dated February 11, 1999 and March 8, 1999.

NO OBJECTION.

## IV.    MR. SEDAGHATY'S MARITAL PRACTICES

Mr. Sedaghaty moves in limine to prevent the government from offering evidence

related to his marriages.  There is nothing about the nature of the charges in this case

that requires consideration of Mr. Sedaghaty's marriages.  This lack of probative value

requires them to be excluded under Rules 401 and 402.  Even if Mr. Sedaghaty's marital practices are relevant to the government's case, any probative value will be outweighed by prejudice.  A discussion of his marital practices will inject unnecessary moral and religious issues into the case, inflaming the passions of the jury, and resulting in a verdict based upon allegations of bad character, not evidence under Rule 403.

## V.    FLIGHT

Mr. Sedaghaty left the United States in 2004 before he was indicted in 2005.  In August of 2007, Mr. Sedaghaty voluntarily returned to the United States to face the charges the United States government had brought against him.  He returned, spent some time in custody, and was then released pending trial.  Two and one half years ago, Mr. Sedaghaty has presented no concern regarding flight during this time.  Any mention of Mr. Sedaghaty's departure from the United States, or his passports,  in a manner suggesting that he is a flight risk should be excluded from the evidence in this case.  It is irrelevant and inadmissible pursuant to Rules 401 and 402.  In addition, any probative value is substantially outweighed by unfair prejudice and it should be excluded based on Rule 403.

Submitted this 19th day of April, 2010.


/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Lawrence Matasar
Lawrence Matasar

Michelle Sweet
On the Motion