DWIGHT C. HOLTON, OSB #09054
United States Attorney
District of Oregon
CHRISTOPHER L. CARDANI
Assistant United States Attorney
405 East Eighth Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771
chris.cardani@usdoj.gov
CHARLES F. GORDER, JR., OSB# 912874
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1117
charles.gorder@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Case No.  CR 05-60008-HO |
| | ) |
| v. | ) GOVERNMENT'S RESPONSE TO |
| | ) DEFENDANT'S MOTION *IN LIMINE* |
| | ) |
| PIROUZ SEDAGHATY, | ) |
| | ) |
| Defendant. | ) |

The United States, through its undersigned counsel, herein responds to defendant's Motion *in Limine* (CR 336).

## Contents of Defendant's Hard Drives

One of the categories of exhibits sought to be excluded from evidence at trial by the defendant is that derived from his computers. Since so many of defendant's objections relate to these exhibits, the government responds categorically by addressing this subject below.

From prior filings in this case, the court is aware that, to prove the elements of the charged crimes, the government must establish that the defendant acted willfully when he conspired with co-defendant Al-But'he and others to defraud the United States and cover up the use of the money he received from the Egyptian donor El-Fiki.  The government must prove that when defendant signed and filed the Al-Haramain return with the IRS, he knew it contained materially false entries pertaining to how the $150,000 was utilized by Al-Haramain.  The indictment alleges that defendant conspired with others to attempt to fund the mujahideen in Chechnya, and then tried to cover up his actions by filing the false return.  Some of the most critical evidence to prove defendant Sedaghaty willfully violated the law is the information that was discovered in the deleted files of his computers.  The court is well aware of the background of the computer derived information from the extensive litigation conducted on defendant's suppression motions.

The government will establish at trial that defendant Sedaghaty lived at 3800 S. Highway 99, Ashland, Oregon.  That single family residence also served as a local mosque and contained an office which served as the U.S. headquarters of the Al-Haramain Islamic Foundation, Inc.  Several computer hard drives were seized during the 2004 search warrant.  Much of the information in those drives had been deleted, or the operating system had been reformatted.  This made it very difficult to access any of the contents of the hard drives.

A computer forensic expert was eventually able to resurrect some of the contents of the hard drives.  Those contents will be offered by the government in its "SW" series of exhibits.  As he did in his now-failed suppression motions, the defendant in his

2 - Government's Response to Defendant's Motion *in limine*

present motion *in limine* challenges the admissibility of the majority of the computer derived exhibits.

Many of the computer exhibits are in the form of e-mails defendant received from an Al-Haramain employee in Saudi Arabia who created a news service called "Sheeshan" (meaning Chechnya in Arabic). The government will prove at trial that this Al-Haramain employee, known in the e-mails as the sender "AQ," is an associate of defendant Sedaghaty (and unindicted co-conspirator) named Abdul-Qaadir Abdul-Khaaliq. Abdul-Qaadir is a personal acquaintance of defendant Sedaghaty. He visited and resided with defendant for a time at 3800 S. Highway 99 in Ashland, Oregon. From Saudi Arabia, Abdul-Qaadir used Sheeshan to distribute timely news about the Chechen war from the perspective of the mujahideen fighters. Much of the information Abdul-Qaadir distributed to the Sheeshan group came verbatim from websites devoted to supporting international terrorism and the Chechen mujahideen. Sheeshan recipients were sent frequent updates concerning ongoing battles, details of mujahideen operations, and photos of dead Russian soldiers. Most importantly to this case, many of these messages concerned the funding of mujahideen fighters in Chechnya and were sent to defendant shortly before he received the $150,000 donation from Mr. El-Fiki. For example, government exhibit SW-14 is a January 24, 2000 Sheeshan e-mail containing an interview with "Foreign Mujahideen Commander, Ibn-ul-Khattab." One of the excerpts states:

Q.4   All wars require funding. Chechnya is a small and impoverished country, and in the face of the Russian attacks, expenditures and costs must be considerably higher than normal for a war such as this. From where do you receive your funding, and what is your source of arms?

