DWIGHT C. HOLTON, OSB #09054
United States Attorney
District of Oregon
**CHRISTOPHER L. CARDANI**
Assistant United States Attorney
chris.cardani@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, OR 97401
Telephone: (541) 465-6771
Facsimile: (541) 465-6316
**CHARLES F. GORDER, JR.**, OSB #91287
Assistant United States Attorney
charles.gorder@usdoj.gov
1000 S.W. Third Ave., Suite 600
Portland, OR 97204
Telephone: (503) 727-1000
Facsimile: (503) 727-1117
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 05-cr-60008-02-HO |
| v. | |
| PIROUZ SEDAGHATY, | GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR AN |
| Defendant. | EVIDENTIARY *DAUBERT* HEARING |

The United States of America, by and through Dwight C. Holton, United States Attorney for the District of Oregon, and Charles F. Gorder, Jr. and Christopher L. Cardani, Assistant United States Attorneys, respectfully submits this response to defendant Pirouz Sedaghaty's motion for an evidentiary *Daubert* hearing.

## BACKGROUND OF EVAN KOHLMANN

The government has retained Mr. Evan Kohlmann as an expert witness in this prosecution. Mr. Kohlmann is a recognized expert in the field of international Islamic terrorism, having qualified as an expert and testified in approximately fifteen federal district court trials, as well as before military commissions at Guantanamo Bay and in several foreign courts, including courts in the United Kingdom, Denmark, Australia, and Bosnia-Herzegovina. Attached as Exhibit 1 is a copy of Mr. Kohlmann's current resume. The government intends to call Mr. Kohlmann to provide expert testimony about several subjects relevant to the case, including the history of the conflict in Chechnya, the historical role of so-called Islamic charities in providing financial support to terrorist activity, the background of the Al-Haramain Islamic Foundation, and the role of certain internet websites in supporting the so-called mujahideen in Chechnya. Kohlmann will also identify photographs, individuals, news articles and maps discovered in defendant's computers and explain their significance to the jury.

## ARGUMENT

Defendant apparently seeks to preclude Evan Kohlmann's testimony in its entirety. His objections lack merit and should be rejected by this Court for the following reasons.

**I.    Mr. Kohlmann is qualified to give the proffered testimony and his testimony rests on a reliable methodology.**

    **A.    Legal Standard**

Under FRE 702 the district court must act as gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The district court's gatekeeping role under FRE

702 extends to nonscientific expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). In addition to the factors listed in FRE 702, such as experience and education, the district court can and should consider other factors, such as whether the expert witness's relevant views have been published or subjected to peer review. *Daubert*, 509 U.S. at 593-94.

A trial judge has considerable leeway when determining the reliability of an expert's proposed testimony. *Kumho Tire*, 526 U.S. at 153; *see also Daubert*, 509 U.S. at 594 ("The inquiry envisioned by Rule 702 is, we emphasize, a flexible one."). "Lack of certainty is not, for a qualified expert, the same thing as guesswork." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). In addition, FRE 702 is "construed liberally" when the trial judge is determining the reliability and "admissibility of [proposed expert] testimony based on some 'other specialized knowledge'" that is not scientific knowledge. *United States v. Hankey*, 203 F.3d 1160, 1167-68 (9th Cir. 2000). The Ninth Circuit has also recognized that with some proffers of nonscientific testimony, "reliability depends heavily on the knowledge and experiences of the expert, rather than the methodology or theory behind it." *Id.* at 1169. Peer review may not always be available when a subject is relatively new. *Primiano v. Cook,* 598 F.3d at 565.

In addition to granting the district court leeway with the "ultimate reliability" determination, the district court has "broad latitude when it decides *how* to determine reliability[.]" *Kumho Tire*, 526 U.S. at 142. In other words, the judge has the discretion to decide whether a separate proceeding is necessary to determine the reliability of the witness's qualifications or his methodology. *Id.* at 152. Given the numerous factors and methods available to determine an expert's reliability, the trial judge's decision to admit expert testimony is reviewed for abuse of discretion. *United States v. Freeman*, 498 F.3d 893, 900-901 (9th Cir. 2007).

