Steven T. Wax, OSB No. 85012
Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Email: steve_wax@fd.org

Lawrence Matasar, OSB No. 74209
621 SW Morrison Street, Suite #1025
Portland, OR 97205
Tel: (503) 222-9830
Email: larry@pdxlaw.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                Plaintiff,<br><br>      v.<br><br>PIROUZ SEDAGHATY,<br><br>                               Defendant. | CR 05-60008 HO<br><br>DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE AND PLAINTIFF'S RESPONSE TO DEFENDANT SEDAGHATY'S PROPOSED TRIAL EXHIBITS |

       The government has moved *in limine* against aspects of the defense case. Mr. Sedaghaty opposes five of the six aspects of the government's motion. In this pleading,

he also responds to the government's pleading regarding Mr. Sedaghaty's trial exhibits. The issues raised in the government's pleadings are similar. In addressing the evidentiary issues in this case, the following is paramount.

It is axiomatic that "'forbidding the jury to consider evidence that might negate willfulness would raise a serious question under the Sixth Amendment's jury trial provision.'" *United States v. Powell,* 955 F.2d 1206, 1214 (9th Cir. 1992) (quoting *United States v. Cheek,* 498 U.S. 192, 203 (1991)). Therefore, "[i]n a case ... where the element of willfulness is critical to the defense, the defendant is entitled to wide latitude in the introduction of evidence tending to show lack of intent." *United States v. Gaskell,* 985 F.2d 1056, 1063 (11th Cir. 1993) (quoting *United States v. Garber,* 607 F.2d 92, 99 (5th Cir. 1979) (en banc)) (alterations in original); *see also United States v. Collorafi,* 876 F.2d 303, 305 (2d Cir. 1989) (Where willfulness is at issue, "trial courts should follow a liberal policy in admitting evidence directed towards establishing the defendant's state of mind. No evidence which bears on this issue should be excluded unless it interjects tangential and confusing elements which clearly outweigh its relevance.").

**INTRODUCTION**

**I.     EVIDENCE RELATING TO THE FOREIGN POLICY OF THE UNITED STATES**

The government's request that the Court preclude witnesses from testifying about the "foreign policy affairs of the United States" completely misses the point of the exhibits Mr. Sedaghaty has marked that relate to the war in Chechnya. The exhibits are relevant and admissible for at least three reasons. First, the government's exhibit list contains a series of emails that discuss the war in Chechnya, both in words and photographs. Their

exhibit list also includes two videos involving the first Chechen war. The government's argument will be that the mere presence of this material on the Al Haramain computers or premises is indicative of Mr. Sedaghaty's desire to fund the Chechen mujahideen.

The exhibits Mr. Sedaghaty has marked and evidence he intends to elicit from expert witnesses is necessary to rebut that inference. Mr. Sedaghaty's interest in Chechnya was not extreme, not out of the mainstream, and for those reasons is in no manner indicative of a desire to fund the mujahideen. The reality is that concern about Russian brutality in Chechnya in 1999, 2000, and 2001, was mainstream and shared by many people. That evidence is found in media articles and statements by high government officials. Those comments are not offered to state any official position of the United States foreign policy.

The second reason why the evidence Mr. Sedaghaty has marked and the testimony he intends to elicit is relevant is to rebut the testimony of the government's proposed expert, Evan Kohlmann. In his report, Mr. Kohlmann provides a one-sided and incomplete account of the Russian/Chechen wars. Mr. Kohlmann's sources are primarily derived from internet accounts and other secondary sources. It is necessary for Mr. Sedaghaty to rebut that evidence. Among other things, the exhibits Mr. Sedaghaty has marked are entirely appropriate subject matter for cross-examination of Mr. Kohlmann to determine the fairness and accuracy of his research and awareness of other points of view.

