Steven T. Wax, OSB No. 85012
Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR  97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Email: steve_wax@fd.org

Lawrence Matasar, OSB No. 74209
621 SW Morrison Street, Suite #1025
Portland, OR 97205
Tel: (503) 222-9830
Email: larry@pdxlaw.com

**Attorneys for Defendant**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>                                  Plaintiff,<br><br>                    v.<br><br>**PIROUZ SEDAGHATY,**<br><br>                                  Defendant. | CR 05-60008 HO<br><br>**SUPPLEMENTAL AUTHORITY RE: MOTION TO SUPPRESS, MOTIONS FOR DISCOVERY, CIPA NOTICE, AND EVIDENTIARY MOTIONS** |

Page 1 -    SUPPLEMENTAL AUTHORITY RE: MOTION TO SUPPRESS, MOTIONS FOR
                 DISCOVERY, CIPA NOTICE, AND EVIDENTIARY MOTIONS

Defendant, Pirouz Sedaghaty, through his attorneys, Federal Public Defender Steven T. Wax, and Lawrence Matasar, hereby brings to the Court's attention the decision of the United States Court of Appeals for the Ninth Circuit filed on May 4, 2010, in *United States v. Stever*, No. 09-30004, 2010 WL 1757926 (9th Cir. May 4, 2010) (attached as Exhibit A). Both parts of *Stever* – the holding with respect to discovery under Rule 16 and the holding on the defendant's right to present a defense under the Sixth Amendment – are directly applicable to the issues raised in Mr. Sedaghaty's discovery motions, including those related to discovery of classified material set out in earlier pleadings and most recently in the Third Supplement to First Motion for Discovery filed from the secure facility on April 27, 2010, the Third CIPA §5 Notice, the currently pending evidentiary motions, and the motions to suppress.

In his pleadings throughout this case, Mr. Sedaghaty has argued that he is entitled to and sought to introduce evidence of: 1) the nature and content of his communications with people regarding Al Haramain, Chechnya, and support of or lack of support for, the mujahadeen; 2) the relationship between Al Haramain Saudi Arabia and Al Haramain Ashland; 3) the trust, or lack of trust, that would have existed between Al Haramain personnel in Saudi Arabia and himself; 4) how the money donated by Mr. El Fiki was handled in Saudi Arabia; 5) the extent of control over the El Fiki donation and other Al Haramain monies intended for Chechnya by the government of Saudi Arabia; 6) the involvement of the governments of the United States and Saudi Arabia in funding Chechen mujahadeen; 7) Mr. Sedaghaty's efforts to get aid to Chechen refugees; 8) Mr. Sedaghaty's efforts to get aid to other Muslims in need; and, 9) the relationship between

unlawful government surveillance of Al Haramain and the decision to seek a search warrant.

Mr. Stever was charged with a marijuana grow operation. He sought "discovery materials related to the operations of Mexican DTOs." 2010 WL 1757926 *3. Stever claimed that the government was in possession of law enforcement reports, officer training materials, and other documents bearing on the operations of Mexican DTOs in Eastern Oregon and California. He cited news reports and ongoing prosecutions and noted that Detective Mogel averred in his search warrant affidavit that his training had familiarized him with "investigations of drug trafficking organizations." *Id.*

Mr. Stever argued that the documents he sought were necessary for three reasons:

1) to rebut the inference that the owners of the property must have been involved;

2) to buttress the inference that the operation was run by Mexican DTOs by showing their common characteristics;

3) to corroborate evidence "that Mexican DTOs are secretive and familiar and so are unlikely to have involved a local Caucasian in their operations."

In rejecting his arguments, the district court held "that evidence about who else was responsible for the grow is not relevant to assessing the likelihood that Stever was involved." 2010 WL 1757926 *4.

In reversing the district court, the Circuit reinforced that "evidence is relevant if it has '*any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.* (emphasis in opinion).

Page 3 -    SUPPLEMENTAL AUTHORITY RE: MOTION TO SUPPRESS, MOTIONS FOR DISCOVERY, CIPA NOTICE, AND EVIDENTIARY MOTIONS

The Ninth Circuit found that the requested evidence should have been disclosed. It was, however, handicapped in its efforts to determine whether a new trial was required based on a discovery violation because the material was not available to it. As a result, the Court turned to the Sixth Amendment right to present a defense and found that the district court's rulings had precluded Mr. Stever from presenting the defense he was entitled to under the Sixth Amendment.

The holdings and discussion in *Stever* are directly relevant to a number of aspects of Mr. Sedaghaty's case. First, the information Mr. Sedaghaty has presented in the form of the government's avoidance of its discovery responsibilities in the *Al Timimi* case, the reports of the Inspectors General regarding the government's failings in providing classified discovery to its own AUSAs in the field, Col. Lang's declaration and other media accounts that Mr. Sedaghaty has presented to this Court regarding other specific failings of the government in terms of discovery of classified material, are equally or more compelling than the news reports and ongoing prosecutions presented to the court in *Stever*. 2010 WL 1757926 *7.

