# EXHIBIT A

Only the Westlaw citation is currently available.

United States Court of Appeals,
Ninth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Andrew STEVER, Defendant-Appellant.
**No. 09-30004.**

Argued and Submitted Dec. 9, 2009.
Filed May 4, 2010.

**Background:** Defendant was convicted of conspiracy to manufacture 1000 or more marijuana plants and manufacture of marijuana, following jury trial in the United States District Court for the District of Oregon, Owen M. Panner, J. Defendant ap- pealed.

**Holdings:** The Court of Appeals, Berzon, Circuit Judge, held that:
(1) defendant was entitled to discovery of materials related to operations of Mexican drug trafficking organizations (DTO) that had recently infiltrated Oregon, and
(2) ruling preventing discovery of such evidence violated defendant's Sixth Amendment right to present defense.

Reversed.

West Headnotes

**[1] Criminal Law 110 ⚿0**

110 Criminal Law
The Court of Appeals reviews the discovery rulings of the district court for "abuse of discretion," which is a significantly deferential test that looks to whether the district court reaches a result that is illogical implausible.

**[2] Criminal Law 110 ⚿0**

110 Criminal Law
The Court of Appeals reviews de novo whether there has been a violation of *Brady v. Maryland* or the Sixth Amendment right to make a defense. U.S.C.A. Const.Amend. 6.

**[3] Criminal Law 110 ⚿0**

110 Criminal Law
Defendant charged with conspiracy to manufacture marijuana plants and manufacture of marijuana was entitled to discovery of materials related to operations of Mexican drug trafficking organizations (DTO) that had recently infiltrated Oregon; requested evidence, if it existed, would tend to show that Mexican DTO planted marijuana on remote corner of his mother's property, and would tend to make it more probable that defendant was not involved, as there would then be alternative explanation for growing operation that would not entail consent, much less participation, of defendant. Fed.Rules Cr.Proc.Rule 16(a)(1)(E)(i), 18 U.S.C.A.

**[4] Criminal Law 110 ⚿0**

110 Criminal Law
Information is in the "possession" of the government, for purposes of the rule requiring the government to disclose, upon defendant's request, all documents within its possession that are material to preparing the defense, if the prosecutor has knowledge of and access to the documents sought by the defendant. Fed.Rules Cr.Proc.Rule 16(a)(1)(E)(i), 18 U.S.C.A.

**[5] Criminal Law 110 ⚿0**

110 Criminal Law
To obtain documents under the rule requiring the government to disclose, upon defendant's request, documents that are material to preparing the defense, a defendant must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense. Fed.Rules Cr.Proc.Rule 16(a)(1)(E)(i), 18

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

U.S.C.A.

**[6] Criminal Law 110 0**

110 Criminal Law
Evidence of modus operandi of Mexican drug trafficking organizations (DTO) that had recently infiltrated Oregon, including evidence that DTOs plant in remote areas of land that they do not own, operate their grows in certain visibly ascertainable ways, and typically do not involve Caucasians in their operations, would not be barred as other acts evidence to prove character of a person in order to show acts in conformity therewith, in trial for conspiracy to manufacture marijuana plants and manufacture of marijuana, in which defendant wished to argue that he was unaware of growing operation on his mother's property. Fed.Rules Evid.Rule 404(b), 28 U.S.C.A.

**[7] Criminal Law 110 0**

110 Criminal Law
A district court is not free to dismiss logically relevant evidence as speculative, and if evidence that someone else committed the crime is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt.

**[8] Criminal Law 110 0**

110 Criminal Law
To win reversal of a conviction solely on the ground that a district court has improperly denied discovery of documents within the government's possession that are material to the defense, a defendant must show a likelihood that the outcome would have been different if the material had been disclosed. Fed.Rules Cr.Proc.Rule 16(a)(1)(E)(i), 18 U.S.C.A.

