DWIGHT C. HOLTON, OSB #09054
United States Attorney
District of Oregon
CHRISTOPHER L. CARDANI
Assistant United States Attorney
405 East Eighth Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771
chris.cardani@usdoj.gov
CHARLES F. GORDER, JR., OSB# 912874
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1117
charles.gorder@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  CR 05-60008-HO |
| | ) | |
| v. | ) | United States' Motion in Limine |
| | ) | to Determine Admissibility of |
| | ) | Proposed Exhibits AHIF-1 through |
| PIROUZ SEDAGHATY, | ) | AHIF-12 |
| | ) | |
| Defendant. | ) | **(Pretrial Hearing Requested)** |

The United States of America, through its undersigned counsel, herein files this

motion, seeking a pretrial hearing on the admissibility of certain exhibits to be offered by

the prosecution at trial.  The exhibits at issue in this motion are documents obtained

from defendant Sedaghaty's attorney in response to a grand jury subpoena served on

the Al-Haramain Islamic Foundation (AHIF) in Ashland, Oregon.  The exhibits are

denoted AHIF-1 through AHIF-12 in the government's proposed exhibits.  This motion is

1 -    United States' Motion in Limine to Determine Admissibility of Proposed Exhibits
        AHIF-1 through AHIF-12  **(Pretrial Hearing Requested)**

supported by a Declaration of Special Agent Colleen Anderson (SA Anderson) filed herewith.[1]

The parties have attempted to arrive at stipulations concerning these exhibits. While counsel for defendant Sedaghaty are willing to agree as to how the documents came into the possession of the prosecution, they are with two exceptions unwilling to agree that the AHIF exhibits are admissible. Accordingly, it is requested that this Court conduct a pretrial hearing to determine the admissibility of AHIF-1 through AHIF-12.

Background

On June 19, 2003 a federal grand jury subpoena was issued directed to the:

> Al Haramain Foundation
> 3800 S. Highway 99
> Ashland, OR 97520

A copy of the subpoena is attached to the Declaration as Item 1. The subpoena was a routine request for corporate books and records. It required the recipient(s) to appear before a federal grand jury in July 2003 and produce the Al-Haramain records. This included transaction receipts, escrow records, and financial records showing funds received by Al-Haramain and how those funds were distributed and classified by Al-Haramain. The subpoena covered the time period of 1997-2003.

At the time the subpoena was served, defendant Sedaghaty had left the United States and did not return until August 2007. IRS Special Agent Colleen Anderson went to the Al-Haramain premises in June 2003 and served the subpoena on two individuals,

---

[1]SA Anderson's statement will be referred to throughout this motion as the "Declaration." The Declaration has ten exhibits attached to it, which are referred to in this motion as "items."

2 -    United States' Motion in Limine to Determine Admissibility of Proposed Exhibits AHIF-1 through AHIF-12  **(Pretrial Hearing Requested)**

Laleh Zahidi and Summer Rife, who acknowledged providing financial services to Al-Haramain.  (Declaration at ¶5).

Prior to the grand jury appearance date, attorney Lawrence Matasar contacted the United States Attorney's Office (USAO).  In a letter dated July 11, 2003 (Declaration, Item #2), Mr. Matasar wrote that he represented the Al Haramain Islamic Foundation, Inc., as well as Perouz Sedaghaty, for purposes of the IRS investigation, including the grand jury subpoena.  Instead of having a witness appear before the grand jury to deliver and authenticate the records, Mr. Matasar memorialized an arrangement with the USAO where he would send approximately 250 pages of responsive documents to the government on or before July 16, 2003.  On about July 15, 2003, Mr. Matasar provided to the USAO an initial batch of documents in response to the Al-Haramain subpoena.  (Declaration, Item #3).

