**Steven T. Wax, OSB No. 85012**
**Federal Public Defender**
**101 SW Main Street, Suite 1700**
**Portland, OR  97204**
**Tel: (503) 326-2123**
**Fax: (503) 326-5524**
**Email: steve_wax@fd.org**

**Lawrence Matasar, OSB No. 74209**
**621 SW Morrison Street, Suite #1025**
**Portland, OR 97205**
**Tel: (503) 222-9830**
**Email: larry@pdxlaw.com**

**Attorneys for Defendant**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 05-60008** |
| **Plaintiff,** | |
| | **DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION IN LIMINE TO DETERMINE ADMISSIBILITY OF EXHIBITS AHIF-1 THROUGH AHIF-12** |
| **v.** | |
| **PIROUZ SEDAGHATY,** | |
| **Defendant.** | |

Defendant, Pirouz Sedaghaty, by and through his attorneys, Lawrence

Matasar, and Federal Public Defender Steven T. Wax, hereby replies to the

government's Motion in Limine to Determine Admissibility of Exhibits AHIF-1 Through AHIF-12. July 19, 2010.  The government's pleading misstates several aspects of the law.  First, the government significantly misrepresents the existence of an informal agreement regarding responses to grand jury subpoenas.  Second, the government argues, incorrectly, that authentication is virtually the same as admissibility.  Third, the government names individuals as co-conspirators in order to allow a piece of evidence to be analyzed as a possible statement of a co-conspirator and, therefore, be admissible without recognizing that a finding must be made that the person is a co-conspirator and that the statement was made during the course and in furtherance of a conspiracy.   Through this memorandum, Mr. Sedaghaty addresses several areas of law, and then turns to a discussion of the specific exhibits addressed in the motion.

## I.    There Is No Informal Agreement Whereby An Attorney, In  Responding To A Grand Jury Subpoena, Waives Any Admissibility Objections At Trial.

The government has provided this Court with the novel idea that when an attorney in this district facilitates compliance with a federal grand jury subpoena, that attorney then stipulates that the documents produced are authentic business records under Fed. R. Evid. 803(6).  The government goes so far as to suggest that there is an informal agreement in this district to this effect.  This is not true.

Defense counsel contacted leading defense attorneys in this district with a long history of responding to grand jury subpoenas.  Robert Weaver provided an

affidavit that soundly trumps the governments assertion.  See Ex. 1.  Mr. Weaver, the former Chief Criminal Assistant United States Attorney, confirms that for the past 20 years he has represented individuals and organizations who have been served with grand jury subpoenas for documents in the District of Oregon.  He has never heard of an agreement "whereby the attorney producing records pursuant to a grand jury subpoena stipulates or is presumed to agree at trial that the records produced are authentic business records under Federal Rule of Evidence 803(6)."  Ex. 1.  Mr. Ron Hoevet, another criminal defense practitioner with extensive experience in grand jury representation agrees.  Ex. 2.

Mr. Sedaghaty does not dispute the basic chronology that the government has set forth regarding how Mr. Matasar facilitated compliance with the grand jury subpoena.  The fact remains that the fact that a document was produced from Al Haramain in response to a grand jury subpoena does not, thereby, provide for blanket admissibility, particularly with respect to the business records exception found in Rule 803(6).

Mr. Matasar is not a business records custodian as required by that exception.  The government continues to have the burden, as the proponent, to comply with Rule 803(6) and present a custodian, or other qualified witness, with knowledge who can testify if a particular document was "kept in the course of regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation."

Rule 803(6).  The requirement in the exception that the record be kept in the regular course of business is to provide the assurance of accuracy.  *See* Rule 803(6), advisory comm. notes.  Only a custodian with the requisite knowledge can attest to the business record as being kept in the regular course of business to ensure the accuracy and reliability of the record.  Mr. Matasar is not that person. *See Latman v. Burdette*, 366 F.3d 774, 787 (9th Cir. 2004) (attorney for the trustee in a bankruptcy proceeding was not a qualified witness with respect to bank records because the attorney "had no regular connection to the . . . bank and no knowledge of the account except that gained by hearsay.").

## II.    The Government Incorrectly Equates Authentication With Admissibility.

Even if the records in issue are authentic, the government must establish far more before they become admissible.  Throughout its pleading, the government fails to recognize the difference and distinction between authentication and admissibility.  A review of the Rules of Evidence reveals the proper procedure for a court to follow when determining whether a piece of evidence is admissible. First, according to Fed. R. Evid. 901, the requirement of authentication is "a condition precedent to admissibility."  Then, once an item has been authenticated, the court continues with further questions regarding admissibility.  Fed. R. Evid. 104.

