IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Cr. No. 05-60008-HO |
| | ) | |
| Plaintiff, | ) | ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| PIROUZ SEDAGHATY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Before the court are several pending matters in need of resolution prior to commencing trial in this matter.

A.   Motion for Further Disclosure From the Government (#304 and #309)

In his "initial potential witness list" and his initial "potential exhibit list," defendant maintains that the government should be required to provide its anticipated rebuttal and

impeachment evidence and witnesses.[1]  The court has authority to order the government to disclose non-expert witnesses, United States v. W.R. Grace, 526 F.3d 499, 510-11 (9th Cir. 2008), but ordering the government to anticipate rebuttal and impeachment evidence goes too far in requiring the government to divulge trial strategy.  Defendant is not entitled to such lists.  Id. at 511. In addition, there appears to be no authority regarding the courts discretionary power to order the disclosure of rebuttal witnesses.

Defendant makes a somewhat tortured argument that in light of W.R. Grace, the government is required to disclose rebuttal and impeachment witnesses because apparently the defense has been ordered to provide rebuttal and impeachment evidence and thus requiring rebuttal evidence from defendant and not the government violates due process.[2]  The court declines to accept this novel argument and only requires the government to provide a witness list for its case-in-chief and not anticipate and disclose rebuttal

---

[1]The court notes that defendant did not indicate that his witness list (#304) is a motion when e-filing.  The court has been inundated with a barrage of motions in this case, often revisiting issues already decided, and the court has attempted to track them all, but some "motions" not filed as such may have been missed. Therefore, to the extent the court does not discuss any motions not properly labeled as a motion, those motions are denied.   In addition, the court reminds the parties to properly associate filings in support of or in response to motions when e-filed.

[2]Defendant asserts that "what constitutes a defendant's 'case in chief' is unclear....  In most criminal cases, including this one, much of what the defense does is rebuttal or impeachment of the government's case.   Thus, much of what Mr. Sedaghaty is providing here is in the nature of rebuttal and impeachment."

witnesses.  Nor will the court require the government to anticipate and disclose rebuttal exhibits.  The motions are denied.

B.    Motion To Continue Time to File *Daubert* Hearing Request (#332)

The government seeks leave to file Daubert motions late.  The government has filed its Daubert motion, and therefore the motion is denied as moot.  In addition, the government renews its request for reciprocal discovery with respect to expert witness reports and summaries which the court previously granted on July 1, 2009.  To the extent the information has not been provided, the motion is granted.

C.    Defendant's Motion For an Evidentiary *Daubert* Hearing (#329), Government's Motion for a *Daubert* Hearing (#363)

The parties seek an evidentiary hearing to examine the qualifications of their respective experts, W. Patrick Lang and Evan Kohlmann.  The court has conducted a hearing and has received post-hearing briefing.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Ev. 702.

This court must assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 593 (1993). The court's task is to ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Id. at 597.

Although Daubert listed specific factors[3] for assessing scientific testimony, the test for reliability is a flexible one and not all factors necessarily apply to all experts in every case. Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010).

> When considering the applicability of Daubert criteria to the particular case before the court, the inquiry must be flexible. Peer reviewed scientific literature may be unavailable because the issue may be too particular, new, or of insufficiently broad interest, to be in the literature. [footnote omitted] Lack of certainty is not, for a qualified expert, the same thing as guesswork. [footnote omitted] "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." [footnote omitted] "[T]he factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." [footnote omitted] Reliable expert testimony need only be relevant, and need not establish every element that the plaintiff must prove, in order to be admissible. [footnote omitted].

Id. at 565.

---

[3] The Court listed criteria such as testability, publication, peer review, and general acceptance.

The government's proposed expert, Evan Kohlmann, will testify regarding history of the Chechan and Russian conflict and the role of the mujahideen in that conflict, funding practices of certain Islamic charities, the background of Al Haramain and its alleged support of terrorist financing, and the use of internet technology to support the mujahideen.  Kohlmann is qualified by education and experience to testify in these areas.  See, e.g., Resume of Evan Francis Kohlmann (attached to Government's Response to motion for a Daubert Hearing (#344) (degree in international politics with emphasis in international security studies, senior investigator with the Nine/Eleven Finding Answers Foundation, founder of globalterroralert.com, consultant for the Office of the High Representative in Bosni-Herzegovina, etc.).  Kohlman is also well-recognized as an expert in these areas.  See, e.g., United States v. Abu Jihaad (D. CN) Crim. No. 3:07-CR-57-MRK (testified in case regarding providing classified information to publication entity operating jihadist websites); United States v. Ahmed (N.D. GA) 1:06-CR-147-WSDGGB (testified in case regarding casing and videotaping monuments and other sites in Washington, D.C., as targets and sending the videos to known terrorists, who stored and distributed multiple videos of violent jihad); United States v. Amawi (N.D. OH) 3:06-CR-719 (testified in case regarding conspiracy to kill U.S. soldiers in Iraq, recruitment of persons to join jihad in Iraq, providing material support, downloading website materials

