DWIGHT C. HOLTON, OSB #09054
United States Attorney
District of Oregon
**CHRISTOPHER L. CARDANI**
Assistant United States Attorney
chris.cardani@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, OR 97401
Telephone:  (541) 465-6771
Facsimile:  (541) 465-6316
**CHARLES F. GORDER, JR.**, OSB #91287
Assistant United States Attorney
charles.gorder@usdoj.gov
1000 S.W. Third Ave., Suite 600
Portland, OR  97204
Telephone:  (503) 727-1000
Facsimile:  (503) 727-1117
Attorneys for United States of America

## UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON
### EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 05-cr-60008-02-HO |
| v. | |
| **PIROUZ SEDAGHATY,** | GOVERNMENT'S RESPONSE TO DEFENDANT'S FOURTH |
| Defendant. | ADDITION TO MOTION IN LIMINE |

## I. INTRODUCTION

In defendant's Fourth Addition to Motion in Limine (CR 402), the defendant seeks to exclude the introduction into evidence of portions of three videos referred to as Government Exhibits SW-1 and EK-7.  Because the probative value of these video excerpts outweighs any prejudicial effect, this motion should be denied.

## II.  EXHIBIT SW-1

During the execution of the search warrant in 2004, agents discovered several video tapes sitting on shelves in the living room at the defendant's Ashland residence. Government Exhibit SW-1 consists of two of those video tapes which are about the conflict in Chechnya. These videos contain a mixed compilation of scenes gathered from various videos filmed in Chechnya and television broadcasts from various local and international sources. Before the internet became ubiquitous and sites such as "You Tube" existed, video tape VHS compilations such as these were produced to be used at fund raisers for various mujahideen causes, including the cause of the mujahideen in Chechnya. We have labeled the two videos "Chechnya 1" and "Chechnya 2." According to Evan Kohlmann, Chechnya 1 was produced by the AIG group, a part of a terrorist recruitment operation headquartered in Southern California. The video was produced for the purpose of raising funds for Chechnya. Chechnya 2 is a similar video, although the identity of the producers is unknown.

Chechnya 1 and Chechnya 2 are approximately 50 minutes each in length. The relevance of these fund raising videos is obvious. Most of the videos found at the Al-Haramain property in Ashland, such as the large numbers of Discovery or Learning Channel VHS tapes referred to in defense counsel's memorandum, were stored in a trailer sitting outside of the premises on another portion of the property. In contrast, these two video tapes were found sitting inside the premises in the living room. The jury can infer from the location of these tapes that they were accessible for viewing and reflect the interests and state of mind of defendant Sedaghaty in assisting the mujahideen in Chechnya. Defense counsel is correct that the videos are grainy and somewhat

/ / /

amateurish. But that was the nature of the mujahideen fund raising beast which compiled these videos. These were not Hollywood productions.

In order not to tax the jury's time by playing all 100 minutes of these two videotapes, the government has selected short excerpts to introduce into evidence. We propose to play approximately 3½ minutes of the 50 minutes of Chechnya 1, including the short opening and closing credits from the AIG Group asking for donations, and a 2½-minute representative clip showing scenes of Chechen citizens dancing and the mujahideen parading and shooting at Russian aircraft. Similarly, with Chechnya 2, we propose to play three clips totaling less than 2 minutes, including a scene of children with an AK-47 rifle shouting "Allah Akbar," less than a minute from a much longer portion of Chechnya 2 showing the debris from a downed Russian helicopter and the burning body of a Russian pilot, and a short clip of the mujahideen marching and training to disperse in the event of an attack. None of the clips are overly gruesome or much different (except in technical quality) than one would find in many PG-rated action movies.

These short clips are, however, representative of the two Chechnya videos as a whole.[1] Counsel's complaint that they are old or undated goes to the weight of the evidence, not to its relevance. In establishing defendant Sedaghaty's state of mind, it is important for the jury to know that videos designed for Chechen mujahideen fund raising were located in the premises he lived in and supervised.

*United States v. Al-Moayad*, 545 F.3d 139, 161-62 (2nd Cir. 2008), cited by counsel, does not hold to the contrary. There, live testimony by a victim of a Hamas suicide bombing and a video

---

[1] The government will separately submit to the Court individual CDs containing the entire full videos and separate CDs containing the specific clips the government proposes to introduce.

**Government's Response to Defendant's Fourth Addition to Motion in Limine        Page 3**

of that event was played for the jury in a material support of terrorism case where the defense was entrapment. The Second Circuit found that the bombing "was almost entirely unrelated to the elements of the charges," 545 F.3d at 161. The defense had offered to stipulate to the relevant element for which the video was offered – knowledge that Hamas was a terrorist organization. Here, the defendant is not stipulating to his willfulness in concealing from the government the disposition of the El Fiki funds. Indeed, much of the trial will be about just that subject. His interest in the Chechen conflict and his knowledge of fund raising activity in connection therewith is substantially probative of willfulness.

### III.  EXHIBIT EK-7

The defense also objects to the introduction of government exhibit EK-7, which is a DVD of a video originally released by the Islamic Army of the Caucasus, the official title of the foreign mujahideen group in Chechnya led by Ibn ul-Khattab. EK-7 will be submitted during the testimony of expert witness Evan Kohlmann to aid the jury in understanding the nature of the conflict in Chechnya, the history and role of the Arab mujahideen there, and the Kavkaz (or "Caucasus") Institute established by the mujahideen in Chechnya to train their recruits. In his research, Kohlmann has observed this particular video posted on a number of different websites over the years. He indicates that this particular version which he downloaded from a mujahideen website has the best video quality he has seen. The entire video is about 26 minutes long. Again, we propose to play only a representative sample consisting of five shorter clips totaling about 9 minutes. The first clip simply shows the entrance to the Kavkaz training camp; the second clip shows approximately 46 seconds of a lecture to the recruits about defeating the Russians in the jihad; the third clip shows less than 4 minutes of training exercises at the Institute for the mujahideen; the

fourth clip of 30 seconds provides an overview of the Kavkaz Institute training camp; the final clip contains less than 4 minutes of various scenes of actual fighting in Chechnya between the mujahideen and Russian forces.

We agree that this third video was not found on the Al-Haramain USA premises or that there is evidence that defendant Sedaghaty ever saw it on the internet. But as an expert Kohlmann can use the video to assist the jury to understand what the foreign mujahideen were doing in Chechnya. There is no question concerning the connection between Al-Haramain, the defendant, the Institute, and the Chechen mujahideen. Al-Haramain took credit for supporting the Institute on its website (EK-6). Al-Haramain even published fatwas on its own website supporting the Chechen mujahideen and suggesting it was an obligation for all Muslims to provide support for the Chechen mujahideen (EK-4 and EK-5). Defendant Sedaghaty himself e-mailed Al-Haramain headquarters to relay the complaints of the Chechen mujahideen leader Ibn ul-Khattab that Islamic charities were not sufficiently supporting their cause.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Government's Response to Defendant's Fourth Addition to Motion in Limine**       **Page 5**

## IV. CONCLUSION

For the reasons given above, the Court should deny the defendant's Fourth Addition to Motion in Limine (CR 402) and allow the jury to view the video clips denominated SW-1 and EK-7.

Dated this 18th day of August 2010.

                                          DWIGHT C. HOLTON
                                          United States Attorney


                                          /s/ *Charles F. Gorder, Jr.*
                                          CHARLES F. GORDER, JR.
                                          Assistant United States Attorney


                                          /s/ *Christopher L. Cardani*
                                          CHRISTOPHER L. CARDANI
                                          Assistant United States Attorney