Steven T. Wax, OSB No. 85012  
Federal Public Defender  
101 SW Main Street, Suite 1700  
Portland, OR  97204  
Tel: (503) 326-2123  
Fax: (503) 326-5524  
Email: steve_wax@fd.org  

Lawrence Matasar, OSB No. 74209  
621 SW Morrison Street, Suite #1025  
Portland, OR 97205  
Tel: (503) 222-9830  
Email: larry@pdxlaw.com  

**Attorneys for Defendant**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CR 05-60008 |
| Plaintiff, | |
| v. | **EVIDENTIARY PLEADING IN RESPONSE TO COURT'S DIRECTIVE OF AUGUST 19, 2010** |
| **PIROUZ SEDAGHATY,** | |
| Defendant. | |

This pleading is filed in response to the Court's directive of August 19, 2010.  On August 11, 2010, the Court issued an extensive ruling on pretrial

Page 1 -    EVIDENTIARY PLEADING IN RESPONSE TO COURT'S DIRECTIVE OF AUGUST 19, 2010

evidentiary motions. Subsequently, the government contacted the Court requesting clarification on several points. The parties then filed trial memoranda which raise several additional issues.

**I.    THE COURT HAS APPROPRIATELY RULED ON EVIDENTIARY MOTIONS IN LIMINE AND NO ADDITIONAL RULINGS SHOULD BE ISSUED ON THE MATTERS**

The government, in its Motion in Limine (CR 335), raised general objections to six broad categories of defense evidence. For example, the government, having acknowledged that it had examined the defendant's proposed exhibits, objected to any references to Mr. Sedaghaty's attempts to condemn Osama bin Laden, the bombings of the U.S. Embassies in East Africa, and the Terrorist Attacks of September 11, 2001. CR 335 at 4. Further examples are the government's objections to "Evidence Relating to the Foreign Policy of the United States" and to the "Length of Time Between Transaction and Prosecution." It is worth noting that the government did not move against specific defense exhibits in CR 335 or in any subsequent motions.

In its Order filed August 11, 2010, CR 407 at pages 9-12, the Court ruled on each of the six categories in the government's motion. For example, the Court denied the motion regarding references to Mr. Sedaghaty's attempts to condemn Osama Bin Ladem, et .al, CR 407 at 12. As to the government's objections about United States Foreign Policy, the Court ruled: "Given the nature of the intent element as the government has framed it, it is not possible

to completely exclude evidence regarding foreign policy, but the court will confine it to reasonable exploration." CR 407 at 10. And the Court granted the government's motion as to the length of time between transaction and prosecution. CR 407 at 12.

The defense, as the Court noted in its footnote 1 of CR 407, filed a number of evidentiary motions, most of them specifically objecting to named government exhibits. In the defense's Motion in Limine (CR 336), the defense addressed each government exhibit as proposed at that time. For example, the defense raised objections to exhibits such as BOA-6, BOA-9a, BOA-12-16, ICE FinCen-1, RDK 1-2, AHIF 2, 7, 10-12, SW1, etc.. In the Court's Order filed August 11, 2010, CR 407 at pages 13-18, 21-22, the Court ruled on the defense motions, granting some and denying some.

Thus, the defense believes that the Court has ruled on pending motions in limine, and that no additional pretrial rulings on such motions are necessary or appropriate.

## II.   F.R.E. 404(B) AND THE GOVERNMENT'S RENEWED OBJECTIONS TO DEFENSE EXHIBITS

In its trial memorandum, the government identifies seven items it intends to offer under F.R.E. 404(b) believing that they are admissible to establish motive, opportunity, intent, knowledge, and absence of a mistake. In essence, the government is seeking to prove its case, in part, by showing a

pattern of behavior and arguing that Mr. Sedaghaty acted in conformity therewith with respect to the donation from Dr. El Fiki. The Court has already ruled that some of these items are admissible over Mr. Sedaghaty's objection and he will not revisit the issues here. The government's pleading and requests for further ruling by the Court on defense exhibits, however, raises one general and two specific issues.

### A. The "Goose And Gander" Aspect Of This Case

As the Court has already noted in its ruling on evidentiary matters, both sides are proffering a significant number of exhibits and witnesses who will testify about surrounding facts that bear on the question of willfulness and intent. Mr. Sedaghaty understands the government will be asking the Court to revisit its ruling with respect to a number of defense exhibits and witnesses. Mr. Sedaghaty urges the court to keep in mind the finding of a parallel nature of the government and defense cases that it has already reached. *See also* CR 348.

