Steven T. Wax, OSB No. 85012
Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR  97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Email: steve_wax@fd.org

Lawrence Matasar, OSB No. 74209
621 SW Morrison Street, Suite #1025
Portland, OR 97205
Tel: (503) 222-9830
Email: larry@pdxlaw.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | No. CR 05-60008 HO |
| Plaintiff, | |
| v. | **DEFENDANT'S MOTION TO STRIKE; MOTION FOR CURATIVE JURY INSTRUCTION** |
| **PIROUZ SEDAGHATY,** | |
| Defendant. | |

Defendant, Pirouz Sedaghaty, by and through his attorneys, Federal Public Defender Steven T. Wax and Lawrence Matasar, hereby moves to strike prejudicial remarks of Assistant United States Attorney Christopher Cardani made while

Page 1.    DEFENDANT'S MOTION TO STRIKE; MOTION FOR CURATIVE JURY INSTRUCTION

posing a hypothetical question during the redirect examination of IRS Agent Gregory Wooten.

By introducing prejudicial information to the jury that is not in the record, or even in discovery provided to the defense, the government has violated Mr. Sedaghaty's right to due process of law.

Defendant asks that the prosecution's conduct be addressed by: (1) a jury instruction reciting the remarks and informing that jury that they are stricken from the record because they are not supported by evidence; (2) the admission of defense requested Exhibit 678, the El Fiki FBI interview.

## ARGUMENT

The government asked the following hypothetical question at Tr. 171 (September 2, 2010, P.M. Session):

> Assume there's a wealthy Egyptian individual who wants to donate money to the Chechnyan mujahideen[1] to support a fight in Chechnya[2], and knows that there's an operation in Saudi Arabia, and

---

[1] There is no evidence in the record that El Fiki wanted to donate money to Chechen mujahadeen. The record reflects he had heard of a "Saudi Committee" and wanted to donate money as Zakat. Exhibit 669. Exhibit 678, not yet admitted, explains that El Fiki acted in response to a request for "donations for providing humanitarian aid to Chechnyan widows, orphans and refugees." Exhibit 678 further provides that before he made his donation, El Fiki was assured by contacts in Saudi Arabia and by a trusted employee that the foundation had a good reputation for providing humanitarian aid.

[2] There is no evidence in the record that El Fiki wanted to support a fight in Chechnya. *Supra.*

**Page 2.    DEFENDANT'S MOTION TO STRIKE; MOTION FOR CURATIVE JURY INSTRUCTION**

there's an office in Ashland, Oregon[3], and decides to send the money from an account that he has overseas to the United States rather than to Saudi Arabia to conceal the transaction from the Egyptian government.[4]

---

[3] There is no evidence in the record that El Fiki knew of an "office" in Ashland, Oregon. After he requested whether Al Haramain Riyadh had "an account" in London, he was told that they had "an account" in Ashland, Oregon, USA. Ex. 670-671.

[4] There is no evidence in the record that El Fiki intended to conceal the transaction from the Egyptian government. To the contrary, the formidable Egyptian State Security Investigations Service (SSIS), a branch of the Interior Ministry, reported to the FBI that it "conducted extensive investigation into El Fiki's finances." Exhibit 678, p. 1. The SSIS made no allegation that El Fiki tried to conceal the transaction from the Egyptian government, but rather advised the FBI:

> El Fiki has donated upwards of approximately 35 million Egyptian Pounds (converted to **S.** dollars using conversion rate of 5.87 Egyptian pounds to the dollar, is equivalent to approximately $5.9 million), during his lifetime to various charitable causes throughout Egypt. He has been primarily involved in the construction of, and the purchase of equipment for hospitals in Egypt. He prefers to use his money to build facilities or to purchase specific equipment as opposed to donating cash.
>
> El Fiki has no interest in seeking publicity for his philanthropy and deflects inquiries about his charitable works. He has never had a hospital named after him. He typically directs hospital administrators in charge of naming their facilities to use the names of honored deceased individuals to name the buildings. Earlier in his life El Fiki donated approximately 10% of his income to Zakat. Investigation conducted by SSIS revealed that later in life El Fiki donates approximately 80% of his income to charity.
>
> El Fiki is an engineer who received a Ph.D. in Engineering from Sofia University in Sofia, Bulgaria. El Fiki owns and operates the Cairo Construction Company (CCC). CCC was, and continues to be a prominent builder of hospitals in Egypt. The company has been

