1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF OREGON

3   UNITED STATES OF AMERICA,          )
                                       )
4                  Plaintiff,          ) No. 05-60008-2-HO
                                       )
5      v.                              ) September 9, 2010
                                       )
6   PIROUZ SEDAGHATY, et al.,          ) Eugene, Oregon
                                       )
7                  Defendants.         )

8

9          TRANSCRIPT OF TRIAL PROCEEDINGS

10       BEFORE THE HONORABLE MICHAEL R. HOGAN

11    UNITED STATES DISTRICT COURT JUDGE, AND A JURY

12              DAY 8 - PAGES 1 - 21

13

14                    -:-

15

16

17

18

19

20

21

22

23              Deborah Wilhelm, CSR, RPR
                    Court Reporter
24                  P.O. Box 1504
                Eugene, OR  97440
25                  (541) 431-4113

```
1                        APPEARANCES OF COUNSEL

2

3     FOR THE PLAINTIFF:      CHRISTOPHER L. CARDANI
                              United States Attorney's Office
4                             405 E. 8th Avenue, Suite 2400
                              Eugene, OR  97401
5                             (541) 465-6771
                              chris.cardani@usdoj.gov
6
                              CHARLES F. GORDER, JR.
7                             United States Attorney's Office
                              1000 S.W. Third Avenue, Suite 600
8                             Portland, OR  97204-2902
                              (503) 727-1021
9

10    FOR THE DEFENDANT:      LAWRENCE H. MATASAR
                              Lawrence Matasar, P.C.
11                            621 S.W. Morrison Street
                              Suite 1025
12                            Portland, OR  97205
                              (503) 222-9830
13                            larry@pdxlaw.com

14                            STEVEN T. WAX
                              BERNARD J. CASEY
15                            MICHELLE SWEET
                              Federal Public Defender
16                            101 S.W. Main Street, Suite 1700
                              Portland, OR  97204
17                            (503) 326-2123
                              steve_wax@fd.org
18

19

20

21

22

23

24

25
```

 1    (Thursday, September 9, 2010; 11:25 a.m.  Jury absent.)

 2                    P R O C E E D I N G S

 3         THE COURT:  Thank you.  Be seated, please.  We

 4    have a note from the jury.

 5         THE CLERK:  I believe the note is on the bench,

 6    Judge.

 7         THE COURT:  It is.  And it says, "Can we please

 8    ask for the definition of, quote, Dawah," D-A-W-A-H.

 9         So show this to the lawyers so they can see it.

10    Looks like Juror Number 5 is the presiding juror or at

11    least the note writer.

12         I looked up Dawah on the Internet through

13    Mr. Slade, who is better at that than I am.  I will tell

14    you that I rarely give the jury something like that when

15    they are out deliberating.

16         I did have a jury some years ago that wanted a

17    dictionary, and I started to send it to them.  It was

18    late at night.  And then Mary Pat in my office said,

19    "Did you see that Ninth Circuit case last week, Judge?"

20    My judicial assistant kept me from committing error.

21         MR. MATASAR:  That is a learned staff --

22         THE COURT:  It's a learned staff.

23         MR. MATASAR:  -- when the judicial assistant is

24    up with the Ninth Circuit cases from two weeks ago.

25         THE COURT:  Isn't that amazing?

```
 1              MR. MATASAR:  Mr. Baker must know the ones that
 2    are coming in the future.
 3              THE COURT:  Apparently I had not seen the Ninth
 4    Circuit case.
 5              So what are your positions, fellas?
 6              MR. WAX:  I'm trying to remember, Your Honor,
 7    if the term was defined by any of the witnesses.
 8              THE COURT:  I don't remember it being defined.
 9    I know what it means now, at least according to a lay
10    person, but I will tell -- I don't remember it being
11    defined.  I remember seeing it.  And my gut reaction,
12    frankly, or trick knee says I tell them "you need to
13    rely on your collective recollection, but I'm not able
14    to provide further explanation."
15              MR. GORDER:  Your Honor, that would be fine
16    with us.  I have a recollection that perhaps the witness
17    Daveed Gartenstein-Ross mentioned it in his testimony
18    but --
19              THE COURT:  He might have.
20              MR. GORDER:  He might have.  But -- and I'm not
21    sure he would have given the correct definition, so.
22              THE COURT:  We -- just a second.  Off the
23    record.
24              (Discussion held off the record.)
25              THE COURT:  On the record.  There is one thing,
```

