DWIGHT C. HOLTON, OSB # 09054
United States Attorney
District of Oregon
**CHRISTOPHER L. CARDANI**
Assistant United States Attorney
405 East 8th Avenue, Suite 2400
Eugene, OR 97401
Email: chris.cardani@usdoj.gov
Telephone: (541) 465-6771
**CHARLES F. GORDER, JR.**, OSB #912874
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
Email: charles.gorder@usdoj.gov
Telephone: (503) 727-1000
Facsimile: (503) 727-1117
      Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 05-CR-60008-HO |
| | ) | |
| v. | ) | GOVERNMENT'S RESPONSE |
| | ) | TO DEFENDANT'S MOTION |
| PIROUZ SEDAGHATY, | ) | FOR JUDGMENT OF ACQUITTAL |
| | ) | |
| Defendant. | ) | |

     The United States of America, through its undersigned counsel, herein responds

to defendant Sedaghaty's "Motion for Judgment of Acquittal."  (CR 478).

## The Law

     Fed. R. Crim. P. 29 provides that the Court may grant a judgment of acquittal

only if the evidence is insufficient to sustain the convictions.  Evidence is sufficient to

support a conviction if "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>United States v. Magallon-Jiminez</u>, 219 F.3d 1109, 1112 (9th Cir. 2000) (<u>citing</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).  Under Rule 29, all reasonable inferences are to be drawn in favor of the government, and any conflicts in the evidence are to be resolved in favor of the jury's verdict.  <u>United States v. Alvarez-Valenzuela</u>, 231 F.3d 1198, 1201-02 (9th Cir. 2000).

<u>**Argument**</u>

Defendant asserts that "the unrebutted testimony was that there was no underreporting on lines 1 or 22" on the Form 990 at issue in the case.  The government disagrees.

Government witness Wilcox testified that he prepared the Form 990, and did so based on information provided to him by defendant Sedaghaty.  Wilcox testified that Sedaghaty told him that the $21,000 had been returned to the donor and that he, Wilcox, prepared the Form 990 accordingly.  Wilcox said that if the $21,000 had not been returned to the donor, but instead was kept by co-defendant Al-But'he, then Line 1 was false in that it understated contribution income.  (9/1/10 TR at 220-21).

Likewise, Wilcox testified that he had a conversation with defendant Sedaghaty about the Al-Haramain Bank of America check #9456 in the amount of $131,300.  Since there no payee listed on the check, Wilcox asked defendant Sedaghaty about the funds represented in that check.  Defendant Sedaghaty responded by falsely telling Wilcox that the funds were used in part to purchase a mosque in Missouri.  When the accountant asked defendant Sedaghaty for escrow records supporting the purchase of

Government's Response to Defendant's Motion for Judgment of Acquittal - Page 2

that building, Sedaghaty did not provide them. Relying on the incorrect information provided to him by defendant Sedaghaty, Wilcox prepared the Al-Haramain Form 990 in a manner which depicted the $131,300 as funds used to buy the Missouri mosque.

Wilcox was then asked:

Q. All right. Now, getting back to the return, IRS-1, page two of the return, if that $131,300 did not go into the Springfield building in reality sir, but went out of al-Haramain as an overseas distribution, is this return accurate?

A. No. It's inaccurate. Because it means the fixed assets are way overstated. (9/1/10 TR at 221-30). Wilcox then specifically identified Lines 22 and 57 as the lines which would have been false if the $131,300 was not used to buy the Missouri building. (230-31). The prosecution established through testimony and exhibits that the $131,300 was not used to buy the Missouri building. Rather, the El-Fiki funds were reduced to traveler's checks by defendant Sedaghaty and co-defendant Al-But'he and were smuggled out of the United States. Al-But'he deposited the $21,000 into his bank account in Saudi Arabia, and cashed the traveler's checks, thus rendering the return false.

Wilcox also testified that defendant Sedaghaty never mentioned the Chechnya transaction to him. (233). Nor did he ever tell him that there was an Al-Haramain accountant in Saudi Arabia who was interacting with defendant Sedaghaty on the same transactions. (233-34). This evidence supports the government's theory that Sedaghaty, Al-But'he, and others in Saudi Arabia and elsewhere conspired to conceal the Chechnya transaction.

Although defendant promoted a technical defense that the El-Fiki donation

should never have been reported at all on Lines 1 and 22 of the Form 990 - the so-called earmark defense - the jury was free to reject the defense based on other evidence, which showed that defendant Sedaghaty and co-defendant Al-But'he acted in a manner inconsistent with that defense.[1]  Even the defense expert Owens acknowledged that consistent with a true earmark, the local Al-Haramain charity would not have any discretion to vary what could be done with the funds.  (9/7/10 TR at 36). This meant that Al-Haramain was required to transfer the $150,000 to Al-Haramain in Saudi Arabia.  (41-42).  When asked about the $21,000 paid directly to Al-But'he, Owens testified that he would expect that distribution to be reported in the Form 990, which it was not.  (71-72).

Owens testified that 501(c)(3) organizations are required to keep very good records, especially when sending funds overseas to ensure the funds were being used for their intended purpose.  (48-52).  When shown Government Exhibits AHIF 2 and 3, Owens admitted these were far from the type of records the IRS would expect to see to justify an overseas distribution.  (52-53).  Owens further acknowledged that, regardless of whether funds were truly an earmark, if a 501(c)(3) organization decides to report a transaction, it has no right to lie in a Form 990.  (67, 84).

Regarding materiality, Owens testified that although Line 57, in itself, is not

---

[1]For example, defendant's own exhibits demonstrated that he attempted to move the El-Fiki funds into Chechnya through the Quran Foundation, which was another organization defendant Sedaghaty operated.  (Defense Exhibit 698(a)).  Defendant Sedaghaty also diverted $21,000 of El-Fiki's donation to co-defendant Al-But'he.  This evidence showed that defendant Sedaghaty did not treat the El-Fiki funds as the property of Al-Haramain (Saudi Arabia), nor did he ensure that the $150,000 went for its intended purpose.

particularly of concern to the IRS, if it is used as an attempt to masquerade an overseas transaction, then the IRS would consider the misrepresentation in Line 57 to be an important part (and thus, a material part) of an IRS inquiry.  (72-74).  Owens also stated that if a tax exempt charity in the United States was sending funds overseas for the mujahideen, whether for arms or for blankets, the IRS would expect the organization to report the transaction in its Form 990.  (77-78).

As in most trials, there was conflicting testimony in this case.  But, in assessing a Rule 29 motion, this Court must interpret the evidence in the light most favorable to the government, and reconcile conflicting evidence and all reasonable inferences from that evidence in a manner supporting the jury's verdict.  Based on these standards, there was ample evidence supporting each of the elements of the crimes of conspiracy and tax fraud, as found by the jury.[2]

### Conclusion

For reasons stated, the defendant's "Motion for Judgment of Acquittal" should be denied.

DWIGHT C. HOLTON
United States Attorney

*/s/ Christopher L. Cardani*
CHRISTOPHER L. CARDANI
Assistant United States Attorney

*/s/ Charles F. Gorder, Jr.*
CHARLES F. GORDER, JR.
Assistant United States Attorney

---

[2]Defendant also maintains that failure to give his requested instruction #23 warrants an acquittal.  This instruction, however, misstated the law. The Court's instructions properly advised the jury on the elements necessary to convict.

Government's Response to Defendant's Motion for Judgment of Acquittal - Page 5