DWIGHT C. HOLTON, OSB# 090540
United States Attorney
District of Oregon
**CHRISTOPHER L. CARDANI**
Assistant United States Attorney
405 East Eighth Avenue, Suite 2400
Eugene, OR 97401
Email:  chris.cardani@usdoj.gov
Telephone:  (541) 465-6771
**CHARLES F. GORDER, JR.**, OSB# 912874
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR  97204
Email: charles.gorder@usdoj.gov
Telephone:  (503) 727-1000
       Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | CR 05-60008-HO |
| v. | **GOVERNMENT'S RESPONSE TO MOTION FOR SENTENCING DISCOVERY** |
| **PIROUZ SEDAGHATY,** | |
| Defendant. | |

      The United States of America, by Dwight C. Holton, United States Attorney for the District of Oregon, and Charles F. Gorder, Jr. and Christopher L. Cardani, Assistant United States Attorneys, respectfully submits this response to defendant Pirouz Sedaghaty's Motion for Sentencing Discovery.

1 - **GOVERNMENT'S RESPONSE TO  MOTION FOR SENTENCING DISCOVERY**

## I.   INTRODUCTION

The United States and the Russian Federation have a treaty which requires both countries to assist the other in providing evidence relevant to criminal prosecution.  See Treaty Between the United States of America and the Russian Federation on Mutual Legal Assistance in Criminal Matters, June 17, 1999, S. Treaty Doc. No. 106-22 (2000).  And beginning in 2000, at the direction of the Presidents of both the United States and the Russian Federation, officials from both countries formed a U.S.-Russia Counterterrorism Working Group (the "CTWG") which was chaired by high officials from the Department of State and the Russian Foreign Ministry.  The CTWG meets periodically to discuss counterterrorism topics of mutual interest to both countries.  As part of this relationship, members of the law enforcement and intelligence community of both countries meet periodically as a sub-group.

In December 2008, representatives of the United States, including the prosecution team in this matter, met in Moscow with representatives of the Russian Federation, including the Russian Security Service often referred to as the "FSB," to exchange information and evidence concerning the activities of Al Haramain in the Caucasus region of the Russian Federation. The December 2008 meeting in Moscow with the FSB was the result of both a formal request under the Treaty by the United States Department of Justice for Russian assistance in this prosecution and informal discussion between FBI and FSB personnel as part of the intelligence-law enforcement sub-group of the CTWG.

Colonel Sergey Ignatchenko, who was an FSB officer in charge of investigating the activities of the Al Haramain Islamic Foundation in Chechnya when defendant Sedaghaty and

2 - **GOVERNMENT'S RESPONSE TO  MOTION FOR SENTENCING DISCOVERY**

other Al Haramain representatives handled the $150,000 which was the subject of this trial, attended the meeting.  He provided the United States representatives with a written statement concerning his knowledge of Al Haramain's activities in Chechnya.

Over the next several months, the United States received some additional written documents and videos provided by the Russian government pursuant to the treaty request. Colonel Ignatchenko's written statement, the additional documents, and videos were translated from Russian and Arabic by FBI linguists and the results were then provided to the defense in several batches between April and August 2009.[1]  At the sentencing next week, the government intends to call Colonel Ignatchenko to testify about the material support provided by Al Haramain to the Chechen mujahideen, including the purchase of weapons.

By this motion, and without citation to any authority, defense counsel demands a broad category of material which may or may not be in the possession of the Russian government but which was not provided to the United States under the Treaty request, along with United States government material concerning dealings with the Russian Federation in this matter.  Since none of these items are discoverable under the rules governing criminal discovery, the motion should be denied.

## II.   APPLICABLE LAW

Discovery in criminal cases is controlled generally by Rules 16 and 26.2 of the Federal Rules of Criminal Procedure, the *Jencks Act* (18 U.S.C. § 3500), and *Brady v. Maryland*, 373 U.S. 83 (1963), along with cases decided thereunder.  Absent a joint venture, a defendant in a federal criminal prosecution cannot obtain discovery of records not in the possession of the

---

[1] Bates Stamp Nos.  2206-2472, 2542-54, and 2849-79.

