**Steven T. Wax, OSB No. 85012**
**Federal Public Defender**
**101 SW Main Street, Suite 1700**
**Portland, OR  97204**
**Tel: (503) 326-2123**
**Fax: (503) 326-5524**
**Email: steve_wax@fd.org**

**Lawrence Matasar, OSB No. 74209**
**621 SW Morrison Street, Suite #1025**
**Portland, OR 97205**
**Tel: (503) 222-9830**
**Email: larry@pdxlaw.com**

**Attorneys for Defendant**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 05-60008** |
| **Plaintiff,** | |
| **v.** | **RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM** |
| **PIROUZ SEDAGHATY,** | |
| **Defendant.** | |

The government's Sentencing Memorandum raises several points that

warrant a response.

First, the government fails to provide any authority for the conclusion

that the Internal Revenue Service suffered a loss in this case.  In addition, this

conclusion is contrary to the well-reasoned opinion of defense expert Marcus Owens' assessment that there was no loss.  Exhibit A (November 18, 2010, Memo of Mr. Owens); Defendant's Sentencing Memorandum at 14-16 and Exhibit 2.  Its list of bullet points fails to distinguish between different purposes for funding mujahideen, some of which are within the charitable purpose of a 501(C)(3) organization.  Tr. September 7, 2010, at 14-16.

Second, the government's assertion that the offense involved sophisticated concealment is unsupported by the facts in this case.  Contrary to the government's assertion, travelers checks are not hard to trace.  In fact, the government's discovery belies their assertion.  It is replete with the trace-ability of these travelers checks.  Failing to file a CMIR when departing the United States is hardly sophisticated.  The government also relies on the fact that Soliman Al Buthe used "an offshore bank account in Saudi Arabia" to cash the traveler's checks and the cashier's check.  Government Sentencing Memo at 5.  But Mr. Al Buthe was simply conducting business in his home country in his own bank.

There is no evidence that the money was "smuggl[ed]" into Chechnya. The government has consistently taken this position.  The primary fact that a Saudi bank objected to providing information is hardly evidence of sophisticated means.  If it is relying on Mr. Al Sanad, then his statement

**Page 2        RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM**

establishes the humanitarian use of the money.  None of the government's assertions leads to a sophisticated means enhancement.

Third, the government provides no proof that AHIF-2 and AHIF-3 justify an obstruction of justice enhancement.  These two documents were not hidden from the government, but were turned over to the government in response to subpoena.  The documents are simply a record of transfer of funds between two persons.  Because one is likely a rough draft, there are different amounts and different signatures.  Certainly a person seeking to obstruct justice would not have provided both documents to the government.

The government is well aware of the evidence showing that Mr. Al Buthe actually deposited the funds with Al Haramain.  The government chose not to investigate this evidence.  In fact, as oft stated, the government did not even attempt to obtain the relevant bank account records.  Given the evidence indicating that the money actually was deposited with Al Haramain and given the government's failure to fully investigate such evidence, the government should be estopped from now claiming that the money was not deposited with Al Haramain.

The government's assertion that these documents, voluntarily provided in hard copy by Al Haramain's lawyer, were not found in files or on computers during the search, which occurred after the documents were provided in response to the subpoena, is simply not relevant.  The government's

unsubstantiated claims that Mr. Sedaghaty was possibly in Saudi Arabia at the time the receipts were originally provided by Al Haramain, and that he was personal involved in providing these documents lacks any factual basis.

Finally, the government completely ignores Mr. Sui and Mr. Jamal.

**The Government's Argument In Favor Of The Terrorism Enhancement Ignores The Necessary Causal Connection Between The Crimes Of Conviction And § 2332b.**

The government's argument for the terrorism enhancement continues to conflate two different acts and events: the alleged diversion of the El Fiki funds that occurred in March 2000, and the filing of a false tax return that occurred 19 months later, in October 2001. The offenses of conviction involved the latter acts, not the former. We do not disagree with the government's contention that the terrorism enhancement need not be predicated on proof that the defendant committed a federal crime of terrorism. But that misses the point. In order to apply the terrorism enhancement, the government must prove by clear and convincing evidence that the offense of conviction was intended to promote a federal crime of terrorism. *See* § 3A1 .4 ("*offense* is a felony that . . . . was intended to promote" a federal crime of terrorism) (emphasis added).

The government's Sentencing Memorandum makes no effort whatever to tie the "offenses of conviction" to the promotion of terrorism. Disturbingly, it continues the government's inflammatory efforts to link Mr. Sedaghaty's

alleged acts in March 2000 with every act of terror committed in the name of
Chechnya. *See, e.g.*, Govt Memo at 12 (highlighting a 2010 attack in which
"suicidal Islamic insurgents stormed the parliament building in Chechnya,
exploding themselves and others").

Rather than focusing on the particular statutes at issue and connecting
Mr. Sedaghaty's crimes of conviction to those statutes, the government
discusses at length the alleged actions of Khattab, Abu Umar and others
associated with Chechnya and the Kavkaz Institute. While there are tangential
references to Mr. Sedaghaty – "Defendant Sedaghaty had a photograph of the
Kavkaz Institute in his computers" – there is no discussion of Mr. Sedaghaty's
intent, specific offense conduct, or how that conduct promoted either material
support of terrorism or a conspiracy to injure property of a foreign government.
Govt Memo at 9, 12-18. The government does not, and cannot, logically
explain how the falsification of a non-profit tax return – or the conspiracy to do
so – "promoted" any federal crime of terrorism.

