**Steven T. Wax, OSB No. 85012**
**Federal Public Defender**
**101 SW Main Street, Suite 1700**
**Portland, OR  97204**
**Tel: (503) 326-2123**
**Fax: (503) 326-5524**
**Email: steve_wax@fd.org**

**Lawrence Matasar, OSB No. 74209**
**621 SW Morrison Street, Suite #1025**
**Portland, OR 97205**
**Tel: (503) 222-9830**
**Email: larry@pdxlaw.com**

**Attorneys for Defendant**

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 05-60008 HO** |
| **Plaintiff,** | |
| **v.** | **DEFENDANT'S MOTION FOR RELEASE PENDING LITIGATION OF MOTION FOR NEW TRIAL** |
| **PIROUZ SEDAGHATY,** | |
| **Defendant.** | **ORAL ARGUMENT REQUESTED** |

Defendant, Pirouz Sedaghaty, through his attorneys, Steven T. Wax and

Lawrence Matasar, respectfully moves this Court for an immediate ruling

granting release pending litigation of the motion for a new trial on the grounds

that the revelation of money provided and promised to a key government

witness, along with the revelation of a close personal relationship between the witness and the FBI source of the money, together with numerous other substantial new trial, judgment of acquittal, and potential appellate issues, creates a substantial likelihood that a new trial will be granted.  Any delay in conditional release creates actual current and imminent continuing irreparable harm.

## I.    MR. SEDAGHATY MEETS THE LEGAL STANDARDS FOR RELEASE PENDING SENTENCE OR APPEAL

Under 18 U.S.C. § 3143(a), a person who has been convicted of an offense and is awaiting sentencing shall be detained

> unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142 (b) or ( c).[1]

Under 18 U.S.C. § 3143(b)(1), the conditions for release pending appeal require in relevant part that the Court find

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community . . . and

> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in – (i) reversal, (ii)an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

---

[1]  Section 3142(b) provides for release on personal recognizance or unsecured appearance bond.  3142( c) provides for release on conditions.

A "substantial question of law or fact" exists when the issues are "fairly debatable," i.e., slightly more than "non-frivolous." *United States v. Handy*, 761 F.2d 1279, at 1281, 1282 (9th Cir. 1985)(citations omitted); *United States v. Montoya*, 908 F.2d 450, 450 (9th Cir. 1990). *See Barefoot v. Estelle,* 463 U.S. 880, 893 (1983). All of the issues in the new trial motion and any potential appeal are "fairly debatable."

## II. MR. SEDAGHATY POSES NEITHER A RISK OF FLIGHT NOR A DANGER TO THE COMMUNITY

Mr. Sedaghaty meets the standard for release pending sentencing because he has established by clear and convincing evidence that he poses no risk or danger of flight. Mr. Sedaghaty meets the more onerous standard for release for a person pending a new trial motion because he is likely to prevail. He meets the standard for release pending appeal (should one be necessary) because he has demonstrated a likelihood of success on appeal.

Mr. Sedaghaty voluntarily surrendered to federal authorities in August, 2007. As paragraph 50 of the Presentence Report notes, "He was released on pretrial supervision for almost three years with no noncompliance issues." During that time, there was no suggestion Mr. Sedaghaty poses "a danger to the safety of any other person or the community." 18 U.S.C. §3143(b)(1)(A). Witnesses testified at the release hearing that Mr. Sedaghaty was not a danger to the community, but rather a positive force for peace and interfaith

tolerance.[2]  Similar testimony was adduced during trial and again at

sentencing.[3]

Mr. Sedaghaty's voluntary surrender, his exemplary behavior while on

pretrial release, together with the modern monitoring tools available to the

Court demonstrate that Mr. Sedaghaty is not likely to flee. *See Truong Din*

*Hung v. United States*, 439 U.S. 1326, 1327 n. 4, 1329-30 (1978) (bail granted

after 15 year sentence for espionage-related charges notwithstanding lack of

permanent USA residence, maintenance of foreign contacts involved with the

espionage, and, unavailability of extradition should he return to Vietnam).

