Steven T. Wax, OSB No. 85012
Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR  97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Email: steve_wax@fd.org

Lawrence Matasar, OSB No. 74209
621 SW Morrison Street, Suite #1025
Portland, OR 97205
Tel: (503) 222-9830
Email: larry@pdxlaw.com

**Attorneys for Defendant**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CR 05-60008 HO |
| Plaintiff, | |
| v. | **DEFENDANT'S POST-TRIAL MOTION FOR DISCOVERY** |
| **PIROUZ SEDAGHATY,** | |
| Defendant. | **EVIDENTIARY HEARING REQUESTED** |

Defendant, Pirouz Sedaghaty, through counsel Lawrence Matasar and Steven T. Wax, hereby moves this Court for discovery and an evidentiary hearing in support of his motion for new trial and to complete the factual

record in support of a motion for dismissal of the indictment.  Mr. Sedaghaty is entitled to a new trial based on the existing record of the government's recent disclosures and its admissions regarding discovery violations.  Mr. Sedaghaty, however, takes strong issue with the government's statement that its failure to comply with its obligations can be characterized as "inadvertent."  Moreover, the full extent of the government's failings is not known at this time.  The record as it exists now suggests that this case has been infected with governmental conduct so extreme that dismissal of the indictment is warranted.

The government's recent disclosure of numerous reports casts doubt on all the discovery matters in this case.  Furthermore, the recent disclosures include materially altered reports.  Inquiry into involvement in, the reasons for, and extent of the non-disclosures and alterations is essential.

If the Court is not prepared to grant the motion for a new trial on the existing record, discovery and an evidentiary hearing are required immediately to uncover the extent of the government's failings.  In any event, discovery and an evidentiary hearing are required on the motion to dismiss the indictment.

I.   **WHEN THE GOVERNMENT OVERSTEPS, THE COURTS HAVE THE AUTHORITY TO DISMISS AN INDICTMENT.**

An indictment may be dismissed on two grounds: (1) "outrageous government conduct if the conduct amounts to a due process violation"; or (2) "if the conduct does not rise to the level of a due process violation, the court

may nonetheless dismiss under it supervisory powers." *United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008) (*citing United States v. Barrera-Moreno*, 951 F. 2d 1089, 1091 (9th Cir. 1991)).

To dismiss on the first ground, "the Government's conduct must be so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Smith*, 924 F.2d 889, 897 (9th Cir. 1991) (citations omitted). Regarding the second ground, the district court may exercise its supervisory power "'to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations; and to deter future illegal conduct.'" *Chapman*, 524 F.3d at 1085 (citations omitted). "[A] court may dismiss an indictment under its supervisory powers only when the defendant suffers 'substantial prejudice,' and where 'no lesser remedial action is available.'" *Chapman*, 524 F.3d at 1087 (citations omitted). Applying *Chapman* in *United States v. Fitzgerald*, 615 F.Supp. 2d 1156, 1159 (S.D. Cal. 2009), the court ordered dismissal for a *Brady* violation. Its discussion reiterated that government conduct need not be intentional to be flagrant. *Id.*

The failure to disclose the critical information regarding payments made to the Cabrals, including payment in the presence of Barbara Cabral, her discussions about payments with the FBI case agent, and his promise to her provide one leg of a motion to dismiss for outrageous government conduct. If

**Page 3**    **DEFENDANT'S POST-TRIAL MOTION FOR DISCOVERY**

the government agents failed to adhere to regulations concerning payment and failed to keep the prosecuting attorney involved, or if there has been United States Attorney involvement in the cover-up of this information, another level of outrage is reached. The offer of payment – to be made after trial testimony – to a person who was a percipient fact witness is another issue that must be inquired into on a motion to dismiss.

Mr. Sedaghaty seeks a broad inquiry into these matters in the context of his multi-year struggle to obtain a fair hearing on the charges. As articulated in his original motion for a new trial, that struggle has been confounded by bias in the investigation from the outset, including the government's refusal to utilize its authority to seek critical exculpatory evidence and its appeals to prejudice. The full breadth of the government's actions must be considered in framing and ruling on a motion to dismiss.[1]

---

[1] The materiality of the withheld information goes beyond its impact on Barbara Cabral's credibility, although that alone would warrant a new trial. It is also relevant to the defense efforts throughout the trial to demonstrate to the jury that the government investigation was biased.

Questions concerning the overall integrity of the government's investigation were raised at trial. *See* Tr. September 2, 2010, at 273-77; Tr. September 8, 2010, at 91-92, 94. One such issue concerned the government's refusal to obtain exculpatory evidence from the Al Rajhi Bank in Saudi Arabia that would have seriously undermined its theory regarding the validity of Exhibits AHIF 2 and 3 (the $186,000 and $188,000 documents) and its argument that Mr. Al Buthe pocketed $21,000. The defense attacks on the government investigation would have been significantly buttressed had the defense been able to demonstrate to the jury that the government had paid and offered money to the Cabrals and that reports had been altered.

