Steven T. Wax, OSB No. 85012
Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Email: steve_wax@fd.org

Lawrence Matasar, OSB No. 74209
621 S.W. Morrison Street, Suite 1025
Portland, OR 97205
Telephone: (503) 222-9830
Fax: (503) 274-8575
Email: larry@pdxlaw.com

      Attorneys for Pirouz Sedaghaty

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | Case No. CR 05-60008 HO |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S SUPPLEMENT |
| | ) | TO MOTION FOR RELEASE, |
| vs. | ) | MOTION FOR DISCOVERY, |
| | ) | MOTION FOR NEW TRIAL |
| **PIROUZ SEDAGHATY,** | ) | |
| | ) | MOTION TO PRESERVE GOVERNMENT |
| Defendant. | ) | DATA AND DOCUMENTS |

    Defendant, Pirouz Sedaghaty, through counsel Lawrence Matasar and Steven T. Wax, hereby supplements the record on his pending motion for release, motion for discovery, and motion for new trial with additional relevant information. This information will also be relied upon in Defendant's soon to be flied motion to dismiss the indictment.

    Defendant further moves, based on the extraordinary facts before this Court, for

PAGE 1 – SUPP TO MOTS. FOR NEW TRIAL; DISC.; RELEASE.  MOT. TO PRESERVE

an Order directing that the government preserve all documents and computer data related to this case pending its complete resolution.

**INTRODUCTION**

In filings with this Court on January 12, 2011, the defense showed that the government violated this Court's written discovery Orders and violated defendant's constitutional rights under *Brady v. Maryland* and its progeny. The instant pleading provides the Court, in advance of its consideration of defendant's motion for immediate release, with additional information provided by the government and developed by the defense.

**SUPPLEMENTAL FACTS**

1. In December, 2010, the United States Attorney was asked to approve payment of $7,500 cash to Barbara Cabral, who had testified as a fact witness at the trial of this case. The United States Attorney refused to approve the payment, directed that defense counsel be immediately informed that there had been a potential *Brady* violation, and directed that defense counsel be informed that further written disclosures would be made. The government assigned another FBI agent to conduct an investigation and assigned another Assistant United States Attorney to handle post-trial discovery related motions.

2. The trial prosecutors knew that the witness's husband, Richard Cabral, who was often interviewed in the presence of the witness, Barbara Cabral, was paid $14,500 in cash by the government. The trial prosecutors did not disclose this information to the defense.

3. In a transmittal letter dated January 6, 2011, the newly assigned prosecutor described "additional discovery in this case." She revealed that a discussion with the

PAGE 2 – SUPP TO MOTS. FOR NEW TRIAL; DISC.; RELEASE. MOT. TO PRESERVE

trial witness, Barbara Cabral, about a potential post-trial cash payment prompted the government to further investigate, leading to what the prosecutor called a regrettable late disclosure of information from the file of the witness's husband. Most of the documents provided to the defense with the January 6, 2011 transmittal letter were witness interview reports and notes that were stamped with Bates numbers 3813-3872 in sequence with other government discovery previously provided.

    4. As indicated in the January 6, 2011 transmittal letter, when the government disclosed to the defense an 8/18/07 FBI 302 report of an interview with the witness's husband concerning the subject of the witness's testimony, the government believed that a report of this interview had not been previously disclosed. In fact, a report of this interview had been provided as discovery before trial. Disc. 1772-73. Following communication from defense counsel to the government about questionable content contained in the new material, the newly assigned prosecutor sent an email to defense counsel on January 11, 2011: "We just discovered that the Richard Cabral 302 dated 8/17/07 was produced to your team prior to trial (bate 1772-73)."

    5. Contrary to the government's assertion in the January 11, 2011 email that the 302 dated 8/17/07, pages 3849-50, was produced prior to trial as pages 1772-73, the two FBI 302 reports dated 8/17/07 are dramatically different in significant places. Until its production in January 2011, document 3849-50 had never been seen by the defense. More importantly, 3849-50, which was disclosed to the defense at a time when the government did not know that it had previously disclosed a report of the same interview and which was disclosed at a time when the government was aware that it had withheld other exculpatory information from the defense, did not contain the following exculpatory information: "Cabral did not recall Sedaghaty discussing the

PAGE 3 – SUPP TO MOTS. FOR NEW TRIAL; DISC.; RELEASE.  MOT. TO PRESERVE

topic of Kosovo or supporting mujahedin there."

