```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF OREGON

 3    UNITED STATES OF AMERICA,        )
                                       )
 4                    Plaintiff,       ) No. 05-60008-2-HO
                                       )
 5       v.                            ) January 19, 2011
                                       )
 6    PIROUZ SEDAGHATY, et al.,        ) Eugene, Oregon
                                       )
 7                    Defendants.      )

 8

 9              TRANSCRIPT OF ORAL ARGUMENT

10         BEFORE THE HONORABLE MICHAEL R. HOGAN

11           UNITED STATES DISTRICT COURT JUDGE

12

13                        -:-

14

15

16

17

18

19

20

21

22

23               Deborah Wilhelm, CSR, RPR
                       Court Reporter
24                      P.O. Box 1504
                    Eugene, OR  97440
25                    (541) 431-4113
```

```
 1                   APPEARANCES OF COUNSEL

 2

 3   FOR THE PLAINTIFF:    KELLY ALEXANDRE ZUSMAN
                           United States Attorney's Office
 4                         1000 S.W. Third Avenue, Suite 600
                           Portland, OR  97204-2902
 5                         (503) 727-1009

 6                         FRANK PAPAGNI
                           United States Attorney's Office
 7                         405 E. 8th Avenue, Suite 2400
                           Eugene, OR  97401
 8                         (541) 465-6627
                           frank.papagni@usdoj.gov
 9

10   FOR THE DEFENDANT:    LAWRENCE H. MATASAR
                           Lawrence Matasar, P.C.
11                         621 S.W. Morrison Street
                           Suite 1025
12                         Portland, OR  97205
                           (503) 222-9830
13                         larry@pdxlaw.com

14                         STEVEN T. WAX
                           BERNARD J. CASEY
15                         MICHELLE SWEET
                           Federal Public Defender
16                         101 S.W. Main Street, Suite 1700
                           Portland, OR  97204
17                         (503) 326-2123
                           steve_wax@fd.org
18

19

20

21

22

23

24

25
```

```
 1              (Wednesday, January 19, 2011; 1:05 p.m.)
 2                        P R O C E E D I N G S
 3              THE CLERK:  This is the time set for Case
 4   05-60008, United States of America versus Pirouz
 5   Sedaghaty, time set for oral argument on motion for
 6   release from custody number 519.
 7              THE COURT:  Counsel, I'm, of course, familiar
 8   with your pleadings.  Please don't repeat them.
 9              MR. MATASAR:  I won't, Your Honor.  I have
10   three points, should take two minutes total.
11              THE COURT:  All right.
12              MR. MATASAR:  First of all, I want to point
13   out, Your Honor, after all we do have the adversary
14   system here, the government has taken a position
15   strongly against release throughout this case.  There
16   was a month-long release hearing before Judge Coffin,
17   further proceedings in front of you.  We take it as
18   extremely significant that they have changed their
19   positions.
20              Second of all, concerning the issue of flight
21   risk, there is a new report that you have from Pretrial
22   Services, we saw it today.  I will not belabor the
23   flight risk issue beyond what's in the report, which we
24   agree with.
25              Finally, to the extent that the court is
```

1  concerned about the ultimate ruling on the motions for a
2  new trial, the government has indicated they have a
3  different view than we do of the importance of the
4  material that was not provided to us.  I will not go
5  into it, but I will point out that repeatedly the
6  government itself in the closing argument and in their
7  posttrial briefing has talked about the key issue in
8  this case was willfulness.  And in their papers they
9  talk about how important the witnesses who testified,
10 that he directly engaged in fund-raising for the
11 mujahideen.
12         They say in their posttrial papers on page 28
13 against a new trial, the fund-raising for the mujahideen
14 was extremely probative of the defendant's knowledge,
15 intent, lack of mistake, or accident, was directly
16 relevant to the issue of willfulness.
17         THE COURT:  Yeah, I remember those things.  Let
18 me ask a couple of questions.  In the pleading filed
19 yesterday you say at paragraph 2 -- actually, you may
20 not have signed it, whoever signed it, yes, your name is
21 on there with Mr. Wax, I'm going to excerpt, the trial
22 prosecutors knew Richard Cabral was paid $14,500.
23         MR. MATASAR:  Yes.
24         THE COURT:  What's that based on?
25         MR. MATASAR:  A statement from the United

```
 1  States Attorney directly to us.
 2          THE COURT:  Excuse me?
 3          MR. MATASAR:  Directly to me and Mr. Wax.
 4          THE COURT:  So you're reporting something that
 5  someone else said to you, right?
 6          MR. MATASAR:  Correct.
 7          THE COURT:  And then over on page 5, paragraph
 8  9, and I'll just summarize here, Barbara Cabral falsely
 9  stated to government agents that Pete Seda went to Saudi
10  Arabia for the Hajj in 2000, what's that based on?
11          MR. MATASAR:  Your Honor, we have seen the
12  government's investigation of the period February and
13  March 2000.  They knew every single thing that Pete Seda
14  was doing during that time period.  There is no
15  indication at all that he went to Saudi Arabia during
16  that time period.  Incorrectly may be the more proper
17  term, but it was an incorrect statement that he was in
18  Saudi Arabia, and the government knew that.
19          THE COURT:  What do the parties -- what's
20  counsel's intent on getting me the 302s?
21          MR. MATASAR:  We have them, Your Honor.  We can
22  give them to you now.
23          THE COURT:  What I'm interested --
24          MR. MATASAR:  The ones that we were given.  We
25  believe there are a lot more that we weren't given, but
```

```
 1   if what you are talking about is the 302s that we've
 2   been given, I can give them to you right now.
 3           THE COURT:  What I'm interested in knowing is
 4   in 302s recently transferred to you whether that's the
 5   first indication you had of the witness payments or not.
