DWIGHT C. HOLTON, OSB #09054
United States Attorney
District of Oregon
CHRISTOPHER L. CARDANI
Assistant United States Attorney
405 East Eighth Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771
chris.cardani@usdoj.gov
CHARLES F. GORDER, JR., OSB# 912874
**KELLY A. ZUSMAN**, OSB #891843
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1000
charles.gorder@usdoj.gov
kelly.zusman@usdoj.gov

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CR 05-60008-HO |
| v. | GOVERNMENT'S RESPONSE TO DEFENDANT'S POST-TRIAL |
| PIROUZ SEDAGHATY, | DISCOVERY MOTION AND REQUEST FOR AN EVIDENTIARY HEARING |
| Defendant. | |

The United States of America, by and through Dwight C. Holton, United States Attorney, and Kelly A. Zusman, Assistant United States Attorney, offers the following response to defendant's motion for post-trial discovery and request for an evidentiary hearing:

Seda has filed a post-trial motion for discovery that includes a number of allegations previewing an anticipated motion to dismiss his indictment. For the reasons that follow, defendant's discovery motion should be denied, and any decision on his request for an

evidentiary hearing should be deferred until after this Court has had an opportunity to review the government's response and sworn declarations. The government intends to provide this Court with a comprehensive accounting such that further proceedings should be unnecessary. The government intends to oppose any motion to dismiss the indictment in due course.

The post-trial documents and payment information that the government produced to the defense on January 6, 2011, were discovered and produced by the same individuals whom the defense now accuses of flagrant misconduct and bad faith. It was the trial team who discovered the errors and promptly brought them to the attention of the defense and this Court. Defendant cites virtually nothing to support his discovery requests, and the decision about whether to hold an evidentiary hearing or decide post-trial issues based upon affidavits or declarations and the judge's memory of the trial is one that falls squarely within this Court's discretion. *See e.g., United States v. Nace*, 561 F.2d 763, 772 (9th Cir. 1977)(leaving to district court to decide whether to decide *Brady* claim based upon affidavits or by holding a hearing); *see also United States v. Alexander*, 695 F.2d 398, 402 (9th Cir. 1982) (same re impeaching evidence); *United States v. Colacurcio*, 499 F.2d 1401, 1406 n.7 (9th Cir. 1974).

Discovery in criminal cases, unlike civil cases, is governed by a "patchwork" of statutory rules and constitutional principles. *United States v. Fort*, 478 F.3d 1099, 1102 (9th Cir. 2007). Federal Rule of Criminal Procedure 16 governs discovery of material documents and objects "within the government's possession, custody, or control" and "material to the preparation of the defendant's defense." Fed. R. Crim. P. 16(a)(1)(E)(i). Rule 16 does not permit discovery of "reports, memoranda or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."

**Page 2 - Gov't's Resp to Def's Post-Trial Discovery Mot & Req for an Evidentiary Hearing**

Fed. R. Crim. P. 16(a)(2); *see e.g., United States v. Fernandez*, 231 F.3d 1240, 1246-47 (9th Cir. 2000) (holding defendants had no right to discover prosecution memorandum and death penalty evaluation form because those documents fell within the deliberative process and work product privileges). Although similar to the work product rule, Rule 16(a)(2) "extends beyond the work product privilege defined in the civil context." *Fort*, 472 F.3d at 1115. Moreover, Rule 16 limits discovery to documents or items material to a defense to the government's case-in-chief – it does not authorize discovery for a claim distinct from the merits of the criminal charge. *United States v. Armstrong,* 517 U.S. 456, 463-64 (1996).

In addition to Rule 16 (and witness statements under the Jencks Act (18 U.S.C. § 3500)), courts have recognized that the Due Process Clause requires that prosecutors produce exculpatory and impeachment evidence to the defense when that evidence is in the possession of the prosecution team. *Brady v. Maryland*, 373 U.S. 83 (1963) (exculpatory evidence); *United States v. Abel*, 469 U.S. 45 (1984) (evidence of witness bias); *see also Cone v. Bell*, 129 S. Ct. 1769, 1783 n.15 (2009) (noting due process underpinnings of *Brady*, along with ethical and statutory obligations). *Brady* material encompasses witness impeachment evidence when such evidence "bears on the credibility of a significant witness in the case" and "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." *United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004) (internal citations omitted).

