UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PIROUZ SEDAGHATY,<br><br>Defendant. | CR No. 05-60008-HO<br><br>**DECLARATION OF UNITED STATES ATTORNEY DWIGHT C. HOLTON IN SUPPORT OF THE GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL** |

I, Dwight C. Holton, do declare as follows:

I am the United States Attorney for the District of Oregon and have held this position during all relevant time periods addressed in this declaration.

On or about December 9, 2010, I was contacted by Assistant United States Attorney Christopher Cardani or Charles Gorder about whether our office would approve payment for Barbara Cabral, an FBI Source who testified in the trial of Pirouz Sedaghaty. I recall that I asked one of them if Cabral had been told she would be paid prior to trial, and he said he did not believe that was the case. After considering the request, I ultimately decided that payment was not appropriate and within a few days, I communicated that to AUSA Cardani. I also spoke with AUSA Charles Gorder around this same time about the fact that Cabral's former husband had been paid by the FBI prior to his death in March of 2008. We discussed the need to find out more details about these payments to Richard Cabral. I asked whether the Richard Cabral payments had been disclosed and if not, whether this information should be disclosed.

On approximately December 21, 2010, I learned that AUSA Cardani and AUSA Charles Gorder were told that Agent Dave Carroll may have mentioned something about payment to Cabral prior to trial. AUSA Cardani promptly contacted me with this information and made clear their view that this information had to be disclosed to the

defense. I agreed, and asked that Agent Carroll document his contacts with Cabral in a 302 investigative report, and that he provide details about any and all payments made to Richard Cabral. I also decided that Barbara Cabral should be interviewed to ascertain her memory of any conversations with Agent Carroll, and directed that her interview should be conducted by an FBI agent and an IRS agent not connected with this case. I also assigned AUSA Kelly Zusman to supervise the interview of Barbara Cabral.

Upon first learning that Carroll had apparently mentioned the prospect of payment to Cabral, Cardani told me that he was concerned about promptly disclosing this information to the court and to the defense given that the court had motions and sentencing issues pending. We agreed that Cardani would promptly contact defense counsel and the court to apprize them of the payment issue surrounding Cabral, and to advise them that full disclosure would be forthcoming once we had had an opportunity to gather all pertinent information. I understand that Cardani notified the court and defense counsel about the Cabral payment information on December 22, 2010. I also spoke to Steve Wax and explained to him that we would take time to review all relevant material to ensure a complete disclosure.

Also on December 22, 2010, we discussed other steps necessary to fully ensure disclosure (in addition to obtaining a 302 reflecting the previously undisclosed conversation in which Agent Carroll apparently mentioned the prospect of payment to Barbara Cabral). As part of this, Gorder reviewed original FBI source files for both Richard and Barbara Cabral. During this review, Gorder discovered handwritten notes from the Barbara Cabral interviews that had not been previously disclosed in discovery, although the final written reports from these interviews had been provided. From Richard Cabral's source file, I understand that Gorder pulled and copied all reports that included references to the Seda case. Once we were satisfied that we had all of the pertinent discovery, it was produced. The documents were copied and reviewed by AUSA Zusman who then turned over additional discovery materials to defense counsel on January 6, 2011.

Throughout this process, it was clear to me that AUSA Cardani and AUSA Gorder were surprised to learn that Agent Carroll had made any remark to Barbara Cabral suggesting the prospect of payment prior to trial. Further, once they learned that this had happened, they acted promptly to investigate and produce the information to defense counsel. They undertook investigation and disclosure because they knew it was appropriate, not at my prompting – although of course they acted toward disclosure with my full support.

After we provided defense counsel with the information regarding the Cabrals, I agreed to meet with defendant's trial counsel to discuss concerns that they had about the disclosure and motions that they intended to file. During this meeting, I told defense counsel that I would take no position on a motion for immediate release. I explained that it was my view that because we had mistakenly failed to turn over material regarding the Cabrals, and because I anticipated that this material would prompt a challenge from the defense, the delay occasioned by our late disclosure should not prejudice the defendant. I did not, however, say or imply that I had any view on the merits of any future motion for new trial or dismissal. To the contrary, I said very explicitly to defense counsel that I did not have enough information at that time to make such an assessment. Nothing about the position I took on release should be construed as a position on the merits of the defense motions for new trial or dismissal.

I declare the foregoing to be correct under penalty of perjury.

Dated this 15th day of February, 2011.

*[signature]*
Dwight C. Holton
U.S. Attorney
District of Oregon