FILED'11 MAR 03 15:54 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Cr. No. 05-60008-HO |
| Plaintiff, | ) ) | ORDER |
| v. | ) ) | |
| PIROUZ SEDAGHATY, et al., | ) ) | |
| Defendants. | ) ) | |

Defendant has filed numerous post-trial motions, and recently the government notified defendant of a failure to provide certain discovery materials. As result, defendant filed several more motions including a motion for discovery, a supplemental motion for a new trial, as well as another motion to dismiss which will be based on a memo to be submitted pending further discovery.

Barbara Cabral testified at the trial that while waiting in the Jeddah airport to return from the Hajj, defendant encouraged

her and fellow travelers to donate a portion of their refunded expenses to the Chechan mujahideen.

Prior to trial, the government disclosed notes and reports for eight interviews of Mr. and Mrs. Cabral.[1] However, the government apparently conducted 20 such interviews through IRS agent Colleen Anderson and FBI agent David Carroll. On January 6, 2011, the government, asserting inadvertence, disclosed the reports for the other 12 interviews as well as information about David Carroll's alleged personal friendship with Barbara Cabral.

The recently disclosed information provided defendant, for the first time, with what appears to be impeaching information related to $14,500 in payments to Mr. Cabrals over a three year period and an intended request by agent Carroll to seek an additional $7,500 for Barbara Cabral after testifying at trial. Additionally, Barbara Cabral, apparently had a close enough relationship with David Carroll to invite him to her wedding.

Defendant contends that the government's recent disclosures cast doubt on all discovery matters in this case and asserts that even the recent materials appear to be materially altered.[2] Thus, defendant seeks "inquiry into involvement in, the reasons for, and

---

[1] Mr. Cabral died prior to the trial and Mrs. Cabral has since remarried.

[2] For instance, defendant contends recently provided 302 reports have been altered when compared to the same reports provided pre trial.

extent of the non-disclosures and alterations." Defendant believes such inquiry is necessary to flesh out the motion to dismiss.

An indictment can be dismissed under two theories: (1) on the ground of outrageous government conduct if the conduct amounts to a due process violation; or (2) if the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers. United States v. Barrera-Moreno, 951 F.2d 1089, 1091 (9th Cir. 1991). Under the first theory, the government's conduct must be so grossly shocking and so outrageous as to violate the universal sense of justice. United States v. Ramirez, 710 F.2d 535, 539 (9th Cir. 1983). The Government's involvement must be malum in se or amount to the engineering and direction of the criminal enterprise from start to finish. United States v Citro, 842 F.2d 1149, 1153 (9th Cir. 1988).

A district court may exercise its supervisory power "to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct." United States v. Simpson, 927 F.2d 1088, 1090 (9th Cir. 1991). However, because "[d]ismissing an indictment with prejudice encroaches on the prosecutor's charging authority," this sanction may be permitted only "in cases of flagrant prosecutorial misconduct." Id. at 1091.

Page 3

Defendant contends that broad inquiry into the failure to disclose the payment including whether government agents adhered to regulations concerning payment as well as the U.S. Attorney's involvement in the payment (or "cover-up" of the payment) is necessary.

In short, defendant alleges the government blocked critical exculpatory evidence from coming to light and thus, wants cart blanche access to government records, manuals, etc.

Specifically, defendant seeks:

With respect to the Cabrals, Mr. Sedaghaty moves that the government be ordered to:

> 1. Provide a current copy of the Department of Justice Guidelines for use of informants and any that may have been in existence from 2004-2010.
>
> 2. Provide a current of any additional FBI guidelines for use of informants and any that may have been in existence from 2004-2010.
>
> 3. Provide a current copy of any Internal Revenue Service Guidelines for use of informants and any that may have been in existence from 2004-2010.
>
> 4. Provide any and all documentation supporting, justifying, authorizing, and recording and all receipts for any and all payments made by the government to Richard and/or Barbara Cabral from any and all government agencies where such documentation may exist.
>
> 5. Provide all documentation regarding the use of Richard and/or Barbara Cabral as informants, supervisory and legal reviews and approval, and communications between any FBI or IRS agents and any supervisory agents, and

other employees of the Department of Justice and Internal Revenue Service regarding this matter.

