Lawrence Matasar, OSB #74209
621 S.W. Morrison Street, Suite 1025
Portland, OR 97205
Telephone: (503) 222-9830
Fax: (503) 274-8575
Email: larry@pdxlaw.com

Steven T. Wax, OSB #85012
Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Email: steve_wax@fd.org
          Attorneys for Pirouz Sedaghaty

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | Case No. CR 05-60008-HO |
| Plaintiff, | ) | |
| | ) | SUPPLEMENTAL |
| vs. | ) | DECLARATION OF |
| | ) | JAMES J. WEDICK |
| **PIROUZ SEDAGHATY** | ) | |
| Defendant. | ) | |

I, James J. Wedick do declare as follows:

1.   I was employed with the FBI from 1969 until 2004.

2.   I have previously submitted a declaration to this court on March 1, 2011 (540). I hereby make this declaration as a supplement to my March 1 declaration, and that declaration is

PAGE 1 – SUPPLEMENTAL DECLARATION OF JAMES J. WEDICK

herein incorporated by reference.

3. As noted in my previous declaration, part of my former duties with the FBI included supervisory duties reviewing requests for payments to confidential informants and cooperating witnesses.

4. Since making my declaration of March 1, I have reviewed a partial transcript of proceedings in this court, dated March 1, 2010; specifically page 16 which contain remarks by assistant United States Attorney Kelly Zusman about my qualifications and existing Department of Justice guidelines concerning the use of confidential informants and cooperating witnesses. I have also reviewed this court's ruling contained in the Order dated March 3, 2011 (543).

5. Moreover, in addition to the FBI guidance documents referred to in my initial declaration, I have also reviewed, and am familiar with, two documents issued by the Department of Justice concerning the use of confidential informants. Those documents are: The Attorney General's Guidelines Regarding the Use of Confidential Informants dated May, 30, 2002, and the Attorney General's Guidelines Regarding Use of FBI Confidential Human Sources, signed December 13, 2006.

6. The guidelines for the FBI concerning Confidential Human Sources signed 12/13/2006 became effective for the FBI in June, 2007, 180 days after the Attorney General signed them. Prior to that, the guidelines in effect were the Attorney General's Guidelines Regarding The Use of Confidential Informants, dated May, 30, 2002.

7. I have read the portion of the transcript of the hearing on March 1 2010, wherein assistant United States attorney's Zusman stated the following:

PAGE 2 – SUPPLEMENTAL DECLARATION OF JAMES J. WEDICK

```
 4    Now, one final point, they have raised a claim
 5    in their reply brief that Agent Carroll violated FBI
 6    policy in making the payments to Richard Cabral. We
 7    think that's irrelevant, but even if it was, they
 8    submitted to you just a couple of hours ago this
 9    declaration of James Wedick, a former FBI agent. He
10    retired in April of 2004. Now, that was just about the
11    time that the policy that was in place when Agent
12    Carroll first made the payment in July of 2004 came into
13    effect. So agent -- former Agent Wedick wasn't around
14    when the policy was in place that applied to Agent
15    Carroll's actions.
16    If this court has any questions or any concerns
17    at all about what that policy was, because Agent Wedick
18    does not address it, I have it for you here in court,
19    and I can make it available to you in camera. I will
20    tell you I have reviewed it, and nothing in the policy
21    that applied to Agent Carroll was violated. I will also
22    tell you it is sensitive, it is not public material.
```

8. AUSA Zusman implied that after I retired, policy about handling informants and cooperating witnesses was changed. However, as noted above, the Attorney General Guidelines Regarding the Use of FBI Confidential Human Sources did not become effective until June, 2007.

9. Prior to 2006, the AG Guidelines in effect were dated 5/30/2002 which called for the AUSA to be consulted when making payments to CIs and CWs. Accordingly, as noted under Section III captioned "Responsibilities Regarding Registered Confidential Informants," subsection B titled, "MONETARY PAYMENTS," sub-headed section 8 marked, "Coordination with Prosecution," the 2002 guidelines state:

> "In situations where a FPO [Federal Prosecuting Official] Attorney is either participating in the conduct of an investigation by a JLEA [Department of Justice Law Enforcement Agency] that is utilizing a CI in connection with a prosecution, the JLEA shall coordinate with the attorney assigned to the matter, in advance wherever possible, the payment of monies to the CI pursuant to the paragraphs (III)(B)(3)-(5) above."

PAGE 3 – SUPPLEMENTAL DECLARATION OF JAMES J. WEDICK

10. All payments made by Special Agent Carroll to Richard Cabral occurred under the Attorney General Guidelines dated 5/30/2002, noting that they were made on 7/30/2004 totaling $4500, 3/21/2005 totaling $5000, and 12/6/2006 totaling $5000.

11. The corresponding rewording of the Attorney Generals Guidelines in 2006 are found under Section IV captioned "Responsibilities Regarding Confidential Human Sources, subsection C titled, "MONETARY PAYMENTS," sub-headed section 6 marked, "Coordination with Prosecution," stating:

> "If an FPO [Federal Prosecuting Official] Attorney is participating in the conduct of an investigation or prosecution that is utilizing an FBI Confidential Human Source who is expected to testify, the FBI shall coordinate with the FPO attorney, in advance if practicable, any payment of monies to the Confidential Human Source pursuant to Paragraph IV [C][3] above. If payment is to be made for services and if the FPO attorney objects to the payment, no payment will be made until the dispute has been resolved in accordance with Section I E above."

12. As noted in the FBI guidance documents referred to in my previous declaration, FBI special agents seeking authority to make a payment to a Confidential Informant [CI] or Cooperating Witness [CW] needed to specify in the request whether the AUSA "concurred" with payment. While the FBI manual does not state that failure to get AUSA's concurrence conclusively disallowed the requested payment, without exception in my experience no individual payment would issue if the AUSA did not concur. If an AUSA did not concur with making any payment the FBI Supervisor or Special Agent-in-Charge would not approve it.

13. Under the 2002-2006 Attorney General Guidelines, during that period FBI agents needed to get an AUSA's concurrence concerning making payments. Without an AUSA's concurrence, no FBI supervisor could approve a payment request. Without exception, in my

PAGE 4 – SUPPLEMENTAL DECLARATION OF JAMES J. WEDICK

experience if an AUSA did not concur in a payment, then neither the FBI Supervisor nor the SAC would authorize or approve the payment.

14. Accordingly, regarding the Richard Cabral payments made in 2004, 2005, and 2006, only several possibilities exist: 1) The Assistant United States Attorneys prosecuting Mr. Sedaghaty were aware of the specific three payments through the separate requests over three years; 2) The FBI agents misrepresented the AUSA's concurrence in their requests to their own supervisors; 3) The Assistant United States Attorneys prosecuting Mr. Sedaghaty were aware of the payments at the time and do not remember; or 4) A separate official in the office of the United States Attorney for the District of Oregon separately approved each of the three payments, and that person has not been identified by the government or their declarants.

15. Which of the above possibilities in fact took place will be reflected in the FBI source file for Richard Cabral, and the accompanying payment request and disbursement records contained in that file.

I declare that the above statement, consisting of this and four [4] other pages, is true and correct under the laws of the United States.

Dated March 11, 2011

*[signature]*
JAMES J. WEDICK

PAGE 5 – SUPPLEMENTAL DECLARATION OF JAMES J. WEDICK