**Steven T. Wax, OSB No. 85012**
**Federal Public Defender**
**101 SW Main Street, Suite 1700**
**Portland, OR  97204**
**Tel: (503) 326-2123**
**Fax: (503) 326-5524**
**Email: steve_wax@fd.org**

**Lawrence Matasar, OSB No. 74209**
**621 SW Morrison Street, Suite #1025**
**Portland, OR 97205**
**Tel: (503) 222-9830**
**Email: larry@pdxlaw.com**

**Attorneys for Defendant**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 05-60008** |
| **Plaintiff,** | |
| **v.** | **RESPONSE TO COURT ORDER REGARDING WITNESSES THE DEFENSE SEEKS TO CALL AT AN EVIDENTIARY HEARING ON THE MOTION TO DISMISS** |
| **PIROUZ SEDAGHATY,** | |
| **Defendant.** | |

Defendant, Pirouz Sedaghaty, by and through his attorneys, Lawrence

Matasar and Federal Public Defender Steven T. Wax, hereby responds to the

Court's order of March 18, 2011, for a statement of the witnesses he seeks to

call and information he would seek to elicit at a hearing on his Motion To

Dismiss Indictment.  Mr. Sedaghaty seeks to call the following as witnesses:

    1.    AUSA Chris Cardani;

    2.    AUSA Charles Gorder;

    3.    FBI Special Agent David Carroll; and

    4.    IRS-CI Special Agent Colleen Anderson.

The primary purpose of calling these witnesses is to question them about

the facts contained in their declarations filed on February 18, 2011 (CR 536-2

through CR 536-7) and the factual matters addressed in Mr. Sedaghaty's

Motion for New Trial and Motion to Dismiss, so the Court can make factual

findings concerning the issues raised in Mr. Sedaghaty's post-trial motions.  As

has been repeatedly stated, the power of cross-examination is the greatest test

for the discovery of truth.  *See, e.g., Johnston v. Jones*, 66 U.S. 209, 212 (1861).

As Mr. Sedaghaty has previously outlined in his pleadings, the declarations

submitted by the government are materially inconsistent.  At a hearing, he will

seek to test the witnesses' recollections and determine where among those

inconsistencies the truth lies.  At a hearing, Mr. Sedaghaty will seek to further

establish the knowledge, intent, recklessness, and willful blindness of the

prosecution team.

    In the declarations, the government addressed the following matters:

relationship between the government and the Cabrals, the details of the

payments to the Cabrals, knowledge of the payments to the Cabrals, knowledge of the Court's discovery order and the discovery law, interactions among the trial team about discovery or reports and notes, the nature of the notes and logs each member of the trial team kept, and the details of the post-trial communications between Agent Carroll and Barbara Cabral and among the trial team and their supervisors about the payment, offer of payment, and discovery issue.

Mr. Sedaghaty seeks to cross-examine the witnesses about those matters.

**AUSA Chris Cardani:** The defense will seek to establish: (1) he approved the payments to the Cabrals; (2) he knew about the payments to the Cabrals; (3) after clarifying the discovery order of the Court as to production of witness notes, he made an intentional decision to not provide the defense notes of the interviews with Barbara Cabral; (4) he, along with AUSA Charles Gorder, requested that Barbara Cabral be paid $7,500 after trial; and (5) why it was the preference of the AUSA that Barbara Cabral not be paid until after sentencing or if possible after the exhaustion of all appeals.

**AUSA Charles Gorder:** The defense will seek to establish: (1) where he found the 302 of the 8/17/07 interview of Richard and Barbara Cabral that was produced on January 6, 2011; (2) what form the previously mentioned 302 was in; (3) whether he knew or should have known that Carroll offered payment to Barbara Cabral to be paid after the trial; (4) he knew of the payments to the Cabrals prior to trial and that he did not believe that the fact of those payments needed to be disclosed to the defense before trial; (5) why did he not believe the fact of the payments to Richard and Barbara Cabral should be disclosed to the defense pre-trial; (6) that he, along with AUSA Cardani requested, that Barbara Cabral be paid after trial in the amount of

$7,500.00; (7) when Richard Cabral's cooperation was discussed in January/March of 2009, why the decision was made to not provide that information to the defense; (8) why he cautioned Agent Carroll to not pay Barbara Cabral until after the trial was concluded; and (9) why he wanted Agent Carroll to determine Cabral's medical expenses.

**FBI Special Agent David Carroll:** The defense will seek to establish: (1) what documentation he made when he made the payments to Richard Cabral; (2) that there are receipts of the payments and, if so, where the receipts are kept; (3) who had access to the receipts; (4) were the Cabrals advised of their tax obligations when the payments were made; (5) was this advice provided at the time that Barbara Cabral was present for the payment; (6) how he is aware that he did not save the alleged "final" version of the 8/17/07 302 of the interview of Richard and Barbara Cabral; (7) whether he sought an AUSA's approval for the payment of Richard and Barbara Cabral before trial; (8) if he sought approval, what AUSA provided that approval; (9) whether there are other reports and/or notes of any other communications between the FBI and Richard and/or Barbara Cabral that have not yet been provided to the defense, exculpatory or not; (10) what kind of communication he had with AUSA Cardani and/or Gorder regarding the payments to Richard and Barbara Cabral; (11) what kind of communication he had with AUSA Cardani and/or Gorder regarding the potential payment to Barbara Cabral after trial; (12) if he did not tell AUSA Gorder that he had already communicated the potential payment to Barbara Cabral before trial, the reasons he did not; (13) why Barbara and/or Richard Cabral were at times treated as informants versus fact witnesses; (14) what information about the payments to Richard and Barbara Cabral exists in the source file; (15) what telephone logs he keeps; (16) what DOJ or FBI guidelines he relied on in asserting that he complied with applicable DOJ or FBI guidelines regarding payment of witnesses; and (17) whether he responded to Agent Anderson's email of April 14, 2010, and if so, what he said.

**IRS-CI Special Agent Colleen Anderson:** The defense will seek to establish: (1) why she asked AUSA Cardani whether she should include the notes of the Barbara Cabral interviews in her e-mail of April 10, 2010; (2) whether she questioned whether the fact of the

payments to Richard and Barbara Cabral ought to be provided to the defense in discovery; (3) what information about the payments to Richard and Barbara Cabral exist in the source file; and (4) what response, if any, Agent Carroll made to her email of April 14, 2010.

Respectfully submitted on March 21, 2011.


/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender


/s/ Lawrence W. Matasar
Lawrence W. Matasar