DWIGHT C. HOLTON, OSB #09054
United States Attorney
District of Oregon
CHRISTOPHER L. CARDANI
Assistant United States Attorney
405 East Eighth Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771
chris.cardani@usdoj.gov
CHARLES F. GORDER, JR., OSB# 912874
KELLY A. ZUSMAN, OSB #891843
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1000
charles.gorder@usdoj.gov
kelly.zusman@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CR 05-60008-HO |
| v. | DECLARATION OF FBI SPECIAL AGENT MICHAEL SWEENEY |
| PIROUZ SEDAGHATY, et al., | |
| Defendants. | |

Pursuant to 28 U.S.C. § 1746, Michael Sweeney hereby declares that:

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) assigned to Portland, Oregon. I have been a Special Agent since September, 13, 1987. After serving first in Jackson, Mississippi, from 1987-1991, and subsequently in the San Francisco Division from

1991-2005, I was assigned to the Portland Field Office, in July 2005. During my nearly 24 year career I have worked on all manner of FBI Investigative Programs either as a Field Agent, Legal Advisor, or Supervisory Special Agent, with nearly all investigative assignments involving the continuous use and operation of Confidential Human Sources (CHS) as governed by FBI policy and all relevant Department of Justice Attorney General Guidelines. I have also previously served in the capacities of Principal Legal Advisor, SWAT Operator, Field Supervisor, Media Coordinator, and as an Acting Legal Attaché while temporarily stationed abroad. My duties as an FBI Supervisor in the San Francisco Division covered a wide variety of assignments from 1997 to 2005, including three separate criminal squads within the Drug, Violent Crimes/Gangs, and Organized Crime Programs. I also served intermittently as an Acting Supervisor from 2005-2007 on both the White Collar Crime, and Field Intelligence Programs, shortly after my reassignment to Portland in July, 2005. All of my Supervisory roles have heavily relied on the use and operation of human sources, and have necessarily required that I conduct regular reviews of confidential source files for compliance with all CHS policies, rules and procedures, and specifically including those pertaining to CHS payments. I have been assigned as FBI Portland's Confidential Human Source Coordinator (CHSC) since February 2008. My full-time duties as CHSC include, among other things, providing appropriate training to Special Agents, Supervisors, and Executive Management, on a regular basis, as well as monitoring both agents and managers for compliance with all applicable rules and regulations pertaining to the use and operation of Confidential Human Sources.

Page 2 - DECLARATION OF FBI SPECIAL AGENT MICHAEL SWEENEY

2.	I have been asked to prepare a Declaration regarding the statements contained in two affidavits of former-Special Agent James J. Wedick filed in the case of *United States v. Sedaghaty*.

3.	I have reviewed the CHS file in issue for Richard Cabral, as well as applicable FBI/DOJ policy, including the relevant Attorney General Guidelines and internal FBI policies and memoranda.

4.	My review of this CHS file indicates it was first "opened and assigned" to Special Agent (SA) Shawna M. Carroll on the basis of her written request, and upon Assistant United States Attorney (AUSA) Chris Cardani's verbal concurrence given on November 3, 2003. The file was subsequently re-assigned to SA David A. Carroll on March 16, 2006.

5.	The file reveals that SA Shawna Carroll submitted an original "confirmatory AUSA letter" addressed to the United States Attorney, District of Oregon, to the Attention: AUSA Chris Cardani, on November 4, 2003. The stated purpose of the letter was "to confirm information furnished to and contact with AUSA Chris Cardani, [by SA Carroll] on November 3, 2003". This letter was approved and signed by Supervisory Special Agent Joseph J. Conli on behalf of Special Agent in Charge Robert J. Jordan. A copy was submitted to the U.S. Attorney, Portland, and also to the appropriate investigative files, including the Sedaghaty file.

