Lawrence Matasar, OSB No. 74209
621 SW Morrison Street, Suite #1025
Portland, OR 97205
Tel: (503) 222-9830
Fax: (503) 274-8575
Email: larry@pdxlaw.com

Steven T. Wax, OSB No. 85012
Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Email: steve_wax@fd.org

Attorneys for Pirouz Sedaghaty

FILED WITH THE
COURT SECURITY OFFICER
CSO:
DATE:

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PIROUZ SEDAGHATY,<br><br>Defendant. | CR 05-60008<br><br>DEFENDANT'S THIRD CIPA §5 NOTICE |

Defendant, by his attorneys, Lawrence Matasar and Steven T. Wax, pursuant to Section 5 of the Classified Information Procedures Act (CIPA), 18 U.S.C. App. III, § 5, hereby notifies the Court and the United States Attorney that, in addition to the previously filed CIPA Notices, the defendant reasonably expects to cause the disclosure

Page 1 DEFENDANT'S THIRD CIPA §5 NOTICE

of classified information at a pretrial hearing and during trial of this matter. This classified information is directly relevant to a hearing on a motion for discovery and a number of trial defenses. The evidence Mr. Sedaghaty expects to disclose involves:

1) the scope of government investigation or possession of information from investigation by others of Al Haramain and its principals and employees and their financial activities as they may relate to this case;

2) U.S. and Saudi Arabian governmental provision of funds to or for people or entities in Chechnya during the time period relevant to this case;

3) the relationship between the Saudi Arabian government, the Saudi Joint Relief Committee and Al Haramain; and,

4) the nature and results of investigation that would have been undertaken by the United States regarding the allegations in this indictment.

The information Mr. Sedaghaty intends to present at a hearing and to the jury on these subjects will likely include a great deal of unclassified material, but will also include some classified material. We do not believe this pleading contains any classified material.

I. **THE STRUCTURE OF CIPA.**

CIPA §§ 5 and 6 establish procedures for determining before trial the admissibility of classified information that the defense reasonably expects to disclose. See, e.g., United States v. Fernandez, 913 F.2d 148, 151 (4th Cir. 1990) (describing procedures); United States v. North, 910 F.2d 843, 898-99 (same), modified on other grounds, 920 F.2d 940 (D.C. Cir. 1990); United States v. Libby, 453 F. Supp. 2d 35,37-38 (D.D.C. 2006) (same). The statute is intended to permit this determination without placing the defendant in a worse position than he would be in if the case did not involve classified information. See, e.g., United States v. Lopez-Lima, 738 F.Supp. 1404, 1407

(S.D. Fla. 1990); *United States v. Poindexter*, 698 F. Supp. 316, 320 (D.D.C. 1988); *see also* S. Rep. No. 96-823, at 9 (noting that the defendant "should not stand in a worse position, because of the fact that classified information is involved, than he would without this Act"), *reprinted in* 1980 U.S.C.C.A.N. 4294, 4302.

The determination of admissibility under CIPA involves four principal steps. First, a defendant must file a notice briefly describing the classified information that he "reasonably expects to disclose or to cause the disclosure of" at trial. CIPA § 5(a). Classified information that a defendant reasonably expects to disclose but does *not* list on the CIPA § 5 Notice may be precluded from use at trial. *Id.* § 5(b). Thus, a defendant must attempt to anticipate before trial all the myriad ways it may disclose classified information, including during opening statements, cross-examination of prosecution witnesses, the defense case proper, and closing arguments.

This process necessarily requires speculation, because, as one court recently explained, "no party can say with absolute certainty what a witness will say, or what questions will be asked," or how the trial will otherwise unfold. *United States v. Libby*, 467 F. Supp. 2d 1, 20 (D.D.C. 2006).

At the prosecution's request and pursuant to CIPA § 6, the district court must hold a pretrial hearing at which the court determines the "use, relevance, or admissibility" of classified information listed in the defendant's CIPA § 5 Notice. *Id.* § 6(a); *see, e.g.*, *Libby*, 467 F. Supp. 2d at 3-6 (describing § 6(a) process). At the request of the Attorney General, the hearing must be held in secret. Following the hearing, the district court must "set forth in writing" the basis for its ruling as to each item of classified information at issue in the hearing. CIPA § 6(a).

Page 3 DEFENDANT'S THIRD CIPA §5 NOTICE

As to any classified information for which the district court authorizes disclosure, the government may move to replace the information with a statement admitting relevant facts that the information would tend to prove, or to substitute a summary of the information. The district court shall grant the government's motion if it finds that the statement or summary would "provide the defendant with substantially the same ability to make his defense as would disclosure" of the classified information. *Id.* § 6(c)(1); *see, e.g., United States v. Moussaoui,* 382 F.3d 453, 476 (4th Cir. 2004), *cert. denied,* 544 U.S. 931 (2005); *Fernandez,* 913 F.2d at 154; *United States v. Libby,* 467 F. Supp. 2d at 24-26.

If the district court denies the government's motion for a statement or substitution, the court shall, if the Attorney General objects, prohibit the defendant from disclosing the classified information and impose sanctions on the prosecution, including (where appropriate) dismissal of the indictment or specified counts. CIPA § 6(e). As to any classified information that the district court determines may be disclosed at trial, the court "shall, unless the interests of fairness do not so require, order the United States to provide the defendant with the information it expects to use to rebut the classified information." *Id.* § 6(f); *see North,* 910 F.2d at 901-02.

Mr. Sedaghaty has initiated this process with the filing of his CIPA § 5 Notices, listing some of the classified information that he reasonably expects to disclose or to cause the disclosure of at a pretrial hearing and at trial. In addition, to focus any CIPA § 6 hearing that the government may request, Mr. Sedaghaty submits this memorandum outlining in summary form the "use, relevance, [and] admissibility" of the classified information listed in his third § 5 Notice.

II.   THE LEGAL FRAMEWORK FOR MAKING THE "USE, RELEVANCE, [AND] ADMISSIBILITY" DETERMINATION UNDER CIPA § 6(a).

The legal framework for making the CIPA § 6(a) "use, relevance, [and] admissibility" determination for the classified information in defendants' third CIPA Notice involves several key constitutional and statutory principles.

Most fundamentally, the Constitution guarantees a defendant a "meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quotation omitted); *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (same); *Kittelson v. Dretke*, 426 F.3d 306, 319 (5th Cir. 2005) (same). The Supreme Court has long recognized that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *see Washington v. Texas*, 388 U.S. 14, 19 (1967) ("[T]he right to present a defense . . . is a fundamental element of due process of law.").

The defendant's right to present a defense includes the "right to take the witness stand and to testify in [his] own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). As the Ninth Circuit has observed, "[t]hese rules reflect the fact that individuals accused of criminal behavior should be permitted to present, within reason, the strongest case they are able to marshal in their defense." *United States v. Thomas*, 32 F.3d 418, 421 (9th Cir. 1994).

In addition to the right to present a defense, the Sixth Amendment guarantees the defendant the "fundamental right" to cross-examine witnesses for the prosecution. *Pointer v. Texas*, 380 U.S. 400, 404-05 (1965); *see, e.g., Kittelson*, 426 F.3d at 319. Cross-examination is essential to the fairness and accuracy of a criminal trial; it is "the

Page 5 DEFENDANT'S THIRD CIPA §5 NOTICE

principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974); *see also United States v. Jimenez*, 464 F.3d 555, 559 (5th Cir. 2006).

The Supreme Court has declared that the "denial or significant diminution" of the right to cross-examine calls into question the "integrity of the fact-finding process." *Chambers*, 410 U.S. at 295 (quotation omitted). *See also Crawford v. Washington*, 541 U.S. 36, 61 (2004) (concluding that Sixth Amendment's Confrontation Clause demands that "reliability [of evidence] be assessed in a particular manner: by testing in the crucible of cross-examination").

Courts have long demonstrated fidelity to a defendant's Fifth and Sixth Amendment rights to present a defense and cross-examine prosecution witnesses, by refusing to permit the government to bring criminal charges against a person and then withhold information that the defendant needs for these purposes. Thus, half a century ago, the Supreme Court declared that "' since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense.'" *Jencks v. United States*, 353 U.S. 657, 671 (1957) (quoting *United States v. Reynolds*, 345 U.S. 1, 12 (1953)); *see, e.g., United States v. Andolschek*, 142 F.2d 503, 506 (2d Cir. 1944); *Libby*, 453 F. Supp. 2d at 44.

Congress enacted CIPA with these principles in mind. As noted above, and as Mr. Sedaghaty has stated previously, the statute is purely procedural. Congress made

clear that defendants "should not stand in a worse position, because of the fact that classified information is involved." S. Rep. No. 96-823, *supra,* at 9.

In that regard, CIPA was not intended to supplant ordinary discovery principles. Normal discovery rules apply to CIPA. *See, e.g., United States v. Libby,* 429 F. Supp. 2d 1, 7 (D.D.C. 2006), *quoting United States v. Yunis,* 867 F.2d 617,621 (D.C. Cir. 1989) (CIPA "creates no new rights or limitations on discovery of a specific area of classified information . . . [,] it contemplates an application of the general law of discovery in criminal cases to the classified information based on the sensitive nature of the classified information"). The same is true for evidentiary rules. *See, e.g., United States v. Baptista Rodriguez,* 17 F.3d 1354, 1363-64 (11th Cir. 1994); *United States v. Smith,* 750 F.2d 1215, 1218 (4th Cir. 1984); *United States v. Yunis,* 867 F.2d 617, 621-22 (D.C. Cir. 1989).

Thus, the defendant does not have to meet a heightened standard to obtain the admission of classified information; instead, the court "is compelled to employ the standard rules of evidence in assessing the admissibility of the classified information . . . To conclude otherwise would be contrary to Congress' clear mandate and potentially compromise the defendant's right to a fair trial." *Libby,* 453 F. Supp. 2d at 44; *see, e.g., United States v. Lee,* 90 F. Supp. 2d 1324, 1326 n.2 (D.N.M. 2000) ("[w]hen determining the use, relevance and admissibility of the proposed evidence [under CIPA], the court may not take into account that the evidence is classified; relevance of classified information in a given case is governed solely by the standards set forth in the Federal Rules of Evidence.") (citing *United States v. Baptista-Rodriguez,* 17 F.3d

1354,1364 (11th Cir. 1994)); *United States v. Ivy*, 1993 WL 316215, *4 (E.D. Pa. Aug. 13,1993) (same); *North*, 698 F. Supp. at 318 (same).

### III. THE CLASSIFIED INFORMATION LISTED IN DEFENDANTS' THIRD CIPA NOTICE IS RELEVANT AND ADMISSIBLE

#### A. Hearing.

Mr. Sedaghaty has filed a very specific discovery motion based on information of which he has recently become aware. As reflected in the declarations filed in support of this pleading and his Third Supplement to First Motion for Discovery, there is significant evidence that bears directly on the core aspect of the charges in this case – the authenticity of Al Haramain receipts, the disposition of Al Haramain money, the availability or lack thereof of certain exculpatory evidence, and the relationship between the United States, Saudi Arabia, SJRC, Al Haramain and provision of funds to or for people or entities in Chechnya that supports further discovery in this case.

#### B. Trial.

The categories of items referenced in the Third CIPA § 5 Notice are all relevant to trial in this matter. The Amended Indictment alleges that Mr. Sedaghaty conspired to defraud the United States by impeding the functions of the Internal Revenue Service and United States Customs and with filing a false tax return.

Much of the government's case with regard to intent, wilfulness, and knowledge is based on circumstantial evidence. Mr. Sedaghaty will rebut this evidence with testimony regarding the subjects listed above.

Specifically, the proffered evidence is relevant to the trial issues in this case to rebut evidence the government has indicated it will offer from Evan Kohlmann and an

agent of the Russian FSB. The witness and expert statements reveal that the government intends to attempt to prove that Al Haramain, through Aqeel al Aqeel, provided funding to Chechen mujahideen. The government's expert statement and FSB reports also reveal that it will seek to prove certain facts abut the Russian/Chechen conflict. The evidence Mr. Sedaghaty will present will: 1) show that he would not have had any knowledge of the alleged funding activity, if it occurred; 2) show that any provision of funds to any persons or entities in Chechnya would have been with the support, direction, and involvement of the Saudi Arabian government; 3) show that the United States government was involved with supporting people or entities in Chechnya; 4) provide a more accurate view of the Chechen/Russian conflict; and 5) discuss the scope of the evidence available to the government.

The evidence described in the preceding paragraph support Mr. Sedaghaty's defense that he did not defraud the United States. That evidence is, therefore, relevant to the willfulness element of the case.

The proffered evidence is also admissible at trial for several other purposes and under multiple theories including 1) the rule of completeness (Fed. R. Evid. 106); 2) prior consistent statements (Fed. R. Evid. 801(B)); 3) the state of mind of any defendant (Fed. R. Evid. 803(3)); 4) reliance by defense experts as a basis for their opinions (Fed. R. Evid. 703); 5) cross-examination of prosecution experts, who may be relying on a variety of material provided by the government, including statements that the government summarized from classified material; (Fed. R. Evid. 705); 6) impeachment of government witnesses (Fed. R. Evid. 607); and, 7) impeachment of hearsay declarants (Fed. R. Evid. 806).

Page 9 DEFENDANT'S THIRD CIPA §5 NOTICE

At a CIPA § 6 hearing (if the government requests one), Mr. Sedaghaty will address the relevance and admissibility further in relation to particular evidence, and reserve the right to do so *ex parte*. *See, e.g., United States v. Bin Laden*, 2001 WL 66393, at *6 (S.D.N.Y. January 25, 2001), *citing United States v. Poindexter*, 698 F. Supp. 316, 320 (D.D.C. 1988).

Respectfully submitted on April 27, 2010.

/s/ Michelle Sui
Lawrence Matasar, OSB No. 74209

/s/ Steven T. Wax
Steven T. Wax, OSB No. 85012
Federal Public Defender

Attorneys for Defendant Pirouz Sedaghaty