```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF OREGON

 3   UNITED STATES OF AMERICA,       )
                                     )
 4                 Plaintiff,        )
                                     )
 5      v.                           ) No. 6:05-60008-2-HO
                                     )
 6   PIROUZ SEDAGHATY, et al.,       )
                                     )
 7                 Defendants.       )

 8

 9          TRANSCRIPT OF TELEPHONE CONFERENCE

10         BEFORE THE HONORABLE MICHAEL R. HOGAN

11           UNITED STATES DISTRICT COURT JUDGE

12                 TUESDAY, MAY 4, 2010

13                    EUGENE, OREGON

14

15

16                         -:-

17

18

19

20

21

22

23           Deborah Wilhelm, CSR, RPR
                  Court Reporter
24                P.O. Box 1504
               Eugene, OR  97440
25              (541) 431-4113
```

```
 1              APPEARANCES OF COUNSEL VIA TELEPHONE

 2

 3   FOR THE PLAINTIFF:    CHRISTOPHER L. CARDANI
                           United States Attorney's Office
 4                         405 E. 8th Avenue, Suite 2400
                           Eugene, OR  97401
 5                         (541) 465-6771
                           chris.cardani@usdoj.gov
 6
                           CHARLES F. GORDER, JR.
 7                         United States Attorney's Office
                           1000 S.W. Third Avenue, Suite 600
 8                         Portland, OR  97204-2902
                           (503) 727-1021
 9

10   FOR THE DEFENDANT:    LAWRENCE H. MATASAR
                           Lawrence Matasar, P.C.
11                         621 S.W. Morrison Street
                           Suite 1025
12                         Portland, OR  97205
                           (503) 222-9830
13                         larry@pdxlaw.com

14                         STEVEN T. WAX
                           Federal Public Defender
15                         101 S.W. Main Street, Suite 1700
                           Portland, OR  97204
16                         (503) 326-2123
                           steve_wax@fd.org
17

18

19

20

21

22

23

24

25
```

```
 1                  (Tuesday, May 4, 2010; 9:40 a.m.)
 2           (The following proceedings were had in chambers.)
 3                         P R O C E E D I N G S
 4           THE CLERK:  Now is the time set for Criminal
 5   Case 05-60008, United States of America versus Pirouz
 6   Sedaghaty, time set for in chambers conference regarding
 7   timing and scheduling for the May 10, 2010, hearing.
 8           THE COURT:  Good morning.  The first question I
 9   have for the defendant is do you waive the defendant's
10   presence?
11           MR. WAX:  Yes, Your Honor.
12           MR. MATASAR:  Yes.
13           MR. WAX:  That was Steve Wax speaking.
14           THE COURT:  Okay.  Steve, I've set this little
15   phone hearing because of your e-mail to me.  Actually,
16   it was to Mary Pat, I guess, but that's a good way to
17   talk to me.  And I'm happy to tell you about your plans.
18   I'd like to know what you have in mind, however.
19           MR. WAX:  Well, we -- if we understand
20   correctly, the government will have Evan Kohlmann
21   available to testify at the Daubert challenge that we
22   have filed against him, so we would think that would be
23   one order of business.
24           We filed, which I assume Scooter has gotten to
25   everyone, a number of pleadings that we would like to
```

1  take up.  We have a -- you know, the motions in limine
2  and a number of sub issues within that.  We have an open
3  issue with respect to the scope of the disclosures made
4  in the witness and exhibit lists, and the issue we
5  raised about, you know, direct case versus rebuttal,
6  et cetera.
7           The government has indicated that, before you
8  were able to join the call, that they are planning on
9  filing a *Daubert* challenge to Colonel Lang, so that's
10 the list of some of the things that we see.
11          We have not yet filed any voir dire motions.
12 We plan on doing that.  And one, in particular, I think
13 might be good for us to discuss, at least preliminarily,
14 and that would involve jury questionnaire and timing of
15 such.
16          THE COURT:  All right.  All of you know quite a
17 lot about me.  I'm not an unknown quantity to you.  And
18 you all know -- well, maybe you don't know.  I've only
19 used a jury questionnaire one time in 28 years, and that
20 had to do with whether there was sexual abuse in
21 families of jurors, and so I thought that merited
22 discussion in camera.  So I don't do that very often.
23 I'm happy to consider it.
24          Mr. Cardani and Mr. Gorder, did you want to
25 talk about the scope of the Monday hearing?

1         MR. GORDER:  Yes, Your Honor.  This is Charles
2    Gorder.  I do want to confirm that we'll be filing a
3    *Daubert* motion on the disclosures of Mr. Lang's
4    purported expert testimony at the trial, and we'll file
5    that today.  So we would like to have that heard if we
6    could.
7         I just really have one request with regard to
8    Mr. Kohlmann, and I assume the defense would join with
9    regard to Mr. Lang, is that perhaps we could take those
10   issues up first in the hearing so that we could get our
11   witnesses out of town and back home, you know, at a
12   reasonable time.
13        But beyond that, I think the other issues that
14   are pending are the exhibits that both sides are
15   challenging, so we have that issue too on Monday.
16        THE COURT:  All right.  Well, anything more,
17   and then I'll tell you what I have in mind?
18        MR. CARDANI:  Judge, Chris Cardani.  I've been
19   taking some notes here, and there is just a couple of
20   other things.  The last thing Mr. Gorder mentioned, the
21   exhibits, there have been extensive challenges on both
22   sides, so there may be a need for the court to get
23   really involved in an exhibit review, and call balls and
24   strikes, which would help both of us shape the trial and
25   make it more efficient.

1          And then the last thing is I brought up this
2    issue at the last hearing about our need for
3    stipulations on some documents that we obtained from
4    Mr. Matasar in response to a grand jury subpoena.  And
5    we have not made any official progress on that.  I
6    talked to Mr. Matasar again yesterday, and he said he's
7    going to speak to Mr. Wax today and let me know.  But
8    I'm getting a little apprehensive.  And if we aren't
9    able to arrange stipulations, I need to file a motion
10   this week to get this on for Monday as well to get some
11   movement on the admissibility of those documents.
12         THE COURT:  Well, you folks try to work that
13   out today.  And if you don't, file your motion.
14         MR. CARDANI:  Okay.
15         THE COURT:  Now, Counsel, on *Daubert*
16   challenges, some people in the South call them Dobare
17   challenges, especially from Louisiana, but I think
18   that's probably not it.  At any rate, on those, lots of
19   times the materials to be reviewed involve a pretty
20   substantial amount of written material.  And if either
21   of you are going to be relying on written material, I'd
22   like you to get that to me early so that I could have it
23   read.  And so give me a few days to do that.  All right.
24         Then my plan is, right now I've got the entire
25   Monday open.  I don't hear enough here that would

```
 1  require more than just Monday, and so we'll plan on
 2  doing everything Monday.
 3          Just so that you know, I'm going to Washington,
 4  D.C. on the 18th.  If there is any further work that you
 5  have in mind, that either of you have in mind, that I
 6  should be doing in Washington, D.C., then, please let me
 7  know in an appropriate way, because I plan on doing some
 8  review to make sure I feel confident in the rulings
 9  which we'll have at trial.  And I'll probably be doing
10  any reviews I do on the 19th.
11          All right.  That being said, what else do you
12  have, folks?
13          MR. GORDER:  Your Honor, can I ask if the court
14  security officer is going to be in Eugene on Monday?
15          THE COURT:  Yes.
16          MR. GORDER:  Okay.
17          THE COURT:  Because I've already informed him
18  that I'd like him here.
19          MR. GORDER:  Okay.  Your Honor, I do think
20  that, at least preliminarily, I would like to address
21  you in camera on the CIPA filings that defense counsel
22  filed last week.  Can't really talk about that on this
23  telephone, but --
24          THE COURT:  Are you in Eugene today?
25          MR. GORDER:  No, I'm in Portland, I'm sorry.
```

1           THE COURT:  All right.  Well --
2           MR. WAX:  I'm sorry, was that a request for an
3   ex parte discussion?
4           THE COURT:  That's what I --
5           MR. WAX:  Because I'm quite concerned about,
6   you know, following the CIPA, you know, Section 6
7   procedures.  I mean, we have filed, you know, formal
8   notice and we have filed also some pretty extensive
9   motions that we believe require a formal response from
10  the government, and a discussion that is not ex parte,
11  you know, in a classified session.
12          THE COURT:  You'll have to take your own
13  counsel on that, both of you.  If either of you believe
14  you are entitled to an ex parte session, then take
15  whatever steps you need to request it.  And I will have
16  reviewed the CIPA filing.  Anything further?
17          MR. WAX:  Judge, with respect to Colonel
18  Lang --
19          THE COURT:  Yes.
20          MR. WAX:  -- we don't yet have the government's
21  pleading.  We intend to have him there on Monday if that
22  is what you want.  I don't know, when we see their
23  pleading, if we're going to be suggesting that there is
24  just no need to have him.  I mean, his credentials, as
25  we see it, are impeccable.  And I'm not sure quite what

1    the government is planning on doing, but we do need to
2    know whether we should have him there because there are
3    logistic and expense issues that we have to contend
4    with.
5            THE COURT:  If a motion is filed by tomorrow,
6    you should have him at the hearing.
7            MR. WAX:  Okay.
8            THE COURT:  Anything further?
9            MR. MATASAR:  Yes, Your Honor.  I think it's
10   probably better for all concerned to -- if it's okay
11   with you, Chris, to address the general issue that we've
12   been talking about with the business records, just alert
13   the judge.
14           MR. CARDANI:  Okay.
15           MR. MATASAR:  Does that sound agreeable?
16           MR. CARDANI:  Yes.
17           MR. MATASAR:  Your Honor, there is a series of
18   documents that the government has proposed be
19   introduced.  They all have the AHIF prefix.  And those
20   are documents that were obtained by the government
21   pursuant to a subpoena long before the indictment.  They
22   served a subpoena on al-Haramain, and I was then
23   retained.  I was in contact with Mr. Cardani.  And I
24   provided him with several boxes of documents pursuant to
25   the subpoena.

1          These documents, which he has received, he has
2    sought to introduce some of them, and has indicated that
3    he wants to consider them as business records, and has
4    indicated that if we, in short -- and I think this is a
5    fair way to describe it -- if we don't stipulate that
6    they are business records, he intends to call me as a
7    witness to assist in the authentication of the business
8    records because I provided the records to him.
9          My response is generally that I certainly would
10   not dispute the fact that I am in a chain of custody;
11   that as a lawyer pursuant to a government subpoena, I
12   provided him with documents.  However, I'm not sure that
13   gets him to the business records exception in the
14   hearsay rule.  So that's in general what we're talking
15   about.
16         And Mr. -- Chris has indicated, you know, that
17   he feels the documents are important to his case.  And
18   Mr. Wax and I plan to meet in detail today and tomorrow,
19   but that is the general issue that you may be faced with
20   on Monday as well.
21         MR. CARDANI:  And this is Chris Cardani.  I
22   have no desire of calling Mr. Matasar as a witness,
23   Judge.  But if we can't get a stipulation that gets us
24   closer to being able to get over the -- the defense has
25   challenged a number of these exhibits, and we can talk

1    about that Monday at the hearing.  And if we're not able
2    to get a suitable custodian of records and lay the
3    proper foundation for these documents, it may be because
4    of how these documents were obtained by the government
5    that Mr. Matasar may need to answer some questions
6    outside the jury, of course this would be a pretrial
7    hearing.  I don't want to do that.  I want to avoid
8    that.  And that's why we're having these discussions.
9            THE COURT:  All right.
10           MR. WAX:  Judge, there is one other logistical
11   issue that exists for Monday.  The pleadings that we
12   filed through the court security officer are not in our
13   possession.  And if we're bringing Colonel Lang out
14   on -- for Monday, I'm going to need access to those
15   documents with him on Sunday, which I guess is an issue
16   more for the U.S. Attorney's Office than for the court,
17   perhaps, because the documents exist in the -- or are
18   being held in the U.S. Attorney's Office.  And we will
19   then need them in the courtroom on Monday.  And I don't
20   believe the court security officer will allow us to
21   transport them.  So we just want to alert you that in
22   terms of hearing preparation, I need access to them
23   Sunday in Portland, and then they need to be brought to
24   the courtroom for our use in court on Monday.
25           THE COURT:  The only question I have about

1  that, I think it would be easier to make them available
2  on Sunday in Eugene.  And so I want you folks to talk
3  about that, all right?
4          MR. WAX:  Well, in terms of our expert, Judge,
5  we would be wasting four hours of driving time if we
6  have to go down to Eugene and back on Sunday and then
7  back again on Monday.
8          THE COURT:  I understand.
9          MR. WAX:  I had assumed the U.S. Attorney,
10 Mr. Gorder, is authorized to transport -- I mean, these
11 materials are kept in a locked bag to which Mr. Matasar,
12 Mr. Teesdale and I have, at least as I understand it,
13 the only key.  I have no problem with Mr. Gorder, you
14 know, bringing them to the courtroom on Monday.
15         MR. MATASAR:  Doesn't Scooter have copies of
16 these documents?  Wouldn't he be bringing his own copies
17 to court?
18         MR. GORDER:  Steve, maybe this is something we
19 can talk off line about.
20         MR. WAX:  Well, I just want to be sure that we
21 will have access to the documents both in Portland for
22 work with the expert, and, yes, the court, of course,
23 has copies of them.
24         THE COURT:  I do have them here in the safe.
25         MR. WAX:  Yeah.  So if we'd be able to have

```
 1   access to them, you know --
 2          THE COURT:  But I'm not going to take them to
 3   Portland.
 4          MR. WAX:  No, no, no.  I'm not asking you to
 5   take them to Portland.  We have copies in the safe in
 6   the U.S. Attorney's Office in Portland.
 7          MR. MATASAR:  In Portland.
 8          MR. WAX:  We just need to have access to them
 9   in Eugene as well during the hearing on Monday.
10          THE COURT:  You fellas try to work that out.
11   And with regard to Portland, there is not much I'm going
12   to do.  With regard to Eugene, if I have to come down,
13   we'll make them available.  If I have to get Scooter out
14   here, we'll make them available.
15          MR. WAX:  We'll get back to you if we have an
16   issue then.
17          THE COURT:  Thank you.  Anything further?
18   Thank you very much.  See you on Monday.
19          MR. GORDER:  Thank you, Your Honor.
20          (The proceedings were concluded at 9:57 a.m.)
21
22
23
24
25
```

```
 1                         CERTIFICATE
 2        I, Deborah Wilhelm, Certified Shorthand Reporter
 3   for the State of Oregon, do hereby certify that I was
 4   present at and reported in machine shorthand the oral
 5   proceedings had in the above-entitled matter.  I hereby
 6   certify that the foregoing is a true and correct
 7   transcript, to the best of my skill and ability, dated
 8   this 22nd day of September, 2011.
 9
10
11
12
                                  /s/ Deborah Wilhelm
13                                _____
                                  Deborah Wilhelm, RPR
14                                Certified Shorthand Reporter
                                  Certificate No. 00-0363
15
```