```
 1              IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF OREGON

 3   UNITED STATES OF AMERICA,       )
                                     )
 4             Plaintiff,            )
                                     )
 5     v.                            ) No. 6:05-60008-2-HO
                                     )
 6   PIROUZ SEDAGHATY, et al.,       )
                                     )
 7             Defendants.           )

 8

 9         TRANSCRIPT OF TELEPHONE CONFERENCE

10         BEFORE THE HONORABLE MICHAEL R. HOGAN

11            UNITED STATES DISTRICT COURT JUDGE

12                  MONDAY, MAY 17, 2010

13                     EUGENE, OREGON

14

15                         -:-
```

Deborah Wilhelm, CSR, RPR
Court Reporter
P.O. Box 1504
Eugene, OR  97440
(541) 431-4113

```
 1              APPEARANCES OF COUNSEL VIA TELEPHONE

 2

 3   FOR THE PLAINTIFF:     CHRISTOPHER L. CARDANI
                            United States Attorney's Office
 4                          405 E. 8th Avenue, Suite 2400
                            Eugene, OR  97401
 5                          (541) 465-6771
                            chris.cardani@usdoj.gov
 6
                            CHARLES F. GORDER, JR.
 7                          United States Attorney's Office
                            1000 S.W. Third Avenue, Suite 600
 8                          Portland, OR  97204-2902
                            (503) 727-1021
 9

10   FOR THE DEFENDANT:     LAWRENCE H. MATASAR
                            Lawrence Matasar, P.C.
11                          621 S.W. Morrison Street
                            Suite 1025
12                          Portland, OR  97205
                            (503) 222-9830
13                          larry@pdxlaw.com

14                          STEVEN T. WAX
                            Federal Public Defender
15                          101 S.W. Main Street, Suite 1700
                            Portland, OR  97204
16                          (503) 326-2123
                            steve_wax@fd.org
17

18   ALSO PRESENT:          Scooter Slade

19

20

21

22

23

24

25
```

```
 1                  (Monday, May 17, 2010; 1:36 p.m.)
 2          (The following proceedings were had in chambers.)
 3                         P R O C E E D I N G S
 4              THE CLERK:  Counsel, this is Jill Wright
 5    calling from Judge Hogan's chambers.  Mr. Cardani, can
 6    you hear me?
 7              MR. CARDANI:  Yes.
 8              THE CLERK:  Thank you.  Mr. Gorder?
 9              MR. GORDER:  Yes.
10              THE CLERK:  Mr. Wax?
11              MR. WAX:  Yes.  And here with Mr. Sedaghaty.
12              THE CLERK:  Thank you.  And Mr. Matasar?
13              MR. MATASAR:  Yes.
14              THE CLERK:  And Mr. Slade?
15              MR. SLADE:  Yes.
16              THE CLERK:  Thank you.  Counsel, please
17    remember to identify yourself when you speak for the
18    court reporter.
19              Now is the time set for Criminal Case 05-60008,
20    *United States of America versus Pirouz Sedaghaty,* time
21    set for in chambers telephone conference.
22              THE COURT:  Hello.  This is Mike Hogan.
23              Mr. Matasar, would you describe to me the scope
24    of the accounting issues involved here?
25              MR. MATASAR:  The scope of the accounting
```

1  issues?

2          THE COURT:  Yes.

3          MR. MATASAR:  Yes.

4          THE COURT:  Frankly, I ask that because I

5  wonder how much of that really is involved in this case.

6          MR. MATASAR:  Okay.  Well, the government has

7  alleged that the first -- basically two substantive

8  counts here, the first one concerns a false tax return.

9  The tax return is alleged to be false in three places:

10 Line 1, line 22, and line 57a.

11         And in our view -- I mean, the case as

12 Mr. Cardani has always said to me is an accounting case,

13 not a terrorism case.  The government has to prove, in

14 my view, that line 1 is false.  And they have to prove

15 that it was intentionally -- or willfully false.  And

16 they have to prove that it was materially false.

17 Similarly with line 22, they have to prove all of those

18 three things, and also with line 57a, so I --

19         THE COURT:  I understand that, but isn't the

20 question an intent question rather than an accounting

21 question?

22         MR. MATASAR:  Well, we believe -- and we have

23 submitted an expert report to the government -- that

24 line 1 is not false, and that -- or line 1 is not

25 understated, and line 22 is not understated.  We

1  acknowledge that line 57a is incorrect on the return.
2  So there are two of the three issues, I think, there
3  will be a bona fide question about whether or not the
4  tax return was incorrect.
5       We have lined up an expert who was the head of
6  the -- I'm sorry, I'm not thinking so clearly as I
7  normally would be, but he was head of the nonprofit part
8  of the Internal Revenue Service for eight years.  And
9  he's an important expert for us.
10      We're also going to have an expert -- we've
11  been consulting with, I don't know if this expert will
12  testify, about the other issues in the case.
13      MR. WAX:  Judge, this is Steve Wax.  With
14  respect to line 57, while we will not be contesting that
15  it included a mistake, we are contesting and there will
16  be some very extensive and complex testimony about who
17  made the mistake and how that can be established.
18      THE COURT:  But is that --
19      MR. MATASAR:  Let me also say, in the meetings
20  preparing for this case, in the discussions that we've
21  had at the Federal Defender's Office, in the discussions
22  among the team, it -- I would say it's fair to say that
23  the accounting issues have taken up more than half of
24  our time in getting ready for the case.  Steve, would
25  you agree with that?

1          MR. WAX:  Yes.

2          MR. MATASAR:  So it is not -- I'm not just

3  saying this because it's my part, but in our preparation

4  for the case, it has not been a minor issue.  Even

5  though from the way the court sees it, the issues that

6  come up, because these are sort of simple issues, we

7  didn't really feel a need to bring out many of these

8  issues before the court in the pretrial preparation, it

9  doesn't mean that they're not an important part of the

10 trial, though.

11         THE COURT:  All right.  Do you have something

12 more then on your request for continuance?

13         MR. MATASAR:  I'll just give an update of my

14 wife's condition, which is that while sometimes we were

15 optimistic that it would be better soon, the last day or

16 two has been pretty negative.  She's having sleeping

17 problems.  She's been -- last night, had very little

18 sleep, lots of pain, a lot of sort of emotional

19 problems.  So the prognosis, again, for the long run,

20 I'm telling you all, and I keeping telling myself, is

21 good.  The short-term hiccups are at times quite

22 demanding of my time and my mental energy.

23         THE COURT:  How long are you asking that the

24 trial be set over?

25         MR. MATASAR:  Steve and I talked about that,

1  and tell me if I'm wrong, Mr. Wax, but my -- our thought
2  was that if it were set over until, say, September 1,
3  either I would be able to do it or that would give him
4  time to find somebody else to assist him to present the
5  case.  That way we could be assured of a date rather
6  than have it be based on my ability to do it.  That was
7  the suggestion.
8          Steve, you can continue.  Steve is much more
9  organizationally in touch with everything right now than
10 I am.  But that was just an idea that we thought we
11 would suggest.
12         THE COURT:  All right.  For the government.
13         MR. CARDANI:  Judge, this is Chris Cardani.  I
14 would like to do what I was going to try to do in court
15 last week and that is ask that the court maintain the
16 trial date.  I have a list of several reasons.  May I
17 present them?
18         THE COURT:  Yes.
19         MR. CARDANI:  First of all, the indictment was
20 lodged in February of 2005.  And, obviously, we're here
21 over five years later.  Mr. Sedaghaty knew of the
22 indictment while he was out of the country and stayed
23 out of the country for another two plus years.
24 Discovery has been provided, the majority of it, in 2007
25 and early 2008, including all of the accounting and tax

1  stuff, a lot of which was in the hard drives.
2          Mr. Sedaghaty has had the benefit of not just
3  one but two and sometimes more lawyers with substantial
4  experience.  We were in last court last week for the
5  *Daubert* hearing.  And as I counted them, there were four
6  lawyers in the courtroom representing Mr. Sedaghaty, and
7  none included Mr. Matasar.
8          The pleadings in this are extensive.  And
9  although the accounting is described as complicated, we
10 don't view it as that.  We seem to have an agreement
11 that the return was false.  And as the court has
12 correctly pointed out, the question is why that is, was
13 it a mistake or was it a willful error.  And by my
14 observation, Mr. Wax has spent considerable efforts of
15 his own in his, quote, part of the case being the lawyer
16 to defeat the willfulness aspect.  Mr. Matasar, I'm
17 sure, is helping in that, but it does seem like
18 Mr. Matasar has been the mainstay on the willfulness
19 challenge.
20         During our -- the continuances, there have been
21 five, this would be the sixth, we've been continued for
22 a period of about two-and-a-half years, two of our
23 witnesses have died.  And they are substantive witnesses
24 with something that we would like to have them presented
25 to the jury, and because of these delays we have been

1   deprived of them.  The court knows that this trial
2   setting, the one on for June 7th, took an extraordinary
3   amount of effort, including for the court, to set aside
4   two weeks of its time, but also for everybody else
5   including Mr. Matasar, Mr. Wax.  Summer plans have been
6   made around this trial date.  Hotel rooms and flights
7   have already been made for witnesses coming from faraway
8   places.
9           And if there is a continuance, I wonder if it's
10  as easy as just picking a date in the future that we can
11  all agree on.
12          I respect Mr. Matasar's situation, and I don't
13  want anything to be -- sound insensitive here, but if
14  Mr. Matasar is able to work at least part-time, we do
15  wonder why it is that Mr. Wax and the number of lawyers
16  that he's had assisting in this case who already have
17  more than a passing knowledge of the case can't be
18  expected to come up to speed very quickly and maintain
19  the trial date.
20          So in sum, Judge, we don't view this as a
21  typical tax case where we're getting into how much tax
22  is due and owing and things like that.  From a
23  straightforward accounting standpoint, there are only
24  two witnesses from the government that we are going to
25  call for the tax part of this case:  The accountant who

```
 1   represented Mr. Seda, and he's been interviewed
 2   extensively by not only Mr. Matasar, by Mr. Wax; and
 3   then an IRS representative to say that this return, if
 4   it were false in the ways we allege, it would be a
 5   material falsity.  So two case-in-chief witnesses will
 6   be the tax case.
 7           And I just don't see why we shouldn't be able
 8   to expect another lawyer to come up to speed and be able
 9   to maintain the trial date.  That's all.
10           THE COURT:  All right.  Any response?
11           MR. MATASAR:  I can say that -- I think I
12   better not say anything.  I'm pretty -- no, I'm not
13   going to say anything.  I'm profoundly offended, but I
14   don't want to say anything on the record, I just don't.
15   I think I just better shut up as well.
16           MR. WAX:  Judge, we have the same logistical
17   issues as the government with witnesses coming from
18   overseas, with the track meet in Eugene, booking of
19   hotel rooms, service of subpoenas, travel arrangements,
20   et cetera.  And we have been moving toward the June 7th
21   trial date with the expectation that that's when the
22   case would go.
23           What happened with Mr. Matasar's wife is
24   completely outside of the control of any of us and an
25   event that is -- that is, you know -- an event that was
```

1  completely, you know, unanticipated and unrelated to
2  normal case matters.
3           The fact that there are a number of people in
4  the office who have been assisting me, you know, in my
5  portion of this case, I run an office, I have another
6  caseload, and have been putting a fair amount of my own
7  time into the case.  The reality of the way in which I
8  run the office does not mean that there is anyone in the
9  office who is able to step in on the accounting pieces.
10          Ms. Sweet is a research and writing attorney
11 and not a person who is a courtroom attorney.  I was
12 lucky to have, you know, met Bernie Casey during the
13 Guantanamo work.  He was bored.  He volunteered a little
14 bit of time to help out with a couple of specific
15 aspects of the case.  And he doesn't get paid.  He's not
16 in any position to step in.  I'm not sure who the other
17 fourth lawyer that Mr. Cardani was referring to as
18 having been in the courtroom last week is.
19          MR. CARDANI:  Would that be Mr. Teesdale, the
20 investigator?
21          MR. WAX:  Mr. Teesdale is our chief
22 investigator.  He is a member of the bar, but he does
23 not function as an attorney in terms of any
24 representational capacity, and is not a person who is
25 either authorized by employment or by, you know, the

1  rules under which we operate or by any ability to stand
2  up in a courtroom and examine witnesses.
3          THE COURT:  I would like to know from each of
4  you whether -- you know, there are other complications.
5  For example, our court reporter, we have to have a court
6  reporter who has the proper security clearances.  And
7  she has vacation plans also, and tickets bought and so
8  on.
9          What -- without deciding the motion yet, what
10 is the -- each of your availability beginning August 23?
11         MR. WAX:  If that is when the -- if it works on
12 the court's calendar, I can be there to do it.  We've
13 got a family wedding back East, but this case needs to
14 be tried, and the wedding can -- my wife can be our
15 delegate.
16         MR. MATASAR:  Mr. Wax, have you checked with
17 the experts?
18         MR. WAX:  No.  We have -- Judge, we have put
19 out an inquiry to the expert witnesses to see who is
20 available when, and we only have word back from one of
21 them, and I think we have six or seven people right now,
22 so I'm not sure at this moment what the availability of
23 the experts would be.  August 23 -- when is Labor Day?
24 Labor Day this year is the 6th, so we should have the
25 case finished before Labor Day, which would mean we

1  would be looking at getting our experts in the week of
2  August 30th through September 3rd.  I just haven't heard
3  back yet.
4           THE COURT:  Depending on how long the
5  government's case takes that is.
6           MR. WAX:  Yep.
7           THE COURT:  Mr. Cardani, how long do you
8  anticipate your case taking?
9           MR. CARDANI:  The big unknown is cross-
10 examination, Judge.  I would say if we had just, you
11 know, your normal cross-examination, we would be done --
12 Mr. Gorder, correct me if I'm wrong, but I'd say within
13 a week.
14          MR. GORDER:  I would agree with that, Your
15 Honor.  This is Charles Gorder.
16          THE COURT:  All right.  What are your
17 availabilities or not?
18          MR. CARDANI:  Judge, I'm away on a vacation in
19 Boston and I get back the night of August 17th.
20          THE COURT:  Mr. Gorder?
21          MR. GORDER:  Your Honor, I would be available
22 that week.  I've got a vacation scheduled the first two
23 weeks of August, so I would get back towards the end of
24 that week.
25          THE COURT:  Is it better for you --

```
 1              MR. GORDER:  One of our experts, Evan Kohlmann,
 2   is scheduled to be in Guantanamo Bay through August
 3   20th, so if for some reason he was delayed, that might
 4   be possible.
 5              THE COURT:  Do you know if it's better on your
 6   calendars that we start one week later on the 30th?
 7              MR. CARDANI:  Yes.  Mr. Cardani says yes.
 8              THE COURT:  And let me hear from the others,
 9   please.
10              MR. GORDER:  Charles Gorder, Your Honor.  That
11   would be okay with me.
12              MR. WAX:  My only concern with that, Judge, is
13   it then takes us through the Labor Day weekend, which is
14   potentially a problem for witnesses and jurors.
15              I guess the other question I would ask the
16   court is -- oh, someone has a vacation the first two
17   weeks in August?
18              THE COURT:  Yes.
19              MR. WAX:  Because I was wondering to get it
20   in -- the judicial conference is the --
21              THE COURT:  I don't have a court reporter the
22   first two weeks in August who has proper clearance.
23              The third week, well, Mr. Cardani is gone then.
24   The judicial conference is in Maui.  I could miss that,
25   but, you know, I'm going to work my schedule hard, but
```

```
 1   it doesn't sound like that will work anyway.
 2           MR. WAX:  If you are looking toward that time
 3   frame, Judge, I think it might, in terms of witness
 4   availability, we might have a little more luck if we
 5   start the 23rd rather than the 30th, but if you're
 6   inclined to go that time frame, perhaps we should get
 7   back to all the experts and check on schedules to see
 8   whether it makes any difference to them, and if so, how
 9   many, whether we're looking at the 30th or the week of
10   Labor Day in terms of availability for them.
11           THE COURT:  Just a moment.  I'll reset the
12   trial to August 30th.  There won't be any further
13   resettings, gentlemen.  It will be tried then.  Anything
14   further?
15           MR. WAX:  Not on our side, Your Honor, unless
16   you can remain somewhat flexible about whether it's the
17   23rd or 30th so we can try to get word back from some of
18   these experts.
19           THE COURT:  No, it's set on the 30th.  That's
20   when we're going to start.  Thank you very much.  Good
21   day.
22           (The proceedings were concluded at 1:55 p.m.)
23
24
25
```

```
 1                        CERTIFICATE

 2          I, Deborah Wilhelm, Certified Shorthand Reporter

 3   for the State of Oregon, do hereby certify that I was

 4   present at and reported in machine shorthand the oral

 5   proceedings had in the above-entitled matter.  I hereby

 6   certify that the foregoing is a true and correct

 7   transcript, to the best of my skill and ability, dated

 8   this 22nd day of September, 2011.

 9

10

11

12
                                  /s/ Deborah Wilhelm
13                                _____
                                  Deborah Wilhelm, RPR
14                                Certified Shorthand Reporter
                                  Certificate No. 00-0363
15

16

17

18

19

20

21

22

23

24

25
```