```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF OREGON

 3    UNITED STATES OF AMERICA,        )
                                       )
 4                    Plaintiff,       ) No. 05-60008-2-HO
                                       )
 5      v.                             ) September 27, 2011
                                       )
 6    PIROUZ SEDAGHATY, et al.,        ) Eugene, Oregon
                                       )
 7                    Defendants.      )

 8


 9          TRANSCRIPT OF SENTENCING PROCEEDINGS

10         BEFORE THE HONORABLE MICHAEL R. HOGAN

11          UNITED STATES DISTRICT COURT JUDGE

12

13                        -:-

14

15

16

17

18

19

20

21

22

23            Deborah Wilhelm, CSR, RPR
                    Court Reporter
24              P.O. Box 1504
              Eugene, OR  97440
25              (541) 431-4113
```

```
 1                    APPEARANCES OF COUNSEL

 2

 3   FOR THE PLAINTIFF:      CHRISTOPHER L. CARDANI
                             United States Attorney's Office
 4                           405 E. 8th Avenue, Suite 2400
                             Eugene, OR  97401
 5                           (541) 465-6771
                             chris.cardani@usdoj.gov
 6
                             CHARLES F. GORDER, JR.
 7                           United States Attorney's Office
                             1000 S.W. Third Avenue, Suite 600
 8                           Portland, OR  97204-2902
                             (503) 727-1021
 9

10   FOR THE DEFENDANT:      LAWRENCE H. MATASAR
                             Lawrence Matasar, P.C.
11                           621 S.W. Morrison Street
                             Suite 1025
12                           Portland, OR  97205
                             (503) 222-9830
13                           larry@pdxlaw.com

14                           STEVEN T. WAX
                             MICHELLE SWEET
15                           Federal Public Defender
                             101 S.W. Main Street, Suite 1700
16                           Portland, OR  97204
                             (503) 326-2123
17                           steve_wax@fd.org

18

19

20

21

22

23

24

25
```

1              (Tuesday, September 27, 2011; 1:37 p.m.)

2                      P R O C E E D I N G S

3          THE CLERK:  This is the time set for Criminal

4    Case 05-60008, *United States of America versus Pirouz*

5    *Sedaghaty*, time set for sentencing.

6          THE COURT:  I am familiar with your papers.

7    Happy to hear anything more you wish to add.

8          MR. WAX:  Your Honor, we do not have a lot to

9    say.  We had identified a number of issues in the

10   pleadings and in the hearing last November on which we

11   believe rulings are needed in anticipation of the

12   sentencing.

13          If it would help, I could go through the list.

14   If you'd like any more input on any of them, we're happy

15   to provide it.  If not, I don't have anything more to

16   add.

17          THE COURT:  I don't really think I need that.

18   If you don't hear about something, then bring it up.

19   Why don't we do it that way?

20          MR. WAX:  Fine.  Thank you, Your Honor.

21          MR. CARDANI:  Judge, we, too, having nothing

22   else to add.  For purposes of sentencing, the case was

23   thoroughly briefed in the government's sentencing

24   memorandum for last November's session.  We stand on

25   that.

1              And we would ask the court to make specific

2     findings on the sentencing guideline issues up for

3     grabs, and as well Mr. Wax did file a number of specific

4     objections to the presentence report that will require

5     Rule 32 findings.

6              THE COURT:  Yes.  All right.

7              MR. WAX:  Your Honor, Mr. Sedaghaty would like

8     to make a brief comment to the court before you impose

9     sentence depending on --

10             THE COURT:  That's next.

11             MR. WAX:  Thank you.

12             THE COURT:  Sir, if you would like to stand.

13     Have you read the presentence report --

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  -- Mr. Sedaghaty?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  And have you talked to your lawyers

18     about it?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  If you have a comment or any

21     statement you wish to make about what is in that report

22     or any other matter before I make my findings and impose

23     sentence, now is your opportunity to do so, sir.

24             THE DEFENDANT:  Thank you, Your Honor.  I

25     wanted to thank you for -- on my behalf and my family's

1    behalf to give us a chance to spend the last nine

2    months, it was very meaningful and very valuable to us.

3    Thank you very much.

4              THE COURT:  All right.  Is there anything

5    further?

6              Okay.  Let's go to the particular findings the

7    court must make.  One objection was to the

8    recommendation concerning tax loss.  And I find that the

9    defendant knew that he falsified lines 1, 22 and 57a of

10   the form, and verified the return by written declaration

11   made under penalties of perjury.

12             And I find the tax loss under the calculations

13   submitted in the presentence report are accurate.  And

14   that it is $80,980.

15             With regard to obstruction of justice, and that

16   requested -- or that recommended two-level increase,

17   between September 2003 and October 2003, two false

18   agreements were signed by defendant for the same

19   transaction and given to IRS by legal representation for

20   the al-Haramain Foundation and the defendant in response

21   to a subpoena.  The agreement was material to the

22   investigation because it documented Mr. al-But'he's

23   receipt and transportation of the El-Fiki donation from

24   Ashland to Saudi Arabia, and, therefore, I will impose a

25   two-level increase for obstruction of justice.

1            There is a recommended-by-probation increase

2    for sophisticated or intricate, complex means.  And

3    Mr. Sedaghaty and Mr. al-But'he, I find, engaged in

4    especially complex and intricate conduct when they

5    withdrew the El-Fiki donation from the Bank of America

6    account in Ashland, converted it to 130 traveler's

7    checks, each for $1,000 and one -- and another cashier's

8    check, and transported the checks by plane to a bank in

9    Saudi Arabia, that's Mr. al-But'he, where it would be

10   very difficult for authorities to track and detect the

11   money, and the purpose for which it was used, and,

12   therefore, I impose a two-level increase under specific

13   offense characteristics.

14           Now, the -- I believe the remaining increase

15   sought by the government is for application of a

16   terrorism enhancement.  And there is little doubt in my

17   mind that this money went to Chechnya, and that it went

18   to the mujahideen, but I find there has been a failure

19   to prove the terrorist enhancement because of the --

20   certainly by clear and convincing evidence, which I

21   think is appropriate here under the Ninth Circuit case

22   law, because of the failure to prove a link between the

23   defendant and the money being used for terrorist

24   activities.  There is no doubt the Chechen mujahideen

25   were involved in terrorist activities, but there hasn't

1    been that link proved for this defendant.

2          What other findings do you request for the

3    underlying sentence?

4          MR. CARDANI:  Judge, before Mr. Wax speaks on

5    the tax loss, there is an argument that under the Ninth

6    Circuit law that because the tax loss increases the

7    sentence under the guidelines fairly significantly, that

8    the burden of proof should be clear and convincing

9    evidence.  Does the court so find?

10          THE COURT:  Yes.

11          MR. CARDANI:  I think those were all of the

12    guideline issues, and the others would relate to the

13    Rule 32 matters.

14          THE COURT:  All right.

15          MR. WAX:  One moment, please, Your Honor.

16          THE COURT:  Excuse me, yes.  Go ahead.

17          (Discussion held off the record between Mr. Wax

18    and Mr. Matasar.)

19          MR. WAX:  Your Honor, your ruling on the

20    terrorism enhancement obviates the need for a number of

21    the other specific objections that we --

22          THE COURT:  I'm aware of that.  That's why I

23    didn't bother to rule on them.

24          MR. WAX:  -- have made.  I believe that there

25    are still three or four issues that we had raised on

1    which a ruling would be needed.

2         We had argued that the government should be

3    estopped from raising any claim with respect to tax loss

4    on a number of theories that we articulated in our

5    pleadings and at the hearing in November.

6         THE COURT:  Thank you.  To the extent that was

7    a motion, it's denied.  And what's the second?

8         MR. WAX:  We had objected to the manner in

9    which the presentence report was prepared, and

10   particularly with your reference to the presentence

11   report finding on a tax loss, we believe that that is

12   still germane.

13        As you recall, the presentence writer in the

14   presentence report said that the loss was complex and

15   that -- if I am reading it and understanding it

16   correctly essentially -- it was not something that she

17   understood or could deal with, but nonetheless included

18   a recommendation for the tax loss, and we believe that

19   that is not appropriate under Rule 32.

20        THE COURT:  Thank you.  There was evidence on

21   this at the trial.  Was the $80,000 number given at the

22   trial?

23        MR. CARDANI:  (Nodding head.)

24        THE COURT:  All right.  I'll rely on the

25   evidence before me at the trial.  The objection is

1    overruled.

2         MR. CARDANI:  I might add that the IRS

3    testified at sentencing as well, and repeated that

4    figure, and that there was a form entered at the last

5    sentencing hearing.

6         THE COURT:  But you are correct, Mr. Wax, that

7    it's not appropriate just to rely on what the probation

8    officer said.  She's not a tax expert.  And I heard the

9    other testimony.

10        MR. WAX:  And then there were a number of

11   specific factual objections that we made at the end of

12   our sentencing letter, many of which are obviated

13   because they related to the terrorism issue.  I do not

14   recall whether any of them -- well, yes, one of them did

15   specifically --

16        THE COURT:  If there is one, tell me.  I went

17   over this again in the last couple of hours, and I don't

18   remember any that didn't relate.

19        MR. WAX:  Let me just double check, please, to

20   see whether any of them are still relevant.  May I have

21   a moment with Mr. Matasar, please, Your Honor?

22        THE COURT:  Yes.

23        (Discussion held off the record between Mr. Wax

24   and Mr. Matasar.)

25        MR. WAX:  Your Honor, here is the concern that

```
 1    I have, and I don't want to take up the court's time and
 2    seek rulings that are unnecessary:  While you have ruled
 3    that you will not be applying the terrorism enhancement,
 4    some of the facts in the presentence report could be
 5    relevant if the court is looking at them in terms of
 6    a -- either a place in the advisory guideline range or a
 7    variance from the guideline range.  And such --
 8    paragraph 12, as an example, recites that, you know,
 9    Aqil al-Aqil delegated Mr. al-But'he to establish a
10    presence for AHIF in the United States.  We don't
11    believe there is any evidentiary support for that.
12          If the terrorism enhancement issue in its
13    entirety is out of the case, then I don't believe that
14    rulings are needed on that type of objection in the
15    presentence report.  If, however, you are still
16    considering some of the terrorist aspects of the case
17    for reasons other than the advisory calculation, then I
18    think that it would be necessary to address a number of
19    these specific factual challenges that we raised in our
20    sentencing memorandum.
21          THE COURT:  Well, if I were relying on them,
22    I'd make rulings on them.
23          MR. WAX:  I'm sorry?
24          THE COURT:  If I were relying on them for --
25    concerning the length of this sentence, I would make
```

1    rulings on them.

2            MR. WAX:  Thank you.

3            THE COURT:  Is there anything further?

4            MR. CARDANI:  Judge, just on the money, the

5    repayment of legal fees, that's addressed also in our

6    sentencing --

7            THE COURT:  Let's take that up after this.

8            MR. CARDANI:  Nothing further.

9            THE COURT:  We do have to consider that.  And

10    we'll do that in a moment.

11            All right.  Well, Mr. Sedaghaty, based on these

12    rulings, I find the total offense level here is 18; and

13    the Criminal History Category I for an advisory range of

14    27 to 33 months.

15            I've considered the advisory guideline range

16    and the 3553(a) factors.  I have selected a sentence

17    that addresses the nature and circumstances of the

18    offense, and the defendant's history and

19    characteristics; protection of the public and to afford

20    adequate deterrence to criminal conduct; particularly

21    significant to me here is the obstruction of justice

22    enhancement.

23            As to count 1, the defendant is committed to

24    the Bureau of Prisons for confinement for a period of

25    33 months;

1          As to count 2, the defendant is committed to

2   the Bureau of Prisons for confinement for a period of

3   33 months, to be served concurrently with the sentence

4   imposed in count 1.

5          Upon release, the defendant shall serve a

6   three-year term of supervised release, subject to the

7   standard conditions and the following special

8   conditions:

9          The defendant shall cooperate in the collection

10  of DNA.

11         The defendant shall participate in a mental

12  health treatment program approved by probation.

13         The defendant is prohibited from incurring new

14  credit charges or opening additional lines of credit

15  without approval of probation.

16         The defendant shall authorize release to

17  probation of any and all financial information by

18  execution of a release of financial information form or

19  other appropriate means.

20         The defendant's employment is subject to

21  approval of probation.

22         The defendant shall disclose all assets and

23  liabilities to probation and not transfer or otherwise

24  convey any asset with a fair market value in excess of

25  $500 without approval of probation.

1        The defendant shall have no contact with

2   individuals known to be involved or have been involved

3   in any activities which support terrorist activities or

4   organizations.

5        The defendant shall not participate in any

6   groups or organizations that support terrorist

7   activities.

8        The defendant shall pay restitution to the

9   victim identified in the presentence report in the

10  amount of $80,980.  Any unpaid balance at the time of

11  release from custody shall be paid at the maximum

12  installment possible and not less than $100 per month.

13       The defendant shall pay all taxes due and owing

14  as determined by the Internal Revenue Service.

15       The defendant shall file true and accurate

16  income tax returns to the Internal Revenue Service by

17  the 15th of April each year, and supply a copy of that

18  return to the probation office as directed.

19       The defendant shall submit a true and accurate

20  tax return that he failed to file as determined by

21  Internal Revenue Service.

22       The defendant shall meet with the Internal

23  Revenue Service to determine his legal obligation to

24  file tax returns, pay taxes, and sign any IRS forms

25  deemed necessary by the IRS to enable the IRS to make an

1    immediate assessment of that portion of the tax and

2    interest that he agrees to pay as restitution, including

3    IRS Form 8821, tax information authorization.

4              No fine is ordered due to lack of financial

5    resources and other obligations in this -- other

6    financial obligations through this sentencing.

7              The defendant shall pay a $250 fee assessment,

8    due immediately in full.

9              Sir, you have the right to appeal from this

10   sentence under certain circumstances.  A notice of

11   appeal must be filed within 14 days of entry of

12   judgment.

13             If you are unable to pay the cost of an appeal,

14   you may apply for leave to appeal in forma pauperis.

15   And if you request, the clerk of court will prepare and

16   file a notice of appeal on your behalf.

17             Do you understand, sir?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  All right.  Now, there are other

20   matters that we need to address, including the

21   government's motion with regard to funds that were

22   available to the defendant; whether the government's

23   motion for -- concerning whether the defendant should be

24   incarcerated at this time, that should be granted; and

25   what are the other matters which I need to consider?

1        MR. WAX:  Your Honor, we have been going

2   through the record and have put together a chart which

3   reflects things that we believe need to be made clear in

4   the record.

5        We also have a request for unsealing certain

6   transcripts.  And I don't know that we would be able to

7   complete work on the chart today.

8        Our thought was perhaps we would provide it to

9   the government and the court, and see if we can agree on

10  certain things, and then --

11       THE COURT:  File something if you need to.

12       MR. WAX:  We have it.  We can file it -- well,

13  we'll make sure it gets filed with the Clerk's Office

14  today and we'll provide a copy to the government.

15       But we see that Mr. Slade is here and his input

16  might be needed on some of those issues since many of

17  the matters with respect to the record involve some of

18  the CIPA proceedings.

19       THE COURT:  He's here, but someone from his

20  office today -- I won't say who -- congratulated me

21  today on achieving senior citizenship, so I don't know

22  how I feel about that.  Go ahead.

23       MR. CARDANI:  We'll be happy to meet with

24  Mr. Wax and Mr. Matasar afterwards to see if we can come

25  to an agreement which would obviate the need for the

1  court's ruling.

2  THE COURT:  Now, with regard to the -- there

3  are two affidavits that I had when the defendant sought

4  appointed counsel.  What, if any, basis is there that

5  they be sealed at this time?

6  (Discussion held off the record between Mr. Wax

7  and Mr. Matasar.)

8  MR. WAX:  Your Honor, I did not review those

9  affidavits before the proceeding today.  Our recall of

10  their contents is not complete.

11  As a general proposition, the information which

12  a defendant provides to the court in the counsel process

13  is between the defendant and the court.  The government

14  does not have a specific role in that.

15  If I am recalling correctly, these are

16  affidavits or declarations from counsel?

17  THE COURT:  No, from your -- from counsel, yes,

18  but from your client.

19  MR. WAX:  As well?

20  THE COURT:  Yes.  And there were -- they are

21  affidavits concerning his financial situation, and they

22  differ.  And I don't know how -- at least with regard to

23  one aspect of them -- I can make a decision on it

24  without the government having the opportunity to

25  respond.

1          MR. WAX:  Before we take a position on their

2    unsealing, may I have the opportunity to review them and

3    refresh my recollection as to their contents?

4          THE COURT:  Yes.

5          MR. WAX:  I do not have them with me, so if I

6    can borrow the court's copy?

7          THE COURT:  They are not that long.  Go ahead

8    and hand these to Mr. Wax, please.

9          MR. CARDANI:  Judge, while he's reviewing that,

10   there was a reference in the record to a letter sent by

11   Mr. Wax to the court on November 1, 2007, docketed under

12   seal, also concerning funds.

13         THE COURT:  That's in one of these envelopes.

14         MR. CARDANI:  Okay.

15         THE COURT:  I think it's the same one.  I don't

16   remember the date on the letter, but there is a letter

17   there.

18         (Discussion held off the record between Mr. Wax

19   and Mr. Matasar.)

20         MR. WAX:  Your Honor, upon rereading the

21   affidavits and the letter, it -- I believe that they

22   should remain sealed; that they are not matters that the

23   government either should be or needs to be privy to.

24   They discuss a variety of attorney-client matters.  And

25   information that is contained therein, a --

 1          THE COURT:  Well, they have statements that

 2     conflict each other.  They also have very sketchy sorts

 3     of statements about one aspect of it that certainly I

 4     need to know more about.

 5          How do you suggest I do that without someone --

 6     without a worthy adversary, as they say?

 7          MR. WAX:  Well, Your Honor, as a general

 8     proposition, the assignment of counsel issues are

 9     addressed ex parte and ex parte between the court,

10     defendant and his counsel.  And in the same manner that

11     the court addressed the --

12          THE COURT:  That's true.  I think we're at a

13     different stage at this, aren't we, now?

14          MR. WAX:  Well, Your Honor --

15          THE COURT:  I'm going to give you each a week

16     to submit something on that question.

17          MR. WAX:  Thank you.

18          MR. CARDANI:  Judge, before we leave this

19     issue, we are, obviously, in the dark on most of it, but

20     there does appear to have been close to $59,000 posted

21     as bond for Defendant Sedaghaty's release.  And if

22     that's sufficiently connected to him, it would appear as

23     though that money is available, at the very least, to

24     the repayment of the three-thousand-and-six so long as

25     the government has paid out in excess of that for his

1    defense.

2           THE COURT:  Mr. Cardani, that is unclear from

3    what I have.  But I will not authorize any of that money

4    to be released.  And my other -- my previous order

5    regarding any sums referred to in these sealed documents

6    stands at this point.

7           Now, I do see one other motion, I thought

8    probably needed a ruling.  You had a defense motion to

9    strike Government's Exhibit Number 1 because it included

10   Social Security and Taxpayer Identification Numbers.  I

11   think that motion should be granted, but I'll allow the

12   government to file a copy of those returns that don't

13   have that identifying information.

14          MR. CARDANI:  Excuse me, I think we already

15   dealt with that at the last hearing.

16          THE COURT:  Oh, we have?  Okay.  It was in my

17   file of paper and I didn't know why I missed it before.

18   So thank you very much.

19          MR. CARDANI:  If that motion hasn't been --

20          THE COURT:  I'll file that motion.

21          MR. CARDANI:  Okay.  If that ruling hasn't been

22   reflected in the record, we have no objection to

23   granting it.

24          THE COURT:  All right.  Is there anything at

25   this time besides the motion to remand to custody?

1          MR. WAX:  Well, in addition to that matter,

2    Your Honor, we would request that the court recommend

3    that Mr. Seda be permitted to serve his sentence at the

4    camp at Sheridan.  We believe that given the --

5          THE COURT:  Granted.

6          MR. WAX:  Thank you.

7          MR. MATASAR:  Thank you.  Thank you.

8          THE COURT:  All right.  Is there any more

9    argument on the motion to remand?

10          MR. GORDER:  Your Honor, on behalf of the

11    government, we had prepared at the last hearing, and we

12    never got there, a spreadsheet of entries and exits from

13    various countries in the Middle East that Mr. Sedaghaty,

14    from his passports, U.S. and Iranian, I think we had

15    given a copy to the defense back in November, but I'd

16    submit it at this time for the court.

17          Just as summary, it shows that at least 20

18    occasions between 2003 and 2007 he entered and exited

19    various countries in the Middle East:  Oman, United Arab

20    Emirates, Kingdom of Saudi Arabia, Syria and Iran.

21          And I would also point the court to an exhibit

22    that the defense filed in CR 44 back early in the case,

23    Exhibit G, which was Mr. Sedaghaty's own explanation of

24    where he was during some of that time period.  And it

25    just shows, without a doubt, his abilities to float

1  around the Middle East, all countries of which we do not

2  have extradition treaties with.

3        THE COURT:  Anything further?

4        MR. MATASAR:  Yes, Your Honor.  I'd like to

5  respond first to that.  It's in the memorandum

6  indicating that that issue and other issues were

7  addressed already by the court in deciding to release

8  Mr. Seda previously.

9        THE COURT:  It's a different situation now,

10  though.  He makes a good point.  It doesn't mean I'm

11  going to remand him, but we have a different situation

12  now.

13        MR. MATASAR:  I understand, Your Honor.  We

14  have a different situation.  But the situation is also

15  different because of the fact that Mr. Seda has an

16  appeal.  So I'm looking at this not just as should he be

17  taken into custody immediately, but should he be

18  released pending appeal?

19        And certainly this case -- and now is not the

20  time for me to be trying to convince Your Honor of the

21  incorrectness of your rulings, if you will, but clearly,

22  I think, the court could understand that there are some

23  unusual issues and important issues at stake in this

24  case.  That -- and you know better than we do that we

25  don't know what the appellate court is going to do.  And

 1    because the decision will likely not be until after he

 2    has served his entire sentence, that that is an

 3    important factor for the court to consider.

 4         And, finally, let me address the government's

 5    position.  They have really been wrong every step of the

 6    way.  They said Mr. Seda was a flight risk before Judge

 7    Coffin, and he was released.  They said he was a flight

 8    risk before you.  They said he would not come here

 9    today.  They said, in their motion, that he has lost

10    hope, there is no reason for him to have any hope, and

11    he continues to appear, he continues to prove them

12    wrong, and to justify the trust that Your Honor and

13    Judge Coffin gave in him.  He's going to appear.

14         Between his empirical data that we have that he

15    always comes to court, that he stays in touch with his

16    lawyers, which is a fact.  And the Pretrial Services, I

17    believe they have recommended that he be allowed to

18    voluntarily surrender.  Is that accurate?  I believe --

19         THE COURT:  I've got the report here, but I'm

20    going to decide that.

21         MR. MATASAR:  I understand that.  But just as

22    they made a recommendation pretrial, they make a

23    recommendation here.  I'm not suggesting that it's their

24    decision.  I know it's Your Honor's decision.  But here

25    we have the empirical fact that he has always come, and

1  so we'd ask the court to allow him to be out of custody

2  pending the appeal.

3          THE COURT:  All right.  Well, there is two

4  matters there.  One is if you're requesting pending

5  appeal or if I give him a reporting date.  And I -- if I

6  do not -- if I allow his release but not pending appeal,

7  how long do you wish for him to report?

8          MR. MATASAR:  Your Honor, I think if -- Mr. Wax

9  informs me that 60 days should be an appropriate time

10  for designation.

11         THE COURT:  It takes that long, at least.

12         All right.  Sir, I want you to understand this,

13  this is between you and me.

14         THE DEFENDANT:  Yes.

15         THE COURT:  Not the lawyers.  So far, you have

16  done what you've told me you'd do.  And I'm going to

17  deny the motion to remand because of that.  But don't do

18  something to break my confidence in that regard.

19         So I'm going to leave you on your current

20  release conditions.  But if I hear something even

21  slightly adverse to that, I'll end that state of

22  affairs.  Do you understand me?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  So the motion is denied.  I'll

25  allow 60 days to self report.

 1          What else do we have this morning -- or this

 2    afternoon, folks?  Thank you very much.  We're in

 3    recess.

 4          MR. WAX:  Excuse me, Your Honor, we would ask

 5    that you withhold entry of the judgment until we've had

 6    an opportunity to work on the issues with respect to the

 7    record.  If you enter the judgment, then --

 8          THE COURT:  Any objection?

 9          MR. CARDANI:  No.

10          THE COURT:  Thank you.  I'll do it.

11          MR. WAX:  We'll let the court know when we're

12    further along with that.  Thank you.

13          THE COURT:  That's fine.

14          (The proceedings were concluded at 2:14 p.m.)

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

     I, Deborah Wilhelm, Certified Shorthand Reporter

for the State of Oregon, do hereby certify that I was

present at and reported in machine shorthand the oral

proceedings had in the above-entitled matter.  I hereby

certify that the foregoing is a true and correct

transcript, to the best of my skill and ability, dated

this 5th day of October, 2011.




                                 /s/ Deborah Wilhelm
                                 _____
                                 Deborah Wilhelm, RPR
                                 Certified Shorthand Reporter
                                 Certificate No. 00-0363