DWIGHT C. HOLTON, OSB #09054
United States Attorney
District of Oregon
**CHRISTOPHER L. CARDANI**
Assistant United States Attorney
chris.cardani@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, OR 97401
Telephone: (541) 465-6771
Facsimile: (541) 465-6316
**CHARLES F. GORDER, JR.**, OSB #91287
**KELLY A. ZUSMAN**, OSB #89184
Assistant United States Attorneys
charles.gorder@usdoj.gov
kelly.zusman@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204
Telephone: (503) 727-1000
Facsimile: (503) 727-1117
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 05-cr-60008-02-HO |
| v. | |
| **PIROUZ SEDAGHATY,** | **DECLARATION OF CHARLES F. GORDER, JR. REGARDING MOTION TO COMPLETE THE RECORD** |
| Defendant. | |

I, Charles F. Gorder, Jr., hereby declare and state the following:

1.     I am an Assistant United States Attorney (AUSA) for the District of Oregon. I function as the Anti-Terrorism Coordinator as well as the International Affairs and National Security Coordinator for the District of Oregon. I am assigned to the Terrorism Unit of the Criminal Division

and since September 2001 have worked almost exclusively on matters relating to international terrorism and national security.

2.  I submit this declaration in response to the October 5, 2011, filing in the matter of *United States v. Sedaghaty* of the Declaration of Chief Deputy Federal Public Defender Stephen R. Sady (hereafter the "Sady Declaration"), ECF No. 587, in order to clarify the events described in paragraphs 6-9 of that declaration. In particular, based upon recent conversation with defense counsel who expressed a contrary view, I wish to clarify that the agreement with "the government" referenced in paragraph 7 of the Sady Declaration was an agreement between the defense and the Sedaghaty prosecution team that the prosecution team would not examine the material provided by Mr. Sady to the Court Security Officer absent their consent.

3.  I was assigned to assist AUSA Christopher Cardani in the prosecution of the *Sedaghaty* case after the defendant returned to the United States in August 2007. Initially, my role was to help AUSA Cardani in handling any classified matters arising in the prosecution. My role expanded over time into acting as co-counsel in the trial of the matter.

4.  On the afternoon of January 10, 2008, I was working at the local office of the Federal Bureau of Investigation (FBI) when I received a message that Stephen Sady of the Federal Defender's Office needed to talk to me as soon as possible. I called Mr. Sady at his office. He told me that he needed to see me about something that the Federal Defender's Office was "not supposed have" but would not describe the matter further except that to say that it related to the *Sedaghaty* case. I agreed to meet him at the U.S. Attorney's Office later that afternoon.

5.  Later that afternoon, I met with Mr. Sady and William Teesdale (an investigator for the Federal Defender's Office). I was accompanied by Steve Borgen, a Regional Security Specialist

**Declaration of Charles F. Gorder, Jr. Regarding Motion to Complete the Record     Page 2**

for the Department of Justice whose office was located at the U.S. Attorney's Office in Portland at the time. Mr. Borgen was not a court security officer, but was an individual schooled in the proper handling of classified material. I understand that he had been contacted by Erin Hogarty, the Court Security Officer appointed to this case at the time, and had been requested to assist her in this matter.

6. Mr. Sady advised that his office had come into possession of material which they believed to be classified at the Top Secret level and asked our assistance in temporarily storing it because they did not have the facilities to do so. I inquired what the nature of the material was, but Mr. Sady refused to describe it further, including rebuffing my inquiries as to whether it was a paper document, a computer disk or CD, or in some other kind of medium, except to confirm that it could fit into courier bag. I asked him why he thought that the material was classified as Top Secret but his only response was that he was certain that it was so classified.

7. In January 2008, the U.S. Attorney's Office in Portland, Oregon did not have the facilities to store Top Secret information in our office. Mr. Borgen apparently had already been in touch with a security person at the local FBI, and the FBI had agreed to temporarily store this material for the Court Security Officer. The parties agreed that Mr. Borgen would go over to the Federal Defender's Office and pick up a courier bag containing the material and take it to the local FBI for appropriate storage. At Mr. Sady's request, I agreed that he and his client would receive "act of production immunity" for producing the material, that is, the fact that they had produced this material to the Court would not be used against them in a criminal prosecution. I also agreed that our prosecution team, by which I mean the AUSAs and investigative agents (Special Agents David Carroll and Colleen Anderson) on the *Sedagahty* case, would not examine the material absent their consent. I did not agree, nor did I have the authority to agree, that no other employee of the United

**Declaration of Charles F. Gorder, Jr. Regarding Motion to Complete the Record     Page 3**

States would not examine the material. I commented that Mr. Sady had done the right thing in arranging to store this material properly. I also commented that I would not be surprised if he did not have the FBI knocking on his door in the next couple of days regarding the material.

8. At a subsequent date, I learned that this material had been taken to Washington, D.C., and turned over to the custody of the Court Security Officer. I did not know that this material was returned to defense counsel on January 28, 2008, and transported by him to Washington, D.C. on that date, presumably to be delivered to the Court Security Officer, until I read that information in paragraph 9 of the Sady Declaration.

9. The government fully complied with the agreement I made with Mr. Sady on January 10, 2008. We arranged to have the material provided by the defense stored properly if it were indeed material classified as Top Secret, and the material was returned to the defense and ultimately delivered to the Court's Security Officer. I have never had access to this material and to this day do not have any personal knowledge as to the contents of this material or what happened to it after it got to Washington, D.C. Within the past 24 hours, I have contacted AUSA Cardani and Special Agents Carroll and Anderson and confirmed that none of them have ever had any access to or knowledge about the contents of or any examination by anyone of this material.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 7, 2011.

/s/ *Charles F. Gorder, Jr.*
CHARLES F. GORDER, JR.
Assistant United States Attorney
District of Oregon

**Declaration of Charles F. Gorder, Jr. Regarding Motion to Complete the Record    Page 4**