S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
CHRISTOPHER L. CARDANI
Assistant United States Attorney
405 East Eighth Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771
chris.cardani@usdoj.gov
CHARLES F. GORDER, JR., OSB# 912874
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1117
charles.gorder@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  CR 05-60008-HO |
| | ) | |
| v. | ) | GOVERNMENT'S MEMORANDUM IN |
| | ) | SUPPORT OF ATTORNEY FEE |
| PIROUZ SEDAGHATY, | ) | REIMBURSEMENT UNDER |
| | ) | 18 U.S.C. §3006A(f) |
| | ) | |
| | ) | |
| Defendant. | ) | |

In a minute order dated October 21, 2011 (CR 593) this Court unsealed two of the documents submitted by defendant relating to appointment of counsel.  The Court also requested simultaneous briefing from the parties on whether defendant should be ordered to reimburse a portion of the taxpayer funds used to represent him.  The following is the government's memorandum addressing the subject.  As will be established, the information currently available supports a partial reimbursement order.

1 - Government's Memorandum In Support of Attorney Fee Reimbursement Under 18 U.S.C. §3006A(f)

The Court may wish to request additional information from others in deciding whether to order additional reimbursement.

## Background

Pages 21-23 of the government's sentencing memorandum (CR 496) provides relevant legal background. To support a reimbursement order, the Court needs to make two findings. First, the Court must determine the rough amount of taxpayer funds expended on behalf of defendant. Here, the Court could require the Federal Defender's Office to produce its internal records, accounting for the amount of attorney time, research time, expert witness fees, travel, and related expenditures devoted to representing defendant. Since defendant was represented by the Federal Defender's Office as well as a private attorney appointed under the Criminal Justice Act, that accounting should include a summary of the vouchers submitted by private counsel. If any such materials contain information protected by the attorney-client privilege, defendant could provide them to the Court under seal or in a redacted form.

Second, the Court must determine whether defendant has the "present ability" to pay all or a portion of those costs. If so, reimbursement is appropriate pursuant to 18 U.S.C. §3006A(f). United States v. Danielson, 325 F.3d 1054, 1076-77 (9th Cir. 2003).

## Discussion

The Court unsealed the two financial affidavits submitted pretrial by defendant (CR 26 and 90). It did not unseal letters to the Court from defense counsel, which presumably explain some of the entries in the affidavits, nor did it release documents supporting the posting of a cash bond in the amount of $58,981.00 to secure

defendant's release from pretrial custody. Accordingly, the government did its best to determine whether the accessible but limited information indicates the availability of funds for reimbursement.

### Cash on Hand and Property

In her attached declaration (the "Anderson Declaration"), Special Agent Anderson addresses the assets listed in defendant's financial affidavits. In the first affidavit (CR 26) defendant refers to approximately $5,000 in cash on hand, and about $45,000 worth of assets tied to unimproved land, vehicles, machines and equipment. The government has insufficient information to verify defendant's cash on hand or defendant's ownership in assets or property currently available to him for reimbursement. (Anderson Declaration ¶¶4, 5 & 13).

### Funds in Lawyers' Client Trust Accounts

In "Note 4" to his second financial affidavit (CR 60) defendant Sedaghaty references funds in three lawyers' trust accounts. SA Anderson attempted to determine whether there currently exists funds in any of these accounts that could be the basis of a reimbursement order. (Anderson Declaration ¶¶6 & 7).

1. Attorney Matasar Account

Defendant Sedaghaty states in Note 4 that as of August 2007 it was his understanding there was $19,235 in attorney Matasar's client trust account, and that Sedaghaty "can use the $19,235 in Larry Matasar's account for personal expenses including legal fees and bail." (CR 60 at Note 4). Attorney Matasar has informed SA Anderson that these funds were transferred to the Clerk's Office as part of the $58,981

3 - Government's Memorandum In Support of Attorney Fee Reimbursement Under 18 U.S.C. §3006A(f)

used to secure defendant's appearance bond.  (CR 68; Anderson Declaration ¶9).

The prosecution has not been given definitive access to a list of funds that comprise the $58,981 posted for defendant's bond, but if the $19,235 was transferred from attorney Matasar's trust account to the Court, then it would appear that these funds are currently available for reimbursement of legal fees consistent with 18 U.S.C. §3006A(f).  Once the appearance bond is satisfied, presumably by defendant surrendering himself to the Bureau of Prisons to serve the remainder of his sentence, those funds should be ordered transferred from the Clerk of Court to the U.S. Department of Treasury.  This would require a finding by the Court that defendant's legal expenses exceeded $19,235.

2.  Attorney Berger Account

In his August 2007 financial affidavit defendant Sedaghaty stated that he was told that there was $15,000 in "David Berger's Trust Account," but that it was unclear to him whether he could access the funds or direct their expenditure.  (CR 60, Note 4).

SA Anderson determined that in October 2002, defendant Sedaghaty issued Attorney Berger a $50,000 check for attorney fees.  (Anderson Declaration ¶8).  These funds came out of the Al-Haramain (U.S.) account at the Bank of America in Ashland, Oregon.  SA Anderson tried to trace these funds by recently speaking to attorney Berger.  Berger told SA Anderson that he no longer had client trust funds for defendant and that none of the Al-Haramain funds were used for defendant's appearance bond. On advice of counsel, attorney Berger would not provide additional information. (Anderson Declaration ¶8).

4 - Government's Memorandum In Support of Attorney Fee Reimbursement Under 18 U.S.C. §3006A(f)

There is presently insufficient information to determine whether there are funds currently available to defendant concerning the Berger funds. Given attorney Berger's reluctance to provide additional information, and the fact that defendant Sedaghaty transferred $50,000 of Al-Haramain funds to him shortly before leaving the United States during the criminal investigation, this Court may wish to require attorney Berger to provide an accounting of the $50,000, or any other funds emanating from defendant or entities he controlled (such as Al-Haramain or the Qu'ran Foundation), to assist in the reimbursement determination.

3.  The Bernabei Account

In his August 2007 financial affidavit defendant Sedaghaty stated that he was told there was "approximately $23,000 in Ms. Bernebei's account in 2004," but that it was "Qur'an Foundation" money which he believed was unavailable for personal expenses, legal fees or bail. (CR 60, Note 4).

In December 2002 defendant Sedaghaty transferred $15,000 of Al-Haramain funds to attorney Bernabei. (Anderson Declaration ¶10). SA Anderson recently spoke to Attorney Bernabei, and was told that the Al-Haramain funds were no longer available, but that she currently has funds in a client trust account in the name of the Qu'ran Foundation. Citing the attorney-client privilege, attorney Bernabei would not provide SA Anderson with additional details. (Anderson Declaration ¶10).

Defendant Sedaghaty in 1996 registered the Qu'ran Foundation in Oregon, but it was administratively dissolved in November 2004. Federal law permits a dissolved entity's assets to be distributed in a manner consistent with 26 C.F.R. §1.501(c)(3)-

5 - Government's Memorandum In Support of Attorney Fee Reimbursement Under 18 U.S.C. §3006A(f)

1(b)(4).  (Anderson Declaration ¶¶11-12).

Given the uncertainty concerning Al-Haramain and Qu'ran Foundation funds sent to attorney Bernabei, and the fact that defendant Sedaghaty transferred $15,000 of Al-Haramain funds to her, this Court may wish to request that she submit an accounting of all such funds to the Court, for possible distribution or reimbursement.

The Cash Bond

Assuming the Matasar funds were part of the funds used to help satisfy the $58,981 cash portion of defendant's appearance bond, there remains a balance of $39,746.  Attorney Thomas Nelson - who represents the fugitive co-defendant Soliman Al-But'he - apparently used his own money to satisfy the remainder of defendant Sedaghaty's appearance bond.  The government has been advised that attorney Nelson submitted a declaration with this Court as part of the posting of the cash bond, setting forth the circumstances surrounding the origination of those funds.[1]  The government has not been given access to Nelson's sealed declaration and is thus unable to advise the Court whether any of these funds are available for reimbursement. (Anderson Declaration ¶15).  To the extent that attorney Nelson used his own money to help secure defendant Sedaghaty's release, it would appear that once defendant surrenders to serve his prison sentence, attorney Nelson should receive his money back.  *United States v. Bracewell*, 569 F.2d 1194, 1200 (2d Cir. 1978) (funds paid on a defendant's behalf belonging to third party not "available" for reimbursement under 18

---

[1]Attorney Nelson advised government counsel that he submitted a declaration to this Court, but was reluctant to provide it since it is sealed.

6 - Government's Memorandum In Support of Attorney Fee Reimbursement Under 18 U.S.C. §3006A(f)

U.S.C. §3006A(f)).

## Conclusion

This Court must first determine the rough amount of taxpayer funds used to represent defendant Sedaghaty. Once defendant surrenders to serve his prison sentence, $19,235 of the appearance bond should be ordered reimbursed to the United States Department of Treasury.

While defendant urges this Court not to even entertain argument from the government on the issue of reimbursement, the fact remains that this Court serves as the steward of CJA funds under 18 U.S.C. §3006A. In fulfilling its obligation to ensure that such public funds are used properly, it is appropriate for this Court to make a limited inquiry into the various client trust funds opened either by defendant or by others on his behalf to determine if there are additional funds currently available for reimbursement.

DATED this 4th day of November, 2011.

                                       Respectfully submitted,
                                       S. AMANDA MARSHALL
                                       United States Attorney

                                       */s/ Christopher L. Cardani*
                                       By: _____
                                       CHRISTOPHER L. CARDANI
                                       Assistant United States Attorney

                                       */s/ Charles F. Gorder, Jr.*
                                       By: _____
                                       CHARLES F. GORDER, JR.
                                       Assistant United States Attorney