# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

In re:    United States v. Pirouz Sedaghaty

I, Colleen Anderson, state that:

1.      I am a Special Agent (S/A) with the Internal Revenue Service - Criminal Investigation (IRS-CI), assigned to the Medford, Oregon Post-of-Duty.  As a special agent, I investigate possible violations of the Internal Revenue Code (Title 26 United States Code), the Money Laundering Control Act (Title 18 United States Code), and the Bank Secrecy Act (Title 31 United States Code).

2.      I have been a special agent with IRS-CI since December 1995 and have conducted and assisted in numerous criminal investigations involving violations of federal tax laws, money laundering laws, and other related offenses where I have gained experience in locating, tracing, and corroborating financial information pertaining to the receipt and disposition of funds.

3.      This declaration addresses my review of the financial affidavit and attached notes filed by the defendant Pirouz Sedaghaty in CR26 and CR60 dated August 2007 and October 2007 (attachments 1 & 2).  In addition, this declaration addresses the information obtained by the government pertaining to the source of funds used to secure the release of the defendant in November of 2007 as reflected in CR67 (attachment 3).  My review of the financial information however was limited because I was not given access to any correspondence or sealed declarations filed by defendant's counsel and co-defendants counsel, Thomas Nelson, which relate to the appointment of counsel and the posting of defendant's cash bond.

CR26 and CR60

4.      Page 1 of the financial affidavits submitted by the defendant in both CR26 and CR60 shows the defendant estimates under "cash", in the asset section, that he has approximately $5,000 in savings or checking accounts or cash on hand.  The defendant in CR60 then references Note 3 and Note 4 as pertaining to the aforementioned cash disclosure.

5.      Note 3 to CR60 shows the defendant claimed that the estimated $5,000 in funds came from both US and foreign bank accounts, in which he provided information pertaining to these accounts to Pre-Trial Services.  I have found no information pertaining to the bank accounts referenced in note 3, as the government was not provided this information and the defendant did not disclose the existence of foreign bank accounts on his recently filed Forms 1040 for tax years 2008 and 2009.  Accordingly, I have insufficient information to determine the defendant's cash on hand.

6.      Note 4 to CR60 shows the defendant claimed that in August of 2007 he estimated that there were funds in three lawyers' trust accounts totaling approximately $57,235. Specifically, the defendant estimated that $15,000 was in a trust account with Attorney David Berger, $19,235 was in a trust account with Attorney Larry Matasar, and approximately $23,000 was in a trust account with Attorney Lynne Bernabei.

7.      Upon request of the USAO, I recently contacted Attorneys David Berger, Larry Matasar, and Lynne Bernabei to inquire as to the funds reportedly held in their client trust accounts.  The attorneys were questioned about funds not only associated with the defendant, but also about funds associated with entities that the defendant had previously had a controlling interest in.

8.      Al Haramain (US) bank records reflect that on October 18, 2002, defendant Pirouz Sedaghaty issued a $50,000 check to Attorney David Berger of Ashland, Oregon. The memo section of this check indicates that this money was for a client trust account (attachment 4). This transaction occurred approximately three months before defendant Sedaghaty left the United States during our criminal investigation of him. I asked Attorney Berger about these funds, he told me that he reviewed his records and there were no longer any funds in a client trust account for defendant Sedaghaty. I asked Attorney Berger whether any of these funds were returned to defendant Sedaghaty or used for his bail. Based on records that were available to him, Attorney Berger said no. Attorney Berger was reluctant to provide me any more information based on advice of counsel.

9.      Attorney Larry Matasar stated that he received the $19,235 that defendant Sedaghaty reported in note 4 from another attorney in 2004, but declined to give me the attorney's name. Although Attorney Matasar was not sure what the source of the funds were, he believed that the funds were supposed to be defendant Sedaghaty's money. Attorney Matasar told me that the $19,235 previously held in the defendant's client trust account was used as part of the funds posted for defendant Sedaghaty's cash bond.

10.     Al Haramain (US) bank records reflect that on December 17, 2002 defendant Sedaghaty issued a $15,000 check to Bernabei and Katz, LLC of Washington D.C. (attachment 5). This transaction occurred approximately two months before defendant Sedaghaty departed the United States. I recently spoke to Attorney Lynne Bernabei. She told me that she didn't recall setting up a trust account for Al-Haramain, but if she did, the money is gone because no funds remained at the time of Al-Haramain's designation as a Specially Designated Global Terrorist organization. Attorney Bernabei also told me that she does presently hold funds in a client trust account in the name of the Quran Foundation. Attorney Bernabei indicated that none of those funds were used for defendant Sedaghaty's cash bond. Attorney Bernabei provided no additional information because she claimed it was within the attorney-client privilege.

11.     Oregon Secretary of State Corporation Division records show that the Qur'an Foundation, initially registered by the defendant as P.Sada Ghaty in 1996, has been inactive since November 5, 2004 due to an administrative dissolution (attachment 6).  IRS regulations, Reg.1.501(c)(3)-1(b)(4) provides in part that an organization's assets will be considered dedicated to an exempt purpose, if upon dissolution such assets would be distributed for one or more exempt purposes, or to the Federal government, or to a State or local government, for a public purpose, or would be distributed by a court to another organization to be used in such manner as in the judgment of the court will best accomplish the general purposes for which the dissolved organization was organized.

12.     As Attorney Bernabei confirmed that she still has a trust account for the Quran Foundation, it appears the remaining assets of the Quran Foundation, a former entity created and likely controlled by the defendant, has not yet been appropriately distributed for an exempt purpose.

13.     The remaining asset section of page 1 of the financial affidavits submitted by the defendant in CR26 and CR60 shows the defendant estimates that he has approximately $45,000 in assets tied to unimproved land, vehicles, and arborist machines and equipment.  I have not been provided with sufficient information to confirm the availability of these assets for reimbursement of legal fees.

<u>CR67</u>

14.     As reflected above, the only source of funds that could be established by the government to secure the release of the defendant in November of 2007 came from Attorney Larry Matasar's client trust account.  Attorney Matasar confirmed that the $19,235 held in his client trust account for the defendant was used for the defendant Sedaghaty's cash bond.

15.     Court records indicate in CR 67 that $58,981 was posted to the Clerk's Office on behalf of defendant Sedaghaty for bail to secure his release.  It is my understanding that Attorney Thomas Nelson provided the court with a declaration concerning the additional funds used to satisfy the remaining $39,746.  Since that document remains under seal, I do not have enough information to determine whether any of these funds are available for reimbursement of defendant's legal fees in this case.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on November 4, 2011.

*Colleen Anderson*

Colleen Anderson
Special Agent, IRS-CI