S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
CHRISTOPHER L. CARDANI
Assistant United States Attorney
405 East Eighth Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771
chris.cardani@usdoj.gov
CHARLES F. GORDER, JR., OSB# 912874
Assistant United states Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1117
charles.gorder@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  05-CR-60008-HO |
| | ) | |
| v. | ) | |
| | ) | GOVERNMENT'S OPPOSITION TO |
| | ) | DEFENDANT'S REQUEST |
| PIROUZ SEDAGHATY, | ) | FOR RELEASE PENDING |
| | ) | APPEAL |
| Defendant. | ) | |

## I.  Introduction

The United States of America, through its undersigned counsel, herein opposes

defendant's release pending appeal.

Page 1 - Government's Opposition to Defendant's Request for Release Pending Appeal

**Background**

On September 9, 2010, after receiving the jury's verdicts of guilty, this Court

granted the government's motion to remand defendant pending sentencing on the

grounds that he could not establish by clear and convincing evidence that he was not

likely to flee, as is required by 18 U.S.C. §3143(a).  The Court presided over a hearing

on November 23, 2010 on defendant's motions for a new trial and judgment of acquittal,

and a related sentencing hearing.  While a decision was pending, the undersigned in

December 2010 brought to the attention of the Court and defense counsel the discovery

of certain material which should have been turned over to the defense in pretrial

discovery.  Defendant then filed a supplemental motion for new trial (CR 517) and a

post-trial motion to dismiss the indictment (CR 538).

On January 19, 2011, this Court released the defendant on conditions.  At that

time, the government took no position on release "during the interim period - post trial,

but before a final ruling on the pending motions and an anticipated appeal ..." (CR 522,

p.2.).  The government also noted that "our view that [defendant] presents a risk of flight

is unchanged...."  *Id.*

This Court presided over an evidentiary hearing on the new motions (CR 563)

and, in a written ruling dated August 10, 2011, denied all of defendant's post-trial

motions.  (CR 570).  The government filed a motion to remand defendant.  (CR 572).

Defendant responded.  (CR 573).

Sentencing occurred on September 27, 2011.  This Court sentenced defendant

to 33 months in prison.  Defendant moved for voluntary surrender.  During the Court's

discussion with the parties about that motion and a possible voluntary surrender date,

defendant told the Court that he intended to file an appeal.  While defendant asked the

Court to consider releasing him pending that anticipated appeal (CR 588 (Sent. Tr.) at

21), this Court never ruled on that oral request.  Instead, the Court denied the

government's motion to remand, and ordered defendant to self-report in 60 days.  (CR

588 at 23).

After the sentencing hearing, the parties worked to ensure that the record was

complete, and the court issued an amended judgment to reflect its recommendation that

defendant serve his sentence at the camp at FCI Sheridan.  The Court extended

defendant's reporting date to January 23, 2012 in the Amended Judgment and

Conviction Order.  (CR 603).  Defendant filed a timely notice of appeal on December 1,

2011.

Rather than moving for release pending appeal before this Court, defendant filed

a motion directly with the Ninth Circuit.  The government opposed, arguing that the law

requires him to initially present the request before this Court.  The Ninth Circuit agreed,

and remanded to this Court "for the limited purpose of enabling [this] court to state,

orally or in writing, the reasons for its order denying appellant's motion for bail pending

appeal."[1]  Simultaneous briefing sets forth the parties' position on remand.

---

[1]Defendant contends that from the wording of its order, it appears that the Ninth
Circuit assumed this Court had already denied his oral request for release pending
appeal.  The undersigned believe that, although a reporting date for defendant was set,
this Court has not yet ruled on defendant's request for release pending appeal.
However, if this Court accepts defendant's argument that it did actually deny release
pending appeal, then the government requests that the Court issue findings of fact and
conclusions of law supporting the denial, as further outlined in this response.

## II.  Argument

### The Law

Now that defendant has been convicted and sentenced to a term of imprisonment, the legal standard for release is governed by 18 U.S.C. §3143(b), which provides that a defendant shall be detained pending appeal unless the court finds:

(1)      that the defendant is not likely to flee or pose a danger to the safety of any other person in the community if released;

(2)      that the appeal is not for the purpose of delay;

(3)      that the appeal raises a substantial question of law or fact; and

(4)      that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than time already served plus the expected duration of the appeal process.

Defendant bears the burden of showing by clear and convincing evidence that he is not a flight risk.  *See* 18 U.S.C. §3143(b);  *United States v. Reynolds*, 956 F.2d 192, 192-93 (9th Cir. 1992) (defendant bears burden of proving he is not a flight risk or danger).  On the third and fourth factors, release pending appeal is to be denied unless a defendant demonstrates the existence of a substantial, or fairly debatable or fairly doubtful, question of the type that likely will result in reversal or a new trial. *United States v. Montoya*, 908 F.2d 450, 451 (9th Cir. 1990); *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985).

**Defendant is a Flight Risk**

After the verdict, this Court properly concluded that defendant posed a risk of flight, and remanded him into custody on that basis. He was released pending the outcome of the post-trial motions. Although he did not flee during that time period, he nevertheless poses the same risk of flight now that warranted his detention after the verdict.

The following facts demonstrate that defendant Sedaghaty cannot meet his burden of showing he is not a risk of flight:

• Sedaghaty is dual citizen of the United States and Iran. Should he flee to Iran he cannot be extradited to the United States. Although he previously was required to surrender both his Iranian and U.S. passports, as a citizen of Iran, he could go to any Iranian embassy or consulate and obtain a new Iranian passport.[2]

• In 2003, during the criminal investigation of Al-Haramain, defendant Sedaghaty left the United States. With no known means of support, he lived and traveled throughout the Middle East, including Iran, Saudi Arabia, Syria, Oman, and the United Arab Emirates. He was indicted in 2005 and, knowing of that indictment, remained outside the jurisdiction of the United States, choosing not to surrender to the arrest warrant until August 2007. The United States has no extradition treaties with any of the

---

[2]Four years ago another dual U.S.-Iranian citizen presently charged with felony crimes in this District, Farhad "Fred" Monem, did just that and fled Oregon to avoid justice, despite the fact the government was in possession of his existing U.S. passport. That prosecution is pending to this day, and defendant Monem is likely in Iran. *See United States v. Monem*, CR 07-60093-AA. The point sought to be made is that defendants on occasion really do flee the jurisdiction of the United States and, when done, we cannot get them back when they seek safe harbor in countries like Iran, with which we have no extradition treaty.

five countries listed above.  The co-defendant, Soliman Al-But'he, remains an international fugitive.

• An exhibit provided to the Court at sentencing, attached hereto as Exhibit 1, is a summary of defendant Sedaghaty's known and extensive travels during his deliberate absence from the United States throughout the investigation and his time as an international fugitive.  It is derived from the multiple passports he had in his possession when he was arrested in August 2007.  It is largely unknown what defendant Sedaghaty did during his time in the Middle East; how he supported himself, who he associated with, and why he traveled amongst the various countries.  There is no reason to believe that he could not rely on whatever support network he accessed from 2003 through 2007 to support a second flight from justice from the United States.

• During his time in the Middle East, defendant Sedaghaty had foreign bank accounts.  In a financial affidavit he submitted to the Court in support of his claim of indigency, recently provided to the government because it contained discrepancies from another one he filed, defendant Sedaghaty acknowledged in 2007 that he had foreign bank accounts.  (CR 90).  While the acknowledged balances were apparently not very high (between $200 - $500 according to defendant), access to foreign bank accounts demonstrates that, should he again flee, defendant Sedaghaty has an ability to access financial institutions overseas.

• Now that defendant's post-trial motions have been denied, and he has been sentenced to serve 33 months in prison, he has a heightened incentive to flee.

In sum, defendant Sedaghaty, who has already made himself an international fugitive in this case, is unable to provide clear and convincing evidence that he is not a

Page 6 - Government's Opposition to Defendant's Request for Release Pending Appeal

risk of flight.  Considering his international travels and acumen, and dual citizenship in

Iran, this Court should deny his request to remain out of custody during the pendency of

his appeal.

**Issues to be Raised on Appeal**

In his premature motion before the Ninth Circuit, defendant has previewed the

appellate issues he thinks are most prominent.  Those issues are discussed in the order

defendant presented them in his motion.

1)     The Cabral Issue  - Defendant first raises the post-trial discovery matter,

arguing that a new trial should have been granted.  He asserts the government failed to

provide information that Barbara Cabral, supposedly a significant government witness,

was "offered a payment before trial to be made after trial," and that the non-testifying

and deceased Richard Cabral had been paid by the FBI.

The government provided a detailed and exhaustive post-trial accounting of the

matter relating to witness Barbara Cabral.  This Court considered all of the evidence

and presided over an adversarial hearing on the matter.  In its detailed written ruling,

this Court concluded that Cabral's testimony "did not have a reasonable probability of

affecting the jury's verdicts on tax fraud or conspiracy to commit tax fraud" and thus "the

defense was not prejudiced by the suppression of the evidence regarding the

Cabral's..."  (CR 477 at 14-22).  This Court, accordingly, denied defendant's motion for

a new trial.

To obtain a new trial based on newly discovered evidence, a defendant must

meet a strict standard, showing that the newly discovered is material and that a new trial

would probably result in an acquittal.  *United States v. Kulczk*, 931 F.2d 542, 548 (9th

Page 7 - Government's Opposition to Defendant's Request for Release Pending Appeal

Cir. 1991).  Evidence is material for *Brady* purposes if there is a reasonable probability it would have altered the outcome of the trial.  *United States v. Bagley*, 473 U.S. 667, 682 (1985).[3]  A court should only grant a new trial in "exceptional circumstances in which the evidence weighs heavily against the verdict."  *United States v. Chen*, 754 F.2d 817, 821 (9th Cir. 1985).  A district court's denial of a new trial motion is reviewed for abuse of discretion.  *United States v. Harrington,* 410 F.3d 598, 601 (9th Cir.2005).  Under these standards, this Court's findings on the Cabral matter are unlikely to be disturbed on appeal.

2)      The May 16, 2008 Order Regarding the Sealed Document  -  Defendant next complains of this Court's May 16, 2008 order (CR 103) that the defense not be permitted to discuss the contents of a sealed document in the possession of a court security officer.

As this Court knows, undersigned government counsel and the case agents have never been privy to this document.  What is known, though, is that after unsuccessfully trying to convince this Court to modify this order on several occasions, defendant filed a petition for mandamus before the Ninth Circuit.  The Ninth Circuit denied the petition, holding that disagreement with the order could be raised in the ordinary course of a direct appeal after final judgment.  *In re Pirouz Sedaghaty*, No. 09-73924 (9th Cir. May

---

[3]As stated recently by the Ninth Circuit, "when looking to materiality, the question is 'whether admission of the suppressed evidence would have created a reasonable probability of a different result,' so the defendant 'must show only that the government's evidentiary suppression undermines confidence in the outcome of the trial.'" *United States v. Stinson*, 647 F.3d 1196, 1208 (9th Cir. 2011), *quoting United States v. Jernigan*, 492 F.3d 1050, 1053–54 (9th Cir.2007) (en banc).

12, 2010).  Defendant's motion for reconsideration was likewise denied by the Ninth

Circuit.

Defendant will raise this issue on appeal.  While the context of the Ninth Circuit's

review will be different on direct appeal, it is clear from the mandamus ruling that the

appellate court was not sufficiently disturbed by this Court's order so as to reverse it.  In

addition, if this Court is aware of the contents of the sealed document, it can

independently assess its likely import on appeal.  In light of the fact that the prosecution

team was not aware of its contents, however, it is difficult to imagine how the trial in this

case was negatively affected by the Court's May 16, 2008 order.

3)   Appeals to Prejudice  -  Defendant next asserts that he was denied a fair

trial because of the evidence and arguments relating to radical Islam, the Qur'an,

Osama bin Laden, the *mujahideen*, *jihad*, and foreign bank records.

Each of these matters was fully briefed and argued before this Court after trial.

In pages 3-6 and 7-10 of its ruling, this Court directly addressed these assertions of

error, including a discussion of the Ninth Circuit's opinion in *United States v. Waters*,

627 F.3d 345 (9th Cir. 2010), concluding that the government's exhibits were:

- probative of defendant's intent and wilfulness;

- responsive to defenses raised, such as the peaceful nature of defendant; and

- that such evidence was not outweighed by the danger of unfair prejudice.

The Court also ruled that the prosecutors' arguments and conduct were, in the context

in which they were made, appropriate and did not raise to the level of inappropriately

inflaming the jury.

Rulings on the admissibility of evidence are reviewed for abuse of discretion.

*United States v. Yida*, 498 F.3d 945, 949 (9th Cir. 2007).  In addition, since defendant

never objected to remarks made in closing arguments, appellate review will be under

the "plain error" standard.  *United States v. Washington*, 462 F.3d 1124, 1136 (9th Cir.

2006).  The Court's rulings on the admissibility of evidence and the propriety of attorney

arguments are unlikely to be reversed on appeal.

       4.      <u>Motion to Suppress</u>  -  Defendant next criticized this Court's rulings

denying his motion to suppress the evidence seized pursuant to the search warrant.  He

argues that the decision to seek the warrant was tainted by warrantless surveillance

(the so-called *Murray* issue), and that he was denied access to classified material to

assist him in filing and arguing the motion.  Defendant will apparently also argue on

appeal that the search of the computers seized from defendant's former residence

exceeded its proper scope and amounted to an improper "rummaging."

       These matters were fully briefed before this Court, and an evidentiary hearing

was conducted.  In its extensive written ruling, this Court carefully considered

defendant's suppression arguments and properly denied them.  (CR 324; *United States*

*v. Sedaghaty*, 2010 WL 1490306, April 13, 2010).  In so doing, the Court made informed

factual findings that the affiant, Special Agent Anderson, "had no knowledge of any

illegal surveillance program or even knowledge about what is publicly known of the

TSP," *id*. at 3, and thus the affidavit was not tainted.  Likewise, after reviewing affidavits

and conducting an evidentiary hearing, this Court ruled that the manner in which the

seized computers were searched was reasonable.  Specifically, this Court concluded

"[t]he care used in this case appears to actually exceed what is required given the

nature of white collar crimes and the intermingling of information on computers.  This is

Page 10 - Government's Opposition to Defendant's Request for Release Pending Appeal

especially true in light of the use of carefully tailored search terms."  *Id.* at 4.

While the Ninth Circuit will review the suppression decision *de novo*, *United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir.2007), underlying factual findings will be reviewed under the more deferential clear error standard.  *United States v. Davis*, 530 F.3d 1069, 1077 (9th Cir.2008).  It is improbable that the Court's factual findings, well supported by the record, will be found to be clearly erroneous by the Ninth Circuit.  If not, then the legal ruling denying the motion to suppress will almost certainly be affirmed.

5.     <u>Juror Issue</u>  -  Defendant continues to complain that this Court improperly failed to examine the entire jury after one juror whispered that a government witness had done a good job in testifying.  Out of an abundance of caution, this Court removed that juror during trial, but declined defendant's request to conduct an inquiry of the rest of the jury.

If raised on appeal, the Ninth Circuit will look at this matter independently, but within the context of the entire record, and "accord *substantial weight* to the trial judge's conclusion as to the effect of alleged juror misconduct."  *United States v. Stinson*, 647 F.3d at 1216 (emphasis added).  In denying defendant's post-trial motions, this Court addressed the juror issue:  "Although the court dismissed one juror in this case out of an abundance of caution based on a borderline innocuous comment made to a witness, the contacts in this case were de minimus and could not have influenced the verdict. (CR 477 at 12).

Defendant's chances of prevailing on appeal on this issue is equally de minimus.

6.     <u>Tax Loss at Sentencing</u>  -  The final issue raised by defendant in his Ninth

Circuit filing is this Court's calculation of the tax loss at sentencing.  A calculation of the amount of loss is a factual finding reviewed for clear error.  The loss need not be determined with precision but need be only a reasonable estimate given the available information.  *United States v. Garro*, 517 F.3d 1163, 1167 (9th Cir. 2008).

At trial, and again at sentencing, an IRS witness named Gregory Wooten testified.  Wooten is a manager of IRS Exempt Organizations in Seattle.  Prior to sentencing, the IRS was requested to calculate an estimation of the tax harm from defendant's tax crime.  While he did not personally prepare them, Wooten testified at sentencing that, based on IRS regulations and certain assumptions supported by the evidence, a conservative estimate of the tax loss was $80,980.  (CR 510 (Sent. Tr. at 99-106)).  In addition, this Court had before it the presentence report, which addressed the tax loss (PSR at ¶¶23-24, 32), an explanation of the tax loss theory in the government's sentencing memorandum (CR 498 at 2-4), and supporting IRS forms attached thereto as sentencing exhibit 1.

While defendant attempted to counter this evidence by calling a witness (Marcus Owens) and offering his own exhibits, arguing there was no loss, this Court rejected the defense theory and concluded there was a tax loss of $80,980, resulting in an elevated advisory guideline calculation.

The matter was fully litigated and required this Court to exercise its discretion in deciding which side had the better version of the tax loss question.  It is extremely doubtful that the Ninth Circuit will conclude that this Court clearly erred in crediting the testimony of Gregory Wooten and the evidence related to his testimony in finding that the tax loss for purposes of the Sentencing Guideline §2T1.1 was $80,980.

### III.  Conclusion

Defendant Sedaghaty is unable to provide clear and convincing evidence that he

is not a risk of flight.  He also cannot establish the existence of substantial issues for

appeal.  This Court should deny his request for release pending appeal.

DATED this 13th day of December, 2011.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney


*/s/ Christopher L. Cardani*
By: _____
CHRISTOPHER L. CARDANI
Assistant United States Attorney


*/s/ Charles F. Gorder, Jr.*
By: _____
CHARLES F. GORDER, JR.
Assistant United States Attorney