3 - Government's Response to Defendant's Motion *in limine*

A.4   The Afghans were far more impoverished than their brothers in Chechnya, yet once they took up arms to defend their religion, they never laid them down until they defeated Russia.  The mujahideen in Chechnya are receiving all kinds of support from their brothers and sisters in the Caucasus and from around the world.  The support from Muslims everywhere is tremendous, and its positive effects are evident during the course of battle against the enemy.  Most of our weapons are either captured or purchased from the Russian military....

This e-mail is consistent with many others discovered in defendant's computers.

The government will be able to tie defendant Sedaghaty to the Sheeshan material.  It will be proven at trial that defendant Sedaghaty used the e-mail identifier "p@qf.org."  In SW-36, sought to be excluded by the defense, p@qf.org responds to one of Abdul Qaadir's Sheeshan e-mails by writing the words "Call me."

Another government exhibit, SW-30, is a religious edict, known as a *fatwa*, addressing the need to support the mujahideen in Chechnya.  This *fatwa* is an English translation of the Arabic version which was published on Al-Haramain's website (see government exhibits EK-4 and EK-4a).  It states in part that it is "obligatory upon the Muslims:"

> ... [t]o supply them with weapons and real power with which they are able to strive (on the battlefield) and kill their enemies ... and [s]trengthen them with financial donations, as they are in desperate need of food, clothing and all that (which assists them in becoming) strong and prevents (reduces) the pain of striving and harm, and treating anyone amongst them who has been (struck with) injury or is in pain.

This *fatwa* was sent by Abdul-Qaadir to defendant's computer on March 8, 2000.  Defendant Sedaghaty and co-defendant Al-Buthe withdrew the El-Fiki funds from Al-Haramain's Oregon bank account two days later on March 10, 2000.

Other information located in defendant's computers reflect a great interest in the mujahideen fighting in Chechnya, as well as a desire to help them.  For example, SW-

56 is a lengthy profile on Ibn-ul-Khattab, identified as the Commander of the Foreign Mujahideen in the Caucasus.  Page 6 of that exhibit reflects a November 1999 interview with Khattab.  One of the questions asked of Khattab was:

> Question 6: Do you need any support?  What support in particular do you need?
>
> Answer 6: The Chechen Republic has been surrounded by all sides.  However, the Russian Army is prepared to sell everything for a price.  As for previous affairs of the Muslims, one would always find Islamic charities and organisations present.  I am sorry to say that there is not a SINGLE Islamic charity or organisation active inside Chechnya at present.  Only the Red Cross is present in the Chechen towns and cities.  Therefore, we advise the Muslim countries to take a sincere stand with the Mujahideen in the land of the Caucasus.

The author in SW-11, using p@qf.org (defendant Sedaghaty's personal e-mail address), cut this particular interview question and answer and pasted it into a new e-mail sent to co-defendant Soliman Al-But'he ("Albuthi") on January 20, 2000.  Revealing an intent to assist Khattab, p@qf.org wrote "What support" on the subject line of this e-mail to Al-But'he.

There are numerous computer exhibits like these.  In assessing their admissibility, a few points must be made.  Although there were hundreds of Sheeshan e-mails and other information about the Chechen mujahideen discovered in defendant's computers, the government only selected ones which have a temporal nexus to the charges in the indictment.  Defendant Sedaghaty received the $150,000 El-Fiki donation on February 24, 2000.  Co-defendant Al-But'he flew to the United States two weeks later, retrieved the funds in the form of traveler's checks and a cashier's check, and returned to Saudi Arabia where he quickly cashed the traveler's checks and deposited the cashier's check.  The indictment alleges that defendant Sedaghaty falsely reported this transaction in an Al-Haramain return filed in October 2001.  Many of the Sheeshan

5 - Government's Response to Defendant's Motion *in limine*

e-mails and other Chechen mujahideen-related computer exhibits were selected because they come within the critical time period of January 2000 through October 2001.  This time period best portrays defendant Sedaghaty's state of mind concerning the charges.  Defendant maintains that the incorrect information in the Al-Haramain return he signed was simply a mistake. The government must prove that the errors were not a mistake, but rather, were done on purpose because he knew he was doing something wrong.

## Many of the Computer Exhibits Are Not Being Offered for the Truth of the Matters Asserted

The Sheeshan information in the computer hard drives concerning mujahideen funding is not hearsay because the government is not offering the contents of the exhibits for the truth of the matter asserted therein.  Whether Commander Khattab actually made the statements in the interviews, whether Islamic charities were present in Chechnya, or whether a religious scholar really did issue an edict that all readers must finance the Chechen jihad is not important to the admissibility of the computer exhibits.  What is important is the effect these statements had on the defendant.  In assessing defendant's state of mind on the charged transactions, it is highly pertinent that, just before he received the $150,000 donation for the "brothers in Chechnya," defendant Sedaghaty was reviewing numerous pieces of electronic information pertaining to funding the mujahideen then fighting in Chechnya.  The jury is entitled to look at these challenged exhibits to assess defendant's state of mind when he helped covertly move the $150,000 into Chechnya and later signed the false return sent to the IRS.

6 - Government's Response to Defendant's Motion *in limine*

*United States v. Arteaga*, 117 F.3d 388 (9th Cir. 1997), is highly instructive on the admissibility of the computer exhibits.  There, the Ninth Circuit considered the evidentiary impact of Western Union Money Order forms connecting a defendant to money laundering charges.  The opinion offers a good review on the many "non-truth-related purposes" for which out-of-court statements may be offered.  *Id*. at 397.  One such example is where the contents of a document (or, in our case, the contents of an e-mail or articles about the need to fund the Chechen mujahideen) are not offered to prove the truth of the substantive comments, but rather, to show the impact of the comments on the listener (or, in our case, the reader).  Courts and commentators have referred to this type of use as "legally operative conduct," statements offered for their "effect on hearer," and "circumstantial evidence of state of mind."  *Id*.  Applied to our case, the court need not consider hearsay exceptions when contemplating defendant's objections to these computer derived exhibits.[1]

Additionally, an out-of-court statement (or e-mail) by an alleged co-conspirator can be introduced as a verbal act to establish the nature of the conspiracy.  *United States v. Wolfson*, 634 F.2d 1217, 1219 (9th Cir. 1980).  Thus, e-mails received from Al-Haramain employees such as Abdul-Qaadir ("AQ"), or the Al-Haramain accountant Al-Shoumar can be received if the e-mail is relevant to establishing the nature of "the conspiracy, its objectives, and its *modus operandi*."  Id.

**The Government Will Offer Some of the Computer Exhibits for their Truth**

A limited number of the computer exhibits are being offered, at least in part,

---

[1]FRE 803(3) is also used to establish state of mind through evidence which may otherwise be deemed hearsay.

7 - Government's Response to Defendant's Motion *in limine*

beyond the purposes described above.  For example, when defendant Sedaghaty forwarded Khattab interview question 6 obtained from SW-56, and inserted it into an e-mail he sent to co-defendant Al-But'he in SW-11, along with the added notation of "What support?", the government is offering this communication as an admission under FRE 801(d)(2)(A), an adoptive statement under FRE 801(d)(2)(B), or a co-conspirator's statements under FRE 801(d)(2)(E).  Id. at 395-98.  If received as such, the jury will be able to consider the "What support?" statement as evidence that defendant Sedaghaty communicated his support to provide funding for the Chechen mujahideen.

## Government's Inability to Prove Defendant Read Electronic Information

In his motion *in limine*, defendant complains that the government is unable to prove defendant personally read each of the e-mail or mujahideen funding messages and therefore the evidence should not be admitted.  This particular argument concerns whether the government can meet the authentication requirements under FRE 901.  Under FRE 901(a), the government must establish sufficient proof that the matter in question is what we are claiming it to be.  This may be done through circumstantial evidence.  Once the government is able to make a *prima facie* showing of authenticity, the jury is free to assess the strength of the authenticity proof to evaluate its impact.  See *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985) (once government establishes *prima facie* proof of authenticity, evidence may be admitted; defendant's contrary arguments go to the weight of the evidence).

The government can establish *prima facie* proof that defendant was aware of the electronic evidence of Chechen mujahideen funding and other similar subjects found in his computers.  It will be shown that a limited number of individuals had access to

8 - Government's Response to Defendant's Motion *in limine*

defendant's computers, and that his personal e-mail address was used to forward Chechen mujahideen information along to others.  Defendant also discussed the subject with others.  Any question as to whether defendant personally reviewed or approved each of the messages goes to the weight of the evidence, not their admissibility.

Defendant's objections to the following government exhibits should be denied on the grounds that they can be admitted for purposes beyond the truth of their contents: SW-5, SW-7, SW-8, SW-9, SW-10, SW-11, SW-12, SW-13, SW-14, SW-16, SW-17, SW-18, SW-19, SW-20, SW-24, SW-26, SW-27, SW-28, SW-29, SW-30, SW-33, SW-36, SW-37, SW-40, SW-42, SW-43, SW-44, SW-45, SW-46, SW-47, SW-48, S-49, SW-50, SW-51, SW-52, SW-54, SW-55, SW-56, SW-57, SW-58, SW-59, SW-60, SW-61, and SW-65.

Among these exhibits, the following e-mails from Al-Haramain employee Abdul-Qaadir are also admissible as verbal acts:

SW-5, SW-7, SW-8, SW-10, SW-12, SW-13, SW-14, SW-16, SW-26, SW-27, SW-28, SW-30, SW-31, SW-33, SW-37, SW-40, SW-42, and SW-65.

### Miscellaneous Objections

Defendant presents a series of additional objections to the proposed exhibits.  A response is provided by reference to exhibits which have not been discussed above.

IRS-2       Exhibit will be withdrawn.

JPM-1       Exhibit will be withdrawn.

BOA-6       This exhibit will be part of the government's Rule 404(b) notice in its trial brief.  Briefly, this exhibit, combined with testimony, will show that defendant Sedaghaty lied to his accountant about the disposition of Al-

9 - Government's Response to Defendant's Motion *in limine*

|  |  |
|---|---|
|  | Haramain funds.  It will also demonstrate defendant's intent to lie to the IRS. |
| BOA-9a | As a negotiable instrument, the cashier's check, along with its routing and endorsement information, is self-authenticating.  *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004).  The challenged statement is also an admission of a party opponent, and a co-conspirator statement under FRE 801. |
| BOA-12 &13 | These contain bank account information pertaining to an account controlled by Al-Haramain and co-defendant Al-But'he.  The transactions relate to the purchase of the mosque in Springfield, Missouri, a transaction falsely depicted in the return filed with the IRS. |
| BOA-14, BOA-15, BOA-16 | These exhibits will be part of the government's Rule 404(b) notice in its trial brief.  Combined with testimony, these exhibits show defendant Sedaghaty attempted to fund the mujahideen fighting in Kosovo in 1999. |
| ICE-FinCEN | These exhibits help prove that defendant Al-But'he deliberately concealed his movement of the $150,000 out of the United States.  The indictment charged that as part of the conspiracy, defendants Sedaghaty and Al-But'he tried to conceal from government agencies the fact they were smuggling money out of the country.  U.S. law requires anyone transporting more than $10,000 into or out of the country to file a form called a CMIR.  These exhibits show that Al-But'he knew about these forms and filed them on several occasions, but did not when he moved the |

10 - Government's Response to Defendant's Motion *in limine*

|  | |
|---|---|
| | $150,000 he received from defendant Sedaghaty. |
| RDK-1 & 2 | Defendant challenges these exhibits on the ground that they were obtained from an attorney representing Al-Haramain on a real estate transaction in Springfield, Missouri, and that the privilege prohibits their receipt into evidence. Yet, the privilege is not applicable to these exhibits. In *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009), the Ninth Circuit explained that because the privilege impedes "full and free discovery of the truth," it must be strictly confined within the narrowest possible limits consistent with the logic of its principle. Id. (citations omitted). The fact that a person is a lawyer does not make all communications with that person privileged. *Id.* Instead, an eight part test dictates what is and what is not privileged. A critical factor is that, to be protected, the challenged communications must relate to legal advice actually provided. *Id.* As the Supreme Court has noted, the privilege does not protect underlying facts unrelated to any legal advice provided. *Upjohn v. United States*, 449 U.S. 383, 395 (1981). In our case, RDK-1 and RDK-2 contain no legal advice. Rather, they are factual notes reflecting that the lawyer spoke to defendants Sedaghaty and Al-But'he about a real estate transaction, showing both of them were aware of the details of that transaction. The attorney-client privilege does not bar the admissibility of these exhibits because they contain no legal advice. |
| AHIF-1 | Defendant challenges most of the AHIF series of exhibits. The government will file a separate pleading concerning the admissibility of |

11 - Government's Response to Defendant's Motion *in limine*

these exhibits.

| | |
|---|---|
| SW-1 | These are fund-raising videos seized from defendant's residence. A witness will testify that they depict scenes of mujahideen battles in Chechnya and are from a well known group raising funds for the mujahideen. To conserve trial time, only excerpts will be played for the jury. These two videos were found inside the residence, separately from most of the irrelevant videos referred to in defendant's motion *in limine*, which were found locked up in a trailer outside the residence. |
| SW-15 | Exhibit to be withdrawn. |
| SW-21 | This e-mail is from an Al-Haramain accountant in Saudi Arabia to defendant Sedaghaty. It identifies the accountant as a co-conspirator, establishes the nature of his role, and as such is a verbal act in furtherance of the conspiracy. It concerns financial transactions and is relevant to the indictment. |
| SW-22 | E-mail string between defendant Sedaghaty and co-defendant Al-But'he. It involves communications concerning the El-Fiki transaction. Admissible as admissions and co-conspirator statements under FRE 801. |
| SW-23 | E-mail from Al-But'he to defendant Sedaghaty about charitable organizations concealing terrorist funding from law enforcement. State of mind evidence; not offered for its truth. Also, admissible as admissions and co-conspirator statements under FRE 801. |
| SW-25 | This e-mail is from the Al-Haramain accountant in Saudi Arabia to defendant Sedaghaty and further establishes the nature of the conspiracy. |

12 - Government's Response to Defendant's Motion *in limine*

|  |  |
|---|---|
|  | It concerns financial transactions and is relevant to the indictment. It is also state of mind evidence. |
| SW-32 | E-mail from defendant Sedaghaty to the Al-Haramain accountant. Admissible under FRE 801 as admission or co-conspirator statement. |
| SW-34 | Not offered for its truth. In any event, this exhibit is an e-mail from co-defendant Al-But'he to defendant Sedaghaty and, as such, is an admission and co-conspirator statement admissible under FRE 801. It is relevant because it discusses Al-Haramain's purchase of the Springfield building and demonstrates the involvement of both defendants in the transaction and awareness of the details. It contains no legal advice. |
| SW-35 | Exhibit to be withdrawn. |
| SW-41 | Exhibit to be withdrawn. |
| SW-53 | This is a financial summary discovered in defendant's computers in Ashland, Oregon, prepared for the Al-Haramain accountant Shoumar. It is directly relevant because it speaks to the $21,000 given to Al-But'he, as well as the $131,300 used for the traveler's checks. It is admissible as a co-conspirator hearsay statement under FRE 801. |
| SW-62 | Written by the unindicted co-conspirator Shoumar to defendant Sedaghaty, this computer exhibit contains a discussion about moving funds out of the United States, and how to deal with the IRS. It is admissible under FRE 801. |
| SW-63 | Exhibit to be withdrawn. |
| JC | Jeremy Christianson is the computer forensic expert who successfully |

13 - Government's Response to Defendant's Motion *in limine*

|  |  |
|---|---|
|  | resurrected many of the contents of defendant's deleted hard drives. While his report will not be an exhibit, he will be offering a summary for the jury, showing on which particular hard drive each of the government's exhibits were found, and identifying each type of document found. |
| EK-1--7 | The EK series of exhibits refer to the government's expert on the Chechen war, Evan Kohlmann. Kohlmann has extensively studied the subject of Chechen mujahideen funding, the role of Islamic charities in that funding, and the use of the internet to promote violent jihad and help solicit donations. Kohlmann will be able to authenticate these exhibits as having been propagated by Al-Haramain. It should be noted that some of these exhibits came from the website www.al-haramain.org. When defendant Sedaghaty formed the Al-Haramain Islamic Foundation, Inc. in the United States, and sought tax exempt status, he listed this site as his organization's website. See government exhibit IRS-3, p.1. |
| FSB-3, FSB-3a FSB-3b | These are Russian and English (with translations) seized by the Russian Federation at the Kavkaz Institute, a training camp in Chechnya established by the Islamic Army of the Caucasus and supported by "donations" from Al-Haramain. They are relevant to show the non-charitable nature of Al-Haramain funding in Chechnya. The government requests that the Court defer ruling on the admissibility of these exhibits until government counsel have the opportunity to speak to the Russian witness as trial approaches. |

14 - Government's Response to Defendant's Motion *in limine*

DGR-1  An employee of defendant Sedaghaty named Daveed Gartensteen-Ross will testify that one of his responsibilities as an Al-Haramain employee was to distribute literature to those seeking information, including prisoners. This exhibit, *The Noble Koran*, contained the appendix, "The Call to Jihad (Holy Fighting in Allah's Cause) in the Qur'an." Within this appendix is a defense of using violent acts to spread Islam. This exhibit is not offered for its truth, but to reflect defendant Sedaghaty's state of mind.

DGR-2  Similar to DGR-1, this exhibit, "Islamic Guidelines," was delivered by Al-Haramain in Ashland, Oregon, to others. It states that Jihad is obligatory and may be accomplished by personally engaging in acts of violence, or by funding others to fight. This principle is consistent with the Sheeshan e-mails and other material found in defendant's computers.

### Plural Marriage

The government has no intention of affirmatively using defendant's practice of polygamy against him at trial. However, depending on the nature of the defense, the fact that he was married to certain women located at 3800 S. Highway 99, Ashland, Oregon, may become relevant. For example, if defendant attempts at trial to distance himself from the contents of the computer hard drives, and suggest others were responsible for certain e-mails, then the proximity of those computers to his living area and that of his wives' may become pertinent. Also, another of defendant's wives was translating violent material about the Chechen mujahideen into Russian from 3800 S. Highway 99 in Ashland. Defendant's marital status to her demonstrates his awareness of her activities. Finally, if any of these women testify for the defense, their marital

15 - Government's Response to Defendant's Motion *in limine*

status to him is relevant to show bias.

    DATED this 27th day of April, 2010.

                                      Respectfully submitted,

                                      DWIGHT C. HOLTON
                                      United States Attorney

                                      */s/ Christopher L. Cardani*
                                      By: _____
                                      CHRISTOPHER L. CARDANI
                                      Assistant United States Attorney

                                      */s/ Charles F. Gorder, Jr.*
                                      By: _____
                                      CHARLES F. GORDER, JR.
                                      Assistant United States Attorney