**Government's Response to Defendant's Motion for an**
**Evidentiary *Daubert* Hearing** **Page 3**

**B.    Discussion**

Although much of defendant's pleading contains critical references to Mr. Kohlmann's 29-page report in this matter as "boilerplate" or based on "secondary and tertiary sources," counsel wait until the last two pages of their motion to attack Mr. Kohlmann's qualifications.  This reluctance is perhaps understandable given the fact that Mr. Kohlmann has been found to be an expert in this general area in approximately fifteen different federal courtrooms.  Indeed, the Fourth Circuit recently dispatched a similar complaint about Mr. Kohlmann's qualifications in a single footnote:

> [Defendant] also attacks Kohlmann's qualifications as an expert, but those qualifications were obviously substantial and the district court acted well within its discretion in determining that they were sufficient.

*United States v. Benkahla*, 530 F.3d 300, 309, n.2 (4th Cir. 2008), *cert. denied.*, 129 S. Ct. 950 (2009).

These previous rulings are no surprise given Mr. Kohlmann's qualifications.  Kohlmann graduated *magna cum laude* in 2001 from Georgetown University's School of Foreign Service with an honor's degree in international politics, a concentration in international security studies, and a certificate in Islamic studies.  He later received a law degree from the University of Pennsylvania Law School.

Since graduating from Georgetown, Mr. Kohlmann has devoted his life to the study of international terrorism.  He specializes in Al Qaida and related terrorist groups, the role of Arab fighters in conflicts in Afghanistan, Bosnia, Chechnya, Kashmir, and Iraq, terrorist fund-raising and recruitment networks, and the participation of foreign charitable organizations in such networks.

/ / /

Kohlmann spent six years as a consultant with the Investigative Project, a counterterrorism think tank and policy group. He has personally interviewed several notorious terrorists and followed terrorists networks on the internet. He founded Globalterroralert.com in 2004, a clearinghouse of information on international terrorism. Mr. Kohlmann is a consultant for NBC News/MSNBC on international terrorism. In addition, he has worked for about five years as a senior investigator for the Nine/Eleven Finding Answers Foundation, a non-profit organization that researches, analyzes and disseminates information about past and current terrorist activities.

Additionally, Mr. Kohlmann has written numerous articles and papers on the topics of his proposed testimony. His published and peer reviewed works catalog his extensive knowledge concerning international terrorist operations. Mr. Kohlmann also authored a book about the foreign mujahideen in Bosnia that has been used as an academic textbook at several universities in the United States and elsewhere, and was cited in the Final Report of the National Commission on Terrorist Attacks Upon the United States (also known as "The 9/11 Commission Report").

Mr. Kohlmann uses a reliable methodology that results in a sound factual basis for his proposed testimony. He gathers his information from identifiable open sources, including original material from terrorist groups such as video recordings, audio recordings, and communiques issued by terrorist organizations, as well as interviews and statements by terrorist leaders, members and supporters. He also consults reliable secondary materials such as reports by other experts in the field and tertiary sources such as textbooks and newspaper articles by reputable authors. Mr. Kohlmann cross-checks such information with other existing information as a way of ensuring that his conclusions are always consistent with the most reliable sources available. Several federal courts

/ / /

**Government's Response to Defendant's Motion for an**
**Evidentiary *Daubert* Hearing**                                                                                                                        **Page 5**

have specifically upheld Mr. Kohlmann's methodology as reliable and admitted his expert testimony into evidence.

So, for example, in *United States v. Paracha*, 2006 WL 12768 (S.D.N.Y. 2006) (unpublished), Mr. Kohlmann's methodology was challenged by the defendant in a case involving material support for Al Qaida. In rejecting the challenge, District Judge Stein wrote:

> Paracha challenges the reliability of this methodology, characterizing it as a mere culling from a handful of cases and internet reports information that the user deems reliable. Although Kohlmann's methodology is not readily subject to testing and permits of no ready calculation of a concrete error rate, it is more reliable than a simple cherry-picking of information from websites and other sources. The testimony and evidence at the hearing demonstrate that Kohlmann's opinions and conclusions are subjected to various forms of peer review and that the opinions he proposes to offer here regarding al Qaeda's origins, leaders and certain tradecraft are generally accepted within the relevant community. Kohlmann's methodology, as he describes it, is similar to that employed by experts that have been permitted to testify in other federal courts involving terrorist organizations. Whatever the general pitfalls of the "vetting process" that is employed by Kohlmann and others in his field, it is a sufficiently reliable methodology to meet the requirements of Fed. R. Evid. 702.

*United States v. Paracha*, 2006 WL 12768, at * 20 (citations omitted); *Accord*, *United States v. Sabir*, 2007 WL 1373184, at * 8-9 (S.D.N.Y. 2007) (unpublished). In short, Mr. Kohlmann is qualified to testify as an expert in his field.

/ / /

/ / /

/ / /

/ / /

/ / /

**Government's Response to Defendant's Motion for an
Evidentiary *Daubert* Hearing**                                                                                                  **Page 6**

**II.     Mr. Kohlmann's proposed testimony is relevant and helpful to the jury.**

   **A.     Legal Standard**

Federal Rule of Evidence (FRE) 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or date, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

All evidence admitted at trial must be relevant to a material fact and have "probative value." Fed. R. Evid. 402, 403; *Daubert*, 509 U.S. at 597 (requiring that all expert testimony be "relevant to the task at hand"). Expert testimony is relevant and probative when it helps the jury understand other evidence or assists the jury with its fact-finding function. Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 591-592 (requiring expert testimony to have a "connection to the pertinent inquiry").

The Federal Rules of Evidence normally allow expert witnesses to testify regarding ultimate issues in a case. Fed. R. Evid. 704(a). An expert witness may not, however, give an opinion "as to whether the defendant did or did not have the mental state . . . constituting an element of the crime charged[.]" Fed. R. Evid. 704(b) (emphasis added). But an expert witness may testify regarding a "predicate matter, even if the jury might infer the necessary mens rea from such testimony, so long as the testimony . . . does not necessarily imply the mens rea element." *United States v. Morales*, 108 F.3d 1031, 1033 (9th Cir. 1997).

/ / /

/ / /

**B.     Discussion**

Expert testimony is necessary in this case to help the jury understand the evidence. Defendant is charged with conspiracy to defraud the United States and with filing a false tax return. The government's proof that these offenses were committed willfully involves evidence that defendant and his co-conspirators at Al-Haramain desired to assist the mujahideen fighting Russian forces in Chechnya, attempted to do so, and then determined to hide this support from the authorities by filing a false tax return and not reporting the currency leaving the United States.

Defendant seeks to exclude Mr. Kohlmann's testimony by asserting that the allegations and facts of other cases where this witness has offered his expert testimony were different than the allegations in this case. Although not completely accurate,[1] that assertion assumes an absurd legal principle. There is nothing in Rule 702 or in relevant case law which limits an expert to testifying in only one type of criminal case. Otherwise, no one would ever testify as an expert witness more than once, since ultimately all criminal cases are different factually from one another. The critical question under Rule 702 is whether the witness's testimony can assist the trier of fact.

Although most jurors are presumably generally familiar with the terms "Al Qaida" or "Osama bin Laden," they cannot be expected to know much, if anything about Chechnya, including the basic history of the conflict between the Russian government and Chechen rebels, or to understand the role of the so-called mujahideen and its Arab leaders in that conflict. Nor will they know the practices of certain Islamic "charities" in funding such "holy warriors," the background of the Al-Haramain organization and its support for terrorist financing, or the use of the internet to

---

[1] Some of the cases in which Mr. Kohlmann has appeared have involved issues concerning Chechnya, Islamic charities, or the American Islamic Group.

**Government's Response to Defendant's Motion for an**
**Evidentiary *Daubert* Hearing**                                                                                          **Page 8**

support the mujahideen and to raise funds for these fighters. Evan Kohlmann is a recognized and well-qualified expert in all of these fields.

The government plans to introduce various types of evidence relating to Al-Haramain's support for the mujahideen in Chechnya and defendant's involvement with it, including the following:

1. Relevant to paragraphs E-G of the Introductory Allegations of the indictment, evidence about violent jihad, the existence of "mujahideen," and the diversion of charitable donations or "zakat" by so-called Islamic charities to support terrorist activity, including the history of the Al-Haramain organization in that regard;

2. Relevant to paragraph H of the Introductory Allegations of the indictment, a brief history of the modern conflict in Chechnya, with particular emphasis on the role of the Islamic Army of the Caucasus (the "Chechen Mujahideen"), some of the mujahideen's foreign leaders such as Ibn ul-Khattab and Abu Umar, and the military training camp in Chechnya established by them called the Kavkaz Institute;

3. Copies of some of Al-Haramain USA's computer files containing, inter alia, messages from the Chechen mujahideen leaders requesting financial support, updates from the Chechen mujahideen on the fighting in Chechnya, and pictures of Chechen mujahideen leaders, maps of the fighting and reports from the battlefield, much of which is derived from notorious terrorist websites such as qoqaz.net., qoqaz.com, and azzam.com;

4. Evidence of the distribution by Al-Haramain personnel in Saudi Arabia to an e-mail group which included defendant called "Sheeshan" (Chechnya" in Arabic) of material supporting the Chechen mujahideen. Some of this material was taken by Al-Haramain directly from terrorist

websites which were devoted to supporting the jihad in Chechnya. Mr. Kohlmann can also identify and explain the significance of the publication and distribution by Al-Haramain of "fatwas" stating that it was the duty of all Muslims to provide financial support to the Chechen mujahideen; and

5.  Videos defendant owned which were produced by the American Islamic Group depicting violent jihad in Chechnya and Bosnia, and suggesting that money be donated to the Chechen mujahideen.

Mr. Kohlmann's proposed testimony will provide critical background and context necessary for the jury to weigh and evaluate this evidence to determine whether defendant and others conspired to file a false tax return and fail to report the currency leaving the country.

The jury must understand the nature of the conflict in Chechnya to make this determination. To that end, Mr. Kohlmann's background testimony about Chechnya and terrorist websites such as qoqaz.net is critical to the jury's understanding of the case. Similarly, the activities of the foreign mujahideen in Chechnya and the role of the leaders Ibn ul-Khattab and Abu Umar is crucial for the jury to understand the nature and significance of defendant's computer files and certain videos owned by defendant.

The jury must also understand how terrorist organizations use charities to launder money and solicit support for their "jihad" to determine whether defendant acted willfully. Thus, Mr. Kohlmann's testimony about the structure and operation of Al-Haramain and other charities used by terrorists is essential for the jury to understand defendant's motive to file a false return. This background testimony establishes a crucial connection between two seemingly unrelated events: defendant's filing of a false tax return and his possession of computer files glorifying the activities of the Chechen mujahideen. Additionally, testimony about how terrorist organizations use

the Internet to disseminate ideas and solicit financial support will help the jury understand the significance of messages posted to the websites Azzam.com and Qoqaz.net, thus providing context for defendant's online activities.

The proffered testimony does not include an opinion regarding defendant's mental state. Mr. Kohlmann will not impermissibly testify as to whether the defendant acted willfully. The proffered testimony merely allows the jury to draw its own inference about whether defendant did so or acted by mistake.

## CONCLUSION

For the foregoing reasons, defendant's motion to exclude expert testimony should be denied. The proffered testimony is admissible and the witness is qualified to testify as an expert.

Dated this 27th day of April 2010.

                                  Respectfully submitted

                                  DWIGHT C. HOLTON
                                  United States Attorney

                                  /s/ *Charles F. Gorder, Jr.*
                                  CHARLES F. GORDER, JR.
                                  Assistant United States Attorney

                                  /s/ *Christopher L. Cardani*
                                  CHRISTOPHER L. CARDANI
                                  Assistant United States Attorney