Third, the world changed after the events of September 11, 2001. The change included a new perception of Islam, concern about radical Islam, the bona fides of Islamic charities, and the nature of the conflict between Russia and Chechnya. Jurors will be

bringing post-9/11 views into the jury box with them. It is critical that they understand the context in which Mr. Sedaghaty's interest in Chechnya and concern for the Chechen population existed.

Mr. Sedaghaty does not intend to belabor, at trial, any of the points set out above. He has marked a relatively small number of exhibits and intends reasonable lines of questioning.

## II.     INTERVIEWS WITH DEFENDANT SEDAGHATY

The testimony of Agents Carroll and Boyer is relevant for at least four reasons. First, during the conversation on or about September 15, 2001, Mr. Sedaghaty discussed the purchase of the Springfield property and the money that Al Haramain put into it. Contrary to the government's assertions, this is neither hearsay nor irrelevant.

Second, Mr. Sedaghaty met with Agent Carroll not only on September 15, 2001, but a number of times shortly thereafter. These meetings occurred on Mr. Sedaghaty's own initiative. They occurred during the time frame in which the tax return was being prepared and in which Mr. Wilcox alleges that there was a discussion with Mr. Sedaghaty. The fact that Mr. Sedaghaty initiated contact with the agents and offered to provide assistance goes directly to his state of mind and the *mens rea* elements in the case. They are, in addition, facts that a defense expert on terrorism finds highly relevant.

Third, the FBI not only interviewed Mr. Sedaghaty prior to the filing of the tax return, but also subpoenaed documents prior to its filing. The jury has a right to know about the inception of the investigation of Mr. Sedaghaty and the fact that a grand jury was utilized by the government to gather information, when, and why.

Fourth, as Mr. Sedaghaty has repeatedly argued, the Oregon investigation did not operate independently. The fact that the case number on the initial interview is the case number utilized by the September 11 investigation out of New York City is relevant. Even in the face of the government's assertion that the local agents were unaware of defendant's earlier involvement in attempting to send money to the Chechen mujahideen at the time of the first interview, it is clear from the use of the 9/11 case number and other information that the initial visit to Mr. Sedaghaty was part of a nationwide effort. Mr. Sedaghaty is entitled to inquire into the basis for the decision to investigate him.

## III. REFERENCES TO THE TERRORIST SURVEILLANCE PROGRAM

It has now been established by Judge Walker's decision that the government engaged in illegal conduct with respect to Al Haramain USA and the co-defendant in this case, Soliman Al Buthe. That finding corroborates and underscores all the other information previously presented to this Court regarding the Terrorist Surveillance Program. The Court has information that, in all likelihood, the TSP began long before 2004. The fact that Mr. Sedaghaty's organization was subjected to unlawful surveillance is relevant for several reasons.

In the cross-examination of the government expert, it will be shown that he uses solely secondary and tertiary sources. It is critical for the jury to know that there are primary sources available and it is not receiving the best evidence from the government.

The facts are also relevant to cross-examination of the government expert with respect to the testimony the government seeks to introduce from the Russian FSB and of the Russian FSB agent upon whom Mr. Kohlmann relies. They will both be talking about

an allegedly intercepted communication. The jury has a right to know that the United States' government was engaged in similar surveillance activity and that it is not presenting any such evidence. It is important for the Court to note that the government exhibits include, in the FSB series, information relating to events in 2003 and 2004, including the same time period of the unlawful activity discussed in Judge Walker's opinion.

Mr. Sedaghaty will be asking the Court to provide the jury an instruction that says a reasonable doubt can arise from the evidence or lack of evidence. He is entitled to show the jury that additional evidence should be available to it from the government but is not being provided.

## IV. LENGTH OF TIME BETWEEN TRANSACTION AND PROSECUTION

The government states that "at this time" it "does not intend" to "affirmatively" offer evidence of defendant's flight. It is not clear, however, if it is saying that it will not offer any such evidence in its case in chief or at any time during the case. If flight and return evidence are to be out of the case entirely, Mr. Sedaghaty would not need to introduce evidence of his voluntary return to face the charges. If the government changes its mind, or if there is a question about the implications of some of the evidence offered by the government, the defense may need to present evidence explaining the length of time taken by this case and that Mr. Sedaghaty voluntarily returned to the United States.

## V. REFERENCE TO DEFENDANT'S ATTEMPTS TO CONDEMN OSAMA BIN LADEN, THE BOMBINGS OF THE U.S. EMBASSIES IN EAST AFRICA, AND THE TERRORIST ATTACKS OF SEPTEMBER 11, 2001

Mr. Sedaghaty's statements with respect to Bin Laden, the bombings of the U.S. embassies, and the terrorist attacks of September 11, 2001, are relevant for several

reasons. First, all go directly to his state of mind and the willfulness element of the case. Second, his efforts to get Al Haramain Saudi Arabia to take a position, inconsistent with the position on terrorism that the government ascribes to it, is critical for the jury to understand that Mr. Sedaghaty was not a pawn of Al Haramain Saudi Arabia and that he spoke up against some of their alleged policies or actions.

It is important for the Court to be aware in this regard that among the government's exhibits are emails and website pages that contain inflammatory material. These emails and website pages were not produced by Mr. Sedaghaty, but the government will be asking the jury to infer his support for the positions taken therein. Direct evidence that he did not support those positions but, rather, condemned the use of force and terror goes directly to the heart of the willfulness issue in this case. Finally, the fact that the statements were made is not hearsay.

## VI.  CLASSIFIED EVIDENCE

Mr. Sedaghaty anticipates filing another CIPA notice in the near future in which he will comply with the CIPA §5 requirements regarding the testimony he seeks to offer.

## VII.  REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT SEDAGHATY'S PROPOSED TRIAL EXHIBITS

The government's Motion in Limine and response to defendant Sedaghaty's proposed trial exhibits raise similar issues. In addition to the Sixth Amendment issues raised at the outset of this pleading, consideration of the evidentiary motions should take place with notions of reciprocity clearly in mind. As the Supreme Court held in *Wardius v. Oregon*, 412 U.S. 470, 476-77 (1973), failure to treat evidentiary matters with reciprocal evenhandedness violates due process. In its pleadings, the government is moving against

exhibits that have even greater relevance than exhibits it is seeking to introduce. It is moving against exhibits as untimely or without proper foundation when it is seeking to introduce exhibits that suffer far more serious defects. As the Ninth Circuit said in *United States v. Bay*, 762 F.2d 1314, 1315 (9th Cir. 1985), "sauce for the goose is sauce for the gander" (discussing potential error in trial court's refusal to allow defendant to show jury his hands without testifying). Review of a few examples will suffice to illustrate the point.

The government is attempting to introduce an Exhibit from the FSB that relates to events that took place in 2004 between Al Haramain Saudi and the Kavkaz center. In its motion, however, the government raises an objection to defense exhibits based on temporal relevancy. Nearly all of the exhibits proposed by Mr. Sedaghaty fall within the time period alleged in the indictment (late 1999 to October 2001) or are from a time period in close proximity to the signing of the tax return in October 2001. For example, Mr. Sedaghaty made great efforts to conduct community outreach in November 2001 and in early 2002. These efforts directly reflect his state of mind at the time in question. There is nothing about the much later Russian document purporting to provide information regarding Al Haramain Saudi in 2004 that is relevant in any way to Mr. Sedaghaty and his intent or actions in 2001.

In the same vein, while the government is relying on a transaction that took place in 1999 as F.R.E. 404(b) evidence (the check Mr. Sedaghaty sent to Albania from the Arborist account), the government objects to evidence of Mr. Sedaghaty's efforts to get aid to people in Palestine in 2002. His efforts in 2002 are closer in time to the October 2001 transaction at issue in this case than his donation in 1999. If the Court finds that the 1999

**Page 8 DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION IN LIMINE AND PLAINTIFF'S RESPONSE TO DEFENDANT SEDAGHATY'S PROPOSED TRIAL EXHIBITS**

transaction is relevant as 404(b) evidence, then Mr. Sedagahaty's efforts in 2002 are equally or more relevant. Indeed, because they show Mr. Sedaghaty following through on the same efforts to lead a convoy as he had attempted with the El Fiki donation for Chechnya, the efforts are more relevant.

Another of the general objections the government makes is in regards to inadmissible character evidence. However, the exhibits put forth by the defense are not character evidence. The evidence that the government must be referring to goes to Mr. Sedaghaty's state of mind. For example, the government intends to introduce e-mails sent to Mr. Sedaghaty's e-mail address via the Sheeshan email list. These are e-mails that Mr. Sedaghaty's e-mail address received. Nobody at Al Haramain ever responded to or forwarded most of their emails. The government is attempting to introduce those list serve e-mails without any proof that Mr. Sedaghaty read or saw them. Mr. Sedaghaty has listed many e-mails and letters that directly reflect his state of mind and are relevant to the issues in this case. Yet the government objects to several exhibits that Mr. Sedaghaty has listed because there is inadequate foundation they were reviewed by Mr. Sedaghaty or any one at Al Haramain. Again, there is a need for symmetry.

In addition, the government objects to many of the defense exhibits as inadmissible hearsay. The government is not specific as to which exhibits it is referring to regarding its hearsay objection. It is important to note that many times out of court statements are made and offered, not as hearsay, but simply as non-hearsay out-of-court statements. *See* Fed. R. Evid. 801(c). These "generally fall into certain patterns. These patterns include: (1) statements offered for the effect on a listener, (2) verbal acts or operative facts; (3) state

of mind; and (4) prior inconsistent statements used for impeachment." Weissenberger's Federal Evidence 2010 Courtroom Manual, Ch. 801 at 281  *See e.g., United States v. Wright*, 783 F.2d 1091 (D.C. Cir. 1986) (statement is not hearsay if offered to show state of mind of hearer).  Without an objection to a specific exhibit, it is impossible to address this concern in a context that is useful for the Court in this pleading.  However, many of the proposed defense exhibits include statements that bear directly on state of mind.  These statements are not inadmissible hearsay.

As noted at the outset, it would violate the Sixth Amendment to limit Mr. Sedaghaty's right to present evidence that "might negate willfulness."  The standard is "might" not "would."  *Powell,* 955 F.2d at 1214 (quoting *Cheek*, 498 U.S. at 203).  With respect to this type of evidence, a defendant must be given "wide latitude."  *Gaskell,* 985 F.2d at 1063.

Any concern the government has regarding foundation and authentication is again, nearly impossible to address without a specific objection.  For example, one such concern the government may have regarding foundation and authentication are the "SJRC" documents.  These documents are admissible under several rules of evidence.  One rule of evidence, Fed. R. Evid. 902(3), applies the concept of self-authentication to foreign public documents.  Rule 902(3) states in relevant part, "If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification."

The SJRC documents are public documents of the government of Saudi Arabia.

Mr. Sedaghaty has attempted to obtain the certification of these documents through this Court and the process of a letters rogatory request, the government's resources, and through use of the Embassy.  This request was denied in part, though the rogatory request is pending.  The government has been provided notice that Mr. Sedaghaty intends to introduce these documents into evidence and the government has had a reasonable opportunity to investigate the authenticity of these documents.  *See United States v. Yousef*, 175 F.R.D. 192, 193 (S.D.N.Y. 1997).

The government should be required to address each proposed exhibit and express the specific objection it has regarding each exhibit.

## VIII.    CONCLUSION

Mr. Sedaghaty respectfully requests that the Court deny the government's Motion in Limine and the Objections to the vast majority of his proposed exhibits.

Respectfully submitted on April 27, 2010.

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Lawrence Matasar
Lawrence Matasar