Similarly, the information Mr. Sedaghaty has presented regarding the subject matter of Judge Walker's ruling in the *Al Haramain* civil case regarding unlawful activity and the information linking the investigation in the Al Haramain civil/OFAC matters and the criminal investigation through statements of government officials are, again, equally or more compelling than the material presented by Mr. Stever in support of his efforts to obtain discovery about unspecified Mexican drug trafficking organizations. Mr. Sedaghaty's Fourth and Sixth Amendment rights have been violated in much the same manner as were

Mr. Stever's by his inability to present, at the Motion to Suppress, the information that he is confident the government possesses concerning the information that prompted the government to seek a search warrant under *Murray*.

*Stever* is equally on point with respect to the trial defenses as articulated in Mr. Sedaghaty's CIPA motions, the expert reports from Col. Lang, and his proffered exhibits. Paraphrasing *Stever*, "the documents could corroborate Mr. Sedaghaty's evidence that Al Haramain Saudi Arabia, a Sunni organization, would be unlikely to have involved an American citizen of Shia descent in its operations."

In the same vein, Mr. Sedaghaty's desire to introduce evidence of his efforts to provide money to other refugees and his anti-violence and anti-terrorism statements are directly relevant to the willfulness issue in the case. Certainly they have "any tendency" to make the absence of willfulness "more probable."

With respect to Mr. Sedaghaty's proffer of exhibits and testimony regarding Saudi Arabian government involvement in, and control over, the money once it left the United States, these exhibits make it less likely that Mr. Sedaghaty had any involvement in the ultimate distribution of the money. This critical defense evidence concerning the Saudi Arabian government is necessary to rebut the prosecution's evidence from the Russian government.

In the same vein, testimony regarding funding sources for Chechen mujahadeen is relevant to the question of whether Mr. Sedaghaty defrauded the United States

government.[1] If, even unwittingly, the El Fiki money was sent to Chechen mujahadeen (an allegation we dispute), and that was a policy the United States government was supporting, Mr. Sedaghaty would not have been engaged in any fraud against this country.

The remoteness of the evidence of the ultimate disposition of the money in this case is also a factor supporting wide latitude to Mr. Sedaghaty. In *Stever*, as here, "the crime occurred in a remote location, and little evidence bore directly on which individuals were involved." *Stever*, 2010 WL 1757926 *7.

The fact that much of the evidence Mr. Sedaghaty seeks would come in through an expert is also addressed is *Stever*. Mr. Sedaghaty should be permitted to bring in expert testimony regarding the manner in which funds were disposed of by Al Haramain and the Saudi Arabian government in Chechnya. As stated in *Stever*, the defendant "could have introduced government reports into evidence, and his proffered expert could have elaborated on the information therein." 2010 WL 1757926 *7

The *Stever* opinion articulates and corrects what has often been an imbalance in the law. For many years, the government has been permitted to use opinion testimony and testimony based on "specialized knowledge" to argue that certain criminals and criminal organizations operate in particular ways, and then ask the jury to drawn an inference from that testimony to acts of the defendant. Defendants have, however, often been precluded from presenting evidence that they either did not know about certain activity, did not participate willfully in it, or did not participate in it at all.

---

[1]There is public reference to U.S. government funding of Chechen fighters. Further context for this paragraph is found in Mr. Sedaghaty's classified pleadings.

**Page 6 -    SUPPLEMENTAL AUTHORITY RE: MOTION TO SUPPRESS, MOTIONS FOR DISCOVERY, CIPA NOTICE, AND EVIDENTIARY MOTIONS**

*Stever* makes clear that the discovery rules and the Sixth Amendment require a more even-handed treatment than has often been reflected in the cases. As stated in *Stever*, evidence which is logically relevant should not be excluded merely because such evidence is "in truth calculated to cause the jury to doubt," and because the trial court opines that "this doubt is purely speculative and fantastic." Rather, the Sixth Amendment requires that trial courts "should afford the accused every opportunity to create that doubt." *Stever*, 2010 WL 1757926 *5.

Finally, as this Court has previously been advised through other pleadings, one of the issues to be strenuously contested in this case involves the willfulness and *mens rea* elements of both counts. Mr. Sedaghaty has marked numerous exhibits that go directly to the *mens rea* element. The government has moved against most of those exhibits. Applicable here is the statement in *Stever* that:

> This court has found constitutional error where a district court erroneously excluded evidence intended to refute the prosecution's theory of motive . . . and also where the misapplication of the hearsay rules resulted in the exclusion of evidence that contradicted the theory of the prosecution for tax evasion . . . (citations omitted).

2010 WL 1757926 *6. Should the Court sustain the government's efforts to preclude Mr. Sedaghaty from introducing the numerous statements that bear on the willfulness issue, Mr. Sedaghaty would be deprived of his Sixth Amendment right to present a defense.

**CONCLUSION**

For all the reasons set forth herein and in the pleadings previously submitted on the various issues discussed in this pleading, the Court should revisit the rulings on the Motions for Discovery and the Motion to Suppress, grant Mr. Sedaghaty's most recent

Motion for Discovery, allow him to proceed with the evidence proffered through the CIPA notice, and deny the government's objections to the exhibits he has entered.

Respectfully submitted this 6th day of May, 2010.

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Lawrence Matasar
Lawrence Matasar