**[9] Criminal Law 110 0**

110 Criminal Law
Ruling preventing defendant charged with conspiracy to manufacture marijuana plants and manufacture of marijuana from discovering evidence of modus operandi of Mexican drug trafficking organizations (DTO) that had recently infiltrated Oregon, and in limine exclusion of all evidence about Mexican DTOs, violated defendant's Sixth Amendment right to present defense, inasmuch as proffered evidence was probative on central issue of whether he was involved in marijuana operation in remote corner of his mother's property, proffered evidence was reliable, and defendant was precluded from pointing to any alternative explanation for growing operation, and thus literally prevented him from making his defense. U.S.C.A. Const.Amend. 6.

**[10] Criminal Law 110 0**

110 Criminal Law
Whether grounded in the Sixth Amendment's guarantee of compulsory process or in the more general Fifth Amendment guarantee of due process, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense, which includes, at a minimum, the right to put before a jury evidence that might influence the determination of guilt. U.S.C.A. Const.Amend. 5, 6 .

**[11] Criminal Law 110 0**

110 Criminal Law
When evidence is excluded on the basis of an improper application of the evidentiary rules, due process concerns with respect to the opportunity to present a defense are still greater that they are when the evidence is excluded on the basis of an improper application of the evidentiary rules, because the exclusion in the former case is unsupported by any legitimate state justification. U.S.C.A. Const.Amend. 5.

**[12] Criminal Law 110 0**

110 Criminal Law
The *Miller* factors, namely the probative value of the evidence on the central issue, its reliability,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

whether it is capable of evaluation by the trier of fact, whether it is the sole evidence on the issue or merely cumulative, and whether it constitutes a major part of the attempted defense, are useful in considering whether evidence erroneously excluded was so important to the defense that the error assumes constitutional magnitude with respect to the Sixth Amendment right to present a defense. U.S.C.A. Const.Amend. 6.

**[13] Criminal Law 110 0**

110 Criminal Law
Fundamental standards of relevancy require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged. Fed.Rules Evid.Rule 401, 28 U.S.C.A.

**[14] Criminal Law 110 0**

110 Criminal Law
A violation of the Sixth Amendment right to present a defense requires reversal of a guilty verdict unless the Government convinces the Court of Appeals that the error was harmless beyond a reasonable doubt. U.S.C.A. Const.Amend. 6.

**[15] Criminal Law 110 0**

110 Criminal Law
Ruling preventing defendant charged with conspiracy to manufacture marijuana plants and manufacture of marijuana from discovering evidence of modus operandi of Mexican drug trafficking organizations (DTO) that had recently infiltrated Oregon, in violation of his Sixth Amendment right to present defense, was not harmless error, given that case was circumstantial, and defendant, who sought to argue that he was unaware of growing operation on his mother's property, lacked benefit of much of the evidence that might have been developed. U.S.C.A. Const.Amend. 6.
Bryan E. Lessley and Tonia L. Moro, Assistant Public Defenders, for the defendant-appellant.

Kent S. Robinson, Acting U.S. Attorney, and Douglas W. Fong, Assistant U.S. Attorney, for the plaintiff-appellee.

Appeal from the United States District Court for the District of Oregon, Owen M. Panner, District Judge, Presiding. D.C. No. 1:07-CR-30032-PA.

Before JEROME FARRIS, DOROTHY W. NELSON and MARSHA S. BERZON, Circuit Judges.

## OPINION

BERZON, Circuit Judge:

***1** Andrew True Stever brings a direct appeal of his conviction, after trial by jury, on one count of conspiracy to manufacture 1000 or more marijuana plants, 21 U.S.C. §§ 841(a)(1) and 846, and one count of manufacture of marijuana, 21 U.S.C. § 841(a)(1). Stever sought to defend on the ground that the marijuana growing operation found on an isolated corner of his mother's 400-acre property was the work of one of the Mexican drug trafficking organizations (DTOs) that had recently infiltrated Oregon. He was prevented from doing so by two district court rulings, the first denying him discovery related to the operations of DTOs and the second declaring that defense off-limits. We consider whether these rulings violated Rule 16 of the Federal Rules of Criminal Procedure, Stever's rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Stever's Sixth Amendment right to make a defense.[FN1]

## I.

On July 7, 2007, officers executed a warrant to search the 400-acre rural property on which Stever lived with his mother. The officers discovered a marijuana growing operation in an isolated corner of the property bordering a 40-acre tract belonging to the Forest Service. Most of the more than 7000 marijuana plants grew on the Stever property. The remaining plants, along with a camping tent, cook

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

tent, and disassembled greenhouse-all camouflaged to prevent aerial detection-were located on Forest Service land.

Two men the investigating officers described as Hispanic fled the scene when the officers arrived, leaving behind various personal effects, including clothing, two firearms, a cell phone, and a wallet containing the resident alien ID card of Alfredo Jesus Beltran-Pulido (Pulido). The wallet also contained Stever's business card and Stever's mother's cell phone number. A later review of Stever's phone records showed that he frequently called some of the phone numbers contained in the cell phone found at the scene.

Stever told friends, family, and later the police, that he had hired Pulido and several of his Hispanic associates in May to work on a generator and repair fences on the property. For part of this time, Pulido lived in a trailer on the Stever property; he also spent some time camping in a field near the generator. Stever's mother confirmed that these men had been hired to work on the generator, which she was having repaired because she hoped to sell it. Pulido and Stever also socialized together. Pulido was briefly romantically involved with one of Stever's friends.

The Government presented evidence that, in mid-May, 2007, Stever abruptly revoked the permission his mother had given a neighboring rancher to graze his cattle on the property. Stever told the rancher that someone without any cattle was willing to pay more for a lease.

The Government also presented testimony that tire tracks observed on a dirt road leading from the Stevers' house to the area of the marijuana operation on the morning of the raid matched the tread on the pick-up truck that Stever drove. Stever, however, provided unchallenged testimony that the same tread was used by at least half the pick-up trucks in the county, including many police and Forest Service trucks, and likely including some of the police vehicles that traveled the same road to the marijuana operation to conduct the raid.

*2 The operation was located about a mile-along a winding dirt road-from the house in which Stever lived with his mother and was separated from the rest of the property by a large forested hill. The house sat close to the main, paved road, such that ingress and egress from the house would not take Stever to the area of the property that contained the operation. There was no testimony that anyone had seen Stever travel to the part of the property that contained the marijuana operation.

On the day after the raid, Stever reported a vehicle stolen. He told the police that his friend Keith Reed's Mazda had disappeared from outside his ( Stever's) house overnight. The vehicle was found one week later, abandoned outside a convenience store in Eugene, Oregon, with an ignition key tucked inside the visor.

Stever was indicted on October 5, 2007. He sought pre-trial discovery of any reports in the government's possession describing the "characteristics, modus operandi, and other information regarding" Mexican DTOs involved in growing marijuana, explaining that he had knowledge that the United States Attorney's Office for the District of Oregon was then prosecuting a number of factually similar marijuana cases involving such organizations. The Government did not deny that it possessed such reports. Instead, it refused to comply with the request.

Stever filed a Motion to Compel Discovery on May 28, 2008. In that Motion, and in a subsequent Motion to Reconsider, Stever drew upon news reports, publically available information, and one email apparently obtained from the government pursuant to an earlier discovery request to argue that Mexican DTOs had recently infiltrated Eastern Oregon, that the operation on Stever's property bore several distinctive characteristics of Mexican DTO operations, and that Mexican DTOs tended to exclude local Caucasians from their operations. The district court denied discovery, reasoning only that "[t]he issue is not necessarily who planted the marijuana, but

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

whether or not the defendant is guilty as charged."

Denied discovery regarding Mexican DTOs, Stever moved *in limine* to prevent the Government from arguing at trial that Stever conspired with a DTO to manufacture marijuana. Stever contended that, although he was entitled to argue that a Mexican DTO was responsible for the operation, the Government should be barred from arguing that Stever conspired with such an organization, since the discovery rulings deprived Stever of the necessary information to rebut that accusation. The district court granted Stever's motion to bar the Government from arguing about Mexican DTOs, but also ruled *sua sponte* that it would not permit Stever to put on evidence regarding Mexican DTOs or "who else might have been involved."

Stever made several offers of proof to substantiate the arguments made in his discovery motions and in his motion *in limine.* He cited news reports of hunters and landowners stumbling across the marijuana operations of Mexican DTOs trespassing on public and private lands in Northern California and a report of the National Drug Intelligence Center explaining that increased eradication efforts in California had spurred Mexican DTOs to move into Eastern Oregon. He proffered the internal law enforcement communication apparently obtained through prior discovery, which identified a similar operation on federal land in Oregon as the likely work of a Mexican DTO. He also proffered a defense expert who would testify that DTO operations typically excluded local Caucasians.

***3** At trial, Stever's attorneys argued to the jury that Stever had no involvement in the operation, but, given the district court's rulings, could offer no explanation for its presence on the Stever property. So they proffered no affirmative defense at all, telling the jury only that they had "decided to hold [the prosecution] to [its burden of proof]." Prosecutors emphasized the location of the operation, calling its presence on an accessible, though remote, area of the Stever property a strong piece of evidence in their circumstantial case. The jury returned guilty verdicts on both counts.

**II.**

[1][2] We review the discovery rulings of the district court for abuse of discretion, *United States v. Chon,* 210 F.3d 990, 994 (9th Cir .2000), "[a] significantly deferential test that looks to whether the district court reaches a result that is illogical [or] implausible," *United States v. Hinkson,* 585 F.3d 1247, 1262 (9th Cir.2009) (en banc). We review *de novo* whether there has been a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or the Sixth Amendment right to make a defense. *United States v. Shryock,* 342 F.3d 948, 983 (9th Cir.2003); *United States v. Kincaid-Chauncey,* 556 F.3d 923, 930 n. 7 (9th Cir.2009).

**A.**

[3][4][5] Stever first argues that the district court abused its discretion by denying discovery of materials related to the operations of Mexican DTOs. Federal Rule of Criminal Procedure 16 grants criminal defendants a broad right to discovery. The government must disclose, upon defendant's request, all "documents ... within the government's possession, custody, or control ... [that are] material to preparing the defense [.]" FED. R. CRIM. P. 16(a)(1)(E)(i). Information is in the possession of the government if the prosecutor "has knowledge of and access to the documents sought by the defendant." *United States v. Santiago,* 46 F.3d 885, 893 (9th Cir.1995). "A defendant must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense." *Id.* at 894 (internal quotation marks and citation omitted).

Stever claimed that the Government was in possession of law enforcement reports, officer training materials, and other documents bearing on the operations of Mexican DTOs in Eastern Oregon and California. He cited news reports and ongoing pro-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

secutions and noted that Detective Mogle averred in his search warrant affidavit that his training had familiarized him with investigations of drug trafficking organizations. The Government does not deny that it possesses material within Stever's Rule 16 request.

Stever argues that the documents were "material to preparing [his] defense," FED. R. C RIM. P. 16(a)(1)(E)(i), for three interrelated reasons. First, the documents could rebut the inference that the owners of the property must have been involved in the marijuana operation, because they would demonstrate that Mexican DTOs have grown marijuana by trespassing on large tracts of public and private land in Eastern Oregon without the knowledge of the owners. Second, the documents could buttress the inference that this particular marijuana operation was the work of a Mexican DTO by demonstrating that operations run by Mexican DTOs have several distinctive characteristics in common with this operation.

***4** Third, the documents could corroborate Stever's evidence that Mexican DTOs are secretive and familial and so are unlikely to have involved a local Caucasian in their operations. The Government denies that those inferences, even if supported by the undisclosed evidence, are relevant to Stever's guilt or innocence. The district court agreed and denied discovery on that basis, repeatedly insisting that evidence about who else was responsible for the grow was not relevant to assessing the likelihood that Stever was involved.

The district court's conclusion was illogical. Evidence is relevant if it has " *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401 (emphasis added). The requested evidence, if it existed, tended to show that a Mexican DTO planted the marijuana. It also tended to make it more probable that Stever was not involved, as there would then be an alternative explanation for the grow that would not entail the consent, much less the participation, of any of the Stevers.

The Government makes several arguments in support of the district court's ruling. First, the Government argues that evidence must relate to a *particular* Mexican DTO to be probative of Stever's innocence. This argument fails. Evidence that makes it more likely that a Mexican DTO-any Mexican DTO-was responsible for this operation makes it less likely that Stever was.

Next, the Government argues that a showing that this grow was the work of a Mexican DTO would not tend to exonerate Stever, because Stever could have conspired with the DTO. Although such cooperation is certainly possible, Stever correctly argues that his guilt is *less likely* with Mexican DTO involvement than without it, both because without such involvement a jury would naturally assume that someone with legitimate authority over the land was at least in part responsible, and because he proffered evidence of the exclusivity of Mexican DTO operations.

[6] The Government also argues that the requested information would be character evidence barred by Federal Rule of Evidence 404. Rule 404(b) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove *the character of a person* in order to show action in conformity therewith." (Emphasis added.) The Government cites no authority for the proposition that the modus operandi of a criminal organization is inadmissible character evidence. Certainly, this situation does not present the risks of unfair prejudice and unreliable psychiatric evaluation that motivated the Advisory Committee in formulating Rule 404. *See* FED. R. EVID. 404(a) advisory committee's note (1972).

In any event, this circuit's precedent forecloses the Government's argument. In *United States v. Murillo,* we approved the introduction by the prosecution of expert testimony regarding the modus operandi of couriers involved in drug trafficking or-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

ganizations. 255 F.3d 1169, 1176 (9th Cir.2001) (overruled on other grounds as recognized in *United States v. Mendez,* 476 F.3d 1077, 1080 (9th Cir.2007)). Likewise, in *United States v. Cordoba,* we affirmed the admission of testimony that drug traffickers typically do not entrust large quantities of drugs to unknowing transporters. 104 F.3d 225, 230 (9th Cir.1997). Evidence that Mexican DTOs plant in remote areas of land that they do not own, operate their grows in certain visibly ascertainable ways, and typically do not involve Caucasians in their operations is similarly admissible consistent with Rule 404.

***5** [7] Finally, the Government argues that the evidence would invite the jury to engage in impermissible speculation about Mexican DTOs and their "correlat[ion] with the Stever property grow." But the district court is not free to dismiss logically relevant evidence as speculative: "[I]f the evidence [that someone else committed the crime] is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt." *United States v. Vallejo,* 237 F.3d 1008, 1023 (9th Cir.2001) (quoting John Henry Wigmore, *Evidence in Trials at Common Law* § 139 (1983)) (alterations in original). The jury will still be instructed to decide whether a doubt created by the evidence is a reasonable one and, if it is not, to convict. Viewed in that light, the danger the Government invokes is only the danger that the jury will not follow the instructions given, a risk which we may not entertain in light of "the crucial assumption underlying our constitutional system of trial by jury that jurors carefully follow instructions." *Francis v. Franklin,* 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).

Moreover, as the Government conceded, the case against Stever was circumstantial. Prosecutors asked the jury to infer that Stever was involved in the operation based primarily on its location on his property and his various interactions with Pulido, who *was* linked to the operation by physical evidence. Stever sought to counter the circumstantial inferences that the Government asked the jury to draw with evidence of other, logically relevant circumstances from which obverse inferences to those sought by the Government could be drawn. The district court's conclusion that the discovery was not relevant was thus based on a misapplication of the principles of logical relevance, and the denial of Stever's motion to compel therefore an abuse of discretion.

[8] To win reversal of the conviction on this ground standing alone, Stever would have to show a likelihood that the outcome would have been different if the material had been disclosed. *See Chon,* 210 F.3d at 994-95; *United States v. Amlani,* 111 F.3d 705, 712 (9th Cir.1997). This he cannot do, because the Government has never surrendered the materials for review. It is possible, indeed, that no relevant materials exist, although the Government has never so maintained. Or the available relevant materials may show that Mexican DTOs in Oregon do not operate without the connivance of those in control of private lands on which they conduct marijuana operations, or do involve Caucasians in their growing activities. Without the actual material, there is no way to judge prejudice. So, if we were considering the Rule 16 question by itself, we would have to remand for a determination whether the Government's documents in fact contain, or would have led to, information that might have altered the verdict. *See United States v. Alvarez,* 358 F.3d 1194, 1209 (9th Cir.2004). As we explain in the next section, however, Stever's Sixth Amendment claim merits reversal of the conviction, so remand on the Rule 16 issue is unnecessary.[FN2]

**B.**

***6** [9][10][11] Stever argues that the combination of the discovery ruling and the *in limine* exclusion of all evidence about Mexican DTOs violated his Sixth Amendment right to present a defense. Whether grounded in the Sixth Amendment's guar-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

antee of compulsory process or in the more general Fifth Amendment guarantee of due process, "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' " *Holmes v. South Carolina,* 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (quoting *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)). This right includes, "at a minimum, ... the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie,* 480 U.S. 39, 56, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987); *accord Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) ("The right to offer the testimony of witnesses ... is in plain terms the right to present a defense, the right to present the defendant's version of the facts....[The accused] has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."). Moreover, "[w]hen evidence is excluded on the basis of an *improper* application of the [evidentiary] rules, due process concerns are still greater because the exclusion is unsupported by any legitimate state justification." *United States v. Lopez-Alvarez,* 970 F.2d 583, 588 (9th Cir.1992).

Accordingly, this court has found constitutional error where a district court erroneously excluded evidence intended to refute the prosecution's theory of motive, *United States v. Whitman,* 771 F.2d 1348, 1351 (9th Cir.1985), and also where the misapplication of the hearsay rules resulted in the exclusion of evidence that contradicted the theory of a prosecution for tax evasion, *United States v. Boulware,* 384 F.3d 794, 808 (9th Cir.2004).FN3 While emphasizing that "not every [evidentiary] error amounts to a constitutional violation," *id.* (quoting *Lopez-Alvarez,* 970 F.2d at 588), *Boulware* and *Lopez-Alvarez* make clear that the erroneous exclusion of important evidence will often rise to the level of a constitutional violation. 384 F.3d at 808, 970 F.2d at 588.

[12] Some limited guidance may also be had by analogy to cases that assess the constitutional implications of the exclusion of relevant evidence pursuant to the *correct* application of an evidentiary rule. In balancing the interest of a state in enforcing its evidentiary rules against the interest of defendants in presenting relevant evidence in their defense, those cases consider the so-called *Miller* factors:

> the probative value of the evidence on the central issue; its reliability; whether it is capable of evaluation by the trier of fact; whether it is the sole evidence on the issue or merely cumulative; and whether it constitutes a major part of the attempted defense.

*Alcala v. Woodford,* 334 F.3d 862, 877 (9th Cir.2003) (quoting *Miller v. Stagner,* 757 F.2d 988, 994 (9th Cir.1985). The same considerations are useful in considering whether evidence erroneously excluded was so important to the defense that the error assumes constitutional magnitude, although, as we have explained, the substantive standard is more forgiving where the evidence was erroneously excluded on purely evidentiary principles.

***7** Applying these considerations, we note, first, that Stever's proffered evidence was probative on the central issue, whether he was involved in the marijuana operation. His offer of proof included government reports describing Mexican DTO operations on public and private land and an expert witness who would testify that Mexican DTO operations in Oregon excluded local Caucasian landowners. If permitted to do so, Stever could very possibly have developed further evidence to buttress his defense theory.

[13] "[F]undamental standards of relevancy ... require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged." *Crosby,* 75 F.3d at 1347 (alteration in original) (internal citations omitted). Here, as in *Crosby,* the crime occurred in a remote location, and little evidence bore directly on which individuals were involved. *See id.* Even

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

putting aside Stever's claim that this operation resembled in its physical characteristics that of a Mexican DTO, the evidence that sophisticated criminal organizations trespassed on private land in Eastern Oregon to grow marijuana would have "rebutt[ed] the inference that [ Stever] must have committed the[crime] because no one else was in a position to do so." FN4 *Id.*

The evidence is also reliable. Both the proffered documents and any undisclosed reports were prepared by law enforcement in their fight against Mexican DTOs, and the authors presumably have every reason to ensure that the information they contain is accurate. *See Alcala,* 334 F.3d at 886 (recognizing the reliability of police testimony). The Government does not suggest that Stever's proffered expert is unreliable, and the district court did not preclude his testimony on that basis.

The evidence is also capable of evaluation by the trier of fact. Stever could have introduced government reports into evidence, and his proffered expert could have elaborated on the information therein. It is beyond dispute that proper expert testimony is capable of evaluation by a jury. *See Daubert v. Merrell Dow Pharm ., Inc.,* 509 U.S. 579, 595-96, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

The last two *Miller* factors weigh most strongly in favor of finding that Stever's evidence was important to his attempted defense. Because the district court ruled *sua sponte* that Stever could not make his preferred defense *in any form,* it excluded "the sole evidence on [an] issue" that "constitut[ed] a major part of the attempted defense." *Alcala,* 334 F.3d at 877. Precluded from pointing to any alternative explanation for the operation on his mother's property, Stever was confined to poking holes in the Government's case and, as his lawyer argued to no avail in closing, holding the prosecution to its burden of proof. Stever was, quite literally, prevented from making his defense.

This handicap was far more sweeping than that imposed by other erroneous evidentiary rulings we have found in our cases. From well before the trial, the Government refused to turn over documents-documents it does not deny it possesses and as to which it claims no privilege of any kind-relating to the Mexican drug growing operations in Eastern Oregon. The district court then compounded this error by concluding that the documents were irrelevant to the point of immateriality, without even reviewing the requested documents in camera. Having denied Stever the opportunity to explore this discovery avenue, the district court declared a range of defense theories off-limits, without considering in any detail the available evidence it was excluding. As we have explained, its reason for doing so-that any such evidence was necessarily irrelevant-was deeply flawed. Stever was not only prevented from putting on evidence important to his defense, *see Boulware,* 384 F.3d at 808; he was prevented from making his defense at all. We must conclude that Stever's Sixth Amendment rights were violated.

***8** [14][15] A violation of the right to present a defense requires reversal of a guilty verdict unless the Government convinces us that the error was harmless beyond a reasonable doubt. *Ritchie,* 480 U.S. at 58; *see also Chapman v. California,* 386 U.S. 18, 22-24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In a circumstantial case, and without the benefit of much of the evidence that might have been developed, we cannot say that disabling Stever from arguing that a Mexican DTO, not him, was responsible for the marijuana on his property was harmless error.

## III.

We hold that Stever was denied his Sixth Amendment right to make a defense, the error was not harmless beyond a reasonable doubt, and his conviction must therefore be reversed.

REVERSED.

FN1. We do not reach Stever's challenge to the jury instructions given by the district

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.