In reviewing the records, it became apparent to those involved in the investigation that many customary business records expected to have been turned over were not part of the items received from Mr. Matasar.  Accordingly, a meeting was held where Mr. Matasar was provided a list by the government of additional items covered by the subpoena but not received.  (Declaration at ¶8 and Item #4).  Among the "missing items" were escrow records for a building purchased by Al-Haramain in Springfield, Missouri, and backup documentation concerning funds sent to "Chechnia." (Declaration, Item #4).  Mr. Matasar said he would contact his client and others in an attempt to gather the additional records.  (Declaration, Item #5).

Mr. Matasar subsequently spoke with defendant Sedaghaty and met with

3 -    United States' Motion in Limine to Determine Admissibility of Proposed Exhibits
       AHIF-1 through AHIF-12  **(Pretrial Hearing Requested)**

Sedaghaty's accountant and another attorney who had previously represented him.  Mr.

Matasar said that defendant Sedaghaty wished to cooperate in the investigation, but

they needed more time to gather the records.  Although he continued to reside

overseas, defendant Sedaghaty was copied on correspondence memorializing these

events.  (Declaration, Item #5).  The government agreed to continue the subpoena to

permit Mr. Matasar to obtain the additional documents covered by the subpoena.

On or about September 29, 2003, Mr. Matasar met with SA Anderson and gave

her another 140 pages of responsive records.  (Declaration, ¶11).  Mr. Matasar was

reviewing other records for the purpose of potential submission to the government.

On about October 27, 2003, Mr. Matasar sent to SA Anderson approximately

1,500 pages of additional documents related to the operation of Al-Haramain, again in

response to the grand jury subpoena.[2]  (Declaration, Item #7).

The government's proposed exhibits AHIF-1 through AHIF-12 are all documents

provided by Mr. Matasar in response to the subpoena.  (Declaration, ¶16).  Each of

these documents were originally collected from the Oregon offices of Al-Haramain.

(Declaration, ¶14 & 18).

In February 2004, long after the responsive documents were provided to the

government, Mr. Matasar stated he no longer represented Al-Haramain, but would

continue to represent Pirouz Sedaghaty.  (Declaration, Item #8).

Special Agent Anderson recently interviewed David Berger, a Medford, Oregon

---

[2]No privileges or challenges to the subpoena were ever asserted concerning the documents provided.

attorney.  Berger informed SA Anderson that, at the request of Mr. Matasar, he and

Jonah Sedaghaty (defendant's son) entered the Al-Haramain property in Ashland,

Oregon after the grand jury subpoena was served to gather responsive documents.

Berger indicated that most of the AHIF exhibits were found in "Pete's office."  He

identified defendant Sedaghaty's office as "room x" from a floor plan of the Al-Haramain

building in Ashland, Oregon.  (Declaration, ¶¶17 & 18).

Since Mr. Matasar provided the responsive records as a representative of

defendant Sedaghaty and the Al-Haramain Islamic Foundation, the government did not

require anyone from Al-Haramain (or Mr. Matasar) to attend a grand jury session to

authenticate the records.  The agreement with Mr. Matasar to permit him to provide the

documents to the government in lieu of a live witness before the grand jury is consistent

with a longstanding professional courtesy that the USAO in Oregon, and throughout the

country, offer to attorneys in white collar crime investigations.  This agreement obviates

the need for a witness to physically appear before the grand jury to testify that the

records provided are authentic business records of the corporate entity.  The *quid pro

quo* of this informal arrangement is that, if there is litigation, the defense will stipulate

that the records provided by counsel are authentic business records of the corporate

entity.

In preparing for trial, the government requested that the defense stipulate that:

> In response to a federal grand jury subpoena dated June 19, 2003
> directed to the Al-Haramain Islamic Foundation, Inc. in Ashland, Oregon, a
> representative of the Al-Haramain Islamic Foundation, Inc. and Perouz
> Sedaghaty provided exhibits AHIF-1 through AHIF-12 to the grand jury.
> The parties further agree that AHIF-1, and AHIF-4 through AHIF-12 are
> authentic business records of the Al-Haramain Islamic Foundation, Inc.,

5 -    United States' Motion in Limine to Determine Admissibility of Proposed Exhibits
       AHIF-1 through AHIF-12  **(Pretrial Hearing Requested)**

consistent with Federal Rules of Evidence 803(6) and 901.  The parties further agree that exhibits AHIF-2 and AHIF-3 are admissions by a party opponent under Federal Rule of Evidence 801(d)(2).

Counsel for defendant Sedaghaty will apparently agree that the exhibits in question were all provided by Mr. Matasar to the government in response to the grand jury subpoena but, with the exception of two of the exhibits, they will not stipulate to the admissibility of the AHIF exhibits.  In his filing denoted CR 336 on the docket sheet, defendant Sedaghaty objects to the government's pretrial offer on several of the AHIF exhibits on grounds that they are inadmissible hearsay and that the government can not establish they are the business records of Al-Haramain.  CR 336 at 26-28.

The following memorandum describes the challenged exhibits and explains why this Court should hold a hearing and rule admissible each of the AHIF exhibits.

<u>The AHIF Series of Exhibits</u>

Copies of proposed exhibits AHIF-1 through AHIF-12 have been provided to the Court and defense counsel and are attached to SA Anderson's Declaration as Item #9. Each is discussed below.

<u>AHIF-1</u>: Counsel for defendant Sedaghaty have stated they will not object to this exhibit if the government stipulates that the writing "Donation for Chechania refugees" on the cashier's check is Soliman Al-But'he's.  (CR 336 at 26).

The problem with this proposal is that, other than a lay comparison of known signatures of Al-But'he, the government has no way to stipulate that the handwritten notation is indeed that of Al-But'he's.  Since Al-But'he is a fugitive, the government is unable to determine from him whether he wrote the notation and, if so, the

circumstances of such authorship.

AHIF-1 is identical to proposed exhibit BOA-1,[3] except that AHIF-1 contains the additional handwriting involving "Chichania Refugees," and an Arabic endorsement on the backside which translates into English as "amount specific for America."

AHIF-1 should be received by the Court.  FRE 902(9) permits commercial paper and related documents to be received without any other evidence of authenticity. *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004).  In addition, checks are not hearsay because they are legally operative verbal acts.  *Id.*  The only remaining question on exhibit AHIF-1 concerns the handwriting about "Chichania Refugees." Considering the unique aspects of AHIF-1 and the handwritten comment, including its internal characteristics and from where it was obtained, it should be received as highly reliable and pertinent evidence.  The jury can determine who may have added the additional commentary on the cashier's check.  *See* FRE 901(b)(2) (non-expert opinion on handwriting); 901(b)(4) (distinctive characteristics); 28 U.S.C. §1731 ("[t]he admitted or proved handwriting of any person shall be admissible, for purposes of comparison, to determine genuineness of other handwriting attributed to such person").[4]

AHIF-2 & AHIF-3:  These two exhibits are supposed agreements which directly involve the $150,000.00 donation at issue in this case.  They purport to represent an

---

[3]The Court has a full set of the government's proposed exhibits.  Only AHIF-1 through AHIF-12 are attached to the Declaration.

[4]The notation about "Chechania Refugees" is not being offered by the government for its truth, but in any event the statement can be viewed as an admission of a party opponent or as a co-conspirator statement.

7 -    United States' Motion in Limine to Determine Admissibility of Proposed Exhibits
       AHIF-1 through AHIF-12  **(Pretrial Hearing Requested)**

agreement between defendants Sedaghaty (referred to as Abu Yunus in the exhibits) and Al-But'he (referred to as Soliman in the exhibits).  The agreements state that Sedaghaty was providing all of the monies collected "for the Brothers and Sisters in Chechnya over to Brother Soliman."  The documents list sums of money and a date of March 11, 2000, which is consistent with when Al-But'he was in Ashland, Oregon retrieving the El Fiki funds with defendant Sedaghaty at the Bank of America.

Both of the exhibits bear signatures purporting to be Sedaghaty and Al-But'he, which are consistent with known signatures of both defendants.  (Declaration at ¶20). While they purport to represent receipts for the same transaction, a side-by-side comparison of AHIF-2 and AHIF-3 reveals inconsistencies between the two documents, such as the amount of money listed, the order of signatures, the presence of witnesses on only one of them, and additional handwriting on AHIF-2 stating the funds were deposited into "Alharamain head office for Chechenya Refugees."  These inconsistencies suggest they are most likely fabrications, created to make it appear as though the El-Fiki funds were used for refugee relief, rather than to fund the *mujahideen*.  In any event, since no witness testified before the grand jury, it is difficult to determine with certainty whether these two exhibits were created on the dates listed on them (March 11, 2000), or whether they are backdated concoctions by the defendants, delivered to the government in response to a specific request to provide supporting documents about a Chechnia transaction.

The defense objects to the admissibility of these exhibits, asserting they are inadmissible hearsay, are not business records, and can not be received without proper

authentication.  (CR 336 at 26-27).

Regarding authenticity or identification, FRE 901(b)(4) provides that the "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances" is sufficient to support a finding that the matter in question is what the proponent claims.  AHIF-2 and AHIF-3 were among the documents provided to the government by defendant's attorney in response to a subpoena requesting records relating to Chechnya and financial transactions. Considering this, as well as the fact that the internal content of the documents are consistent with other information properly received, there is sufficient evidence of authenticity or identification under FRE 901.  The probative force of the evidence is an issue for the jury.

A case which supports the admissibility of these exhibits is *United States v. Black*, 767 F.2d 1334, 1341-42 (9th Cir. 1985).  There, receipts provided by the defendant, which the government claimed were forgeries, were allowed into evidence and the defendant was convicted of fraud.  On appeal, defendant argued the documents were not properly authenticated.  The court rejected the argument.  After reviewing the level of proof necessary to establish authenticity, the court wrote that "the strongest support for the government's position is that the evidence was in [defendant's] possession at the time the government sought its production.  That fact alone should warrant upholding the district court's decision."  *Id*. at 1342.  The *Black* court then addressed defendant's related claims, stating "[w]hether the confirmation slips were forgeries, whether the defendant obtained the documents in the fashion he described,

or whether he was responsible for their fabrication were all issues for the jury to decide."
*Id.*, *citing* 5 *J. Weinstein & Berger* at ¶901(a)[02], at 901-22.

If needed at the pretrial hearing, SA Anderson can show the Court known
signatures of defendants Sedaghaty and Al-But'he to support a reasonable belief that
they each signed exhibits AHIF-2 and AHIF-3.  Sufficient proof exists to support the
authentication or identification of AHIF-2 and AHIF-3.

Concerning defendant's hearsay objections, the government is not offering AHIF-
2 and AHIF-3 for the truth of the matters asserted therein.  Indeed, the most likely
scenario is that these documents are falsities, and thus not hearsay.[5]  In any event, the
documents are also admissible as admissions of a party opponent under FRE
801(d)(2)(A), adopted statements under FRE 801(d)(2)B), or co-conspirator statements
under FRE 801(d)(2)(E).

AHIF-4:  This one page document appears to be a listing of the funds used by
defendant Sedaghaty to purchase a building in Springfield, Missouri on behalf of Al-
Haramain.[6]

_____

[5]*See United States v. Knigge*, 832 F.2d 1100, 1108 (9th Cir. 1987) (hearsay rule
does not bar evidence of statements offered for purposes of showing that they were
false), *amended by* 846 F.2d 591, *quoting Anderson v. United States*, 417 U.S. 211,
220 (1974).

[6]The circumstances surrounding the purchase of this building is important to the
case.  The indictment charges that defendant Sedaghaty intentionally falsified the Al-
Haramain Form 990 filed with the IRS, in part, by trying to make it appear that most of
the El-Fiki donation was used to purchase this building when in fact it was not.
Defendant's awareness of and involvement in the details of the building purchase bear
directly on his knowledge of the falsities in the tax return, and tend to refute defendant's
claim that the false statement was merely a mistake.

10 -    United States' Motion in Limine to Determine Admissibility of Proposed Exhibits
        AHIF-1 through AHIF-12  **(Pretrial Hearing Requested)**

When studied in conjunction with other exhibits concerning the purchase of the Missouri building by defendant Sedaghaty, it is clear that the information depicted in AHIF-4 is highly reliable.  As reflected in proposed exhibit ICE FinCEN 2-f, Soliman Al-But'he entered the United States on May 16, 2000 with more than $300,000.00 in his possession.  Exhibit BOA-12 shows that two days later Al-But'he deposited $295,000.00 into a Bank of America account he had in the name of Al-Haramain in Wichita, Kansas. Of this deposit, $275,000.00 was in the form of American Express traveler's checks in $1,000.00 denominations.  These funds were transferred by Al-But'he to the Bank of America Al-Haramain account in Ashland, Oregon on June 21, 2000.  Notes from proposed exhibit RDK-2 show that an attorney hired by Al-Haramain to assist in the building purchase in Missouri had a conversation with defendant Sedaghaty about the purchase.  On June 21, 2000 defendant Sedaghaty "okayed everything for Springfield deal and he is sending the money!"  *See* proposed exhibit RDK-2.  A similar note from this same exhibit reflects that Sedaghaty sent the attorney the funds needed to close on the Springfield, Missouri property.  On June 23, 2000, defendant Sedaghaty, using the funds derived from Al-But'he, purchased a cashier's check from Bank of America in Ashland, Oregon, made payable to First Escrow, Inc., in the amount of $318,291.74. *See* proposed exhibits BOA-10 & BOA-17.  Sedaghaty sent this cashier's check to the Missouri attorney, who used the funds to purchase the building in the name of Al-Haramain.  (Proposed exhibit FE-1).  The attorney later sent Sedaghaty documents related to the transaction, including the closing statement showing the actual cost of the building.  (Proposed exhibit RDK-1).

11 -    United States' Motion in Limine to Determine Admissibility of Proposed Exhibits AHIF-1 through AHIF-12  **(Pretrial Hearing Requested)**

AHIF-4, which defendant now challenges as inadmissible hearsay, is a breakdown of the funds obtained by Sedaghaty and used to purchase the Springfield, Missouri building.  At the top it correctly lists the overall purchase price of the building ($375,000.00).  It also correctly reflects the $275,000.00 transported by Al-But'he for "Alharamain Foundation," and lists five other revenue sources for the purchase.

AHIF-4 is significant because it shows that defendant Sedaghaty was aware of the purchase price of the Springfield, Missouri building, and the funds used for that purchase.

The *Black* case, discussed above, is once again instructive on authentication. AHIF-4 was obtained from within the Al-Haramain U.S. headquarters in Ashland, Oregon and produced by defendant's attorney in response to the grand jury subpoena. Defendant's possession of this document is alone a sufficient basis for it being admitted. *Black*, 767 F.2d at 1342.  The jury is entitled to consider AHIF-4 in determining whether defendant Sedaghaty knew the Form 990 he filed with the IRS, which falsely asserted that the El-Fiki donation was used to purchase this building, was indeed false.  In addition, it will be demonstrated at trial that defendant Sedaghaty did not provide this document to his accountant when preparing the Form 990; instead, defendant Sedaghaty told his accountant that he did not need the details of the Missouri building purchase to prepare the Form 990.

While defendant Sedaghaty did not sign AHIF-4, and the document is undated, these factors go towards the weight the jury may decide to give the exhibit.  AHIF-4 should be ruled admissible.

12 -    United States' Motion in Limine to Determine Admissibility of Proposed Exhibits
        AHIF-1 through AHIF-12  **(Pretrial Hearing Requested)**

Concerning hearsay objections, the prosecution is once again not offering AHIF-4 for the truth of the matters asserted.  Rather, it is relevant for the non-hearsay purposes stated above.

AHIF-5, AHIF-6, and AHIF-7:  These documents are all routine closing records supporting the purchase of the Missouri building by Al-Haramain in Oregon.  These exhibits are not being offered by the prosecution for the truth of the matters asserted.  Rather, they are being offered to show that defendant Sedaghaty had in his possession the documents for the building purchase, making it less likely that he made a mistake when submitting the Form 990 for Al-Haramain, falsely reporting the transactional details for the Missouri building.  Also, proposed exhibits FE-1, RDK-1 and RDK-2 contain much of the same information.  Exhibits AHIF-5, -6 and -7, while admittedly duplicative of the other exhibits, show the transactional details were known to defendant Sedaghaty, who concealed the information from his accountant.  Defendant's objections to these exhibits should be rejected.

AHIF-8 and AHIF-9:  These two exhibits relate to the $150,000.00 donation by Mahmoud El-Fiki.  The defense appears to have no objections to these exhibits being received.

AHIF-10, AHIF-11 and AHIF-12:  In CR 336, at page 28, the defendant objects to each of these exhibits as inadmissible hearsay.

AHIF-10 is the same as proposed exhibit SW-67, which was found in the Al-Haramain computers seized in Ashland, Oregon pursuant to the search warrant.  Page two of AHIF-10 contains information relevant to the $150,000.00 El-Fiki donation, and

13 -    United States' Motion in Limine to Determine Admissibility of Proposed Exhibits
        AHIF-1 through AHIF-12  **(Pretrial Hearing Requested)**

the purchase of the Springfield, Missouri building.

AHIF-11 needs to be examined in conjunction with AHIF-12.  AHIF-11 is a letter from an Al-Haramain accountant in Saudi Arabia named Al-Shoumar to defendant Sedaghaty (Abu Yunus).  In paragraph four, Al-Shoumar informs Sedaghaty to list all Al-Haramain expenses, including those not provided in the budget, as he had done in the February report.  AHIF-12 shows Al-Haramain (U.S.) expense reports for February and March 2000.  The March 2000 report is important, as it addresses the disposition of the $150,000.00 El-Fiki donation.  AHIF-12 is the same as an attachment to SW-32, which shows that defendant Sedaghaty had the Al-Haramain expense reports for January-March 2000 prepared and delivered to Al-Shoumar in Saudi Arabia.

AHIF-10, AHIF-11 and AHIF-12 are all admissible as admissions, co-conspirator statements, and as reflective of defendant's state of mind.  They may also constitute business records, but additional information would be necessary concerning the necessary foundational requirements.  They are admissible.

Evidentiary Hearing

Counsel for defendant Sedaghaty has indicated that they would likely agree as to the way in which AHIF-1 through AHIF-12 came into the possession of the government; namely, that after the subpoena was served on Al-Haramain (U.S.), defendant Sedaghaty's son Jonah, and attorney David Berger, went to the business premises of Al-Haramain (U.S.) in Ashland, Oregon and collected items which appeared responsive to the subpoena.  Berger delivered the documents to another attorney.  Afterwards, another attorney named Susan Krant reviewed the documents in comparison with the

14 -    United States' Motion in Limine to Determine Admissibility of Proposed Exhibits
        AHIF-1 through AHIF-12  **(Pretrial Hearing Requested)**

subpoena and gave them to Mr. Matasar.  He then reviewed them and delivered them to Special Agent Anderson.

If the parties agree to these events, and that Mr. Berger obtained the AHIF documents from "Room X" in the Al-Haramain building (Declaration, Item #10), then there may be no need to ask that Mr. Matasar or Mr. Berger provide any testimony at a pretrial hearing.

Conclusion

This Court should rule that the government's proposed exhibits AHIF-1 through AHIF-12 are admissible for purposes of trial.

DATED this 13th day of July, 2010.

Respectfully submitted,

DWIGHT C. HOLTON
United States Attorney


/s/ Christopher L.  Cardani
By: _____
CHRISTOPHER L. CARDANI
Assistant United States Attorney


/s/ Charles F.  Gorder, Jr.
By: _____
CHARLES F. GORDER, JR.
Assistant United States Attorney