The purpose of authenticating a piece of evidence is to establish, by way of

preliminary evidence, a connection between the evidence offered and the relevant facts of the case.  Fed. R. Evid. 901(b) offers illustrations of authentication that conform with Rule 901.  Several of these illustrations are relied upon by the government.  Rule 901(b)(2) involves nonexpert opinion on handwriting and Rule 901(b)(4)[1] involves distinctive characteristics.  The government relies on these rules when discussing AHIF-1.

### A.    Handwriting And AHIF-1.

AHIF-1 is a copy of a cashiers check which is identical to government proposed exhibit BOA-1, except that it includes handwriting regarding "Chechania refugees" and an Arabic endorsement on the back.  The defense has offered to agree to the admission of this exhibit if the government will stipulate that it is the handwriting of Soliman Al Buthe.

While the government refuses to stipulate that the handwriting on the check belongs to Soliman Al-Buthe, the government also argues that the statement can be viewed as an admission of a party opponent or as a co-conspirator statement.  CR 397 at fn 4.  It does not seem plausible that the government will not agree that

---

[1]It is unclear how Rule 901(b)(4) is applicable in this case.  What distinctive characteristics exist that provide for authentication?  According to the Advisory Committee notes, this rule applies, for example, when "a document . . . be shown to have emanated from a particular person by virtue of its disclosing knowledge of facts known peculiarly to him."  Rule 901(b)(4), advisory comm. notes.  There is nothing comparable in this proposed exhibit.

it is Soliman Al Buthe's handwriting, but at the same time argues that it is a statement of a co-conspirator.  The government cannot have it both ways.

In this case, Rule 901(b)(2) requires a foundational witness to testify regarding the handwriting in order to conform with Rule 901.  Rather than require the government to find a foundational witness to testify to the fact that it is Soliman Al Buthe's handwriting on the check, a fact that the government does not appear to dispute, the defense has offered to stipulate to this fact and negate the government's burden to find a foundational witness.  It is unclear what the dispute is with regards to this exhibit.

## III.    Mere Possession Does Not Create Admissibility Of A Document.

The government argues throughout its pleading that mere possession of a document renders it authenticated and, therefore, admissible.  This is incorrect.  The government relies on *United States v. Black*, 767 F.2d 1334 (9th Cir. 1985), a case involving resolution of an argument made regarding proper authentication.  *See* CR 397 at 9 & 12.  *Black* only involved the question of whether a document was satisfactorily authenticated for purposes of Rule 901(a).  *Black*, 767 F.2d at 1341-42.  *Black* did not address other admissibility issues.  *See* Rule 104.  While possession of a document may resolve certain authentication issues, it does not supplant admissibility analysis by the court.  The government directly relies on this incorrect analysis for the admission of AHIF -2 , AHIF-3, and AHIF-4.

The government cannot rely on authentication for admissibility.  As stated above, once authentication has been provided, then the court determines admissibility.  Rule 104.

**IV.    The Government Cannot Name A Person As A Co-Conspirator In Order To Cause Evidence To Be Considered Admissible Under The Co-Conspirator Rule.**

The government continues to assert who is a member of a conspiracy in order to attempt to render evidence admissible.  The government has relied on this rule for purposes of admitting AHIF-1, AHIF-2, AHIF-3, AHIF-4, AHIF-10, AHIF-11, and AHIF-12.  This is not the proper method to admit evidence that is otherwise inadmissible.

By this pleading, and by the motion filed on May 11, 2010 (CR 374), Mr. Sedaghaty requests that this Court determine the existence of a conspiracy by a preponderance of the evidence and the identities of the co-conspirators, and any statements of such co-conspirators the government intends to introduce at any time during the trial, including through cross of any defense witness.  *See United States v. James*, 590 F.2d 575, 579-80 (5th Cir. 1979) (*en banc*) (providing for a pre-trial screening procedure to determine in advance the admissibility of co-conspirator statements, avoiding the potential of later inadmissibility prejudice).  *See United States v. Grass*, 616 F.2d 1295, 1300 (5th Cir. 1980) ("The purpose of the [ ] hearing is to establish the existence, or nonexistence, of the predicates for

the admission of a coconspirator's extrajudicial declaration before the declaration is made known to the jury.").

Under the co-conspirator exception to the Hearsay Rule, the government must first establish the existence of a conspiracy and the participation of the maker of the statement the government seeks to introduce in that conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). There are three foundational prerequisites:

    (1)    the offering party must show that a conspiracy existed which involved the declarant and the non-offering party;

    (2)    the declaration must be during the course of the conspiracy; and,

    (3)    the declaration must be in furtherance of the conspiracy.

These foundational points are preliminary questions of fact governed by Fed. R. Evid. 104. When preliminary facts relevant to Fed. R. Evid. 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence. *Bourjaily*, 483 U.S. at 176.

There must be a threshold showing of a conspiracy beyond the statement itself. Fed. R. Evid. 802(d)(2)(E) states in relevant part: "the contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E)." It is essential that there be evidence regarding who made the statement because in order to

corroborate or refute [whether the declarant and the defendant were co-conspirators] "the litigants must know the identity of the declarant." *United States v. Gil*, 58 F.3d 1414, 1420 (9th Cir. 1995) (internal quotations omitted). *See* CR 374.

The government is attempting to introduce numerous pieces of evidence as statements of co-conspirators. Prior to the determination of whether these statements can be admitted, a hearing must be held to establish, by a preponderance of the evidence, whether a conspiracy involving the declarant existed and whether the statements were made during the course of and in furtherance of the conspiracy.

## V.    Summary Of Response To Specific Proposed Exhibits.

### AHIF-1.

As stated above, the defense offers to stipulate to the fact that the handwriting on the check is Soliman Al Buthe's in lieu of a lack of authentication and hearsay objection. The government does not appear to dispute the fact that the handwriting is that of Mr. Al-Buthe.

### AHIF-2 and AHIF-3.

Mr. Sedaghaty objects to these exhibits for the same reasons stated in the original motion in limine, CR 336. These exhibits are inadmissible hearsay pursuant to Rule 802. Nor can the government establish that they are business records under Rule 803(6).

**AHIF-4**

This document contains no indication of when it was prepared, where it was prepared, who prepared it, or when it came into the possession of Al Haramain USA. In addition, the font of this document does not appear to be consistent with any other documents collected by the government via the grand jury subpoena or through the execution of the search warrant. First, the government cannot authenticate this document. Second, while on one hand the government relies on the "correctness" of the document, CR 397 at 12, on the other, the government states that it is not being offered for the truth of the matter asserted. This document is hearsay. The document is not a business record pursuant to Rule 803(6). Neither can it be offered for the government's circular non-hearsay purposes. It cannot be admitted.

**AHIF-5**

As stated in Mr. Sedaghaty's Motion in Limine, this document is unidentified and incomplete. It cannot be authenticated, even by mere possession. Rule 901 requires that the proponent be able to show that a document is what it purports to be. That cannot be done in this case.

**AHIF-6 & 7**

The government acknowledges that these documents are cumulative to other exhibits the government seeks to admit.

**AHIF-10**

This document is inadmissible hearsay pursuant to Rule 802.  Nor it is a memorandum, report, or record kept in the regular course of business pursuant to Rule 803(6).  The government cannot establish who prepared it, when it was prepared, why it was prepared, and meet the other requirements of the business records exception.  Nor can the government establish that this document is an admission, a co-conspirator statement, or reflective of the defendant's state of mind.  Without establishing those facts, the government cannot assert that it is an admission, a co-conspirator statement, or reflective of the defendant's state of mind.  It should not be admitted.

**AHIF-11**

The government recently claimed that an Al-Haramain accountant in Saudi Arabia, Mr. Al-Shoumar, is a co-conspirator in this case. This now allows the government to assert certain documents as statements of a co-conspirator.  As argued above, a hearing is required to determine whether a conspiracy involving Mr. Al-Shoumar exists in order for this Court to determine whether this document can come into evidence as a statement by a co-conspirator.  Even if he is a co-conspirator, there is nothing to support a claim this document was made as part of or in furtherance of the conspiracy charged.

**AHIF-12**

As stated in Mr. Sedaghaty's Motion in Limine, the government cannot

satisfy the business records exception.  Nor can this document be in any way an admission, a co-conspirator statement, or reflective of Mr. Sedaghaty's state of mind.  The government has produced no facts that would provide this Court with any information as to who prepared this document, when or why.

Respectfully submitted this 21st day of July, 2010.


/s/ Steven T. Wax
Steven T. Wax


/s/ Lawrence Matasar
Lawrence Matasar

Michelle Sweet
On the Memorandum