for use in training jihadists); <u>United States v. Aref</u> (N.D.N.Y.)
4-CR-402 (testified in a case regarding conspiracy to facilitate
purchase of surface to air missile to be given to terrorists in New
York City); <u>United States v Paracha</u> (S.D.N.Y.) No. 03-CR 1197-SHS
(testified in case regarding an individual posing as a person he
knew to be an Al-Queda operative, to obtain immigration documents
that would assist the Al-Qaeda operative in getting entry to the
U.S., accepting $200,000 of Al-Qaeda funds to invest in his
business); <u>United States v. Mubayyid</u> (D. MA) Cr. No. 05-40026-FDS
(testified in a tax fraud case of a so-called charitable
organization with alleged overt acts of terrorism).  Kohlmann
specializes in the study of international terrorism including the
role of Arab fighters in conflicts such as in Chechnya, terrorist
fund-raising and terrorist recruitment efforts.

Kohlmann's methodology includes gathering information from
open sources (including terrorist leaders and groups themselves)
and secondary materials (such as reports from other experts) and
cross-checking such information with other existing information
from reliable sources.  Other courts have concluded that Kohlman's
methodology is reliable, is subject to peer review, and his
opinions are generally accepted within the relevant community.
<u>See, e.g.,</u> <u>United States v. Paracha</u>, 2006 WL 12768, *20 (S.D.N.Y.
2006).  This court agrees that Kohlmann's methodology is
sufficiently reliable.

In addition, Kohlmann's proposed testimony is relevant to the government's theory regarding the tax fraud charges.   The government contends that defendant and co-conspirators at Al-Haramain sought to assist the mujahideen fighting the Russian forces in Chechnya and to hide such support through the filing of false tax returns and secretly removing currency from the United States.   Kohlmann's testimony may help the jury understand the history of the conflict, the role of the mujahideen, and the practices of Islamic charities and to provide context to the government's theory.   Although the court is leery of the need to delve into the international terrorist financing allegedly motivating the conduct of the co-conspirators, the government must prove intent and may introduce its theory to support its case. Mindful of the potential for prejudice, the court will not allow unfettered testimony.   The court will limit the references to a violent history of jihad and broad discussion of well-known terrorists as necessary, but defendant's motion to exclude expert testimony is otherwise denied.

Similarly, the government sought to analyze the expertise of defendant's expert, W. Patrick Lang.   Lang's proposed testimony covers general antagonism of Muslims toward Russia, defendant Sedaghaty's actions as inconsistent with willful funding of the mujahideen as well as his control of the funds, the peaceful obligations of Muslims, the composition of the inner circle of Al-

Haramain, the likelihood that defendant Sedaghaty was under surveillance, and the trustworthiness of the FSB.

Lang is a retired intelligence officer with prior experience in the Middle East.    Accordingly, he has experience in understanding Muslim culture, Russian intelligence gathering techniques, Al-Haramain, and surveillance techniques.  Much of the proposed testimony is relevant to negating the government's theory in this case.    However, any testimony regarding defendant Sedaghaty's specific willfulness with respect to the distribution of funds at issue will not be allowed.  Lang can, nonetheless, testify generally regarding how one may seek to hide terrorist funding and actions inconsistent with such deceit.  Additionally, Lang may testify about control of funds by terrorist organizations generally.

Lang's expertise is sufficient to allow him to testify regarding Muslim hostility toward Russia and to the extent he is aware that Muslims would thus have pro-Chechan material, he may so testify.  Lang may also testify as to the general tenants of Muslim obligations, but not defendant's adherence specifically.

Lang's testimony regarding surveillance is relevant to Sedaghaty's belief that he was aware of alleged surveillance, but Lang may not offer an opinion as to defendant's knowledge of such surveillance.  So limited, the government's motion is otherwise denied.

D.   Motion in Limine (#335)

The government moves in limine to preclude the defense from offering certain evidence or asking certain questions of witnesses:

1.   Evidence Relating to the Foreign Policy of The United States

As the government sees it, the main issue to be decided at trial is whether defendant Sedaghaty conspired to prevent the United States from discovering Al-Haramain's attempt to fund the mujahideen in Chechnya and whether he later attempted to cover it up by signing a return with the IRS that he knew to be false.  The government maintains that the United States' foreign policy about the conflict in Chechnya or the mujahideen in other parts of the world are irrelevant.

As noted previously, the court is concerned as to why the government feels obliged to delve so far into the Chechnyan issue to show intent, but it has opened the door.  Defendant will seek to rebut the government's evidence regarding the funding of the Chechnyan Mujahideen by showing his concern regarding Russian brutality and that such concern was mainstream and shared by high government officials.  Defendant claims his exhibits are not offered to show any official position of the United States regarding foreign policy—but to rebut intent.

Defendant also seeks to rebut the testimony of Evan Kohlmann to give balance to his opinion.  In addition, defendant claims to

be fighting possible juror perceptions in a post-9-11-01 world regarding Islam and that context to defendant's "peaceful" interest in Chechnya must be provided.

Given the nature of the intent element as the government has framed it, it is not possible to completely exclude evidence regarding foreign policy, but the court will confine it to reasonable exploration.


2.    Interviews with Defendant Sedaghaty

The government seeks to exclude post-9-11-01 interviews (conducted by FBI special agents David Carroll and Joseph Boyer) with defendant Sedaghaty when defendant was not a suspect in any known criminal activity.  The government maintains that any non-self-inculpatory statements defendant may have made are inadmissable hearsay.  The government also maintains that any statements would be irrelevant.

Defendant maintains that the September 15, 2001 statements about the purchase of the Springfield property and the money that Al-Haramain put into it are not hearsay.  It is relevant, but it is hearsay.

Defendant also contends that the fact that Sedaghaty initiated several meetings with the agents during the time period the tax return at issue was being prepared goes to the intent element.  The statements may only be offered for the fact that they were said and

not for their truth.  However, to the extent defendant is again raising issues regarding the motion to suppress in arguing that the jury is entitled to know when the government initiated the investigation into him and that the grand jury was utilized to gather information, the motion is well-taken and the statement may not be offered for that purpose.

### 3.    Terrorist Surveillance Program

The government moves to exclude references to the terrorist surveillance program (TSP).  The court has already ruled on the motion to suppress finding that the TSP played no role in Agent Anderson's decision to seek a warrant in this case.  Despite the defense's attempts to link Judge Walker's recent decision regarding illegal electronic surveillance of Al-Buthe's attorneys phone calls, there has been no showing of relevance to these proceedings and it is not a jury issue at any rate.  The information, however, might be permissible for impeachment purposes depending on Kohlmann's testimony.  The court, nonetheless, declines any invitation to allow defendant to argue that the failure of the government to provide evidence regarding the TSP permits an inference of a reasonable doubt.

### 4.    Length of Time Between Transaction and Prosecution

The government moves to exclude reference to the length of

time it took to bring this case forward.  Defendant agrees that so
long as the government does not offer evidence of flight, then he
will not need to raise this issue or the issue of his voluntary
return.  The motion is granted on this issue.


   5.   References to Defendant's Attempts to Condemn Osama bin
Laden, the Bombings of the U.S. Embassies in East Africa, and the
Terrorist Attacks of September 11, 2001

   The government seeks to exclude exhibits offered to show
defendant sought to condemn acts of terrorism.  The defense theory
will apparently be that Sedaghaty was a peaceful man and that such
rebuts the willfulness element.  The government opened the door by
making this case about the Chechan Mujahideen.  Defendant,
nonetheless, has a difficult task in arguing that the statements
are offered merely for the fact that they were made rather than the
truth of the matter asserted.  A strong jury instruction may be
necessary if defendant wants to go with peaceful nature theory and
use the condemnations not for the truth but to show that they were
said.  The motion is denied.


   6.   Classified Evidence

   The court does not, at this stage, intend to allow any
classified evidence to be presented to the jury.  The motion is
granted without prejudice.

E.   Motion in Limine (#336)

Defendant moves to exclude many of the government's proposed exhibits and testimony.   In general, defendant attacks the government's evidence regarding intent as circumstantial, based on hearsay and guilt by association.   Defendant's argument more accurately is about the weight to be accorded evidence by the trier of fact rather than admissibility (e.g., e-mails found on his computer could have been read, authored by others besides himself). The court will address objections where the government has not agreed to withdraw the exhibit.


1.   BOA-6

This is a check to Daveed Gartenstein-Ross offered as a prior bad act to show defendant lied to his accountant and to show intent regarding the disposition of Al-Haramain funds.   The court tentatively finds that the check is admissible as 404(b) evidence.


2.   BOA-9a

Defendant objects to the "to our account" written on the back of this exhibit.  The government states that it is an admission of a party opponent or co-conspirator, but defendant argues its author is unknown.  Because the check is made out to Al-Buthe, the court will admit the exhibit as an admission of a party opponent.

### 3.    BOA 12-13

These exhibits relate to an Al-Haramain and Al-Buthe account related to the purchase of the mosque in Missouri which is relevant to the tax charge.  The motion is denied.

### 4.    BOA 14-16

These exhibits are intended to show prior acts of sending money to the mujahideen in Kosovo.  They are relevant as to intent and knowledge and their relevance outweighs prejudice depending on how the government connects the evidence.  Nonetheless, the court will not entertain a trial within a trial and expects the government to be economical with this type of evidence.

### 5.    ICE FinCen-1

This exhibit is related to Al-Buthe's concealment of moving currency out of the country and knowledge of requirements to file CMIRs.  Defendant contends that the knowledge cannot be imputed to him, but there is a conspiracy charge.  The motion is denied.

### 6.    RDK 1-2

Defendant objects to these exhibits obtained from an attorney representing Al-Haramain on a real estate transaction in Missouri as attorney-client privileged.  The government argues that the documents contain no legal advice, but reflect that Al-Buthe and

Sedaghaty knew about details of a real estate transaction.  RDK 1 shows the typical documents associated with such a transaction: HUD statement, inspection report, survey, etc.  RDK 2 shows various notes about calls received from Sedaghaty and Al-Buthe about documents and funds transfers.  There is no legal advice, just mundane housekeeping matters.  The motion is denied.


   7.   AHIF 2, 3, 4, 5, 6, 7, 10, 11, 12

   The government has responded to these objections in a separate pleading and the court has already ruled with respect to these in court.  Defendant seeks reconsideration of that order and the motion for reconsideration (#403) is denied.


   8.   SW 1

   These are videos of Chechan battles with Russian forces. Defendant objects because he claims there is no indication he owns or saw them, they are too remote in time to the charges, are irrelevant and overly prejudicial.  The videos were found in Sedaghaty's residence and allegedly used to raise funds for the mujahideen.  The motion is denied without prejudice.


   9.   Most of the SW exhibits

   These are e-mails found on Sedaghaty's computers.  The government will connect many e-mails to unindicted co-conspirators

(Abdul-Qaadir, Abdul-Khaaliq).  Many e-mails concern support for the mujahideen in Chechnya and are timed around the $150,000 donation and Fatwas.  The location of the hard drives is enough to connect the e-mails to Sedaghaty and co-conspirators.  The hearsay objections are not well-taken because the government will not offer much of it for the truth of the matter asserted, but for state of mind.  Moreover, the statements could be verbal acts of the conspiracy.  Other statements may qualify as admissions as well. The e-mails are relevant.  The motion is denied.

### 10.  EK 1-7

These are Evan Kohlmann exhibits.  The connection to Al-Haramain is enough to connect them to defendant even though it is not directly Al-Haramain USA.  The motion is denied.

### 11.  FSB 3, 3a and 3b

The government argues these exhibits will show the non-charitable nature of Al-Haramain funding in Chechnya.  Foundation is an issue as they are translated from Russian and were seized by the Russian Federation at a training camp in Chechnya.  The court declines to admit these documents at this time until a proper foundation has been laid.

### 12.  DGR 1 and 2

These exhibits (appendix to the Qur'an and Islamic Guidelines espousing Jihad) were allegedly distributed by Al-Haramain in Ashland.  The exhibits are admissible to show state of mind.

### 13.  Defendant's Marital Practices

Defendant moves to exclude evidence related to his marriages. The government does not intend to offer such evidence, but could offer evidence that he is married to particular witnesses or to someone in control of computers etc.  The motion is granted, but the government may offer evidence of marriage for the purposes stated above.

### 14.  Flight

The government does not intend get into evidence of flight and the motion to exclude such evidence is denied as moot.

### F. Motion in Limine (#341)

Defendant moves to exclude any reference to the title of Daveed Gartenstein-Ross' book "My Year Inside Radical Islam." The government does not appear to have responded and the motion is granted.

G.   Motion in Limine (361)

Defendant seeks to prevent the government from referring to anyone as a co-conspirator.  The motion is denied.

Defendant also seeks to prevent the government from referring to anyone or any organization as a designated terrorist. The danger of prejudice outweighs any relevance and the motion is granted.


H.   Motion to Strike Overt Act "A" (#362)

Defendant seeks to strike the allegation in Count 1 that occurred prior to the defined time period of the conspiracy.  The allegation reads:

> In February 1999, defendant PIROUZ SEDAGHATY filed an application to incorporate the Al-Haramain Islamic Foundation in Oregon. He listed a mail service business located at 1257 Siskiyou Blvd. in Ashland, Oregon as the corporation's principal place of business.

While any act occurring prior to the existence of a conspiracy can effect it, this allegation appears nearly innocuous. Furthermore, the indictment charges that from "late 1999 - October 2001 ... defendants did conspire..." The law allows the government to allege dates without being precise so long as the acts occurred on or about the time frame.  The motion is denied.

I.   Motion for Jury Questionnaire and Amended Motion for Jury Questionnaire (#367 and #371)

Defendant seeks to utilize a questionnaire to facilitate the voir dire process.  The motion is denied.


J.   Motion for Increased Peremptory Challenges in Voir Dire (#368)

Defendant seeks to increase the number of peremptory challenges available to the defendant to fifteen.  Given the sensitive nature of this case and the government's theory, the motion is granted to the extent that defendant shall have twelve peremptory challenges and the government shall have eight.


K.   Motion for Individual Sequestered Voir Dire (#369)

Defendant seeks to conduct individual sequestered voir dire to ensure complete candor and impartiality.  If circumstances arise during voir dire necessitating a need for individual voir dire, the court will conduct it, but the motion is denied without prejudice at this time.


L.   Motion for Participation in Voir Dire (#370)

Defendant seeks permission to participate in the voir dire by asking questions directly of the jurors after the Court has completed its questioning of the venire.  The court will determine

the appropriateness of true follow-up questions at the time of voir dire, but the motion is denied without prejudice at this time.

M.    Motion for Bill of Particulars (#374)

Defendant renews his request for a list of the alleged unindicted co-conspirators.  The motion is denied.  Defendant also requests this court to determine the existence of a conspiracy by a preponderance of the evidence and the identities of the co-conspirators and any statements of such co-conspirators the government intends to introduce at any time during the trial including through cross of any defense witness.  The court has already denied this request in court.  The government must establish, by a preponderance of the evidence, there was a conspiracy involving defendant and any declarant, of whom the government seeks to admit a statement, and that the statements were made in furtherance of the conspiracy for admissibility under the co-conspirator rule at Fed. R. Ev. 801(d)(2)(E).  The government will have to satisfy this burden and will be allowed to do it at trial and at which time, the court can allow a given document into evidence if the burden is met.

N.   Motion in Limine (#385)

Defendant seeks to exclude any government witness, including Evan Kohlmann, from relying on or referring to Government Exhibits FSB-1 through FSB-3b and any other material provided by the FSB.

Although it appears the government will not be able to lay a proper foundation for the admission of the FSB exhibits, experts are not precluded from relying on such exhibits under Fed. R. Ev. 703 so long as they are a type of data reasonably relied upon by experts in the field.  These exhibits are the type of data Kohlmann has relied on along with other data for cross-checking.  Although the defense expert has expressed his opinion that FSB documents are unreliable, the court declines to restrict Kohlmann from utilizing such data.  The government maintains that Kohlmann will express his opinions without disclosing the FSB exhibits, but the documents may come to light through cross examination by defense counsel if the defense wishes to test the weight to be given Kohlmann's testimony in this regard.  The motion is denied.


O.   Motion in Limine (#402)

Defendant seeks exclusion of proposed government exhibits SW-1 and EK-7.

The government has prepared a compilation of video clips which is what the government intends on introducing at trial. These clips are compiled from the videos labeled as SW-1 and EK-7

which are videos found at the Al-Haramain building and video downloaded from the internet by Evan Kohlmann.   This motion will be decided after the government's response is received.


DATED this ___10th___ day of August, 2010.


                              ___s/ Michael R. Hogan_____
                              United States District Judge