### B. Government's Proposed Evidence Of "Lies To His Accountant," CR 415, p. 20

The government suggests in its trial memorandum that it will seek to elicit that Mr. Sedaghaty lied to his accountant about a check written to Daveed Gartenstein-Ross, saying "This affected AHIF's obligation to withhold taxes." Such evidence should be ruled inadmissible under a F.R.E. 403, 404(b)

analysis. This indictment does not include any allegation regarding tax withholding for employees. Issues with respect to tax withholding will be unduly prejudicial and confusing.

### C. Alleged Collection of Funds During Hajj

The government's argument that the proposed testimony from Barbara Cabral founders on its very pleading. It says that "Mr. Sedaghaty **apparently** gave the money to co-defendant Al Buthe." (Emphasis added). In order to be admissible under F.R.E. 404(b), a higher standard is required. *See* CR 336 at p. 14.

### D. Al Rajhi Bank Records

Mr. Sedaghaty has not yet challenged the government's proffer of Al Rajhi Bank records. CR 405. He does not disagree with its statement of the law. However, Mr. Sedaghaty objects to the introduction of Al Rajhi Bank records.

Under the law, he is not permitted to seek to subpoena records in the manner the government did in order to obtain those records from Saudi Arabia. He requested that the government utilize its resources to assist him in obtaining other records from the Al Rajhi Bank. The government refused. It would be fundamentally unfair and violate the reciprocal aspects of due process to permit the government to introduce a set of records it obtained when it was on clear notice from Mr. Sedaghaty, and indeed from its own expert since 2004, that the Al Rajhi Bank had approximately thirteen accounts related

Page 5 -   EVIDENTIARY PLEADING IN RESPONSE TO COURT'S DIRECTIVE OF
           AUGUST 19, 2010

to Al Haramain and information from receipts from Al Haramain that the money in issue in this indictment was deposited in one of those accounts. Its failure to use its resources on its own behalf, or as Mr. Sedaghaty requested, should preclude it from introducing the records that it did obtain.

### E.  Peremptory Challenges

This Court has found that "the sensitive nature of this case and the government's theory" warrant increasing the number of peremptory challenges available in voir dire. Mr. Sedaghaty is appreciative of that ruling. He has just learned, however, that the method of making peremptory challenges utilized by this Court is what is sometimes known as the "blind strike" method. The method of striking with which both of Mr. Sedaghaty's counsel are familiar in the federal and state courts in this district is one in which the parties trade the peremptory challenges back and fourth. Mr. Sedaghaty urges the Court to utilize that method in this case. The reality of the blind strike method is that it dilutes the meaningfulness of the strikes.

The importance of as meaningful a process as possible is underscored by a quick review of media coverage. During the past six months, a review of news articles about Muslims on Fox Television through Lexis Nexis revealed 231 results for the term "Muslim" with 144, including a combination of the terms "Muslim," "terrorist" or "terrorism." From February 1, 2010, to March 10, 2010, the Eugene Register Guard printed 23 articles as revealed by a

Page 6 -    EVIDENTIARY PLEADING IN RESPONSE TO COURT'S DIRECTIVE OF
            AUGUST 19, 2010

search of its website using a term "Muslim."  A review of the articles revealed that nine portrayed Muslims in a negative light or revealed anti-Muslim bias in the local community.  In the same period, 73 articles appeared in the Oregonian mentioning or discussing Muslims.  Fourteen in particular portrayed Muslims in a negative light.  From January 1, 2010, to August 10, 2010, the search for articles in the New York Times containing the word "Muslim" returned 1326 search results.  We were not able to review all of the articles.  A significant number portrayed Muslims in a negative light and/or discussed terrorist acts.

      The manner in which the "blind strike" method dilutes peremptory challenges is revealed by the following example.  Given the additional challenges granted by the Court, the parties will be making strikes against 32 prospective jurors after challenges for cause have been resolved.  Assume that a party wants to utilize a strike against juror 30 believing that he or she is one of the most biased in the pool.  In a blind strike method, if both parties have utilized their strikes against three of the same jurors, jury 30 will then never be reached and utilization of a strike against him would prevent the party from striking, for example, juror 15, a person the party would have struck but had been resigned to keep as the lesser of two evils.

      While a blind strike method can reduce the time that it takes to exercise peremptory challenges somewhat, the total time utilized for challenges is, in

any event, de minimis in the scope of the trial. The parties have discussed this issue. Mr. Sedaghaty is not yet aware of the government's position.

### III.   DEFENSE EXHIBIT 730

We are withdrawing Defense Exhibit 730 in its current form and seek an order from the Court as set out below.

The Al-Sanad unclassified summary statement appears to be a mixture of exculpatory information directly from the witness, that has been commingled with information from other unknown sources, and improper credibility determinations regarding the Al-Sanad information. The information directly from the witness appears to be that: Sami 'Abd Al 'Aziz Al Sanad worked during 2000 and 2001 for the Al Haramain organization; Al-Sanad was responsible for providing currency supplied by Al Haramain to an un-named person; the monies Al-Sanad provided to the person were destined for needy Chechen families. Additional information connecting the recipient of the money to Mr. Abu Umar appears to come from a different source of unknown reliability. The summary also contains language, such as "Al Sanad has 'claimed,'" that questions Al-Sanad's veracity or credibility. The defense should be entitled to offer the exculpatory information directly provided by Mr. Al-Sanad distinct from information or credibility determinations of unknown value provided by unknown sources.

We ask the Court to order the government to write an uneditorialized summary or, instead of a summary, provide the defense with a declassified version of the underlying reports that support the summary. Whether the government provides an uneditorialized summary or a declassified version of the supporting documents, the government should provide the Court a complete classified version of the documents for a comparison review.

The Al-Sanad statement is clearly exculpatory. Mr. Sedaghaty has previously argued how the classified nature of such evidence cannot trump his right to compulsory process. The information in its current form is insufficient.

## IV.    REPLY TO GOVERNMENT RESPONSE RE EXHIBITS SW-1 AND EK-7

In the government's response to defendant's Fourth Addition to Motion in Limine, it has not presented any argument that supports the inclusion of these videos during this trial, either in the compilation "clip" form or as a whole. None of these videos are relevant in this case. If there is any probative value it is far outweighed by overwhelming prejudice.

Specifically as to SW-1, which includes videos that have been labeled as "Chechnya 1" and "Chechnya 2," the defense expert, Professor Keskin, has reviewed these videos in their entirety.[1] His review confirms that the videos appear to be made up of personal videos (of others, not Mr. Sedaghaty),

---

[1] Professor Keskin's report was provided to the government on August 17, 2010.

Page 9 -    EVIDENTIARY PLEADING IN RESPONSE TO COURT'S DIRECTIVE OF
            AUGUST 19, 2010

television footage from Turkey, Russia and possibly Azeri.   He confirms that these videos are examples of propaganda used to foster support from Muslims and non-Muslims for the Chechen conflict.  After a lengthy analysis, Professor Keskin concludes that "it appears very clear that these videos are not particularly unique, and are very similar to other such media that was publically available throughout the region in the early 1990s.  In my view, this is much more reflective of sympathies towards a nationalist struggle and bears little in common with efforts driven by religious interests and political Islam.  It has more secular content and very little to do directly with religious propaganda."

More importantly, as to relevance, these videos are compiled from clips, dated as early as November 9, 1991 and the oldest footage is from May 7, 1995.  There is no footage of anything from or related to the second conflict in Chechnya.  As the Court has noted, the government has made a great deal out of the Chechen conflict in this case.  At the very least, evidence regarding the Chechen conflict should be limited to the relevant time period at issue in this case.  None of these videos relate to anything beyond 1995.  Admission of this evidence would distract the jury from the issues in this case.  As suggested by the government, in order to address the "weight" of the evidence, a lengthy analysis by Professor Teskin would be required.

The video labeled ER-7 is unrelated to Al Haramain Ashland or to Mr. Sedaghaty.  In addition, it appears cumulative of the testimony that Mr. Kohlmann will be permitted to present during trial.  This evidence is unnecessary and irrelevant.  If found to be relevant, any probative value is outweighed by the prejudice it presents.

**V.    DEMONSTRATIVE EVIDENCE, SUMMARY EVIDENCE AND AGENT TESTIMONY**

In its trial memorandum, the government has sections on demonstrative evidence, summary evidence, and agent testimony.  Assuming that the Court intends to permit the government to proceed in this manner, the defense intends to do the same.

**VI.    VIDEO TESTIMONY**

This week the defense was finally able to contact a witness it has been seeking for much of the time that this case has been under investigation.  He is a highly exculpatory witness on one of the pieces of evidence the government believes is critical, AHIF 3 - he was present in Ashland on March 10, 2000, when the calculations were made and the document was signed.  Unfortunately, he is in China and, at this point, it does not appear as though it will be possible logistically to get him to Oregon in time for the trial.  We have determined that there is a United States Consulate in his home city and anticipate filing a formal motion early next week to take his testimony via video

hookup.

    Respectfully submitted this 20th day of August, 2010.


                                             /s/ Steven T. Wax
                                             Steven T. Wax
                                             Federal Public Defender

                                             /s/ Lawrence H. Matasar
                                             Lawrence H. Matasar