Page 3.      DEFENDANT'S MOTION TO STRIKE; MOTION FOR CURATIVE JURY INSTRUCTION

By contrast, when Mr. Matasar was invited to ask a hypothetical question, he asked the following, Tr. 158-59 (September 2, 2010, P.M. Session):

> Assume -- assuming a wealthy Egyptian wants to give money as Zakat to widows and orphans in Chechnya, and assuming this wealthy Egyptian contacts people in Saudi Arabia at an organization called al-Haramain. They have an office in Riyadh. And assuming this wealthy Egyptian writes to them and says: I hear about this work you're doing with the Saudi committee and I want to give as Zakat -- you know what Zakat is?
>
> A.   Yes.
>
> Q.   I want to give as Zakat some money to you. I have an account in London and I want to give money, if you have one, to your account in London.

And further assume that the wealthy Egyptian is told by the Riyadh organization that:

> We don't have an account in London. If you want a western bank, we have an account in United States or you can send it to our account in Saudi Arabia.
>
> Assuming further that the wealthy Egyptian then sends the money to the account in the United States. Assume further that all the transactions, all the e-mails, are between the Egyptian and the Saudi branch. Assume that there is nothing in the e-mails that indicates that there is any branch or office, anything in the United States other than a bank account, okay?

---

involved in numerous large building projects throughout Egypt. Ex 678.

**Page 4.**     **DEFENDANT'S MOTION TO STRIKE; MOTION FOR CURATIVE JURY INSTRUCTION**

While the facts in Mr. Matasar's hypothetical question are supported by Exhibits 668-670, the government's hypothetical improperly included prejudicial facts that are not in evidence nor supported by any information that may come into evidence.

While Mr. Cardani claimed to the Court that the reason for including the statement, "there's a wealthy Egyptian individual who wants to donate money to the Chechnyan mujahideen," was based on information that Mr. El Fiki is somehow associated with the Muslim Brotherhood, there has been nothing suggested throughout this case that would support that conclusion, nor would such a vague association, even if supported, justify Mr. Cardani's specific claims to the jury in his hypothetical question.

Mr. Cardani's hypothetical amounted to an assumption of guilt of a conspiracy, and thus undermined Mr. Sedaghaty's presumption of innocence. *See, United States v. Shwayder*, 312 F.3d 1109, 1121 (9th Cir. 2002) ("we now hold that the use of guilt assuming hypotheticals undermines the presumption of innocence and thus violates a defendant's right to due process").  Moreover, the government's use of a hypothetical which included facts that will not be properly before the jury was improper.  *See United States v. Stephens*, 73 F.2d 695, 703 (9th Cir. 1934) ("If the hypothetical question properly presents the fact which the evidence tends to prove, and does not call upon the witness to reconcile conflicting

**Page 5.**     **DEFENDANT'S MOTION TO STRIKE; MOTION FOR CURATIVE JURY INSTRUCTION**

evidence or pass upon the merits of the case, a wide range may be given by the court and a liberal allowance as to its form."). *Also, see United States v. Scarbrough*, 470 F.2d 166, 168 (9th Cir. 1972) (upholding trial court's decision disallowing testimony that was given in response to a hypothetical question that assumed facts not in evidence).

**CONCLUSION**

Therefore, the defense respectfully requests that this Court both: (1) give a jury instruction that informs the jury that Mr. Cardani's remarks are stricken from the record and (2) admit Defense Requested Exhibit 678, the El Fiki FBI interview.

Respectfully submitted on September 6, 2010.

/s/ Steven T. Wax
Steven T. Wax

/s/ Lawrence Matasar
Lawrence Matasar

Attorneys for Defendant

Michelle Sweet
On The Motion