1    due to today's technology, we're running a word search

2    right now.  And there are two portions that are not on

3    Mr. Baker's computer.  We're going to have to recess for

4    our wonderful court reporter to go down and run the

5    word, but they can look for the word.

6              We'll be in recess.

7              (Recess:  11:27 until 11:33 a.m.)

8              THE COURT:  Well, it's actually defined twice

9    in Mr. Kohlmann's testimony.  And it lines up with what

10   I read on the Internet, but -- so you know at page 127,

11   I don't have the question for this page.  I'll start in

12   the middle of an answer.  I'll just start on the page

13   "something that was known as the Caucasus Foundation or

14   the Kavkaz Foundation also known as the Kavkaz

15   Institute.

16             "Essentially, what this was, was a small

17   institution in the town of Serzhenyurt," and then

18   spelled, "which was a school, per se.  It's like an

19   academy.  And the idea behind the academy was to -- it

20   was a Dawah academy.  Dawah means missionary work.  And

21   by the definition of Ibn-ul-Khattab and his advisors,

22   missionary work included teaching Chechen Muslims about

23   the proper way of practicing Islam along their view --

24   again, their sectarian view of Islam which ran counter

25   to the traditional Sufi Islamic Caucasus, and as well to

1  prepare them physically for combat, to give them combat

2  training to teach them what the Arab Afghans had learned

3  during the Soviet Afghan war about the Russian Army, the

4  tactics that they could use to defeat the Russians the

5  same way the Afghans had defeated the Russians."

6        So it goes on.

7        On page 159.  "Question:  Now, you've indicated

8  that you've studied Islamic charities in connection with

9  your work.  Can you tell us about what the concept of

10  Zakat is?

11        "Yes.  Zakat is a religiously mandated tithe.

12  It's like a Muslim version of tithe.  The idea is, is

13  that you are mandated to contribute a certain amount of

14  your income, a certain amount of the money you're taking

15  in, in order to provide charity to fellow Muslims.

16        "Zakat means to provide charity to suffering

17  Muslims, the Muslims who are in a difficult position.

18  Although the traditional definition of Zakat applies to

19  poor people or orphans, whatnot, the same way that some

20  people considered Dawah, or missionary work, equally

21  providing support to the orphans and also providing

22  support to Muslim fighters.

23        "Zakat can also be, depending on your view of

24  Muslim, depending on your sectarian perspective, Zakat

25  can also be distributed to Muslim fighters who are

1    fighting a larger opponent."

2            Now, those are just excerpts from those two

3    pages.  So that was in -- they are both in

4    Mr. Kohlmann's testimony.

5            MR. WAX:  I think the answer you proposed

6    should still stand, Your Honor.

7            MR. GORDER:  We agree, Your Honor.

8            THE COURT:  All right.  Let me read what I'm

9    going to propose to put on the record then.

10           "Members of the jury, I received your note.

11   Please rely on your collective recollections.  I'm not

12   able to give you further explanation at this time.

13   Judge Michael R. Hogan."

14           We'll send it in.  I learned that answer from

15   Judge Belloni when I was a law clerk.  It's served me

16   well over the years.  All right.

17           MR. WAX:  Thank you.

18           MR. GORDER:  Thank you, Your Honor.

19           (Court stood in recess, subject to call, from

20   11:37 until 5:16 p.m.)

21           THE COURT:  We'll go on the record.  I have a

22   message -- a note from the jury timed 5:25 and -- 4:25.

23   And it's somewhat confusing to me.  But I just want to

24   read to you what it says.  All right?

25           It says Count 1:  Do we need to be unanimous on

1    both part A and B of the count?  Paren, IRS, slash, U.S.

2    Customs Service, paren, question mark?  Bracket, yes,

3    slash, no part, bracket.  And then under that it says

4    not guilty, slash, not guilty.

5            So the note is confusing to me, but I'm going

6    to hand -- I've drafted a response, but I'm going to --

7    please show it to both counsel.  Give them enough time

8    to study it.

9            Christy, after you print that, I'd like it

10   back, I want to add something to it.  Go ahead and

11   discuss it, folks.

12           There is language that may have to do with this

13   at the bottom of page 10 of the jury instructions.  Do

14   you need those?  Here you go.

15           MR. MATASAR:  Yes.

16           MR. WAX:  Could we also please see the form,

17   the verdict form?

18           THE COURT:  Yes.

19           MR. WAX:  Thank you.

20           MS. SWEET:  Thank you.

21           MR. WAX:  Judge, I am wondering if it would be

22   the portion on the top of page 12 --

23           THE COURT:  Yeah, I will look at that.

24           MR. WAX:  -- that might be more where it's the

25   objects rather than the overt act issue, perhaps.

```
 1              THE COURT:  Perhaps.
 2         MR. CARDANI:  Judge, I'm ready to speak on the
 3    government's behalf.  Do you want to wait for them to be
 4    done or not?
 5              THE COURT:  Are you ready?
 6         MR. MATASAR:  We're ready to listen to
 7    Mr. Cardani.
 8         MR. WAX:  Yes, we have a thought as well so
 9    we'll listen.
10              THE COURT:  Okay.
11         MR. CARDANI:  Judge, there may be some
12    ambiguity expressed in that note regarding whether the
13    jury believes it has to find both objects of the
14    conspiracy to prove beyond a reasonable doubt to convict
15    on count 1.  If that's the case, it's not true.  The
16    government only has to prove that if there was a
17    conspiracy found, that they only have to find
18    unanimously one object.  Page 10 does say that, that
19    they only have to find that the lawful functions of the
20    former Customs Service or the IRS.
21              So I suggest that the court provide
22    clarification that if they found that there was a
23    conspiracy, they need find only -- unanimously, but only
24    one or the other or both to convict on count 1.
25              THE COURT:  Okay.
```

```
 1          MR. WAX:  Judge, I don't know that we have any

 2   disagreement with what Mr. Cardani said, but we think

 3   that there may also be confusion that could be resolved,

 4   if you have found the defendant -- I mean, to say what

 5   has been suggested, but if you have found the defendant

 6   not guilty on count 1, you need not answer the other two

 7   questions on page 1 of the verdict form.

 8          THE COURT:  Here is the answer I've written,

 9   before you gave your suggestions, Only if you have

10   unanimously found the defendant guilty on count 1, you

11   may answer yes to one of the questions if you thought

12   that was an object of the conspiracy, or yes to both

13   questions if you find that both objects -- that both

14   were objects of the conspiracy.  And you need not answer

15   the yes/no questions if you find the defendant not

16   guilty of count 1.

17          MR. WAX:  Good.

18          MR. CARDANI:  Judge, the beginning of that --

19          THE COURT:  Yes.

20          MR. CARDANI:  -- is it clear to them that they

21   need to find him guilty on count 1 only if they -- they

22   need only find one of the objects.

23          THE COURT:  Well, I'm going to pass this to

24   you.  I am going to change this a little bit.

25          MR. CARDANI:  Judge, I --
```

```
 1            THE COURT:  Just show this to the lawyers.
 2            MR. CARDANI:  You may want to refer them to
 3  page 10.
 4            THE COURT:  I'm reluctant to do that.  I may if
 5  this doesn't produce a result.  But I almost feel like I
 6  have to bring them back in the courtroom if I do that
 7  and instruct them not to put more emphasis on one part
 8  of the instructions than the other.
 9            MR. CARDANI:  I'm just afraid that they're
10  thinking they may have to find both.
11            THE COURT:  When you read this, you'll --
12            MR. CARDANI:  Okay.
13            MR. MATASAR:  We're fine with your --
14            THE COURT:  I've got a new brace so my
15  handwriting has gone up to a sixth grade level now,
16  instead of third.
17            MR. MATASAR:  Is that the color of the brace?
18            THE COURT:  I just got out of the MRI machine.
19            MR. WAX:  It's broken or --
20            THE COURT:  Don't know.  The doctor said no,
21  but it's a bad little bone if it's broken and they don't
22  know it.  It's one of those things that lasts a long
23  time.
24            (Discussion held off the record.)
25            MR. CARDANI:  Judge, I just have some real
```

1  concern that they may be thinking that they have to find

2  both objects unanimously to convict on count 1.

3        THE COURT:  That's what I tried to cover.  If

4  you can suggest a way to make my note clearer, I'm happy

5  to -- of course they don't, we know that.

6        MR. GORDER:  Your Honor, I think the concern

7  is -- and I'm not quite sure exactly how to address it,

8  is they may think they have to have an unanimous

9  decision on both A and B.

10        THE COURT:  Okay.

11        MR. GORDER:  Regardless of whether it's yes or

12  no.

13        THE COURT:  Bring me the note.  Let me look at

14  it again.

15        MR. GORDER:  In other words, to be 12 yes on A,

16  and 6, 6 on B, and that's not unanimous, so.

17        THE COURT:  Just a second.

18        (Discussion held off the record.)

19        THE COURT:  I can print that text for each of

20  you also.

21        MR. GORDER:  That might help, Your Honor.

22        MR. CARDANI:  Judge, I'm taking a shot at some

23  language I'd like you to consider, too.  If you'll give

24  me a few more minutes, I'll be done.

25        MR. WAX:  We're still fine with it, Judge.

```
 1              THE COURT:  Go ahead and type it out.
 2              (Mr. Cardani tenders his note to the defense.)
 3              MR. MATASAR:  This is a totally one-sided
 4    version, and not appropriate jury instructions.
 5              MR. CARDANI:  What's --
 6              MR. WAX:  The whole thing, Chris.  What the
 7    judge has suggested is fine.
 8              MR. CARDANI:  Judge, I'm just --
 9              THE COURT:  I'm happy to read it.
10              MR. MATASAR:  Sure.
11              MR. WAX:  Yeah.
12              THE COURT:  Mr. Cardani, your answer is
13    correct, but I think I may like mine better, but I'll
14    look at it again.
15              There's something that needs to be changed.  We
16    missed a word.
17              MR. WAX:  Judge, given the language in the
18    note, our suggestion on this would be to start with the
19    last two sentences, to start with, Your verdict must be
20    unanimous, then if you find the defendant not guilty on
21    count 1, do not answer the yes/no parts.  Then to the,
22    you know, if you have found him guilty.
23              THE COURT:  Thank you.
24              MR. WAX:  I also think there should be a
25    parallel -- if you are starting with, If you have found
```

1    defendant guilty, you may answer, I think then the last

2    section --

3            THE COURT:  I agree.

4            MR. WAX:  I'm not sure, Judge, does it make

5    more sense to use the "have found" or to use the "find"

6    language.

7            THE COURT:  Don't know.  It is sophistry, one

8    way or the other.

9            MR. GORDER:  Your Honor, if we could just

10   suggest an additional clause in the part about finding

11   the defendant guilty, if you have found defendant guilty

12   on count 1, which requires proof of the only one object,

13   you may answer yes.

14           THE COURT:  Okay.  All right.  I'm going to

15   send in what I've written.  And make Mr. Cardani's

16   writing a part of the record.

17           MR. WAX:  Have you used "have found" in both?

18           THE COURT:  Yes.

19           MR. WAX:  Thank you.

20           MR. GORDER:  Can we get copies, I guess, of the

21   final, final version?

22           THE COURT:  Yes, you will.  I want -- and then

23   I think it's wise for us to stay in the courthouse at

24   this point.

25           MR. MATASAR:  Yes, yes.

1          THE COURT:  If you want to talk, that's fine.

2  Please go out in the hallway.

3          (Court stood in recess, subject to call, from

4  5:54 until 6:08 p.m.)

5          MR. GORDER:  Mr. Cardani will be here

6  momentarily, Your Honor.

7          MR. CARDANI:  Sorry, Judge.

8          THE COURT:  That's fine.  The note reads, "We

9  have a verdict."

10          Please seat the jury.

11          (Jury enters the courtroom at 6:11 p.m.)

12          THE COURT:  Please hand your verdict to the

13  clerk.  Thank you.

14          Please read the verdict.

15          THE CLERK:  In the cause now before the court,

16  the *United States of America versus Pirouz Sedaghaty*,

17  Case Number 05-60008, Count 1, as to count 1 of the

18  indictment charging conspiracy to defraud the United

19  States, guilty.

20          If guilty on count 1, did you unanimously find

21  that an object of the conspiracy was to defraud the

22  Internal Revenue Service?  Answer of the jury:  Yes.

23          Count 2, false return on tax exempt

24  organization, as to count 2 of the indictment charging

25  false return by tax exempt organization.  Answer of the

1    jury:  Guilty.

2           Dated the 9th day of September 2010.  Signed by

3    presiding Juror ////////////.

4           THE COURT:  Thank you.  Please poll the jury.

5           THE CLERK:  Juror Number 2, ///////////////,

6    is this your true verdict?

7           JUROR NUMBER 2:  Yes.

8           THE CLERK:  Juror Number 3, ////////////, is

9    this your true verdict?

10          JUROR NUMBER 3:  Yes.

11          THE CLERK:  Juror Number 4, //////////////, is

12   this your true verdict?

13          JUROR NUMBER 4:  Yes.

14          THE CLERK:  Juror Number 5, ///////////, is this

15   your true verdict?

16          JUROR NUMBER 5:  Yes.

17          THE CLERK:  Juror Number 6, //////////////, is

18   this your true verdict?

19          JUROR NUMBER 6:  Yes.

20          THE CLERK:  Juror Number 8, ///////////////, is

21   this your true verdict?

22          JUROR NUMBER 8:  Yes.

23          THE CLERK:  Juror Number 9, //////////////, is

24   this your true verdict?

25          JUROR NUMBER 9:  Yes.

1           THE CLERK:  Juror Number 10, ////////////, is

2   this your true verdict?

3           JUROR NUMBER 10:  Yes.

4           THE CLERK:  Juror Number 11, ////////////////,

5   is this your true verdict?

6           JUROR NUMBER 11:  Yes.

7           THE CLERK:  Juror Number 12, ////////////, is

8   this your true verdict?

9           JUROR NUMBER 12:  Yes.

10          THE CLERK:  Juror Number 13, ////////////, is

11  this your true verdict?

12          JUROR NUMBER 13:  Yes.

13          THE CLERK:  Juror Number 14, ////////////, is

14  this your true verdict?

15          JUROR NUMBER 14:  Yes.

16          THE COURT:  Well, jury, you have learned some

17  things:  One is that jury service is hard work, hard

18  work.  And we are grateful for your service.

19          This is one of the great privileges you have as

20  a citizen of this country, to serve in this way.  And

21  another is to vote.  So you do that, too.

22          Now, I'll tell you that many times at this

23  stage of the case, jurors ask me whether they are free

24  to talk about the case to someone else.  And now you are

25  free to talk about the case to anyone you wish.

1    However, you need not talk to anyone, anyone, that

2    includes me, about your work.

3         If you decide you'd like to talk to someone,

4    whoever it may be, I would ask this:  Your fellow jurors

5    expressed their views in private to you.  So if you do

6    that, then I'd like to ask you to preserve their

7    privacy.  So if you talk, talk about your own thoughts,

8    not someone else, all right?  You all deserve the

9    respect of serving on the jury.

10        Now, at this time I am going to excuse you to

11   the jury room.  Someone will be there after a few

12   moments to excuse you for the evening, all right?  Thank

13   you very much.

14        (Jury exits the courtroom at 6:15 p.m.)

15        THE COURT:  Counsel, is there anything further

16   before I excuse the jury?

17        MR. GORDER:  Not on behalf of the government,

18   Your Honor.

19        Your Honor, we do have a few things we'd like

20   to discuss beyond that.

21        THE COURT:  Thank you.

22        MR. WAX:  There will be post-verdict motions,

23   Your Honor, and I don't know that this is the

24   appropriate time to raise them.

25        THE COURT:  All right.  Thank you.  You can

1    file them in writing.

2            Is there anything further for the court?

3            MR. GORDER:  Yes, Your Honor.  We need to set a

4    date for sentencing.

5            And the government at this time would move to

6    remand Mr. Sedaghaty to custody.  The burden has shifted

7    now that he's convicted for him to prove by clear and

8    convincing evidence that he is not a flight risk.

9            We believe he is.  He is a citizen of Iran as

10   well as the United States.  The court is probably aware

11   that he fled the country in 2003 and was gone for

12   several years.  He did return in August of 2007.  But

13   there is nothing that prevents him from leaving today.

14           As a citizen of Iran, he could get another

15   passport from either the Iranian Interests Section in

16   Washington, or if he went to Canada or Mexico, from

17   their embassies in those countries.

18           Mr. Cardani has got a similar situation right

19   now where there is a fugitive who was a U.S. citizen but

20   also a citizen of Iran, who -- we had his passport.  He

21   managed to leave the country.  And he is now in Iran.

22   So we're very concerned about flight risk.

23           THE COURT:  Thank you.  Do you wish to be

24   heard?

25           MR. WAX:  Yes, Your Honor.  I think that

1    Mr. Seda has demonstrated during the past three years

2    that he will abide by the court's directives.  This is

3    his country.  He is a U.S. citizen.  He has been at

4    liberty for more than three -- well, three years after

5    voluntarily returning to this country in order to face

6    the charges.

7            We believe that he has earned the court's trust

8    and that he will continue to honor his commitments to

9    the court.

10           THE COURT:  Thank you.  Do we have a sentencing

11   date at this time?

12           THE CLERK:  Sentencing is set for November 23,

13   2010, at 10 o'clock.

14           THE COURT:  Counsel, thank you all for a

15   wonderful, able and professional presentation of this

16   case to the jury, and your professionalism in your

17   dealings with the court.

18           I am going to remand the defendant to the

19   custody of the marshal at this time.

20           Thank you.  We're in recess.

21           (The proceedings were concluded at 6:18 p.m.)

22

23

24

25

1                          CERTIFICATE

2          I, Deborah Wilhelm, Certified Shorthand Reporter

3    for the State of Oregon, do hereby certify that I was

4    present at and reported in machine shorthand the oral

5    proceedings had in the above-entitled matter.  I hereby

6    certify that the foregoing is a true and correct

7    transcript, incorporating redactions of personal

8    identifiers requested by the Honorable Michael R. Hogan,

9    in accordance with Judicial Conference policy.  Redacted

10   characters appear as an "/" in the transcript.  Dated

11   this 16th day of September, 2010.

12

13

14

15

16                           /s/ Deborah Wilhelm
                             _____
17                           Deborah Wilhelm, RPR
                             Certified Shorthand Reporter
18                           Certificate No. 00-0363

19

20

21

22

23

24

25