3 - **GOVERNMENT'S RESPONSE TO  MOTION FOR SENTENCING DISCOVERY**

federal government but rather in the possession of another sovereign such as a state government. *See, e.g., United States v. Chavez-Vernaza*, 844 F.2d 1368, 1375 (9th Cir. 1987) (no duty to obtain records from Oregon state officials over which federal officials had no control).

The application of this rule is even more appropriate when dealing with a foreign sovereign such as the Russian Federation, and nothing in the criminal discovery rules requires the production of information in the possession of a foreign government such as Russia. *See, e.g., United States v. Reyeros*, 537 F.3d 270, 283 (3d Cir. 2008) (finding that there was no duty to search for or disclose documents in the possession of the Colombian government merely because Colombian officials permitted U.S. agents to interview the defendant while he was in Colombian custody and participated in a judicial proceeding that resulted in the defendant's extradition); *United States v. Friedman,* 593 F.2d 109, 119-20 (9th Cir. 1979) (no duty to produce diary of trial witness in possession of Chilean government).

Further relevant to the overly broad discovery requests made here, however, are the specific terms of Federal Rule of Criminal Procedure 16, which prescribes what limited discovery is appropriate in a criminal case. This latest request, which seeks various broad categories of documents, is governed by Rule 16(a)(E)(I), which only provides for discovery of items "material to the defense" and which is further limited by Rule 16(a)(2), which provides as follows:

> Except as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.

Thus, internal government memoranda concerning communications with the Russian

4 - **GOVERNMENT'S RESPONSE TO MOTION FOR SENTENCING DISCOVERY**

government are not discoverable.

### III.    SPECIFIC RESPONSES

With the above guidelines in mind, the government responds to the defendant's specific requests as follows:

Requests 1, 2, 3, 4, 5, 6, 11, and 12 all call for materials which, if they exist at all, would be in the possession of the Russian Federation, not the United States.  Therefore, these requests should be denied.  The defendant has previously received in discovery the actual documents material to this case received from the Russian Federation, including (1) Colonel Ignatchenko's written statement, (2) a letter dated February 9, 2009 from the Office of the Prosecutor General of the Russian Federation to the United States Justice Department stating, *inter alia*, that the relevant audio recordings between the Al-Haramain officials and the Chechen mujahideen were destroyed,[2] and (3) the documents seized by the Russian Federation in the course of its conflict with the Chechen mujahideen.

Requests 7 and 8:  The government's reasons for not calling Colonel Ignatchenko at trial are not the subject of a discovery motion.  His testimony at the sentencing hearing is governed by the terms of the Treaty between the United States and Russia.

Requests 9 and 10:  As noted earlier, the United States and the Russian Federation have entered into a treaty which requires both countries to assist the other in providing evidence relevant to criminal prosecution.   The December 2008 meeting in Moscow with the FSB was the

---

[2]  Specifically, the Prosecutor General stated that "[a]udio recordings of telephone conversations between employees of the Al-Haramain Foundation and the Saudi Joint Committee for the Relief of Kosovo and Chechnya and Chechnya were destroyed as they outlived their usefulness, and their custody periods, required by internal regulations of the FSB of Russia, expired."  Bate Stamp No. 2544.

5 - **GOVERNMENT'S RESPONSE TO  MOTION FOR SENTENCING DISCOVERY**

result of both a formal request under the treaty by the United States Department of Justice for Russian legal assistance in this prosecution and informal discussion between FBI and FSB personnel as part of the intelligence-law enforcement sub-group of the Russian-American Counterterrorism Working Group ("CTWG").  The June 20, 2008, meeting to which the defendant refers was a CTWG meeting, one of those informal meetings which led up to the December 2008 meeting.  To our knowledge, there were no "agreements" concerning the December 2008 meeting beyond the fact that the United States had made a request for legal assistance under the Treaty and the Russian government partially complied with that request at the meeting and thereafter.  The defense has obtained the actual results of that compliance. Nothing further is required for the defense to cross-examine Colonel Ignatchenko adequately.

### IV.    CONCLUSION

For the reasons given above, the defendant's motion for sentencing discovery should be denied.

Dated:  November 17, 2010

>DWIGHT C. HOLTON
>United States Attorney
>
>/s/ *Charles F. Gorder, Jr.*
>CHARLES F. GORDER, JR.
>Assistant United States Attorney
>
>/s/ *Christopher L. Cardani*
>CHRISTOPHER L. CARDANI
>Assistant United States Attorney