While the government cites two federal crimes of terrorism, § 2339A
(material support) and § 956 (conspiracy to injure property of a foreign
government), it does not explain the causal connection between the tax crimes
and the promotion of either § 2339A or § 956. As noted in the Defendant's
Sentencing Memorandum, the simple fact is that there is no logical connection.
Even an argument that the tax returns were falsified to cover up the earlier

**Page 5       RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM**

alleged diversion of the funds would miss the mark.  The only relevant question under § 3A1.4 concerns the purpose and motive of the cover up.  In order to be the basis for a terrorism enhancement, the cover up itself, not the acts that were covered up, must be motivated by an intent "to promote" terrorism.  The government presented no evidence, does not argue, and cannot argue that the tax forms were falsified to continue to provide funds for the mujahideen.  No, the government plainly argued that the tax forms were falsified to protect the tax exemption and avoid sanctions from the IRS.

As the government has not even attempted to link the crimes of conviction with promotion of either § 2339A or § 956, it has not met its burden of showing the applicability of § 3A1.4 by clear and convincing evidence.

Even assuming, *arguendo*, that this Court can discern some causal connection between the offense conduct and the promotion of a federal crime of terrorism, the facts of this case, and the evidence of Mr. Sedaghaty's intent, do not permit a finding that he intended to promote any act of terrorism.  Mr. Sedaghaty's efforts to provide humanitarian aid were well documented at trial, and as discussed in defendant's Sentencing Memorandum, the government cannot prove by clear and convincing evidence that Mr. Sedaghaty intended the El Fiki donation to be used for anything other than humanitarian relief.  In fact, the government specifically argued to the jury that Mr. Sedaghaty could

be convicted regardless of whether he intended the money to buy "blankets" or "bombs." Tr. September 8, 2010 at 178.

In its most recent filing, the government continues to use suspect and unreliable sources. Defendant's Sentencing Memorandum at 13-14. For example, it now presents the hearsay statements of Richard Cabral, who in 2004, apparently heard Mr. Sedaghaty state "that he wanted to go to Chechnya and fight." Government Memo at 15. Putting aside the Due Process and Confrontation Clause issues that permeate the government's attempt to use a biased case agent's report of an interview with a now deceased individual, the government is selectively choosing its facts. What it does not report, is that in 2007, Mr. Cabral clarified that he thought Mr. Sedaghaty was just "shooting off his mouth" and that he did not think Mr. Sedaghaty was serious about the desire to fight in Chechnya. FBI 302 dated 08/18/2007 (Gov. Disc. 1772-73). Furthermore, the government also neglects to mention that in the same 2007 interview, Mr. Cabral directly contradicted the testimony that his wife, Barbara, gave at trial. Mrs. Cabral testified that, during the 1999 hajj, Mr. Sedaghaty asked her and her husband for $200 to send to the Chechen mujahideen for "blankets and food." Tr. August 31, 2010 at 279-80. Mr. Cabral, in contrast, recalled that it was not Mr. Sedaghaty who asked for the money. FBI 302 dated 08/18/2007 (Gov. Disc. 1772-73).

Given the substantial evidence presented at trial regarding Mr. Sedaghaty's humanitarian efforts and desires to help the less fortunate, the government must marshal significant contrary evidence to successfully meet its burden with respect to proving Mr. Sedaghaty's intent to promote terrorist activities.  At this point, that evidence consists of multiple levels of hearsay, the contradictory memories of witnesses, the reliance on emails that Mr. Sedaghaty may never have read, and the further reliance on the unsubstantiated documents of a suspect spy agency with an agenda in Chechnya.  Application of the terrorism enhancement based on that evidence violates Mr. Sedaghaty's due process rights and is simply incompatible with the higher standard of clear and convincing evidence.

The government's arguments also ignore the intent to promote a crime requirement.  Even if Mr. Sedaghaty intended money to go to Chechen mujahideen, that is not, in and of itself, a crime.  There must also be the further intent to promote unlawful fighting.  Promoting humanitarian aid to the mujahideen or legitimate battles is not criminal and therefore does not fall within any of the enumerated statutes.

Mr. Sedaghaty should receive a sentence of time served and receive probation.  As stated above, there are no enhancements that should apply to Mr. Sedaghaty's sentence.  The base offense level in this case is 6 because there is no tax loss.  Mr. Sedaghaty has no criminal history, therefore his

criminal history category is I.  This places Mr. Sedaghaty in a range of 0 to 6 months.  As of the date of sentencing, Mr. Sedaghaty has already served six months in custody.  Mr. Sedaghaty is a peaceful man, only interested in getting back to his family and his community.  While on pre-trial release, Mr. Sedaghaty had no problems and easily met all demands placed on him by his pre-trial services officer.  It is clear that he would be equally amenable on probation.

Respectfully submitted on November 18, 2010.


/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Lawrence H. Matasar
Lawrence H. Matasar

Michelle Sweet
Assisting on the Response