### III.    MR. SEDAGHATY'S MOTION FOR NEW TRIAL (AND ANY FUTURE APPEAL) RAISES SUBSTANTIAL QUESTIONS OF LAW LIKELY TO RESULT IN A NEW TRIAL OR REVERSAL ON APPEAL

#### A.    Cash Payments

Barbara Cabral was a key government witness.  The single most hotly

_____

[2]  Former Jackson County, Oregon Commissioner Jeff Golden testified at the release hearing: "I feel very strongly he's a positive force in the community, and I believe there's a very wide consensus in Ashland that would say the same thing. ... I would say that it has to do with the steadiness and tenacity of his effort to reach out, to represent Islam as a legitimate and peaceful religion in a time of – when that's been brought into question. His efforts to not just speak about Islam, but to interface with other faith traditions and try to understand and build common ground with them, and a sense of philanthropic work he has done around the world over time, preceding 9/11 by quite a few years. And people just really find him a – an easy listener and a good person."  Tr. August 22, 2007, p. 147.

[3]  *See, e.g.*, Tr. September 3, 2010, pp. 33-41 (Rabbi David Zaslow testimony); Tr. September 3, 2010, pp. 155-59 (Minister Caren Caldwell testimony).

contested issue at trial was whether Mr. Sedaghaty intended to provide financial support for the Chechen mujahideen and to hide that fact from the IRS. That was the government's only explanation, its defining but disputed theory, as to why Mr. Sedaghaty intended to falsify the tax forms. *It was, in short, the core of the government's case.*

During the nine years of relentless investigation, the government was able to produce only one witness who directly implicated Mr. Sedaghaty in efforts to raise money for the Chechen mujahideen. That witness, Barbara Cabral, testified that while waiting in the Jeddah airport to return home from the Hajj, Mr. Sedaghaty encouraged her and fellow travelers to donate a portion of their refunded expenses to the Chechen mujahideen. Her testimony hit its target. One juror actually complimented Ms. Cabral for a "good job" as she left the stand, leading to that juror's dismissal. The prosecutor was able to argue in closing that defense counsel had not provided a reason why Cabral would lie.

The principal government case agents, FBI Special Agent David Carroll (sometimes accompanied by his wife, FBI Agent Shawna Carroll) and IRS special Agent Colleen Anderson had interviewed Mr. and Mrs. Cabral at least 20 times. Prior to trial, the government disclosed the notes and reports of only 8 such interviews. On January 6, 2011, nearly four months after trial, for the first time, the government disclosed reports of 12 additional interviews and also

additional information relating to its relationship with the Cabrals.  As a result, we now know the FBI paid Mr. Cabral $14,500 in U.S. currency over a three year period, payments that were known to Mrs. Cabral.  In addition, prior to trial, the case agent promised to seek additional money – later specified as $7,500 – for Mrs. Cabral but only after the trial was completed.  Also disclosed for the first time is the fact that Cabral and the Carrolls had a relationship over the years that included hugs and a wedding invitation.

We herein incorporate by reference the Defendant's Supplement To Motion For New Trial which set out in more detail the legal basis justifying a new trial based on these new disclosures.  Under basic due process law, the prosecutors were required to disclose any basis for impeachment of the witness, including the husband's work for the FBI, payments of cash, the promise of cash after the witness testified, and the social relationship with the witness.  Instead, the witness was able to provide the key – and only – direct testimony that Mr. Sedaghaty wanted to help Chechen Mujahaddin, which the defense claimed and claims was false, untouched by the suggestions of bias and interest that these new disclosures so clearly raise.

**B.    Other Issues Raise Substantial Issues Likely to Result in a New Trial or Reversal on Appeal**

*1.    There is a substantial likelihood a new trial will be ordered.*

The substantial likelihood that a new trial will be required is especially strong in the context of the other issues raised in the motion for new trial,

including additional issues impeaching the integrity of the investigation and prosecution of this case: notably, the prosecutor's appeal to prejudice against Muslims and disrespect of the Noble Qur'an, the chief IRS agent's shift in her testimony and her role in revising the accountant's testimony, and the government's refusal to exercise its power to obtain exculpatory authentication information from Saudi Arabia.

We herein incorporate by reference Defendant's Motion For A New Trial and the Supplement thereto which set forth in detail grounds upon which a new trial should be granted.  Other grounds may be summarized as follows:

1. The Court erred in issuing and declining to modify an order dated may 16, 2008, prohibiting defense counsel, the defense team and their client from discussing or in any manner using material that the defense had provided to a court security officer.

2. The government's pervasive appeals to prejudice and fear denied defendant a fair trial.

3. The Court erred in denying admissibility of exhibits 704(a) and 705(a) and in denying judgment of acquittal.

4. The Court erred in denying defendant's motion to suppress.

5. The Combined Effect Of Multiple Other Errors Deprived Mr. Sedaghaty Of A Fair Trial. [4]

   a. Reversal is likely under the recent authority of *United States*

---

[4]  "[I]ndividual errors looked at separately may not rise to the level of reversible error, their cumulative effect may nevertheless be so prejudicial as to require reversal."  *United States v. Necoechea*, 986 F.2d 1273, 1282 (9th Cir. 1993).

*v. Waters*, 622 F.3d 1075 (9th Cir. 2010).

    b.    The Court erred in admitting evidence of alleged prior misconduct.

    c.    The Court's restrictions on voir dire combined with its refusal to examine jurors who complimented a member of the prosecution team during trial resulted in the denial of defendant's right to a fair and impartial jury.

6.    In terms of appeal and sentencing, Mr. Sedaghaty has argued that the base offense level is 6. Mr. Sedaghaty has no criminal history so his criminal history category is I. Without the enhancements challenged on appeal the advisory guideline range is 0 to 6 months. Mr. Sedaghaty has already spent more than six months in custody. He was taken into custody on August 15, 2007, and released on November 30, 2007. After the verdict, Mr. Sedaghaty was again taken into custody. Even if the conviction stands, and this Court does not agree with Mr. Sedaghaty's sentencing arguments, his appeal will include the substantial argument that he has already served more than an appropriate sentence.

    2.    *Discovery could lead to extended litigation.*

Mr. Sedaghaty has also filed a motion for discovery and an evidentiary hearing in support of his motion for a new trial and to complete the factual record in support of a motion to dismiss. Those proceedings could be protracted. They involve substantial and troubling issues. Mr. Sedaghaty should not be required to remain in custody while those issues are resolved.

## CONCLUSION

Mr. Sedaghaty returned to the United States voluntarily to face these charges and spent nearly three years out of custody working in the community. Numerous character witnesses, including co-religionists, a Rabbi, a minister, a

high school teacher, a politician, and friends and acquaintances testified to his peaceful nature at pre-trial release hearings, trial, and at sentencing.  The former head of Human Intelligence for the Department of Defense, Defense Intelligence Agency, and Deputy Director for Counter-Terrorism at the Department of State testified for Mr. Sedaghaty at trial.  He does not pose a danger to this country; he does not pose a flight risk.

Mr. Sedaghaty previously filed substantial motions for judgment of acquittal and for a new trial.  He has now supplemented the new trial motion based on the recent revelations of the stunning failure by the prosecution to disclose vitally important impeachment facts with respect to a key witness. The existing record establishes the likelihood of the ordering of a new trial. Further discovery may lead to dismissal.  As a result, Mr. Sedaghaty should be released from custody pending conclusion of these matters.

Respectfully submitted this 12th day of January, 2011.


/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Lawrence H. Matasar
Lawrence H. Matasar


Bernard J. Casey
Assisting on the Motion


**MOTION FOR RELEASE PENDING LITIGATION OF MOTION FOR NEW TRIAL**