Another integrity issue concerned IRS Agent Anderson's investigation

## II. DISCOVERY AND A HEARING ARE REQUIRED TO DETERMINE THE EXTENT OF THE GOVERNMENT MISCONDUCT AND WHETHER DISMISSAL OF THE INDICTMENT IS REQUIRED

### A. Broad Discovery And A Hearing Are Required To Address Questions That Are Not Answered By The Government's Recent Disclosures.

The facts as admitted by the government regarding the Cabrals require a new trial. But further inquiry remains necessary. The disclosures to date do not reveal what the United States Attorney's Office and prosecuting assistants knew about the payments and offers of payment and when they first learned about these matters. Moreover, as articulated in section B, the recent disclosures raise additional questions, including questions about the existence of altered copies of 302 reports.

While the government asserts that the failure to produce this information prior to trial was "inadvertent," it was not and cannot be accepted as

---

and testimony. Agent Anderson testified to the grand jury that Wilcox, the accountant, told her that Mr. Sedaghaty provided him with false documentation (the Springfield building schedule) that caused Wilcox to enter the false information on the tax forms. This testimony went to the heart of the tax fraud charges in the indictment. As it happened, however, that critical fact was not mentioned in Anderson's witness handwritten interview notes; it only appeared in a subsequently prepared report, an omission that by itself raises the specter of embellishment. Later, however, after the defense team proved that it was Wilcox, not Sedaghaty, who entered the wrong information on the building schedule, Anderson re-interviewed Wilcox. After being shown certain leading documents from Agent Anderson, Wilcox backed away from the original story as told to the grand jury by Agent Anderson. The new version of events formed the basis of Wilcox's testimony at trial. Had the defense known that Agent Anderson was present when payments were made in Mrs. Cabral's presence, the defense would have been in a far stronger position to attack the integrity of Anderson's investigation and testimony.

inadvertent as to FBI Agent Carroll or IRS Agent Anderson. They were central to the case. Agent Anderson was in charge of transmitting discovery to the defense. Information regarding the full roles and knowledge of the various participants in this investigation with the Cabrals, payments and offers of payments to them, and the withholding of reports is essential to a complete resolution of this issue. Equally important is knowledge of the role of any investigating agency supervisors and of the United States Attorney's Office.

The United States Attorney's Office has been involved in this case since its inception in September or October of 2001. While there have been multiple persons involved in this case, three people have consistently been involved from the beginning: AUSA Chris Cardani, FBI Agent David Carroll, and IRS Agent Colleen Anderson. They were involved from the beginning stages of the investigation in late 2001, to the seeking and execution of the search warrant in this case, the grand jury, the detentions hearings before this Court, the pre-trial discovery obligations, the pre-trial motions and hearings, and finally, the trial. The lengthy and close relationship between the investigating agencies and the United States Attorney's Office alone requires a searching inquiry into the role of the prosecuting officials in the non-disclosures and payments.

The Department of Justice Manual on use of informants raises substantial additional questions about the conduct of the FBI, IRS, and the United States Attorney's Office. In 2006, the Department of Justice issued The

Attorney General's Guidelines Regarding The Use of FBI Confidential Human Sources (CHS). Those guidelines provide detailed instructions and limits on the use of informants and payments to witnesses. *See, e.g.,* Guidelines at 257-58. They establish rigorous procedures for registering informants. *Id.* at 241-51. They also require a duty of candor and require the FBI to disclose "all relevant information" concerning a CHS to the appropriate prosecuting attorney. *Id.* at 231, 273-74. While money may be paid to informants, it may *not* be on a contingent basis. *Id.* 257. Written authority is required, strict documentation and coordination must take place with the federal prosecutor. *Id.* at 258-259. Inquiry must be made into the actions taken by the investigators and prosecutors.

## B.     Discovery Is Sought Of The Matters Stated Below.

### 1.     More discovery related to the Cabrals should be provided.

With respect to the Cabrals, Mr. Sedaghaty moves that the government be ordered to:

1. Provide a current copy of the Department of Justice Guidelines for use of informants and any that may have been in existence from 2004-2010.

2. Provide a current of any additional FBI guidelines for use of informants and any that may have been in existence from 2004-2010.

3. Provide a current copy of any Internal Revenue Service Guidelines for use of informants and any that may have been in existence from 2004-2010.

Page 7     **DEFENDANT'S POST-TRIAL MOTION FOR DISCOVERY**

4. Provide any and all documentation supporting, justifying, authorizing, and recording and all receipts for any and all payments made by the government to Richard and/or Barbara Cabral from any and all government agencies where such documentation may exist.

5. Provide all documentation regarding the use of Richard and/or Barbara Cabral as informants, supervisory and legal reviews and approval, and communications between any FBI or IRS agents and any supervisory agents, and other employees of the Department of Justice and Internal Revenue Service regarding this matter.

6. Provide all documentation regarding the use of Richard and Barbara Cabral as informants, supervisory reviews and approval, and communications between any FBI or IRS agents or employees and any Assistant United States Attorney, United States Attorney or other Department of Justice Employee.

7. Provide all documentation within the United States Attorney's Office or the Department of Justice regarding the use of Richard and Barbara Cabral as informants, supervisory reviews and approval, and communications between any FBI or IRS agents and any Assistant United States Attorney, United States Attorney or other Department of Justice Employee.

8. Provide all notes or memoranda from the files of Assistant United States Attorneys Christopher Cardani and Charles Gorder regarding their communications with FBI Agent David Carroll, IRS Agent Colleen Anderson and any other agents or employees of the FBI or IRS regarding the use of Richard or Barbara Cabral as a witness or informant and their communications with any other members of the United States Attorney's Office or Department of Justice on that subject.

9. Explain when, why, and how the decisions were made to treat Barbara and Richard Cabral as informants rather than as percipient witnesses and the decision to record their

        information in FBI Form 1023 rather than Form 302.

10. Provide any record of when the United States Attorney's Office advised the Court of this issue or information on that subject.

11. Provide an explanation of when and how the United States Attorney's Office alleges the non-disclosed Cabral information came to its attention as indicated in the transmittal letter of January 6, 2011.

12. Provide documentation of any communication (telephone, e-mail, in person, or otherwise) between Barbara Cabral and the FBI, IRS, or the United States Attorney's Office about payment, money or any other type of remuneration since the trial began, and since the trial concluded.

13. Provide all of Barbara Cabral's medical records regarding the 2010 medical incident referred to in FBI Agent Carroll's 302.

14. Provide Richard and Barbara Cabral's bank records, individually and collectively, from September 2003 through the present.

15. Provide the tax returns for Richard and/or Barbara Cabral for the tax years of 2003-2010.

16. State whether the Cabral residence was searched in 2004, or at any other time. If so, provide any reports, warrants, returns, or any other information related to any and all such searches.

17. Provide the original handwritten notes for defense inspection of all notes that have been provided to the defense in discovery.

18. Provide the names of all agents, from any agency, who were present during any discussion or interview with Richard and/or Barbara Cabral at any time.

19. Provide any and all telephone and/or cell phone records of communications to and from Agents David and Shawna

Carroll and/or Colleen Anderson and Barbara Cabral.

"Documentation" as used in these requests includes all paper, notes, payment records, reports, memoranda, emails, and references in whatever form, paper, electronic, or otherwise and wherever located or maintained within the government, including any personal or private files, whether maintained in government offices or elsewhere.

### 2. The disclosures cast doubt on the completeness and integrity of the discovery in the case as a whole.

The government admits that upon further investigation into the issue of payment of the Cabrals, numerous pages of reports and notes were found that should have been disclosed to the defense through discovery but were not. Moreover, the new discovery contains a report that has been altered. Pre-trial, the government provided the defense an FBI 302 report of an August 17, 2007, interview of Richard and Barbara Cabral. GOV 1772-73. On January 6, 2011, the government provided a different version of the same FBI 302 report. GOV 3849-50. The new version contains some information that was not in the earlier version. The older version contains some information that was not in the new version. The two versions contain different dollar amounts for the alleged solicitation.

The failure to disclose and the alterations call into question all of the government's disclosures to date. Therefore, the defense requests an order from this Court that the government be required to reexamine all of the files

within the Department of Justice, Office of the United States Attorney for the District of Oregon, and all investigating agencies, for any other information that should be disclosed pursuant to the government's discovery obligations. This reexamination must include a search for other altered reports. This must include both unclassified and classified material.[2] Therefore, Mr. Sedaghaty seeks an order for the government to:

20. Provide any and all information about any other person the government paid in connection with any investigation into Al Haramain or Pirouz Sedaghaty, whether a witness or not.

21. Provide the Court and defense:

   a. written confirmation that the United States Attorney for the District of Oregon, and/or the Attorney General has demanded that all government agencies review their files for any other information related to Mr. Sedaghaty and material potentially relevant to this case;

   b. written certification from the heads of all government agencies with any involvement in the investigation or prosecution of Mr. Sedaghaty (including the United States Attorney's Office) that they have required and supervised the required searches, and;

   c. all material that is potentially relevant to this case.

---

[2]On July 13, 2009, Mr. Sedaghaty provided the Court the reports of the Inspectors General of five agencies, finding the failure of the intelligence community to provide trial prosecutors with information they are obligated to provide in discovery. Tr. July 12, 2009, pp. 5-6; *see* CR 197, Ex. SH-1. The Inspectors Generals' warnings support the requests made at this time with a renewed order to the government to seek exculpatory information in intelligence agency files.

**Page 11**     **DEFENDANT'S POST-TRIAL MOTION FOR DISCOVERY**

22.    As an alternative to ¶ 21, the Court should order the United States Attorney, Federal Bureau of Investigation, Internal Revenue Service, and Department of Justice to turn over to it all copies of all material related to Mr. Sedaghaty that resides in their files and certify that such disclosures have been made.  The Court should then appoint an independent special master to review the material to determine if material exists that must be disclosed to the defense and whether any other alterations in reports exists.

A hearing into the non-disclosures and alteration is required.

Respectfully submitted this 12th day of January, 2011.

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Lawrence H. Matasar
Lawrence H. Matasar