This difference in the documents is easily seen. The end of the second paragraph on page 3849 ends with "United States."

```
wives in the United States.
        Cabral recalled traveling to Saudi Arabia to attend the
```

But the end of the second paragraph on page 1772 contains an additional sentence after the words, "United States:"

```
wives in the United States. Cabral did not recall Sedaghaty
discussing the topic of Kosovo or supporting mujahedin there.
        Cabral recalled traveling to Saudi Arabia to attend the
```

6. Notwithstanding that the United States Attorney has assigned a new Assistant to handle the matters currently before the Court and a new FBI agent to conduct an investigation, one of the trial prosecutors and the IRS case agent are involved in the government's post-trial investigation. After the defense pointed out to the United States Attorney and the new Assistant United States Attorney assigned to the case that exculpatory language was missing in 3849-50, the new Assistant gave the defense two reasons for the differences in the documents: (1) one of the original trial prosecutors had obtained the newly discovered report for her by looking through files at the FBI's Portland office; and (2) the lead IRS case agent told her the newly disclosed version, 3849-50, was "a draft."

7. In determining whether 3849-50, the version of the interview report without

PAGE 4 – SUPP TO MOTS. FOR NEW TRIAL; DISC.; RELEASE.  MOT. TO PRESERVE

the sentence "Cabral did not recall Sedaghaty discussing the topic of Kosovo or supporting mujahadin there," is a draft version, this Court should consider that the handwritten notes of the interview provide: "Cabral didn't recall PS speaking re: Kosovo," Bates 3852.[1]

8.  There are several other differences between the two versions of the 302s provided to the defense. For example, pages 1772-73 provide:

> Upon arrival everyone in the group paid $200.00 to cover the costs of their transportation to and from the various events during the Hajj.  At the airport, Cabral recalled Soliman Albuthe's brother, Adil Albuthe, advising that only $100.00 of the $200.00 had been used to cover the costs of transport.  Adil requested everyone consider contributing the remaining $100.00 to Chechnyan refugees for * * *."

But, pages 3849-50 state:

> Upon arrival everyone in the group paid $400.00 to cover the costs of their transportation to and from the various events during the Hajj. At the airport, Cabral recalled Soliman Albuthe's brother, Adil Albuthe, advising that only $200.00 of the $400.00 had been used to cover the costs of transport. Adil requested everyone consider contributing the remaining $200.00 to Chechnyan refugees for * * * ."

9.  The documents recently provided to the defense also reveal that other exculpatory material was not provided before trial. According to the recently disclosed documents, Barbara Cabral falsely stated to government agents, both on February 7, 2008 (No. 3841-44) and on March 2, 2010 (No. 3824), that Pete Seda went to Saudi Arabia for the Hajj in 2000.  The government, which had extensively investigated Mr. Seda's life during February and March, 2000, knew these statements from Ms. Cabral were

---

[1]  Bates 3852:

*[handwritten note: "Cabral didn't recall PS speaking re: Kosovo"]*

PAGE 5 – SUPP TO MOTS. FOR NEW TRIAL; DISC.; RELEASE.  MOT. TO PRESERVE

incorrect, yet the government did not provide these documents to the defense before trial.

    10.  As indicated above, a new FBI agent was assigned post-trial to re-interview the trial witness concerning cash payments to her husband and the pre-trial promise of post-trial cash payments directly to her.  The report of this re-interview provided to the defense shows that much relevant information was not obtained, such as answers to the following questions:

    A.  Whether the original agent's note of a 4/14/08 interview, 3819, "Barb - in November - Paul Mitchell School in Costa Mesa, CA - 5 days in school $2,500" is a reference to a cash payment by the government?

    B.  Whether the original agent's next note from the same interview, 3820, "7 day cruise - / out of Boston up coast of Maine" is a reference to a cash payment by the government?

    C.  Why did the new FBI agent's report on his interview of the key trial witness fail to provide information as to whether the witness actually had a heart attack, as she apparently falsely claimed before trial in an effort to obtain compensation?

    D.  Why did the new FBI agent's report on his interview of the key trial witness fail to provide information as to why the original case agents and prosecutors believed it was permissible to make cash payments to fact witnesses, especially including the pretrial promise of payments to be made after trial?

    E.  Why did the government not investigate and provide to the defense detailed factual information, including formal interviews and transcripts, as to whether the case agents and the prosecutors were aware of and properly followed FBI guidelines

for the payment of cash to witnesses?

       F.  Why did the government not investigate and provide to the defense detailed factual information, including formal interviews and transcripts, describing the reasons why the case agents and trial prosecutors failed to provide exculpatory material to the defense?

**CONCLUSION**

For the reasons stated above, and because the government no longer opposes defendant's release after strongly opposing release throughout this case, the defendant should be released immediately under the same conditions he had scrupulously obeyed for nearly three years.

The disclosures to date and the questions they raise regarding the government's post-trial investigation also support an Order by this Court that the government preserve all documents and data related to this case, including all computer files and email.

Respectfully submitted this 18th day of January, 2011.

                              /s/ Steven T. Wax
                              Steven T. Wax
                              Federal Public Defender

                              /s/ Lawrence Matasar
                              Lawrence Matasar