 6   In other words, I want to associate the thing that's not
 7   clear from the pleadings is what you knew when in that
 8   regard.
 9           MR. MATASAR:  Your Honor, we were completely
10   unaware until we received these 302s about the actual
11   payments.  We were told about -- in December of 2010
12   that there may have been a promise to pay one witness
13   some money.  Then when we got the 302s, we got the
14   information about that promise to pay the witness some
15   money, and also the fact that there had actually been
16   $14,500 in cash paid to the husband of the witness who
17   was interviewed while the witness was present, and the
18   witness also gave information.  Is that --
19           MR. WAX:  Your Honor, we do not believe that
20   that's going to be contested.  The information that --
21           THE COURT:  No, that's -- I'm not suggesting
22   that will be contested.  What I'm trying to understand
23   is the timing --
24           MR. WAX:  On December --
25           THE COURT:  -- whether this was entirely new
```

```
 1  information to the defense team or not.
 2           MR. WAX:  It is, Your Honor.
 3           THE COURT:  It is as of when?
 4           MR. WAX:  December 21, I believe it is, when
 5  Mr. Cardani called me and advised that there was some
 6  new information.
 7           THE COURT:  Did you have information about a
 8  payment to a witness before that?
 9           MR. WAX:  No, none.
10           THE COURT:  That's all I have.  Now, my
11  experience tells me, my trick knee, whatever it is, that
12  someone is probably working on affidavits right now, and
13  there is a discovery motion out there, too, and what I'm
14  trying to do is project a potential schedule for
15  resolution of these matters.  So if -- I assume --
16  frankly, I would expect there may be differences between
17  the government and the defense in that regard, but I'd
18  like to have, in a few words, each of your thoughts on
19  that if you are prepared to give them.
20           MR. MATASAR:  We're prepared, Your Honor.  And
21  we would like to have a hearing on the discovery aspect
22  of our motions as quickly as the government could be
23  ready.  We could be ready in a week.
24           THE COURT:  All right.  And who wants to
25  respond for the government?  Ms. Zusman?
```

1    MS. ZUSMAN: Your Honor, Kelly Zusman appearing
2 on behalf of the United States today. And as you
3 anticipated, we are -- pardon me -- actively working on
4 responding to the motions that have been filed very
5 recently.
6    On the discovery motion, I would ask the court
7 for a week for us to respond. On the new trial,
8 30 days.
9    As the court knows, this court -- this case has
10 a very lengthy history. I was sort of dropped into it a
11 couple of weeks ago. It's going to take me a little
12 time to get up to speed, so I would ask for at least
13 30 days on the new trial motion response.
14    THE COURT: You may have that. I was just
15 trying to project how long before this is going to be on
16 my desk to give you some decisions.
17    MR. WAX: Your Honor, we've indicated in our
18 pleadings that we anticipate that we would also be
19 filing a motion to dismiss. In order to frame that
20 motion as accurately as we can, we need to have the
21 discovery that we have requested, and we believe the
22 additional discovery that the government will agree to
23 provide. So that in terms of setting a schedule, I
24 think that we need to factor in that we will need
25 additional time after the discovery matters are

```
 1   concluded before we'll be in a position to file the
 2   motion to dismiss.
 3           THE COURT:  I'm going to give you -- give each
 4   of you 30 days also to give me a brief on double
 5   jeopardy issues to the extent they exist.  All right?
 6           Is there anything more?
 7           MR. MATASAR:  Well, just the release matter,
 8   Your Honor, of course.
 9           THE COURT:  Yeah, of course.  All right.  Does
10   the government have anything?
11           MS. ZUSMAN:  We have nothing to add to our
12   written submission, Your Honor.
13           THE COURT:  All right.  Thank you.  The
14   defendant will be released after he's returned to
15   Portland on the conditions suggested by Pretrial
16   Services, which include all of the previous conditions,
17   plus I will require active GPS monitoring 24 hours.  Any
18   questions?
19           MR. WAX:  Mechanically, Your Honor, what does
20   that mean, "after his return to Portland"?
21           THE COURT:  That means the -- he'll be taken
22   back to Portland by the Marshals.
23           MR. WAX:  By the Marshal.
24           THE COURT:  And then we have a charged up GPS
25   unit here in Eugene, but given where he's been living
```

```
 1   and so on, I thought that made more sense.  And so the
 2   Marshal will take him back to Portland.  He'll be
 3   processed there.
 4             And so, sir, this means that I expect someone
 5   to know where you are 24 hours a day.  And you -- your
 6   record is not perfect with regard to showing up.  You
 7   absented yourself early in this investigation for a
 8   considerable period of time.  I will not abide by any
 9   missteps on your part in this regard.  Do you understand
10   that?
11             THE DEFENDANT:  Yes, I do.
12             THE COURT:  All right.  Fine.  Thank you.
13   Anything further?
14             MR. MATASAR:  No, Your Honor.
15             THE COURT:  We're in recess.
16             (The proceedings were concluded at 1:14 p.m.)
17
18
19
20
21
22
23
24
25
```

```
 1                        CERTIFICATE

 2        I, Deborah Wilhelm, Certified Shorthand Reporter

 3   for the State of Oregon, do hereby certify that I was

 4   present at and reported in machine shorthand the oral

 5   proceedings had in the above-entitled matter.  I hereby

 6   certify that the foregoing is a true and correct

 7   transcript, to the best of my skill and ability, dated

 8   this 26th day of January, 2011.

 9

10

11

12
                                    /s/ Deborah Wilhelm
13                                  _____
                                    Deborah Wilhelm, RPR
14                                  Certified Shorthand Reporter
                                    Certificate No. 00-0363
15
```