But this case is now post-trial and post-verdict and the only event that has taken place since the original motions for new trial and sentencing issues were briefed and argued is the government's disclosure of additional material that might have been used to impeach a government witness. The government has already acknowledged that whether this additional

**Page 3 - Gov't's Resp to Def's Post-Trial Discovery Mot & Req for an Evidentiary Hearing**

material is of a character to constitute a *Brady* violation sufficient to undermine confidence in the verdict is an issue that will be addressed in a separate pleading.  The government's recent disclosure does not, and should not, open the door to the broad-ranging discovery that the defense now seeks for at least two reasons:  (1) post-trial discovery is ordinarily not permitted to bolster a new trial motion; and (2) defendants may not use discovery demands to create a claim for outrageous government conduct.

In disposing of a motion for new trial, the district court has discretion to order discovery, but should do so only in the "rare case."  *United States v. Velarde*, 485 F.3d 553, 560 (10th Cir. 2007); *see also Wade v. United States,* 504 U.S. 181, 186 (1992) (explaining that "generalized allegations" of prosecutorial misconduct in declining to make a substantial assistance motion do not entitle a defendant to discovery or an evidentiary hearing); *United States v. Thompson*, 335 Fed. App'x 876, 882 (11th Cir. Jun. 30, 2009) (concluding that the district court did not abuse its discretion in denying the defendant discovery and an evidentiary hearing on his motion for new trial).  Discovery should not be allowed if it is a "mere fishing expedition based on the defendant's mere hopes of finding exculpatory evidence."  *Velarde*, 485 F.3d at 561.

Judge James A. Redden has applied this "no fishing" principle to reject a defense motion for discovery of prosecutorial work product, holding that defendants seeking to build a case for outrageous government conduct were not entitled to such materials absent "'clear evidence' rebutting the presumption that a prosecutor has not violated the Constitution."  *United States v. Ail,* 2007 WL 1229415, at *3 (D. Or. Apr. 24, 2007) (No. CR 05-325-RE).  "The presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the

contrary, courts presume that they have properly discharged their official duties." *Armstrong*, 517 U.S. 456, 464 (internal quotations and citation omitted).

The actions taken by the prosecutors in this case to correct discovery errors demonstrate that the Supreme Court's presumption about federal prosecutors was spot on. By making this post-trial disclosure, the government has fulfilled its obligation to the defense, the public and to this Court. After reviewing our response to the new trial motions, the government is confident that this Court will conclude that there is no clear evidence to rebut the presumption that the government has fulfilled its obligations and that any allegations of outrageous government conduct will fail, making further discovery unnecessary. The threshold for opening the door to the government's internal files has not been met because the relevant triggering event is not the government's failure to turn over every potential impeachment item relative to a government witness prior to trial, but instead the government's voluntary disclosure of this additional evidence. The government's late but voluntary disclosure does not merit a fishing expedition into our internal, deliberative process or work-product expressly protected under Rule 16.

Defendant uses several false or speculative assumptions to justify an extraordinarily broad set of discovery requests that reach far beyond the relevant question of whether any of the post-trial material would have altered the outcome of the trial. Because the defense has not yet filed a motion to dismiss, the government's response herein will focus upon the discovery requests that this Court must now decide. With the limited exceptions noted below, Seda's post-trial discovery demands should be denied, and the decision on an evidentiary hearing deferred until after this Court has reviewed the parties' written submissions on the new trial motion:

**Page 5 - Gov't's Resp to Def's Post-Trial Discovery Mot & Req for an Evidentiary Hearing**

1. "Provide a current copy of the Department of Justice Guidelines for use of informants and any that may have been in existence from 2004-2010."

**Answer**: The United States opposes this request as the information sought is not relevant to the pending motions. Whether FBI Agent Dave Carroll followed or violated DOJ policy regarding confidential human sources used in this case has no bearing upon the prosecution's disclosure obligations. Should the court have any question about the relevancy of such information, we will make it available to this Court for an *in camera* review. *See e.g., Ail*, 2007 WL 1229415 (refusing to turnover FBI Manual of Investigative Operations and Guidelines or internal reports of payments to informants following *in camera* review).

2. "Provide a current [copy] [sic] of any additional guidelines for use of informants and any that may have been in existence from 2004-2010.

**Answer:** same as above.

3. "Provide a current copy of any Internal Revenue Service Guidelines for use of informants and any that may have been in existence from 2004-2010."

**Answer:** The United States opposes this request because the documents sought are irrelevant. The IRS had no paid informants or sources who participated in this investigation.

4. "Provide any and all documentation supporting, justifying, authorizing, and recording and [sic] receipts for any and all payments made by the government to Richard and/or Barbara Cabral from any and all government agencies where such documentation may exist."

**Answer**: The United States has already provided the defense with payment information regarding Richard and Barbara Cabral. Richard Cabral received a total of $14,500 in U.S. currency from the FBI for information that he provided relevant to this *and other cases*. The FBI paid him $4,500 on July 30, 2004, $5,000 on March 21, 2005, and $5,000 on December 7, 2006. There were no other payments made to Richard Cabral in connection with this case. Richard

**Page 6 - Gov't's Resp to Def's Post-Trial Discovery Mot & Req for an Evidentiary Hearing**

Cabral died on March 27, 2008, and his source file was closed.  Barbara Cabral has never received any payments from the federal agencies involved in the investigation of this case, except for normal witness and trial transportation fees.  Disclosure of original FBI source files would reveal information about other investigations not related to this case and information about how the FBI conducts investigations.  As will be explained in some detail when the United States files its response to defendant's pending motions, all government witness files have been thoroughly reviewed for any material that might fall within the scope of Rule 16, the Jencks Act, *Brady/Giglio* and any such documents have been provided.  As such, no further review is necessary, but any additional review should be conducted by this Court *in camera*.

> 5. "Provide all documentation regarding the use of Richard and/or Barbara Cabral as informants, supervisory and legal reviews and approval, and communications between any FBI or IRS agents and any supervisory agents, and other employees of the Department of Justice and Internal Revenue Service regarding this matter."

**Answer:**  This request is overly broad and encompasses materials protected against disclosure by Fed. R. Crim. P. 16(a)(2).  All relevant documentation regarding the Cabrals case-related information and compensation have already been produced.  Because FBI source files contain materials regarding other investigations, any further review this Court deems necessary should be conducted *in camera*.

> 6. "Provide all documentation regarding the use of Richard and Barbara Cabral as informants, supervisory reviews and approval, and communications between any FBI or IRS agents or employees and any Assistant United States Attorney, United States Attorney or other Department of Justice employee."

**Answer:**  This request is overly broad and encompasses materials protected against disclosure by Fed. R. Crim. P. 16(a)(2).  Unlike Request #5, this request also seeks attorney work that is protected from disclosure under Fed. R. Crim. P. 16(a)(2).  *See also United States v.*

**Page 7 - Gov't's Resp to Def's Post-Trial Discovery Mot & Req for an Evidentiary Hearing**

*Fort*, 478 F.3d 1099 (9th Cir. 2007); and *United States v. Ail*, 2007 WL 1229415 (D. Or.) (Redden, J.) (holding that defense must meet a "clear evidence" threshold before the court will consider ordering discovery to support an outrageous government conduct claim). All relevant documentation regarding the Cabrals case-related information and compensation have already been produced.

    7.    "Provide all documentation within the United States Attorney's Office or the Department of Justice regarding the use of Richard and Barbara Cabral as informants, supervisory reviews and approval, and communications between any FBI or IRS agents and any Assistant United States Attorney, United States Attorney or other Department of Justice employee."

**Answer:** This request is overly broad and encompasses materials protected against disclosure by Fed. R. Crim. P. 16(a)(2). This request also seeks attorney work that is protected from disclosure under Fed. R. Crim. P. 16(a)(2).

    8.    "Provide all notes or memoranda from the files of Assistant United States Attorneys Christopher Cardani and Charles Gorder regarding their communications with FBI Agent David Carroll, IRS Agent Colleen Anderson and any other agents or employees of the FBI or IRS regarding the use of Richard or Barbara Cabral as a witness or informant and their communications with any other members of the United States Attorney's Office or Department of Justice on that subject."

**Answer:** This request is overly broad and encompasses materials protected against disclosure by Fed. R. Crim. P. 16(a)(2). This request also seeks attorney work that is protected from disclosure under Fed. R. Crim. P. 16(a)(2).

    9.    "Explain when, why, and how the decisions were made to treat Barbara and Richard Cabral as informants rather than as percipient witnesses and the decision to record their information in FBI Form 1023 rather than Form 302."

**Answer:** This is not a demand for discovery, but a civil-like interrogatory not authorized under Rule 16. This request should be denied because the government should not be required to

**Page 8 - Gov't's Resp to Def's Post-Trial Discovery Mot & Req for an Evidentiary Hearing**

produce evidence in response to a discovery request. *See United States v. Murphy,* 768 F.2d 1518, 1533 (7th Cir. 1985) (noting no requirement that government create Jencks materials); *United States v. Kahl,* 583 F.2d 1351, 1354 (5th Cir. 1978)(holding no error in failing to order production of documents that do no exist); *United States v. Cameron*, 672 F. Supp. 2d 133, 137 (D. Me. 2009) (refusing to compel responses to defense interrogatories). Moreover, this request is overly broad and encompasses materials protected against disclosure by Rule 16(a)(2).

    10.    "Provide any record of when the United States Attorney's Office advised the Court of this issue or information on that subject."

**Answer:** Although this request is also an interrogatory, as the defense is aware Assistant U.S. Attorney Cardani initially notified the Court of additional discovery related to Barbara Cabral by telephone – with Defendant's attorney on the line – on December 22, 2010. Thereafter, AUSA Zusman notified the Court of the post-trial disclosure, by letter, with a copy to Defendant's attorney, on January 6, 2011. To the government's knowledge, there are no other records as there have been no other communications with this Court on the subject of the Cabral post-trial discovery.

    11.    "Provide an explanation of when and how the United States Attorney's Office alleges the non-disclosed Cabral information came to its attention as indicated in the transmittal letter of January 6, 2011."

**Answer:** This is another civil-style interrogatory that should be denied because the government should not be required to create responsive discovery. *See Murphy,* 768 F.2d at 1533; *Kahl*, 583 F.2d at 1354; and *Cameron*, 672 F. Supp. 2d at 137. The government will file several sworn declarations with our response to the motion for new trial that will address this question in a proper format.

**Page 9 - Gov't's Resp to Def's Post-Trial Discovery Mot & Req for an Evidentiary Hearing**

12. "Provide documentation of any communication (telephone, email, in person or otherwise) between Barbara Cabral and the FBI, IRS, or the United States Attorney's Office about payment, money or any other type of remuneration since the trial began, and since the trial concluded."

**Answer:** The United States has already provided all documentation it has regarding payments (and the lack thereof) to Barbara Cabral. To the extent this request seeks internal communication between the attorneys and/or the case agents, that material is work product and protected against disclosure by Rule 16(a)(2).

13. "Provide all of Barbara Cabral's medical records regarding the 2010 medical incident referred to in FBI Agent Carroll's 302."

**Answer:** The government does not have these items in its possession. By its terms, Rule 16(a)(1)(E) requires only the production of documents and tangible things that are "within the government's possession, custody, or control." The Ninth Circuit has repeatedly held that the federal government is under no obligation to locate, obtain, and produce materials that are not within its possession, custody, or control. *See, e.g., Fort,* 472 F.3d 1106, 1118 (evidence only becomes discoverable under Rule 16(a)(1)(E) "when the state authorities place[] it in the hands of the federal authorities"); *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) ("The prosecution is under no obligation to turn over materials not under its control;' the federal government had no obligation to obtain and produce a witness' California Department of Corrections file, particularly where the defendant "has enough information to be able to ascertain the supposed *Brady* material on his own"); *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1375 (9th Cir. 1987) ("the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control"); *United States v. Gatto*, 763 F.2d 1040, 1049 (9th Cir. 1985) ("the triggering requirement under rule 16(a)(1)(C) is

**Page 10 - Gov't's Resp to Def's Post-Trial Discovery Mot & Req for an Evidentiary Hearing**

that the papers, documents, and tangible objects be in the actual possession, custody or control of the government. Here, they were not."). Moreover, such discovery would constitute an unwarranted invasion of Ms. Cabral's privacy.

14. "Provide Richard and Barbara Cabral's bank records, individually and collectively, from September 2003 through the present."

**Answer:** The government does not have these items in its possession, and thus, it cannot produce what it does not possess (see above). Moreover, such discovery would constitute an unwarranted invasion of Ms. Cabral's privacy and that of her current husband.

15. "Provide the tax returns for Richard and/or Barbara Cabral for the tax years of 2003-2010."

**Answer:** The government – i.e., the prosecution team – does not have these items in its possession, nor does it have any right of access to returns on file with the civil branch of the IRS. Like the prior two requests, this simply goes too far in seeking highly personal information from a witness who was not a party to this litigation.

16. "State whether the Cabral residence was searched in 2004, or at any other time. If so, provide any reports, warrants, returns, or any other information related to any and all such searches."

**Answer:** No search was ever conducted at a Cabral residence.

17. "Provide the original handwritten notes for defense inspection of all notes that have been provided to the defense in discovery."

**Answer:** The defense has already been provided with copies of all handwritten interview notes pursuant to this Court's order of July 1, 2009 (Docket #191), and the unredacted originals should not be made available because the redactions eliminated references to other investigations.

**Page 11 - Gov't's Resp to Def's Post-Trial Discovery Mot & Req for an Evidentiary Hearing**

18. "Provide the names of all agents, from any agency, who were present during any discussion or interview with Richard and/or Barbara Cabral at any time."

**Answer:** Dave Carroll, Shawna Carroll, Colleen Anderson, Miles Wiltrout, and Adam Marre.

19. "Provide any and all telephone and/or cell phone records of communications to and from Agents David and Shawna Carroll and/or Colleen Anderson and Barbara Cabral."

**Answer:** The government does not have such records.

20. "Provide any and all information about any other person the government paid in connection with any investigation into Al Haramain or Pirouz Sedaghaty, whether a witness or not."

**Answer:** The government has now provided complete information regarding payments to government witnesses. No factual or legal basis exists - either relevant to the pending motions, or to any issue now pending – for expanding disclosure to non-testifying sources. *See United States v. Inzunza*, 580 F.3d 894 (9th Cir. 2009) ("Inzunza cites no authority for his argument that evidence of negotiations with non-testifying co-defendants, without more, is exculpatory. *Brady* is simply not implicated"); *United States v. Hopkins*, 2008 WL 4453583 (E.D. Ca. Oct. 3, 2008) (No. CR S-05-0538 EJG GGH) ("The case illustrates the common sense perception that a witness' bias or reputation for prevarication, for example, is only important if the witness actually testifies.").

21. Defendant seeks "written confirmation" from the US Attorney for the District of Oregon, and the Heads of the Investigating Agencies involved in this case (the FBI and IRS), that they have "demanded" and "supervised" required searches for material potentially relevant to this case.

**Answer:** Defendant fails to cite, nor is the United States aware of any precedent for or legal basis for imposing such an extraordinary requirement. Details about how the government

**Page 12 - Gov't's Resp to Def's Post-Trial Discovery Mot & Req for an Evidentiary Hearing**

responded to the discovery of the payment information will be addressed in our response to defendant's new trial motion and in our declarations that will be submitted in support of that response. Defendant's alternative request – that this Court appoint a special master to review all of the government's documents and evidence regarding this case and compare it against the discovery provided to discern if there are any discrepancies – is unwarranted and unrealistic, and it would be significantly complicated by the classified information that is also part of this record. Moreover, such a painstaking review would take months (if not years) given the volume of material produced or made available in this case. There are 18 spreadsheets reflecting discovery produced in this case, including over 3,800 pages of materials, combined with multiple hard drives containing thousands of documents, video files, and 60,000 pages of bank records. Voluminous evidence seized pursuant to search warrants was also made available to the defense. This case simply involves too much material to make such a review realistic, and the late, but internally generated disclosure by the trial team does not justify such a drastic response.

Conclusion

Defendant's motion for discovery (#520) should be denied.

DATED this 27th day of January 2011.

                                          Respectfully submitted,
                                          DWIGHT C. HOLTON
                                          United States Attorney

                                          *s/ Kelly A. Zusman*
                                          KELLY A. ZUSMAN
                                          Assistant United States Attorney