6. Provide all documentation regarding the use of Richard and Barbara Cabral as informants, supervisory reviews and approval, and communications between any FBI or IRS agents or employees and any Assistant United States Attorney, United States Attorney or other Department of Justice Employee.

7. Provide all documentation within the United States Attorney's Office or the Department of Justice regarding the use of Richard and Barbara Cabral as informants, supervisory reviews and approval, and communications between any FBI or IRS agents and any Assistant United States Attorney, United States Attorney or other Department of Justice Employee.

8. Provide all notes or memoranda from the files of Assistant United States Attorneys Christopher Cardani and Charles Gorder regarding their communications with FBI Agent David Carroll, IRS Agent Colleen Anderson and any other agents or employees of the FBI or IRS regarding the use of Richard or Barbara Cabral as a witness or informant and their communications with any other members of the United States Attorney's Office or Department of Justice on that subject.

9. Explain when, why, and how the decisions were made to treat Barbara and Richard Cabral as informants rather than as percipient witnesses and the decision to record their information in FBI Form 1023 rather than Form 302.

10. Provide any record of when the United States Attorney's Office advised the Court of this issue or information on that subject.

11. Provide an explanation of when and how the United States Attorney's Office alleges the non-disclosed Cabral information came to its

attention as indicated in the transmittal letter of January 6, 2011.

12. Provide documentation of any communication (telephone, e-mail, in person, or otherwise) between Barbara Cabral and the FBI, IRS, or the United States Attorney's Office about payment, money or any other type of remuneration since the trial began, and since the trial concluded.

13. Provide all of Barbara Cabral's medical records regarding the 2010 medical incident referred to in FBI Agent Carroll's 302.

14. Provide Richard and Barbara Cabral's bank records, individually and collectively, from September 2003 through the present.

15. Provide the tax returns for Richard and/or Barbara Cabral for the tax years of 2003-2010.

16. State whether the Cabral residence was searched in 2004, or at any other time. If so, provide any reports, warrants, returns, or any other information related to any and all such searches.

17. Provide the original handwritten notes for defense inspection of all notes that have been provided to the defense in discovery.

18. Provide the names of all agents, from any agency, who were present during any discussion or interview with Richard and/or Barbara Cabral at any time.

19. Provide any and all telephone and/or cell phone records of communications to and from Agents David and Shawna Carroll and/or Colleen Anderson and Barbara Cabral.

20. Provide any and all information about any other person the government paid in connection with any investigation into Al Haramain or Pirouz Sedaghaty, whether a witness or not.

      21. Provide the Court and defense:[3]

          a. written confirmation that the United States Attorney for the District of Oregon, and/or the Attorney General has demanded that all government agencies review their files for any other information related to Mr. Sedaghaty and material potentially relevant to this case;

          b. written certification from the heads of all government agencies with any involvement in the investigation or prosecution of Mr. Sedaghaty (including the United States Attorney's Office) that they have required and supervised the required searches, and;

          c. all material that is potentially relevant to this case.

The government contends that the failure to disclose the payment information was inadvertent and ultimately provided after the error was discovered by the very individuals defendant claims engaged in flagrant misconduct. The government also asserts that any inconsistencies merely reflect different stages of report drafting.

---

[3] As an alternative to 21, defendant asks the court to order the United States Attorney, Federal Bureau of Investigation, Internal Revenue Service, and Department of Justice to turn over to the court all copies of all material related to Mr. Sedaghaty that resides in their files and certify that such disclosures have been made. The Court should then appoint an independent special master to review the material to determine if material exists that must be disclosed to the defense and whether any other alterations in reports exists.

In general, Fed. R. Crim. P. 16 governs discovery of material documents and objects "within the government's possession, custody, or control" and "material to the preparation of the defendant's defense." Fed. R. Crim. P. 16(a)(1)(E)(I). In addition, <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), requires government disclosure of exculpatory and impeachment evidence (of a significant witness whose testimony may be determinative of defendant's guilt) in the possession of the government. Rule 16 does not permit discovery of "reports, memoranda or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2).

The government contends that the "possible" <u>Brady</u> violation here should not open the door to broad-ranging discovery. Discovery is generally not available at this stage where defendant seeks a new trial or even dismissal. See <u>Wade v. United States</u>, 504 U.S. 181, 186 (1992) (generalized allegations of improper conduct on the part of the prosecutor with respect to sentencing does not entitle a defendant to an evidentiary hearing). However,

> In limited circumstances ... a defendant who is unable to submit evidence to the court sufficient to warrant an evidentiary hearing, is able to make a showing that further investigation under the court's subpoena power very likely would lead to the discovery of such evidence. In that rare case, what should the defendant do?
>
> The answer, we think, is to request leave to conduct discovery. Discovery is authorized in habeas corpus cases, an analogous post-conviction proceeding. <u>See</u>

>Blackledge, 431 U.S. at 81-82, 97 S.Ct. 1621, citing Rule 6 of the Rules Governing Habeas Corpus. Courts have authority to allow discovery based on the All Writs Act, 28 U.S.C. § 1651, a "legislatively approved source of procedural instruments designed to achieve the rational ends of the law" that "courts may rely upon ... in issuing orders appropriate to assist them in conducting factual inquiries." Harris v. Nelson, 394 U.S. 286, 299, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969) (internal quotation marks and citations omitted). According to the Supreme Court, "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is" entitled to a new trial, "it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." Id.... In fulfilling this duty, a district court has broad discretion to fashion discovery mechanisms suitable to the case before it.

United States v. Wade, 485 F.3d 553, 560 (10th Cir. 2007).

The government argues that this is not such a "rare case" and that defendant is merely on a fishing expedition. To obtain discovery in support of a prosecutorial misconduct claim, a defendant must present "clear evidence" rebutting the presumption that a prosecutor has not violated the Constitution. United States v. Siriprechapong, 181 F.R.D. 416, 465 (N.D.Cal. 1998).

Here, the government's actions to correct the discovery errors buttress the presumption. Moreover, the court has reviewed, in camera, materials supplied by the government that members of the prosecution team and agents relied upon to draft declarations responsive to the motion to dismiss. The government additionally provided FBI confidential source guidelines to the court.[4]

---

[4] Further, AUSA Chris Cardani provided a sealed letter to the court regarding another discovery misstep, detected through review

Page 9

After a thorough review of the pleadings and in camera materials, the court is convinced that the government overlooked providing the materials related to the Cabrals through inadvertence and did not intentionally withhold such documents. While the court must enforce the requirements to provide potentially impeaching information, here it is inconsequential to the request for very broad discovery sought that, in effect, amounts to a fishing expedition. The court is convinced the government has scoured the files in its possession for exculpatory and impeaching material and has fully complied with its duties in this regard.

Defendant also contends the government has waived any claim of privilege under Rule 16(a)(2). Defendant relies on United States v. Nobles, 422, U.S. 225 (1975), and United States v. Fort, 472 F.3d 1106 (9th Cir. 2007) to apply the general principles of waiver to Rule 16(a)(2). However, in this case, the government necessarily reviewed privileged materials to respond to the allegations of outrageous conduct. The fact that government actors refreshed their recollections by reviewing their own notes, etc.,

---

of deleted e-mails, with regard to a court order to provide notes used to draft investigative reports. The court attaches the letter and internal document to this order. The letter helps demonstrate the lengths the government has gone to correct what the court finds are inadvertent errors. This is highlighted by the fact that the government has provided tens of thousands of pages of documents, including many not ordinarily discoverable, culled from many a varied source. Such a task, made all the more difficult due to the confidential nature of this case, could be expected to produce inadvertent minor errors.

to respond to the assertions of outrageous and unconstitutional conduct, does not equate to waiver. This is more akin to use of work-product materials to present a case, as opposed to testimonial use of such materials. Thus, work-product principles do not demonstrate waiver. See Nobles, 422 U.S. at 241. Moreover, the government expressly stated its intention to preserve confidentiality in responding to the post-trial motions and, therefore, a finding of waiver is inappropriate. See Fort, 472 F.3d at 1121 (government's systematic retention of control over confidential information demonstrates that it did not intentionally or voluntarily relinquish its rights under Rule 16(a)(2)). Accordingly, the motion for discovery is denied.

## CONCLUSION

For the reasons stated above, defendant's post-trial motion for discovery (#520) is denied.

DATED this 3rd day of March, 2011.

*Michael E. Hogan*
United States District





**U.S. Department of Justice**

Dwight C. Holton
United States Attorney
District of Oregon
405 E. 8th Ave.
Eugene, OR 97401

March 1, 2011

The Honorable Michael R. Hogan
U.S. Courthouse
405 E. Eighth Ave.
Eugene, OR 97401

    Re: <u>United States v. Sedaghaty</u>, CR 05-60008-HO

Dear Judge Hogan:

    Last night I recovered a deleted email dated April 14, 2010 (attached), in which Special Agent Colleen Anderson asked me if, after adding Barbara Cabral to our witness list, she should produce the investigative reports and notes used to draft those reports. In my email response, I told her yes to the reports and no to the notes. As has been discussed more fully in our response to the new trial motion, the agents' handwritten notes should have been provided to the defense pre-trial pursuant to your July 2009 Order addressing numerous discovery matters. We have told you in other declarations filed by Charles Gorder and Colleen Anderson that our failure to produce the notes was inadvertent. My email was also a mistake. I have searched my deleted emails for any other related emails and have found none.

    I want to assure you that it was never my intent to fail to comply with your July 2009 order, and I regret my error. Our failure to disclose the notes was a mistake, but you should know that the mistake was at least partially attributable to my quick, and not well-thought out email response, and the fact that discovering agent interview notes is not something we are ordinarily required to do. The email was not something I relied upon to prepare my declaration, but it does relate to the defense's complaint that we deliberately evaded our discovery obligations. For the reasons stated in our response to the motion for discovery and our new trial response regarding the materiality of these notes, we do not believe that this internal document needs to be disclosed. If you have any questions, I stand ready to respond.

                                                 Sincerely,

                                                 DWIGHT C. HOLTON
                                                 United States Attorney

                                                 Christopher L. Cardani
                                                 Assistant U.S. Attorney

| From: | Cardani, Chris (USAOR) <CCardani@usa.doj.gov> | Date: | 04/14/2010 17:18:14 |
|---|---|---|---|
| To: | Colleen.Anderson@ci.irs.gov <Colleen.Anderson@ci.irs.gov> | Cc: | |
| Folder: | | | |
| Subject: | Re: interviews | | |
| Attachments: | | | |

🖨 Print the page

Yes on reports. No on notes.

**From:** Anderson Colleen C <Colleen.Anderson@ci.irs.gov>
**To:** Cardani, Chris (USAOR); Carroll, David A. (FBI)
**Sent:** Wed Apr 14 16:54:18 2010
**Subject:** interviews

Dave,

I need all of Barbara Cabrals interviews & we may need the notes also.

Chris, since Barbara is listed as a case in chief witness, do you want me to add all of her interviews to the next batch of discovery? Do I have to include notes with the discovery?

S/A Colleen Anderson
Seattle Field Office
Medford, OR  POD
office 541-282-1341
cell 541-210-1279