6.	Consistent with applicable FBI/DOJ policy at the time, this confirmatory letter cited AUSA Cardani's concurrence regarding each of several standard operational considerations pertaining to Confidential Human Sources. These included operation of the particular individual, contemplated coverage (including the Sedaghaty investigation) and the fact that Mr. Cabral was

Page 3 - DECLARATION OF FBI SPECIAL AGENT MICHAEL SWEENEY

not expected to engage in consensual monitoring of conversations or participate in any unlawful activity, and thus such concurrence was not being requested at the time.

7. This letter did, however, also specifically confirm AUSA Cardani's verbal concurrence, granted the previous day, with regard to SA Shawna Caroll's request to make anticipated, but unspecified FBI payments to Mr. Cabral "for expenses and/or services *during the course of* the above investigation." The letter also states that AUSA Cardani "foresees *no problem* with the FBI making payments to captioned individual for expenses and/or services *during the investigation*." [*Emphasis added*.]

8. Nothing in the letter suggests that AUSA Cardani had requested, expected, or otherwise insisted upon additional concurrence for any specific contemplated payments during the course of the Sedaghaty investigation.

9. Paragraph 5 of Mr. Wedick's original declaration states, incorrectly, that FBI policy requires the prosecutor to render a separate, particularized opinion for payments made "in routine situations", and "on each occasion". Mr. Wedick repeats this inaccuracy in paragraph 7, stating that payments "can only be made…on a case by case basis" and "not based on a single, broad authorization" by an AUSA. Likewise, paragraph 9 of the same declaration also incorrectly states that FBI policy required SA Carroll to speak with AUSA Cardani "in every instance where he sought to make a payment to Cabral" and mistakenly concludes "each conversation was required to be confirmed in writing, to include amounts of compensation and facts discussed."

10. Contrary to Mr. Wedick's assertions, nothing in applicable FBI policies or Portland Division's procedures imposed such a stringent set of requirements. In fact, the

Page 4 - DECLARATION OF FBI SPECIAL AGENT MICHAEL SWEENEY

controlling FBI policy, as set forth in the <u>Manual of Investigative Operations & Guidelines</u>, expressly sanctioned the precise method and procedure relied upon when requesting each of the three payments made to Mr. Cabral: **"If the assigned federal prosecutor provides 'blanket' concurrence for payment, the agent does not need to continuously obtain and document future payments which fall within the previously provided concurrence."** [MIOGP 1, Section 270-14 (1) (f), (effective April 9, 2004.] Written FBI policy specifically designed to cover the exact situation in issue thus covered the entire period of all three payments to Mr. Cabral, and was not inconsistent with the relevant Attorney General Guidelines for Confidential Informants, dated May 30, 2002. Moreover, the policy language referring to "blanket concurrence" specifically codified a well-established practice of FBI agents, managers, and federal prosecutors which had been in widespread use throughout the FBI for many years prior. This does not mean that the practice of obtaining specific AUSA concurrence for each and every payment was abandoned, however, but simply that such practice was not required as a matter of policy. Indeed, both the initial, and any continued use of "blanket concurrence" would necessarily vary among agents and prosecutors based upon a variety of factors, including mutually agreed preference, particular investigative or CHS sensitivities, and any other anomalies or intervening circumstances which might suggest otherwise.

11. The CHS file further reveals that all three separate payments to Mr. Cabral were requested and approved, initially by the immediate supervisor, and subsequently at the Executive Management level by an Assistant Special Agent in Charge, as was properly delegated by Portland's Special Agent in Charge. Each payment request also carefully cited the

Page 5 - DECLARATION OF FBI SPECIAL AGENT MICHAEL SWEENEY

aforementioned "confirmatory AUSA letter" and was approved prior to Mr. Cabral's receipt of any payment.

12.     Based on my review of the CHS file and existing FBI/DOJ policies and procedures with regard to payment of Confidential Human Sources at the time, as well my training and experience, and upon confirming the above with relevant FBI Headquarters entities, it is my belief that all payments made to Mr. Cabral were properly requested, and properly authorized in accord with existing policies and procedures at the time.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 23rd day of March, 2011.

_____
MICHAEL J. SWEENEY

SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION